# EXHIBIT A

1   Firm E-Mail: courtdocs@dickinsonwright.com

2   David G. Bray (#014346)
    dbray@dickinsonwright.com
3   **DICKINSON WRIGHT, PLLC**
    1850 North Central Avenue, Suite 1400
4   Phoenix, Arizona 85004
    Phone: (602) 285-5000
    Fax: (602) 285-5100
5

    *Attorneys for VIP Products, LLC*
6

7                **IN THE UNITED STATES DISTRICT COURT**

8                      **DISTRICT OF ARIZONA**

9   VIP Products, LLC, an Arizona limited        No. CIV-2057-PHX-DGC
    liability company,
10
                                                 **AMENDED COMPLAINT**
11          Plaintiff,

                                                 **(Declaratory Judgment; Cancellation
12          v.                                   of PTO Registration)**

13  Jack Daniel's Properties, Inc., a Delaware
    corporation
14

15          Defendant.

16

17

18          Plaintiff, VIP Products, LLC for its amended complaint against defendant Jack

19  Daniel's Properties, Inc., by and through its undersigned counsel, Dickinson Wright PLLC,

20  hereby alleges and states as follows:

                                    I.

21
                              **THE PARTIES**

22
            1.      Plaintiff VIP Products, LLC ("Plaintiff") is an Arizona limited liability
23
    company corporation with its principal place of business at 16515 S. 40th Street, Suite 121,
24
    Phoenix, Arizona 85048.
25

26

                                          1

2.     Upon information and belief, defendant Jack Daniel's Properties, Inc. ("Defendant" or "Jack Daniel's") is a Delaware corporation with its principal place of business at 4040 Civic Center Drive, Suite 528, San Rafael, California, 94903.

3.     Defendant is a citizen of a state other than Arizona, within the meaning of 28 U.S.C. § 1332(c)(1). Defendant has caused events to occur in Maricopa County, Arizona out of which this complaint derives.

## II.

## JURISDICTION

4.     This Court has subject matter jurisdiction over this claim for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57, Fed. R. Civ. P., as this is a case of actual controversy within the Court's jurisdiction. The Court has subject matter jurisdiction over the underlying claim pursuant to (a) 28 U.S.C § 1331, as it involves the right to use a trademark and threatened claims under the Lanham Act.

## III.

## VENUE

5.     Venue is proper in this district under 28 U.S.C. § 1391(a) and (c), as Defendant is subject to personal jurisdiction in this state.

## IV.

## JURY DEMAND

6.     Plaintiff demands a trial by jury on all claims so triable.

## V.

## FACTS COMMON TO ALL CLAIMS

7.     Plaintiff is engaged primarily in the business of designing, manufacturing, and marketing chew toys for dogs.

8.      Plaintiff sells several lines of dog chew toys, including the "Tuffy's" line (durable sewn/soft toys), the "Mighty" line (durable toys made of a different material than the Tuffy's line), and the "Silly Squeakers" line (durable rubber squeaky novelty dog toys).

9.      In approximately July of 2013, VIP introduced its "Bad Spaniels" durable rubber squeaky novelty dog toy.

10.     Plaintiff is the owner of all rights in its "Bad Spaniels" trademark and trade dress for its durable rubber squeaky novelty dog toy.

11.     Upon information and belief, Defendant is the owner of a number of United States trademarks that incorporate the words "Jack Daniel's." The Jack Daniel's mark is primarily associated with Tennessee sour mash whisky.

12.     VIP designed the "Bad Spaniels" label to incorporate a few elements of the Jack Daniel's label design; for example VIP included a label with black background and white lettering. On the other hand, VIP included drastic differences from the Jack Daniel's marks and label design in its "Bad Spaniels" label to make it clear that the product is a parody. For example, VIP selected the words "Bad Spaniels" because they are clearly not "Jack Daniel's", included the phrase "Silly Squeakers" on the toy in three locations on the product hanger tag, and placed a prominent disclaimer on the packaging that plainly states: "The product and its design belong to VIP products. This product is not affiliated with Jack Daniel's."

13.     On or about September 9, 2014, VIP received a demand letter from Defendant dated September 5, 2014 which demanded that VIP, among other things, stop all sales of its parody "Bad Spaniels" novelty dog toy.

