QUARLES & BRADY LLP
Gregory P. Sitrick  (AZ Bar #028756)
Isaac S. Crum (AZ Bar #026510)
Firm State Bar No. 00443100
One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004
Telephone (602) 229-5200
Fax (602) 229-5690
E-mail: Gregory.Sitrick@quarles.com
E-mail: Isaac.Crum@quarles.com

SEYFARTH SHAW LLP
Christopher C. Larkin (admitted *pro hac vice*)
2029 Century Park East
Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 201-5289
Facsimile: (310) 201-5219
E-mail: clarkin@seyfarth.com

*Attorneys for Defendant and Counterclaimant*
*JACK DANIEL'S PROPERTIES, INC.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| VIP PRODUCTS, LLC, an Arizona limited liability company,<br><br>　　　　Plaintiff and Counterdefendant,<br><br>　　v.<br><br>JACK DANIEL'S PROPERTIES, INC., a Delaware corporation,<br><br>　　　　Defendant and Counterclaimant. | Case No. 14-cv-02057-PHX-DGC<br><br>**DEFENDANT AND COUNTERCLAIMANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT'S MOTION TO AMEND** |

Defendant and counterclaimant Jack Daniel's Properties, Inc. ("JDPI") submits this memorandum of points and authorities in opposition to the motion of plaintiff and counter-defendant VIP Products, LLC ("VIP") to amend and supplement its declaratory judgment complaint and to supplement its answer to JDPI's counterclaims (Doc. 31).

## I.  INTRODUCTION

VIP's motion gives new meaning to the word "amend."  VIP seeks to (1) triple the length of its September 16, 2014 declaratory judgment complaint by adding 33 new paragraphs of factual allegations, at least four new legal theories, and two new claims for relief, and (2) delete the nine affirmative defense in its December 19, 2014 answer to JDPI's counterclaims and replace them with 10 entirely different ones.  VIP seems to have gone back to a formbook checklist of claims and defenses in trademark cases, and simply picked a bunch of new ones.

VIP's motion is silent as to why it waited until now—six months after it filed this action, three months after it answered JDPI's counterclaims, and two months after the Case Management Conference—to seek leave to completely reshape its case.  VIP relies solely on Rule 15(a)'s liberal amendment standard, but Rule 15(a) does not give VIP a freewheeling license to push the reset button and start over.  For the reasons discussed below, justice requires that VIP's motion be denied.

## II.  FACTUAL BACKGROUND

### A.  The Procedural History of This Case

VIP's complaint (Doc. 1), filed on September 16, 2014, seeks a declaratory judgment that its "Bad Spaniels" dog toy does not infringe or dilute JDPI's marks because it is a parody of Jack Daniel's Tennessee whiskey.  On December 3, 2014, JDPI filed its answer and counterclaims (Doc. 12), asserting causes of action for infringement of registered trademarks, and infringement and dilution of the Jack Daniel's bottle trade dress.  On December 19, 2014, VIP filed its answer to JDPI's counterclaims (Doc. 20), in

which it denied the material allegations of JDPI's counterclaims and interposed multiple affirmative defenses. VIP's answer maintained its theory of the case that its toy is a protected parody, and did not challenge the validity of JDPI's trademarks or trade dress.

Following a conference of counsel on January 12, 2015 to discuss the various matters set forth in the Court's December 10, 2014 Order Setting Rule 16 Case Management Conference (Doc. 18), Declaration of Christopher C. Larkin ("Larkin Decl.") ¶ 2, the parties prepared their Joint Case Management Report ("Joint Report") (Doc. 23), which they filed on January 16, 2015. In their Joint Report, the parties stated that:

- "Neither party currently anticipates adding additional parties or amending its pleadings" (¶ 6);
- They "currently anticipate the need to take only party depositions and expert depositions and a few third-party depositions" (¶ 13); and
- They "each intend to serve written discovery on the other side aimed at discovering information pertinent to the controlling *Sleekcraft* factors as well as JDPI's dilution counterclaims." (¶ 13).

