1  QUARLES & BRADY LLP
   Gregory P. Sitrick
2  Isaac S. Crum
   One Renaissance Square
3  Two North Central Avenue
   Phoenix, Arizona 85004-2391
4  Telephone: (602) 229-5317
   Facsimile: (602) 420-5198
5  E-mail: Gregory.sitrick@quarles.com

6  SEYFARTH SHAW LLP
   Christopher C. Larkin (admitted *pro hac vice*)
7  2029 Century Park East
   Suite 3500
8  Los Angeles, California 90067-3021
   Telephone: (310) 201-5289
9  Facsimile: (310) 201-5219
   E-mail: clarkin@seyfarth.com
10
   Attorneys for Defendant and Counterclaimant
11 JACK DANIEL'S PROPERTIES, INC.

12

13              **UNITED STATES DISTRICT COURT**

14                  **DISTRICT OF ARIZONA**

15

16 | VIP PRODUCTS, LLC, an Arizona limited | **Case No. CV 14-02057 PHX DGC** |
   | liability company, | |
17 | | **DECLARATION OF** |
   | Plaintiff, | **CHRISTOPHER C. LARKIN IN** |
18 | | **SUPPORT OF DEFENDANT AND** |
   | v. | **COUNTERCLAIMANT'S** |
19 | | **OPPOSITION TO PLAINTIFF AND** |
   | JACK DANIEL'S PROPERTIES, INC., a | **COUNTER-DEFENDANT'S** |
20 | Delaware corporation, | **MOTION TO AMEND** |
21 | Defendant. | |
22
   | AND RELATED COUNTERCLAIMS. | |
23

24       I, CHRISTOPHER C. LARKIN, hereby declare:

25       1.      I am an attorney licensed to practice law in the State of California and am a

26 member of the firm of Seyfarth Shaw LLP, counsel for defendant and counterclaimant

27 Jack Daniel's Properties, Inc. ("JDPI") in this action.  I have been admitted pro hac vice

28

in this action. I make this declaration on the basis of my own personal knowledge and in support of JDPI's opposition to the motion of plaintiff and counter-defendant VIP Products, LLC ("VIP") to amend and supplement its declaratory judgment complaint and to supplement its answer to JDPI's counterclaims.

2.      On January 12, 2015, the parties' counsel held a telephone conference to discuss the various matters set forth in the Court's December 10, 2014 Order Setting Rule 16 Case Management Conference, including whether any party expected to amend its pleadings, the nature of necessary discovery, and the parties' views on proposed case management dates. On the basis of that conference, the parties prepared their Joint Case Management Report ("Joint Report"), which they filed on January 16, 2015.

3.      On January 23, 2015, the Court conducted the Case Management Conference ("CMC"). I attended telephonically with the Court's permission. Attached hereto as Exhibit 1 is a true and correct copy of a transcript of the conference. VIP's counsel suggested that JDPI disclose its experts first, and I agreed on behalf of JDPI because the action, as framed by the pleadings, the Joint Report, and the parties' discussion with the Court, involved issues of likelihood of confusion and dilution. I would not have agreed to have JDPI disclose its experts first if I had known at the time that VIP intended to amend its pleadings to assert the multiple new claims, defenses, and legal theories that it now seeks to inject into this case.

4.      On February 6, 2015, JDPI propounded 13 interrogatories and 15 production requests to VIP, including four interrogatories and four production requests directed to the affirmative defenses in VIP's answer. JDPI also began contacting prospective experts on the infringement and dilution issues that were discussed at the CMC. VIP responded to JDPI's discovery requests on March 11, 2015. VIP has not yet propounded any discovery requests of its own.

5.      On March 23, 2015, one day before the deadline to amend and two days before the parties' face-to-face settlement meeting in Phoenix, I received an e-mail from

2

1    VIP's counsel in which he requested JDPI's consent, on less than six hours' notice, to the

2    filing of an amended complaint and an amended answer to JDPI's counterclaims. This

3    was the first and only indication that JDPI ever received that VIP wished to amend its

4    pleadings to delete all of its affirmative defenses and to add multiple new claims and

5    factual allegations. I declined consent to VIP on the ground that the proposed

6    amendments substantially changed VIP's claims and defenses and injected new issues

7    into the case, with no justification for the tardiness or breadth of the request. A copy of

8    my e-mail exchange with VIP's counsel is attached hereto as Exhibit 2. VIP filed its

9    motion a few hours later.

