Firm E-Mail: courtdocs@dickinsonwright.com

David G. Bray (#014346)
dbray@dickinsonwright.com
David N. Ferrucci (#027423)
dferrucci@dickinsonwright.com
**DICKINSON WRIGHT, PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
Phone: (602) 285-5000
Fax: (602) 285-5100

*Attorneys for VIP Products, L.L.C.*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| VIP Products, L.L.C., an Arizona limited liability company,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>Jack Daniel's Properties, Inc., a Delaware corporation<br><br>　　　　　　Defendant. | No. 2:14-cv-02057-DGC<br><br>**PLAINTIFF/COUNTER-DEFENDANT VIP PRODUCTS, L.L.C.'S REPLY IN SUPPORT OF ITS MOTION TO AMEND AND SUPPLEMENT ITS COMPLAINT AND MOTION TO SUPPLEMENT ITS ANSWER TO THE AMENDED COUNTERCLAIM** |

Lost in Jack Daniel's ample rhetoric and attenuated arguments is any recognition -- or refutation of -- the overriding proposition that leave to amend must be "freely given" - indeed with "extreme liberality" - and that the public policy underlying Rule 15 mandates a full disposition of a matter on its merits. *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 712 (9th Cir. 2001). Rather, Jack Daniel's seeks to turn that standard on its head so that a first request for amendment filed only three months following the filing of VIP's Answer and timely filed in compliance with the Court's Scheduling Order should be granted with extraordinary parsimony. That is simply not the law. *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir.1999) (inferences should be drawn "in favor of granting the motion"). In any event, Defendant's arguments simply miss the mark. When the Court considers the record of the case and the applicable law, it must conclude: (i) VIP's amended claims and defenses are

1

1  not futile, (ii) there is no prejudice to Jack Daniel's, as the issued raised in VIP's amended
2  pleadings - the functionality and lack of distinctiveness of Jack Daniel's trade dress - have
3  already been joined as they are elements of Counter-plaintiff's *prima face* case; (iii) there was
4  no undue delay and, (iv) for these reasons, VIP's Motion should be granted.

## I.  <u>VIP's Proposed Amendment Is Clearly Not Futile.</u>

The largest section of Defendant's Opposition argues that VIP's proposed amendments are futile and fail to satisfy the *Iqbal* standard. As set forth below, this argument is specious.

The test for futility is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 687 (E.D. Cal. 2009) (*citing Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (explaining that "a proposed amendment is futile ***only if*** no set of facts could be proved under the amendment to the pleadings that would constitute a valid and sufficient claim") (emphasis added). Stated differently, "an amendment is 'futile' only if it would clearly be subject to dismissal." *SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1086 (S.D. Cal. 2002) (internal citations omitted); *see also Am. Specialty Health Grp., Inc. v. Healthways, Inc.*, 2012 WL 4863779, at *7 (S.D. Cal. Oct. 12, 2012) (holding "that the Lanham Act claim is not futile" where "the proposed counterclaims plead 'enough facts to state a claim to relief that is plausible on its face'") (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1973 (2007)).

"While courts will determine the legal sufficiency of a proposed amendment using the same standard as applied on a Rule 12(b)(6) motion, *see Miller v. RykoffSexton, Inc.,* 845 F.2d 209, 214 (9th Cir.1988), such issues are often more appropriately raised in a motion to dismiss rather than in an opposition to a motion for leave to amend." *Id.* (citation omitted). Indeed, "[d]enial of leave to amend on this [*i.e.*, futility] ground is rare. Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Netbula, LLC v. Distinct Corp.*, 212

F.R.D. 534, 539 (N.D. Cal. 2003). [1] Here Jack Daniel's does not contend that there is no set of facts under which its alleged trade dress as a whole could be determined to be functional and non-distinctive. *See E & E Co. v. Kam Hing Enterprises, Inc.*, No. C-08-871 MMC, 2008 WL 4962991, at *3 (N.D. Cal. Nov. 19, 2008) (granting leave to amend where "defendants do not contend there is no set of facts under which plaintiff could recover on such a claim; rather, defendants argue that plaintiff has not pleaded sufficient facts") (*citing Rykoff-Sexton, Inc.,* 845 F.2d at 214). As a result, its futility argument fails and the Amended Complaint is not fatally deficient as Jack Daniel's claims.

