**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| VIP Products LLC, | No. CV-14-02057-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Jack Daniel's Properties Inc., | |
| Defendant. | |

Plaintiff VIP Products, LLC has moved to amend its pleadings.  Doc. 31.  Defendant Jack Daniel's Properties, Inc. opposes the motion, arguing that the proposed amendments are futile, VIP delayed unduly in seeking leave to amend, and granting leave to amend would prejudice Jack Daniel's.  Doc. 36.  The Court will grant the motion to amend.

**I.    Background.**

VIP Products, LLC designs and manufactures toys for dogs.  Many of these dog toys are humorous in nature, including squeaky toys in the form of beer bottles and green aliens.  In July of 2013, VIP introduced its latest invention, the "Bad Spaniels" "durable rubber squeaky novelty dog toy."  Doc. 1, ¶ 9.  The Bad Spaniels toy is in the shape of a liquor bottle and features a wide-eyed spaniel over the words "Bad Spaniels, the Old No. 2, on your Tennessee Carpet."  The design for the Bad Spaniels toy has many similarities to the bottle design for Jack Daniel's Tennessee Sour Mash Whiskey ("Old No. 7

1    Brand").  These similarities include the shape of the product, the use of white lettering

2    over a black background, and font styles.  *Id.*, ¶ 12.  Nevertheless, the packaging for the

3    Bad Spaniels toy states: "This product is not affiliated with Jack Daniel's."  *Id.*

4           Jack Daniel's Properties, Inc. ("Jack Daniel's") was not amused, and promptly

5    demanded that VIP stop selling the new toy.  On September 16, 2014, VIP responded by

6    filing this suit and seeking a declaratory judgment that its use of the Bad Spaniels name

7    and mark "does not infringe or dilute any claimed trademark rights that Defendant may

8    claim in any 'Jack Daniel's' trademark for its Tennessee sour mash whiskey and/or any

9    other product."  Doc. 1, ¶ 16.  Jack Daniel's counterclaimed that the Bad Spaniels toy

10   infringes and dilutes Jack Daniel's trademark and trade dress.  Doc. 12.  In its answer to

11   Jack Daniel's counterclaims, VIP argued that the Bad Spaniels toy was a protected

12   parody of the Jack Daniel's mark.  Doc. 20, ¶ 67.

13          On March 23, 2015, and before the amendment deadline set in the Court's Case

14   Management Order (Doc. 25), VIP requested leave to amend its complaint.  The amended

15   complaint would add a second and third claim for relief.  The second claim requests a

16   declaratory judgment that Jack Daniel's trade dress and bottle design are not entitled to

17   trademark protection because they are functional and non-distinctive.  Doc. 31-1, ¶¶ 50-

18   56.  The third claim asks the Court to cancel Jack Daniel's trademark registration "for the

19   three-dimensional configuration of a square shape bottle container . . . for distilled

20   spirits" that represents Jack Daniel's bottle design.  *Id.*, ¶ 57-62 (citing 15 U.S.C.

21   § 1119).  VIP has also sought leave to amend its answer to Jack Daniel's counterclaims.

22   Among other defenses, the amended answer states that Jack Daniel's counterclaims are

23   barred because Jack Daniel's trademark and trade dress are "not entitled to protection."

24   Doc. 31-2, ¶ 66.

25   **II.    Legal Standard.**

26          Rule 15 makes clear that the Court "should freely give leave [to amend] when

27   justice so requires."  Fed. R. Civ. P. 15(a)(2).  The policy in favor of leave to amend must

28   not only be heeded, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), it must be applied

1    with "extreme liberality," *see Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708,

2    712 (9th Cir. 2001).  "A trial court may deny such a motion if permitting an amendment

3    would prejudice the opposing party, produce an undue delay in the litigation, or result in

4    futility for lack of merit."  *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir.

5    1990) (citing *Foman*, 371 U.S. at 182).  Generally, the consideration of a motion to

6    amend "should be performed with all inferences in favor of granting the motion." *Griggs*

7    *v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

8    **III.    Analysis.**

9        **A.    Futility.**

10       In the amended complaint, VIP alleges that the design or "trade dress" of a Jack

11   Daniel's bottle of whiskey is functional and not distinctive.[1]  For that reason, VIP claims,

12   the Jack Daniel's bottle design is not entitled to trademark protection and the Court

13   should cancel its trademark registration.  Doc. 31-1, ¶¶ 50-62.  Jack Daniel's argues that

14   these claims are futile because: (1) VIP's amended complaint focuses only on a few

15   elements of the bottle design, as opposed to the overall look, and (2) VIP has failed to

16   allege sufficient facts to support its claim that the bottle design is functional.  Doc. 36 at

17   12-14.  After reviewing the relevant law, the Court finds that VIP's amended claims are

18   not futile.

