```
 1  QUARLES & BRADY LLP
    Gregory P. Sitrick
 2  Isaac S. Crum
    One Renaissance Square
 3  Two North Central Avenue
    Phoenix, Arizona 85004-2391
 4  Telephone: (602) 229-5317
    Facsimile: (602) 420-5198
 5  E-mail: Gregory.sitrick@quarles.com
            Isaac.Crum@quarles.com
 6
    SEYFARTH SHAW LLP
 7  Christopher C. Larkin (admitted pro hac vice)
    2029 Century Park East
 8  Suite 3500
    Los Angeles, California 90067-3021
 9  Telephone: (310) 201-5289
    Facsimile: (310) 201-5219
10  E-mail: clarkin@seyfarth.com

11  Attorneys for Defendant and Counterclaimant
    JACK DANIEL'S PROPERTIES, INC.
12
```

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| VIP Products, LLC, | No. CV-14-2057-PHX-SMM |
| Plaintiff, | |
| v. | **OPPOSITION TO MOTION FOR CLARIFICATION** |
| Jack Daniel's Properties, Inc., | |
| Defendant. | |
| And Related Counterclaims. | |

QB\36819612.3

OPPOSITION TO MOTION FOR CLARIFICATION

## I. INTRODUCTION

Dissatisfied with this Court's August 31, 2015 ruling, plaintiff and counter-defendant VIP Products, LLC ("VIP") has filed the instant motion (hereafter the "Motion"). (Doc. 88.) Perhaps hoping to circumvent the rules regarding motions for reconsideration, VIP has captioned its motion as a "motion for clarification" instead. However, after reading VIP's Motion and the transcript of the August 31, 2015 hearing (Doc. 86, hereafter "Transcript") multiple times, defendant and counterclaimant Jack Daniel's Properties, Inc. ("JDPI") remains at a loss to know what it is that VIP is asking the Court to "clarify." The Court's ruling is quite clear: the documents produced by VIP after the close of discovery, including on the day of the hearing itself, and objected to by JDPI on that ground, were produced untimely and cannot be used as evidence in this case, regardless of their potential admissibility under the rules of evidence. (Tr. 30:12–31:17.)

To the extent that VIP's argument is that it was caught off guard by the Court's ruling precluding use of the challenged documents, that argument is disingenuous *at best*. The parties exchanged letters and conducted a meet-and-confer on this issue. JDPI's request that these documents be precluded from use due to their untimely disclosure was not news to anyone. VIP—just like the Court and JDPI—knew that one of the purposes of the hearing was to decide whether VIP would be allowed to use the documents produced after the close of discovery. VIP's belated claims of ignorance should not be countenanced. The Motion should be denied as an untimely Motion for Reconsideration in violation of Local Rule 7.2(g), or, in the alternative, as baseless.

## II. REGARDLESS OF WHETHER IT IS A MOTION FOR RECONSIDERATION OR CLARIFICATION, VIP'S MOTION IS PROCEDURALLY FLAWED

### A. VIP's Motion Is An Untimely Motion for Reconsideration.

VIP explicitly states in the first sentence of the Motion that it is moving "the Court, under Local Rule 7.2(g)." (Mot. 1.) Local Rule 7.2(g) is titled "Motions for

Reconsideration." Based on VIP's express reliance on the local rule governing "Motions for Reconsideration," the Motion should be treated as a motion for reconsideration.

Applying the rules governing motions for reconsideration, VIP's motion is untimely and should be denied on that basis alone. Local Rule 7.2(g)(2) is clear that "Absent good cause shown, any motion for reconsideration shall be filed no later than fourteen (14) days after the date of the filing of the Order that is the subject of the motion." The Court's Order issued August 31, 2015 and, thus, the deadline for filing a motion for reconsideration was September 14, 2015. VIP's Motion was not filed until a week later, on September 21, 2015. VIP argues that the "motion was filed as soon as practical after discovering a potential ambiguity in the Court's ruling." (Mot. 4.) "As soon as practical," however, does not satisfy the good cause standard, and the Motion should be denied as untimely filed.

### B. Assuming, *Arguendo*, That The Motion *Is* A Motion For Clarification, There Is Nothing To Clarify.

For the sake of argument, if it is assumed that the Motion is indeed a motion for clarification and not a motion for reconsideration, there is simply nothing for the Court to clarify and the Motion should be denied on that ground. This is clear just from reading VIP's Motion, which cites the Court's express holding: "With regard to the four images produced by the experts, they will not be admissible. They will not be used. . . Next is the request for all these PTOs that were produced . . . The discovery deadlines were clear and now to come back and say it was too laborious for the plaintiff[] to produce these, it rings hollow." (Mot. 3–4; Tr. 30:12–13; 31:10–17.) The Court's ruling was clear—the untimely produced documents which were objected to by JDPI on that basis will not be used in this case. The Court made this ruling based on the untimeliness of the production, not on whether the documents violated the rules of evidence.

