# Exhibit 8

1  Firm E-Mail: courtdocs@dickinsonwright.com

2  David G. Bray (#014346)
   dbray@dickinsonwright.com

3  Frank G. Long (#012245)
   flong@dickinsonwright.com

4  David N. Ferrucci (#027423)
   dferrucci@dickinsonwright.com

5  **DICKINSON WRIGHT, PLLC**
   1850 North Central Avenue, Suite 1400

6  Phoenix, Arizona 85004
   Phone: (602) 285-5000
   Fax: (602) 285-5100

7
   *Attorneys for VIP Products, L.L.C.*

8

9              **IN THE UNITED STATES DISTRICT COURT**

10                    **DISTRICT OF ARIZONA**

11 | VIP Products, L.L.C., an Arizona limited | No. 2:14-cv-02057-DGC
      liability company,

12                                           | **PLAINTIFF AND**
                  Plaintiff,                 | **COUNTERDEFENDANT VIP**

13                                           | **PRODUCTS, L.L.C.'S RESPONSES TO**
             v.                              | **JACK DANIEL'S PROPERTIES, INC.'S**

14                                           | **SECOND SET OF INTERROGATORIES**

15 | Jack Daniel's Properties, Inc., a Delaware
      corporation

16
                  Defendant.

17

18 | Jack Daniel's Properties, Inc.,
      a Delaware corporation,

19

20                Counterclaimant,

21             v.

22 | VIP Products, LLC, an Arizona limited
      liability company,

23
                  Counterdefendant

24

25

26

27

                         1

1       Plaintiff and Counterdefendant VIP Products, LLC ("VIP" or "Plaintiff"), by and

2  through undersigned counsel Dickinson Wright PLLC, hereby submit, pursuant to Rule 33 of

3  the Federal Rules of Civil Procedure, their Responses to the Second Set of Interrogatories

4  served by Defendant and Counterclaimant Jack Daniel's Properties, Inc. ("JDPI").

5                                 **GENERAL OBJECTIONS**

6      1.    Plaintiff has not completed its investigation of the facts related to this case, its

7  discovery, or its preparation for trial.  Plaintiff's responses, therefore, are made only on the

8  basis of such information and documents as it currently knows exist.  Plaintiff has not

9  completed its investigation and discovery has only just commenced in this matter.

10  Accordingly, Plaintiff's responses do not purport to constitute a final statement of its

11  knowledge regarding the particular subject and are made without prejudice to its right to in

12  addition evidence or documents at the time of trial, or to supplement its responses as

13  appropriate once it has completed its investigation, discovery and trial preparation.

14      2.    Plaintiff objects generally to the Definitions and Instructions to the extent that

15  they impose obligations broader than those imposed by the applicable Rules of Civil

16  Procedure.  Plaintiff disclaims any such broader obligation purportedly imposed by such

17  Instructions.

18      3.    Plaintiff objects generally to Defendant's Interrogatories (the "Request") to the

19  extent that any Request can be read to call for information that is protected by the attorney-

20  client privilege, the work product doctrine, or any other applicable privilege or immunity.

21  Such privileged information will not be disclosed and any inadvertent disclosure thereof will

22  not be deemed a waiver of any privilege or protection.  By accepting information in response

23  to these Requests, the propounding party expressly accepts and acknowledges this non-

24  waiver.

25      4.    Plaintiff objects to each and every Request to the extent that it seeks discovery

26  regarding matters that are not relevant to the subject matter of the pending action or that are

27  not reasonably calculated to lead to the discovery of admissible evidence.  These

1    Responses shall not constitute a waiver of any such objections.

2         5.    Plaintiff objects to each and every Request to the extent it purports to impose a
3    burden of disclosing information not readily available to Plaintiff or is equally available to
4    Defendant.  Plaintiff further objects to each and every Request to the extent it purports to
5    impose a burden of identifying documents that are not in Plaintiff's possession, custody, or
6    control, or that cannot be found in the course of a reasonable search, or that have already
7    been produced by Plaintiff or others to Defendant.  Plaintiff refers Defendant to such
8    documents for the content thereof.

9         6.    The Responses set forth herein are based on information currently known to
10   Plaintiff.  Plaintiff has not completed its investigation and discovery has only just
11   commenced in this matter.  Accordingly, Plaintiff reserves the right to supplement, amend or
12   clarify any of its responses or objections as permitted by the Federal Rules of Civil
13   Procedure.

14        7.    These Responses are given subject to and without waiving the foregoing
15   General Objections, each of which is incorporated by reference in its entirety into each of the
16   following answers.

17                 **NON-UNIFORM INTERROGATORIES**

18        **INTERROGATORY NO. 14:**   With respect to each of the products depicted in
19   paragraph 23 of the Amended Complaint, and any other product that VIP contends affects the
20   existence, protectability, or validity of the Jack Daniel's Trade Dress of Jack Daniel's Bottle
21   Design, state how long the product has been sold in its packaging and the extent of the
22   advertising and sales of the product, expressed in unit or dollar sales, and advertising
23   expenditures for the period in which the product has been sold, and Identify all persons with
24   knowledge of the sales and advertising of the products.

25        **RESPONSE:** VIP interposes its General Objections and also objects specifically to
26   this interrogatory on the ground that it is a compound interrogatory with at least four separate
27   sub-parts addressing different issues that, cumulatively, put JDPI over the limit of

1   twenty-five interrogatories permitted to each side.  VIP further objects that this interrogatory

2   is overly broad and unduly burdensome in that it asks VIP to identify "all persons" with any

3   knowledge of sales and advertising of all distillers of American whiskey and bourbon

4   products that use the standard "uniform" (as described by VIP's expert Martin Wolinsky in

5   his report) to market and sell their competing American whiskey and bourbon products.

6   There are likely hundreds if not thousands of such individuals, the identities of all of whom

7   VIP could not possibly know.  Without waiving these objections, VIP responds as follows:

8   The use by competitors of elements of Jack Daniel's claimed trade dress in their products is

9   widespread and that use is discussed and/or examined in detail, both in the expert report of

10   Martin Wolinsky and the report independently prepared by Stephen Sacra attached as Exhibit

11   "1" hereto and incorporated by reference.  Information on the history, sales and advertising

12   for these products is available from public sources, accessible equally by JDPI and, for its

13   convenience, specific website addresses for several of these products are provided in the

14   reports produced already and/or provided with these responses.  Additional knowledgeable

15   persons may be identified through discovery.

16

17   **INTERROGATORY NO. 15:**   State in detail the factual basis for VIP's allegation

18   in paragraph 27 of the Amended Complaint that the "features of Jack Daniel's Trade Dress

19   and Jack Daniel's Bottle Design are 'essential to the use or purpose' or 'affect the cost or

20   quality" of the products sold using that trade dress and design and protecting the features of

21   the Trade Dress and Bottle Design would significantly undermine a competitor's ability to

22   compete with Jack Daniel's in the sale of distilled spirits," including which features are

23   functional how the Trade Dress and Bottle Design yield a utilitarian advantage whether or not

24   alternative designs are available how advertising for Jack Daniel's Old No. 7 Tennessee

25   whiskey touts the utilitarian advantage of the Trade Dress and Bottle Design and whether the

26   Trade Dress and Bottle Design result from a comparatively simple or inexpensive method of

27   manufacture, and Identify all persons with knowledge of the factual basis for VIP's

4

1  allegation.

2      **RESPONSE:**  VIP interposes its General Objections and also objects specifically to
3  this interrogatory on the ground that it is a compound interrogatory with at least two separate
4  sub-parts addressing different issues that, cumulatively, put JDPI over the limit of twenty-
5  five interrogatories permitted to each side.  Without waiving these objections, VIP responds
6  as follows:  The utilitarian and aesthetic functionality of the alleged Jack Daniel's Trade
7  Dress and Jack Daniel's Bottle Design is supported by the expert reports of John Howard and
8  Martin Wolinsky respectively.  Further evidence is set forth in a report independently
9  prepared by Stephen Sacra attached as Exhibit "1" hereto and incorporated by reference.
10  Persons with knowledge of the factual bases for the allegations contained in Paragraph 27 of
11  VIP's Amended Complaint include Stephen Sacra, John Howard and Martin Wolinsky.
12  Additional knowledgeable persons may be identified through discovery.

13

14      **INTERROGATORY NO. 16:**   State in detail the factual basis for VIP's allegation
15  in paragraph 28 of the Amended Complaint that "elements of the Jack Daniel's Trade Dress
16  and Jack Daniel's Bottle Design are merely ornamental or decorative and do not function as
17  features signifying products from the Jack Daniel's distillery," including which elements are
18  merely ornamental and decorative, and identify all persons with knowledge of the factual
19  basis for VIP's allegations.

20      **RESPONSE:**  Evidence that the alleged Jack Daniel's Trade Dress and the Jack
21  Daniel's Bottle Design does not function as a mark to identify JDPI as the source of the JDPI
22  goods, and is not likely to be perceived as a source indicator, but serves merely as ornamental
23  features of the JDPI goods is supported by the expert report of Martin Wolinsky.  Additional
24  evidence supporting VIP's allegations that the alleged Jack Daniel's trade dress, specifically
25  the elements described and showing in paragraph 6 of JDPI's counterclaims, are merely
26  ornamental is contained in the report independently prepared by Stephen Sacra attached as
27  Exhibit "1" hereto and   incorporated  by reference.  Persons with knowledge of the

1  factual bases for the allegations contained in paragraph 28 of VIP's Amended Complaint
2  include Stephen Sacra, John Howard and Martin Wolinsky.   Additional knowledgeable
3  persons may be identified through discovery.

4

5  **INTERROGATORY NO. 17:**   State in detail the factual basis for VIP's allegation
6  in paragraph 36 of the Amended Complaint that the "combination of elements of the Jack
7  Daniel's Trade Dress in generic because their primary significance is to identify any distilled
8  spirits, particularly bourbon or other corn based whiskey, rather than products from the Jack
9  Daniels distillery," and Identify all persons with knowledge of the factual basis for VIP's
10  allegation.

