Firm E-Mail: courtdocs@dickinsonwright.com

David G. Bray (#014346)
dbray@dickinsonwright.com
Frank G. Long (#012245)
flong@dickinsonwright.com
Jonathan S. Batchelor (#026882)
jbatchelor@dickinsonwright.com
**DICKINSON WRIGHT, PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
Phone: (602) 285-5000
Fax: (602) 285-5100

*Attorneys for VIP Products, L.L.C*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| VIP Products, L.L.C., an Arizona limited liability company,<br><br>        Plaintiff and Counterdefendant,<br><br>    v.<br><br>Jack Daniel's Properties, Inc., a Delaware corporation<br><br>        Defendant and Counterclaimant. | No. 2:14-cv-02057-SMM<br><br>**PLAINTIFF'S STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT JACK DANIEL'S PROPERTIES, INC.** |

Plaintiff VIP Products, L.L.C. ("VIP") hereby submits its statement of facts in support of its Motion for Summary Judgment against defendant Jack Daniel's Properties, Inc. ("JDPI"). Facts from documents that have been designated confidential by JDPI under the terms of the protective order entered in this matter on May 15, 2015, are separately stated in VIP's Supplemental Statement of Confidential Facts, filed under seal.

**Table of Contents**

I.   Fact Background ................................................................................................ 1

    A.   The SILLY SQUEAKERS® "BAD SPANIELS" Dog Toy ............................... 1

    B.   Registered JDPI Trademarks ........................................................................... 2

    C.   Alleged JDPI Trade Dress ................................................................................ 4

    D.   Third-Party Use of Alleged JDPI Trade Dress ................................................ 6

    E.   Aesthetic Functionality of Alleged JDPI Trade Dress .................................... 8

    F.   Distinctiveness of Alleged JDPI Trade Dress .................................................. 9

        1.   Print Advertising Evidence ................................................................. 11

        2.   Outdoor Advertising .......................................................................... 13

        3.   Sales of Jack Daniel's Whiskey ......................................................... 13

        4.   Point-of-Sales Displays ...................................................................... 14

        5.   Movie Appearances ............................................................................ 14

        6.   Television Advertisements ................................................................... 14

        7.   Television Appearances ...................................................................... 14

        8.   Celebrity Endorsements ...................................................................... 15

        9.   Media Exposure .................................................................................. 15

        10.   Website Display .................................................................................. 15

        11.   Social Media Use ................................................................................ 15

        12.   Survey Evidence ................................................................................. 15

        13.   VIP Product Development .................................................................. 16

        14.   PTO Registrations .............................................................................. 16

    G.   Fame of JDTW Bottle Dress .......................................................................... 16

    H.   Similarity between the SILLY SQUEAKERS® Toy and JDTW ...................... 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## I.    Fact Background

### A.    The SILLY SQUEAKERS® "BAD SPANIELS" Dog Toy

1.    VIP is in the business of selling chew toys for dogs.  [Exh. A ¶ 7].

2.    VIP dog chew toys include the "SILLY SQUEAKERS®" line of durable rubber squeaky novelty dog toys that include the "Cataroma" toy beer bottle, the "Heinie Sniff'n" toy beer bottle, "Mountain Drool" toy soda bottle, "Killer Bite" toy beer bottle and "Bark's" toy soda bottle. [Exhibit A ¶ 8; Exhibit B at JDPI00035].

3.    The SILLY SQUEAKERS® design (shown below on left) is a "pet toys" trademark, registered with the U.S. Patent and Trademark Office ("PTO"). The PTO registration No. 3,527,000 states "No claim is made to the exclusive right to use "squeakers" apart from the mark as shown." [*See PTO Records*].

4.    The SILLY SQUEAKERS® trademark appears on the website advertising for the SILLY SQUEAKERS® product line of dog chew toys shown below (right):




[Exh. B].

5.    The SILLY SQUEAKERS® line of dog toys includes the SILLY SQUEAKERS® Bad Spaniels Dog Toy ("SSBS Dog Toy") depicted below (left). [Exh. A, Counterclaim ¶ 13 and 14; Exhibit C, Ford Report at ¶19]. The SSBS Dog Toy is sold with a removable hangtag, shown below (center & right), that displays the SILLY

1

SQUEAKERS® trademark on the front and back of the hangtag and a disclaimer on the hangtag that states: "The product and its design belong to VIP Products. This product is not affiliated with Jack Daniel's." [Exh. A, Counterclaim ¶¶ 13 to 15; Exh. C ¶ 19].



**B.      Registered JDPI Trademarks**

6.      JDPI owns various PTO registrations of trademarks for whiskey [Answer of Defendant and Counterclaimant Jack Daniel's Properties, Inc. to Amended Complaint (dkt #54), provided herewith as Exhibit D, ¶ 11] and those registrations include the: JACK DANIEL'S standard character name (PTO Reg No. 1,923,981) (top left); JACK DANIEL'S stylized name (PTO Reg No. 582,789) (bottom left); OLD NO. 7 stylized phrase (PTO Registration No. 42,663) (center); JACK DANIEL'S label design (PTO Reg No. 2,789,278)(second from right):

**JACK DANIEL'S**









7.    JDPI also owns a PTO registration of a mark for "distilled spirits" that "consists of the three-dimensional configuration of the square shaped bottle container for the goods, having an embossed ridge or scalloped design on the neck portion of the bottle, and an embossed signature design comprised of the words 'JACK DANIEL'" (the "Jack Daniel's Bottle Configuration"), [Exh. D ¶ 21], which is depicted as shown above (far right) in the certificate for Registration No. 4,106,178. [Exh. D ¶¶ 18 and 20].

