Firm E-Mail: courtdocs@dickinsonwright.com

David G. Bray (#014346)
dbray@dickinsonwright.com
Frank G. Long (#012245)
flong@dickinsonwright.com
Jonathan Batchelor (#026882)
jbatchelor@dickinsonwright.com
David N. Ferrucci (#027423)
dferrucci@dickinsonwright.com
**DICKINSON WRIGHT, PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
Phone: (602) 285-5000
Fax: (602) 285-5100

*Attorneys for Plaintiff and Counterdefendant*
*VIP Products, L.L.C.*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| VIP Products, L.L.C., an Arizona limited liability company, | No. 2:14-cv-02057-SMM |
| Plaintiff and Counterdefendant, | **PLAINTIFF'S MOTION TO EXCLUDE DEFENDANT'S BELATEDLY DISCLOSED SUPPLEMENTAL DECLARATION OF ITAMAR SIMONSON AND EVIDENCE OFFERED BY PHILLIP EPPS** |
| v. | |
| Jack Daniel's Properties, Inc., a Delaware corporation | |
| Defendant and Counterclaimant. | |

Plaintiff VIP Products ("VIP") moves, pursuant to Rule 37 of the Federal Rules of Civil Procedure, to exclude the declaration submitted by defendant Jack Daniels Properties, Inc. ("JDPI") in support of its Opposition to Motion to Exclude Testimony of Defendant's Expert Itamar Simonson ("Opposition") (Doc. 96) and certain evidence in support of its Motion for Partial Summary Judgment (Doc. 101).  The evidence and declarations provided in support of those motions—respectively, the Declaration of Itamar Simonson in Support of

Defendant's Opposition to Plaintiff's Motion to Exclude Testimony of Itamar Simonson ("Simonson Declaration") (Doc. 97-1) and the evidence offered in the Declaration of Phillip Epps in Support of Motion for Partial Summary Judgment ("Epps Declaration") (Doc. 105)—contain untimely disclosures, either because they are information not previously disclosed despite interrogatories and requests for production of documents that sought disclosure during the discovery period, or because they were improperly submitted after the discovery cut-off date.    The Federal Rules do not permit JDPI to introduce this new, previously undisclosed information through the proverbial backdoor, as declarations attached to recent motions and responses.  VIP respectfully requests that the Simonson Declaration in and certain evidence in the Epps Declaration be excluded.

## I.    __Introduction__

JDPI has insisted on strict adherence to the disclosure deadlines.  At the Telephonic Discovery Dispute Conference held in this case on August 31, 2015, this Court stated: "the deadlines are real."  *See* Transcript of Telephonic Discovery Dispute ("Transcript") at 4:8, a copy of which is attached hereto as __Exhibit 1__.  Counsel for JDPI emphatically agreed:  "It's Jack Daniel's position 100 percent with what the Court said"; "the Court's Case Management Order was clear that that the deadlines in this case are real."  *See* Transcript at 14:3-4, 17:17-18.  On that basis, JDPI "vehemently object[ed]" to the disclosure of "four additional images" by VIP's expert:

> We had an opportunity to review this expert's report.  We deposed him on this report, and now it appears that VIP is attempting to supplement its report with these images. Expert discovery, Your Honor, is closed at this point in addition to the fact discovery being closed. So Jack Daniel's vehemently objects to the inclusion of these documents and any additional supplementation of his report.

*See* Transcript at 14:4-10.

Yet, incredibly, JDPI has twice, since the close of discovery, filed with the Court declarations that are untimely because they supplement either previously disclosed expert testimony or interrogatory answers and document productions—all without any notice or request for special relief.  In support of its Opposition (Doc. 96), JDPI did precisely what it "vehemently object[ed]" to at the Telephonic Discovery Dispute Conference:  introduce additional supplementation of its expert's testimony.  JDPI did not move to modify this court's orders or for relief under the Federal Rules of Civil Procedure; it simply filed the supplemental Simonson Declaration without acknowledging its novelty or attempting to establish "good cause," as required by Rule 16(b)(4), or "substantial justify[cation]" or "harmless[ness]," as required by Rule 37(c)(1).  This court should reject any eleventh-hour attempts to do so now.  *See Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1060-62 (9th Cir. 2005) (affirming exclusion of expert witnesses disclosed for first time in opposition to summary judgment); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-07 (9th Cir. 2001) (affirming exclusion of untimely expert disclosure); *Quevedo v. Trans-Pac. Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998) (affirming exclusion of expert testimony disclosed for first time in response to summary judgment motion); *Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 498-99 (9th Cir. 2009) (unpublished) (same).

