**EXHIBIT "7"**



1850 NORTH CENTRAL AVENUE, SUITE 1400
PHOENIX, AZ 85004-4568
TELEPHONE: (602) 285-5000
FACSIMILE: (602) 285-5100
http://www.dickinsonwright.com

Frank G. Long
FLong@dickinsonwright.com
(602) 285-5093

June 15, 2015

**Via E-Mail and U.S. Mail**

Christopher C. Larkin, Esq.
**SEYFARTH SHAW LLP**
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3063

Re: VIP Products, LLC v. Jack Daniel's Properties, Inc., CV 14-02057 PHX DGC

Dear Chris:

We received your June 10, 2015 letter regarding the *subpoena duces tecum* to Dr. Itamar Simonson (the "Subpoena") in which you advised that Jack Daniel's Properties, Inc. ("JDPI") and Dr. Simonson, JDPI's expert, are refusing to provide certain materials that are identified in the Subpoena and that Dr. Simonson relied upon in forming the opinions expressed in his report (the "Simonson Report"). This letter is the VIP Products, LLC ("VIP"), response to that refusal.

JDPI and Mr. Simonson have failed to produce documents despite two separate obligations to provide them. First, Federal Rule of Civil Procedure 26(a)(2)(B) obligates JDPI to produce all the facts and data which Dr. Simonson considered in rendering his opinions (the "Required Materials"). Second, the Subpoena obligates Mr. Simonson to produce at the June 18th deposition the materials listed in Exhibit A to the Subpoena (the "Subpoenaed Materials").

The JDPI failure to produce the Required Materials and announced refusal to produce the Subpoenaed Materials (collectively, the "Materials") prejudices VIP. The Materials are critical to understanding the bases for the opinions expressed in the Simonson Report and, for the reasons expressed more fully below, the asserted objections are unfounded. Moreover, the Simonson Report is facially deficient in failing to comply with the affirmative obligation to produce the facts or data considered by a testifying expert in forming his opinions.

To ensure that an effective deposition can take place on the scheduled date, we ask that you confirm by **Tuesday, June 16th at 4:00 p.m. EDT** that either (1) Dr. Simonson will be producing the Required Materials by then and the Subpoenaed Materials on Thursday, June 18, 2015, at 9:30 a.m. EDT as ordered by the Subpoena or prepared to testify that no such materials exist; or (2) JDPI and Dr. Simonson choose to maintain their objections and have decided to

DICKINSON WRIGHT PLLC

June 15, 2015
Page 2

continue to refuse to produce the Materials. In hopes that they will choose the first alternative, this letter provides the following explanations on why those objections should be withdrawn.

**Required Materials**

The JDPI objections made pursuant to Rules 26(b)(5) and 45(d)(2)(B), *Fed. R. Civ. P.*, are ineffective. Rule 26(b)(5)(A) and Rule 45(e)(2)(A) both provide that when a party withholds information otherwise discoverable or subject to a subpoena "by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) <u>describe the nature of the documents</u>, communications, or tangible things not produced or disclosed—and do so <u>in a manner that, . . ., will enable other parties to assess the claim</u>." *Fed. R. Civ. P.* 26(b)(5)(A) and 45(e)(2)(A) (emphasis supplied). Your purported objections completely fail to describe the documents JDPI and Mr. Simonson are withholding. As such, your letter does not state a valid objection and should be withdrawn.

As you know, JDPI has an *affirmative obligation* to produce the facts or data considered by a testifying expert in forming his opinions. *Fed. R. Civ. P.* 26(a)(2)(B); *see e.g., Karn v. Ingersoll Rand*, 168 F.R.D. 633, 639 (N.D. Ind. 1996). Information "considered" includes documents or information received, reviewed, read, or authored by Dr. Simonson before or in connection with forming his opinions. *See Employees Committed for Justice v. Eastman Kodak Co.*, 251 F.R.D. 101, 104 (W.D.N.Y. 2008). All such Required Materials should have been included with Dr. Simonson's report, regardless of whether he ultimately relied on them in forming his opinions. *See Employees Comitted for Justice*, 251 FR.D. at 104; *Trigon Ins. Co. v. U.S.*, 204 F.R.D. 277, 282-83 (E.D. Va. 2001).

