1  QUARLES & BRADY LLP
   Gregory P. Sitrick
2  Isaac S. Crum
   One Renaissance Square
3  Two North Central Avenue
   Phoenix, Arizona 85004-2391
4  Telephone: (602) 229-5317
   Facsimile: (602) 420-5198
5  E-mail: Gregory.Sitrick@quarles.com
   Isaac.Crum@quarles.com
6
   SEYFARTH SHAW LLP
7  Christopher C. Larkin (admitted pro hac vice)
   2029 Century Park East
8  Suite 3500
   Los Angeles, California 90067-3021
9  Telephone: (310) 201-5289
   Facsimile: (310) 201-5219
10 E-mail: clarkin@seyfarth.com

11 *Attorneys for Defendant and Counterclaimant*
   *JACK DANIEL'S PROPERTIES, INC.*
12

13              **IN THE UNITED STATES DISTRICT COURT**

14              **FOR THE DISTRICT OF ARIZONA**

15 VIP Products, LLC,                    )    No. CV-14-2057-PHX-SMM
                                          )
16              Plaintiff,                )    **DEFENDANT'S OPPOSITION**
                                          )    **TO PLAINTIFF'S MOTION**
17 v.                                     )    **TO STRIKE THE EPPS AND**
                                          )    **SIMONSON DECLARATIONS**
18 Jack Daniel's Properties, Inc.,        )
                                          )
19              Defendant.                )
                                          )
20 _____       )
                                          )
21 And Related Counterclaims.             )
                                          )
22 _____
23
24
25
26
27
28

   **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE THE**
                 **EPPS AND SIMONSON DECLARATIONS**

## INTRODUCTION

Plaintiff VIP Products, LLC's ("VIP") Motion should be denied for the simple reason that it was brought in violation of the local rules.  Local Rule 7.2(m)(2) is clear that a party may not file a separate motion to strike evidence supporting a written motion.  Given the unnecessary briefing time and costs incurred by defendant Jack Daniel's Properties, Inc. ("JDPI"), JDPI respectfully requests that the court sanction VIP by awarding JDPI its fees for responding to this needless motion.

If the Court permits VIP to violate the local rules and considers the merits of the instant Motion, it must still be denied.  The declarations at issue are completely proper.  The testimony and materials referenced by Philip Epps were produced during discovery and Mr. Epps's deposition testimony regarding certain tracking studies is virtually identical to what is found in his declaration.  The same is true for Dr. Simonson.  His expert report and deposition testimony are fully consistent with his declaration in opposition to VIP's *Daubert* motion.  Further, given that Dr. Simonson is responding to a *Daubert* challenge, his declaration need not be limited to his expert report, but can address matters going to his bona fides as an expert and the sufficiency of his methodology, just as if he were being examined on *voir dire* at trial.  Because the two declarations are not improper new testimony, JDPI respectfully requests that the Court deny VIP's Motion and sanction VIP by awarding JDPI its fees for responding to this baseless motion.

## I.    VIP'S MOTION VIOLATES THE LOCAL RULES

In connection with JDPI's Opposition (Doc. 96) to VIP's *Daubert* Motion (Doc. 92) ("*Daubert* Motion") and JDPI's Motion for Summary Judgment (Doc. 101) ("Summary Judgment Motion"), JDPI submitted two declarations.  The first declaration was the Declaration of Itamar Simonson ("Simonson Declaration") Opposing VIP's *Daubert* Motion.  (Doc. 97-1).  The second was the Declaration of Phillip Epps ("Epps Declaration") in Support of JDPI's Motion for Partial Summary Judgment.  (Doc. 105).

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE THE EPPS AND SIMONSON DECLARATIONS**

1   These declarations were clearly submitted as evidence in opposition to and in support of

2   the underlying written motions.

3        Through either ignorance of the local rules or intentional disregard, VIP filed the

4   instant Motion moving to exclude these two evidentiary declarations. Local Rule

5   7.2(m)(2) makes it clear that the instant Motion is completely improper:

> Objections to Admission of Evidence on Written Motions. An
> objection to (and any argument regarding) the admissibility of
> evidence offered in support of or opposition to a motion must be
> presented in the objecting party's response or reply memorandum
> and **not in a separate motion to strike or other separate filing.**

9   LRCiv. 7.2(m)(2) (emphasis added). For this reason alone, VIP's motion should be

10  summarily denied.

