# EXHIBIT V

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| VIP Products, L.L.C., an Arizona limited liability company, | |
| Plaintiff, | |
| v. | No. 2:14-cv-02057-DGC |
| Jack Daniel's Properties, Inc., a Delaware corporation | |
| Defendant, | **RULE 26 EXPERT REPORT OF** |
| | **JOHN HOWARD** |
| Jack Daniel's Properties, Inc., a Delaware corporation | |
| Counterclaimant, | |
| v. | |
| VIP Products, L.L.C., an Arizona limited liability company, | |
| Counterdefendant. | |

HOW0001

John R. Howard
KDA Industrial Design Consultants, Inc.
28W102 Robin Lane, West Chicago, IL 60815-2524
Tel. 630-495-9466 / Mobil 630-730-9782
Website: http://www.designkda.com

## BACKGROUND & EXPERIENCE

I am an Industrial Design Professional and project Design Director and I have hands-on knowledge of the industrial product design process.   I have developed over 20 patented products and devices during my career, which started in 1960.

Since 1975, I have been the owner of KDA, an Industrial Design consulting firm that I purchased form its 1947 founders.  KDA creates consumer product designs and packaging as well as commercial, industrial, and medical products.

Representative KDA commercial clients have included: Container Corporation of America, Silgan Bottles, McDonnell Douglas, Signode, Dow Chemical, and AT&T.  The representative services of KDA to its commercial clients include: industrial design, new product development, cost reduction, new products, and utility and design patents.

Representative KDA clients selling consumer items include: 3M, Sears, Wilson Sporting Goods, Sunbeam.  KDA services to consumer-product clients include: industrial design, new product development, 3D printed models, design for cost reduction, product re-design; tooling, manufacturing & package design.

The following website provides a link to over 85 Past & Current KDA Clients: www.DesignKDA.com/Clients.html

## EVALUATION OF THE JACK DANIEL'S BOTTLE DESIGN

I was retained by VIP Products, LLC, to evaluate the design of a bottle used by Jack Daniel's for packaging distilled spirits.  The purpose of my evaluation was to determine whether the combined features of the design of the Jack Daniel's bottle are essential to the use or purpose of packaging distilled spirits or if the design affects the cost or quality of bottled distilled spirits.

### <u>U.S. Patent and Trademrk Registration of the Jack Daniel's Bottle Design</u>

Jack Daniel's Properties, Inc. holds a trademark in "a square shape bottle container . . . for distilled spirits."  The Jack Daniel's bottle shape has a U.S. Patent and Trademark Office Registration, No. 4,106,178, and the Jack Daniel's bottle design is illustrated in the Trademark Office registration as the following:



The PTO registration for the Jack Daniel's bottle design describes it as "the three-dimensional configuration of the square shaped bottle container for the goods, having an embossed ridge or scalloped design on the neck portion of the bottle, and an embossed signature design comprised of the words 'JACK DANIEL.'"

**The Primary Features and Details of the Jack Daniel's Bottle Design**

The Jack Daniel's bottle design has three primary features: (1) a square shaped body, (2) an embossed scalloped design on the neck portion of the bottle, and (3) an embossed signature design on the bottle.

**Usefulness and Efficiency of the Jack Daniel's Bottle Design**

To determine whether the combined features of the Jack Daniel's bottle design are essential to the use or purpose of the packaging of distilled spirits or if those combined design features affect the cost or quality of bottled distilled spirits, I made the following assessments, based on my knowledge, experience and expertise.

**1. Does the Jack Daniels Bottle Design yield a Utilitarian Advantage?**

The combined features of the Jack Daniel bottle design yields several utilitarian advantages. The advantages make the bottle design the most effective and utilitarian form for the packaging of distilled spirits.

The square bottle shape minimizes the cubic inches required to package the liquid contents of the bottle. By minimizing the number of cubic inches for the bottle, the square shape reduces the cost of packing, shipping and displaying the bottle. Minimizing the cubic inches assists the merchandising and marketing the bottle by allowing more bottles to be displayed on a retail shelf or in a floor or point-of-purchase display.

The flat faceted 5/18" corners keep the corners of the bottle from chipping or breaking during bottling on the labeling line or during shipping in corrugated boxes and multi-packed cartons on pallets for domestic as well as on sea container boats worldwide.

The four flat label surfaces are inset 1/16th of an inch to keep the surfaces from rubbing together and defacing or damaging the label graphics.

The square shape also enhances the grip on the body of the bottle. It enables the user to have a secure purchase on the body of the bottle and the protrusion across the top of the side panels helps to keep the human hand from sliding off the sides.

The square shape enhances the retail display of the bottle. The shape is more compact, allowing for more effective placement on store shelves, and the flat sides enhance the visual display and legibility of the bottle labels. The flat labels allow the entire to be seen by the customer, unlike labels on rounded surfaces.

The embossed scalloped design on the neck portion of the bottle improves the grip of the bottle in that the contours fit into the male or female hand from an ergonomic standpoint. The eight facets are consistent with the shape and form of the bottle while forming a gripping area that is rounded and easy to grip. The contour is designed to fit the human hand, making it easier and more secure to handle the bottle. This keeps the bottle from slipping out of the hand during carrying or pouring.

The embossed signature design on the bottle is useful to identify the product easily in the retail marketplace. The design cannot be removed without destroying the bottle, providing an indelible identifier of the product inside.

**2.      Are there alternative designs available that provide the same advantages?**

Square Body Shape.  Primary alternatives to the square body shape for bottles are: smooth round shape; flat oval (front and back parallel); triangulated; rectangular shape; round with a flat face; hexagonal; octagonal; radius-shaped flat oval; round bottle with flat cuts on the face;  and flat oval shape.

A smooth round shape does not yield the same utilitarian advantages as the Jack Daniel's bottle. The round shape loses space when you stack the bottles together.  Also, it is more difficult to places a label precisely on a round bottle shape and it is more difficult to orient two labels on a round bottle.  A round bottle is less stable if placed on its side.

A flat oval (front and back parallel sides) does not yield the same utilitarian advantages as a square bottle. Whether concave or convex, the oval shape loses space between bottles in shipping and in display and increases the probability of breakage.

A triangulated bottle does not yield the same utilitarian advantages as a square bottle.  From a nesting standpoint, this shape loses space when the bottles are stacked together.  From a shelf spacing standpoint, this shape loses space and creates display problems.

HOW0004

A rectangular shape bottle does not yield the same utilitarian advantages as a square bottle in terms of shelf facing. A rectangular bottle cannot be placed on a shelf for display as effectively as a square-shaped bottle. A rectangular bottle loses multiple label facings, compared to a square bottle.

A round bottle with a flat face does not yield the same utilitarian advantages as a square bottle for the same reasons as the triangulated rectangular shape bottle, described above.

A hexagonal shape does not yield the same utilitarian advantages as a square bottle. It is difficult label, has diminished visibility from shelf facing standpoint and has lower internal capacity compared to a square bottle of the same size.

An octagonal shape has more labeling problems than a hexagonal shape and it loses space when you stack the bottles together. Also, it is more difficult to orient more than one label on the same bottle. It is less stable than a square bottle if placed on its side.

A radius-shaped flat oval shape does not yield the same utilitarian advantages as a square bottle. It loses shelf space due to the depth of the bottle. It is not as efficient from a packaging standpoint because the shape creates "dead" space within the carton or shipping container. The partitions in a carton or container are flat, leaving gaps around the ends of a bottle with this shape.

A round bottle with flat cuts on the face does not yield the same utilitarian advantages as a square bottle. It has lower internal capacity compared to a square bottle of the same size. The shape is more difficult to label and the shape creates problems in orientation for retail display.

A bottle shape that is a flat oval does not yield the same utilitarian advantages as square shaped bottle. It loses shelf space due to the depth of the bottle and the shapes consumes excess space in shipping.

Embossed Ridge or Scalloped Design Bottle Neck. The Jack Daniel's bottle design has an embossed ridge or scalloped design in the neck. The description in the trademark registration does not indicate the shape of the neck but the drawing in the registration illustrates the shape as being convex in form.

Alternative bottle neck shapes are smooth on the surface and in shape, either tapered, straight, concave or cylindrical.

These alternative bottle neck surfaces and shapes do not yield the same utilitarian advantages as the embossed ridge or scalloped design bottle neck. None of the alternatives provide the safety advantages of the embossed ridge or scalloped bottle design.

A smooth bottle neck of cylindrical shape is easier to slip from the human hand. Also, it does not have the same ergonomic advantages as a bottle neck with an embossed ridge or scalloped design.

A tapered, straight, concave cylindrical bottle neck is easy to slip from the human hand and does not have the same ergonomic advantages as a bottle neck with a convex shape.

<u>Embossed Signature Design.</u>  The Jack Daniel's bottle design embossed signature is located on a slanted area on the bottle between the body and the neck.

The flat panels of the Jack Daniel's bottle design make a vertical transition from Square to the Contoured Round Neck and Hand Grip area. At the transition into the Contoured Neck is a perfectly round circular band or ring. The transition from the square shoulders slant at a 45 degree angle 1.50 inches and have the Jack Daniel signature clearly displayed on all four sides of the shoulder. From the round band-bead the neck surface consists of 8 contoured, narrow flat panels that make a 3" high transition up to the Closure neck-finish with a $1/8^{th}$ inch high round band at the top.

The practical alternatives to having the signature embossed on bottle are to have it debossed (i.e. engraved) on the surface or in outlined lettering on the surface or some form of adhesive labeling.

These alternatives are not as effective in their display of the signature as embossed lettering because they are not as easy to read and they more susceptible to damage or degrading.

A debossed (i.e. engraved) signature on the surface would be more likely to collect dirt, than an embossed signature.

A signature in outlined lettering on the surface would have to be larger in order to be legible.

A signature in some form of adhesive labeling would require additional expense in order to provide a secure location on the bottle.

**3.     Does Jack Daniels Advertising Tout the Utilitarian Advantages of the Design?**

The Jack Daniels websites include a variety of advertising that display the utilitarian advantages of Jack Daniels bottle design along with a history of the original design of the Jack Daniel's bottle by Lem Motlow in 1905.

These images indicate the special effectiveness of the bottle shape in displaying the labels on the bottle.  They also indicate the effectiveness of the legibility of the placement of the embossed signature.

**4.     Does the Jack Daniel's Bottle Design Affect the Cost or Quality of its Product?**

From a glass bottle manufacturing standpoint there are multiple cost "trade-offs" that can be realized from using the Jack Daniel's bottle design.

The "Blow Ratio" of a square bottle shape has the advantage of utilizing minimum mold dimensions.

Other cost saving are the ability to move the labeling line for a square bottle much faster than a round bottling /labeling lines. Also, the filling line can move much, much faster, as well as the case packing process, reducing the breakage rate of square bottles.

In addition, the corrugated cartons for square bottles are less expensive, more compact and take up a much smaller foot-print on the retail stores than bottles of shapes.