14.     Defendant claims that it owns "an iconic trade dress consisting of" the following elements, referred to collectively as the "Jack Daniel's Trade Dress": (1) "a square bottle with a ribbed neck," (2) "a black cap," (3) "a black neck wrap closure with white printing bearing the OLD NO. 7 mark," and (4) "a black front label with white printing and a filigreed border bearing the JACK DANIEL'S mark depicted in arched lettering at the top of the label, the

1  OLD NO. 7 mark contained within a filigreed oval design in the middle portion of the label

2  beneath the JACK DANIEL'S mark and the words Tennessee Sour Mash Whiskey in the

3  lower portion of the label, with the word 'Tennessee' depicted in script."

4      15.    The following is a depiction of what Defendant claims is the "Jack Daniel's

5  Trade Dress:"



13      16.    Defendant alleges that "[t]he Jack Daniel's Trade Dress is inherently distinctive,

14  or acquired distinctiveness . . . by virtue of extensive sales and advertising of Jack Daniel's

15  Tennessee whiskey featuring the Jack Daniel's Trade Dress, decades of consumption by the

16  public of Jack Daniel's Tennessee whiskey packaged in the Jack Daniel's Trade Dress,

17  extensive consumer recognition of the Jack Daniel's Trade Dress, and association of the Jack

18  Daniel's Trade Dress with Jack Daniel's Tennessee whiskey."

19      17.    Defendant alleges that "[t]he combination of elements comprising the Jack

20  Daniel's Trade Dress is non-functional because it is not essential to the use or purpose of Jack

21  Daniel's Tennessee whiskey and does not affect the cost of quality of the product."

22      18.    Defendant claims that the Jack Daniel's Trade Dress is covered, in part, by a

23  PTO registration (No. 4,106,178) "for the three-dimensional configuration of a square shape

24  bottle container . . . for distilled spirits" (the "Jack Daniel's Bottle Design").

25

26

4

19. Defendant also claims the PTO registration of the Jack Daniel's Bottle Design is "valid and subsisting" but admits that the PTO registration has not "become incontestable."

20. The three-dimensional shape identified in the PTO registration of the Jack Daniel's Bottle Design is depicted as shown below:



21. The PTO registration of the Jack Daniel's Bottle Design states, in part, that: "The mark consists of the three-dimensional configuration of the square shaped bottle container for the goods, having an embossed ridge or scalloped design on the neck portion of the bottle, and an embossed signature design comprised of the words 'JACK DANIEL'."

22. The Jack Daniel's Trade Dress and Jack Daniel's Bottle Shape contain design features common in the industry for distilled spirits, particularly whiskey.

23. The following images depict bottles for bourbon or other corn based whiskey not originating from the Jack Daniels distillery:



5

24. The bottles depicted in the images above are used by competitors of Jack Daniel's in the sale of distilled spirits, and whiskey in particular.

25. The bottles depicted in the images above include one or more of the following features: (1) "a square bottle with a ribbed neck," (2) "a black cap," (3) "a black neck wrap closure with white printing" and (4) "a black front label with white printing."

26. The bottles depicted in the images above involve one or more of the following features identified as part of the Jack Daniel's Trade Dress: square shaped bottle container; an embossed ridge or scalloped design on the neck portion of the bottle, and an embossed signature on the bottle.

27. The features of the Jack Daniel's Trade Dress and Jack Daniel's Bottle Design are "essential to the use or purpose" or "affect the cost or quality" of the products sold using that trade dress and design and protecting the features of the Trade Dress and Bottle Design would significantly undermine a competitor's ability to compete with Jack Daniel's in the sale of distilled spirits.

28. Elements of the Jake Daniel's Trade Dress and Jack Daniel's Bottle Shape are merely ornamental or decorative and do not function as features signifying products from the Jack Daniels distillery.

29. A square bottle with a ribbed neck is a basic shape or design used for bottles of distilled spirits, including bourbon or other corn based whiskey, produced by more than one distillery owned by different persons.

30. A black cap is used for bottles of distilled spirits, including bourbon or other corn based whiskey, produced by more than one distillery owned by different persons.