The Joint Report proposed a very tight schedule of case management dates.

On January 23, 2015, the Court conducted the Case Management Conference ("CMC"), Larkin Decl. ¶ 3; Ex. 1 (Doc. 34), during which the parties discussed the use of expert witnesses and the proposed order of expert disclosure. VIP's counsel's colloquy with the Court confirmed that VIP considered this to be a parody case. Tr. 3:23-24; 4:13-15, 19-21; 4:22-24; 5:3-7; 5:9-11. VIP's counsel never mentioned the possibility of amending VIP's pleadings in any manner. The parties' concurrence on the narrow focus of this case was evident from their agreement (at VIP's suggestion) that JDPI disclose its experts first. Tr. 5:18-22; 6:19-21.

The Court told the parties at the end of the CMC that its forthcoming case schedule was "largely yours," Tr. 6:23-24, and later that day, the Court issued its Case Management Order ("Order") (Doc. 25). Paragraph 9, captioned "**The Deadlines Are Real**," stated that "[t]he parties are advised that the Court intends to enforce the deadlines set forth in this

1  Order, and should plan their litigation actions accordingly." This reinforced the Court's
2  admonition at the CMC that the Court "won't be inclined to extend the schedule and would
3  therefore urge you to take advantage of it."  Tr. 8:1-4.

4       On February 6, 2015, JDPI propounded 13 interrogatories and 15 production
5  requests to VIP (Doc. 28), including four interrogatories and four production requests
6  directed to VIP's affirmative defenses. JDPI also began contacting prospective experts on
7  the infringement and dilution issues that were discussed at the CMC. VIP responded to
8  JDPI's discovery requests on March 11, 2015, but has never served any discovery requests
9  of its own. Larkin Decl. ¶ 4.

10      **B.    The Proposed Amendments**

11      On March 23, one day before the deadline to amend and two days before the
12 parties' face-to-face settlement meeting in Phoenix (Doc. 35), VIP's counsel sent JDPI's
13 counsel an e-mail requesting JDPI's consent, on less than six hours' notice, to the filing of
14 an amended complaint ("AC") and an amended answer to JDPI's counterclaims ("AA").
15 Larkin Decl. ¶ 5; Ex. 2. This was the first and only indication that JDPI ever received that
16 VIP wished to make wholesale amendments to its pleadings. Larkin Decl. ¶ 5. JDPI
17 declined consent on the ground that the proposed amendments substantially changed VIP's
18 case and injected new issues into the case, with no justification for the tardiness or breadth
19 of the request. Larkin Decl. ¶ 5. VIP filed its motion a few hours later.

20      **C.    Declaratory Judgment Complaint**

21      VIP seeks to amend its complaint to add references to JDPI's allegations in its
22 December 3, 2014 counterclaims (AC ¶¶ 14-21), and factual allegations that the Jack
23 Daniel's Trade Dress and the mark shown in Registration No. 4,106,178 (referred to by
24 VIP variously as the "Jack Daniel's Bottle Design" (¶¶ 18-21, 27) and the "Jack Daniel's
25 Bottle Shape" (¶¶ 22, 28)) "contain design features common in the industry for distilled
26 spirits, particularly whiskey" (¶¶ 22-26), that the Jack Daniel's Trade Dress and Jack
27 Daniel's Bottle Design are functional (¶ 27), that elements of the Jack Daniel's Trade
28 Dress and Jack Daniel's Bottle Design "are merely ornamental or decorative and do not

function as features signifying products from the Jack Daniels (sic) distillery" (¶ 28), that certain elements are used on third-party bottles (¶¶ 29-33), that a certain combination of features used on bottles of distilled spirits is generic (¶¶ 34-36), that features of the Jack Daniel's Trade Dress are common or are mere refinements or variations of existing trade dress (¶¶ 37-38), that the elements of the mark shown in Registration No. 4,106,178 are used by third parties (¶¶ 39-42), and that these elements are common in the distilled spirits industry and are generic or mere refinements of commonly-used features (¶¶ 43-46).