10          6.      Prior to the filing of this motion, JDPI requested dates for the depositions of

11    VIP's principals and its product designer, but at the request of VIP's counsel, the

12    scheduling of those depositions was deferred until after the parties' settlement meeting on

13    March 25. The depositions of VIP's principals and its product designer have now been

14    set during the week of April 20. JDPI intended to examine those witnesses on the issues

15    raised by the current pleadings and outlined in the parties' Joint Report.

16          I declare under penalty of perjury under the laws of the United States of America

17    that the foregoing is true and correct.

18          Executed this 6th day of April 2015 at Los Angeles, California.

19                                              CHRISTOPHER C. LARKIN

20

21

22

23

24

25

26

27

28

DECLARATION OF CHRISTOPHER C. LARKIN IN SUPPORT OF DEFENDANT AND COUNTERCLAIMANT'S
OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT'S MOTION TO AMEND

19542679v.1

# EXHIBIT 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| VIP Products, LLC, an Arizona | ) | |
| limited liability company, | ) | |
| | ) | |
| Plaintiff, | ) | CV-14-2057-PHX-DGC |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | January 23, 2015 |
| Jack Daniel's Properties, | ) | 11:01 a.m. |
| Inc., a Delaware corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____)

BEFORE:  THE HONORABLE DAVID G. CAMPBELL, JUDGE


REPORTER'S TRANSCRIPT OF PROCEEDINGS

RULE 16 SCHEDULING CONFERENCE


Official Court Reporter:
Linda Schroeder, RDR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 32
Phoenix, Arizona  85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                      A P P E A R A N C E S

2      For the Plaintiff:

3                Dickinson Wright
                 By: DAVID GEOFFREY BRAY, ESQ.
4                1850 North Central Avenue, Suite 1400
                 Phoenix, AZ  85004
5
       For the Defendant:
6
                 Quarles & Brady
7                By: GREGORY PHILLIP SITRICK, ESQ.
                     ISAAC SCOTT CRUM, ESQ.
8                2 North Central Avenue
                 Phoenix, AZ  85004
9
                 Seyfarth Shaw
10               By: CHRISTOPHER CRAIG LARKIN, ESQ. (Telephonic)
                 2029 Century Park E, Suite 3500
11               Los Angeles, CA  90067

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                   UNITED  STATES  DISTRICT  COURT

1          THE CLERK:  Civil case 2014-2057, VIP Products versus

2     Jack Daniel's Properties, Incorporated, on for a scheduling

3     conference.  Will the parties please announce.

4          MR. BRAY:  Good morning, Your Honor.  David Bray with

5     Dickinson Wright for plaintiff VIP Products.

6          THE COURT:  Good morning.

7          MR. SITRICK:  Good morning, Your Honor.  Greg Sitrick

8     from Quarles & Brady on behalf of Jack Daniel's Properties.

9          MR. LARKIN:  Good morning, Your Honor.  Participating

10    telephonically with the Court's permission is Christopher

11    Larkin on behalf of Jack Daniel's Properties.

12         MR. CRUM:  And, Your Honor, Isaac Crum from

13    Quarles & Brady on behalf of Jack Daniel's Properties as well.

14         THE COURT:  All right.  Good morning to all of you.

15         Counsel, I have looked over your joint case management

16    report.  I do have a question regarding the overall schedule.

17    You don't have expert disclosures occurring until the middle of

18    June, which is almost to the end of the fact discovery period.

19         Is there a particular reason in the case that you need

20    to do most of the fact discovery before you can provide expert

21    reports?

22         MR. BRAY:  I've been in the process of interviewing

23    experts the last six weeks, and I think experts are going to be

24    crucial on this case.  I don't have an expert picked out.  So

25    while I don't think maybe we need to have the entirety of fact

1    discovery done, I do need some significant amount of time to

2    get my experts in place.

3              THE COURT:  Will they be looking at discovery material

4    in forming their opinions?