### A. Jack Daniel's Trade Dress

Jack Daniel's contends that "VIP's claims for declaratory judgments of the invalidity of the Jack Daniel's Trade Dress fail to state claims upon which relief can be granted, and amendment would be futile." [Opposition at p. 13, lns. 7 9.] The fatal infirmity, according to Jack Daniel's, is that "VIP's factual allegations and accompanying claims focus solely on a few individual elements" of the "Jack Daniel's Trade Dress," [*Id.* at p. 11, lns. 15-16], and "VIP does not allege that the overall combination of elements that comprises the Jack Daniel's Trade Dress is generic, functional, ornamental, or nondistinctive." [*Id.* at p. 12, lns. 14–16]

According to Jack Daniel's, this allegedly narrow focus and alleged omission in pleading "makes VIP's claims for declaratory judgments of invalidity of the Jack Daniel's Trade Dress fatally deficient under Ninth Circuit law." [Opposition at p. 12, lns. 16-18.] Contrary to the Jack Daniel's allegations, the VIP claims against the Jack Daniel's Trade Dress do not focus solely on a few individual elements of the unregistered and alleged "Jack Daniel's Trade

---

[1] Waiting until after leave to amend is granted before considering a challenge to the merits is particularly appropriate, where, as here, the proposed amended claims involve fact intensive inquiries not susceptible to determination on a motion to dismiss. *See* Axis *Imex, Inc. v. Sunset Bay Rattan, Inc.*, No. C 08-3931 RS, 2009 WL 55178, at *3 (N.D. Cal. Jan. 7, 2009) (The trade dress functionality inquiry "is fact intensive with multiple factors for the Court to consider"); *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1141 (N.D. Cal. 2010) ("the question of whether DocMagic's trade dress is functional or nonfunctional is a factual one that cannot be resolved on a motion to dismiss") (*citing Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1258 (9th Cir.2001)).

1  Dress," nor does the Ninth Circuit authority cited by Jack Daniel's state, or even support, the
2  notion that claims alleging the invalidity of trade dress are "fatally deficient" if they fail to
3  challenge every asserted element of any alleged trade dress.

4        In fact, the VIP claims against the unregistered and alleged Jack Daniel's Trade Dress
5  address the purported trade dress as a whole and assert that the unregistered and alleged Jack
6  Daniel's Trade Dress is functional, non-distinctive and generic for specific reasons. [*See e.g.*
7  Amended Complaint, para. 27 ("The features of the Jack Daniel's Trade Dress . . . are
8  'essential to the use or purpose' or 'affect the cost or quality' of the products sold using that
9  trade dress . . . and protecting the features of the Trade Dress . . . would significantly
10 undermine a competitor's ability to compete with Jack Daniel's in the sale of distilled
11 spirits."); " para. 28 ("Elements of the Jack Daniel's Trade Dress . . . are merely ornamental or
12 decorative and do not function as features signifying products from the Jack Daniel's
13 distillery."); and para. 36 ("The combination of elements of the Jack Daniel's Trade Dress is
14 generic because their primary significance is to identify distilled spirits . . . rather than
15 products from the Jack Daniels *[sic]* distillery.")]

16       The Amended Complaint supports the VIP claims of non-functionality, non-
17 distinctiveness and genericness of the unregistered and alleged Jack Daniel's Trade Dress with
18 references to specific elements of the alleged Trade Dress that are "used for bottles of distilled
19 spirits, including bourbon or other corn based whiskey, produced by more than one distillery
20 owned by different persons." [Amended Complaint, ¶¶ 29-32]

21       As further support for those allegations, the VIP claims against the unregistered and
22 alleged Jack Daniel's Trade Dress provide specific examples of individual features of the
23 unregistered and alleged Jack Daniel's Trade Dress that can (and will) lead the fact finder to
24 conclude that the unregistered and alleged Jack Daniel's Trade Dress as a whole is functional,
25 non-distinctive and generic. Those examples include evidence that the unregistered and
26 alleged Jack Daniel's Trade Dress "contain design features common in the industry for
27 distilled spirits, particularly whiskey," namely "[t]he following images depict[ing] bottles for

4

bourbon or other corn based whiskey not originating from the Jack Daniel's distillery."