19       "Trade dress refers generally to the total image, design, and overall appearance of

20   a product," *Switchmusic.com, Inc. v. U.S. Music Corp.*, 416 F. Supp. 2d 812, 819 (C.D.

21   Cal. 2006), and may include the packaging of a product or the design of a bottle, *see Fiji*

22   *Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1172-74 (C.D.

23   Cal. 2010).  A product's trade dress or packaging is protectable under trademark law so

24   long as the trade dress is nonfunctional and distinctive.  *See Wal-Mart Stores, Inc. v.*

25   *Samara Bros.*, 529 U.S. 205, 209-10 (2000); *Kendall-Jackson Winery, Ltd. v. E. & J.*

26   *Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998).  "[T]he proper inquiry is not whether

27

28       [1] The amended complaint also alleges that Jack Daniel's bottle design is generic and merely ornamental.  These are simply different ways of claiming that the bottle design is not distinctive.

individual features of a product are functional or nondistinctive but whether the whole collection of features taken together are functional or nondistinctive." *Kendall-Jackson Winery, Ltd.*, 150 F.3d at 1050.

The trade dress of a product is functional if the trade dress is essential to the use or purpose of the product or affects the cost or quality of the product. *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998) (listing factors for analysis). Alternatively, under the aesthetic functionality test, trade dress is functional if "protection of the [trade dress] as a trademark would impose a significant non-reputation-related competitive disadvantage." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1072 (9th Cir. 2006) (citing *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32-33 (2001)). This means that trade dress is aesthetically functional when it "'serve[s] an aesthetic purpose wholly independent of any source-identifying function,' or in other words, where the consumer is driven to purchase the product based on how it looks." *Fiji Water Co., LLC*, 741 F. Supp. 2d at 1173 (quoting *Au-Tomotive Gold, Inc.*, 457 F.3d at 1072-74).

The trade dress of a product is "distinctive and capable of being protected if it *either* (1) is inherently distinctive *or* (2) has acquired distinctiveness through secondary meaning." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). Broadly speaking, trade dress is inherently distinctive if it is so "unique, unusual, or unexpected in this market that one can assume without proof that it will automatically be perceived by consumers as an indicator of origin[.]" *Fiji Water Co., LLC*, 741 F. Supp. 2d at 1176 (citing *Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*, 568 F.2d 1342, 1344 (C.C.P.A. 1977)). Trade dress may also acquire distinctiveness through secondary meaning, that is, when the trade dress "'has come through use to be uniquely associated with a specific source.'" *Two Pesos, Inc.*, 505 U.S. at 766 n.4 (quoting Restatement (Third) of Unfair Competition § 13 (1995)).

VIP's proposed amended complaint alleges sufficient facts to support its claim that Jack Daniel's bottle design is functional and not distinctive. VIP alleges that Jack Daniel's bottle design or trade dress is similar to other companies' bottles of whiskey, and provides several examples of similar-looking bottles from other companies. Doc. 31-1, ¶¶ 22-23. VIP then identifies four features that both Jack Daniel's and other companies use for whiskey bottles: "(1) a square bottle with a ribbed neck; (2) a black cap; (3) a black neck wrap closure with white printing; and (4) a black front label with white printing." *Id.*, ¶ 33. VIP claims that the primary significance of these four features is "to identify any distilled spirits, particularly bourbon or other corn based whiskey, rather than products from the Jack Daniels distillery." *Id.*, ¶ 36.

Under these alleged facts, Jack Daniel's bottle design is arguably functional. If it is an industry practice to use the four features identified by VIP to identify a product as a distilled-spirits or whiskey product, then granting Jack Daniel's exclusive use of these features might "impose a significant non-reputation-related competitive disadvantage" on other companies. *Au-Tomotive Gold, Inc.*, 457 F.3d at 1072. Thus, VIP has plausibly alleged that the bottle design used by Jack Daniel's also "serve[s] an aesthetic purpose wholly independent of any source-identifying function," and might not be protectable trade dress. *Id.* at 1073.

VIP also plausibly alleges that Jack Daniel's bottle design is not distinctive. If the four features identified by VIP are common in the liquor industry, then Jack Daniel's bottle design might not be so "unique, unusual, or unexpected in this market that one can assume without proof that it will automatically be perceived by consumers as an indicator of origin[.]" *Fiji Water Co., LLC*, 741 F. Supp. 2d at 1176. Also, by alleging that other companies use a similar design and by providing examples of similar-looking bottles, VIP has plausibly alleged that Jack Daniel's bottle design lacks secondary meaning.