In an apparent attempt to gin up ambiguity where none exists, VIP quotes the Court as saying "And, of course, what comes after that, even if you produce them, that doesn't always mean that they are necessarily admissible," (Mot. 3) and then argues that "[t]he

1  Court agreed with VIP's counsel that the issue before the Court was not whether the
2  documents were admissible, but whether the disclosure was proper." *Id*. What the Court
3  was really saying, of course, and which is uncontroversial, is that just because something
4  was produced does not mean it is admissible. But the Court's **ruling** was clear: even if the
5  untimely-produced documents might be admissible under the Rules of Evidence if they
6  had been timely produced, they will not be used in this case because of their untimely
7  production.

### III.     PLAINTIFF'S MOTION SHOULD ALSO BE DENIED ON THE MERITS

     **A.**    **VIP's Claim of Surprise Rings False.**

On August 18, 2015, JDPI informed VIP that its production of documents after the close of discovery was untimely and JDPI asked VIP to withdraw its production. (Ex. A.) On August 20, 2015, VIP responded stating, *inter alia*:

> Under the circumstances, VIP does not believe it even needs to seek leave to use these documents for motion practice or at trial; rather, **JDPI will need to take action to have the documents precluded**.

(Ex. B (emphasis added)). JDPI subsequently provided VIP with case law which supported JDPI's position and the parties had a meet-and-confer on this issue on August 26, 2015. After the August 26, 2015 meet-and-confer, JDPI **did exactly as VIP requested—sought court intervention "to have the documents precluded."** For VIP to now represent to the Court that "VIP had no way to know or anticipate a ruling regarding admissibility could be rendered" (Mot. 4.) is shocking. Indeed, VIP acknowledged, in writing, that this preclusion of the documents was the relief that JDPI was seeking in bringing this issue to the Court's attention.

The reality is that VIP was on notice—through letters and a meet-and-confer—that JDPI was seeking the *preclusion* of these untimely produced documents. If VIP were truly surprised or truly believed that the Court was not going to rule on the use of these

QB\36819612.3

3

OPPOSITION TO MOTION FOR CLARIFICATION

documents, VIP would have made some comment to that effect during the hearing. It did not.

### B. VIP's Legal Arguments are Incorrect.

After feigning surprise, VIP argues that the Court's ruling should have been limited to whether the documents were "objectionable" and that the Court erred by ruling on admissibility. This appears to be VIP's primary argument and it amounts to little more than semantic sophistry. JDPI asked the Court to do exactly what VIP said that JDPI had to ask the Court to do: "have the documents precluded." JDPI did so in accordance with the Court's procedure of addressing discovery-related matters by telephonic conference.[1]

VIP cites three authorities[2] which it contends support its position that the Court exceeded its authority by precluding the use of the untimely-produced documents during a telephonic hearing: Rule 7(b) of the Federal Rules of Civil Procedure, *Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347 (9th Cir. 1984), and *Vitello v. Ambrogio*, 130 F.3d 59 (2d Cir. 1997). None of these authorities, however, is relevant to the facts of this case.

#### 1. *Vitello* is Inapposite

*Vitello* is from a different circuit and deals with a *sua sponte* grant of summary judgment and the dismissal of an asserted claim. The court in *Vitello* reasoned that the plaintiff should at least have been given an opportunity to be heard before its claim was dismissed. That is not even remotely similar to the situation here, where the Court did ***not*** act *sua sponte*, but instead held a hearing to decide the issues that were framed by the parties during the hearing. The Court has not dismissed any claims in this case; instead all

---

[1] VIP invoked precisely the same procedure, of course, on its telephonic motion to compel JDPI to produce certain additional documents.

[2] VIP also cites a fourth case, *Harriman v. Handcock County*, 627 F.3d 22, 30 (1st Cir. 2010). However, that First Circuit case is cited solely for the unremarkable and undisputed proposition that a court considers an array of factors, including a party's justification for the late disclosure, before ruling on whether untimely evidence should be precluded.

the Court has done is to enforce the previously-issued scheduling order which put both parties on notice (1) that the "deadlines are real," (Tr. 4:7–8), and (2) that discovery closed in July. *Vitello* is totally inapplicable here, where the Court held a hearing requested by both parties, heard oral argument from counsel, and decided the issues that the parties framed during the hearing.