11  **RESPONSE:**   The factual bases for VIP's allegations that the combination of
12  elements of the Jack Daniel's Trade Dress is generic are described in detail both in the expert
13  report of Martin Wolinsky and in the report independently prepared by Stephen Sacra
14  attached as Exhibit "1" hereto and incorporated by reference.  Persons with knowledge of the
15  factual bases for the allegations contained in paragraph 36 of VIP's Amended Complaint
16  include Stephen Sacra and Martin Wolinsky.  Additional knowledgeable persons may be
17  identified through discovery.

18

19  **INTERROGATORY NO. 18:**   State in detail the factual basis for VIP's allegation
20  in paragraph 44 of the Amended Complaint that the "combination of elements of the Jack
21  Daniel's Bottle Design is generic because their primary significance is to identify any
22  distilled spirits, particularly bourbon or other corn based whiskey, rather than products from
23  Jack Daniel's distillery," and Identify all persons with knowledge of the factual basis for
24  VIP's allegation.

25  **RESPONSE:** The factual bases for VIP's allegations that the combination of elements
26  of the Jack Daniel's Trade Dress in generic are described in detail both in the expert report of
27  Martin     Wolinsky     and    in    the     report independently prepared by Stephen Sacra

6

attached as Exhibit "1" hereto and incorporated by reference.  Persons with knowledge of the factual bases for the allegations contained in paragraph 44 of VIP's Amended Complaint include Stephen Sacra and Martin Wolinsky.  Additional knowledgeable persons may be identified through discovery.

**INTERROGATORY NO. 19:**   State in detail the factual basis for VIP's allegation in paragraph 55 of the Amended Complaint that "As a matter of law, the combination of elements of the Jack Daniel's Trade Dress is non-distinctive and not entitled to trademark protection," and identify all persons with knowledge of the factual basis for VIP's allegation.

**RESPONSE:**   The factual bases for VIP's allegations that the combination of elements of the Jack Daniel's Trade Dress is non-distinctive and not entitled to trademark protection are described in detail both in the expert report of Martin Wolinsky and in the report independently prepared by Stephen Sacra attached as Exhibit "1" hereto and incorporated by reference.  Persons with knowledge of the factual bases for the allegations contained in paragraph 55 of VIP's Amended Complaint include Stephen Sacra and Martin Wolinsky. Additional knowledgeable persons may be identified through discovery.

**INTERROGATORY NO. 20:**   State in detail the factual basis for VIP's allegation in paragraph 56 of the Amended Complaint that "As a matter of law, the combination of elements of the Jack Daniel's Bottle Design is non-distinctive and not entitled to trademark protection," and Identify all persons with knowledge of the factual basis for VIP's allegation.

**RESPONSE:** The factual bases for VIP's allegations that the combination of elements of the Jack Daniel's Bottle Design is non-distinctive and not entitled to trademark protection are described in detail both in the expert report of Martin Wolinsky and in the report independently prepared by Stephen Sacra attached as Exhibit "1" hereto and incorporated by reference.  Persons with knowledge of the factual bases for the allegations contained in paragraph 56 of VIP's Amended Complaint include Stephen Sacra and Martin Wolinsky.

7

1  Additional knowledgeable persons may be identified through discovery.

2  **INTERROGATORY NO. 21:**   State in detail the factual basis for VIP's allegation
3  in paragraph 65 of the Amended Answer that "One or more of the Counterclaims are barred
4  for failure to comply with statutory requirements," including an identification of the specific
5  counterclaims that are barred by failure to comply with SPECIFIC statutory requirements,
6  and Identify all persons with knowledge of the factual basis for VIP's allegation.

7  **RESPONSE:**   Those counterclaims that rely on any U.S. Patent and Trademark
8  Office registration of any elements of the alleged Jack Daniel's Trade Dress are barred for
9  failure to comply with the requirements of 15 U.S.C. §§ 1051 and 1052 and 1127,
10  specifically § 1051(a)(2) and (3)(D) and § 1052(e)(1) and (5) and § 1127 ("Trademark").
11  Persons with knowledge of the factual bases for the statutory bars to registration include
12  Stephen Sacra, John Howard and Martin Wolinsky.  Additional knowledgeable persons may
13  be identified through discovery.

14

15  **INTERROGATORY NO. 22:**   State in detail the factual basis for VIP's allegation
16  in paragraph 67 of the Amended Answer that "The Counterclaims are barred in whole or in
17  part because one or more of Counter-plaintiff's purported marks and/or trade dress are not
18  famous, as the term is in (sic) construed under the Lanham Act," including an identification
19  of the specific counterclaims that are barred and the specific marks and trade dress that are
20  not famous, and Identify all persons with knowledge of the factual basis for VIP's allegation.

21  **RESPONSE:**   The specific Jack Daniel's elements of JDPI's trade dress and
22  trademarks  that VIP contends are not famous include:

23  • square bottle with a ribbed neck

24  • a black cap

25  • a black neck wrap closure with white printing

26  • black front label with white printing

27

- brand name in arched lettering on front label
- filigreed border on the label
- an "OLD NO." mark
- a filigreed oval design in the middle portion of the label
- the words "Tennessee" and "Sour Mash Whiskey" on the label, and
- the word "Tennessee" depicted in script

VIP notes that JDPI has the burden of proof to establish that any of the above elements of its trade dress and trademarks are "famous." The factual bases for VIP's allegations that the combination of elements of the Jack Daniel's Bottle Design does not identify and indicate the source of the goods, even if that source is unknown, and is non-distinctive and is not entitled to protection as a "famous" mark or are detailed both in the expert report of Martin Wolinsky and in the report independently prepared by Stephen Sacra attached as Exhibit "1" hereto and incorporated by reference. Persons with knowledge of the factual bases for the allegations contained in paragraph 67 of the Amended Answer include Stephen Sacra and Martin Wolinsky. Additional knowledgeable persons may be identified through discovery.

**INTERROGATORY NO. 23:** State in detail the factual basis for VIP's allegation in paragraph 68 of the Amended Answer that "The Counterclaims are barred because Counter-Defendant's conduct constitutes fair use," and Identify all persons with knowledge of the factual basis for VIP's allegation.

**RESPONSE:** VIP incorporates by reference its responses to JDPI's interrogatory numbers 9 and 10 previously submitted on March 11, 2015. Also, VIP adds that its use of the design elements that JDPI alleges are "Jack Daniel's Trade Dress" is: use that VIP made only to describe Jack Daniel's Old No. 7 Tennessee Whiskey which, (assuming for purposes of argument that the alleged trade dress qualifies as protected trade dress) is not readily identifiable without use of the selected design elements; use that was limited to only that

use reasonably necessary to identify the Jack Daniels' Old No. 7 Tennessee Whiskey product; and use that did not involve anything that would, in conjunction with that use, suggest sponsorship or endorsement by JDPI. Persons with knowledge of the factual bases for the allegations contained in paragraph 68 of the Amended Answer include Stephen Sacra and Martin Wolinsky. Additional knowledgeable persons may be identified through discovery.

**INTERROGATORY NO. 24:**   State in detail the factual basis for VIP's allegation in paragraph 69 of the Amended Answer that "The Counterclaims are barred in whole or in part by reason of other parties' prior or current use of marks and/or trade dress similar to Counter-Plaintiff's purported marks and/or trade dress," Identify each referenced party, and Identify all persons with knowledge of the factual basis for VIP's allegation.

**RESPONSE:**   The factual bases for VIP's allegations in paragraph 69 of the Amended Answer are detailed both in the expert report of Martin Wolinsky and in the report independently prepared by Stephen Sacra attached as Exhibit "1" hereto and incorporated by reference. Additional factual information is being or will be provided through document production. Persons with knowledge of the factual bases for the allegations contained in paragraph 69 of the Amended Answer include Stephen Sacra and Martin Wolinsky. Additional knowledgeable persons may be identified through discovery.

**INTERROGATORY NO. 25:**   State in detail the factual basis for VIP's allegation in paragraph 70 of the Amended Answer that "The Counterclaims are barred in whole or in part because Counter-Defendant's alleged marks and/or trade dress are invalid, unenforceable and/or not infringed," and Identify all persons with knowledge of the factual basis for VIP's allegation.

**RESPONSE:**   The factual bases for VIP's allegations in paragraph 70 of the Amended Answer that the JDPI Trade Dress and Bottle Design are invalid and unenforceable

1  are detailed both in the expert report of Martin Wolinsky and in the report independently

2  prepared by Stephen Sacra attached as Exhibit "1" hereto and incorporated by reference. As

3  for the allegation that JDPI's marks are not infringed, VIP incorporates by reference is

4  responses to JDPI's interrogatory numbers 9 and 10 previously submitted on March 11, 2015.

5  Persons with knowledge of the factual bases for the allegations contained in paragraph 70 of

6  the Amended Answer include Stephen Sacra and Martin Wolinsky.   Additional

7  knowledgeable persons may be identified through discovery.

8

9  **RESPECTFULLY SUBMITTED** this 17th day of June, 2015.

10  **DICKINSON WRIGHT PLLC**

11

12

13  By: _____

   David G. Bray

   Frank G. Long

14  David N. Ferrucci

15  1850 North Central Avenue, Suite 1400

   Phoenix, Arizona  85004

16  *Attorneys for VIP Products, L.L.C.*

17

18

19

20

21

22

23

24

25

26

27

11

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2015, I e-mailed and mailed Plaintiff and Counterdefendant VIP Products, LLC's Responses to Defendant and Counterclaimant Jack Daniel's Properties, Inc.'s Second Set of Interrogatories to each of the parties set forth below:

Christopher C. Larkin, Esq.
clarkin@seyfarth.com
SEYFARTH SHAW LLP
2029 Century Park East, Suite 3500
Los Angeles, California  90067-3021
*Attorneys for Jack Daniel's Properties, Inc.*


Gregory P. Sitrick, Esq.
Gregory.sitrick@quarles.com
Isaac S. Crum, Esq.
Isaac.Crum@quarles.com
QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004-2391
*Attorneys for Jack Daniel's Properties, Inc.*

Kristi A. Arendt

## VERIFICATION

STEPHEN SACRA hereby declares under penalty of perjury:

That he is the owner and manager of plaintiff/counter-defendant VIP Products, LLC ("VIP") and that he is authorized to make this verification on VIP's behalf, that he has read the foregoing Response to Defendant's Second Set of Interrogatories, and that the answers contained herein are true and correct based upon his own knowledge, information and belief.