8.    JDPI claims PTO registration 4,106,178 is "valid and subsisting" but admits that the PTO registration has not "become incontestable." [Exh. D ¶ 19; Exh. A, Counterclaim ¶ 11].

9.    The Jack Daniel's Bottle Configuration was introduced in June 2011 and there have been three recent generations of the Jack Daniel's bottle, referred to by JDPI as: (1) the current bottle, which is "the evolution bottle"; (2) the bottle that was use prior to that called "the bevel"; and (3) then one what they called the "old design," which was in use prior to "the bevel." [Exhibit F, Deposition of Michael Taylor at 8:9-9:11].

10.    The "bevel design" (sometimes referred to as the "current" bottle) was in use from approximately 1999 through 2011. [Exh. F 9:12-10:21]. The "evolution bottle" has been in use since it was introduced in 2011.  [Exh. F 9:12-10:2]. JDPI uses the "evolution bottle" for: "Jack Daniel's" black label "whiskey;" "Tennessee Honey;" "Tennessee Fire;" and a number of limited edition products. [Exhibit G, Deposition of David Gooder at 183:10-21].

11.    JDPI changed the design of the Jack Daniel's bottle because their chief executive had a vision for taking small incremental steps at elevating the "premiumness" of Jack Daniel's.  [Exh. F 11: 24-12:8].

12.    JDPI changed the Jack Daniel's bottle when it redesigned it in 2011 so that (1) the shoulders were more squared, (2) added beveled edges to the new bottle, (3) removed the lines on the neck and (4) overall gave the bottle a cleaner look than the

3

previous bottle.  [Exhibit H, Deposition of Toby Roush at 94:9-95:10].

13.    The trademark registration that JDPI obtained for its "evolution bottle" is not the same as the elements of the Jack Daniel's Trade Dress identified by JDPI. It does not include a black front label bearing the Jack Daniel's name and the Old No. 7 marks in white and other elements. [Exh. I, Deposition of Chris Hungerford at 74:2-75:1].

### C.    Alleged JDPI Trade Dress

14.    The Jack Daniel's Trade Dress is not registered with the PTO. [Exhibit J, JDPI Response to RFA at #1]. JDPI has not sought registration in the United States of the combination of elements that it alleges comprise the Jack Daniel's Trade Dress. [Exhibit V, JDPI Response to RFP at # 16].

15.    JDPI claims that it owns "Jack Daniel's Trade Dress," allegedly "an iconic trade dress consisting of" the following elements: (1) "a square bottle with a ribbed neck," (2) "a black cap," (3) "a black neck wrap closure with white printing bearing the OLD NO. 7 mark," and (4) "a black front label with white printing and a filigreed border bearing the JACK DANIEL'S mark depicted in arched lettering at the top of the label, the OLD NO. 7 mark contained within a filigreed oval design in the middle portion of the label beneath the JACK DANIEL'S mark and the words Tennessee Sour Mash Whiskey in the lower portion of the label, with the word 'Tennessee' depicted in script." [Exh. D ¶ 14; Exh. A, Counterclaim ¶ 6].

16.    JDPI asserts that each and every element of JDPI's claimed trade dress is "[t]he combination of elements comprising the Jack Daniel's Trade Dress is described and shown in paragraph 6 of JDPI's counterclaims." [Exh. E #8]. The exact elements of the alleged Jack Daniel's Trade Dress are identified by JDPI as the "combination of elements" that is "described and shown in paragraph 6 of JDPI's counterclaims." [Exh. E #13]. A depiction of the alleged "Jack Daniel's Trade Dress" is shown here. [Exh. D¶ 15].

17.    JDPI identified its "uses in commerce of the JACK DANIEL'S TRADE DRESS" as the following: (1) sale of whiskey, except during [several decades] when it was sold in a round bottle (2) appearance on delivery trucks; (3) Print advertisements; (4) television advertisements (5) other forms of advertising, such as billboards; (6) sale of promotional items; (7) motion picture appearances; (8) featured in various articles; (9) on its website; (10) social media; (11) tours of its distillery; and (12) sale of licensed goods by third-parties. [Exh. E #1 and #10].

18.    JDPI produced a book page stating that, "[s]ince 1895, the standard containers for Jack Daniel's in the quart and fifth sizes has been the square bottle shown here, with minor modifications." [JDPI4126, Exhibit K].



19.    The Jack Daniel's name is the most powerful, and most valuable, trademark that JDPI owns related to Jack Daniel's whiskey. [Epps Deposition, Exh. L 30:22-31:1].