Similarly, and even more egregiously, JDPI submitted in the Epps Declaration new evidence that had been requested by VIP during discovery but never revealed by JDPI.  In support of its partial motion for summary judgment, JDPI introduced, without notice or

excuse, factual information about JDPI's evidence of "consumer awareness" that had been expressly requested by VIP in discovery, but never produced by JDPI, even though VIP made follow-up requests for such information and JDPI's repeated assurance that its production was complete.

VIP respectfully requests the Court to exclude the untimely supplemental declaration of Simonson and the untimely evidence disclosed by Epps, for the reasons stated herein, and for the reasons stated by JDPI's counsel at the Telephonic Discovery Dispute Conference.

## II.   Procedural Background

The Court's Case Management Order, filed January 26, 2015 (Doc. 25), required Defendant JDPI to provide full and complete expert disclosures no later than May 8, 2015. Doc. 25 at 2.  The Court's June 16, 2015, Order extended JDPI's deadline to disclose its rebuttal expert opinions on July 13, 2015.  Doc. 63.  The deadline for completion of fact discovery was July 3, 2015.  Doc. 25 at 1.  Long after these cutoff dates, and despite its repeated assurances that its production was not deficient, JDPI filed newly disclosed evidence in the Epps Declaration and supplemented its expert's report with the Simonson Declaration.  For the following reasons, this new, previously undisclosed information should be excluded.

### A.   JDPI Submits the Untimely Epps Declaration

On April 8, 2015, VIP served JDPI with its first set of non-uniform interrogatories ("NUI"), and requests for production ("RFP").  *See* RFP and NUI, copies of which are attached hereto as Exhibit 2.  In them, VIP specifically requested documents regarding consumer awareness of the Jack Daniel's Brand.  *See* RFP nos. 7 and 21, and in NUI, nos. 2

and 4. *Id.*  JDPI responded to the RFP on May 14, 2015 with general and specific objections, but did not provide responsive documents.  *See* JDPI's Responses to RFP, attached hereto as Exhibit 3.

VIP requested that JDPI supplement its discovery multiple times, and specifically identified areas where JDPI's production has been insufficient.  *See* Exhibit 4.  JDPI responded by claiming that it did not view its production to be deficient in any way, and had nothing further to produce.  *See* Exhibit 5.

On October 23, 2015, JDPI moved for partial summary judgment.  Doc. 101.  In support of its argument that the Jack Daniels Trade Dress has acquired secondary meaning, JDPI claimed that "Brown-Forman's tracking studies confirm a very high level of awareness for the Jack Daniel's brand."  *Id.* at 10:27-28.  The only support provided by JDPI for that "fact" is the Epps Declaration filed with the Motion.  In paragraph five, the Epps Declaration states:

> Brown-Forman does ongoing consumer tracking studies regarding the prompted (aided) and unprompted (unaided) awareness of Jack Daniel's Old No. 7 Tennessee whiskey. The aided awareness of the Jack Daniel's brand is consistently around 98% and the unaided awareness of the brand is consistently in the 80th decile, which I believe to be among the highest levels of unaided awareness in the whiskey business.

Doc. 105, ¶ 5.  The Epps Declaration does not provide a copy of the referenced "consumer tracking studies," nor does Mr. Epps even attempt to identify or authenticate the alleged studies.  The so-called "tracking studies" is precisely the type of information that should have been disclosed under the rules and in response to VIP's NUI nos. 2 and 4 and RFP nos. 7 and 21.  *See* Exhibit 2.

**B.     JDPI Supplements the Report of its Expert, Dr. Simonson**

On May 8, 2015, JDPI served VIP the Expert Report of Dr. Itamar Simonson ("Simonson Report").   VIP has repeatedly requested the documents relied upon by Dr. Simonson in his report.  Prior to Dr. Simonson's deposition, counsel for VIP sent a *subpoena duces tecum* to Dr. Simonson requesting the documents relied upon in forming the opinions expressed in his report.  *See* <u>Exhibit 6</u>.   JDPI and Dr. Simonson refused to produce the documents.  By letter dated June 15, 2015, VIP's counsel again requested the documents and reiterated JDPI's obligations to produce those documents under the Rules.  *See* June 15, 2015 Letter, a copy of which is attached hereto as <u>Exhibit</u> 7.  Dr. Simonson never disclosed the requested documents.