The Simonson Report does not fulfill this critical requirement of Rule 26(a)(2)(B). Identified below is a non-exhaustive list of sources the Simonson Report fails to even identify, let alone provide. Therefore, VIP expects JDPI and Dr. Simonson to produce **by the end of the day tomorrow,** so that they can be reviewed prior to this Thursday's deposition, all of the facts and data that Dr. Simonson considered in connection with forming the opinions expressed in the Simonson Report, whether or not such Required Materials are set forth explicitly in this letter. Those referenced, but yet unreleased materials, include, but are not limited to the following:

> ➢ The source of the "principles of consumer psychology and consumer processing of information about brands/marks" referred to in paragraphs 10-11.[1]

> ➢ The "currently accepted principles of how marks such as a famous trade dress are represented in memory" said to be reviewed in paragraph 12.

> ➢ The source for statement in paragraph 12 that the resemblance between

---

[1] All paragraph references in this list are to the numbered paragraphs of the Simonson Report.

DETROIT | NASHVILLE | WASHINGTON, D.C. | TORONTO | PHOENIX | LAS VEGAS | COLUMBUS
TROY | ANN ARBOR | LANSING | GRAND RAPIDS | SAGINAW

DICKINSON WRIGHT PLLC

June 15, 2015
Page 3

> VIP's Old No. 2 product and the Jack Daniel's trade dress is "unmistakable (and intended)."

> The source for statement in paragraph 12 that association with VIP's Old No. 2 product is unfavorable.

> Source for statement in paragraph 14 of the report that VIP's product "targets those consumers familiar with Jack Daniel's."

> Source for statement in paragraph 14 that VIP's product "adds an unfavorable mental association in these consumers' minds. . ."

> Source for statement in paragraph 14 that association added by VIP's product is "particularly damaging for a product that consumers drink."

> Source for statement in paragraph 15 that VIP's product "was designed to resemble the trade dress of the classic "Jack Daniel's–Old No. 7"

> "Prior research" referred to in paragraph 16 of the Report.

> "[P]rior research concerning the roles of brands, brand associations and representation in memory, brand equity, and the factors that influence consumers' responses to brands" referred to in paragraph 17 of the Report.

> Source for information regarding "McDonald's rumors (as recently as 2014)" referred to in Paragraph 19 of the Report.

> Source referred to in paragraph 21 of the report "[a]s indicated, favorable brand associations can affect consumer brand evaluations, . . ."

> Research referred to in paragraph 22, which states "research has shown . . ." but does not identify any research.

> Paragraph 23 indicates "strong brand equity and recognition have been shown . . ." but does not provide a source to support that assertion.

> Paragraph 23 indicates "[i]n particular research has demonstrated . . ." but does not identify any research.

> Paragraph 25 refers to "one recent study" comparing "the Jack Daniel's brand with other leading brands in the spirits category." But does not

DICKINSON WRIGHT PLLC

June 15, 2015
Page 4

    identify a study or source.

- ➢ Source for Paragraph 25 assertion that Jack Daniel's marks and trade dress are strong.

- ➢ Source for assertion in Paragraph 32 that Jack Daniel's brand is strongly associated with authenticity, masculinity.

- ➢ Source of "understanding" in Paragraph 33—"my understanding is that Jack Daniel's makes every effort not to associate its brand with underage consumers."

- ➢ Source for Paragraph 34 information concerning Jack Daniel's brand extensions.

As is evident from this list, Dr. Simonson's Report implies that many of his assertions are based on sources which have never been identified or disclosed. JDPI has an affirmative obligation to produce these Required Materials, and should have produced them with the Simonson Report, pursuant to Rule 26(a)(2)(B), Fed. R. Civ. P. Nevertheless, in an effort to ensure that it received the Required Materials, VIP served a subpoena on Dr. Simonson which specifically requests the documents within the scope of the Required Materials.

**Subpoenaed Materials**

JDPI is obligated to produce the Required Materials on which Dr. Simonson's opinions are based because it intends to offer his opinion in this case. Furthermore, Dr. Simonson has an independent duty to produce them because these Subpoenaed Materials are required by the Subpoena to which he has been commanded to respond.