11       Indeed, because the rules could not be clearer, JDPI hereby moves the Court to

12  sanction VIP and award JDPI its expenses in responding to this motion.[1] The Court has

13  the inherent power to sanction VIP for violating the Local Rules. *See* LRCiv. 83.1(f).

14  **II.    CONSIDERING THE MERITS, VIP'S MOTION IS MERITLESS**

15       If the Court considers the merits of VIP's Motion, it should still be denied. The

16  crux of VIP's arguments is that JDPI is somehow violating the rules by introducing *new*

17  information into the case after the close of discovery. *See, e.g.,* Mot. 6–11 (alleging that

18  entirety of Simonson Declaration was an untimely supplementation of his expert report)

19  and Mot. 11–13 (alleging that paragraph 5 of the Epps Declaration introduced evidence

20  which was not disclosed during discovery). VIP is wrong on both counts. With respect

21  to both declarations, the challenged information was disclosed to VIP during discovery.

22  There is nothing *new* being presented. Furthermore, with respect to the Simonson

---

[1] Further supporting this request, VIP has previously ignored this Court's Local Rules and this Court's Orders. *See* Doc. 125 (detailing VIP exceeding Court ordered page limitation for statement of facts); *see* Doc. 94 (describing VIP's mis-titled and untimely motion for reconsideration); *see also* Doc. 126-1 (certification showing failure to meet and confer before Local Rule 5.6 filing and admitting VIP never asked for JDPI's position after providing JDPI with a draft of its proposed filing).

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE THE EPPS AND SIMONSON DECLARATIONS**

1    Declaration, the Court's Case Management Order (Doc. 25) and the Federal Rules cited

2    by VIP apply only to testimony intended to be offered at trial, and the Court's Case

3    Management Order contemplates supplementation of an expert report through testimony

4    elicited during the expert's deposition.  To the extent that there is information in the

5    Simonson Declaration which was not disclosed in his report or his deposition testimony,

6    JDPI is only relying on that matter to address VIP's *Daubert* motion, in the manner of

7    defense of Dr. Simonson's bona fides and methodology during expert *voir dire* or cross-

8    examination at trial.  For all of the reasons explained below, VIP's Motion should be

9    denied on the merits.

10          A.    **The Epps Declaration**

11          VIP's contends that paragraph five of the Epps Declaration should be excluded by

12    the Court.  Mot. 11–13.  In order to support its claim, VIP states that: (1) VIP served

13    discovery requests which sought any such evidence (Mot. 11–12); and (2) JDPI did not

14    disclose the requested information until after the close of discovery (Mot. 13).  VIP is

15    wrong on both counts.  The entirety of the Epps Declaration is proper and consistent with

16    evidence adduced during discovery.

17

18            *1.    VIP did **not** serve discovery requests which sought the information in paragraph five of the Epps declaration.*

19          As is clear simply by reading paragraph five, the information and underlying

20    consumer awareness studies relate to the awareness of the Jack Daniel's Old No. 7

21    Tennessee whiskey brand.[2]  As Mr. Epps specifically testified at his deposition, JDPI

22    does not track recognition of the Jack Daniel's Trade Dress.  Crum. Decl. Ex. 1 (Epps

23    Dep. Tr.), 130:23–132:7.  VIP cites to four discovery requests which it alleges sought

24    awareness studies regarding the brand (and not the trade dress): Interrogatories No. 2 and

25

26    ──────────────

27    [2]For this Court's reference paragraph five of the Epps declaration is reprinted in its entirety in the following section of this opposition.