From a palletizing and shipping standpoint, the cartons for square bottles fit better on a standard pallet size, which eliminates additional costs and reduces the likelihood of damage if the cartons need to hang over the edge of the pallet to maximize the number of cartons-per-pallet. For world-wide shipping in sea containers, the compact pallets are not subject to as much damage during overseas shipping because of pallet interface is more compact.

The attached photos display how the pallets for the Jack Daniel's bottle can be easily moved directly from a warehouse to the retail floor.

**CONCLUSION**

Based on my evaluation of the design of the Jack Daniel's bottle, I have concluded, for the reasons described above, that the combined features of the design of the Jack Daniel's bottle are essential to the use or purpose of packaging distilled spirits and affect the cost or quality of bottled distilled spirits.





Bottle Design Circa 2003      Current Bottle Design
*http://www.jackdaniels.com/history/jack-daniels-black-label*



Jack Daniel's Cartons – Maximum Pallet Interface
*Photo by John Howard*



Johnny Drum Signature Bottle
*Photo by John Howard*



Evan Williams - Square Bottles, Black Labels &Fluted Neck Finish
*Photo by John Howard*

HOW0008



Jack Daniel's Floor Display Using Shipping Cartons
*Photo by John Howard*

HOW0009

**JOHN HOWARD**
KDA Industrial Design Consultants, Inc.
28W102 Robin Lane
West Chicago, IL 60815-2524
630-495 -9466  Office - 530-730-9782 Mobil

**EDUCATION**

1961 - Pratt Institute, Brooklyn, NY
Bachelor of Industrial Design - BID
Industrial Design, Package Design
Ergonomics, Human Factors

1957 -Institute of Design, IIT
Illinois Institute of Technology
Industrial Design, Package Design

1956 - Art institute of Chicago, Ill.
Sculpture, Product Design,

**WORK EXPERIENCE**

1975 - Current
President/CEO, KDA Industrial Design Consultants, Inc.
KDA,creates consumer product designs and packaging as well as commercial, industrial, and medical products as an Industrial Design Professional and project Design Director. Hands-on knowledge of the industrial product design process. Developed over 20 patented products and devices. Representative Commercial Clients: Container Corporation of America, Silgan Bottles, McDonnell Douglas, Signode, Dow Chemical, AT&T; Representative services: industrial design, new product dev, cost reduction, new products, utility & design patents. Representative Clients selling Consumer items: 3M, Sears, Wilson Sporting Goods, Sunbeam; Services: industrial design, new product development, 3D printed models, Design for cost reduction, product re-design. Tooling, Manufacturing & Package Design. Website Link to over 85 Past & Current KDA Clients: www.DesignKDA.com/Clients.html

1967 - 1975
Vice-President/Founder: CCA Industrial Design Department Container Corp of America, Inc.
Pioneered a new Industrial Design Department within CCA, serving all 5 Divisions, including plastic products, folding cartons, corrugated cartons, corrugated Point-of-Purchase displays, solid-fiber tubes and solid-fiberboard beverage case cartons.

1962 - 1967
Captain - US Army Signal Corps
Assigned to Design Engineering Group in Viet Nam, 1963/1964.
Served in Viet Nam to create Signal Corp security buildings, secure/hardened teletype systems, enclosures, towers, and modular concrete perimeter defense systems.
1960 - 1962
Director/Department Manager, Creative Designs International, LLC.

HOW0010

Established an Industrial Design Department for a Bronx, NY commercial interior Design firm. A firm that designed and built shopping malls, including interiors, signage, and multiple Department identification wall sculptures.

**ASSOCIATIONS / AWARDS / PUBLICATIONS / EXPERT TESTIMONY / COMPENSATION**

**Associations**: Member - IDSA, Industrial Designers Society of America, Officer, Member of the IDSA Board. IDSA, Chicago Chap Chair 4 years, VP - National Board IDSA 2 years.

**Awards and Publications**:
Industrial Design Magazine, Excellence in Design Award (O-Cedar Mop, Drackett Co.)
Industrial Design Magazine, Excellence Design Award - Bronze (Alkco Lincs lighting sys)
Chicago Athenaeum Museum - Good Design Award (Thermos Lunch Box & products)
Chicago Athenaeum Museum - Good Design Award (Corrugated tables & furniture line)
Industrial Design Practices and Design for Cost Reduction Publications – IDSA

**Prior Expert Testimony**

Expert Witness and Deposition Experience over the last 4-5 years. .

**CASE 1**: Nicholas Colucci, d/b/a EZ Line Putters v Callaway Golf Company, 6:08-cv-288 (JDL) (E. District, Texas) Represented Plaintiff through 2010 - In a Patent Jury Case involving golf equipment, Obtained Jury Verdict for Plaintiffs Claims for Patent infringement. J.R. Howard prepared and presented a Large Scale Trial Model of the Calloway Putter Head used to point out 5 Utility Patent Claims with a Laser Pointer during Trial Testimony.
    **Deposition**: JohnR Howard - Feb 18, 2010 - Testify & Trial Model. Sidney R. Bresnick, Attorney 212-421-7873-Mobil 646-723-9975-Direct.

**CASE 2**: Nassau Precision Casting Co, Inc. v Acushnet Co, Inc. Cobra Golf Company & Puma North America, Inc. - Holland & Knight Attorneys. Case still pending: Court of Appeals.
    **Deposition**: JohnR Howard - July 25, 2012 By Holland & Knight - Sidney R. Bresnick, Attorney 212-421-7373 – Mobil 646-723-9975 – Direct. www.MeredithKeyhani.com 51 E 42nd St., 11th Floor, NYC 10017

**Compensation**

$ 415 per hour.

EXHIBIT W

1  Firm E-Mail: courtdocs@dickinsonwright.com

2  David G. Bray (#014346)
   dbray@dickinsonwright.com
3  Frank G. Long (#012245)
   flong@dickinsonwright.com
4  Jonathan Batchelor (#026882)
   jbatchelor@dickinsonwright.com
5  David N. Ferrucci (#027423)
   dferrucci@dickinsonwright.com
6  Colleen M. Ganin (#032456)
   cganin@dickinsonwright.com

7  **DICKINSON WRIGHT, PLLC**
   1850 North Central Avenue, Suite 1400
8  Phoenix, Arizona 85004
   Phone: (602) 285-5000
9  Fax: (602) 285-5100

10  *Attorneys for VIP Products, L.L.C*

11  **IN THE UNITED STATES DISTRICT COURT**

12  **DISTRICT OF ARIZONA**

13  VIP Products, L.L.C., an Arizona limited        No. 2:14-cv-02057-DGC
    liability company,
14
                                                    **DECLARATION OF JOHN HOWARD**
15              Plaintiff and Counterdefendant,

16      v.

17  Jack Daniel's Properties, Inc., a Delaware
    corporation
18

19              Defendant and Counterclaimant.

20      I, John Howard, the undersigned, hereby declare the following under penalty of perjury:

21      1.      I state the following according to my own personal knowledge.

22      2.      My expert opinions in connection with this matter are reflected in my Expert

23  Report, a true and correct copy of which was filed with VIP's Statement of Facts in Support of

24  its Motion for Summary Judgment (Doc. 111) as "Exhibit 17" thereto.

25      3.      My report recites the documents and information I relied upon in forming my

26  opinions in this matter.

27      4.      I have almost 30 years of professional experience in designing, testing, and

    evaluating product packaging, including bottles and other containers. I have been honored with

                                                1

numerous design awards, and have served as an expert witness in product and packaging design matters for the last five years. A true and accurate summary of my training, education, and experience is attached to my expert report at HOW0010–0011.

5.    I received a copy of Defendant Jack Daniel's Properties, Inc.'s ("JDPI's") Motion for Summary Judgment ("JDPI's Motion") and Supplemental Statement of Facts ("JDPI's SSOF"). In my review of these documents, I noted several instances where JDPI had mischaracterized my testimony and/or bases for my expert opinion. I address each of these mischaracterizations in paragraphs 6 to 16 below.

6.    In paragraphs 114 to 118 of JDPI's SSOF, JDPI claims: "Mr. Howard was not even asked to look at this *Disc Golf* factor, but he admitted that the production of the Jack Daniel's Bottle Design does not result from a comparatively simple or inexpensive method of manufacture." This is a mischaracterization of my testimony; my opinion is that, while the direct cost to manufacture JDPI's square bottle may be greater than a comparable round bottle, the net per-unit cost of production is comparatively less expensive. The net cost per-unit factors in the addition costs, such as: (1) filling and labeling costs; (2) packing and shipping costs; and (3) retail display costs. The Jack Daniel's bottle design is an economically efficient package because it allows for: (1) faster line production due to its square-shape and recessed facing; (2) use of a smaller corrugated carton box, which makes for easier packing and shipping; and (3) more efficient retail display, because the bottle's minimized nesting on the shelf allows for greater label exposure.

7.    In paragraphs 119 and 120 of its SSOF, JDPI claims that I "explicitly testified that the features shown in the Registration do not affect the cost or quality of Jack Daniel's whiskey, or that if they do, they affect the product by increasing the cost of the bottle." This is a mischaracterization of my testimony. Rather, my opinion is that features shown in the Registration reduce JDPI's net per-unit cost. This is because any increased manufacturing cost is more than off-set by the reduced cost associated with filling and labeling the bottle, packing and shipping the bottle, and retail display of the bottle.

8.    In paragraph 120 of its SSOF, JDPI claims that I "denied that [I] meant that fewer cubic inches of glass are used for the same volume of liquid when the package shape is square, not round, and claimed that [I] was actually talking about "when you start to package it or display it or how it's utilized." This is a mischaracterization of my testimony. As stated in my Report and deposition testimony, the square bottle is a superior package for retail sale. Specifically, the square bottle shape minimizes the cubic inches required for packaging because the shape allows for compact nesting of the bottles, which reduces the number of corrugated shipping containers needed, and reduces instances of breakage during transit. In addition, the square shape enhances the retail display of the product because it allows for a more compact display that increases the number of bottles on a retail shelf or floor space. The square bottle's flat facing provides a more effective display of the bottle label at the point of sale.

9.    In paragraph 123 of its SSOF, JDPI claims that I could not substantiate my opinion that Jack Daniel's bottle is provides for improved retail display. This is a mischaracterization. First, I substantiated my opinion with my own observations of round- and square-bottle displays in actual retail locations. I examined several competitive displays, and observed that the displays of square bottles had a greater visual impact due to more effective view of the entire label than for round bottles. The measurements are not necessary to make a visual evaluation because the differences and greater impact of the square bottle are self-evident. Even where square and round bottles are displayed in equal quantities, the square-bottle display will have a greater visual graphic impact at the point of sale. Second, I based this opinion off my extensive professional experience designing hundreds of labels for bottles of various shapes, including round, square, rectangular, and oval-shaped packaging. In my experience, designing a label for a round-shaped bottle comes with several challenges—specifically, the label graphics must be modified to improve legibility, but this modification decreases the label display's effectiveness. Designing a label for a square bottle, on the other hand, does not come with the same design and visual-impact challenges, and provides for a more readable, higher-impact display.