31. A black neck wrap closure with white printing is used for bottles of distilled spirits, including bourbon or other corn based whiskey, produced by more than one distillery owned by different persons.

1    32.    A black front label with white printing is used for bottles of distilled spirits,

2    including bourbon or other corn based whiskey, produced by more than one distillery owned

3    by different persons.

4    33.    The following combination of features is used on bottles of distilled spirits,

5    including bourbon or other corn based whiskey, produced by more than one distillery owned

6    by different persons: (1) a square bottle with a ribbed neck, (2) a black cap, (3) a black neck

7    wrap closure with white printing; and (4) a black front label with white printing.

8    34.    The primary significance of the following combination of elements is to identify

9    any distilled spirits, particularly bourbon or other corn based whiskey:  (1) a square bottle

10    with a ribbed neck, (2) a black cap, (3) a black neck wrap closure with white printing; and (4)

11    a black front label with white printing.

12    35.    The following combination of features used on bottles of distilled spirits,

13    including bourbon or other corn based whiskey, produced by more than one distillery owned

14    by different persons is generic for those distilled spirits, if not others: (1) a square bottle with

15    a ribbed neck, (2) a black cap, (3) a black neck wrap closure with white printing; and (4) a

16    black front label with white printing.

17    36.    The combination of elements of the Jake Daniel's Trade Dress is generic

18    because their primary significance is to identify any distilled spirits, particularly bourbon or

19    other corn based whiskey, rather than products from the Jack Daniels distillery.

20    37.    Bottles used by competitors of the Jack Daniel's distillery in the sale of distilled

21    spirits, and whiskey in particular, indicate that the following features of the Jack Daniel's

22    Trade Dress are basic design features, common in the field of distilled spirits.

23    38.    Bottles used by competitors of the Jack Daniel's distillery in the sale of distilled

24    spirits, and whiskey in particular, indicate that the Jack Daniel's Trade Dress is a more

25    refinement of or variation on the following existing trade dress within that field: (1) "a square

26

7

1    bottle with a ribbed neck," (2) "a black cap." (3) "a black neck wrap closure with white

2    printing" and (4) "a black front label with white printing."

3        39.    The square-shaped bottle is used for bottles of distilled spirits, including

4    bourbon or other corn based whiskey, produced by more than one distillery owned by

5    different persons.

6        40.    The embossed or scalloped bottle neck is used for bottles of distilled spirits.

7    including bourbon or other corn based whiskey, produced by more than one distillery owned

8    by different persons.

9        41.    An embossed signature on the bottle is used for bottles for distilled spirits.

10    including bourbon or other corn based whiskey, produced by more than one distillery owned

11    by different persons.

12        42.    The following combination of features is used on bottles of distilled spirits,

13    including bourbon or other corn based whiskey, produced by more than one distillery owned

14    by different persons: (1) a square shaped bottle container; (2) an embossed ridge or scalloped

15    design on the neck portion of the bottle, and (3) an embossed signature on the bottle.

16        43.    The primary significance of the following combination of elements is to identify

17    any distilled spirits, particularly bourbon or other corn based whiskey:  (1) a square shaped

18    bottle container; (2) an embossed ridge or scalloped design on the neck portion of the bottle,

19    and (3) an embossed signature on the bottle.

20        44.    The combination of elements of the Jack Daniels Bottle Design is generic

21    because their primary significance is to identify any distilled spirits, particularly bourbon or

22    other corn based whiskey, rather than products from the Jack Daniels distillery.

23        45.    Bottles used by competitors of the Jack Daniel's distillery in the sale of distilled

24    spirits, and whiskey in particular, indicate that the following features of the Jack Daniel's

25    Bottle Design are basic design features, common in the field of distilled spirits.

26

46.    Bottles used by competitors of the Jack Daniel's distillery in the sale of distilled spirits, and whiskey in particular, indicate that the Jack Daniel's Bottle Design is a mere refinement of or variation on the following existing trade dress within that field:  (1) a square shaped bottle container; (2) an embossed ridge or scalloped design on the neck portion of the bottle, and (3) an embossed signature on the bottle.