On the basis of these new factual allegations, VIP seeks to add claims for declaratory judgments that the Jack Daniel's Trade Dress and Jack Daniel's Bottle Design (or Shape) are functional (¶ 51), merely ornamental or decorative and do not function as trademarks (¶ 52), generic (¶¶ 53-54), or non-distinctive (¶¶ 55-56), and to cancel Registration No. 4,106,178 on the grounds of functionality (¶ 58), ornamentation (¶ 59), genericness (¶ 60), and non-distinctiveness (¶ 61).

### D. Answer to Counterclaims

VIP seeks wholesale replacement of its original affirmative defenses with totally new and different defenses. Gone would be (1) failure to state a claim upon which relief can be granted, (2) the absence of a likelihood of confusion, (3) the First Amendment, (3) violation of the antitrust laws, (4) acquiescence, (5) waiver, (6) laches, (7) estoppel, (8) unclean hands, and (9) JDPI's failure to mitigate damages; in their place would be (1) "failure to comply with statutory formalities" (AA ¶ 65), (2) ornamentation (¶ 66), (3) genericness (¶ 66), (4) mere descriptiveness (¶ 66), (5) non-distinctive[ness] (¶ 66), (6) functionality (¶ 66), (7) the lack of fame of JDPI's marks and trade dress (¶67), (8) fair use (¶ 68), (9) prior or current use of similar marks and dress by third parties (¶ 69), and (10) a catch-all defense that JDPI's marks and trade dress "are invalid, unenforceable, and/or not infringed" (¶ 70).

### III. STATEMENT OF LAW

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that after the expiration of the period for amendment of pleadings as a matter of course, "a party may amend its pleading only with the opposing party's consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "But the liberal policy favoring amendments is not unlimited. Motions to amend may be denied if the district court finds there has been (1) undue delay, (2) bad faith or dilatory motives on the part of the movant, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, or (5) futility of the proposed amendments." *Loza v. American Heritage Life Ins. Co.*, 2009 WL 4824756, at *1 (D. Ariz. December 9, 2009) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"The factors are not to be given equal weight. Prejudice to the opposing party must be given the greatest weight. The factors should not be understood rigidly or evaluated mechanically; the court should 'examine each case on its facts' and determine the propriety of granting leave to amend on that basis." *Fresno Unified School District v. K.U.*, 980 F. Supp. 2d 1160, 1175 (E.D. Cal. 2013) (citations omitted) (quoting *SEAS Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1086 (S.D. Cal. 2002)).

JDPI has the burden of showing that amendment should not be allowed. *Pipeline Technologies, Inc. v. Telog Instruments, Inc.*, 2014 WL 2468343, at *1 (D. Ariz. June 3, 2014). JDPI has met that burden here in view of the timing and breadth of VIP's motion against the backdrop of the procedural posture of this case.

### IV. JUSTICE REQUIRES THAT LEAVE TO AMEND BE DENIED BECAUSE OF VIP'S UNDUE DELAY, PREJUDICE TO JDPI, AND THE FUTILITY OF THE PROPOSED AMENDMENTS.

#### A. VIP Delayed Unduly in Seeking to Amend.

VIP never even addresses, much less explains, why it waited until the day before the deadline to amend its pleadings to file its motion. Instead, citing Rule 15(d), which has

5

limited or no applicability here,[1] VIP simply claims that "notice is reasonable as it falls before the Court's March 24, 2015 deadline for filing amended or supplemental pleadings." Mot. at 4:1-4. That is not the law. "Entry of a Rule 16 deadline for amending pleadings does not eliminate the timeliness consideration of Rule 15. To the contrary, motions to amend may be found untimely even if they are brought within the time allowed by a scheduling order." *Loza*, *supra* at *4 (citing *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006)). "As the Ninth Circuit has explained: 'In assessing timeliness, we do not merely ask whether a motion was filed within the time period allotted by the district court in a Rule 16 scheduling order. Rather, in evaluating undue delay, we also inquire whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading'." *Id.* (*quoting AmerisourceBergen Corp.*, 465 F.3d at 953).