5              MR. BRAY:  Potentially.

6              THE COURT:  Explain, if you would.  What discovery

7    material will they need to review?

8              MR. BRAY:  Well, I'm not entirely sure what opinions

9    I'm going to have the expert testify on.  One potential opinion

10   would be a traditional survey expert.  I've been discussing

11   whether that's appropriate given kind of the facts of this case

12   and the procedural posture of this case.  A survey expert would

13   not need discovery.  I've been brainstorming with one of my

14   partners, Frank Long, about potential other avenues of expert

15   testimony in this case, given its context as a parity case.

16   We've just not nailed down exactly what we're going to do.  So

17   I can't as I stand here today tell you exactly what fact

18   discovery an expert would need.

19             THE COURT:  Will the experts be opining on confusion?

20   Is that the issue they'll be addressing?

21             MR. BRAY:  Potentially.

22             THE COURT:  What others?  I'm just trying to figure

23   out what experts we're likely to need, given the nature of this

24   case.

25             MR. BRAY:  Sure.  The tricky part about selecting an

1    expert in this case is having an expert testify as to a

2    particular feature or factor or issue in this case without

3    having an opinion as to the ultimate question of law.  So other

4    than I can tell you that we've been in discussions with perhaps

5    using a survey expert, I don't know specifically what other

6    expert opinions as I stand here today.  I was just trying to

7    build in some breathing space in the order.

8            THE COURT:  Okay.  What are defendant's views?

9            MR. LARKIN:  Your Honor, we anticipate a survey expert

10    on the issue of likelihood of confusion and probably another

11    expert on the issue of dilution.  We would be willing to

12    designate those experts earlier than the -- on the schedule

13    proposed in the order.  I understand Mr. Bray had a preplanned

14    trip that we were trying to accommodate.

15            But we can do it sooner than the current schedule, but

16    we would certainly be happy to accommodate Mr. Bray's schedule

17    as well.

18            MR. BRAY:  One thing we could potentially do, Your

19    Honor -- because this was a declaratory judgment action filed

20    by a traditional trademark defendant -- perhaps we could flip

21    the order of expert disclosures around and have defendants

22    disclose first and then plaintiff disclose second.

23            THE COURT:  Well, let me ask a question about what was

24    just said regarding experts.  A dilution expert?

25            MR. LARKIN:  Yes.

```
 1           THE COURT:  Would Jack Daniel's be arguing that the
 2    value of its mark is diluted by a dog toy?
 3           MR. LARKIN:  Yes, Your Honor.  As pleaded in the
 4    counterclaims, our position is that the mark is diluted by
 5    tarnishment, and we would expect to have probably not a survey
 6    expert, probably just an expert on marketing or consumer
 7    psychology address that issue.
 8           MR. SITRICK:  Your Honor, I know it sounds from a high
 9    level without knowing the facts --
10           THE COURT:  Just a little louder.
11           MR. SITRICK:  Sorry.  I saw from a high level, you
12    know, without knowing some of the facts, I can see why you may
13    have a reservation, you know, with your question the way you
14    asked it.  But there are some facts in the case that we plan to
15    present that these -- the parity is really in a disparaging
16    light to Jack Daniel's and its mark.  And that's why the
17    dilution claim, it's not just that it's a parity; it's also
18    disparaging the way it's being done.
19           THE COURT:  What are your reactions to plaintiff's
20    suggestion of having defense experts go first?
21           MR. LARKIN:  We're fine with that, Your Honor.
22           THE COURT:  All right.  Okay.  Give me just a minute
23    to look at this schedule.  All right.  Let me run through the
24    schedule.  It's largely yours.  I've adjusted dates so they
25    fall on Fridays rather than on Mondays most of the way through,
```

1    although I'll leave in place in Paragraph 1 your proposal for

2    initial disclosures on January 26th, which is next Monday.

3            In Paragraph 2 I'm going to leave it as is, so there

4    will be 60 days for considering amending pleadings in the case.

5    There are some discovery limitations in Paragraph 4 that you

6    ought to take note of, and I will adopt a fact discovery cutoff

7    date in that paragraph of July 3rd of 2015.