    

[AC, ¶¶ 15, 22- 23]  The VIP claims explain further that "[t]he bottles depicted in the images above involve one or more of the following features identified as part of the Jack Daniel's Trade Dress: square shaped bottle container; an embossed ridge of scalloped design on the neck portion of the bottle, and an embossed signature on the bottle," (Amended Complaint ("AC"), ¶ 26), as well as "one or more of the following features," specifically identified by Jack Daniel's as constituent elements of the unregistered and alleged Jack Daniel's Trade Dress: "(1) ' a square bottle with a ribbed neck,' (2) 'a black cap,' (3) 'a black neck wrap closure with white printing' and (4) 'a black front label with white printing.'" [AC, ¶¶ 14, 25.]

Contrary to the assertions in the Opposition, trade dress invalidity claim in the Ninth Circuit are not "fatally deficient" if they fail to challenge every asserted element of any alleged trade dress.  Rather, the law is clear that evidence that only a portion of the alleged trade dress is functional or non-distinctive can be sufficient to support a finding that the trade dress, analyzed as whole, is functional and/or nondistinctive. Jack Daniel's quotes correctly, from the Ninth Circuit decision in *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery,* 150 F.3d 1042 (9th Cir. 1998), when the Opposition states: "the proper inquiry is not whether individual features of a product are functional or nondistinctive but whether the whole collection of features taken together are functional non-distinctive. [Opposition, at p. 13, lns. 2-5 *citing Kendall-Jackson Winery, Ltd.,* 150 F.3d at 1050.]  However, Jack Daniel's fails to recognize that the same court stated (in the same paragraph) that, based on evidence concerning "the functionality of a flanged bottle" and "the pervasive use of leaf designs on wine bottles" and "the combination of an exposed cork, a rounded flange, and neck label" creating a

1  "'California look,' which consumers come to expect from a California wine . . . [a] reasonable
2  jury could conclude from this evidence that [the alleged] trade dress *as a whole* is functional
3  and nondistinctive." *Id.* (Emphasis in original).

4  In its ruling, the Ninth Circuit evaluated a district court's decision to let a jury decide
5  whether the alleged trade dress of a wine bottle was distinctive and nonfunctional. The alleged
6  trade dress consisted of "a downward-pointing stylized grape leaf design, using various
7  shades of green, yellow, orange, red, and brown" with "a banner that intersected the leaf and
8  that read 'KENDALL JACKSON'" as well as "recognizable bottles . . . which came in one of
9  two shapes . . . [and] had a rounded flange, a visible cork with printed leaves on it, a brown or
10 burgundy neck label with gold lines on the top and bottom that form an oval in the back, and
11 an off-white label featuring the multicolored leaf design." *Id.* at 1045.

12 The Ninth Circuit ruled that "a reasonable jury could conclude that these features – an
13 exposed cork, a rounded flange, and a neck label – constitute a significant part of [the alleged]
14 trade dress and that granting [the owner of the alleged trade dress] exclusive use of this
15 combination of features would put competitors at a significant non-reputation-related
16 disadvantage," thus "support[ing] a finding that the trade dress as a whole is functional." *Id.* at
17 1049-50. The Court further ruled that "[t]his conclusion would support a finding that the
18 trade dress was generic or descriptive and therefore nondistinctive." *Id.* In doing so, the Ninth
19 Circuit stated: "The fact that [the alleged owner's] grape-leaf design is distinctive does not
20 necessarily mean that the entire trade dress is distinctive because . . . trade dress must be
21 analyzed as a whole." *Id.* Therefore, the Ninth Circuit specifically rejected the notion, made
22 by Jack Daniel's in its Opposition, that the mere presence of one distinctive element could
23 render distinctive alleged trade dress that contained that distinctive feature.