Jack Daniel's argues that VIP's amended claims are futile because they "focus solely on a few individual elements" of Jack Daniel's bottle design and do not allege "that the *overall* combination of elements that comprises the Jack Daniel's Trade Dress is

- 5 -

generic, functional, ornamental, or non-distinctive."  Doc. 36 at 12-13 (emphasis added). The Court cannot agree that the claims would be futile for this reason.  The four features identified by VIP describe the shape of the bottle, the color of the cap, the placement and color of the labels, and the color of the writing.  By so doing, the four features might well summarize the overall visual impression of Jack Daniel's bottle design.  *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001) ("[I]t is crucial that [courts] focus *not* on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create.").

Notably, Jack Daniel's proposed definition of the bottle design is almost the same as VIP's, except that Jack Daniel's definition includes the source-identifying words "Tennessee Sour Mash Whiskey," "Old No. 7," and "Jack Daniel's."  Doc. 12, ¶ 6; Doc. 36 at 13.  At this stage, the Court cannot conclude that these additional words are sufficient to defeat VIP's trademark arguments.  That question must be addressed on the more complete factual record of summary judgment or trial.  The Court concludes that VIP's amended claims are not futile.

**B.     Undue Delay & Prejudice.**

Jack Daniel's argues that VIP delayed unduly in seeking leave to amend and that granting leave to amend would prejudice Jack Daniel's.  "[D]elay, by itself, is insufficient to justify denial of leave to amend."  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).  Rather, only where undue delay results in prejudice to the nonmoving party may a court deny leave to amend.  *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981) (citing *Howey v. United States*, 481 F.2d 1187, 1191 (9th Cir. 1973)).  For that reason, the Court will focus on whether granting leave to amend would prejudice Jack Daniel's.[2]

---

[2] The Court also doubts that VIP delayed unduly in seeking leave to amend. Courts have found undue delay where a party seeks leave to amend after discovery has closed, multiple amendments have already been granted, or years have passed since the initial pleadings.  *See* 6 C. Wright, A. Miller, et al., Federal Practice and Procedure § 1488 n.15 (3d ed.).  None of these circumstances are present here.  Discovery has not yet been completed, this is the first motion to amend, the initial complaint was filed less than a year ago, and amendments was sought within the Court's deadline.

Jack Daniel's argues that granting leave to amend would prejudice it because: (1) the proposed amendments would dramatically expand the scope of discovery – VIP's initial claims and defenses were that Bad Spaniels was a parody of Jack Daniel's while its amended claims and defenses raise the issue of the protectability of Jack Daniel's trade dress; (2) the deadline for choosing experts has now passed, and Jack Daniel's would be deprived of the opportunity to choose its experts in light of the amended pleadings; (3) Jack Daniel's has already used more than half of its permitted number of interrogatories and production requests, and many of these discovery requests "would immediately become worthless" in light of the amended pleadings; (4) VIP had not yet requested any discovery and would have an unfair advantage in having more discovery requests available than Jack Daniel's after the pleadings have been amended; and (5) the amended pleadings might require Jack Daniel's to re-depose certain witnesses.  Doc. 36 at 9-11.

The Court finds that granting leave to amend would not unduly prejudice Jack Daniel's.  VIP's amended claims and defenses are based on the theory that Jack Daniel's trade dress is not protected because the trade dress is functional and not distinctive.  As VIP points out, Jack Daniel's already raised these issues when it asserted counterclaims for trade dress infringement.  *See* Doc. 12, ¶ 26 (counterclaim for infringement under 15 U.S.C. § 1125(a)).  To prove trade dress infringement under 15 U.S.C. § 1125(a), Jack Daniel's must "meet three basic elements: (1) distinctiveness, (2) nonfunctionality, and (3) likelihood of confusion."  *Kendall-Jackson Winery, Ltd.*, 150 F.3d at 1047.  Thus, Jack Daniel's argument that VIP's proposed amendments "dramatically expand" the scope of discovery is untrue.  Jack Daniel's first raised the issue of the protectability of its trade dress, and VIP should not be prevented from making that issue part of its claims.

The Court recognizes that an amendment may increase litigation costs.  But the overriding policy of granting leave to amend with "extreme liberality" applies here. *Owens*, 244 F.3d at 712.  To the extent Jack Daniel's believes it needs additional discovery to respond to the amended claims, the parties should confer about the issue and

place a joint conference call to the Court.  Doc. 25, ¶ 6.

**IT IS ORDERED** that VIP's motion to amend (Doc. 31) is **granted.**  VIP shall file its amended documents on or before **May 20, 2015**.

Dated this 15th day of May, 2015.

_____
David G. Campbell
United States District Judge