### 2. *Whittaker* is Inapposite

Like *Vitello, Whittaker* is also irrelevant to the present motion for clarification. There the district court "excluded as evidence of liability documents discovered in a separate antitrust action between the parties, after the discovery cutoff date in the case at bar." *Whittaker,* 736 F.2d at 1347. The appeals court held that the district court erred in excluding that evidence from a separate litigation. In doing so, however, the Ninth Circuit reaffirmed that "[d]istrict courts do have power to prescribe time limits for conducting discovery" and only faulted the district court because "a discovery cutoff date does not, however, affect admissibility of evidence obtained outside of the discovery process of the case in which the cutoff date is ordered." *Id.* This reasoning does not apply to the instant case, where the untimely produced documents were sought in the very same litigation where the discovery cutoff date was implemented.

### 3. Rule 7(b) Supports the Court's Action

Surprisingly, the third authority cited by VIP is Rule 7(b) of the Federal Rules of Civil Procedure. Rule 7(b) expressly ***permits*** oral motions to be made at "a hearing or at trial". Here, JDPI ***and VIP*** orally presented their motions and arguments, including those related to the preclusion of VIP's untimely produced documents ***during a telephonic hearing***. And while the words "motion" and "preclude" might not appear in the transcript, everyone present knew that the parties were moving for orders of the Court and that JDPI was seeking to preclude VIP's use of the untimely produced documents. VIP certainly was aware because ***it had expressly insisted that JDPI had to take action with the Court "to have the documents precluded."***

### 4. VIP's Argument That the Record is Insufficient to Support Preclusion is Also Incorrect

At the end of its motion, and apparently relying on *Vitello*, VIP argues that the Court's alleged "ruling regarding the admissibility of the documents . . . deprived VIP of its right to fully present its evidence to the Court." (Mot. 5.) This argument is incorrect legally and factually. Legally, the issue was not whether the documents were admissible under the Federal Rules of Evidence by, but rather whether the documents could be used at all by VIP because they had been produced after the close of discovery. Contrary to VIP's arguments regarding admissibility, violation of the Court's Case Management Order through the untimely production of documents is not comparable to a hearsay objection where the purpose of the evidence must be considered. Instead, the law on the preclusion issue is cut and dry and was spelled out by Judge Campbell in *Hostnut.Com, Inc. v. Go Daddy Software, Inc.,* 2006 WL 2573201, *3 (D. Ariz. 2006):

> Hostnut's evidence will also be excluded because Hostnut violated the Court's Case Management Order. Dkt. #31. That order set a deadline for completing fact discovery of March 31, 2006. Dkt. #31. The evidence Hostnut now seeks to use was not disclosed until May 30, 2006, more than two months after the discovery deadline. In effect, Hostnut asks the Court retroactively to extend the discovery deadline by two months.

*Id.*

Factually, VIP was asked by the Court for, and provided the Court with, the information surrounding its late production of documents. (Tr. 6:6–11:2.) The facts surrounding the timing of the production were fully fleshed out during the telephonic hearing. VIP's counsel admitted that the PTO documents were available to VIP throughout this litigation, (Tr. 8:3–12), but were produced only after the close of discovery, and that the photographs taken by one of VIP's experts had been taken only a few days before the hearing, long after the expert had been deposed and expert discovery had closed, and apparently in connection with testing that the expert admitted at his deposition he had failed to do. (Tr. 8:19–9:1; 9:8–10:10). VIP's admissions regarding the

untimely production of the precluded documents fully support the exclusion of the documents.

Because this Court's ruling was legally proper and VIP had full knowledge and opportunity to present its argument, VIP has failed to show "manifest error," "new facts," "legal authority," or any other reason why this Court's ruling should be disturbed.

## IV.  CONCLUSION

For the reasons stated above, VIP's motion for clarification (or reconsideration) should be denied.

DATED: October 5, 2015                    Respectfully submitted,

                                                    */s/ Isaac S. Crum*
                                                Gregory P. Sitrick  (AZ Bar #028756)
                                                Gregory.Sitrick@quarles.com
                                                Isaac S. Crum (AZ Bar #026510)
                                                Isaac.Crum@quarles.com
                                                Quarles & Brady LLP
                                                Firm State Bar No. 00443100
                                                One Renaissance Square
                                                Two North Central Avenue
                                                Phoenix, AZ 85004
                                                Telephone (602) 229-5200
                                                Fax (602) 229-5690

                                                SEYFARTH SHAW LLP
                                                Christopher C. Larkin
                                                (admitted pro hac vice)
                                                clarkin@seyfarth.com
                                                2029 Century Park East, Suite 3500
                                                Los Angeles, California 90067-3021
                                                Telephone: (310) 201-5289
                                                Facsimile: (310) 201-5219

                                                *Attorneys for Jack Daniel's Properties, Inc.*

**CERTIFICATE OF SERVICE**

1   I hereby certify that on October 5, 2015, I electronically filed the foregoing with the
2   Clerk of Court using the CM/ECF system, which will send a notification of such filing
3   (NEF) to all counsel of record in this case.

                                       */s/ Isaac S. Crum*
                                       Isaac S. Crum