Executed within the State of Arizona this 17th day of June, 2015

STEPHEN SACRA

PHOENIX 53913-11 222498v1

# EXHIBIT 1

# American Whiskey/Bourbon Report

**June 6th 2015**
**Written and Compiled By Stephen Sacra**
Owner of VIP Products and creator of the "Bad Spaniels" Parody dog toy

**Purpose:**

The purpose of this report is to evaluate and statistically analyze the use of bottles and labels in the whiskey and bourbon industry. The goal is to identify and collect data of each "Brand House" portfolio, and the list of brands that are being produced, or claim to originate in the states of Tennessee and Kentucky. Further, this report will identify market competitors, competing brands, and the use of both broad and specific characteristics of bottles, bottle features, labels, and label features present in today's market and throughout history, going back to birth of bottling spirits. In the end, this report will provide a clear and statistical analysis of bottling and labeling practices of the Whiskey and Bourbon Industry, and more specifically how it relates to Jack Daniel's bottle design and alleged bottle trade dress.

## Who is Stephen Sacra?

### Education & Design Background:

My name is Stephen Sacra and my education consists of a bachelor's degree from Arizona State University from the school of engineering for integrated computer graphics and 3D multimedia. Of my 5 years degree, 3 of those years were spent in the school of architecture studying for industrial design. My shift to the school of engineering was to incorporate the use of computers into my education in design. I have been designing and manufacturing products for my own companies and companies of others as far back as 1995, giving me 20 years of experience with the process and development of molded and injected products, manufacturing, marketing and distribution.

### Liquor Industry Background:

Let's get to the point... I was never the CEO of the largest liquor distributor in the world, and I don't have 50 years experience as the head of marketing for a billion dollar liquor company, and it goes without saying I am not a lawyer either. I guess that is why I have to hire experts and lawyers to present facts that my own personal experience has taught me to be true.

So what is my experience?  At the age of 21..... 22 years ago.....which is half of my existence, I got a job working for Anheuser Busch promoting and launching brands into the market. This amazing job lasted through my college years and meant that I spent every afternoon and every night, year after year in a bar drinking and promoting alcoholic beverages. During which time, I met my now wife, 20 years ago, who also worked in marketing and promotions for Miller Brewing Company and Bacardi. My wife worked in the liquor industry until the early 2000s and It took me those 7 years to convince her to marry me, which means I was in a bar every night promoting or aiding in the promotions of alcohol for the better part of 10 years.

Since I was always in a bar.... cooking was not on the forefront of my skill set and the habit of eating out for every meal, sitting at a bar, conversing with industry staff, has become part of my life. To this day, I eat minimum of 2 times a day 365 days year in a restaurant or bar, 95% of which I sit at the bar staring directly at the back bar full of alcohol.  It is safe to say that in 22 years of the 16,060 meals that I have consumed, I have had over 10,000 in a bar or restaurant. So, at the minimum, I can say that compared to anyone else who is reading this... I without a doubt am an expert at eating out, talking with bar staff, and staring at bottles alcohol and their sizes shapes and colors on the back bar.

SAC0002

**Tequila Collector, With Largest Private "Bottle" Collection in the USA:**

Somewhere along the way, I fell in love with tequila and when I moved into my last house, I decided to build the first ever "Tequila Room". This room pictured below is a 225 square foot tequila room with over 600 different bottles of the more unique tequilas of the over 3000 in production that I have learned exist or existed. This room is chilled down to 57 degrees, the perfect temperature for consuming straight from the bottle. To date, I believe that I have the largest "private" collection of tequila in the United Sates, and my network of Mexican tequila distillers, and industry friends that work for the big brand houses, tell me they know of no one else that has come forth to challenge my claim.

The shelves below are as deep as a wine bottle is tall and behind every bottle you see are 2 more bottles.



SAC0003

As a collector of tequila, I am not only collecting what is inside the bottle, but I am collecting unique one of a kind hand crafted bottles to display in this amazing room. The fact is….Mexico is one of the only countries that believes that the heritage of true craftsmanship should be displayed on the outside of a bottle, and they honor this tradition by selling their premium tequilas in truly unique one-of-a-kind bottles handmade from a true artist. I have 7 years collecting and shopping for tequila bottles, and my experience has taught me how to distinguish the difference between a unique bottle and an Industry bottle. With a room that is now full, I am now only on the quest for the most unique.



Bottle to the right is an example of a hand crafter one of a kind.

SAC0004

# Reporting Method

### Scope:

This Report focuses specifically at American whiskey/bourbon Industry. Bad Spaniels dog toy is a parody of an American whiskey/bourbon and, thus, including spirits from other countries would make this report overly broad.

### Inclusion of Competitors:

The word "competitive" is extremely important because you cannot understand the industry until you have identified the market competitors.  This report focuses on collecting, and presenting data for the competitors in the American whiskey/bourbon Industry as a whole. The report looks at all the companies equally and compiles data found for Brown Forman, Jack Daniel's and their competitors both large and small. By looking at the entire market segment, this report is able to look at Jack Daniel's as a percentage of an industry and evaluate the Jack Daniel's business on an even playing field with their competitors.

### Narrowing of Scope:

 In order to get a good sample of the market without having to look at every bottle in existence, I narrowed the focus to the largest producers of American whiskey/bourbon in Tennessee and Kentucky, representing the largest segment of the market and the most number of bottles sold, generating the largest portion of the industry revenue.

### Collection of Data:

Data for this report was collected from the internet and a few months of research that I have put into learning more about the industry, Brown Forman, and more specifically its immediate competitors. The data I collected is in the form of images of bottles, referenced against the brand's website, or past website, and data from industry advertisements and internet blogs and historical websites. Each bottle used is numbered and referenced in the calculation of data spreadsheets. Each bottle shown, to the best of my knowledge and research is sold, was sold, or is being sold in the global market.

### Defining the Industry Pyramid Structure:

 The American whiskey/bourbon Industry can be broken down as Follows:

**Brand House** - This is the mother company that owns the portfolio of the industry brands. The brand houses are the TRUE companies that compete against one another in the market place. Each brand house will have many brands in its portfolio.

**Distilleries** – These are the factories owned by the brand houses that produce the product that is packed and marketed as the different brands found in the global market place.

**Brands** – Inside each brand house is a list of brands that are marketed and sold, and many brands are made by the same distilling factories.

**Styles/Blends** – Inside each brand are different styles of products that are produced and marketed under each brand. Many brands duplicate styles and blends and others have one of a kind styles and blends.

SAC0005

## Method for Collection of Data:

### General Steps:

1. Research and determine all the major brand houses making products in Kentucky and Tennessee that are "competitors" to Jack Daniel's.
2. Research and include all the distilleries under the brand house
3. Research and include all of the American whiskey /bourbon brands of each house
4. Research and Include all of the styles and blends of each brand
5. Compile a list of features identified by Jack Daniel's as a part of their alleged bottle trade dress and trademarks
6. Research a list of styles, blends, and brands of each house distillery
7. Find visual representations of each of the above results using the internet
8. Look at each visual representation found and compare it to the list of features identified by Jack Daniel's as a part of their alleged bottle trade dress and trademarks.
9. Compile the data in a spreadsheet separating by each brand house which represents each competitor of the mother company Brown Forman, owners of Jack Daniel's.
10. Compile the data in a spreadsheet with all brands and styles as a total.
11. Research financial data for Each brand house from the SEC to determine who would be considered Brown Forman/Jack Daniel's equivalent competitor in both brand house and brands.

### Method & Steps to Analyze Bottle Design and Trademark:

1. Separate bottles by shape, then style, and identify groups of bottles with similar characteristics.
2. Calculate the % that each style of bottle represents as part of the whole.

### Method & Steps to Analyze Ornamental Label Design and Alleged Bottle Trade Dress:

1. Sort bottles by features identified by Jack Daniel's as a part of their alleged bottle trade dress
2. Calculate the % that each feature represents as part of the whole.

SAC0006

# Bottle Design Analysis

A Statistical Evaluation of Data Collected from Reviewing 114 Bottles

From 7 Brand Houses and Others

(See spreadsheet for individual detail and bottle data)

SAC0007

## Background

### Trademark Office Registration, No. 4,106,178

Jack Daniel's Properties, Inc. ("JDPI"), owned by Brown Forman Inc, the owners of the Jack Daniel's portfolio, claims that it holds a trademark in "a square shape bottle container . . . for distilled spirits." The Jack Daniel's bottle shape has a U.S. Patent and Trademark Office Registration, No. 4,106,178, for "the three-dimensional configuration of the square shaped bottle container for the goods, having an embossed ridge or scalloped design on the neck portion of the bottle, and an embossed signature design comprised of the words 'JACK DANIEL'" (see Amended Complaint, paras. 18 and 21, and Amended Answer, paras. 18 and 21).

### Illustration on Right

The Jack Daniel's bottle design as illustrated in the Trademark Office registration

### Primary Features

The Jack Daniel's bottle design has three primary features:

(1) a square shaped bottle container

(2) an embossed ridge or scalloped design on the neck portion of the bottle, and

(3) an embossed signature design.

## Statistical Objectives

VIP reviewed 114 bottles used by American whiskey/bourbon brands to determine whether the combined three elemental features of the Jack Daniel's bottle design are:

1. Basic design features common in the industry for distilled spirits, particularly bourbon and other American whiskey; features that, if allowed to be used exclusively by Jack Daniel's, would significantly undermine a competitor's ability to compete with Jack Daniel's in the sale of distilled spirits
2. design elements that are merely ornamental or decorative and do not function as features signifying products from the Jack Daniel's
3. A combination of features that is generic for distilled spirits in general or American whiskey in particular because their primary significance is to identify any distilled spirits, particularly bourbon or other American whiskey, rather than products from Jack Daniel's
4. A mere refinement of or variation on existing bottle design or bottle trade dress with the field of distilled spirits and whiskey in particular.