20.    JDPI claims the alleged Jack Daniel's Trade Dress is the trade dress of "Jack Daniel's Old No. 7 Tennessee whiskey [that] has been sold in the United States in the Jack Daniel's Trade Dress since the 1950s." [Exh. E #11 and 14]. JDPI does not have documents from the 1950s specifically regarding the selection and adoption of the Jack Daniel's Trade Dress." [Exh. V #10].

21.    JDPI identified the "significant" elements of the Jack Daniel's trade dress on its "Old No. 7" bottle product as: (1) "the **black shrink band** at the top or the black coloring at the top of the bottle, the upper part of the neck, (2) the fact that '**Old No. 7**' is on that; the overall trade dress – excuse me – (3) the **overall design of the bottle** itself, the glass, (4) the **Jack Daniel's signature** and (5) the **label design**. . . . (6) the **words 'Jack Daniel's'** and (7) the **swing logo format**, (8) the **cartouche design**, (9) the **filigree frame** and (10) the **layout of** the rest of the **words below the cartouche**, (11) the **words 'Tennessee' and 'Whiskey'** and (12) the **white on black color**." [Exh. G 99:21-100:13].

22.    JDPI testified that the other Jack Daniel's brands of whiskey are sold in bottles containing elements of the Jack Daniel's black label trade dress, including: "Gentleman Jack"(below, far left)—(1) arched logo, (2) the word "Jack," (3) white on black label, (4) the signature of Jack Daniel, (5) the mark JACK DANIEL'S and (6) the black cap on the bottle [Exh. G 175:7-176:18]; "Jack Daniel's Original Tennessee Honey"(below, second from left)–(1) the bottle, (2) the signature, (3) the trademark JACK DANIELS, (4) the swing logo, (5) the filigree and (6) the overall style of the words below the words "Tennessee Honey," and (7) the black top [Exh. G 176:19-177:1]; "Silver Select Single Barrel"(below, second right)—(1) the structure of the neck of the bottle, (2) the swing logo with the words Jack Daniel's, (3) a circular device that's below it.  I believe (4) Old No. 7 is in there and (5) the signature of Jack Daniel's [Exh. G 177:2-9]; "Tennessee Fire" (below, far right)—(1) the black top, (2) swing logo, (3) Jack Daniel's, which is on with (4) the signature of Jack, (5) the bottle shape, (6) the filigree border, (7) the style and font of the words below, (8) the swing logo. [Exh. G 177:10-19].

   

**D.    Third-Party Use of Alleged JDPI Trade Dress**

23.    Bourbon or other corn-based whiskey that is not originating from the Jack Daniel's distillery, and that are used by competitors of Jack Daniel's in the sale of distilled spirits, and whiskey in particular, have the bottle packaging shown below that includes "black caps, black neck wrap closures with white printing bearing different graphics, marks and design elements, and black front labels with white printing bearing different graphics, marks, and design elements:"  [Exh. D ¶¶ 23 – 26; Exh. J #2 – #10].

6



24.     Other bottles for competitors' whiskey have: "a **black cap**," [Exh. D ¶ 30] "a **black neck wrap closure with white printing** bearing different graphics, marks, and design elements,"[Exh. D ¶ 31]; "a **black front label with white printing** bearing different graphics, marks, and design elements" [Exh. D ¶ 32]; **fluting or faceting on the neck** of the bottles [Exh. D ¶¶ 40, 42]; **white on black labels** [Exh. G 101:9-11]; **filigree** on their labels [Exh. L 32:14-18]; and, **embossed signatures** on their bottles. [Exh. D ¶ 41 (Southern Comfort); Exhibit M at VIP00344 (Bentley's Oak Park Distilling; William Heavenhill bourbon) & VIP00343 Jim Beam (Beam Suntory)].

25.     JDPI does not object to competitors in the whiskey and bourbon industry using the **number** 8 **designation** ("No. 8") on their products. [Exh. L 34:18-35:1]. The "George Dickel" brand bourbon uses the "No. 8" phrase on its label. [Exh. L 34:18-22].

26.     The "Jim Beam" brand of whiskey is Jack Daniel's biggest competitor in the U.S. [Exh. L 102:3-5]. The "Jim Beam" whiskey bottle uses **arched lettering on** its **label.** [Exh. L 132:8-19].



27.     The bottles depicted on right are packaging for distilled spirits that are not whiskey and that are used by competitors of Jack Daniel's in the sale of distilled spirits. [Exh. J #8 – 10].

28.     Stephen Sacra, the CEO of VIP, prepared the American Whiskey/Bourbon Report that identifies certain design components of the JDTW Bottle Dress that are commonly used by JDPI's competitors (the "Sacra Research"), attached as Exhibit N. [Sacra Declaration, attached as Exhibit O].

29.    The Sacra Research identified four primary elements of the alleged Jack Daniel's Trade Dress and described them as: (1) a square bottle with a ribbed neck (fluted or faceted); (2) a black cap; (3) a black neck wrap closure; and (4) a black front label with white printing. [Exh. N at SAC0044].

30.    The Sacra Research found that the four primary elements of the alleged "Jack Daniel's Trade Dress" are used by the overwhelming majority of whiskey/bourbon sellers in the United States. [Exh. N at SAC0045]. A combination of at least three of the four primary elements of the alleged trade dress is used, by the majority of the identified bourbon and American whiskey providers, as a generic identifier for bourbon or other American whiskey products in the United States. [Exh. N at SAC 12, 44].