On September 24, 2015, VIP moved to exclude the testimony of Defendant's expert, Itamar Simonson because Dr. Simonson's opinion lacks a sufficient objective, scientific basis and Dr. Simonson does not have specialized knowledge to support his opinions.  Doc. 92.  In its Opposition thereto, JDPI argued that Dr. Simonson's opinions were admissible and submitted the Simonson Declaration, which supplemented the Simonson Report with previously undisclosed information purporting to set forth the basis for his "specialized knowledge." Doc. 97-1.

**III.     <u>The Simonson Declaration and Epps Disclosure Should Be Excluded</u>**

**A.     The Simonson Supplemental Expert Declaration Should be Excluded**

It cannot be disputed that the Simonson Declaration constitutes an untimely supplemental expert disclosure.  This Court's Case Management Order required Defendant

JDPI to provide full and complete expert disclosures no later than May 8, 2015, Doc. 25, a deadline later extended to July 13, 2015, Doc. 63, and cautioned that "absent extraordinary circumstances, parties will not be permitted to supplement expert reports after these dates." Doc. 25 at 3.  The information contained in the Simonson Declaration that JDPI seeks to use to supplement Dr. Simonson's expert report should have been disclosed to VIP prior to the expert disclosure deadlines, or at least in response to VIP's June 15, 2015 Letter requesting "all the facts and data that Dr. Simonson considered in connection with forming the opinions expressed in the Simonson Report."  *See* <u>Exhibit 7</u>.  JDPI failed to do so, but instead filed the Simonson Declaration on October 12, 2015, more than three months after JDPI's expert disclosure deadline.  Doc. 25.

Supplementing the Simonson Report, long after the expert disclosure deadlines and without requesting a modification of the Court's scheduling order, violates Rule 16(b).  Rule 16(b) authorizes a district court to enter a scheduling order that limits or modifies the time to complete discovery, including "the times for disclosures under Rules 26(a) and 26(e)(l) and of the extent of discovery to be permitted." FRCP 16(b)(4).  Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert witnesses and opinions and requires full disclosure of the identity of the expert witness, "accompanied by a written report" that contains "a complete statement of all opinions to be expressed and the basis and reasons therefore" and the "data or other information considered" by the witness.  FRCP 26(a)(2)(B).  Rule 16(b) provides that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district court[.]"  Moreover, a party may not seek to modify a scheduling

order by implication; it must "specifically request that the court modify its scheduling order." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992).

Here, JDPI did not seek to modify the scheduling order or to extend its FRCP 26(a)(2) deadlines.  Instead, JDPI simply filed the supplemental Simonson Declaration in support of its Opposition.  This Court should exclude JDPI's new evidence on that ground alone.  *Id.* at 608-09.

In addition, because JDPI never moved to modify the scheduling order, it necessarily failed to establish "good cause," and should not be permitted to do so now.  In deciding whether "good cause" exists, "the focus of the inquiry is upon the moving party's reasons for seeking modification," although the existence of prejudice to the "party opposing the modification might supply additional reasons to deny a motion." *Id.* at 609.

Here, JDPI does not and cannot provide any explanation for why it did not disclose the information contained in the Simonson Declaration.  JDPI did not address the reasons for the non-disclosure in its Opposition.  JDPI never asserted that it had "good cause" for failing to comply with this court's orders, or that the deadlines could not "reasonably be met despite the diligence of the party seeking the extension."  Moreover, as this Court ruled in excluding four images disclosed by VIP's expert after the discovery cutoff, late expert disclosures are prejudicial:

> With regard to the four images produced by the experts, they will not be admissible. They will not be used. It's a clear violation by the expert of his duties under Rule 26. And I know Judge Campbell covers this and I cover it ad nauseam in my Rule 16 hearings that experts have to be told to comply with the rules.  And if they get caught in a cross-examination they didn't do something, they can't now say, oops, let me go back and do this all over again. That's not right.  He had a duty to learn and understand what the parameters were in this case.  If he's a true expert and if it goes to his detriment, so be it. But they will not be available. ***The***

***defendants will be prejudiced by these additional pieces of information, and I find that opening up discovery again to re-depose the expert, even at imposing the cost on the plaintiffs, would not be fair*** to the defendants and therefore, I find that they are not -- those are too late, too bad, and so sad.