The Subpoenaed Materials include several categories of documents that have not been produced and for which no objection was raised. These include, for example:

- ➢ "True and correct copies of any and all analysis, charts, diagrams, reports, articles, sources, and the like, in your possession on which you relied or are relying upon in forming your opinions in this matter." [Subpoena, Ex A thereto, at ¶ 1.e];

- ➢ "Your time records and billing invoices . . ." [Subpoena, Ex A thereto, at ¶ 1.g]; and,

- ➢ "All professional articles, reports or writings which, in your opinion, have been subject to peer review and generally accepted in the professional

June 15, 2015
Page 5

> community upon which you have relied in support of any of your opinions in this Litigation." [Supboena, Ex A thereto, at ¶ 3].

The Subpoena calls for other categories of documents which have also not been produced, but which Dr. Simonson purportedly objects to producing. These include, for example:

> ➢ "All documents or writings furnished or supplied to you by Counterclaimant or its attorneys or from any other source at any time since your initial contact with them through the date of your response to this subpoena" [Subpoena, Ex A thereto, at ¶ 1.a];
>
> ➢ "Any and all documents or writing reviewing[sic] by you with respect to your May 7, 2015 Rule 26 Expert Report submitted by Counterclaimant in this Litigation, regardless of the source of the documents or writings." [Subpoena, Ex A thereto, at ¶ 1.h]; and,
>
> ➢ "All of your typewritten or handwritten notes, memoranda, records, logs, journals, correspondence, summaries of conferences, interviews or telephone conversations, written reports, drafts, or other documents or writings relating in any way whatsoever to your investigation or analysis of any issue or claim in this Litigation and its subject matter, . . ." [Subpoena, Ex A thereto, at ¶ 1.k].

Dr. Simonson may be held in contempt for failing to obey the Subpoena without adequate excuse. Fed R. Civ. P. 45(g). As illustrated above, the Simonson Report implies that documents exist within the scope of these requests which have not been produced, and there is no valid excuse for failing to provide these Subpoenaed Materials.

**Consequences of Non-Compliance**

Your June 10 letter indicates that JDPI intends to produce no additional materials other than to have the "toy and two voluminous textbooks" available at Dr. Simonson's deposition. Proceeding in such a manner would violate JDPI's disclosure obligations and the Subpoena to Dr. Simonson. Obviously, all of these statements listed above could not be based on review of two textbooks.

Even assuming one or more of the statements is based on some information in a textbook, a vague reference to one or more "voluminous textbooks" is not sufficient to identify the facts or data upon which the Report is based. VIP will not waste deposition time while Dr. Simonson hunts through textbooks to find sources that could easily have been provided in advance. If such

DICKINSON WRIGHT PLLC

June 15, 2015
Page 6

waste occurs, VIP will move for sanctions and for reimbursement for VIP's fees and costs associated with Dr. Simonson's deposition.

Dr. Simonson and JDPI's failure to produce all these Materials, if not immediately corrected, will be a basis for striking Dr. Simonson's Report and precluding him from testifying. In providing this letter, VIP intends only to illustrate how Dr. Simonson and JDPI's disclosure with respect to the Simonson Report is deficient, not to provide a comprehensive list of the Materials that must be produced. Indeed, because of Dr. Simonson and JDPI's failure in this regard, VIP does not have any way to know what facts and data Dr. Simonson considered in forming his opinions.

At your earliest convenience, please notify this office whether JDPI and Dr. Simonson will (1) produce all of the Required Materials by **tomorrow at 4:00 pm** and produce all the Subpoenaed Materials at Dr. Simonson's deposition; or, (2) continue to refuse refusal to provide the Materials. Please understand that, if JDPI and Dr. Simonson are willing to produce all of these documents and only need additional time to do so, we can arrange to continue the deposition to allow sufficient time for the production to be accomplished.

If JDPI and Dr. Simonson are contending that no other discoverable documents exist, please immediately notify me of their contention. Be advised, however, that VIP will test this contention at Dr. Simonson's deposition, and if it becomes evident that responsive documents have been improperly withheld, VIP will move for sanctions and, if necessary, for Dr. Simonson to be deposed again at JDPI's expense.

                        Best regards,

                        Frank G. Long

FGL:kmb

PHOENIX 53913-11 226749v1