28

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE THE EPPS AND SIMONSON DECLARATIONS**

1  4, and Requests for Production Nos. 7 and 21.  The discovery requests cited by VIP,

2  however, all relate solely the trade dress as a whole and simply do not request

3  information regarding tracking studies of the brand.  *See* Mot. 12 and Mot. at Ex. 2 (each

4  cited request directed to the "Jack Daniels Trade Dress").  VIP simply did not serve

5  discovery directed to tracking studies of the brand as opposed to the trade dress.  But as

6  shown below **VIP *did* receive this information during discovery.**

7

8  2.    *VIP received the information in paragraph five of the Epps*
        *declaration during discovery.*

9  VIP deposed Mr. Epps on July 17, 2015.  During his deposition, Mr. Epps testified

10 almost verbatim to what is contained in paragraph five of the Epps Declaration.  Thus,

11 contrary to VIP's assertions, VIP has known all about the testimony in paragraph five and

12 the consumer studies which track Jack Daniel's brand awareness since July 17, 2015.  For

13 the Court's reference, paragraph five of the Epps Declaration and Mr. Epps's deposition

14 testimony are shown side-by-side below:

| Epps Decl., ¶ 5 (Doc. 105). | Epps Tr., 130:23–132:7 (Crum Decl. Ex. 1) |
|---|---|
| 5.  Jack Daniel's Old No. 7 Tennessee whiskey is sold in the United States through a wide variety of "off-premise" outlets (private and state-controlled liquor stores, grocery stores, mass merchandisers, and other retailers) and "on-premise" outlets (primarily bars and restaurants). It has been the best-selling whiskey in the United States since 1997. It is by far the largest-selling American whiskey. Brown-Forman does ongoing consumer tracking studies regarding the prompted (aided) and unprompted (unaided) awareness of Jack Daniel's Old No. 7 Tennessee whiskey. The aided awareness of the Jack Daniel's brand is consistently around 98% and the unaided awareness of the brand is consistently in the 80th decile, which I believe to be among the highest levels of unaided awareness in the whiskey business. | "Q. . . has Brown-Forman ever done a study to determine what percentage of consumers recognize Jack Daniel's, the mark, identify it with Jack Daniel's whiskey and bourbon product?<br>A. So.<br>Q. Whiskey product. Sorry.<br>A. So I don't know if this is answering your question exactly, but when we research we have an ongoing consumer research study and we track things like awareness and usage, and when we track awareness we track what we call prompted awareness. So you put out a list of products and say, are you aware of any of these products and that's called prompted awareness.  We then have what we call unprompted awareness which is done before they see those, please list out all of the spirit brands or whiskey  brands |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE THE**
**EPPS AND SIMONSON DECLARATIONS**

| | |
|---|---|
| | you know of. So our prompted awareness is about 98 percent.<br>Q. For Jack Daniel's?<br>A. For Jack Daniel's Black Label and what we would call our unprompted or our unaided awareness is in the 80s, which is probably one of the highest in the industry.<br>Q. And in terms of -- you're not aware of Brown-Forman conducting any consumer research study that attempts to parse out awareness by consumers of individual components of the alleged Jack Daniel's trade dress; correct?<br>MR. LARKIN: Other than the Jack Daniel's mark which as you know is one.<br>Q. Other than the Jack Daniel's mark?<br>A. Not specifically so, no, not to my knowledge. |

Mr. Epps thus made it clear to VIP in July that JDPI does not have any tracking studies relating to the Jack Daniel's Trade Dress.

Adding insult to injury, the tracking studies regarding the Jack Daniel's brand—which VIP contends were withheld (Mot. 13)—were actually produced by JDPI on June 16, 2015, a month *before* the Epps deposition and during fact discovery.  The particular document, Bates labeled IS-CON000089–91, contains JDPI's brand awareness studies for multiple quarters.[3]  VIP examined Dr. Simonson about this document.  *See* Crum Decl. Ex. 2 (Simonson Dep. Tr.), 7 (identifying Ex. 22 as IS-CON000089–91).  VIP's contention that paragraph five of the Epps declaration presents new evidence which was

---

[3]This document was produced in connection with Dr. Simonson's deposition.  JDPI is compelled to respond to VIP's claim on page 6 of its Motion that JDPI never produced documents in response to the subpoena directed to Dr. Simonson.  VIP omitted JDPI's response to VIP's Ex. 7 on this motion (Crum Decl. Ex. 3) in which JDPI made it clear that over 1,000 pages of documents were produced in response to the subpoena.