10.    At paragraphs 127 to 132 of its SSOF, JDPI claims that I could not substantiate my opinions that the Jack Daniel's bottle and that it allows for more efficient packing and shipping. This is a mischaracterization; I based my opinion on my observations and actual physical examination of stacked pallets of Jack Daniel's whiskey in the retail and warehouse areas of liquor stores; I took photos to document my observations and included them in my report. Report, P. 8–9 (HOW0008–0009).

11.    In paragraphs 142 and 143 of its SSOF, JDPI claims that I "acknowledged that round bottles were far more prevalent than square bottles despite the claimed labeling problem, '[p]robably because of the cost,' and that [I] had no knowledge of how labels are applied either to the square Jack Daniel's bottle or the round Canadian Mist bottle." This mischaracterizes my expert opinion; rather, I believe that, the smaller direct manufacturing cost of a round bottle contributes to its popularity, but the overall advantages of square bottles make them a more attractive choice for industry leaders. Additionally, I have knowledge of label application to both round and square bottles from my decades of hands-on experience with bottle labeling.

12.    In paragraphs 146 and 147 of its SSOF, JDPI claims that my "knowledge of chipping and breaking during the labeling and filing of glass bottles was based on [my] experience in the 1970s and not on any research or studies." This is an incorrect statement of fact; I based my opinion on my professional experience designing bottles and other packaging at KDA Industrial Design Consultants, Inc. from 1975 *through today. See* HOW0010.

13.    In paragraph 149 of its SSOF, JDPI claims that I said that I "'believed,' in forming this opinion, that the Jack Daniel's bottle was gripped by the 'flats' (the body) when it is moved and by the neck when it is poured," but that my "belief was not based on any observation of people in stores, bars, or restaurants, but rather on "'[m]yself. I've had the bottles for a couple of weeks," and [my] wife." This is a misleading recitation of my testimony; rather, I based my opinion on my personal handling of the bottle during my research, my experience in designing bottles, and my observation of bottle handling in bars and restaurants over many years. The handling and ergonomics is a key element to product-packaging design.

1  During my career, I re-designed numerous bottle and container packaging for clients, which

2  involved an evaluation of the handling and ergonomics of the packaging.

3       14.    In paragraph 152 of its SSOF, JDPI asserts that I claimed that "the square shape

4  of the Jack Daniel's Bottle Design and the 'rounded" shape of the bottle's neck both improve

5  gripping, and a square-shaped neck might be as good as a round one in terms of gripping."

6  This is an incorrect; rather, I testified that the shape of the neck of the Jack Daniel's bottle is

7  "rounded in the center and tapers at the bottom," and that "becomes a very natural form in

8  terms of being able to grip." My speculation on the gripability of a square-shaped bottleneck

9  was premised on the fact that a square-shaped neck could have the same tapering, faceting, and

10  overall form of the Jack Daniel's bottleneck.

11       15.    In paragraph 107 of its SSOF, JDPI claims that I acknowledged that "the 'Jack

12  Daniel' signature is branding, and that the important thing about it is that it consists of JDPI's

13  well-known brand name." This is a mischaracterization of my testimony; rather, my opinion is

14  that the bottle's embossed signature improves visibility of the brand name on the bottle.

15       16.    In paragraphs 153 and 154 of its SSOF, JDPI claims that the bottle's embossed

16  Jack Daniel's signature is not beneficial because I "could not explain how frequently non-

17  embossed signatures were removed, or even if it happened at all. [I] again agreed that

18  embossing was uncommon because "it's a cost factor," which is consistent with the facts that

19  the Jack Daniel's embossed signature increases the cost and complexity of the production of

20  the bottle, and comprise production quality control." This misrepresents my testimony; rather,

21  I referred to the embossment of a signature as a "cost factor" because it requires the purchase

22  of a separate manufacturing tool. However, the purchase of a non-depreciating asset is a one-

23  time expenditure that does not factor into the net per-unit cost.

24       DATED:  November 18 , 2015.

25

26                           John Howard

27

EXHIBIT X

1   QUARLES & BRADY LLP
    Gregory P. Sitrick
2   Isaac S. Crum
    One Renaissance Square
3   Two North Central Avenue
    Phoenix, Arizona 85004-2391
4   Telephone: (602) 229-5317
    Facsimile: (602) 420-5198
5   E-mail: Gregory.sitrick@quarles.com

6   SEYFARTH SHAW LLP
    Christopher C. Larkin (admitted *pro hac vice*)
7   2029 Century Park East, Suite 3500
    Los Angeles, California 90067-3021
8   Telephone: (310) 201-5289
    Facsimile: (310) 201-5219
9   E-mail: clarkin@seyfarth.com

10  Attorneys for Defendant and Counterclaimant
    JACK DANIEL'S PROPERTIES, INC.
11

12

13              UNITED STATES DISTRICT COURT

14                  DISTRICT OF ARIZONA

15

16  VIP PRODUCTS, LLC, an Arizona limited     Case No. CV 14-02057 PHX DGC
    liability company,
17                                            **DEFENDANT AND**
                    Plaintiff,                **COUNTERCLAIMANT JACK**
18                                            **DANIELS PROPERTIES, INC.'S**
            v.                                **RESPONSES TO PLAINTIFF AND**
19                                            **COUNTER-DEFENDANT'S FIRST**
    JACK DANIEL'S PROPERTIES, INC., a         **SET OF REQUEST FOR**
20  Delaware corporation,                     **ADMISSIONS**

21                  Defendant.

22

23  AND RELATED COUNTERCLAIMS.

24

25

26

27

28

Defendant and counterclaimant Jack Daniel's Properties, Inc. ("JDPI") hereby responds to the first set of request for admissions propounded by plaintiff and counter-defendant VIP Products, LLC ("VIP") as follows.

These responses are made solely for the purposes of this action.  Each response is made subject to all objections as to competence, relevance, materiality, propriety, and admissibility, and all other objections and grounds which would require the exclusion of any statements contained herein, all of which objections and grounds are expressly reserved and may be interposed at the time of trial in this action.

JDPI's responses are based upon the information that is currently available to it. JDPI's investigation and discovery in this action are ongoing and JDPI reserves the right to supplement these responses in the event that additional information is obtained through such investigation or discovery.

Nothing contained in these responses is intended to be or should be construed to be an admission by JDPI of the relevance or admissibility at trial of any information contained in these responses.

## **GENERAL OBJECTIONS**

JDPI objects generally to all of VIP's request for admissions on the following grounds.

1.    JDPI objects generally to all of VIP's requests to the extent that they seek to impose upon JDPI discovery obligations beyond those contained in the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Arizona.

2.    JDPI objects generally to all of Plaintiffs' requests to the extent that they seek information that is privileged from disclosure by the attorney-client or attorney work product privileges.

2

1

### RESPONSES TO FIRST SET OF REQUEST FOR ADMISSIONS

2

**REQUEST NO. 1:**

3

Admit that the JACK DANIELS TRADE DRESS is not registered.

4

**RESPONSE TO REQUEST NO. 1:**

5

JDPI interposes its General Objections.  Without waiving those objections, JDPI

6

responds as follows: JDPI admits that the Jack Daniel's Trade Dress as shown and

7

described in paragraph 6 of JDPI's counterclaims is not registered in the United States

8

Patent and Trademark Office, although various elements are registered, as set forth in

9

JDPI's counterclaims..

10

**REQUEST NO. 2:**

11

Admit the Evan Williams bottle depicted here is packaging for distilled spirits.

12

13

14

15

16

17

18



19

**RESPONSE TO REQUEST NO. 2:**

20

JDPI interposes its General Objections and also objects specifically to this request

21

on the ground that it seeks the admission of a fact that is neither relevant to VIP's claims

22

or defenses in this action nor reasonably calculated to lead to the discovery of admissible

23

evidence.  Without waiving those objections, JDPI responds as follows: Admitted.

24

**REQUEST NO. 3:**

25

Admit the Ezra Brooks bottle depicted here is packaging for distilled spirits.

26

27

28

3



**RESPONSE TO REQUEST NO. 3:**

JDPI interposes its General Objections and also objects specifically to this request on the ground that it seeks the admission of a fact that is neither relevant to VIP's claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence. Without waiving those objections, JDPI responds as follows: Admitted.

**REQUEST NO. 4:**

Admit the Benchmark bottle depicted here is packaging for distilled spirits.



**RESPONSE TO REQUEST NO. 4:**

JDPI interposes its General Objections and also objects specifically to this request on the ground that it seeks the admission of a fact that is neither relevant to VIP's claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence. Without waiving those objections, JDPI responds as follows: Admitted.

4

1  **REQUEST NO. 5:**

2    Admit the Jim Beam Black bottle depicted here is packaging for distilled spirits.

3

4

5  

6

7

8

9

10

11  **RESPONSE TO REQUEST NO. 5:**

12    JDPI interposes its General Objections and also objects specifically to this request

13  on the ground that it seeks the admission of a fact that is neither relevant to VIP's claims

14  or defenses in this action nor reasonably calculated to lead to the discovery of admissible

15  evidence.  Without waiving those objections, JDPI responds as follows: Admitted.

16  **REQUEST NO. 6:**

17    Admit the Zachariah Harris bottle depicted here is packaging for distilled spirits.

18

19

20  

21

22

23

24

25  **RESPONSE TO REQUEST NO. 6:**

26    JDPI interposes its General Objections and also objects specifically to this request

27  on the ground that it seeks the admission of a fact that is neither relevant to VIP's claims

28

5

or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence. Without waiving those objections, JDPI responds as follows: Admitted.

**REQUEST NO. 7:**

Admit the Heaven Hill bottle depicted here is packaging for distilled spirits.



**RESPONSE TO REQUEST NO. 7:**

JDPI interposes its General Objections and also objects specifically to this request on the ground that it seeks the admission of a fact that is neither relevant to VIP's claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence. Without waiving those objections, JDPI responds as follows: Admitted.

**REQUEST NO. 8:**

Admit the Garrison Brothers bottle depicted here is packaging for distilled spirits.



DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO
PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF REQUEST FOR ADMISSIONS

19631651v.1

**RESPONSE TO REQUEST NO. 8:**

JDPI interposes its General Objections and also objects specifically to this request on the ground that it seeks the admission of a fact that is neither relevant to VIP's claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence. Without waiving those objections, JDPI responds as follows: Admitted.

**REQUEST NO. 9:**

Admit the el Jimador Tequila Blanco bottle depicted here is packaging for distilled spirits.



**RESPONSE TO REQUEST NO. 9:**

JDPI interposes its General Objections and also objects specifically to this request on the ground that it seeks the admission of a fact that is neither relevant to VIP's claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence. Without waiving those objections, JDPI responds as follows: Admitted.