## VI.

## ~~CLAIM~~CLAIMS FOR RELIEF

### First Claim for Relief

### (Declaratory Judgment)

~~14.~~47. Plaintiff incorporates and realleges herein by this reference Paragraphs 1 through ~~13~~46, inclusive, as though set forth in full herein.

~~15.~~48. There is an actual and justiciable controversy between Plaintiff and Defendant regarding Plaintiff's use of its "Bad Spaniels" trademark and trade dress for its novelty dog toy.

~~16.~~49. As a matter of law, Plaintiff's use of its "Bad Spaniels" name and mark does not infringe or dilute any claimed trademark rights that Defendant may claim in any "Jack Daniel's" trademark for its Tennessee sour mash whiskey and/or any other product.

### Second Claim for Relief

### (Declaratory Relief)

50.    Plaintiff incorporates and realleges herein by this reference Paragraphs 1 through 49, inclusive, as though set forth in full herein.

51.    As a matter of law, the Jack Daniel's Trade Dress and Jack Daniel's Bottle Design are functional and not entitled to trademark protection.

52.    As a matter of law, the Jake Daniel's Trade Dress and Jack Daniel's Bottle Design contain merely ornamental or decorative features that do not function as features

1  signifying products from the Jack Daniels distillery and are not entitled to trademark

2  protection.

3      53.    As a matter of law, the combination of elements of the Jake Daniel's Trade

4  Dress is generic and not entitled to trademark protection.

5      54.    As a matter of law, the combination of elements of the Jake Daniel's Bottle

6  Design is generic and not entitled to trademark protection.

7      55.    As a matter of law, the combination of elements of the Jake Daniel's Trade

8  Dress is non-distinctive and not entitled to trademark protection.

9      56.    As a matter of law, the combination of elements of the Jake Daniel's Bottle

10  Design is non-distinctive and not entitled to trademark protection.

11  **Third Claim for Relief**

12  **(Cancellation of PTO Registration for Jack Daniel's Bottle Design)**

13      57.    Plaintiff incorporates and re-alleges herein by this reference Paragraph 1

14  through 56, inclusive, as though set forth in full herein.

15      58.    The Jack Daniel's Bottle Design is a functional design and not entitled to PTO

16  registration.

17      59.    The Jack Daniel's Bottle Design contains merely ornamental or decorative

18  features that do not function as features signifying products from the Jack Daniels distillery

19  and are not entitled to PTO registration.

20      60.    The combination of elements of the Jake Daniel's Bottle Design is generic and

21  not entitled to PTO registration.

22      61.    The combination of elements of the Jake Daniel's Bottle Design is non-

23  distinctive and not entitled to PTO registration.

24      62.    Plaintiff is entitled to, and hereby seeks, on Order of this Court pursuant to 15

25  U.S.C. § 1119 ordering the cancellation of the PTO registration (No. 4,106,178) "for the

26

10

three-dimensional configuration of a square shape bottle container . . . for distilled spirits" that

represents the Jack Daniel's Bottle Design.

**WHEREFORE** Plaintiff respectfully requests that the Court:

A.    Issue a judgment declaring that Plaintiff's use of its "Bad Spaniels" name and

mark for its novelty dog toy does not infringe or dilute any trademark rights claimed by

Defendant in the name and mark "Jack Daniel's"; ~~and~~

B.    Issue a judgment declaring that the Jack Daniel's Trade Dress and Jack Daniel's

Bottle Design are functional, generic and/or non-distinctive, merely decorative or ornamental

and not entitled to trademark protection;

C.    Issue an order pursuant to 15 U.S.C. § 1119 ordering cancellation of

Defendant's PTO registration (No. 4,106,178) "for the three-dimensional configuration of a

square shape bottle container . . . for distilled spirits"; and

~~B.~~D.   Grant such additional or other relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED** this ~~16th~~____ day of ~~September, 2014~~March, 2015.


DICKINSON WRIGHT, PLLC


By: s/ ~~David G. Bray~~
_____
_____
                    David G. Bray
                    1850 North Central Avenue, Suite 1400
                    Phoenix, Arizona 85012-2705
                    *Attorneys for VIP Products, LLC*