VIP and its counsel are no strangers to trademark disputes. They were involved in litigation with Anheuser-Busch over another of VIP's toys. *See Anheuser-Busch, Inc. v. VIP Products, LLC*, 666 F. Supp. 2d 974 (E.D. Mo. 2008) (granting preliminary injunction against VIP's "Buttwiper" knock-off of plaintiff's "Budweiser" beer bottle). In that case, VIP litigated claims for trademark infringement, unfair competition involving the trade dress of the Budweiser bottle, and dilution, and the issues of the validity, protectability, and functionality of the Budweiser mark and trade dress.

Given VIP's business model and its experience in the *Anheuser-Busch* case, when VIP filed this action just one week after receiving JDPI's demand letter, VIP knew or

---

[1] Rule 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). VIP's motion does not identify anything that occurred after the filing date of VIP's complaint other than allegations that were made in JDPI's counterclaims. This motion is really only one to amend VIP's pleadings.

should have known the general facts and theories that JDPI could be expected to assert via counterclaims, and the corresponding claims and defenses that might be available to VIP. By December 3, 2014, when JDPI filed its answer and counterclaims, VIP knew the precise facts and theories asserted by JDPI. Yet VIP framed the issue for litigation in its December 19, 2014 answer to JDPI's counterclaims just as it had in its complaint—whether the Bad Spaniels toy is a parody of the Jack Daniel's bottle that negates likelihood of confusion and dilution. VIP consistently maintained that position with both JDPI and the Court—until now. No reason is given for its sudden change of position.

"A moving party's inability to explain its delay may indicate that that the delay was undue." *Fresno Unified School District*, 980 F. Supp. 2d at 1176 (citations omitted). There can be no excuse for the tardiness of VIP's motion to assert a new and different set of claims and defenses. The new legal theories now advanced by VIP can be found in any treatise, and most appear to have been raised in the *Anheuser-Busch* case. VIP did not learn of the factual bases for any new claims or defenses through discovery because it took none before filing this motion. *Cf. Pipeline Technologies,* 2014 WL 2468343, at *2 (no undue delay where moving party learned of "the factual and legal bases for their new defenses and counterclaims" through third-party depositions). The third-party products that VIP claims form the factual basis for most of its new claims and defenses were in the market before VIP filed this action.

Under the circumstances, VIP either made a deliberate decision not to pursue the claims and defenses it now seeks to add, and then abruptly changed its mind in late March for tactical or other reasons, or VIP misled JDPI as to VIP's true intentions when it joined JDPI in representing to the Court in the Joint Report that VIP did not anticipate amending its pleadings and when its counsel characterized the action as a "parody case" at the CMC. Whatever the reason for the delay, it is inexcusable.

"Undue delay is delay that prejudices the nonmoving party or imposes unwarranted burdens on the court." *Fresno Unified School District*, 980 F. Supp. 2d at 1176. As shown below, VIP's delay will result in prejudice to JDPI if the amendments are allowed.

**B.    JDPI Will Be Prejudiced If the Court Allows The Amendments.**

VIP barely pays lip service to the prejudice issue. VIP simply states that "the close of fact discovery in this matter is more than three months away (July 1, 2015) . . . the close of expert discovery is nearly five months away (August 14, 2015) . . . [and] [n]o depositions have been set or taken in this matter," Mot. at 4:4-7, concluding that "JDPI cannot legitimately claim prejudice by the supplement and the amendment." Mot. at 4:7-8. VIP accurately recites certain case management dates, and it was true when the motion was filed that no depositions had been set or taken, although depositions of VIP and its designer have since been set. Larkin Decl. ¶ 6. But VIP ignores the other portions of the Order that would cause JDPI to be prejudiced if the proposed amendments are allowed. "Prejudice results when an amendment would unnecessarily increase costs or would diminish the opposing party's ability to respond to the amended pleading." *Fresno Unified School District*, 980 F. Supp. 2d at 1177 (citing *Morongo Band of Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). VIP's undue delay in seeking to amend will result in both forms of prejudice to JDPI. As shown below, JDPI would be required to litigate, under very tight "[d]eadlines [that] are real," Order ¶ 9, a dramatically-expanded case that would require additional expert testimony and discovery that would be unavailable to JDPI on the current schedule.