8            In Paragraph 5A I'm going to require defendant's

9    expert disclosure by May 8th of 2015; in 5B plaintiff's expert

10   disclosure by June 12th of 2015; in 5C rebuttal experts by July

11   10th of 2015; and in Paragraph 5D expert depositions by August

12   14th of 2015.

13           Please make sure you read Paragraphs E, F, and G of

14   Section 5.  Those do include some additional expert disclosure

15   requirements that will apply.

16           Paragraph 6 is important.  If you have any discovery

17   issues, don't file anything.  Get together on the phone and

18   call me, and we'll get those issues worked out quickly so they

19   don't slow the case down.

20           In Paragraph 7 I'm going to set a dispositive motion

21   deadline of September 11th of 2015.  Please read the rest of

22   Paragraph 7 as there are some other requirements regarding

23   summary judgment and summary judgment briefing.

24           I'm going to adopt your proposal in Paragraph 8 of

25   good faith settlement talks by March 27th of this year.

1        Paragraph 9 is important.  I think this is enough time

2   to get the case ready for trial.  I won't be inclined to extend

3   the schedule and would therefore urge you to take advantage of

4   it.

5        Paragraph 10 has some additional briefing

6   requirements.

7        Would you all be interested in the designation of a

8   magistrate judge to assist in settlement talks, or do you plan

9   to use somebody else, or just to meet without the help of the

10  neutral?

11        MR. BRAY:  When counsel and I talked about this, I

12  think we both agreed that the magistrate judge could be useful

13  but a little further along in the case, not by the March 10th

14  good faith settlement talks.

15        THE COURT:  Well, yeah, if you want -- It's actually

16  March 27th.  But if you want to use a magistrate judge before

17  then, we ought to get them designated now, because it takes

18  eight weeks or so to get on their calendar.  But if your

19  thought is you'll do those talks without the assistance of a

20  magistrate and see if you can settle the case, that's fine as

21  well.

22        MR. BRAY:  I think that was plaintiff's thought.  I'll

23  let defendant speak.

24        MR. LARKIN:  That's acceptable to the defendant, Your

25  Honor.

1    THE COURT:  Okay.  If you do decide you want the help

2    of a magistrate, keep in mind it will take six to eight weeks

3    to get on their calendar.  So call our office ahead of time.

4    We'll designate the magistrate.  And you can then get in touch

5    with their office and get on their calendar.

6    Is there going to be a need for a protective order in

7    this case?  Do you anticipate sharing confidential information?

8    MR. BRAY:  Not from plaintiff's perspective, Your

9    Honor.

10    MR. LARKIN:  I suspect that some of the information

11    that the plaintiff will want to discover from the defendant

12    will be designated confidential.

13    THE COURT:  All right.  Well, two thoughts if you

14    decide you want a protective order.  Obviously submit it to me

15    in stipulated form, but keep two things in mind:

16    Please do not submit a protective order that says that

17    a party submitting confidential information to the Court shall

18    file it under seal.  I cannot sign an order that authorizes you

19    to file under seal, because in the Ninth Circuit I have to

20    review the material before I permit filing under seal.

21    So instead say in the protective order that the party

22    filing confidential material shall comply with Local Rule 5.6,

23    which is the procedure for seeking authorization for sealing.

24    And, secondly, if you put into the protective order a procedure

25    for challenging confidential designations or such things, don't

1    say in it that the parties will file motions.  Say that the

2    parties will call the Court, so that we treat those in the same

3    way we do discovery disputes, and you talk to me before we have

4    the filing of motions.

5            Any other matters that we need to take up today?

6            MR. BRAY:  Not from plaintiff's perspective, Your

7    Honor.

8            MR. LARKIN:  None from the defendant, Your Honor.

9            MR. SITRICK:  One possibly, Mr. Larkin.  We have put

10   in here that you said at the end that you want to prepare this

11   case for trial.  We intend to oppose the request for the trial.

12   We think there's only equitable relief sought in this case

13   between the parties.  So we'd like to get some guidance from

14   you on how you'd like us to address that either here or later

15   down the road.