24 The VIP Amended Complaint includes, even specifies by brand name, multiple examples
25 of American whiskey sold by others in bottles using significant parts of what Counter-plaintiff
26 claims as the Jack Daniel's Trade Dress. Those examples are part of the evidence that the
27 unregistered and alleged Jack Daniel's Trade Dress is comprised largely of features that are

6

1  not arbitrary and that must be regarded as functional in order to avoid imposing a significant
2  non-reputation-related competitive disadvantage on others. *See Au-Tomotive Gold, Inc. v.*
3  *Volkswagen of Am., Inc.*, 457 F.3d 1062, 1072 (9th Cir.2006) ("After *Qualitex* and *TrafFix,* the
4  test for functionality proceeds in two steps. In the first step, courts inquire whether the alleged
5  "significant nontrademark function" satisfies the *Inwood Laboratories* definition of
6  functionality—"essential to the use or purpose of the article [or] affects [its] cost or quality . . .
7  In the case of a claim of aesthetic functionality, an alternative test inquires whether protection
8  of the feature as a trademark would impose a significant non-reputation-related competitive
9  disadvantage") (alterations in the original) (internal citations omitted).

10     The Amended Complaint also alleges that the primary features of the Jack Daniel's Trade
11 Dress are generic and specifies evidence indicating that the primary significance of that
12 combination of features is to describe distilled spirits, particularly bourbon or other corn based
13 whiskey, rather than the Jack Daniels distillery. In this Circuit, generic trade dress includes "a
14 basic incarnation" of the shape or design for the related product or service. *See Abercrombie &*
15 *Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619 (6th Cir. 2002). "If the
16 primary significance of the trademark is to describe the *type of product* rather than the
17 *producer*, the trademark [is] a generic term and [cannot be] a valid trademark." *Anti-*
18 *Monopoly, Inc. v. General Mills Fun Group,* 611 F.2d 296, 304 (9th Cir. 1979) (emphasis
19 added). Under appropriate circumstances, even graphic designs can be generic in particular
20 industry. *See e.g*. *Kendall-Jackson Winery Ltd.,* 150 F.3d at 1048 (although initially suggestive
21 and protectable, "[g]rape-leaf designs have become generic emblems for wine. Thus, they are
22 not protectable as trademarks.")  For these reasons, the Amended Complaint contains
23 sufficient factual support for VIP's claims that the specified features of the unregistered and
24 alleged Jack Daniel's Trade Dress, taken as a whole, are functional, non-distinctive and/or
25 generic. Accordingly, VIP's Motion cannot be denied for "futility."
26     **B.**    **The Bottle Design.**
27     In the Amended Complaint, VIP seeks cancellation of the PTO registration for a

three-dimensional bottle design that Jack Daniel's identified in its claims against VIP. [Counterclaim, ¶ 11] The Jack Daniel's claims assert that "the three-dimensional configuration of a square bottle container shown below[2] for distilled spirits is part of "the Jack Daniel's Trade Dress for whiskey" and is a "valid and subsisting" PTO registration that has not "become incontestable." [*Id.*]

Jack Daniel's contends that "the functionality attack on Jack Daniel's Registration No. 4,106,178 [is] futile," (Opposition, at p. 11, lns. 9-11) and bases that contention on the assertion that "VIP's counterclaim for cancellation of Registration No. 4,106,178 on the ground of functionality (AC ¶¶ 27, 51 and 58) is insufficient because it merely recites the legal test for functionality set forth by the Supreme Court . . . and alleges no facts that could plausibly show *why* the "features of the Jack Daniel's Trade Dress and Jack Daniel's Bottle Design are 'essential to the use or purpose' or affect the cost or quality' of the products sold using the trade dress and design.'"  [*Id.* c*iting* AC, ¶ 27.]