The following pages reveal the results of that review and an analysis of those results and the conclusions drawn from that analysis.

SAC0008

## Summary of Results for Bottles & *SHAPES*:

**SEE Spreadsheet of collected data

**Brand Houses:**

|  | BRAND HOUSE | Number Of Bottles Reviewed | Reported 2013 Revenue (As Reported to the SEC) | Percentage Bottles / Total |
|---|---|---|---|---|
| 1 | Alltech | 3 | Private | 3% |
| 2 | Beam Suntory | 25 | 3,148,400,000.00 | 22% |
| 3 | Brown Forman | 13 | 3,784,000,000.00 | 11% |
| 4 | Heaven Hill | 19 | Private | 17% |
| 5 | KBD (Kentucky Bourbon Distillers) | 12 | Private | 11% |
| 6 | Luxco | 8 | Private | 7% |
| 7 | Sazerac Brands | 21 | Private | 18% |
| 8 | Others | 13 | Unknown | 11% |
|  | TOTAL | 114 |  | 100% |
|  | As Reported to the SEC |  |  |  |
| ADVERTISING Budget Beam Suntory 2013 |  |  | 401,000,000 |  |
| ADVERTISING Budget Brown Forman 2013 |  |  | 408,000,000 |  |

**Observation:** Beam Suntory and Jack Daniel's are comparable competitors, noted by the fact that they have similar revenue and have comparable advertising budgets. Both companies are publicly traded and they both make whisky/ bourbon spirits. Beam Suntory has 12 additional brand bottles available to review in the review set.

**Listing of 12 identified Distinct Bottle Shapes: 9 | P a g e**

**Photos of bottle categories on 12 following pages

|  | Square /Round | Height | Neck fluting and faceting | Additional Shape Description | QTY | Percentage Bottles / Total |
|---|---|---|---|---|---|---|
| 1 | Round | Tall |  | Flared Bottom | 3 | 3% |
| 2 | Round | Tall |  | Wine Bottle Shape | 4 | 4% |
| 3 | Square | Tall | No | Neck: Varies | 4 | 4% |
| 4 | N/A | Vary |  | Reverse Tear Drop | 5 | 4% |
| 5 | Round | Short |  | Neck : Short | 6 | 5% |
| 6 | Round | Tall |  | Neck: Tall | 6 | 5% |
| 7 | Round | Tall |  | Neck: Tall | 7 | 6% |
| 8 | Square | Short | No | Neck: Short | 9 | 8% |
| 9 | Round | Tall |  | Neck: Short | 9 | 8% |
| 10 | Round | Tall |  | Neck: Generic Round | 11 | 10% |
| 11 | N/A | N/A |  | Unique Bottle Shape | 8 | 7% |

SAC0009

3%

Bottle Shape 1



092

091

072

American Whiskey/Bourbon Industry -   Bottle Shape (Round Flare Bottom )

SAC0010

Bottle Shape 2

4%



059  051  020  015

American Whiskey/Bourbon Industry -   Bottle Shape (Wine)

SAC0011

Bottle Shape 3



096   102   071   008

American Whiskey/Bourbon Industry – Bottle Shape (Square Tall ) Neck (No Scallop) 4%

SAC0012

Bottle Shape 4



017    037    011    060    002

**4%**

**American Whiskey/Bourbon Industry -    Bottle Shape (Reverse Tear Drop)**

SAC0013

Bottle Shape 5

5%



080

050

046

022

090

067

American Whiskey/Bourbon Industry -   Bottle Shape (Round Short)   Neck (Short)

SAC0014

Bottle Shape 6

5%



101

097

084

093

095

094

American Whiskey/Bourbon Industry -   Bottle Shape (Round)   Neck (Scalloping)

SAC0015

Bottle Shape 7



039     041     068     089

073     053     61

SAC0016

American Whiskey/Bourbon Industry -     Bottle Shape (Round Short)     Neck (Tall)     **6%**

Bottle Shape 8



001     003     023     026

012     013     078     083     088

SAC0017

American Whiskey/Bourbon Industry -    Bottle Shape (Square)   Neck (Short No Scallop)     **8%**

Bottle Shape 9

8%



055   056   054   058   087   085

077   079   014

Neck (Short)   Bottle Shape (Round Tall)

American Whiskey/Bourbon Industry -

SAC0018

Bottle Shape 10



036   034   086      019   042   066

018   045   048      016   043

SAC0019

American Whiskey/Bourbon Industry -    Bottle Shape (Industry Generic Round)         10%

Bottle Shape 11

7%



025

010

047

057

076

075

009

069

American Whiskey/Bourbon Industry - Bottle Shape (Unique)

SAC0020

Bottle Shape 12



American Whiskey/Bourbon Industry -  Bottle Shape (Industry Generic Square)
Neck (Industry Generic Fluting or Faceting)
36%

Jack Daniels  6%
Jim Beam  11%
Other Brands  19%

SAC0021



***This page is designed as a visual aid for you to see all of the design subsets together and easily recognize that among 114 bottles reviewed the most "Common and Generic" are square with fluted or faceted necks

SAC0022

**Statistics of Bottle Shape # 12 (Industry Generic Square)**

42 Square Bottles with Neck Fluting and Faceting   (36% )

|   | BRAND HOUSE | Number Of Bottles | Comment | Percentage Bottles / Total |
|---|---|---|---|---|
| 1 | Alltech | 0 | | 0% |
| 2 | Beam Suntory | 12 | 11 Brand Embossed Bottle | 29% |
| 3 | Brown Forman | 9 | 7  Brand Embossed Bottle | 21% |
| 4 | Heaven Hill | 8 | | 19% |
| 5 | KBD (Kentucky Bourbon Distillers) | 2 | | 5% |
| 6 | Luxco | 4 | | 10% |
| 7 | Sazerac Brands | 4 | | 10% |
| 8 | Others | 3 | | 7% |
| | TOTAL | 42 | | 100% |

**Statistics of 21 Square Bottles with Neck Fluting and Faceting and Including Embossed Brand**

*Matches the 3 primary features of bottle design claimed in Jack Daniel's Trademark reg no. 4,106,178

|   | BRAND HOUSE | Number Of Bottles | Comment | Percentage Bottles / Total |
|---|---|---|---|---|
| 2 | Beam Suntory | 11 | Brand Embossed Bottle | 61% |
| 3 | Brown Forman | 7 | Brand Embossed Bottle | 39% |
| | TOTAL | 18 | | 100% |

**Conclusions:**

1. The bottle design with the largest percentage in the market, at 36%, is the generic "square" bottle with fluting or faceting on the neck. The next closest shape is the generic "round" bottle at 10%. These two bottle styles represent 46% of all the shapes reviewed in this study.
2. The 2 larger brand houses, Beam Suntory and Brown Forman, represent collectively 7 billion dollars of the spirit market and appear to be equivalent competitors in the American whiskey/bourbon segment of the market.
3. Beam Suntory has 11 bottles that incorporate a square bottle with fluting or faceting, and an embossed logo and Jack Daniel's has 7.
4. There are 18 Bottles in the bottles reviewed that are square bottles with neck fluting and/or faceting with and embossed brand.  61% of these bottles are produced by Beam Suntory, and 39% are produced by Jack Daniel's.
5. These 18 bottles represent 16% of the total bottles reviewed giving Beam Suntory 9.7% of the total 114 gottles reviewed and Jack Daniel's 6.3%
6. 48% of bottles reviewed are square in shape

**Margin of Error:**

With the sampling size of over 100+ bottle the addition or exclusion of any one bottle would only modify the findings less that 1%. It would require an allowance or disallowance of 20+ bottles to the largest subset to make a significant change in the outcome. Otherwise the findings of fact would remain unchanged.

SAC0023

## Corporate Financial Information

Identification of a Brown Forman Competitor in Gross Sales

And

Comparable Advertising and Marketing Expenditures

SAC0024

# 20012 & 2013 SEC Filings

## BEAM - Beam Inc

|  | Y 2013 | Y 2012 |
|---|---|---|
|  | 12/30/2013 | 12/30/2012 |
| Sales | $3,148,400,000 | $3,063,900,000 |
| Less: Excise taxes | ($601,100,000) | ($604,200,000) |
| Net sales | $2,547,300,000 | $2,459,700,000 |
| Cost of goods sold | $1,067,900,000 | $1,023,700,000 |
| Gross profit | $1,479,400,000 | $1,436,000,000 |
| Advertising and marketing expense | $401,000,000 | $398,700,000 |
| Selling, general and administrative expense | $392,200,000 | $412,900,000 |
| Amortization of intangible assets | $17,500,000 | $17,200,000 |
| Gain on sale of brands and related assets | ($13,200,000) | - |
| Restructuring charges | $15,300,000 | $4,300,000 |
| Business separation costs | - | $13,800,000 |
| Asset impairment charges | $49,500,000 | $15,600,000 |
| Operating income | $617,100,000 | $573,500,000 |
| Interest expense | $91,600,000 | $109,000,000 |
| Loss on early extinguishment of debt | $56,900,000 | - |
| Other income | ($8,800,000) | ($35,100,000) |
| Income from continuing operations before income taxes | $477,400,000 | $499,600,000 |
| Income taxes | $111,900,000 | $96,200,000 |
| Income from continuing operations- Beam Inc. | $365,500,000 | $403,400,000 |
| (Loss) income from discontinued operations, net of tax | ($3,000,000) | ($18,200,000) |
| Net income | $362,500,000 | $385,200,000 |
| Less: Noncontrolling interests related to discontinued operations | - | - |
| Net income attributable to Beam Inc. | $362,500,000 | $385,200,000 |

## BFB - Brown Forman Corp

|  | Y 2013 | Y 2012 |
|---|---|---|
|  | 4/29/2013 | 4/29/2012 |
| Net sales | $3,784,000,000 | $3,614,000,000 |
| Excise taxes | $935,000,000 | $891,000,000 |
| Cost of sales | $894,000,000 | $928,000,000 |
| Gross profit | $1,955,000,000 | $1,795,000,000 |
| Advertising expenses | $408,000,000 | $395,000,000 |
| Selling, general, and administrative expenses | $650,000,000 | $610,000,000 |
| Amortization expense | $0.00 | $3,000,000 |
| Other expense (income), net | ($1,000,000) | ($1,000,000) |
| Operating income | $898,000,000 | $788,000,000 |
| Interest income | $3,000,000 | $3,000,000 |
| Interest expense | $36,000,000 | $31,000,000 |
| Income before income taxes | $865,000,000 | $760,000,000 |
| Income taxes | $274,000,000 | $247,000,000 |
| Net income | $591,000,000 | $513,000,000 |

## Observations:

Beam Suntory and Jack Daniel's are Comparable competitors, they both have comparable advertising budgets, they are both publicly traded, and they both make whisky/ bourbon spirits.