31.    The alleged Jack Daniel's trade dress is imitated on many unlicensed products sold by third-parties, and stock images sold by graphic designers. [Exh. O; Exh. N at SAC 70-320; Exh. P at VIP 133-138; Exh. Q at VIP287-288; Exh. R at VIP 420-456; Exh. S at VIP463-467; Exhibit T, Wolinsky Report at WOL017-23].   Many PTO registrations depict products resembling the alleged JDTW Trade Dress. [Exh. S].

**E.    Aesthetic Functionality of Alleged JDPI Trade Dress**

32.    The image that Jack Daniel's has developed includes: masculinity, authenticity, honesty, and not taking yourself too seriously. [Exh. G 82:4-7].

33.    Some of the elements of the Jack Daniel's Black Label are meant to evoke history and authenticity.  [Exh. I 106:2-11].

34.    Focus groups arranged by and relied on by JDPI revealed that consumers perceive or expect Kentucky or Tennessee whiskey to appear in a square bottle with a fluted neck.  [Exh. I 93:5-11].

35.    Mr. Roush testified that consumers may associate a black and white label design with a Kentucky or Tennessee bourbon or whiskey.  [Exh. H 60:10-61:2].

36.    John Howard concluded that the features of the design of the Jack Daniel's

bottle are essential to the use or purpose of packaging distilled spirits and affect the cost or quality of the bottled distilled spirits. [Exhibit U, Howard Report at P. 7].

37. There are certain elements in packaging production design used by a number of American Tennessee whiskey and bourbons in order invoke sort of an old time or classic feel. [Exh. I 105:15-22].

38. "Non-functionality" could be the basic aesthetic of the bottle as opposed to the functional matter which is related to its manufacturing properties and performance. [Exh. F 46:23-47:9].

39. In Martin Wolinsky's expert report, he points out that "[m]any bourbon and Tennessee whiskey brand's packaging are very similar (Uniform) when compared to other competitors in the segment. In the case of Jack Daniel's, it is clear that the packaging strategy for this brand was to adopt the Uniform strategy . . . which conveys most/all four characteristics of their Uniform packaging strategy": (1) a square bottle with a ribbed neck; (2) a black cap; (3) a black neck wrap closure with white printing; and (4) a black front label with white printing. [Exh. T ¶ 3].

40. Mr. Wolinsky further points out that "[t]he descriptive terms/lexicon/ language used in the bourbon segment Web sites by Jack Daniel's and competitive brands are the same, or similar, in meaning, as follows:" (1) "Old, Old World, Century Old, Old time, Old fashioned"; (2) "Classic"; (3) "Historic, heritage, original"; (4) "Timeless, time honored"; and (5) Honored." [Exh. T ¶ 3].

41. The Wolinsky Report concludes that the "overall Jack Daniel's packing is clearly aesthetically functional, utilizing all key elements of the UNIFORM of numerous other major brands in the bourbon/Tennessee whiskey segment in the U.S. . . . The Uniform packaging demonstrates to the consumer that Jack Daniel's is an authentic American whiskey." [Exh. T ¶ 4].

**F.    Distinctiveness of Alleged JDPI Trade Dress**

9

42.    JDPI agrees that a significant number of American consumers associate a square bottle shape with any whiskey or bourbon product. [Exh. L 108:1-9].

43.    JDPI contends that certain research conducted in connection with a modernization of the Jack Daniel's Trade Dress between 2008 and 2011 supports the… distinctiveness…of the Jack Daniel's Trade Dress."  [Exh. E #12].

44.    Brown-Forman's licensing manager could not recall Brown-Forman ever having conducted a study of any kind that was designed to test consumer recognition of the shape of the evolution bottle.  [Exh. H 96:11-16].

45.    JDPI has not conducted a study to determine how well-recognized the Jack Daniel's bottle shape is without other elements. [Exh. L 106:15-107:18].

46.    The Wolinsky Report concludes that the "overall Jack Daniel's packaging is and that of [other] competitive bourbon brands. . . .look like "first cousins" rather than individually distinctive brand packaging." [Exh. T  ¶ 4].

47.    The Wolinsky Report concludes that the function of the JDTW Bottle Dress "is to provide that Jack Daniel's whiskey with a standard industry 'uniform' that identifies Jack Daniel's whiskey as an American whiskey, not just a Jack Daniel's whiskey." [Exh. T ¶ 4].

48.    JDPI claims that "[t]here have always been numerous stock bottles available for use, and actually in use, as packaging for whiskey[.]" [Exh. E #2].

49.    JDPI claims Brown Forman has never used a "stock bottle" for Jack Daniel's Old No. 7 Tennessee whiskey.  [Exh. I 82:22-85:9] [Exh. E #2].

50.    The stock bottle depicted on page VIP 00281 on the far left is similar to the Jack Daniel's whiskey bottle that was in use around 1906.  [Exh. I 91:14-92:24].

51.    JDPI claims also that "it has always used a custom, proprietary bottle that has been made to the brand's specifications. The intention behind the use of customized packaging has always been to provide consumers with an instantly-recognizable visual

symbol of Jack Daniel's Old No. 7 Tennessee whiskey." [Exh. E #2].