*See* Transcript at 30:12-31:3 (emphasis added).  The exact same analysis applies to JDPI's undisclosed supplemental expert declaration.

Because JDPI did not move to modify the court's scheduling orders and did not provide "good cause" for its failure to timely supplement its expert's report, this Court should exclude the supplemental Simonson Declaration.  Federal Civil Rule 16(f) provides that if a party or party's attorney "fails to obey a scheduling or other pretrial order," the judge, upon motion or the judge's own initiative, "may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii)."  Federal Civil Rule 37(b)(2)(A)(ii) states that a district court may issue an order "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."  The Ninth Circuit has observed, in similar circumstances, that any sanction other than exclusion would render meaningless both the federal rules and the powers of the district court to effectively manage its cases.  *See Wong*, 410 F.3d at 1060.

In *Wong*, the Ninth Circuit affirmed a district court's refusal to allow a party to oppose summary judgment by relying on expert testimony that was disclosed after the scheduling order deadlines.  Unlike this case, the plaintiff in *Wong* at least attempted to justify the untimely disclosure, stating that "he had not anticipated the [defendant's] challenge" on a particular issue.  Both the district court and the Ninth Circuit rejected the plaintiff's excuse, noting that the

9

> efficient treatment and resolution of cases . . . will be successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines. Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence.

*Id.*; *see also Quevedo*, 143 F.3d at 1258 (affirming exclusion of expert testimony filed for first time in response to summary judgment motion because plaintiff "failed to justify his disregard for the Court's [scheduling] Order"); *Johnson*, 975 F.2d at 610 (noting that a "scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril") (citation omitted).

The purpose of this court's scheduling orders, Rule 16(b) and Rule 26(a), is to prevent the type of "trial by ambush" JDPI attempts here. For those orders and rules to have any meaning at all, this court should exclude the Simonson Declaration.

An additional, independent ground to exclude the Simonson Declaration is the "automatic" exclusion provision of FRCP 37(c)(1). A party that has failed to provide information required by Rule 26(a) or 26(e) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37(c) "gives teeth" to the requirements of Rule 26(a) and Rule 26(e) and courts are given wide latitude to issue sanctions under Rule 37(c)(1). *See Yeti by Molly*, 259 F.3d at 1106 (holding district court did not abuse its discretion in excluding testimony of defendant's only damages expert as a sanction). Generally, the exclusion penalty is "self-executing" and "automatic." *Hoffman v. Constr. Protective Serv's, Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008) (noting Rule 37(c)(1)'s

exclusion sanction provides a strong inducement for disclosure of material and affirming district court's exclusion of undisclosed damages evidence).

As noted, JDPI never attempted to demonstrate that its supplemental expert testimony was "substantially justified" or "harmless." Nor could it. JDPI effectively provided a new expert opinion for the first time in support of its Opposition, more than three months after expert disclosures were due. If this Court were to admit this evidence, VIP would need time to re-depose Simonson, and possibly draft new expert reports and new motions. The additional time and expense cannot be considered "harmless" to this Court or to VIP. Indeed, as this Court ruled during the Telephonic Discovery Dispute Conference, any late expert disclosure prejudices the other party. *See* Transcript at 30:12 - 31:3; *see also Wong*, 410 F.3d at 1062 ("Disruption to the schedule of the court and other parties in that manner is not harmless."); *Yeti by Molly*, 259 F.3d at 1107 (holding disclosure of one expert report one month before trial was not justified or harmless, because plaintiffs "would have had to depose [the expert] and prepare to question him at trial").

The exact same analysis applies here. VIP respectfully submits that "automatic" exclusion of the Simonson Declaration is the appropriate remedy.