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE THE EPPS AND SIMONSON DECLARATIONS**

1  withheld during discovery is flat out wrong and this portion of the Motion is baseless and

2  should be denied.

3      **B.**    **The Simonson Declaration**

4         The portion of VIP's Motion seeking to exclude the entirety of the Simonson

5  Declaration appears to be founded on the assumption that an expert's entire testimony

6  must be included in his initial report in *ipsis verbis.* That is not the law—if it were, the

7  direct testimony of experts would be reduced to a reading exercise. Rather, under Rule

8  26(a)(2)(B), the opinions ultimately offered by the expert must be a reasonable synthesis

9  and/or elaboration consistent with what is in the expert's report. *See Thompson v. Doane*

10  *Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006) ("[Rule 26(a)(2)(B)] contemplates that

11  the expert will supplement, elaborate upon, explain and subject himself to cross-

12  examination upon his report."); *nCube Corp. v. SeaChange Int'l, Inc.*, 809 F. Supp. 2d

13  337, 347 (D. Del. 2011) (alteration in original) (*quoting Power Integrations, Inc. v.*

14  *Fairchild Semiconductor Int'l, Inc.*, 585 F. Supp. 2d 568, 581 (D. Del. 2008)) ("When

15  determining whether an expert's testimony is beyond the scope of the expert's written

16  report, courts do not require 'verbatim consistency with the report, but . . . allow[]

17  testimony which is consistent with the report and is a reasonable synthesis and/or

18  elaboration of the opinions contained in the expert's report.'"). Moreover, the Court's

19  Case Management Order states:

20

21        [E]xpert reports under Rule 26(a)(2)(B) must set forth "the testimony the witness is expected to present during direct examination, together with the reasons therefor." . . . **The Court**

22  **notes, however, that it usually permits parties to present opinions of their experts that were elicited by opposing counsel**

23  **during depositions of the experts. Counsel should depose experts with this fact in mind.**

24

25  Jan. 26, 2015 Order (Doc. 25) at ¶ 5(f) (emphasis added). Under the proper standard,

26  VIP's motion has completely failed to meet its burden of showing that the entirety of the

27  Simonson Declaration is an "untimely supplemental expert disclosure" as opposed to a

28  proper synthesis or elaboration of the opinions already disclosed in Dr. Simonson's

6

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE THE EPPS AND SIMONSON DECLARATIONS**

1  expert report and elicited by VIP's counsel during his deposition, for purposes of

2  responding to the claims in VIP's *Daubert* motion.  What new opinions are being offered

3  by Dr. Simonson?  How are they different than his previously offered opinions?  Did he

4  testify about any of these opinions during his deposition?  All of these questions are left

5  for the Court to answer on its own.  Because VIP has done no analysis to ascertain

6  whether contents of Dr. Simonson's declaration comport with the subject matter of his

7  earlier expert report, VIP's motion should be summarily denied.

8        In any event, as explained below, almost every paragraph of the Simonson

9  Declaration corresponds either to a paragraph in Dr. Simonson's expert report or to

10 testimony elicited during his deposition, and the two that do not specifically respond to

11 claims made in VIP's *Daubert* motion.

12            1.    *The Simonson Declaration reflects the same opinions presented in*
                   *Dr. Simonson's Expert Report and elicited at Dr. Simonson's*
13                 *Deposition.*

14       As mentioned above, VIP did no analysis to ascertain whether the Simonson

15 Declaration was consistent with Dr. Simonson's earlier expert report or the deposition

16 testimony elicited by VIP's counsel.  Instead, VIP reflexively concludes that since Dr.

17 Simonson submitted a declaration, it must be an "untimely expert disclosure."  Not so.  A

18 declaration submitted in opposition to a *Daubert* motion is not necessarily the same as

19 testimony elicited during trial, where there is no requirement that an expert testify

20 verbatim with what is in his expert report.  Further, as this Court made clear in the Case

21 Management Order, experts may testify about opinions offered in their expert reports *or*

22 which were elicited by opposing counsel during their depositions, and VIP's counsel

23 examined Dr. Simonson on the topics that are raised in VIP's *Daubert* motion.