**REQUEST NO. 10:**

Admit the el Jimador Tequila Ariejo bottle depicted here is packaging for distilled spirits.

DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO
PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF REQUEST FOR ADMISSIONS

19631651v.1

**RESPONSE TO REQUEST NO. 10:**

JDPI interposes its General Objections and also objects specifically to this request on the grounds that it seeks the admission of a fact that is neither relevant to VIP's claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence and that there is no El Jimador product called "Ariejo." Without waiving those objections and construing "Ariejo" to mean "Añejo," JDPI responds as follows: Admitted.

**REQUEST NO. 11:**

Admit that YOU have never licensed any mark owned by JDP for use on a pet toy.

**RESPONSE TO REQUEST NO. 11:**

JDPI interposes its General Objections. Without waiving those objections, JDPI responds as follows: JDPI admits that it has not licensed any of its marks for pet toys, although it has licensed and authorized the use of various of its marks for pet products such as collars, leashes, and bowls.

**REQUEST NO. 12:**

Admit that YOU presently have no plans to license any mark and/or trade dress owned by JDP for use on a pet toy.

**RESPONSE TO REQUEST NO. 12:**

JDPI interposes its General Objections. Without waiving those objections, JDPI responds as follows: JDPI admits that it presently has no plans to license any of its marks or trade dress for pet toys, although it has licensed, and intends to license, the use of various of its marks for pet products such as collars, leashes, and bowls.

**REQUEST NO. 13:**

Admit that YOU have received no COMMUNICATION from any consumer expressing any confusion as to whether or not JDP and/or JACK DANIELS was the source of the BAD SPANIELS SILLY SQUEAKERS dog toy.

**RESPONSE TO REQUEST NO. 13:**

JDPI interposes its General Objections. Without waiving those objections, JDPI responds as follows: Admitted.

**REQUEST NO. 14:**

Admit that Jack Daniel's whiskey is not sold in pet specialty retailers (e.g. Petco, PetSmart, Pet Value, Pet Supplies "Plus", Global Pet Foods, Pet Supermarket, Petland, Petland Discounts, Unleashed by Petco, Petsense, Mondou, Pet Planet, Pet Food Express, Bosleys Pet Food Plus, Woof Gang Bakery, Pet Club Pet Depot, Jack's Pets, Mud Bay Granary, Chuck and Don's Pet Food, Pet Pros, Concord Pets, Kahoots Pet Store, Krisers, Pet People and any other retailer which generates the majority of its revenue from the sale of pet products, pet supplies, and pet services).

**RESPONSE TO REQUEST NO. 14:**

JDPI interposes its General Objections and also objects specifically to this request on the ground that it JDPI does not have knowledge of the identity of every "retailer which generates the majority of its revenue from the sale of pet products, pet supplies, and pet services." Without waiving those objections, JDPI responds as follows: JDPI admits that Jack Daniel's whiskey is not sold in the identified retailers.

QUARLES & BRADY LLP

SEYFARTH SHAW LLP

Dated: May 14, 2015          By:_____

Christopher C. Larkin
Attorneys for Defendant and
Counterclaimant
JACK DANIEL'S PROPERTIES, INC.

9

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on May 14, 2015, I served the foregoing DEFENDANT AND

3    COUNTERCLAIMANT'S RESPONSES TO PLAINTIFF AND COUNTER-

4    DEFENDANT'S FIRST SET OF REQUEST FOR ADMISSIONS on the parties

5    identified below in the manner identified below:

6    **VIP Products LLC (via Electronic Mail and First Class Mail)**

7    David G. Bray, Esq.
     DICKINSON WRIGHT, PLLC
8    1850 North Central Avenue, Suite 1400
     Phoenix, Arizona 85004
9    Direct Line: 602-285-5033
     DBray@dickinsonwright.com
10

11                                                     Christopher C. Larkin

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO
PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF REQUEST FOR ADMISSIONS

19631651v.1

EXHIBIT Y

QUARLES & BRADY LLP
Gregory P. Sitrick
Isaac S. Crum
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004-2391
Telephone: (602) 229-5317
Facsimile: (602) 420-5198
E-mail: Gregory.sitrick@quarles.com

SEYFARTH SHAW LLP
Christopher C. Larkin (admitted *pro hac vice*)
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 201-5289
Facsimile: (310) 201-5219
E-mail: clarkin@seyfarth.com

Attorneys for Defendant and Counterclaimant
JACK DANIEL'S PROPERTIES, INC.

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| VIP PRODUCTS, LLC, an Arizona limited liability company,<br><br>               Plaintiff,<br><br>        v.<br><br>JACK DANIEL'S PROPERTIES, INC., a Delaware corporation,<br><br>               Defendant.<br><br>―――――――――――――――――――<br><br>AND RELATED COUNTERCLAIMS. | Case No. CV 14-02057 PHX DGC<br><br>**DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF NON-UNIFORM INTERROGATORIES** |

Defendant and counterclaimant Jack Daniel's Properties, Inc. ("JDPI") hereby responds to the first set of interrogatories propounded by plaintiff and counter-defendant VIP Products, LLC ("VIP") as follows:

DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO
PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF NON-UNIFORM INTERROGATORIES

19617887v.1

1    These responses are made solely for the purposes of this action. Each response is

2  made subject to all objections as to competence, relevance, materiality, propriety, and

3  admissibility, and all other objections and grounds which would require the exclusion of

4  any statements contained herein, all of which objections and grounds are expressly

5  reserved and may be interposed at the time of trial in this action.

6    JDPI's responses are based upon the information that is currently available to it.

7  JDPI's investigation and discovery in this action are ongoing and JDPI reserves the right

8  to supplement these responses in the event that additional information is obtained through

9  such investigation or discovery.

10    Nothing contained in these responses is intended to be or should be construed to be

11  an admission by JDPI of the relevance or admissibility at trial of any information

12  contained in these responses.

13    **GENERAL OBJECTIONS**

14    JDPI objects generally to all of VIP's interrogatories on the following grounds.

15    1.    JDPI objects generally to all of VIP's interrogatories and to each

16  "Definition" and "Instruction" therein to the extent that they seek to impose upon JDPI

17  discovery obligations beyond those contained in the Federal Rules of Civil Procedure and

18  the Local Rules of the United States District Court for the District of Arizona.

19    2.    JDPI objects generally to all of VIP's interrogatories and to each

20  "Definition" and "Instruction" therein to the extent that they seek information that is

21  privileged from disclosure by the attorney-client, attorney work product, and other

22  applicable privileges, immunities, or protections from disclosure. Any inadvertent

23  disclosure of information or documents protected by the attorney-client privilege, the

24  work product doctrine, or any other applicable privilege, immunity, or protection from

25  disclosure is not intended and should not be construed to constitute a waiver of such

26  privilege, immunity, or protection.

27

28

DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO
PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF NON-UNIFORM INTERROGATORIES

19617887v.1

3.    JDPI objects generally to all of VIP's interrogatories and to each "Definition" and "Instruction" therein to the extent that they pertain to matters outside the United States.  JDPI will confine its responses to the United States.

4.    JDPI objects generally to all of VIP's interrogatories and to each "Definition" and "Instruction" therein to the extent that they seek information that is not in the possession, custody or control of JDPI.  Unless otherwise expressly stated, a response shall not be deemed an admission that JDPI has any responsive information or documents in its possession, custody or control, or that any information or documents exist or ever existed.

5.    JDPI objects generally to all of VIP's interrogatories and to each "Definition" and "Instruction" therein to the extent that they call for information that is already in VIP's possession, is readily available to VIP, or is obtainable by VIP from public sources.

6.    JDPI objects generally to all of VIP's interrogatories and to each "Definition" and "Instruction" therein to the extent that they seek information to which VIP has equal or better access, or for which the burden on JDPI is equal to, or greater than, that of VIP in obtaining the information.

7.    JDPI objects generally to all of VIP's interrogatories and to each "Definition" and "Instruction" therein to the extent that they call for information that is cumulative or duplicative.

8.    The failure of JDPI to object to any specific Interrogatory on a particular ground shall not be construed as a waiver of its rights to object on any additional ground(s).  JDPI reserves the right to amend and/or supplement its objections and responses at any time consistent with further investigation and discovery.

9.    JDPI does not concede the relevance, materiality, or admissibility of any information or documents sought in these Interrogatories.  JDPI's responses are without waiver or limitation of its right to object on grounds of relevance, privilege, admissibility

19617887v.1

1   of evidence for any purpose, or any other ground to the use of any information or

2   documents provided or referred to in its responses, in discovery or in any proceeding, or

3   at the trial of this opposition.

4        10.    These objections and responses do not constitute, and shall not be

5   interpreted as, JDPI's agreement with, or admission as to the truth or accuracy of, any

6   legal or factual characterization or allegation stated or implied in VIP's "Definitions" and

7   "Instructions," and instructions or in any of the individual Interrogatories.

8   **RESPONSES TO FIRST SET OF INTERROGATORIES**

9   **INTERROGATORY NO. 1:**

10      IDENTIFY each and every fact, document and other tangible evidence that

11  supports that Counter-plaintiff has established that the JACK DANIELS TRADE DRESS

12  is famous.

13  **RESPONSE TO INTERROGATORY NO. 1:**

14      JDPI interposes its General Objections and also objects specifically to this

15  interrogatory on the ground that it is overly broad and unduly burdensome in seeking

16  "each and every fact, document and tangible evidence," which would require JDPI to

17  provide a literal inventory of its case. Without waiving those objections, JDPI responds

18  as follows: Jack Daniel's Old No. 7 Tennessee whiskey was first sold in a square-shaped

19  bottle by the brand's founder and namesake, Jasper Newton "Jack" Daniel, in 1895, and

20  has been sold, in various sizes, in a square-shaped bottle continuously since then, except

21  during the periods of national Prohibition and state prohibition in Tennessee, and at the

22  end of the 1940s, when glass was in short supply in the United States and the whiskey

23  was sold for a time in a round bottle. By the mid-1950's, the packaging for Jack Daniel's

24  Old No. 7 Tennessee whiskey had taken the basic iconic form in which it has appeared

25  ever since.

26      JDPI's parent company and licensee Brown-Forman Corporation ("Brown-

27  Forman") sells Jack Daniel's Old No. 7 Tennessee whiskey in the United States to

28

4

DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO
PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF NON-UNIFORM INTERROGATORIES

19617887v.1

distributors, who in turn distribute the product to retail accounts. Brown-Forman reports on a fiscal year basis (e.g., Fiscal Year ("FY") 2015 began on May 1, 2014 and ended on April 30, 2015). Between FY 1997 and FY 2015, total unit sales of Jack Daniel's Old No. 7 Tennessee whiskey in the United States (expressed in depletions of 9-liter cases to distributors) exceeded 75,000,000 units, resulting in revenues exceeding $10,000,000,000. The vast majority of these sales were in packaging bearing the Jack Daniel's Trade Dress. Jack Daniel's Old No. 7 Tennessee whiskey is currently the best-selling whiskey in the United States.