As VIP's counsel stated at the CMC, "experts are going to be crucial on this case." Tr. 3:23-24. Because the primary issues to be litigated were likelihood of confusion and dilution, JDPI accepted VIP's proposal at the CMC that JDPI disclose its experts first. Larkin Decl. ¶ 3. The deadline for JDPI to do so is May 8, 2015. This motion will not be decided until sometime in mid-April at the earliest, only a few weeks before that deadline. VIP's proposed new genericness, descriptiveness, non-distinctiveness, functionality, and ornamentation claims and defenses go to the validity of JDPI's trade dress and one of its registered trademarks, and are ones on which JDPI understandably would want to be able to retain experts. If the proposed amendments are allowed, JDPI would be required to find any such experts in a matter of days immediately after the Court's ruling, and any experts

8
DEFENDANT AND COUNTERCLAIMANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT'S MOTION TO AMEND

who might be found on such short notice would then have to prepare their reports in a matter of one or two weeks, without the benefit of any written discovery from VIP or any discovery from third parties on the new issues. It is simply unrealistic and unfair to expect that JDPI could do this. The practical inability to obtain expert testimony on these new claims and defenses before May 8 would severely prejudice JDPI's ability to respond to them.

JDPI took seriously the Court's admonition in ¶ 9 of the Order that "the Court intends to enforce the deadlines set forth in this Order, and [the parties] should plan their litigation actions accordingly," and promptly served written discovery on the issues identified in ¶ 13 of the Joint Report. JDPI has already used up more than half of the permitted number of interrogatories and production requests on those issues and on the affirmative defenses pleaded in VIP's answer. If the proposed amendments are allowed, the discovery requests directed to VIP's original affirmative defenses would immediately become worthless, but JDPI would not get them back for future use. JDPI would not have enough requests remaining to take both (1) thorough written discovery on up to 10 new affirmative defenses, at least four new legal theories, and numerous new factual allegations, and (2) any follow-up written discovery on likelihood of confusion and dilution.

Worse yet, JDPI would effectively be penalized for promptly serving discovery on the issues identified in ¶ 13 of the Joint Report, while VIP would effectively be rewarded for not having done so. Because VIP has taken no discovery to date, it still has its full complement of written discovery requests, and could allocate them strategically on all issues, old and new. JDPI no longer has that option. The limitations on the remaining written discovery that JDPI can take would severely prejudice its ability to respond to the new claims and defenses.

Finally, the parties contemplated in the Joint Report "the need to take only party depositions and expert depositions and a few third-party depositions" because the primary issues to be litigated were likelihood of confusion and dilution. They thus proposed, and

9

the Court adopted, a very tight timetable for fact discovery. If the proposed amendments are allowed, the scope of required fact discovery would be expanded dramatically. That, by itself, is not prejudice. *Pipeline Technologies,* 2014 WL 2468343, at *3 (no prejudice where added litigation costs "would have been incurred if the proposed amendments had been included in Defendants' original answers"). But the parties would have only about two months to complete all such written and deposition discovery, including scheduling discovery from third parties. This will inevitably drive up JDPI's expenses beyond what they would have been if VIP had asserted these claims and defenses in its original pleadings.