16           THE COURT:  I think we should address that later.  It

17   seems to me that if we get to the summary judgment stage and a

18   case survives summary judgment, as it likely will, given the

19   nature of this dispute, but if it does -- I mean, maybe it

20   won't.  But assuming it does, it seems to me the right point to

21   discuss whether or not this is a jury trial or a bench trial is

22   at the final pretrial conference.  And so you can raise that

23   issue in connection with the materials you file before the

24   final pretrial conference.  It doesn't quite require extensive

25   briefing.  We can make a decision and schedule the trial in

1    light of that decision.

2            MR. SITRICK:  Thank you, Your Honor.

3            THE COURT:  Okay.  We'll get this order out.

4            Okay.  Thanks very much.

5        (Proceedings recessed at 11:14 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        C E R T I F I C A T E

2

3            I, LINDA SCHROEDER, do hereby certify that I am duly

4    appointed and qualified to act as Official Court Reporter for

5    the United States District Court for the District of Arizona.

6            I FURTHER CERTIFY that the foregoing pages constitute

7    a full, true, and accurate transcript of all of that portion of

8    the proceedings contained herein, had in the above-entitled

9    cause on the date specified therein, and that said transcript

10   was prepared under my direction and control.

11           DATED at Phoenix, Arizona, this 30th day of March,

12   2015.

13

14                                    s/Linda Schroeder
                                      Linda Schroeder, RDR, CRR
15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

# EXHIBIT 2

**Larkin, Christopher**

| | |
|---|---|
| **From:** | Larkin, Christopher |
| **Sent:** | Monday, March 23, 2015 12:59 PM |
| **To:** | 'David G. Bray' |
| **Cc:** | Frank G. Long; Sitrick, Gregory P. (PHX x3317) (Gregory.Sitrick@quarles.com); Crum, Isaac S. (PHX x3759) (Isaac.Crum@quarles.com) |
| **Subject:** | RE: VIP v. JDPI: Proposed Amendment - Request for Written Consent to File |

David:  Thanks for your e-mail.  JDPI was quite surprised to get VIP's request for JDPI's consent to these amendments to VIP's pleadings so near the deadline to amend set in the court's January 23, 2015 Case Management Order, and on only a few hours' notice.  On the basis of a quick review of the extensive proposed amendments, necessitated by the short notice, the proposed amendments appear to substantially change VIP's claims and defenses, and to inject new issues into the case, without any explanation for the tardiness of the request to amend, and JDPI cannot consent to the filing of the amended pleadings under the circumstances.

Chris

**From:** David G. Bray [mailto:DBray@dickinson-wright.com]
**Sent:** Monday, March 23, 2015 9:44 AM
**To:** 'Crum, Isaac S. (PHX x3759)'; Larkin, Christopher; Sitrick, Gregory P. (PHX x3317)
**Cc:** Frank G. Long
**Subject:** RE: VIP v. JDPI: Proposed Amendment - Request for Written Consent to File

Counsel:

Please find attached redline versions of VIP's proposed amended complaint and amended answer to JDPI's counterclaim.  Please let me know by 3:00 p.m. today if JDPI will stipulate to the filing of these amended pleadings (preserving all of its defenses of course) by responding to this e-mail in the positive.  I will then certify to the Court that that e-mail constituted written consent to the filing of amended pleadings in conjunction with a LR 15.1(b) Notice of Filing Amended Pleadings.

Otherwise, we will file a motion to amend under Rule 15(a) and LR 15.1(a) with the Court before the end of the day.

I look forward to hearing from you.

**David G. Bray** Member

1850 N. Central Avenue
Suite 1400
Phoenix AZ 85004

| Profile | V-Card |
|---|---|

Phone 602-285-5033
Mobile 602-617-8580
Fax    602-285-5100
Email  DBray@dickinson-wright.com

DICKINSON WRIGHT PLLC

The information contained in this e-mail, including any attachments, is confidential, intended only for the named recipient(s), and may be legally privileged. If you are not the intended recipient, please delete the e-mail and any attachments, destroy any printouts that you may have made and notify us immediately by return e-mail.

Neither this transmission nor any attachment shall be deemed for any purpose to be a "signature" or "signed" under any electronic transmission acts, unless otherwise specifically stated herein. Thank you.