As an initial matter, VIP's Amended Complaint, in addition to seeking cancellation for functionality, also seeks cancellation of the Registration because the Jack Daniel's Bottle Design "contains merely ornamental or decorative features" and "[t]he combination of elements of the Jack Daniel's Bottle Design is generic" and/or otherwise "non-distinctive." [*See* AC, ¶¶ 59-61.]  As Jack Daniel's does not challenge VIP's claims seeking cancellation of PTO Registration No. 4,106,178 for invalidity due to factors other than functionality it effectively concedes that at least that portion of VIP's cancellation claim is not "futile".

Regarding's VIP's functionality claims against the Jack Daniel's Bottle Design, the Opposition criticizes the VIP Amended Complaint for being "insufficient because it merely recites the legal test for functionality set forth by the Supreme Court in *Inwood Labs, Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 850 n. 10 (1982)" [Opposition, at p. 13, lns. 11-13.] However, the Opposition simply ignores applicable Ninth Circuit precedent establishing that "the test for

---

[2] The drawing of the bottle design included in paragraph 11 of Jack Daniel's Counterclaim is attached as Exhibit "A" hereto.

8

1  functionality proceeds in two steps" and that "the first step" is "whether the alleged
2  'significant nontrademark function' satisfies the *Inwood Laboratories* definition of
3  functionality" while, "[i]n the case of a claim of aesthetic functionality, an alternative test
4  inquires whether protection of the feature as a trademark would impose a significant non-
5  reputation-related competitive disadvantage." *Au-Tomotive Gold, Inc.,* 457 F.3d at 1072. Here
6  the Amended Complaint is replete with specific facts indicating that Jack Daniel's Bottle
7  Design is functional. [*E.g.* AC, ¶¶ 39-42.] Also, VIP's Amended Complaint includes, and even
8  specifies by brand name, multiple examples of American whiskey sold both others in bottles
9  using significant parts of the "three-dimensional configuration of a square bottle container . . .
10 for distilled spirits" covered by Registration No. 4,106,178. [AC, ¶¶ 15, 22 and 23]  Those
11 examples are evidence that the Jack Daniel's Bottle Design covered by Registration No.
12 4,106,178 is comprised largely of features that are not arbitrary and must be regarded as
13 functional in order to avoid imposing a significant non-reputation related competitive
14 disadvantage on others.  Moreover this same evidence indicates that the three-dimensional
15 configuration of a square bottle container . . . for distilled spirits" covered by Registration No.
16 4,106,178 also satisfies the *Inwood Laboratories* definition of functionality, namely that the
17 shape is "essential to the use or purpose of the article" or "affects [its] cost or quality."

18     For these reasons, the Amended Complaint contains sufficient factual support for the VIP
19 claim that the specified features of the Jack Daniel's Bottle Design covered by Registration
20 No. 4,106,178, taken as a whole, are functional. Moreover, the Opposition fails to challenge
21 the VIP claims seeking cancellation of PTO Registration No. 4,106,178 for invalidity due to
22 factors other than functionality.  Accordingly, VIP's claim is not "futile".

23 **II.    The Amendment Will Not Cause Jack Daniel's To Suffer Any Prejudice.**

24     VIP's amendment will cause no prejudice to Jack Daniel's, let alone "undue prejudice."
25 The functionality (or non-functionality) and distinctiveness (or non-distinctiveness) of the
26 unregistered and alleged Jack Daniel's Trade Dress is not a new issue, injected into these
27 proceedings by the Amended Complaint. These are exactly the same elements that Jack

9

Daniel's is required to proof as part of its *prima facie* case for trade dress infringement as alleged in its second and seventh claims for relief:

> [T]he plaintiff has the burden of proving . . . each of the following elements: 1 *[describe the plaintiff's trade dress] is distinctive* . . . 2. the *[describe the plaintiff's trade dress] is nonfunctional* . . . .

*Ninth Circuit Manual of Model Civil Jury Instructions* § 15.6, at p. 307 (2007) (emphasis added). Jack Daniel's Opposition simply ignores the fact the Lanham Act itself imposes the burden that it prove that its alleged trade dress is "not functional." 15 U.S.C. §1125(a)(3). It also ignores the fact that it in its counterclaims Jack Daniel's asserts that the unregistered and alleged Jack Daniel's Trade Dress is not functional, thus confirming that Jack Daniel's has been aware since the inception that this issue is relevant and that it has the burden of proof on the issue and that it therefore should both conduct and expect discovery on that issue.