SAC0025

## Additional Observations Regarding Bottle Shape

Line Drawings Comparing Past and Present Bottle Design

Comparing Jim Beam and Other Brown Forman Brands Side By Side with Jack Daniel's

SAC0026

## Additional Observations Regarding Bottle Shapes:

http://designcue.com/case/jack-Daniels/



| previous silhouette | slight modifications | evolved silhouette |

"The design stays true to the legacy of the original square bottle with fluted neck that Mr. Jack selected back in 1895"

### Observations:

It appears that the company called Cue is the brand design company that played a pivotal role in the bottle redesign, as they have posted the above image on their site. This image shows clearly that the intention was to make a slight modification to an existing bottle shape. In the pictures to follow you will want to note that the "Previous" bottle is almost identical to the Jim Beam bottle. The differences you can see are also "Slight Modifications" between all of the bottles amongst brands old and new

SAC0027

## Additional Observations Regarding Bottle Shapes:



Bottle Overlay
@ 50% Opacity

---

**Conclusions:**

At some point in business Jack Daniel's owned by Brown Forman, and Jim Beam were using bottles and labels that are remarkably similar. As you can see from the photo, both bottles are square in shape , both have fluting or faceting of the neck, have an embossed logo , have ingress areas for the placement and protection of labels, have similar bulb shape necks, and have similar rounded top and bottom bodies.

** All images were acquired from the internet and had to be scaled based on pixel and image size. These are general images for comparison purposes only. Perfect representations do not change the facts stated above.

SAC0028

## Additional Observations Regarding Bottle Shapes:



Bottle Overlay @ 50% Opacity

**Conclusions:**

Brown Forman is the owner of both of the following Brands: Jack Daniel's and Early Times Whiskeys. It appears that Brown Forman has adopted the use of its Jack Daniel's square bottle shape, use of fluting & faceting on the neck to help consumers identify Early Times as a whiskey. This does not make Early Times unique, or Jack Daniel's.

** All Images were acquired from the internet and had to be scaled based on pixil and Image size. These are general images for comparison purposes only . Perfect representations do not change the facts stated above.

SAC0029

## History Lesson

**115 Years of Competitors using the Same Bottle Shape & Bottle Trade Dress**

The history of the Square Bottle with

Observations that Show Competitors Used the Same Jack Daniels Bottle Trade Dress

SAC0030

## Historical Observations:



http://www.sha.org/bottle/igco_1906.htm

### Observations:

The above is page 126 from the 1906 catalog from Illinois Glass Company, and page 152 from the 1926 catalog for the same bottle. You see on the left and right side the bottle was named "The Alton Square, Flint Brandy" bottle. It is easy to conclude that… if this bottle was available in the general catalog, then any producer of whiskey could purchase and adopt this bottle shape to sell and promote their whiskey.  (Further down, you will see several examples of these same bottles with different brands)

SAC0031

## Historical Observations (continued):

Owens Illinois 1906 catalog teaches us, on page 3, the Introduction Page of the catalog, that bottles displayed in the catalog are common. The following sentence below is printed, and clearly agrees with the above conclusion.

*"Of necessity only bottles of Common use and designs are shown in a catalogue of this kind, all special and proprietary designs belong to our customers. "*

---

ILLINOIS GLASS CO.

❦❦❦❦❦❦❦❦❦❦❦

### *Subject Matter:*

Of necessity, only bottles of common use and design are shown in a Catalogue of this kind, all special and proprietary designs belonging to our customers. The volume of our sales on Private Mould bottles, designed and used for special needs, largely exceeds that on stock ware. Were the object of this book simply to make it original and to advertise the extent of our business, it would present a very different appearance. Under the caption of "Moulds for Special Shapes," page 20. we have tried in brief to offer a few suggestions to users of special bottles, which we trust may be of value.

---

**Observations of the Entire Catalog** (too large to display in report)

If you look closely and examine the entire Illinois Glass Co. catalog you will see that the catalog is segmented into bottle types. You can see at the top of page 126, the page is called Liquor Bottles. This catalog teaches that certain styles of bottles were sold specifically for bottling alcohol. You can also see that they identify the type of alcohol that would be associated with the shape of the bottle.

The entire catalog is indexed and categorized by bottle function and type. (i.e. prescriptions, pomades, pickles, liquor etc.)  When necessary, each bottle represented on each page is identified with an even more specific functional purpose and use. (i.e. brandy, whiskey etc.)

This indicates that bottle shapes and sizes had become functionally recognized by the public. Consumers and manufactures alike recognized the connection between bottle shape and size and more specifically bottles used for containing distilled spirits, thus, making shape "Functional".

For bottles that had no specific function, the bottles were simply classified by their shape or size.  Another teaching that function is directly related to the shape of a bottle and its publicly recognized use is what defines that function and how it is categorized.

Jack Daniel's early bottles, match the "Alton Square" verifying that the shape of the Jack Daniel's bottle was is "Common Use". See next set of images showing early bottles of Jack Daniel's.

SAC0032

## Historical Observations (continued):

The below excepts are from the website:



www.sha.org which is the "Society for Historical Archaeology"

Formed in 1967, the Society for Historical Archaeology (SHA) is the largest scholarly group concerned with the archaeology of the modern world (A.D. 1400-present). The main focus of the society is the era since the beginning of European exploration. SHA promotes scholarly research and the dissemination of knowledge concerning historical archaeology. The society is specifically concerned with the identification, excavation, interpretation, and conservation of sites and materials on land and underwater. Geographically the society emphasizes the New World, but also includes European exploration and settlement in Africa, Asia, and Oceania.



**Tall Square Long-necked Spirits bottles**: Another fairly popular form for liquor bottles is as pictured to the left with a moderate height and width square body and a relatively long neck.  The body sometimes has a very slight taper in from shoulder to heel and the finishes are dominated by the brandy and straight brandy types.  This general shape seems to have originated, or at least become popular, by the 1890s and was most used during the first two decades of the 20th century, i.e., 1900-1920 (Wilson & Wilson 1978; Barnett 1987).

The *Illinois Glass Company, Swindell Brothers,* and other glass maker catalogs of the early 1900s called this style the "Boston Square Brandy" and made it in an assortment of sizes from 2 ozs. (sample size) to a quart (Swindell 1902; IGCo. 1906; Alther 1909; Cumberland 1911).  Click on illustration to the right.  The *Agnew Co.* (1894) called their version the "Tall Boston Brandy."  The necks and/or shoulders can have decorative molded features like swirls and fluting.

SAC0033

The pictured bottle is a typical, though slightly smaller than average, example of the style containing a pint (i.e., "8 to the gallon"). It was made for the *Louis Taussig Co.*(San Francisco, CA.) and was likely a generic spirits container for an assortment of that company's products. This example was blown in a two-piece cup-bottom mold, has an improved-tooled straight brandy (more or less) finish, plentiful air venting marks throughout the bottle, and a slightly pink tint caused by using manganese dioxide as a glass decolorant. This bottle was likely manufactured between approximately 1900 to 1906 as it has **715 / H** on the base which is likely the makers mark (the "H", the "715" is a mold number) for the *Holt Glass Company* (Berkeley, CA.) that was destroyed by the April 1906 San Francisco earthquake and not rebuilt (Toulouse 1971; Thomas 1998). Click on the following links to view more pictures of this bottle: base view; close-up of shoulder, neck, and finish.



**Dating summary/notes:** As noted, this style seems to have originated just before the turn of the century (19th to 20th that is) and was most popular towards the end of the mouth-blown manufacturing era just prior to National Prohibition, i.e., 1900 to 1920, though these can date as early as the 1890s (Agnew Co. 1894).

The style was largely used for and identified with spirits but has been noted with embossing or labels for medicinal products, e.g., *VIN-O-SULA CUBAN TONIC / THE GREAT DYSPEPSIA / AND KIDNEY REMEDY*. This bottle is identically shaped to the one pictured, though in the "5 to the gallon" (fifth) size. It is also mouth-blown, likely dates between 1905 and 1915 (based on shape, improved-tooled finish, multiple air venting marks, and cup-bottom mold production), and probably contained a high alcohol product as consumers of the time would have identified this shape with spirits (Lindsey 2005). It should also be noted that very similar to identically shaped bottles were used for olive oil, salad dressing, vinegar and likely other liquid food products during the first few decades of the 20th century (Zumwalt 1980).

The style was also apparently used for wine as indicated by the dark amber bottle pictured at the following links: entire bottle; base view. This bottle is clearly machine-made and embossed with URBANA WINE CO. INC. and a city in New York which can not be read. (Apologies for the poor images which were off of eBay®.) The base is embossed with the makers mark of an "H" in a triangle indicating manufacture by *J. T. & A. Hamilton* (Pittsburgh, PA.) who were in business from 1884 to 1943 (Toulouse 1971). However, this bottle most likely dates from around 1915 to 1919 (Prohibition) though could also be a "medicinal" product that was produced during Prohibition, i.e., the 1920s.

SAC0034

# Teachings from the "Society for Historical Archaeology"

1. The tall square long neck spirits bottles originated before the turn of the century. "(19th to 20th that is)". It was most "popular" towards the era just prior to National Prohibition. Giving this bottle and shape over 115 years of American history.

2. The necks and/or shoulders can have decorative molded features like swirls and fluting.

3. The tall square long neck spirits bottles was "fairly popular form for liquor bottles." This quotation does NOT say that this bottle type was popular and unique and exclusively used by the Jack Daniel's brand whiskey.