52.    Hungerford's assertion that Jack Daniel's whiskey has always been sold in a custom proprietary bottle is not based on research.  [Exh. I 87:21-88:9].

53.    JDPI agrees that a significant number of American consumers associate a square bottle shape with any whiskey or bourbon product. [Exh. L 108:1-9].

54.    JDPI has not conducted a study to determine how well-recognized the Jack Daniel's bottle shape is without other elements. [Exh. L 106:15-107:18].

55.    JDPI advertising of Jack Daniel's targets men 25 to 40. [Exh. L 82:5-9].

56.    JDPI used focus groups in countries outside the U.S. [Exh. L 85:3-5].

57.    JDPI's evidence of acquired distinctiveness is as follows: "[t]o the extent that the combination of elements that comprise the Jack Daniel's Trade Dress was not inherently distinctive when they were first used in the 1950s, the Jack Daniel's Trade Dress has acquired a very high degree of distinctiveness in the United States since the 1950s by virtue of the longstanding and extensive sales and advertising of Jack Daniel's Tennessee whiskey in the Jack Daniel's Trade Dress and the other exposure of the Jack Daniel's Trade Dress to the general public in the manners set forth in JDPI's response to Interrogatory No. 1." [Exh. E #22].

58.    JDPI asserts that its produced documents support its claims of inherent or acquired distinctiveness of the Jack Daniel's Trade Dress. [Exhibit V, JDPI Response to RFP #7; Exhibit W, JDPI Letter dated 7/1/15].

**1.    Print Advertising Evidence**

59.    JDPI claims that "Print advertisements featuring the Jack Daniel's Trade Dress have appeared in a wide variety of publications, including national magazines, local magazines, newspapers and trade publications, and event programs. [Exh. E #1].

60.    "JDPI and its licensee Brown-Forman … do not advertise and promote the Jack Daniel's Trade Dress *per se* but rather products sold in the Jack Daniel's Trade

Dress." [Exh. V #1, 2]. JDPI doesn't know that there is any advertising of just the "evolution bottle" itself. [Exh. G 63:13-21].

61.    Mr. Gooder could not identify any JDPI advertising that specifically calls out the shape of the "evolution bottle" as a designation of source for Jack Daniel's Whiskey. [Exh. G 64:8-21].

62.    Ads and licensed products JDPI produced identify the JACK DANIEL'S® name and the OLD NO. 7® phrase as "registered trademarks." [Exhibit. X at JDPI 4303].

63.    None of the ads JDPI produced show any express identification of the alleged Jack Daniel's Trade Dress as a JDPI trademark, either registered or unregistered.

64.    The print ads that JDPI produced revealed that few print ads for Jack Daniel's whiskey contain complete images of alleged JD Trade Dress. The ads focus on the JACK DANIEL'S name and the OLD NO. 7 phrase [Exh. Y at JDPI151-250].

65.    JDPI produced a catalog showing that Jack Daniel's historically had a different neck wrap and explained that "The label . . . is for folks who aren't impressed by labels.  Our founder said what went in his bottle was more important than what went on it." [Exh. Z at JDPI259-268].

66.    Since the 2011 bottle redesign, JDPI has advertised multiple different bottle styles.  [Exhibit AA at JDPI4454].

67.    JDPI disclosed ads, some of which: do not feature the Jack Daniel's bottle or the trade dress at all [Exh. BB at JDPI 4460-4464]; feature only a black and white outline of a bottle of Jack Daniel's; refer to Jack Daniel's being put in "a bottle" [Exh. CC at JDPI4457]; feature the JACK DANIEL'S and OLD NO. 7 marks, but do not feature any bottle [Exh. BB, Exhibit DD at JDPI4453-4]; feature only a partial image of a bottle [Exhibit EE at JDPI 4455]; feature a picture of a bottle occupying less than 1/16th of the visual space of the ad [Exhibit FF at JDPI4456]; and/or featured only a partial black and white image of a bottle.  [Exh. BB].

### 2. Outdoor Advertising

68. JDPI claims that "[t]he Jack Daniel's Trade Dress has appeared in a variety of other forms of advertising, including billboards and other forms of indoor and outdoor advertising, and has been exposed in these ways to millions of Americans. [Exh. E #1].

69. The outdoor ads that JDPI produced revealed: promotional materials that promote the JACK DANIEL'S name, but not the Jack Daniel's Bottle Configuration or Jack Daniel's Trade Dress [Exhibit GG at JDPI253-258]; Photos of billboards that depict the Jack Daniel's Bottle Configuration but make no reference to it or to any of the enumerated elements of the alleged JD Trade Dress except the JACK DANIEL'S name and/or the OLD NO. 7 phrase [Exhibit HH at JDPI269-273]; Several of the billboards showcase JDPI's slogan "Have a Round with a Round," and make no reference to the square shaped bottle. [Exhibit II at JDPI458 – 468, JDPI469–470]; Truck ads showing only the JACK DANIEL'S name [Exhibit II, JDPI452]; miscellaneous materials with only incidental depiction of the JD Bottle Configuration [Exhibit II, JDPI0453-474]; and, photos of Jack Daniel's T.V. appearances in which the JDTW Bottle Dress appeared on screen, but they were used as props, and there was no focus on the bottle configuration. [Exhibit JJ at JDPI0475-478].Only one ad produced by JDPI showed use of the bottle shape alone to convey an association with JD Whiskey. [Exhibit II, JDPI0473].