**B.     Paragraph Five of the Epps Declaration Should Be Excluded**

In support of its Motion for Partial Summary Judgment (Doc. 101), JDPI submitted the Epps Declaration (Doc. 105). Mr. Epps is the Global Brand Director for Jack Daniel's Tennessee Whiskey for Brown-Forman Corporation. Doc. 105 at ¶ 1. Despite the discovery cut-off, the Epps Declaration includes information on brand "awareness" studies that JDPI could have, and should have disclosed during discovery in its response to VIP's RFP nos. 7

and 21, and NUI nos. 2 and 4. *See* <u>Exhibit 2</u>.   VIP explicitly requested in RFP no. 7, documents pertaining to "consumer recognition of the Jack Daniel's Trade Dress[.]"  *Id.*   In RFP no. 21, VIP requested documents "in which [JDPI] intend[s] to rely to establish the extent of the actual recognition of the JACK DANIELS TRADE DRESS."  *Id.*   In NUI no. 2, VIP requested the identification of "all facts and information pertaining to whether the JACK DANIELS TRADE DRESS … has acquired fame."  *Id.*   In NUI no. 4, VIP requested the identification of "all evidence in which [JDPI] intend[s] to rely to establish the extent of actual recognition of the JACK DANIELS TRADE DRESS."  *Id.*

JDPI responded to these requests with general and specific objections, and some responsive documents, but no "ongoing" consumer tracking studies of brand "awareness." *See* <u>Exhibit 3</u>.   VIP has requested that JDPI supplement its discovery multiple times, and has specifically identified areas where JDPI's production has been insufficient.   *See* <u>Exhibit 4</u>. JDPI responded by claiming that it did not view its production to be deficient in any way, and had nothing further to produce.  *See*  <u>Exhibit 5</u>.

Yet, in his declaration, Mr. Epps states:

> Brown-Forman does ongoing consumer tracking studies regarding the prompted (aided) and unprompted (unaided) awareness of Jack Daniel's Old No.7 Tennessee whiskey. The aided awareness of the Jack Daniel's brand is consistently around 98% and the unaided awareness of the brand is consistently in the 80th decile, which I believe to be among the highest levels of unaided awareness in the whiskey business.

Doc. 105, ¶ 5.  It cannot be disputed that the "consumer tracking studies" referenced in the Epps Declaration was the type of information and documentation VIP explicitly requested in discovery, not just in its initial requests for production and interrogatories, *see* <u>Exhibit 2</u>, but also in numerous follow-up letters. *See* <u>Exhibit 4</u>.

As evidence withheld during discovery and disclosed after the discovery cut-off, the information in paragraph five of the Epps Declaration should be excluded from the record. The rules do not permit JDPI to surprise VIP with new evidence offered in support of its partial summary judgment motion.  Instead, JDPI was obligated to disclose such evidence during fact discovery and in response to VIP's discovery requests.  *See* Fed. R. Civ. P. 37(c)(1) (stating that a party that fails to disclose information during discovery is "not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless"); *see also Cambridge Elec's Corp. v. MGA Elec's, Inc.*, 227 F.R.D. 313, 323-25 (C.D. Cal. 2004) (striking a declaration at summary judgment where the facts in the declaration were not previously disclosed in relevant interrogatory responses or supplementary interrogatory responses); *Cargill Inc. v. Progressive Dairy Solutions, Inc.*, No. CV-F-07-0349-LJO-SMS, 2008 WL 2235354, at * 10 (E.D. Cal. May 29, 2008) (striking declarations at summary judgment where there was a failure to disclose the statements at discovery or in supplementary interrogatory responses).

JDPI should not be permitted to flout the rules and rely on evidence disclosed only in support of its motion and long after the close of fact discovery.  The information in paragraph five of the Epps Declaration should be excluded from the record.

### Conclusion

Permitting JDPI to support its claims with information supplementing testimony and discovery after the discovery cutoff unfairly prejudices VIP, openly defies this Court's Orders, and is contrary to the timely resolution of this matter.  JDPI's blatant defiance of disclosure deadlines in this case, even after its counsel emphatically agreed with the Court

that those "deadlines are real," and its derelict representation that there were no deficiencies in its discovery responses, walks dangerously close to, if it does not completely cross, the line of bad faith.  For the reasons stated herein, VIP respectfully requests the Court to exclude the information in paragraph five of the Epps Declaration (Doc. 105) and the Simonson Declaration in its entirety (Doc. 97-1).

   **RESPECTFULLY SUBMITTED** this 13th day of November, 2015.

                                    **DICKINSON WRIGHT PLLC**

                                    By: *s/David N. Ferrucci*
                                        David G. Bray
                                        Frank G. Long
                                        Jonathan S. Batchelor
                                        David N. Ferrucci
                                        1850 North Central Avenue, Suite 1400
                                        Phoenix, Arizona  85004
                                        *Attorneys for VIP Products, L.L.C.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 13, 2015, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants:

<u>s/ C. Wheeler</u>

PHOENIX 53913-11 258485v2

15