24       Everything in the Simonson Declaration (with the exception of paragraphs 18 and

25 19 of his declaration, which discuss his past testimony in dilution cases in specific

26 response to VIP's claims in its *Daubert* motion) were disclosed either in his expert report

27 or during his deposition testimony and VIP's motion should be denied.  JDPI sets forth

28

---

7

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE THE**
**EPPS AND SIMONSON DECLARATIONS**

below the specific sections of the report and deposition where paragraphs from his report

or testimony corresponding to his declaration can be found:

| Simonson Declaration Paragraph and Summary of Testimony | | Corresponding Section of Simonson Expert Report or Deposition Testimony |
|---|---|---|
| ¶ 1 | Dr. Simonson's *bona fides* | Report, ¶ 1. |
| ¶ 2 | Dr. Simonson's *bona fides* | Report, ¶ 2. |
| ¶ 3 | Dr. Simonson's *bona fides* | Report, ¶ 3. |
| ¶ 4 | Dr. Simonson's *bona fides* | Report, ¶ 4. |
| ¶ 5 | Dr. Simonson's experience and knowledge | Report, ¶ 5–10; Tr. 151:5–153:2. |
| ¶ 6 | History with marketing principles and associative network memory model | Report, ¶ 5–10; 12, 17, 19; Tr. 70:10–73:10; 151:5–153:2; 178:12–179:6. |
| ¶ 7 | Dr. Simonson's charge | Report, ¶ 10; Tr. 151:5–153:2. |
| ¶ 8 | Fact of preparing expert report | Tr. 15:8–14. |
| ¶ 9 | Summarizes findings of expert report | Report, *passim*; *see also* ¶15; Tr. 49:4–50:16; 145:21–148:12. |
| ¶ 10 | Summarizes findings of expert report | Report, *passim*; *see also* ¶12, 17, 19; Tr. 151:5–153:2. |
| ¶ 11 | Components of assessing dilution | Report, ¶ 14, 19, 27; Tr. 20:10–25; 49:4–50:16; 74:7-80:9; 223:13–226:8; 243:6–20. |
| ¶ 12 | Assumed association existed because product is parody | Tr. 70:10–73:10; 223:13–226:8. |
| ¶ 13 | Report directed to implication of association | Tr. 49:4–50:16; 70:10–73:10; 223:13–226:8; 243:6–20. |
| ¶ 14 | No accepted survey methodology to determine whether association tarnishes | Tr. 70:10–73:10; 74:7-80:9; 81:6–82:15; 84:9–96:8; 98:22–100:5; 103:12–107:13; 112:12–113:5; 223:13–226:8. |
| ¶ 15 | Dilution is gradual whittling away | Tr. 72:23–73:10. |
| ¶ 16 | I employed associative network memory model and experience | Tr. 70:10–73:10; 178:12–179:6. |
| ¶ 17 | I have applied the same methodology in other cases | Tr. 70:10–73:10; 98:22–100:5. |
| ¶ 20 | Usefulness of focus groups | Tr. 17:8–25; 60:4–61:2; 62:7–63:5; 65:2–66:3; 66:20–22; 81:6–82:15. |
| ¶ 21 | No specific product expertise is necessary; principles of behavior are universal | Tr. 154:13–155:4; 166:16–167:12; 223:13–226:8. |
| ¶ 22 | No scientific basis for notion that | Tr. 154:13–155:4; 166:16–167:12; |

8

| general experience in particular product assists an expert in opining on dilution | 223:13–226:8. |
|---|---|

Because the testimony in the Simonson Declaration is supported by the opinion offered in either his report or his deposition testimony, VIP's motion must be denied.