Through distribution and sales of Jack Daniel's Old No. 7 Tennessee whiskey, the Jack Daniel's Trade Dress has been exposed for decades to many millions of consumers through display of the product in retail ("off-premise") accounts, including state-owned or state-regulated liquor stores, private liquor stores, grocery stores, mass merchandisers, airlines, and duty-free stores, and in bar and restaurant ("on-premise") accounts. Jack Daniel's Old No. 7 Tennessee in the Jack Daniel's Trade Dress has been exposed to consumers in other manners in the course of distribution, such as its appearance on delivery trucks used by several of Brown-Forman's distributors.

A print advertising campaign for Jack Daniel's Old No. 7 Tennessee whiskey commenced in the United States in 1955 and has continued to the present, making the campaign one of the longest-running consumer advertising campaigns in American history. Most of the print advertising for Jack Daniel's Old No. 7 Tennessee whiskey has prominently featured the Jack Daniel's Trade Dress. Print advertisements featuring the Jack Daniel's Trade Dress have appeared in a wide variety of publications, including national magazines such as *Field & Stream*, *Golf Digest*, *Playboy*, *Rolling Stone*, *ESPN The Magazine, Redbook, Smithsonian, Time, Vanity Fair, Wine Spectator, Playboy, Esquire, Forbes, Fortune, GQ Gentlemen's Quarterly*, and *Sports Illustrated*, local magazines, newspapers such as the *Arizona Republic, Boston Globe, Chicago Tribune, Chicago Sun Times, Denver Post, Detroit Free Press, Houston Chronicle, Indianapolis*

DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO
PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF NON-UNIFORM INTERROGATORIES

19617887v.1

*Star, Los Angeles Times, Miami Herald, New York Times, New York Post, Newsday, Orange County Register, Philadelphia Inquirer, Pittsburgh Post-Gazette, San Francisco Chronicle, Seattle Times, Tampa Bay Times, USA Today, Wall Street Journal,* and *Washington Post*, trade publications, and event programs. During FY 2014 and FY 2015 alone, print advertisements for Jack Daniel's Old No. 7 Tennessee whiskey appeared in over 500 newspapers and national and regional magazines in the United States. Many hundreds of millions of dollars have been expended on advertising and promotion of Jack Daniel's Old No. 7 Tennessee whiskey since FY 1997. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, JDPI will produce documents reflecting the print advertising campaign for Jack Daniel's Old No. 7 Tennessee whiskey.

The Jack Daniel's Trade Dress has also been featured in most of the television advertisements for Jack Daniel's Old No. 7 Tennessee whiskey in the United States that have run since spirits brands began advertising on television again beginning in 1996 following the lifting of a self-imposed industry ban on television advertising. The Jack Daniel's Trade Dress is usually the last image seen by the viewer in these advertisements. Well in excess of $100,000,000 has been expended on television advertising for Jack Daniel's Old No. 7 Tennessee whiskey in the United States since such advertising resumed. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, JDPI will produce documents reflecting television advertising of Jack Daniel's Old No. 7 Tennessee whiskey.

The Jack Daniel's Trade Dress has appeared in a variety of other forms of advertising, including billboards and other forms of indoor and outdoor advertising, and has been exposed in these ways to millions of Americans. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, JDPI will produce documents reflecting these forms of advertising.

Brown-Forman has supported sales of Jack Daniel's Old No. 7 Tennessee whiskey in both on- and off-premise outlets through distribution of thousands of point-of-sale

6

DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO
PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF NON-UNIFORM INTERROGATORIES

19617887v.1

1  promotional items, such as shelf talkers, case cards, endcap displays, and posters, for the
2  off-premise trade, and table tents, banners, pennants, posters, napkins, coasters, and neon
3  signs, for the on-premise trade.  Many of these items have shown or, in some instances,
4  have consisted of, the Jack Daniel's Trade Dress.  Pursuant to Rule 33(d) of the Federal
5  Rules of Civil Procedure, JDPI will produce documents reflecting such promotional
6  materials.

7      The Jack Daniel's Trade Dress has appeared in numerous motion pictures seen by
8  many millions of Americans, including *Raiders of the Lost Ark*, *A Few Good Men*, *Mystic*
9  *River*, *Waterworld*, *Pearl Harbor*, *Any Which Way You Can*, *Fisher King*, *Gone in 60*
10 *Seconds*, *Mr. Mom*, *Platoon*, *The Shining*, *Man on Fire*, *Guarding Tess*, *The Bridges of*
11 *Madison County*, *Rock Star*, *Almost Famous*, *The Hard Way*, *The Flintstones*, *Blue Steel*,
12 *Nobody's Fool*, *Lethal Weapon 3*, *Animal House*, *Goldeneye*, *Rock of Ages*, *Ted*, and
13 *Won't Back Down*, and Jack Daniel's Old No. 7 Tennessee whiskey has been referenced
14 in other films, including *Hud, Basic Instinct, Gran Torino, Rainmaker, Monster's Ball,*
15 and *Christmas Vacation*.  The Jack Daniel's Trade Dress has also been featured in
16 television programs such as *Treme*, *True Blood*, *The Office*, *Psych*, *30 Rock*, *Bored to*
17 *Death, Bar Rescue, New Girl, Two Broke Girls, Justified*, and *Criminal Minds*.  Jack
18 Daniel's Old No. 7 Tennessee whiskey in the Jack Daniel's Trade Dress has also received
19 exposure to the public in the United States through its status as the unofficial "drink of
20 choice" of celebrities such as Frank Sinatra, George Clooney, and Mick Jagger.  Pursuant
21 to Rule 33(d) of the Federal Rules of Civil Procedure, JDPI will produce documents and
22 things reflecting the appearance of the Jack Daniel's Trade Dress in motion pictures and
23 television programs, and with celebrities.

24     Jack Daniel's Old No. 7 Tennessee whiskey has been the subject of numerous
25 articles in the United States, and the Jack Daniel's Trade Dress has been mentioned
26 and/or displayed in some of them.  Pursuant to Rule 33(d) of the Federal Rules of Civil
27 Procedure, JDPI will produce documents reflecting these articles.

28

7

DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO
PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF NON-UNIFORM INTERROGATORIES

19617887v.1

1    The Jack Daniel's Trade Dress is featured prominently on the website at

2  www.jackdaniels.com, which during calendar year 2014 was visited more than 5,000,000

3  times. The Jack Daniel's Trade Dress also appears on the Facebook, Twitter, and

4  Instagram pages for the brand, and receives sponsored and unofficial exposure in other

5  social media. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, JDPI will

6  produce documents reflecting the appearance of the Jack Daniel's Trade Dress on the

7  jackdaniels.com website and in social media.

8    The historic Jack Daniel Distillery in Lynchburg, Tennessee, which has been in

9  operation since the 19th Century, has offered tours of its facility for many years. During

10 calendar year 2014 the distillery had about 270,000 visitors. The Jack Daniel Trade

11 Dress is prominently displayed on various parts of the tour and elsewhere at the distillery.

12   JDPI and its predecessor-in-interest have maintained an extensive licensing

13 program for the various Jack Daniel's marks, including elements of the Jack Daniel's

14 Trade Dress such as the bottle shape and the Jack Daniel's label, which has been

15 registered for a wide variety of goods other than Tennessee whiskey, as set forth in

16 JDPI's answer and counterclaims. JDPI currently has more than 20 licensees in the

17 United States. Licensed products have included musical instruments, equipment, and

18 accessories, ornaments, metal signs and magnets, nuts, cakes, mustard, sauces,

19 marinades, meats, playing cards, a wide variety of apparel, a wide variety of accessories,

20 a wide variety of bar and glassware, pet collars, leashes, and bowls, leather goods,

21 motorcycle parts, barrels, bar stools, games, home furnishings, and lighters, among other

22 goods. Royalties from sales of licensed products during calendar year 2014 in the United

23 States were in excess of $6,000,000. Pursuant to Rule 33(d) of the Federal Rules of Civil

24 Procedure, JDPI will produce documents reflecting licensed products.

25   The fame of the Jack Daniel's Trade Dress is also shown by the results of the

26 consumer survey conducted under the direction of Dr. Gerald L. Ford, VIP's decision to

27 "target" Jack Daniel's Old No. 7 Tennessee whiskey as the first "liquor" product in its

28

8

DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO
PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF NON-UNIFORM INTERROGATORIES

19617887v.1

1   Silly Squeaker line, and VIP's documents and testimony regarding the development,

2   design, appearance, and marketing of the Bad Spaniels toy, including Ms. Phillips'

3   admission that she used a bottle of Jack Daniel's Old No. 7 Tennessee whiskey in

4   designing the label for the toy and Mr. Sacra's admission that he sent photographs of

5   bottles of Jack Daniel's Old No. 7 Tennessee whiskey to the company charged with

6   designing the "bottle" for the toy.

7   **INTERROGATORY NO. 2:**

8       IDENTIFY all facts and information pertaining to whether the JACK DANIELS

9   TRADE DRESS is nonfunctional, a source indicator, inherently distinctive or has

10  acquired fame.

11  **RESPONSE TO INTERROGATORY NO. 2:**

12      JDPI interposes its General Objections and also objects specifically to this

13  interrogatory on the grounds that it is overly broad and unduly burdensome in seeking

14  "all facts and information" pertaining to the Jack Daniel's Trade Dress, which would

15  require JDPI to provide a virtual inventory of its case, that it is a compound interrogatory

16  with four separate sub-parts addressing different issues, and that three sub-parts are

17  redundant of Interrogatory No. 1 and subsequent interrogatories. Without waiving those

18  objections, JDPI responds as follows: There have always been numerous "stock" bottles

19  available for use, and actually in use, as packaging for whiskey in the United States, but

20  the packaging for Jack Daniel's Old No. 7 Tennessee whiskey has never used such a

21  stock bottle. Instead, it has always used a custom, proprietary bottle that has been made

22  to the brand's specifications. The intention behind the use of customized packaging has

23  always been to provide consumers with an instantly-recognizable visual symbol of Jack

24  Daniel's Old No. 7 Tennessee whiskey.

25      The combination of features comprising the Jack Daniel's Trade Dress is not

26  essential to the use or purpose of Jack Daniel's Old No. 7 Tennessee whiskey, and does

27  not affect the cost or quality of the product. Square bottles are generally more difficult to

28

9

19617887v.1

1   manufacture and their shape can also create problems in the bottling process.  The use of

2   a customized square bottle shape for Jack Daniel's Old No. 7 Tennessee whiskey actually

3   increases the cost of producing those products above the costs that would be incurred if a

4   stock bottle or another shape were used.  The customized square bottle for Jack Daniel's

5   Old No. 7 Tennessee whiskey does not provide any benefits in terms of packaging

6   efficiency, shipping, handling, or customer use.