As noted above, JDPI will have wasted time and money on discovery directed to defenses that VIP will abandon. JDPI has also scheduled the depositions of VIP's principal and toy designer for the week of April 20 in view of the upcoming deadline for the service of JDPI's expert reports. JDPI intended to examine the witnesses on the issues raised by the current pleadings. Larkin Decl. ¶ 6. If the proposed amendments are allowed (and depending upon when the Court allows them), JDPI will either have to examine these witnesses on a host of additional issues with very little time to prepare (and no prior written discovery), or be forced to seek leave to re-examine these witnesses or seek discovery under Rule 30(b)(6) on the new issues. This waste and prospective additional expense and difficulty could have been avoided if VIP had asserted the new claims and defenses in its original pleadings. That is prejudice. *See Black v. Hunt & Henriques*, 2011 WL 1405411, at *2 (C.D. Cal. April 11, 2011) (leave to amend denied where "the amendments proposed here do not simply provide alternative theories for recovery, but rather, require particular discovery" and the non-movant "will face prejudice by having to prepare discovery requests and responses in an extremely shortened time frame"); *Fresno Unified School District*, 980 F. Supp. 2d at 1177.

    C.    **The Amendments Are Futile.**

"Futility is a recognized basis for denying a proposed amendment." *Id*. at 1179. "The test for futility 'is identical to the one used when considering the sufficiency of a

10

pleading challenged under Rule 12(b)(6)'." *Id*. (*quoting Miller v. Rykoff-Sexton*, 845 F.2d 209, 214 (9th Cir. 1988)).[2] Under the familiar standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "a complaint must contain sufficient factual matter to state a facially plausible claim to relief." *Fresno Unified School District*, 980 F. Supp. 2d at 1179 (citing *Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010)). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555-56.

Even if VIP's proposed amendments were timely asserted and were not prejudicial to JDPI, which they are not, all of the proposed amendments directed to the Jack Daniel's Trade Dress, and the functionality attack on JDPI's Registration No. 4,106,178, are futile, and should be refused on that independent basis.

VIP's proposed new claims regarding the Jack Daniel's Trade Dress are legally insufficient.[3] After setting forth the combination of elements that JDPI alleges to constitute the Jack Daniel's Trade Dress, AC ¶¶ 14-15, VIP's factual allegations and accompanying claims focus solely on a few individual elements. VIP alleges, for example, that the Jack Daniel's Trade Dress contains "design features common in the industry for distilled spirits, particularly whiskey," ¶ 22, specifically "(1) 'a square bottle with a ribbed

---

[2] Some courts defer the consideration of the sufficiency of the proposed amendments until after a Rule 15(a) motion has been granted. *See, e.g., Velasco v. SEI Pharm., Inc.*, 2013 WL 310336, at *2 (S.D. Cal. Jan. 25, 2013). Here, the Court should consider this issue now rather than force JDPI to file a subsequent Rule 12(b)(6) motion, which will further prejudice JDPI's ability to respond to the new claims under the current schedule.

[3] This is hardly surprising given VIP's business model. Self-styled parodists like VIP do not copy products whose trade dress is functional, merely ornamental, decorative, generic, or non-distinctive. The Bad Spaniels toy copies the Jack Daniel's bottle, and not third-party bottles, AC ¶ 23, or some "generic" trade dress that "identif[ies] any distilled spirits," AC ¶¶ 35-36, precisely because the Jack Daniel's bottle (like the Budweiser bottle) is such a famous and instantly-recognizable trademark.

neck,' (2) 'a black cap,' (3) 'a black neck wrap closure with white printing' and (4) 'a black front label with white printing'." ¶ 25.  VIP makes allegations regarding these discrete elements, singly (¶¶ 29-32) and in combination (¶¶ 33-34), and claims that the combination of these individual elements are functional (¶¶ 27, 51), merely ornamental or decorative (¶¶ 28, 52,), generic (¶¶ 35-36, 53), and non-distinctive (¶ 55).