Likewise, the Jack Daniel's counterclaims state that the Jack Daniel's Bottle Design is incorporated as part of unregistered and alleged Jack Daniel's Trade Dress, indicating that any functionality determinations would address the functionality of the "three-dimensional configuration of a square bottle container . . . for distilled spirits" covered by Registration No. 4,106,178. At bottom, VIP's amended pleadings repackage issues that have already been joined as two new claims for relief. They will thus not "greatly alter[] the nature of the litigation . . ." *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.1990).

**IV.  <u>There was No "Undue" Delay</u>.**

"[D]elay, by itself, is insufficient to justify denial of leave to amend." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). While a complete survey of the caselaw is prohibitively time-consuming, undersigned counsel would be very surprised if there is a reported decision from any court in the Ninth Circuit denying a motion to amend under circumstances even roughly comparable to the facts of this case. To recap:  VIP's Motion is its first request to amend, proposes merely to add two new claims directly tied to issues already joined in the case, was timely made under the Case Management Order, was filed only three months after the last pleading in the case   (VIP's Answer) and was filed five months

1  before the close of discovery and seven months before the dispositive motion deadline. If
2  there is any such authority, Jack Daniel's hasn't provided it.

3  The primary case relied upon by Counter-plaintiff, *Loza v. Am. Heritage Life Ins. Co.*,
4  2009 WL 4824756 (D. Ariz. Dec. 9, 2009) – presumably because it was decided by this Court
5  – is certainly *not* that authority. In fact, it is hard to imagine more different circumstances
6  under which two Rule 15(a) motions to amend could arise or more a compelling case than
7  *Loza* for the denial of a motion to amend. The differences between the motion decided by this
8  Court in *Loza* and VIP's pending Motion are impossible to summarize in the space remaining
9  under the eleven page limit.[3] However, by way of example, the plaintiff in *Loza* had previous
10 filed an identical motion to amend to add Allstate as a defendant party that had been denied by
11 the Maricopa County Superior Court judge ten (10) months prior to his filing an identical
12 motion to amend *two days before the close of discovery* in the removed case before this Court.

13 The overwhelming weight of authority provides where a first motion to amend is made
14 within three months of the filing of the answer, within 60 days of the case management
15 conference, and with five months discovery remaining, such motions should be "freely
16 granted." *See* 6 *Federal Practice & Procedure* §1488 at pp. 756-763 (2010) and cases cited
17 therein; *First Franklin Fin. Corp. v. Dreamscape Mortgage, L.L.C.*, 2008 WL 2277878, at *2
18 (D. Ariz. May 30, 2008) (granting motion to amend filed five months after the filing of its
19 original answer and rejecting plaintiff's claim of delay and prejudice because "[p]laintiff has
20 over four months to seek discovery in relation to the Defendant's Amended Answer").

21 Every trademark case is different. Here it took further time-consuming factual and legal
22 investigation to determine whether, *under the facts of this particular case*, VIP could in good
23 faith challenge the validity of any of the intellectual property claimed by Jack Daniel's on the
24 grounds of functionality, distinctiveness and/or on any other grounds not asserted in its
25 original Answer. As soon as it had the results of that investigation, VIP timely filed to amend
26 its pleadings within the Court-imposed deadline. The Motion should be granted.

---

27 [3] For the convenience of the Court, they are summarized in a chart contained in Exhibit "B".

11

**DATED** this 16th day of April, 2015.

                              **DICKINSON WRIGHT PLLC**

By: s/ David G. Bray
    David G. Bray
    David N. Ferrucci
    1850 North Central Avenue, Suite 1400
    Phoenix, Arizona 85004
    *Attorneys for VIP Products, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

s/ Kristi A. Arendt

PHOENIX 53913-11 212721v1

13