4. "The style was largely used for and identified with spirits". This sentence teaches that the identified function of the bottle was spirits, and this association would only occur as a result of it being "largely used" use in the public domain for spirits and liquor.

5. The article points to the fact that multiple glass factories produced this style and they reference 2 known producers, and point out that there were others. "The *Illinois Glass Company*, *Swindell Brothers*, and other glass maker catalogs of the early 1900s" .

6. When you observe that multiple manufactures are making identical or nearly identical bottles with slight ornamental shifts. it is easy to understand that,

   a. This bottle was a popular enough bottle that multiple manufacturers wanted the opportunity to profit from its manufacture,
   b. There were enough customers buying the bottle to be able to support multiple manufactures.
   c. There were enough wholesale customers wanting and willing to buy the bottle to drive the manufactures to produce the bottle, showing that this was not exclusive to one customer.
   d. The bottle was used in enough abundance that manufactures called to it and labeled its "function" as "spirits" and "liquor" across the industry and as a standard name, classification and function by each factory.

7. The style of bottle was apparently used for wine

8. The most important quote in this entire article is :
   "...as consumers of the time would have identified the shape with spirits (Lindsey 2005)"

In the next pages we will review a small sampling of bottle pictures that substantiate the findings of the   "Society for Historical Archaeology".

SAC0035

## Historical Observations (continued):






Craddock's Whiskey          Jack Daniels Whiskey

**Observations:**

On the left you will see a historical bottle that was manufactured for Craddock and Co. Dallas Texas for the production of whiskey. This bottle was for sale on ebay and On the right you will see three examples of historical Jack Daniel's bottles.

It is a known fact that Jack Daniel's purchased its bottles from the Owens Illinois Glass company. So the existence of the above Craddock's Sour Mash Whiskey bottle suggests one of 2 conclusions. Conclusion 1 is that the design of Alton bottle was sold to anyone as indicated by the placement in the catalog. Or the bottle was so popular and common that is was manufactured by other glass bottle manufacturers. Either conclusion shows that this was an accepted and recognized shape for American whiskey/bourbon as early as 1906.

SAC0036

## Historical Observations (continued):



Gilt Edge Whiskey

1895 Jack Daniel's

**Observations:**

On the top row, you can see examples of historical bottles that are (1)square shaped that (2)contain a fluted or faceted neck (3)with embossed writing. Jack Daniel's 1895 Replica bottle is seen to the far right. Note: In the very beginning before the application of paper labels, bottles were embossed with letters to identify the brand. It is apparent that Jack Daniel's uses embossed letters now as a reference to the history of bottle making and whiskey.

On the bottom row, you can see examples of historical bottles that are (1)square shaped that (2) contain a fluted or faceted necks. The fact that each of these brands throughout history chose to use a square bottle with a faceted or fluted neck indicates that this bottle feature combination had a functional purpose: to help people recognize that these bottles contained whiskey/bourbon.

SAC0037

## Historical Observations (continued):

**Press Release:** *May 16, 2011 /PRNewswire/*
**Reposted :** http://www.drinkhacker.com/2011/05/16/jack-daniels-changes-its-label-and-bottle/

*LYNCHBURG, Tenn., May 16, 2011 /PRNewswire/ — The Jack Daniel Distillery announced today that it is making minor refinements to the familiar Jack Daniel's Old No. 7 bottle to accentuate the bottle's square shoulders and also to simplify the front and side labels.*

*The company is quick to note that even though the bottle and label have been refined, the whiskey inside remains unchanged. The bottle will begin shipping this month and will be on most shelves by July.*

*"Mr. Jack Daniel was proud of the craftsmanship and care that went into his whiskey and wanted a bottle as unique as its smooth, mellow character," said John Hayes, Senior Vice President, Managing Director Jack Daniel's. "That's why in 1895, Jack made the decision to put his whiskey in a square bottle, unlike other whiskeys of his day. He wanted to make sure his whiskey stood out. The refinements today are meant to honor Mr. Jack's desire that his bottle reflect the distinctive character of the whiskey."*

*This is not the first time the Jack Daniel's bottle and label have been updated. The first refinements go back to Jack Daniel who originally sold his whiskey by the barrel. He then moved from barrel to jug to the familiar square bottle. Over the years, during Mr. Jack's day and after, refinements were made to the bottle and label: Gold medals were added to the side label as they were won; Lynchburg sayings were added and dropped; and, room was made for more information. Over time, so many things were added that the label began to look more cluttered than it was under Mr. Jack's watch, according to the distillery.*

### Observations:

It appears that *"John Hayes, Senior Vice President, Managing Director Jack Daniel's "* Is not aware that history shows that, in his day, "Jack Daniel's " along with others were not only using square bottles but were also using the exact same bottle that was square with fluting or faceting and an embossed logo. This demonstrates that Jack Daniel's management might have some misinformation as to the Jack Daniel's history and the history of their bottle.

### Same Blog:   General Public Comment



**TRAMPUS**
May 16, 2011   7:21 am

Well, here's the thing. Just about every generic bourbon on the shelf uses a bottle and label similar to the Jack Daniels one. The label is barely different but the bottle sure is. I think it's kind of feminine looking. I'm sure enough people will cry to get it changed back, or they'll just deal with it. I mean it isn't that big of a deal.

Oh wait, could this be a SIGN OF THE APOCALYPSE!! (LYPse, LYPse, LYpse, Lypse, lypse...)

### Observations:

It appears that the general public agrees with our findings.... that " Every Generic Bourbon on the shelf uses a Bottle and label similar to the Jack Daniel's one" ~Trampus -2011

SAC0038

**Answer to Interrogatory No. 19**

SAC0039

**INTERROGATORY NO. 19:** "As a matter of law, the combination of elements of the Jack Daniel's Trade Dress is non-distinctive and not entitled to trademark protection,"

## Conclusions "As a Matter of Law":

Jack Daniel's bottle features are clearly functional and non distinctive. The large-scale use of a square bottle design with fluted or faceted neck indicates that this style of bottle is what consumers use to recognize American whiskey and bourbon, not just the Jack Daniel's brand.  Jack Daniel's bottle shape design is a slight ornamental shift in a recognized bottle design, used by the majority of brand houses to sell whiskey and bourbon over the last 100 years. Adding an embossment of the words "Jack Daniel's" cannot afford Jack Daniel's the protection and exclusive use of the other combined elements of the bottle shape.

Denying others the right to use these elements would put others at a considerable disadvantage because, they would be forced to put their alcohol in a bottle that is not the standard publicly recognized bottle shape identified by consumers. Allowing the trademark of square bottle, with fluted or faceted neck and an embossed label, would put Beam Suntory, one of Brown Forman's comparable market competitors, at a significant disadvantage.

Brown Forman reinforces our argument that their bottle is functional based on the fact that they use the Jack Daniel's bottle square shape and fluted and faced neck almost identically in style size and shape to promote their other brand of Early Times Kentucky Whiskey. If you were a company actively protecting the alleged "unique" trade dress of your bottle design, because it was so unmistakable, unique, and identifiable, why would you use an almost identical design to promote another whiskey brand that you manufacture, and market at a lower price structure?

This paralleled use of bottle features clearly indicates that Brown Forman uses the square shape and faceted or fluted neck as functional indicators to direct consumers to whiskey and bourbon. If this were not the case, then maybe they would have chosen a different more distinctive bottle to separate the Early Times brand whiskey from the Jack Daniel's brand whiskey. They did not take that path.

The deliberate decision to make the common association between two brands by the same owner clearly shows that the shape of the bottle is functional and their trademark Jack Daniel's signature is the only protectable part of their bottle design in the Trademark reg no. 4,106,178 .

Simply applying the name Jack Daniel's does not give them the right to have umbrella like protection to the shape of everything they put their name on.

In looking at the historical information provided, it is clear that Jack Daniel's at some point adopted a "Liquor Bottle" style of container commonly available to any person purchasing glass from Owens Illinois. The selection of a "Liquor Bottle" from the "Liquor Bottle" section of the catalog clearly indicates that Jack Daniel's expected to gain an advantage because his product would be marketed in a container that was recognized for containing alcoholic beverages. Jack Daniel's could have just as easily chosen a container from the pickle jar section to bottle his goods. Jack Daniel's must have known that the container type he selected has functional because the shape would clearly convey to the consumer in 1 glance that the contents were a sprit or alcohol. He did not choose a pickle jar because he would have had an additional hurdle to overcome....consumers would be confused by the bottle shape. The continued sales of whiskey and bourbon over the past 100 years has created this functional recognition and trained generations of consumers that this shape of bottle is identified and categorized with

SAC0040

whiskey and bourbon. This is reflected in the results of our study which shows the widest use to be square with a faceted or fluted neck.  Whisky and bourbon have adopted the bottle style of the square liquor bottle with the faceted or fluted necks because it is a functional part of history that is identifiable 1st with alcohol, as defined as the functional use in the Owens Illinois Co catalog teaches, and then 2nd with the spirit type of whiskey / bourbon, as we are also taught by same catalog, that there is a functional association with every bottle type.

These facts lead us to the undeniable conclusion that the Jack Daniel's Trademark Bottle Registration should "Not" be entitled to trademark protection because it is functional and non distinctive , and by allowing its continued registration it is putting competitors at a disadvantage.


**Special Note: You must consider that their trademark is for "Distilled Spirits" and  "Distilled Spirits" would also include scotch, gin, tequila, rum, cognacs and more.

SAC0041

# Bottle & Label Trade Dress Analysis

A Statistical Evaluation of Data Collected from Reviewing 114 Bottles

From 7 Brand Houses and Others

(See spreadsheet for individual detail and bottle data)

SAC0042

## Background

### Alleged Bottle Trade Dress

Jack Daniel's Properties, Inc. ("JDPI"), owned by Brown Forman Inc, the owners of the Jack Daniel's portfolio, claims that it owns trademark rights in the Jack Daniel's Old No. 7 whiskey bottle "iconic trade dress consisting of" the following elements, namely: (1) "a square bottle with a ribbed neck," (2) "a black cap," (3) "a black neck wrap closure with white printing bearing the OLD NO. 7 mark," and (4) "a black front label with white printing and a filigreed border bearing the JACK DANIEL'S mark depicted in arched lettering at the top of the label, the OLD NO. 7 mark contained with a filigreed oval design in the middle portion of the label beneath the JACK DANIEL'S mark and the words Tennessee Sour Mash Whiskey in the lower portion of the label, with the word 'Tennessee' depicted in script" (see Amended Complaint, para. 14, and Amended Answer, para. 14).