### 3. Sales of Jack Daniel's Whiskey

70. JDPI claims that "[t]rough distribution and sales of the Jack Daniel's Old No. 7 Tennessee whiskey, the Jack Daniel's Trade Dress has been exposed for decades to many millions of consumers through display of the product in retail ('off-premise') accounts, including state-owned or state-regulated liquor stores, private liquor stores, grocery stores, mass merchandisers, airlines, and duty-free stores, and in bar and restaurant ('on-premise') accounts." JDPI claims that "Jack Daniel's Old No. 7 Tennessee in the Jack Daniel's Trade Dress has been exposed to consumers in other

1    manners in the course of distribution, such as its appearance on delivery trucks used by

2    several of Brown-Forman's distributors." [Exh. E #1].

### 4.    Point-of-Sales Displays

3

4    71.    The promotional items that JDPI produced revealed no promotional

5    materials that refer to Jack Daniel's whiskey by reference to the Jack Daniel's bottle or

6    the Jack Daniel's Trade Dress. [Exh. GG, Exh. HH, Exh. II, Exh. JJ at 475-478].

### 5.    Movie Appearances

7

8    72.    The evidence that JDPI produced regarding motion picture appearances and

9    references revealed no verbal reference to the Jack Daniel's Bottle Configuration or the

10    alleged Jack Daniel's Trade Dress or any element of the alleged JD Trade Dress only

11    references to JD Whiskey as "Jack Daniel's," or "Jack," or, in one case, "John [*sic*]

12    Daniel's" [Exh. JJ, 484, Non-electronic exhibit (*see* dkt. #109), video file JDPI 493].

### 6.    Television Advertisements

13

14    73.    The t.v. ads that JDPI produced reveal that the Jack Daniel's bottle is

15    pictured only briefly, or not pictured at all, in many of the television advertisements for

16    Jack Daniel's whiskey. Two of the ads contain the slogan "what the label doesn't tell you,

17    a sip will." [Non-electronic exhibit, video file JDPI 481-482, Exh. JJ, 475-483]. None of

18    the t.v. ads produced by JDPI contained an express verbal reference or description of the

19    alleged Jack Daniel's Bottle Configuration. [Video file JDPI0479-503].

### 7.    Television Appearances

20

21    74.    JDPI produced video excerpts of the appearance of the JD whiskey bottle in

22    t.v. programs. [Non-electronic exhibit, video file JDPI 4430]. None of the t.v. excerpts

23    produced by JDPI include any reference to any of the overall allegedly "iconic trade dress

24    of JD Whiskey" or its "combination of elements" or any of the individual "elements" of

25    the alleged JD Trade Dress identified in the JDPI counterclaim. The only reference to

26    Jack Daniel's whiskey appearances are to the JACK DANIEL'S name and the OLD NO.

7 phrase. [Video file JDPI0479-503and JDPI 4430].

## 8.    Celebrity Endorsements

75.    The JDPI evidence regarding celebrity endorsements contains no verbal or textual references to the alleged JD Trade Dress overall or any of its elements, not even the JD Bottle Label Design other than images of the JD bottle.  [Video file JDPI 000500 to 503; Exhibit LL at JDPI 4431 to 4432].

## 9.    Media Exposure

76.    The articles produced by JDPI reveal that no article refers to Jack Daniel's whiskey by reference to the alleged Jack Daniel's Trade Dress itself or its combination of elements any of its elements other than the JACK DANIEL'S® name or OLD NO. 7® phrase. The only references to Jack Daniel's whiskey are references to the JACK DANIEL'S® name and/or the OLD NO. 7® phrase. [Exhibit OO at JDPI 511-526].

## 10.    Website Display

77.    JDPI claims that the "Jack Daniel's Trade Dress is featured prominently on the website at www.jackdaniels.com, which during calendar year 2014 was visited more than 5,000,000 times. [Exh. E #1]. The Jack Daniel's www.jackdaniels.com main page does not focus on the post-2011 alleged Jack Daniel's Bottle Configuration or JD Trade Dress. [Exhibit PP at JDPI000427-429].

## 11.    Social Media Use

78.    Social media "tweets" do not identify the JD Bottle Configuration or any elements of the alleged JD Trade Dress [Exhibit QQ at JDPI0438-450].

## 12.    Survey Evidence

79.    JDPI claims that "[t]he high degree of distinctiveness is also shown by the consumer survey conducted under the direction of Dr. Gerald L. Ford . . ." [Exh. E #6]

80.    In his deposition Dr. Ford testified that he did not test for acquired distinctiveness. [Deposition of Gerald Ford attached as Exhibit VV 130:3-13].

81.    Brown-Forman's licensing manager could not recall Brown-Forman ever having conducted a study of any kind that was designed to test consumer recognition of the shape of the "evolution bottle". [Exh. H 96:11-16].