> 2.    *To the extent anything in the Simonson Declaration is beyond what was disclosed in his expert report or deposition, it still is permissible in the context of a Daubert motion.*

Finally, the context of the Simonson Declaration must be appreciated.  The Simonson Declaration is *not* being offered as part of JDPI's case-in-chief at trial or on summary judgment.  It is being offered to rebut claims made by VIP in its *Daubert* motion.  The Federal Rules of Civil Procedure and this Court's Case Management Order only require an expert's report to contain the expert witness's expected direct examination during trial:

> As stated in the Advisory Committee Notes to Rule 26 (1993Amendments), **expert reports under Rule 26(a)(2)(B) must set forth "the testimony the witness is expected to present during direct examination, together with the reasons therefor."**

Jan. 26, 2015 Order (Doc. 25) at ¶ 5(f) (emphasis added).  Contrary to VIP's argument, there is no requirement under the Court's rules or the Federal Rules that a party disclose testimony which will not be presented at trial or which may come up during cross-examination at trial.  Dr. Simonson is simply responding to VIP's challenge of his credentials and methodology just as he would be permitted to do if he were cross-examined on expert *voir dire* at trial.  Paragraphs 18 and 19 of the Simonson Declaration specifically respond to VIP's motion with reference to prior instances in which Dr. Simonson testified on blurring or tarnishment in dilution cases without doing a survey or study on that issue.  Thus, in the proper context the entirety of the Simonson Declaration is completely proper.  Indeed other Courts have similarly allowed such clarifications when responding to *Daubert* motions:

> As a preliminary matter, [defendant] argues that the Court cannot consider the "belated declarations" of [plaintiff's] experts

9

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE THE EPPS AND SIMONSON DECLARATIONS**

McCloskey, Krauss, and Poret, which were submitted in response to the motions to exclude each expert. Citing Federal Rule of Civil Procedure 37(c)(1), [defendant] argues that these declaration are "new opinions" which were "submitted outside the discovery deadline." Def.'s Reply Mem. Supp. Mot. Exclude Frances McCloskey 14. The Court does not find that these declarations contain "new opinions"—they contain no new material information and present no opinions that were not provided during discovery. The experts' declarations merely clarify their reports in response to questions raised in [defendant's] *Daubert* motions. These are not "supplemental reports" submitted after the expert deadline, nor do they result in "sandbag[ging] one's opponent with claims and issues which should have been included in the expert witness' report." *Beller ex rel. Beller v. United States*, 221 F.R.D. 696, 701 (D.N.M. 2003). [It i]s proper for the court to consider these declarations when deciding the admissibility of these experts.

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc*., 829 F. Supp. 2d 802, 820–21 (D. Minn. 2011). Similarly, because Dr. Simonson's declaration merely clarifies his report in response to questions raised in VIP's *Daubert* motion, it is not a "supplemental reports" submitted after the expert deadline, nor does it result in "sandbag[ging] one's opponent with claims and issues which should have been included in the expert witness' report." *Id.*

## CONCLUSION

For all of the foregoing reasons, VIP's motion for to exclude the declarations of Mr. Epps and Dr. Simonson should be denied in its entirety. In addition, because of the failure to follow the local rules, the meritless nature of the motion, and VIP's history in this case, JDPI respectfully asks the Court to impose sanctions to compensate JDPI for having to respond to this Motion.


DATED: November 30, 2015                    Respectfully submitted,


                                             */s/ Isaac S. Crum*
                                            Gregory P. Sitrick (AZ Bar #028756)
                                            Gregory.Sitrick@quarles.com
                                            Isaac S. Crum (AZ Bar #026510)
                                            Isaac.Crum@quarles.com
                                            Quarles & Brady LLP
                                            Firm State Bar No. 00443100
                                            One Renaissance Square
                                            Two North Central Avenue

10

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE THE EPPS AND SIMONSON DECLARATIONS**

1

2

Phoenix, AZ 85004
Telephone (602) 229-5200
Fax (602) 229-5690

3

4

5

6

7

8

SEYFARTH SHAW LLP
Christopher C. Larkin
(admitted pro hac vice)
clarkin@seyfarth.com
2029 Century Park East
Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 201-5289
Facsimile: (310) 201-5219

9

10

*Attorneys for Jack Daniel's Properties, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE THE
EPPS AND SIMONSON DECLARATIONS**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 30, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record in this case.

*/s/ Isaac S. Crum*

Isaac S. Crum