7           The main function of a bottle neck wrap is to provide evidence against tampering.

8   Everything else, including color, graphics and whether to conceal the fill line, is a design

9   choice.  Many products sold today do not have neck wraps that conceal the fill line.  The

10  neck features of the Jack Daniel's Trade Dress have always been a result of design

11  choice, and have not been dictated by function or improved tactile handling by

12  consumers.  For example, the faceting on the neck of the Jack Daniel's Trade Dress does

13  not provide friction or allow for a better grip than a non-faceted neck.  There are

14  numerous whiskeys on the market today that do not have necks with the features of the

15  Jack Daniel's Trade Dress.

16          If the combination of features that comprises the Jack Daniel's Trade Dress were

17  the most efficient and economical to package alcoholic beverages, there would not be the

18  huge diversity of bottle shapes, designs, and features that exists in the alcoholic beverage

19  market today, including across the lines of other whiskeys sold by JDPI's licensee

20  Brown-Forman.  The existence of this diversity indicates that there is no need, as a matter

21  of utility, to use the combination of features comprising the Jack Daniel's Trade Dress.

22  Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, JDPI will produce

23  documents reflecting the alternative packaging available for use, and actually in use, for

24  whiskey in the United States.

25          See Response to Interrogatory No. 1 above with respect to source indication,

26  distinctiveness, and fame.

27

28
                                        10

DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO
PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF NON-UNIFORM INTERROGATORIES

19617887v.1

**INTERROGATORY NO. 3:**

IDENTIFY all facts supporting your contentions regarding the fame, distinctiveness, and/or strength of the JACK DANIELS TRADE DRESS.

**RESPONSE TO INTERROGATORY NO. 3:**

JDPI interposes its General Objections and also objects specifically to this interrogatory on the ground that it is overly broad and unduly burdensome in seeking "all facts" regarding the fame distinctiveness, and/or strength of the Jack Daniel's Trade Dress, which would require JDPI to provide a virtual inventory of its case, and that it is redundant of Interrogatories Nos. 1-2, and subsequent interrogatories. Without waiving those objections, JDPI responds as follows: See Response to Interrogatory No. 1 above.

**INTERROGATORY NO. 4:**

IDENTIFY all evidence in which you intend to rely to establish the extent of actual recognition of the JACK DANIELS TRADE DRESS.

**RESPONSE TO INTERROGATORY NO. 4:**

JDPI interposes its General Objections and also objects specifically to this interrogatory on the grounds that it is overly broad and unduly burdensome in seeking "all evidence" regarding the extent of actual recognition of the Jack Daniel's Trade Dress, which would require JDPI to provide a virtual inventory of its case, and that it is redundant of Interrogatories Nos. 1-3 above. Without waiving those objections, JDPI responds as follows: See Response to Interrogatory No. 1 above.

**INTERROGATORY NO. 5:**

IDENTIFY all evidence in which you intend to rely to establish the degree of similarity between the BAD SPANIELS SILLY SQUEAKER and the JACK DANIELS TRADE DRESS.

**RESPONSE TO INTERROGATORY NO. 5:**

JDPI interposes its General Objections and also objects specifically to this interrogatory on the ground that it is overly broad and unduly burdensome in seeking "all

11

DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF NON-UNIFORM INTERROGATORIES

19617887v.1

1   evidence" regarding similarity, which would require JDPI to provide a virtual inventory

2   of its case.  Without waiving those objections, JDPI responds as follows: See Response to

3   Interrogatory No. 1 above.  The high degree of similarity is also shown by the consumer

4   survey conducted under the direction of Dr. Gerald L. Ford, VIP's documents and

5   testimony regarding the development, design, appearance, and marketing of the Bad

6   Spaniels toy, including Ms. Phillips' admission that she used a bottle of Jack Daniel's

7   Old No. 7 Tennessee whiskey in designing the label for the toy and Mr. Sacra's

8   admission that he sent photographs of bottles of Jack Daniel's Old No. 7 Tennessee

9   whiskey to the company charged with designing the "bottle" for the toy, and the

10  marketing of the toy on third-party websites.  Pursuant to Rule 33(d) of the Federal Rules

11  of Civil Procedure, JDPI will produce documents regarding the development, design,

12  appearance, and marketing of the Bad Spaniels toy, including on third-party websites.

13  **INTERROGATORY NO. 6:**

14      IDENTIFY all evidence in which you intend to rely to establish the degree of

15  inherent or acquired distinctiveness of the JACK DANIELS TRADE DRESS.

16  **RESPONSE TO INTERROGATORY NO. 6:**

17      JDPI interposes its General Objections and also objects specifically to this

18  interrogatory on the grounds that it is overly broad and unduly burdensome in seeking

19  "all evidence" regarding distinctiveness, which would require JDPI to provide a virtual

20  inventory of its case, and that it is redundant of Interrogatories Nos. 2-3 above and

21  subsequent interrogatories.  Without waiving those objections, JDPI responds as follows:

22  See Response to Interrogatory No. 1 above.  The high degree of distinctiveness is also

23  shown by the consumer survey conducted under the direction of Dr. Gerald L. Ford,

24  VIP's documents and testimony regarding the development, design, appearance, and

25  marketing of the Bad Spaniels toy, including Ms. Phillips' admission that she used a

26  bottle of Jack Daniel's Old No. 7 Tennessee whiskey in designing the label for the toy

27  and Mr. Sacra's admission that he sent photographs of bottles of Jack Daniel's Old No. 7

28

12

1    Tennessee whiskey to the company charged with designing the "bottle" for the toy, and

2    the marketing of the toy on third-party websites. Pursuant to Rule 33(d) of the Federal

3    Rules of Civil Procedure, JDPI will produce documents regarding the development,

4    design, appearance, and marketing of the Bad Spaniels toy.

5    **INTERROGATORY NO. 7:**

6         IDENTIFY all evidence in which you intend to rely to establish the extent to which

7    the owner of the JACK DANIELS TRADE DRESS is engaging in substantially exclusive

8    use of the of the JACK DANIELS TRADE DRESS.

9    **RESPONSE TO INTERROGATORY NO. 7:**

10        JDPI interposes its General Objections and also objects specifically to this

11    interrogatory on the grounds that it is overly broad and unduly burdensome in seeking

12    "all evidence" regarding the use of the Jack Daniel's Trade Dress, which would require

13    JDPI to provide a virtual inventory of its case, and that it seeks information that is neither

14    relevant to VIP's claims and defenses in this action nor reasonably calculated to lead to

15    the discovery of admissible evidence to the extent that it seeks information pertaining to

16    the dilution by blurring factor, as JDPI does not allege dilution by blurring in this action.

17    Without waiving those objections, JDPI responds as follows: See Response to

18    Interrogatory No. 1 above. Substantially exclusive use of the Jack Daniel's Trade Dress

19    is also supported by the consumer survey conducted under the direction of Dr. Gerald L.

20    Ford, VIP's documents and testimony regarding the design, development, appearance,

21    and marketing of the Bad Spaniels toy, including Ms. Phillips' admission that she used a

22    bottle of Jack Daniel's Old No. 7 Tennessee whiskey in designing the label for the toy

23    and Mr. Sacra's admission that he sent photographs of bottles of Jack Daniel's Old No. 7

24    Tennessee whiskey to the company charged with designing the "bottle" for the toy, the

25    marketing of the toy on third-party websites, and the trade dress for other whiskeys sold

26    in the United States. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure,

27    JDPI will produce documents regarding the development, design, appearance, and

28

13

DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO
PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF NON-UNIFORM INTERROGATORIES

19617887v.1

1    marketing of the Bad Spaniels toy, the third-party websites, and the trade dress for other
2    whiskeys sold in the United States.
3    **INTERROGATORY NO. 8:**
4        IDENTIFY with particularity each and every element of your claimed trade dress.
5    **RESPONSE TO INTERROGATORY NO. 8:**
6        JDPI interposes its General Objections and also objects specifically to this
7    interrogatory on the ground that it seeks information that is neither relevant to VIP's
8    claims and defenses in this action nor reasonably calculated to lead to the discovery of
9    admissible evidence to the extent that it seeks to dissect the Jack Daniel's Trade Dress
10   into individual elements rather than to address the Jack Daniel's Trade Dress as a whole.
11   Without waiving those objections, JDPI responds as follows: The combination of
12   elements comprising the Jack Daniel's Trade Dress is described and shown in paragraph
13   6 of JDPI's counterclaims.
14   **INTERROGATORY NO. 9:**
15       If YOU contend that your alleged trade dress is famous or is inherently distinctive,
16   describe in detail the basis for such contention, including, but not limited to, an
17   identification of those elements of the alleged trade dress that have acquired fame or are
18   inherently distinctive.
19   **RESPONSE TO INTERROGATORY NO. 9:**
20       JDPI interposes its General Objections and also objects specifically to this
21   interrogatory on the grounds that it is a compound interrogatory with two separate sub-
22   parts addressing different issues, that it is redundant of Interrogatories Nos. 1-3 and 6
23   above and subsequent interrogatories, and that it seeks information that is neither relevant
24   to VIP's claims and defenses in this action nor reasonably calculated to lead to the
25   discovery of admissible evidence to the extent that it seeks to dissect the Jack Daniel's
26   Trade Dress into individual elements rather than to address the Jack Daniel's Trade Dress
27   as a whole.  Without waiving those objections, JDPI responds as follows: See Response
28

14

DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO
PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF NON-UNIFORM INTERROGATORIES

19617887v.1

1  to Interrogatory No. 1 above.  The fame and distinctiveness of the Jack Daniel's Trade

2  Dress is also supported by the consumer survey conducted under the direction of Dr.

3  Gerald L. Ford, VIP's documents and testimony regarding design, development,

4  appearance, and marketing of the Bad Spaniels toy, including Ms. Phillips' admission

5  that she used a bottle of Jack Daniel's Old No. 7 Tennessee whiskey in designing the

6  label for the toy and Mr. Sacra's admission that he sent photographs of bottles of Jack

7  Daniel's Old No. 7 Tennessee whiskey to the company charged with designing the

8  "bottle" for the toy, and the marketing of the toy on third-party websites.  Pursuant to

9  Rule 33(d) of the Federal Rules of Civil Procedure, JDPI will produce documents

10 regarding the development, design, appearance, and marketing of the Bad Spaniels toy

11 and the third-party websites.

12 **INTERROGATORY NO. 10:**

13       IDENTIFY any and all alleged uses in commerce of the JACK DANIELS TRADE

14 DRESS, including, without limitation, each advertisement, catalog, circular, sales

15 literature, brochure, bulletin, flyer, sign, sales display, poster, point of sale, website page

16 or promotional material of any type ever published, broadcast or displayed containing or

17 depicting the JACK DANIELS TRADE DRESS.