But JDPI's Jack Daniel's Trade Dress does not consist solely of the four individual elements culled out by VIP.[4]  It embodies "a square bottle with a ribbed neck, a black cap, a black neck wrap closure with white printing bearing the OLD NO. 7 mark, and a black front label with white printing and a filigreed border bearing the JACK DANIEL'S mark depicted in arched lettering at the top of the label, the OLD NO. 7 mark contained within a filigreed oval design in the middle portion of the label beneath the JACK DANIEL'S mark, and the words Tennessee Sour Mash Whiskey in the lower portion of the label, with the word "Tennessee" depicted in script."  Answer and Counterclaims ¶¶ 6, 14.

VIP's proposed new claims simply ignore these other elements, and VIP does not allege that the overall combination of elements that comprises the Jack Daniel's Trade Dress is generic, functional, ornamental, or nondistinctive.  That makes VIP's claims for declaratory judgments of invalidity of the Jack Daniel's Trade Dress fatally deficient under Ninth Circuit law.  "[I]n evaluating functionality as well as the other elements of a trade dress claim, it is crucial that [the court] focus not on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create." *Clicks Billiards, Inc. v. Sixshooters, Inc*., 251 F.3d 1252, 1259 (9th Cir. 2001).  "[T]he proper inquiry is not whether the individual features of a product are functional or

---

[4] If VIP had copied only those four elements, the parties would probably not be before the Court.  But VIP also copied the other distinctive elements, including a filigreed oval and border, arched lettering, font styles, and the placement of the verbal and graphic elements, because they, together with the four elements cherry-picked by VIP, identify Jack Daniel's.

nondistinctive but whether the whole collection of features taken together are functional or nondistinctive." *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1050 (9th Cir. 1998). "'[T]he validity of a trademark is to be determined by viewing the trademark as a whole. . . . [T]he composite may become a distinguishing mark even though its components individually cannot'." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1135 (9th Cir. 2006) (*quoting California Cooler, Inc. v. Loreto Winery, Inc.*, 774 F.2d 1451, 1455 (9th Cir. 1985)). Accordingly, VIP's claims for declaratory judgments of invalidity of the Jack Daniel's Trade Dress fail to state claims upon which relief can be granted, and amendment would be futile.

VIP's counterclaim for cancellation of Registration No. 4,106,178 on the ground of functionality (AC ¶¶ 27, 51, and 58) is insufficient because it merely recites the legal test for functionality set forth by the Supreme Court in *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10 (1982) and discussed by the court in VIP's litigation against Anheuser-Busch. *Anheuser-Busch*, 666 F. Supp. 2d at 982. VIP alleges no facts that could plausibly show *why* the "features of the Jack Daniel's Trade Dress and Jack Daniel's Bottle Design are 'essential to the use or purpose' or 'effect the cost or quality' of the products sold using the trade dress and design," AC ¶ 27. This counterclaim thus fails to state a claim upon which relief could be granted under *Twombly* and *Iqbal*, and amendment would be futile.

. . . . .
. . . . .
. . . . .
. . . . .
. . . . .
. . . . .
. . . . .
. . . . .

## V. CONCLUSION

For all of the foregoing reasons, VIP's motion to amend its complaint and its answer to JDPI's counterclaims should be denied in its entirety.

DATED: April 6, 2015                    Respectfully submitted,

 /s/ Gregory P. Sitrick
Gregory P. Sitrick  (AZ Bar #028756)
Gregory.Sitrick@quarles.com
Isaac S. Crum (AZ Bar #026510)
Isaac.Crum@quarles.com
Quarles & Brady LLP
Firm State Bar No. 00443100
One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004
Telephone (602) 229-5200
Fax (602) 229-5690

SEYFARTH SHAW LLP
Christopher C. Larkin (admitted pro hac vice)
clarkin@seyfarth.com
2029 Century Park East
Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 201-5289
Facsimile: (310) 201-5219

*Attorneys for Defendant and Counterclaimant
JACK DANIEL'S PROPERTIES, INC.*

# CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record in this case.

*/s/ Gregory P. Sitrick*
Gregory P. Sitrick