The alleged Jack Daniel's bottle trade dress has four elemental features:

(1) "a square bottle with a ribbed neck,"

(2) "a black cap,"

(3) "a black neck wrap closure with white printing" and

(4) "a black front label with white printing" (see Amended Complaint, para. 25).

## Statistical Objectives

VIP reviewed 114 bottles used by American whiskey/bourbon brands to determine whether the combined four elemental features of the alleged Jack Daniel's bottle trade dress are:

1. Basic design features common in the industry for distilled spirits, particularly bourbon and other American whiskey; features that, if allowed to be used exclusively by Jack Daniel's, would significantly undermine a competitor's ability to compete with Jack Daniel's in the sale of distilled spirits;
2. Design elements that are merely ornamental or decorative and do not function as features signifying products from the Jack Daniel's;
3. A combination of features that is generic for distilled spirits in general or American whiskey in particular because their primary significance is to identify any distilled spirits, particularly bourbon or other American whiskey, rather than products from Jack Daniel's;
4. A mere refinement of or variation on existing bottle design or bottle trade dress with the field of distilled spirits and whiskey in particular.

The following pages reveal the results of that review and an analysis of those results and the conclusions drawn from that analysis.

SAC0043

## Summary of Results '

**Identification of the 4 primary features of the Jack Daniel's alleged bottle trade dress:**

(1) a square bottle with a ribbed neck;  (Fluted of Faceted)

(2) a black cap;

(3) a black neck wrap closure

(4) a black front label with white printing

**Bottles Collected and Reviews By Brand House:**

|   | BRAND HOUSE | Number Of Bottles Reviewed | Reported 2013 Revenue (As Reported to the SEC) | Percentage Bottles / Total |
|---|---|---|---|---|
| 1 | Alltech | 3 | Private | 3% |
| 2 | Beam Suntory | 25 | 3,148,400,000.00 | 22% |
| 3 | Brown Forman | 13 | 3,784,000,000.00 | 11% |
| 4 | Heaven Hill | 19 | Private | 17% |
| 5 | KBD (Kentucky Bourbon Distillers) | 12 | Private | 11% |
| 6 | Luxco | 8 | Private | 7% |
| 7 | Sazerac Brands | 21 | Private | 18% |
| 8 | Others | 13 | Unknown | 11% |
|   | **TOTAL** | 114 |  | 100% |
|   | As Reported to the SEC |  |  |  |
|   | **ADVERTISING Budget Beam Suntory 2013** |  | 401,000,000 |  |
|   | **ADVERTISING Budget Brown Forman 2013** |  | 408,000,000 |  |

SAC0044

**Statistical Results Based on Use of Features INDEPENDANTLY of the Other Features:**

|   | BRAND HOUSE | Number Of Bottles Reviewed | Square Bottle | Ribbed Neck | Black Cap | Black Neck Wrap | Black Back Ground | White Text |
|---|---|---|---|---|---|---|---|---|
| 1 | Alltech | 3 | 1 | 0 | 1 | 0 | 0 | 0 |
| 2 | Beam Suntory | 25 | 18 | 12 | 13 | 11 | 9 | 13 |
| 3 | Brown Forman | 13 | 12 | 9 | 9 | 7 | 5 | 7 |
| 4 | Heaven Hill | 19 | 7 | 8 | 10 | 9 | 7 | 9 |
| 5 | KBD | 12 | 2 | 3 | 11 | 9 | 2 | 3 |
| 6 | Luxco | 8 | 4 | 4 | 4 | 3 | 4 | 5 |
| 7 | Sazerac Brands | 21 | 7 | 7 | 11 | 10 | 7 | 9 |
| 8 | Others | 13 | 5 | 8 | 9 | 8 | 9 | 8 |
|   | TOTAL | 114 | 56 | 51 | 68 | 57 | 43 | 54 |
|   |   |   | 49% | 45% | 50% | 50% | 38% | 47% |

**Observations:**

The most important observation to make here is that we are looking at these elements as a feature "Independent" of any other element. The purpose is to understand how common the element is on its own.

It has been made clear by the courts that you cannot consider the use of individual elements on their own and you must look at the combination of the elements as a group in their entirety.

These numbers reflect that each of these elements is a common element and is used frequently. Therefore, to appeal to the court's request, we must look at the numbers as the most common elements are added together.

**Statistical Results Based on the Combinations of Features**

The next step of this report will display the statistics of the following combinations. We will do this in order of the identifiable bottle trade dress as defined by Jack Daniel's.

**1st Combination:  Square Bottle with Fluted or Faceted Neck**

> (1) a square bottle with a ribbed neck;  (Fluted of Faceted)

**2nd Combination:**

> (1) a square bottle with a ribbed neck;  (Fluted of Faceted)
> (2) a black cap;

**3rd Combination:**

> (1) a square bottle with a ribbed neck;  (Fluted of Faceted)
> (2) a black cap;
> (3) a black neck wrap closure

**4th Combination:**

> (1) a square bottle with a ribbed neck;  (Fluted of Faceted)
> (2) a black cap;
> (3) a black neck wrap closure
> (4) a black front label with white printing

SAC0045

## 1st Combination:  Square Bottle with Fluted or Faceted Neck
(1) a square bottle with a ribbed neck;  (Fluted of Faceted)

|   | BRAND HOUSE | Number Of Bottles | Comment | Percentage Bottles / Total |
|---|---|---|---|---|
| 1 | Alltech | 0 | | 0% |
| 2 | Beam Suntory | 12 | | 29% |
| 3 | Brown Forman | 9 | | 21% |
| 4 | Heaven Hill | 8 | | 19% |
| 5 | KBD (Kentucky Bourbon Distillers) | 2 | | 5% |
| 6 | Luxco | 4 | | 10% |
| 7 | Sazerac Brands | 4 | | 10% |
| 8 | Others | 3 | | 7% |
| | TOTAL | 42 | | 100% |
| This value Represents 36% of the 114 Bottles Reviewed | | | | |

**Observations:**

This is the combination of the first 2 elements in our study. These represent the feature (1) a square bottle with a ribbed neck; (Fluted of Faceted).   We are showing the "Independent" value to show that on their own, or together, they still represent a large segment of the market. But ,as stated before, you must consider the elements together with other elements.

SAC0046

## 2nd Combination:

    (1) a square bottle with a ribbed neck;  (Fluted of Faceted)
    (2) a black cap;

|   | BRAND HOUSE | Number Of Bottles | Comment | Percentage Bottles / Total |
|---|---|---|---|---|
| 1 | Alltech | 0 | | 0% |
| 2 | Beam Suntory | 5 | | 29% |
| 3 | Brown Forman | 7 | | 21% |
| 4 | Heaven Hill | 3 | | 19% |
| 5 | KBD (Kentucky Bourbon Distillers) | 2 | | 5% |
| 6 | Luxco | 2 | | 10% |
| 7 | Sazerac Brands | 1 | | 10% |
| 8 | Others | 2 | | 7% |
| | TOTAL | 22 | | 100% |
| This value Represents 19.3% of the 114 Bottles Reviewed | | | | |

**Observations:**

With the addition of element (2) black cap, the frequency has dropped 48% to 21 bottles

*All but 1 competitor maintains bottles that carry these 2 elements.*

SAC0047

### 3rd Combination:

    (1) a square bottle with a ribbed neck;  (Fluted of Faceted)
    (2) a black cap;
    (3) a black neck wrap closure

| | BRAND HOUSE | Number Of Bottles | Comment | Percentage Bottles / Total |
|---|---|---|---|---|
| 1 | Alltech | 0 | | 0% |
| 2 | Beam Suntory | 5 | | 29% |
| 3 | Brown Forman | 5 | | 21% |
| 4 | Heaven Hill | 3 | | 19% |
| 5 | KBD (Kentucky Bourbon Distillers) | 2 | | 5% |
| 6 | Luxco | 2 | | 10% |
| 7 | Sazerac Brands | 1 | | 10% |
| 8 | Others | 2 | | 7% |
| | TOTAL | 20 | | 100% |
| This value Represents 17.5% of the 114 Bottles Reviewed | | | | |

**Observations:**

The addition of element (3) a black neck wrap, has only changed the results by 2 unit. It would appear that it is a common practice to use a black cap combined with a black neck wrap together.

*All but 1 competitor maintains bottles that carry these 2 elements.*

SAC0048

**4th Combination, The Combination of all elements in Jack Daniel's Alleged Bottle Trade Dress**

(1) a square bottle with a ribbed neck;  (Fluted of Faceted)

(2) a black cap;

(3) a black neck wrap closure

(4) a black front label with white printing

|   | BRAND HOUSE | Number Of Bottles | Comment | Percentage Bottles / Total |
|---|---|---|---|---|
| 1 | Alltech | 0 | | 0% |
| 2 | Beam Suntory | 3 | | 21.5% |
| 3 | Brown Forman | 3 | | 21.5% |
| 4 | Heaven Hill | 3 | | 21.5% |
| 5 | KBD (Kentucky Bourbon Distillers) | 1 | | 7.1% |
| 6 | Luxco | 1 | | 7.1% |
| 7 | Sazerac Brands | 1 | | 7.1% |
| 8 | Others | 2 | | 14.2% |
| | TOTAL | 14 | | 100% |

This value Represents 12.3% of the 114 Bottles Reviewed

** See Image Below of all 14 Bottles Side by Side

**Observations:**

This is the combination of all 4 elements. It is important to notice that ALL but 1 competitor have at least 1 bottle using these four combined elements.

"By alleging that other companies use a similar design and by providing examples of similar-looking bottles, VIP has plausibly alleged that Jack Daniel's bottle design lacks secondary meaning"

NOTE: Brown Forman's 2 bottles brands are Jack Daniel's, and Early Times. Two separate brands using the identical 4 distinct features, concedes that these features are indicators of whiskey/bourbon and are not unique to Jack Daniel's.