### 13.    VIP Product Development

82.    JDPI claims "[t]he high degree of distinctiveness is also shown by . . . VIP's documents and testimony regarding the development, design, appearance, and marketing of the Bad Spaniels toy, . . ." [Exh. E #6].

### 14.    PTO Registrations

83.    JDPI has multiple PTO registrations of trademarks incorporating the names "Jack Daniel" and "Jack Daniel's" and "Jack" along or in combination with other words. [*See* PTO Registrations]. JDPI also has PTO registrations of marks representing or incorporating the name "Jack" or using "Jack" as a "bar-call" for Jack Daniel's whiskey. [Exhibit RR at JDPI004392].

### G.    Fame of JDTW Bottle Dress

84.    JDPI does not have any internal measurement of the value of the alleged good will associated with just the Old No. 7 mark. [Exh. G 181:17-20].

85.    JDPI claims that the fame and distinctiveness of the Jack Daniel's Trade Dress is supported by the Ford survey.[Exh. E #1 and #9]

86.    In his deposition, Dr. Ford testified that his survey was not designed to test for fame, and that if it had been designed to test fame, it would have included different questions. [Exh. VV 22:4-23:4]. The survey sample consisted of persons "21 years or older who were likely to purchase dog toys." [Exh. C, ¶ 15]

87.    Dr. Nowlis testified that the purpose of the Ford survey was, in Dr. Ford's own words, to only "address the issue of likelihood of confusion." Since the Ford survey was designed to only test likelihood of confusion, it is therefore improper to claim that it also tests for fame and acquired distinctiveness. [Exhibit SS at ¶ 7].

16

88.    JDPI's Global Brand Director admits that the SSBS Dog Toy does not make him think that the Jack Daniel's Black Label product contains dog excrement. [Exh. L 111:1-4]. JDPI's Global Brand Director cannot imagine a chain of thoughts that would lead somebody to think: "Oh, I looked at this dog toy, I'm thinking now that Jack Daniel's Tennessee Whiskey actually contains dog excrement?" [Exh. L 111:13-22]. He admitted he would be surprised if people thought that Jack had dog excrement in it having seen the SSBS Dog Toy. [Exh. L 113:1-2].

**H.    Similarity between the SILLY SQUEAKERS® Toy and JDTW**

89.    At least eight elements of the Jack Daniel's trade dress are not incorporated into the SILLY SQUEAKERS® Bad Spaniels Dog Toy. [Exh. G 94:25-95:2.]

90.    Jack Daniel's Whiskey is not sold with a hang tag. [Exh. G 104:8-11].

91.    Mr. Roush testified that the border on the SSBS Dog Toy is not filigree from his perspective.  [Exh. H 48:24-49:10].

92.    Consumers fluent in English would understand the words of the disclaimer on the SSBS Pet Toy. [Exh. G 110:10-111:22].

93.    JDPI has not done any research or commissioned any study to see what consumers understand the disclaimer means. [Exh. G 113:9-13].

94.    No JDPI products, including Jack Daniel's whiskey, are sold in pet specialty retailers, or any other retailer which generates the majority of its revenue from the sale of pet products, pet supplies, and pet services. [Exh. J #14; Exh. G 119:5-11; 119:24-120:5]. JDPI is not aware of any licensed products of Jack Daniel's sold in pet specialty retailers. [Exh. G 120:3-5; 138:7-21; 140:5-10; 145:13-146:9].

95.    The channels of trade for Jack Daniel's Whiskey are everywhere distilled spirits can be sold in the U.S. [Exh. G 126:10-13]. VIP does not sell its Bad Spaniels Product in liquor stores. [Deposition of Steve Sacra, attached as Exhibit TT 33:7-34:24, 193:22-194:24.].

96.    None of the revenues from the sales of Jack Daniel's Old No. 7 Tennessee whiskey have been derived from the stores in which the VIP product is sold. [Exh. E #18]. JDPI does not market Jack Daniel's through trade shows associated with the pet supply business. [Exh. G 128:15-19].

97.    JDPI sells Jack Daniel's Whiskey only to their distributors, one for each state and some that operate in the duty-free world. [Exh. G 135:19-136:9]. JDPI does not advertise to distributors. [Exh. G 137:5-12].

98.    JDPI does advertise its licensed Jack Daniel's goods via trade communication materials to retailers and on-line on the websites, but not to consumers separately. [Exh. G 139:11-19; 140:16-141:3; 145:13-146:9; 146:10-147:6].

99.    JDPI and Brown-Forman would not want any of its products sold in toy stores because toys are largely sold to, or for use by, people under the legal drinking age. [Exh. G 141:6-14]. JDPI and Brown-Forman prohibit licensees from selling to retailers which have a certain percentage of their consumers below the legal drinking age. [Exh. G 142:15-22]. JDPI would not authorize sale of Jack Daniel's merchandise to merchants that sell to a significant number of people under 21 years old. [Exh. G 143:6-14].