18 **RESPONSE TO INTERROGATORY NO. 10:**

19       JDPI interposes its General Objections and also objects specifically to this

20 interrogatory on the ground that it is overly broad and unduly burdensome in seeking "all

21 alleged uses in commerce" of the Jack Daniel's Trade Dress in all media and in all

22 materials, and that it is unlimited in time and geographic scope.  Without waiving those

23 objections, JDPI responds as follows: See Response to Interrogatory No. 1 above.

24 Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, JDPI will produce a

25 representative sample of documents reflecting the use of the Jack Daniel's Trade Dress

26 on various promotional items and in other materials.

27

28

DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO
PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF NON-UNIFORM INTERROGATORIES

19617887v.1

1    **INTERROGATORY NO. 11:**

2    IDENTIFY every product manufactured, used, sold, offered for sale, and/or

3    exported from the United States that YOU believe uses or may use any protected design,

4    trademark, or trade dress of the JACK DANIELS TRADE DRESS and the date(s) on

5    which you believe that use occurred.

6    **RESPONSE TO INTERROGATORY NO. 11:**

7    JDPI interposes its General Objections and also objects specifically to this

8    interrogatory on the grounds that it is overly broad and unduly burdensome because it is

9    unlimited in time, and that the phrase "any protected design, trademark, or trade dress of

10   the JACK DANIELS TRADE DRESS" is so vague as to be virtually incomprehensible.

11   Without waiving those objections, JDPI responds as follows: Jack Daniel's Old No. 7

12   Tennessee whiskey has been sold in the United States in the Jack Daniel's Trade Dress

13   since the 1950s. JDPI believes that Tennessee whiskey was first sold in the United States

14   under the JACK DANIEL'S word mark and stylized word mark, and under the OLD NO.

15   7 mark, in 1875.

16   Various licensed products have embodied the word marks and other elements of

17   the Jack Daniel's Trade Dress, including the label design that is part of the Jack Daniel's

18   Trade Dress. Licensed products bearing the label design that is part of the Jack Daniel's

19   Trade Dress include the products identified in JDPI's pleaded United States Trademark

20   Registrations Nos. 4,372,885 (decorative magnets, decorative switch plates, and cell

21   phone cases); 4,481,424 (ornamental lapel pins, clocks, watches, cuff links, necklaces,

22   and bracelets); 4,478,408 (umbrellas, luggage, duffel bags, athletic bags, backpacks,

23   luggage tags, key cases, knapsacks, tote bags, and all-purpose canvas carrying bags);

24   2,867,158 (without the words SOUR MASH on the label) (glass and plastic drinking

25   containers, namely flasks, ceramic mugs, ceramic pitchers, ceramic jugs; sponges for

26   household purposes, wood coasters, cork coasters, swizzle sticks, bowls, decorative

27   boxes made of non-precious metal, food containers and thermal insulated containers for

28

16

19617887v.1

1  food or beverages, glassware for beverages, and serving trays of non-precious metals);
2  4,526,056 (footwear; headwear including caps, hats, cowboy hats, headbands, straw hats,
3  visors, bandannas; clothing, namely, aprons, sleeve garters, t-shirts, golf shirts, work
4  shirts, baseball shirts, woven shirts, shirts, tops, tank tops, sweatshirts, sweatpants,
5  jogging suits, pants, dresses, skirts, sleep pants, pajamas, robes, shorts, jeans, jackets,
6  coats, belts, neckties, neckwear, scarves, suspenders, leather jackets, rain suits, vests,
7  parkas, gloves); 4,481,425 (belt buckles and clasps for clothing all made of non-precious
8  metal and ornamental novelty pins); 4,354,330 (floor mats and rugs); and 4,491,564
9  (cigarette lighters not of precious metals).  The dates of constructive first use and first use
10 in commerce of the label design mark for the various goods are set forth in the certificates
11 of registration attached as Exhibit 2 to JDPI's counterclaims.

12 **INTERROGATORY NO. 12:**

13      IDENTIFY all facts RELATING TO studies, including formal or informal
14 analysis, investigation, surveys, focus groups, consumer research, or other information or
15 reports that relate to, support, or refute YOUR claims in this action, including, for each
16 such study, when it was commissioned, conducted, and completed, by whom it was
17 conducted, and its conclusions.

18 **RESPONSE TO INTERROGATORY NO. 12:**

19      JDPI interposes its General Objections and also objects specifically to this
20 interrogatory on the ground that it is overly broad and unduly burdensome in seeking "all
21 facts" relating to surveys and studies pertaining to this action.  Without waiving those
22 objections, JDPI responds as follows: The survey conducted under the direction of Dr.
23 Gerald L. Ford and attached to his expert report shows a likelihood of confusion as to the
24 source or sponsorship of the Bad Spaniels toy.  An on-line survey conducted between
25 February 5-8, 2015 yielded similar results.  The opinion of Dr. Itamar Simonson set forth
26 in his expert report supports a likelihood of dilution by tarnishment of the Jack Daniel's
27 Trade Dress and marks by the Bad Spaniels toy resulting from the association of the Jack

28

19617887v.1

1    Daniel's Trade Dress and marks with dog defecation.  Certain research conducted in

2    connection with a modernization of the Jack Daniel's Trade Dress between 2008 and

3    2011 supports the fame, distinctiveness, and non-functionality of the Jack Daniel's Trade

4    Dress.  Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, JDPI will produce

5    documents regarding the on-line survey and the packaging research.

6    **INTERROGATORY NO. 13:**

7         IDENTIFY with particularity the exact elements of the alleged protectable trade

8    dress of JACK DANIELS TRADE DRESS.

9    **RESPONSE TO INTERROGATORY NO. 13:**

10        JDPI interposes its General Objections and also objects specifically to this

11    interrogatory on the grounds that the phrase "alleged protectable trade dress of JACK

12    DANIELS TRADE DRESS" is vague, that it is redundant of Interrogatory No. 8 above,

13    and that it seeks information that is neither relevant to VIP's claims and defenses in this

14    action nor reasonably calculated to lead to the discovery of admissible evidence to the

15    extent that it seeks to dissect the Jack Daniel's Trade Dress into individual elements

16    rather than to address the Jack Daniel's Trade Dress as a whole.  Without waiving those

17    objections, JDPI responds as follows: The combination of elements that comprise the

18    Jack Daniel's Trade Dress is described and shown in paragraph 6 of JDPI's

19    counterclaims.

20    **INTERROGATORY NO. 14:**

21         IDENTIFY the date of first use in the United States by Counter-plaintiff of the

22    alleged JACK DANIELS TRADE DRESS.

23    **RESPONSE TO INTERROGATORY NO. 14:**

24        JDPI interposes its General Objections and also objects specifically to this

25    interrogatory on the ground that it is redundant of Interrogatory No. 11 above.  Without

26    waiving those objections, JDPI responds as follows: See Response to Interrogatory No.

27    11 above.

28

19617887v.1

**INTERROGATORY NO. 15:**

IDENTIFY each trade dress YOU contend VIP copied or diluted or that is otherwise the subject of YOUR claims, defenses or allegations in this action.

**RESPONSE TO INTERROGATORY NO. 15:**

JDPI interposes its General Objections. Without waiving those objections, JDPI responds as follows: VIP copied, infringed, and is likely to dilute the trade dress of Jack Daniel's Old No. 7 Tennessee whiskey, as described and shown in paragraph 6 of JDPI's counterclaims.

**INTERROGATORY NO. 16:**

IDENTIFY each and every VIP product, packaging or other matter YOU contend copies or dilutes the JACK DANIELS TRADE DRESS.

**RESPONSE TO INTERROGATORY NO. 16:**

JDPI interposes its General Objections. Without waiving those objections, JDPI responds as follows: VIP's Bad Spaniels toy, the hangtag for the toy, and depictions of those materials in VIP's sell sheets and catalogs, copy and dilute the Jack Daniel's Trade Dress.

**INTERROGATORY NO. 17:**

IDENTIFY all facts supporting the contention that the JACK DANIELS TRADE DRESS is protectable including within that identification of facts all DOCUMENTS that REFER OR RELATE to the foregoing and all PERSONS with knowledge of the foregoing.

**RESPONSE TO INTERROGATORY NO. 17:**

JDPI interposes its General Objections and also objects specifically to this interrogatory on the grounds that it is overly broad and unduly burdensome in seeking "all facts" pertaining to the Jack Daniel's Trade Dress, which would require JDPI to provide a virtual inventory of its case, and that it is redundant of at least Interrogatories Nos. 2-3, 6-7, and 9 above. Without waiving those objections, JDPI responds as follows:

19

DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF NON-UNIFORM INTERROGATORIES

19617887v.1

1   See Responses to Interrogatories Nos. 1 and 2 above.  The individuals identified in

2   JDPI's First Supplemental Initial Disclosures have knowledge of these facts.

3   **INTERROGATORY NO. 18:**

4   For each trade dress that YOU contend VIP copied or diluted, separately

5   IDENTIFY each product sold by YOU or YOUR licensees that incorporates such trade

6   dress and, for each such product, separately state (a) the number of units, by year, of each

7   such product sold by YOU or YOUR licensees and (b) revenue received by YOU from

8   such SALES of each such product broken down by the channel of trade that the reported

9   revenue was derived from, including specifically whether any revenue was derived from

10   pet specialty retailers.

11   **RESPONSE TO INTERROGATORY NO. 18:**

12   JDPI interposes its General Objections and also objects specifically to this

13   interrogatory on the grounds that it is overly broad and unduly burdensome because it is

14   unlimited in time and geographic scope, that it is vague with respect to the phrases "each

15   trade dress" and "pet specialty retailers," and that it is a compound interrogatory with

16   separate sub-parts addressing different issues.  Without waiving those objections, JDPI

17   responds as follows: VIP copied and diluted the trade dress of Jack Daniel's Old No. 7

18   Tennessee whiskey as described and shown in paragraph 6 of JDPI's counterclaims.

19   Rounded annual unit sales (expressed in depletions of 9-liter cases to distributors) of Jack

20   Daniel's Old No. 7 Tennessee whiskey in the United States from FY 1997 to FY 2015 are

21   set forth below.  These sales yielded revenues in excess of $10,000,000,000.

22   FY 1997: 3,000,000

23   FY 1998: 3,100,000

24   FY 1999: 3,300,000

25   FY 2000: 3,500,000

26   FY 2001: 3,600,000

27   FY 2002: 3,600,000

28

19617887v.1

1   FY 2003: 3,700,000

2   FY 2004: 3,900,000

3   FY 2005: 4,200,000

4   FY 2006: 4,500,000

5   FY 2007: 4,600,000

6   FY 2008: 4,600,000

7   FY 2009: 4,600,000

8   FY 2010: 4,600,000

9   FY 2011: 4,600,000

10  FY 2012: 4,700,000

11  FY 2013: 4,800,000

12  FY 2014: 4,800,000

13  FY 2015: 4,900,000 (this figure is the number compiled to date given the end of

14  FY 2015 on April 30, 2015)

15       Construing the vague term "pet specialty retailers" to be the retail stores identified

16  by VIP in its discovery responses as being the retail stores in which the Bad Spaniels toy

17  has been sold, as far as JDPI is aware, none of the revenues from the sales of Jack

18  Daniel's Old No. 7 Tennessee whiskey have been derived from pet specialty retailers.

19  **INTERROGATORY NO. 19:**

20       For each concept, design, product, product packaging or other matter that YOU

21  contend VIP copied or diluted, state all facts that support that contention, if YOU so

22  contend, that such copying or dilution was intentional or willful and include within that

23  statement pf (sic) facts the IDENTIFY all PERSONS with knowledge of such facts and

24  all DOCUMENTS that REFER OR RELATE TO such facts.