# Margin of Error:

One could argue that 2 of these bottles have coloration and that the 2 bottles should not be included. For example Jim Beam Fire has a Fire Element added, or that Early Times has a yellow shaded area. It must be noted that even if you were to remove these two bottles from the sample set you have not eliminated the fact that All but one competitor have a brand that they use this bottle trade dress, And by adding bottles to this sample set would only increase the argument that these four elements are common to any company wanting to portray their bottle as containing Whiskey or Bourbon.

SAC0049

**4th Combination, The Combination of all elements in Jack Daniel's Alleged Bottle Trade Dress**

      (1) a square bottle with a ribbed neck;  (Fluted of Faceted)

      (2) a black cap;

      (3) a black neck wrap closure

      (4) a black front label with white printing



| 006 | 005 | 021 | 027 | 029 | 032 | 038 |
| Beam Suntory | Beam Suntory | Brown Forman | Brown Forman | Brown Forman | Heaven Hill | Heaven Hill   <-BR |

| 103 | 044 | 049 | 062 | 081 | 099 | 100 |
| Beam Suntory | Heaven Hill | KBD Distillers | Luxco | Sazerac | Other | Other   <-BI |

SAC0050

## Conclusions:

**Jack Daniel's Bottle features are clearly functional and non distinctive:**

The jack Daniel's Bottle is a mere refinement of or variation of the 4 alleged bottle trade dress elements.

"The combination of elements of the Jack Daniel's Trade Dress is generic because their primary significance is to identify any distilled spirits, particularly bourbon or other corn based whiskey, rather than products from the Jack Daniel's distillery"

The facts in this study clearly identify that each Brand House that competes with Jack Daniel's has at least 1 brand for which they uses the four elements alleged by Jack Daniel's to be the trade dress of their bottle. The broad use of these elements shown here indicates that these elements combined have a functional meaning to indicate that the contents are Whiskey or Bourbon. It's no surprise that each of these brands is utilizing the historical classic look that was at the origins of whiskey. The look is a classical look that was used by many and to date is still used by many.

The law should not limit the use of these elements exclusively to Jack Daniel's as doing so would prevent the continued sales of 12 other bottles. Additionally, it would require that Brown Forman discontinue its use of these elements on its own Early Times brand whiskey bottle. Brown Forman cannot claim to the court that these elements that create their alleged bottle trade dress are exclusive to Jack Daniel's brand but then continue to use them to promote another brand AND prevent other from using them at the same time.

The large scale use of a square bottle design with fluted or faceted neck, indicates that this style of bottle is what consumers use to recognize Whiskey and Bourbon not Just the Jack Daniel's Brand.  Jack Daniel's bottle shape as design is a slight ornamental shift in a recognized bottle design used by the majority of Brand Houses to sell whiskey and bourbon over the Last 100 years.

Thus, the bottle design used by Jack Daniel's "serve[s] an aesthetic purpose wholly independent of any source-identifying function."

You can't just look at present day market conditions.... you have to look at 100 years of history.... .

The point being that, even, if everyone stopped using these elements and style, that fact alone does not give rise to allow Jack Daniel's the right to scoop up all the elements of 100 years of history and claim it to be exclusively their own.

SAC0051

# Ornamental Features Of the Jack Daniel's Bottle

A Statistical Evaluation of Data Collected from Reviewing 114 Bottles

From 7 Brand Houses and Others

(See spreadsheet for individual detail and bottle data)

SAC0052

# Summary Results: The Ornamental Features of the Jack Daniel's Bottle

Percent Usage on all 114 bottles Reviewed

| Square Shape | Bulb Neck | Fluting Faceting | Black Cap Color | Black Neck Color | Black Back Color | White Text Color |
|---|---|---|---|---|---|---|
| 49% | 50% | 45% | 60% | 50% | 38% | 47% |

| Filigree | Arched Name | Brand Location | Display State | Center Medallion Or Graphic | The Word Old | Embossed Letters |
|---|---|---|---|---|---|---|
| 49% | 50% | 45% | 60% | 50% | 38% | 15% |

## Observations:

Based on the fact that each of these elements have from 38% - 60% usage in the 114 bottles reviewed, it would be an easy assessment to say that all of the above Features are ornamental and functional for selling spirits.

There is no one unique feature found in the Jack Daniel's list of features above that would raise an indicator that it was unique to Jack Daniel's.

The only unique feature that would be exclusive to the Jack Daniel's Brand and Bottle would be the Trademarked name " Jack Daniel's" and the exact word combination "Old No. 7"

Further down we will address "Old No. 7" and the fact that Jack Daniel's does not have exclusive use of the words "Old No." with any other number combination, or the exclusive use of the number "7".

## Statistical Results Based on Jack Daniel's use of alternative colored labels

The next step of this report will display visuals of bottles from the 114 bottles reviewed. The images will be grouped buy colors used by Jack Daniel's. The purpose of showing these images is to show that even when Jack Daniel's changes the color of the label, all competitors have identical elements and overall look. Then this report will address the use of filigree , embossing, the use of the number 7, the and the use of the words "old no."

See the Next 7 Pages will that verify the replicated use of the above features in our study

Page 1 : Black Lables
Page 2 : White Labels
Page 3 : Color / Flavor Labels
Page 4 : Filigree
Page 5 : Embossing
Page 6 : The Number 7
Page 7 : The words "old no."

SAC0053

# 22 Distinct Bottles that Have Same Label Designs and Same Bottle Features
** 22 of only 114 Reviewed



| 005 | 021 | 027 | 029 | 032 | 038 | 008 | 098 | 052 | 102 | 018 |
| Beam Suntory | Brown Forman | Brown Forman | Brown Forman | Heaven Hill | Heaven Hill | Beam Suntory | Other | KBD Distillery | Other | Beam Suntory <-BRAND HOUSE |

| 044 | 049 | 062 | 081 | 099 | 100 | 093 | 097 | 101 | 064 | 019 |
| Heaven Hill | KBD Distillers | Luxco | Sazerac | Other | Other | Diagio | Other | Other | Sazerac | Beam Suntory |

BRAND HOUSE

SAC0054

**Jack Daniels Makes a Reverse Label,**
**With A change in Colors Each Competitor Still Uses Same Design And Bottle Features**



|  | 004 | 007 | 027 | 064 | 031 | 035 |
|---|---|---|---|---|---|---|
| **Brand House** | **Beam Suntory** | **Beam Suntory** | **Brown Forman** | **Luxco** | **Brown Forman** | **Heaven Hill** |

Contains All 4 Elements



|  | 045 | 048 | 018 | | 094 | 071 |
|---|---|---|---|---|---|---|
| **Brand House** | **Heaven Hill** | **Heaven Hill** | **Bean Suntory** | | **Diagio** | **Sazerac** |
| | **Round vs Square & Missing Ribbing** | | | | **Round vs Square** | **Ribbing Neck** |

Missing 2 Elements                    Missing 1 Element

SAC0055

Jack Daniels Makes Color Variatiions Of Flavors -
With A  change in Colors Due to Flavors  Each Competitor Uses Same Design And Bottle Features and COLORS



SAC0056

## Filigree:

We found that 49% of the bottles surveyed have some degree of filigree on the label.  Here are some examples.



SAC0057

## Embossed Bottles:



Above and beyond the bottles that we have reviewed already, embossing is used in almost all segments of the spirit industry. Therefore, it is NOT the" embossing" of the words "Jack Daniel's"  that is a trademark feature. It is simply the stand alone words "Jack Daniel's".

SAC0058

## Use Of Number 7:



One could argue there is a large percentage of bottles that use the number 7 on their bottle on the center, Such as Seagram's 7, Old Ezra number 7.

SAC0059

## Use Of the words "Old No.":



Jack Daniel's does not have the exclusive use of the partial phrase "Old No." because you can find this exact phrase on other bottles such as Bench Mark & George Dickel "Old No". 8.



SAC0060

## Generic Public Perception of Whiskey Bottle:

The below Images are GENERIC images that are on the website shutter stock. This is a website that sells generic stock photos for use in other works of art for advertising and websites. You can draw your own conclusion as to what the Generic Look of whiskey is to the public eye.



SAC0061

**Generic Public Perception of Whiskey Labeling & Advertising:**

   

  

 

 

SAC0062

## Final Conclusion:

The primary features of the Jack Daniel's bottle design and the alleged Jack Daniel's bottle trade dress are basic design features common in industry for distilled spirits, particularly whiskey. Those combined primary features, if allowed to be used exclusively by JD, would significantly undermine a competitor's ability to compete with Jack Daniel's in the sale of distilled spirits.



The combined four primary features of the alleged Jack Daniel's bottle trade dress and the combined three primary features of the Jack Daniel's bottle design are, overall, merely ornamental or decorative features that do not function as features signifying products from the Jack Daniel's distillery alone.

The combination of the three primary features of the Jack Daniel's bottle design is generic, overall, because the primary features' significance is to identify any distilled spirits particularly bourbon or other American whiskey, rather than products from Jack Daniel's distillery in particular. Take off the words "Jack Daniel's" and "Old No. 7" from the complete Jack Daniel's bottle design and all you have left is an ornamental variation of a generic bottle shape and styling that is comprised overall of nothing more than features found in the generic bottle designs and trade dress of the whiskey/bourbon industry as a whole.

The combination of the four primary features of the alleged Jack Daniel's trade dress is generic for distilled spirits in general or American whiskey in particular because their primary significance is to identify any distilled spirits, particularly bourbon or other American whiskey, rather than products from Jack Daniel's; and a mere refinement of or variation on existing bottle design or trade dress with the field of distilled spirits and whiskey in particular.



The point is very simply: other than the word combination "Jack Daniel's" and the exact combination "Old No. 7," the overall primary features are not unique and exclusive to Jack Daniel's. Many other competitors in the industry clearly use EVERY ONE of the same primary features of bottle design alleged trade dress to some degree and some use ALL of the primary features, making it obvious that the Bottle Design and the alleged Bottle Trade Dress belong to every competitor in the whiskey/bourbon industry.

SAC0063