100.    Brown-Forman does not license apparel with the Jack Daniel's trademarks to be sold at market retail. [Exh. H 107:8-10]. There are provisions in the standard Brown Forman License Agreement that provide what channels of trade a licensee is allowed to sell goods in [Exh. H 106:3-12]. The standard agreement Brown-Forman and JDPI use with their licenses contains restrictions from selling license to Jack Daniel's' goods in mass merchandise to retailers, depending upon the category.  [Exh. H 106:13-20].

101.    VIP's primary channels of trade for its BAD SPANIELS product are pet specialty retailers and distributors of pet products, including PetSmart, Petco and smaller retailers that focus specifically on pet products.  [Exh. TT 193:22-194:24.]

102.    There are approximately 5,000 different SKUs for licensed Jack Daniel's

products that are sold by third parties in 2015.  [Exh. H 68:8-25].

103.    The only licensed pet products sold with the JACK DANIELS marks are leashes, dog collars, and dog bowls that are sold at the Lynchburg Hardware and General Store, in Lynchburg, Tennessee. [Exh. G 21:5-22:2]. JDPI licenses the Jack Daniel's marks for leashes and collars to be sold exclusively at the Lynchburg Hardware store in Lynchburg, Tennessee.  [Exh. H 61:3-62:11]. JDPI has no other interaction with the pet product industry.    [Exh. G 142:8-143:14].  No licensed Jack Daniel's pet products available for sale on any website. [Exh. G 48:17-21].

104.    JDPI has never licensed any of its marks for use on a pet toy. [Exh. J #11]; [Epps 24:19-22]. JDPI would not license the Jack Daniel's marks or trade dress for a dog toy.  [Exh. H 75:5-16; Exh. J #12].

105.    The only licensed products that are licensed by JDPI to use the three dimensional shape of the Jack Daniel's bottle are a holiday ornament and a key chain. [Exh. H 91:19-92:20].

106.    JDPI and Brown-Forman take care with respect to licensing its bottle shape to make sure they are accurate because if it is not executed correctly, the public would question if that was an official licensed product.  [Exh. H 98:6-23].

107.    JDPI has never received any communication from any consumer expressing any confusion as to whether or not JDPI and/or Jack Daniel's was the source of the SILLY SQUEAKERS® "Bad Spaniel's" Dog Toy. [Exh. J #13].

108.    No consumer has reported to JDPI or Brown Forman that they thought the SILLY SQUEAKERS® Bad Spaniels Pet Toy was sponsored by, affiliated with or associated with Jack Daniel's. [Exh. G 121:13-17].

109.    Mr. Roush did not have any person, consumer or licensee or otherwise called to his attention the SILLY SQUEAKERS® Bad Spaniel's Pet Toy or indicated they were confused about the affiliation or a potential affiliation between the SILLY

SQUEAKERS® Bad Spaniel's Pet Toy and Jack Daniel's.  [Exh. H 26:16-27:14].

110.   Mr. Roush has never been informed of anybody having been confused that the SILLY SQUEAKERS® Bad Spaniel's dog toy was sponsored or affiliated with Jack Daniels. [Exh. H 30:21-31:3].

111.   The intended message behind VIP's parody products "is that, in a very serious world, that we need to sit back and be able to laugh at ourselves and laugh at the humor of the constant bombardment of advertising and marketing that's going on around us that's such a predominant part of our lives.  And it's humorous to sit back and poke fun at that[.]"  [Exh. TT 216:15-217:3].

112.   VIP intended to comment that business need not be taken too seriously: "It's the entire aspect [of their business and product image].  I mean, Jack Daniel's has created a culture around its product. As do all -- most products try to create a culture around that. And all people who are doing that take it pretty seriously, I mean. And by making fun of that or poking at them saying, 'Hey, you know what? I know that you are over here trying to be the best of everything and dominate the world.  Well, here's something funny.'" [Exh. TT 217:12-218:3.]

113.   The further artistic message of VIP's SILLY SQUEAKERS Product is to ask the consumer to imagine how funny your dog would be if he was like us; including mimicking our desire to consume and to be associated with well-known consumer brands that take their importance in American culture so very seriously. [Exh. TT 57:12-62:7.]

114.   JDPI would never license its marks for a product it considered to be in "bad taste." [Exh. L, 117:11-22; Exh. G 160:15-23].

115.   VIP expert Bruce Silverman arranged focus group studies in which consumers indicated the SSBS Dog Toy is likely to enhance sales of JDTW, not diminish them. [Exhibit UU, Silverman Report, at ¶ 76; Exh. SIL127-130].  JDPI has no evidence to controvert the results of Dr. Silverman's focus groups. [See Simonson].

20

1  **DATED** this 23rd day of October, 2015.

2

3           **DICKINSON WRIGHT, PLLC**

4

        By: <u>s/ David G. Bray</u>

5          David G. Bray

          Frank G. Long

6          Jonathan S. Batchelor

          1850 North Central Avenue, Suite 1400

7          Phoenix, Arizona 85012-2705

8          *Attorneys for VIP Products, L.L.C.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

## <u>CERTIFICATE OF SERVICE</u>

2

3          I hereby certify that on October 23, 2015, I electronically transmitted the attached

4  document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

Notice of Electronic Filing to all CM/ECF registrants.

5

6                              s/ Kylie M. Boie

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

PHOENIX 53913-11 253339v9

25

26