25  **RESPONSE TO INTERROGATORY NO. 19:**

26       JDPI interposes its General Objections and also objects specifically to this

27  interrogatory on the grounds that it is overly broad and unduly burdensome in seeking

28

                                            21

DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO
PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF NON-UNIFORM INTERROGATORIES

19617887v.1

1 "all facts" pertaining to the copying or dilution of the Jack Daniel's Trade Dress, which

2 would require JDPI to provide a virtual inventory of its case, and that it is vague with

3 respect to the terms "concept, design, product, product packaging or other matter that

4 YOU contend VIP copied or diluted." Without waiving those objections, JDPI responds

5 as follows: VIP copied and diluted the trade dress of Jack Daniel's Old No. 7 Tennessee

6 whiskey as described and shown in paragraph 6 of JDPI's counterclaims. Stephen Sacra

7 and Elle Phillips have knowledge of the intentional and willful nature of VIP's copying

8 and dilution of the Jack Daniel's Trade Dress in the course of the design and

9 development of VIP's Bad Spaniels toy. Their deposition testimony regarding the

10 design, development, appearance, and marketing of the Bad Spaniels toy, including Ms.

11 Phillips' admission that she used a bottle of Jack Daniel's Old No. 7 Tennessee whiskey

12 in designing the label for the toy and Mr. Sacra's admission that he sent photographs of

13 bottles of Jack Daniel's Old No. 7 Tennessee whiskey to the company charged with

14 designing the "bottle" for the toy, supports intentional and willful copying and dilution of

15 the Jack Daniel's Trade Dress. Pursuant to Rule 33(d) of the Federal Rules of Civil

16 Procedure, JDPI will produce documents reflecting VIP's intentional and willful copying

17 and dilution of the Jack Daniel's Trade Dress in the course of the design, development,

18 and marketing of the Bad Spaniels toy.

19 **INTERROGATORY NO. 20:**

20 State all facts which support YOUR claims against VIP in THIS ACTION and

21 include within that statement of facts the IDENTIFY all PERSONS with knowledge of

22 such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

23 **RESPONSE TO INTERROGATORY NO. 20:**

24 JDPI interposes its General Objections and also objects specifically to this

25 interrogatory on the ground that it is overly broad and unduly burdensome in seeking "all

26 facts" supporting all of JDPI's claims in this action, which, in this instance, would require

27

28

22

DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO
PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF NON-UNIFORM INTERROGATORIES

19617887v.1

1    JDPI to provide a literal and total inventory of its case, and that it is redundant of
2    virtually all of the other interrogatories propounded by VIP.

3    **INTERROGATORY NO. 21:**

4    Describe in detail what you believe is the degree of similarity between the JACK
5    DANIELS TRADE DRESS and/ the BAD SPANIELS SILLY SQUEAKER.

6    **RESPONSE TO INTERROGATORY NO. 21:**

7    JDPI interposes its General Objections.  Without waiving those objections, JDPI
8    responds as follows: There is a very high degree of similarity in overall appearance
9    between the Jack Daniel's Trade Dress and the Bad Spaniels toy resulting from the
10   virtual identity in size, shape, and coloration of the Bad Spaniel's bottle to the bottle for
11   Jack Daniel's Old Boo. 7 Tennessee whiskey, the use of a black cap on the Bad Spaniels
12   bottle, the use of a black neck label with the words "Bad Spaniels" in white arched
13   lettering over an oval containing the words "The Old. No. 2" in white and a filigree
14   design, and the use of a front black label with the words "Bad Spaniel's" in white arched
15   lettering over an oval containing the words "The Old. No. 2" in white and a filigree
16   design, the word "Tennessee" in script toward the bottom of the label, an exterior filigree
17   border, and the words "43% POO BY VOL."

18   **INTERROGATORY NO. 22:**

19   Describe in detail what you believe is the degree of inherent or acquired
20   distinctiveness of the JACK DANIELS TRADE DRESS.

21   **RESPONSE TO INTERROGATORY NO. 22:**

22   JDPI interposes its General Objections and also objects specifically to this
23   interrogatory on the grounds that it is redundant of at least Interrogatories Nos. 2-3 and 6
24   above, and that it seeks information that is neither relevant to VIP's claims and defenses
25   in this action nor reasonably calculated to lead to the discovery of admissible evidence to
26   the extent that it seeks information pertaining to the dilution by blurring factor, as JDPI
27   does not allege dilution by blurring in this action.  Without waiving those objections,

28

23

DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO
PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF NON-UNIFORM INTERROGATORIES

19617887v.1

1   JDPI responds as follows: To the extent that the combination of elements that comprise
2   the Jack Daniel's Trade Dress was not inherently distinctive when they were first used in
3   the 1950s, the Jack Daniel's Trade Dress has acquired a very high degree of
4   distinctiveness in the United States since the 1950s by virtue of the longstanding and
5   extensive sales and advertising of Jack Daniel's Tennessee whiskey in the Jack Daniel's
6   Trade Dress and the other exposure of the Jack Daniel's Trade Dress to the general public
7   in the manners set forth in JDPI's response to Interrogatory No. 1 above.

8   **INTERROGATORY NO. 23:**

9       IDENTIFY all evidence in which you intend to rely to establish any actual
10  association between the BAD SPANIELS SILLY SQUEAKER and the JACK DANIELS
11  TRADE DRESS.

12  **RESPONSE TO INTERROGATORY NO. 23:**

13      JDPI interposes its General Objections and also objects specifically to this
14  interrogatory on the grounds that it is overly broad and unduly burdensome in seeking
15  "all evidence" pertaining to actual association, and that it seeks information that is neither
16  relevant to VIP's claims and defenses in this action nor reasonably calculated to lead to
17  the discovery of admissible evidence to the extent that it seeks information pertaining to
18  the dilution by blurring factor, as JDPI does not allege dilution by blurring in this action.
19  Without waiving those objections, JDPI responds as follows: The deposition testimony of
20  Stephen Sacra and Elle Phillips, and exhibits thereto, regarding the design, development,
21  appearance, and marketing of the Bad Spaniels toy, including Ms. Phillips' admission
22  that she used a bottle of Jack Daniel's Old No. 7 Tennessee whiskey in designing the
23  label for the toy and Mr. Sacra's admission that he sent photographs of bottles of Jack
24  Daniel's Old No. 7 Tennessee whiskey to the company charged with designing the
25  "bottle" for the toy, and the survey conducted under the direction of Dr. Gerald L. Ford,
26  support actual association between the Jack Daniel's Trade Dress and the Bad Spaniels
27  toy.

28

19617887v.1

1    **INTERROGATORY NO. 24:**

2    IDENTIFY any BOTTLE REDESIGN of the shape of the JACK DANIELS bottle

3    in the last ten years.

4    **RESPONSE TO INTERROGATORY NO. 24:**

5    JDPI interposes its General Objections.  Without waiving those objections, JDPI

6    responds as follows: In 2008, JDPI's licensee Brown-Forman began considering what

7    became the most recent evolution of the Jack Daniel's Trade Dress, including its labeling,

8    to refresh and refine the package and to enhance its premium look.  Several versions of

9    modified packaging were considered and tested, and the one that is currently in use was

10   ultimately selected.  Research suggested that these modifications retained the core brand

11   values and the immediately-identifiable elements, while modernizing the packaging and

12   making it appear to be a more sophisticated and premium whiskey.  The research also

13   suggested that differences between the then-current package and the modified package,

14   primarily with respect to the label changes, were apparent to respondents only in the

15   artificial situation of a forced (e.g., side-by-side) comparison, in which respondents were

16   asked if the packages were the same or different.  Even then, about 25% of the

17   respondents said that they saw no differences between the packages.

18   Brown-Forman publicly announced the packaging change in a May 16, 2011 press

19   release, and the modified packaging was introduced in June 2011.  The modified

20   packaging embodies slightly wider neck fluting, slightly more square shoulders, and

21   slightly sharper edges and facets than its predecessor, as well as certain changes to the

22   package's labeling.

23   A number of persons at JDPI and Brown-Forman were involved in various ways in

24   the packaging modification.  The person with the most knowledge of the packaging

25   change and related activities is Christopher R. Hungerford, who is identified in JDPI's

26   First Supplemental Initial Disclosures.

27

28
            25

DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO
PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF NON-UNIFORM INTERROGATORIES

19617887v.1

1   Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, JDPI will produce

2   documents regarding the packaging modification.

3                                   As to objections and legal contentions:

4                                   QUARLES & BRADY LLP

5                                   SEYFARTH SHAW LLP

6   Dated: May 14, 2015        By: _____

7                                   Christopher C. Larkin
                                    Attorneys for Defendant and
8                                   Counterclaimant
                                    JACK DANIEL'S PROPERTIES, INC.

DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO
PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF NON-UNIFORM INTERROGATORIES

19617887v.1

1

## **VERIFICATION**

2      I, David S. Gooder, declare under penalty of perjury under the laws of the United

3  States that the foregoing Defendant and Counterclaimant Jack Daniels Properties, Inc.'s

4  Responses To Plaintiff and Counter-Defendant's First Set Of Non-Uniform

5  Interrogatories are true and correct.

6  Dated: May 7 , 2015

7                               DAVID S. GOODER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO
PLAINTIFF AND COUNTER-DEFENDANT'S FIRST SET OF NON-UNIFORM INTERROGATORIES

19617887v.1

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on May 14, 2015, I served the foregoing DEFENDANT AND

3    COUNTERCLAIMANT'S RESPONSES TO PLAINTIFF AND COUNTER-

4    DEFENDANT'S FIRST SET OF NON-UNIFORM INTERROGATORIES on the parties

5    identified below in the manner identified below:

6    **VIP Products LLC (via Electronic Mail and First Class Mail)**

7    David G. Bray, Esq.
     DICKINSON WRIGHT, PLLC
8    1850 North Central Avenue, Suite 1400
     Phoenix, Arizona 85004
9    Direct Line: 602-285-5033
     DBray@dickinsonwright.com

10

11                                                    Christopher C. Larkin

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT AND COUNTERCLAIMANT JACK DANIELS PROPERTIES, INC.'S RESPONSES TO PLAINTIFF
AND COUNTER-DEFENDANT'S FIRST SET OF NON-UNIFORM INTERROGATORIES

19617887v.1

EXHIBIT Z

EXHIBIT REDACTED