Firm E-Mail: courtdocs@dickinsonwright.com

David G. Bray (#014346)
dbray@dickinsonwright.com
Frank G. Long (#012245)
flong@dickinsonwright.com
Jonathan S. Batchelor (#026882)
jbatchelor@dickinsonwright.com
**DICKINSON WRIGHT, PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
Phone: (602) 285-5000
Fax: (602) 285-5100

*Attorneys for VIP Products, L.L.C*

# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| VIP Products, L.L.C., an Arizona limited liability company, | No. 2:14-cv-02057-SMM |
| Plaintiff and Counterdefendant, | **REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| Jack Daniel's Properties, Inc., a Delaware corporation | |
| Defendant and Counterclaimant. | |

VIP Products, Inc. ("VIP") hereby submits its Reply in Support of VIP's Motion for Summary Judgment. Jack Daniel's Properties, Inc.'s ("JDPI") Opposition to VIP's Motion for Summary Judgment ("JDPI's Opposition") (Dkt. #142) concedes that relevant Ninth Circuit law provides immunity from JDPI's claims. When correctly applied to the facts in this case, the nomative and First Amendment fair use doctrines clearly establish that VIP's product does not infringe or dilute any protectable trademarks or trade dress owned by JDPI. VIP's Motion for Summary Judgment should be granted.

I. <u>INTRODUCTION.</u>

VIP's Silly Squeakers® "Bad Spaniels" dog toy (the "VIP Toy"), to the extent it can be said to "use" any of JDPI's marks or trade dress, constitutes fair use protected by

1

nominative and First Amendment fair use doctrines. *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 808-09 (9th Cir. 2003), and *E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008).

The law does not permit JDPI to use trademark law to prevent VIP from expressing a message JDPI considers to be in "bad taste." The "core purpose" of trademark law is "avoiding confusion in the marketplace." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002). Properly construed, trademark law simply allows an owner to prevent a competitor "from duping consumers into buying a product they mistakenly believe is from the trademark owner." *Id. at* 900. They do not permit a trademark owner to infringe on the free speech rights of others. *Id*. When properly applied, trademark law "play[s] well with the First Amendment." *Id. See also* Alex Kozinski, *Trademarks Unplugged*, 68 N.Y.U.L. Rev. 960, 973 (1993) ("So long as trademark law limits itself to its traditional role of avoiding confusion in the marketplace, there's little likelihood that free expression will be hindered").

Accordingly, the Ninth Circuit law on fair use clearly bars JDPI's claims in this case. As a humorous critique of American consumerism, VIP's Toy is entitled to First Amendment protection. No training or legal expertise is necessary to see that the VIP Toy is a parody of American whiskey brands in general, and Jack Daniel's specifically.

VIP moved for summary judgment based, in part, on these fair use doctrines. [Mot. (Dkt #110) at pp. 2:15-8:8]. JDPI's Opposition admits that application of these doctrines provides immunity for VIP from JDPI's claims (Opp. (Dkt #142), at p. 10:18-20) but argues that those well-settled doctrines should not be applied in this case. [*Id*. at p. 2:16-25]. As detailed below, JDPI is simply wrong. VIP's Toy is protected by fair use doctrines. JDPI cannot establish dilution. JDPI cannot meet its burden to establish that its Trade Dress is non-functional and distinctive. VIP's Motion for Summary Judgment should be granted.

## II. JDPI'S ARGUMENTS THAT THE COURT SHOULD IGNORE "FAIR USE" DOCTRINES ARE LEGALLY AND FACTUALLY BASELESS.

### A. The *Rogers* Test Applies in This Case.

The Ninth Circuit has instructed lower courts to construe the Lanham Act "to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression." *E.S.S. Entertainment 200, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008) (quoting *Walking Mountain*, 353 F.3d at 807.). The *Rogers* test provides that a use of a trademark that would otherwise violate the Lanham act is not actionable unless (1) "the use of the mark has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless (2) it explicitly misleads as to the source or the content of the work." *Id*. As explained in VIP's Motion, VIP's Toy easily passes both prongs and is entitled to First Amendment fair use protection. [Mot. at pp. 5:15-8:8.].

Admitting that application of the *Rogers* test to this case would provide VIP immunity from its claims, JDPI argues that the *Rogers* test should not be applied in this case because (i) VIP allegedly did not specifically cite *Rogers* in an initial case management conference report or in response to a contention interrogatory (Opp. at p. 2:5-19) and (ii) VIP's Toy is allegedly not an expressive work. [Opp. at p. 10:1-10.] Both of these arguments are wrong.

### 1. The Court is not confined to consideration of cases cited in case management reports.

JDPI's contention that VIP cannot rely upon the cases cited in support of its First Amendment and fair use defenses because that case law was not disclosed in response to contention interrogatories or listed in case management reports is wrong. The fact that VIP was asserting those defenses was disclosed at the very beginning of this case. *See* VIP's Amended Answer to JDPI's Counterclaim (Doc. 50), ¶¶ 69, 70. VIP then explicitly mentioned its First Amendment defense in its response to the very contention interrogatory relied upon by JDPI, which stated "the public interest in avoiding consumer confusion

3

must be balanced against the public interest in free speech" and cited "[c]ases finding that First Amendment interests prevail[.]" [Exhibit 6 to JDPI Controverting Statement of Facts ("CSF") (Dkt # 143) at p. 8:18-22]. Once those theories were disclosed, VIP was under no obligation to disclose the specific cases it sought to use in support of those defenses. *See e.g., City & Cty. of San Francisco v. Superior Court*, 130 Cal. App. 3d 481, 485, 181 Cal. Rptr. 775, 777 (Ct. App. 1982) ("[A] party's contention may be the subject of discovery, but not the legal reasoning or theory behind the contention."); *Sav-On Drugs, Inc. v. Superior Court*, 15 Cal. 3d 1, 5, 538 P.2d 739, 742 (1975) ("no purpose of discovery is served by compelling the latter to perform legal research for the former").

The Court is obligated to decide the cases before it based on controlling authority. *Anthony v. Cambra*, 236 F.3d 568, 578 (9th Cir. 2000). As such, the applicability of Ninth Circuit case law is not dependent on cases cited in a case management report or in response to contention interrogatories. Such a rule would be unreasonable and lead to absurd results, such as recently decided cases being inapplicable, and requiring case management reports and interrogatory responses to include huge legal treatises citing thousands of potentially relevant cases.

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, No. 07 Civ. 10470, 2015 WL 1931168, *9 (S.D.N.Y. Apr. 28, 2015), the sole authority cited by JDPI to support its argument, is unavailing. *MTBE* was a products liability case in which the court refused to allow a plaintiff to belatedly add a claim for vicarious liability. That makes sense. Vicarious liability is an entirely different cause of action from a products liability claim which would implicate entirely different facts and evidence from a strict products liability claim. *MTBE* did ***not*** hold that a party may not rely on undisclosed, controlling authority. Indeed, parties are generally protected from ignorance of relevant law not by disclosures from the opposing party, but by the knowledge of their own counsel.

4

### 2. The VIP Toy is an artistic or expressive work for purposes of the First Amendment *Rogers* test.

VIP's Toy expresses the message that "it is okay to make fun of well-known brands." It is a critique of American consumerism that highlights how ridiculous brand consumerism is by projecting the behavior onto your dog, inviting consumers to "imagine how funny your dog would be if he was like us." [VIP's Statement of Facts ("SOF") (Dkt. # 111), ¶¶ 111-113.]

JDPI nevertheless argues that the *Rogers* test does not apply to VIP's speech because it is like "traditional advertisement or an infomercial, . . . ordinary, non-artistic, commercial speech." [Opp. at p. 7:11-15.] To the contrary, VIP's parody is not "commercial speech" because it "does [] more than propose a commercial transaction," (it does not propose a commercial transaction at all) and is therefore afforded full First Amendment protection. *Nissan Motor.Co. v. Nissan Computer Corp.*, 378 F.3d 1002 (2004); *see* Motion at 5:22-6:12.

### 3. Fair Use doctrines apply to parody products.

JDPI repeatedly asserts that the fair use defenses do not apply to parody products. [*See* Opp. at pp. 1:10-12, 4:5-7, 7:21-22, 11:1-2.] This argument is both wrong and unusually disingenuous. Not only does the assertion defy common sense (parody is one of the most well-known types of fair use, *see e.g.*, 15 U.S.C. § 1125(c)(3)), but JDPI contradicts itself *on the same page of its brief*. [Opp. at p. 4].

JDPI contends "VIP cites no cases where it [the fair use doctrine] has been applied to a commercial parody product, . . ." [Opp. at p . 4:5-6.] It then discusses *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792 (9th Cir. 2003), (a case relied on by VIP). JDPI quotes from that case:

> "Forsythe's . . . photographs, . . . depict[ed] Barbie and target[ed] the doll with Forsythe's *parodic* message," . . .and he "used Mattel's Barbie figure and head in his works to conjure up associations of Mattel, while at the same time to identify his own work, which is a criticism and **parody of Barbie**."

[Opp. at p. 4:25-5:2 (emphasis supplied).]

5

1    JDPI also relies on *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109
2  F.3d 1394, 1396 (9th Cir. 1997). Although *Dr. Seuss* predated the Ninth Circuit's adoption
3  of the *Rogers* test for First Amendment fair use, it *nevertheless explicitly applied fair use*
4  *reasoning to a parody*. In that case, the defendant was selling a book entitled "*The Cat*
5  *NOT in the Hat!*" which it claimed was a parody of "*The Cat in the Hat,*" the famous book
6  by Dr. Seuss. Defendant's book was not a comment on *The Cat in the Hat*, but was a
7  comment on the O.J. Simpson trial. *Id*. Not surprisingly, the Court found that *The Cat Not*
8  *in the Hat!* was not a successful parody because (1) the allegedly infringed work was not
9  "*at least in part the target*" of the parody. *Id*. at 1400 (emphasis in original); and (2) it was
10 a book that was allegedly parodying another book—*i.e.*, a *competing* product. *Id*. at 1401.

    This makes sense. This would be like a defendant making a brand of whiskey called "Jack Daniel's NOT Tennessee Whiskey," and attempting to call it a parody. Put in terms of the current *Rogers* test, it would not have any artistic relevance, and it would be explicitly misleading. In other words, it would fail both prongs of the controlling *Rogers* test.

### B.      VIP's Toy is a Protected Fair Use Under the TDRA.

VIP's Toy is a Protected Fair Use Under the TDRA, which provides:

> The following shall not be actionable as dilution by blurring or dilution by tarnishment under this subsection:
>
> (A) Any fair use, including a nominative or descriptive fair use, or facilitation of such fair use, of a famous mark by another person other than as a designation of source for the person's own goods or services, including use in connection with . . . (ii) identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner.

15 U.S.C. § 1125(c)(3).

    JDPI contends that VIP uses JDPI's Marks and Trade Dress as a designation of source for its own goods or services, and that therefore the fair use protection does not apply to VIP. JDPI's contention is wrong.

6

1    VIP has never used JDPI's Marks or Trade Dress as a designation of source. JDPI
2    bases its assertion on its absurd claim that VIP admitted that it uses JDPI's marks as a
3    designation of source by seeking declaratory judgment that its "use of its Bad Spaniel's'
4    name and mark for its novelty dog toy does not infringe or dilute any trademark rights
5    claimed by JDPI in the name and mark 'Jack Daniel's.'" [Opp. at p. 10:1-7; *see* Mot. at
6    1:13-20.] JDPI is apparently suggesting that the "admission" is VIP's use of the words
7    "Bad Spaniel's name and mark."

8    JDPI's suggestion is wrong for several reasons. First, VIP is seeking declaratory
9    judgment because *JDPI* contends that VIP is using "Bad Spaniels" as a mark that infringes
10   JDPI's JACK DANIELS mark—VIP is seeking a declaration that it is *not* an infringing
11   mark. JDPI's contention pre-supposes that JDPI has already won the case. Second, merely
12   using the word "mark" to refer to something does not operate as an admission that the
13   thing is being used as a designation of source for a person's own goods or services. Third,
14   there is no factual evidence to support JDPI's claim. The VIP Toy prominently displays
15   VIP's SILLY SQUEAKERS® mark. [SOF ¶5.] There is no evidence suggesting that
16   anyone ever thought "Bad Spaniels" was a source of dog toys.

17   JDPI's contention is without merit. VIP has never admitted to using JDPI's marks
18   as a designation of source and VIP did not in fact use either Bad Spaniels or any of JDPI's
19   mark as a designation of source. VIP's Toy is protected fair use under the TDRA.

20   **C.    Application of *Sleekcraft* Would Not Help JDPI Avoid Summary**
21   **Judgment.**

22   JDPI's argues that the likelihood of confusion analysis from *Sleekcraft* must be
23   performed, and that analysis gives rise to disputed issues of material fact. [Opp. at p. 11:3-
24   21.] JDPI's contention is wrong. As explained in VIP's Motion, a likelihood of confusion
25   analysis is not necessary because VIP is not required to rebut confusion to receive
26   protection under fair use. *KP Perm. Make-Up v. Lasting Impress'n I*, 543 U.S. 111, 111-12
27   (2004).

28

7

1  In any event, even if the Court were inclined to conduct a *Sleekcraft* likelihood of confusion analysis, summary judgment in favor of VIP is still warranted because, when applied to the facts of this case, the *Sleekcraft* analysis favors VIP.

The Ninth Circuit has made clear that summary judgment is appropriate where, as here, a party claiming confusion has failed to establish "a genuine issue of material fact on the likelihood of consumer confusion." *Playmakers, LLC v. ESPN, Inc.*, No. 04-36139, 2006 WL 2852255, at *1 (9th Cir. Oct. 3, 2006).

The *Sleekcraft* opinion provided eight factors to analyze likelihood of confusion: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. 599 F.2d at 348-49. On the facts of this case, each of these factors weights against a likelihood of confusion.

### 1. The goods are not related.

To evaluate whether goods are related, courts consider whether: the goods are complementary; the products are sold to the same class of purchasers; and the goods are similar in use and function." *Groupion, LLC v. Groupon, Inc.*, 826 F. Supp. 2d 1156, 1163 (N.D. Cal. 2011) (citing *Sleekcraft,* 599 F.2d at 350).

VIP is in the business of selling specialty dog toys, while JDPI sells a regulated alcoholic beverage and only markets to those over the legal drinking age. [*See* SOF ¶ 99.] Because JDPI and VIP are not market competitors, the likelihood of confusion is extremely low. *See Brookfield Commc'ns., Inc. v. W. Coast Enter. Corp.*, 174 F.3d 1036, 1055–56 (9th Cir. 1999) (finding that likelihood of confusion to be highly unlikely where the marks were not used on competitive products, even where, unlike here, the marks were virtually identical).

8

**2. No common marketing channels.**

Likelihood of confusion is further reduced because Jack Daniel's and VIP's Toy are not sold in any of the same stores or channels of trade, do not use the same marketing strategies, and the products are not advertised in any of the same locations. *Stark v. Diageo Chateau & Estate Wines Co.*, 907 F. Supp. 2d 1042, 1057–58 (N.D. Cal. 2012).

JDPI is not in the business of making dog toys, and does not license any of its marks for use on dog toys. [SOF ¶¶ 94-106.] Further, JDPI only markets its products to those of legal drinking age, and would not produce a dog toy for fear that it may be confused with a child's toy. [SOF ¶ 99.]

**3. Jack Daniel's alleged trade dress is not strong.**

Likelihood of confusion is also low considering that even if the Court concluded that the Jack Daniel's Trade Dress is as distinctive as JDPI contends, this would render confusion even more unlikely based on consumers heightened awareness "of even small differences" of distinctive marks. *Century 21 Real Estate LLC v. Century Ins. Group*, No. CIV 03-0053-PHX-SMM, 2007 WL 484555 at *6 (D. Ariz. Feb. 8, 2007) (finding that plaintiff's strong unitary mark reduced the likelihood of confusion).

**4. The marks are not similar.**

Although the VIP Toy parodies Jack Daniel's to some degree, it is easily differentiated based on its comedic design components. JDPI admits that the VIP Toy "includes distinct differences from the Jack Daniel's marks and label design," and that these differences make consumer confusion less likely. [VIP's Responsive Statement of Facts ("VIP's CSOF") (Dkt. #151) ¶¶ 34, 184; *see GoTo.Com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000).]

Additionally, VIP's use of its SILLY SQUEAKERS® mark on the VIP Toy makes it even less likely that a reasonable consumer could believe that JDPI produced the toy. *Marketquest Group, Inc. v. BIC Corp.*, No. 11–cv–618, 2011 WL 5360899, at *9 (S.D. Cal. Nov. 7, 2011) ("In *Sleekcraft,* the Ninth Circuit noted that the use of a housemark can reduce the likelihood of confusion[.]").

9

### 5. No actual confusion.

Where, as here, there are no known instances of actual confusion between the marks at issue, this "strongly suggests" that "there is no likelihood of confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 597 F. Supp. 2d 1006, 1023 (N.D. Cal. 2009); SOF ¶ 107-110.

### 6. No intent to divert or deceive consumers.

VIP's intent in designing the VIP Toy further weighs against a likelihood of confusion. Where a defendant produces undisputed evidence that it adopted a similar (or even identical) mark in good faith, such evidence will weigh against a finding of likelihood of confusion. *See Century 21 Real Estate LLC v. Century Ins. Group*, No. CIV 03-0053-PHX-SMM, 2007 WL 484555 at *10 (D. Ariz. Feb. 8, 2007). In fact, VIP took several precautionary measures to ensure that there would be no confusion as to the source of the toy. [VIP's CSOF ¶¶ 179-189.] This further weighs against a likelihood of confusion.

### 7. No evidence consumers won't exercise a reasonable degree of care.

There is no evidence to suggest that consumers do not exercise sufficient care to read the disclaimer on the VIP Toy disclaiming any affiliation with Jack Daniels. JDPI admits that English-speaking customers would understand the disclaimer. [SOF ¶ 92.]

### 8. No JDPI plans to expand into the dog toy market.

JDPI's testimony that it has no plans to ever expand into the dog toy market further establishes that there is no likelihood of confusion. As mentioned above, JDPI has not and will not produce or license its marks for use on a pet toy. [VIP's CSOF ¶ 189.]

All of the *Sleekcraft* factors weigh in favor of VIP. For this reason, even if the Court conducted a *Sleekcraft* likelihood-of-confusion analysis, VIP would still be entitled to summary judgment.

### III. VIP IS ENTITLED TO SUMMARY JUDGMENT ON JDPI'S DILUTION CLAIM.

VIP moved for Summary Judgment on JDPI's Dilution Claim, not only because the claim is barred by the Fair Use doctrines discussed above, but also on the additional

10

ground that JDPI has failed to offer evidence sufficient to make a *prima facie* showing of dilution. JDPI's Opposition argues that it has created issues of material fact for each element which preclude summary judgment, but it bases its arguments on incorrect statements of the law. [Opp. at p. 11:22-17:19.]

### A. **JDPI's Trade Dress is Not a Famous Source Identifier "Separate and Apart from" JDPI's Marks.**

VIP's motion explained that JDPI had not presented evidence of the fame of the Jack Daniel's Trade Dress separate and apart from the fame of the Jack Daniel's marks. VIP relied on 15 U.S.C. § 1125(c)(4), which states that a party claiming dilution must prove that: "if the claimed trade dress includes any mark or marks registered on the principal register, *the unregistered matter,* taken as a whole, is famous separate and *apart from any fame of such registered marks*." 15 U.S.C. § 1125(c)(4)(emphasis supplied); *see* Mot. 9:5-6.

JDPI's Opposition contends that this provision of the Lanham Act means precisely the opposite of what it says, and that the court *should* consider JDPI's registered marks when evaluating the Jack Daniel's Trade Dress. [Opp. at p.12:21-28.] In support of its position, it cites the McCarthy trademark law treatise. [Opp. at p. 12:27-28.]

First, a trademark law treatise cannot overrule a federal statute. Even if JDPI were correct that the McCarthy treatise contradicts the Lanham Act (it does not), the treatise would be wrong, not the Lanham Act.

Second, JDPI's interpretation of the law would lead to absurd results. If the fame of trade dress for purposes of dilution could be established merely by showing that the trade dress is a recognized source identifier when the trade dress bears famous marks, any package could instantly be made "famous" and thus subject to protection under the FTDA merely by adding a famous mark to any packaging. That is clearly not the law. *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 1005 (C.D. Cal. 2011) ("McDonalds can't stop other fast food manufacturers from selling food in paper bags and Scotch can't stop other manufacturers of office products from using circular tape dispensers.")

JDPI has the burden of proving that its *unregistered* trade dress is a famous source identifier apart from JDPI's *registered* marks. It has not, and cannot make such a showing. This by itself is sufficient reason to grant VIP summary judgment on JDPI's dilution claims.

### B. **JDPI Cannot Meet Its Burden To Establish the Elements of a Dilution Claim.**

#### 1. **JDPI has failed to present competent evidence of fame of the Jack Daniel's trade dress.**

VIP's Motion explained that JDPI has failed to present evidence sufficient to establish the fame of the Jack Daniel's Trade Dress. [Mot. at pp. 8:20-12:2.] In particular, JDPI has not presented direct evidence of actual recognition. [Mot. at p. 10:1-26.]

JDPI contends that it does not need direct evidence of actual recognition. JDPI's attempts to distinguish authorities cited by VIP are unpersuasive. None of JDPI's arguments refutes VIP's point—that direct evidence of actual recognition is critical to proving fame for purposes of a dilution claim in the Ninth Circuit. [*See* Mot. at p. 10; Opp. at pp. 13:14-14:6.] JDPI admits that it is relying on "indirect evidence." [Mot. 14:21-15:2.]

#### 2. **JDPI cannot establish similarity between the VIP Toy and Jack Daniel's trade dress.**

VIP's Motion argued that JDPI could not show that VIP's Toy is sufficiently similar to the JDPI Marks and Trade Dress. In support of its contention, VIP highlighted several significant differences between the VIP Toy and the Jack Daniel's Marks and Trade Dress.

JDPI contends that there is a disputed issue of fact regarding similarity because (1) VIP supposedly admitted to copying the Jack Daniel's Trade Dress, and (2) the differences discussed by VIP are irrelevant because the product must be analyzed "*as a whole*." [Opp. at p.15:27 (emphasis in original)]. Although JDPI refers to both of these contentions repeatedly, mere replication does not render them persuasive.

Alleged copying. VIP did *not* admit, as JDPI contends, to "copying the Jack Daniel's Trade Dress." *See* Opp. 24:1-25:19; Mot. 1:4-7; 14:25-28. VIP's testimony is clear that it created a *parody* of the Jack Daniel's Trade Dress. [VIP's CSOF ¶¶ 40, 168, 172, 211.] The difference is more than merely semantic. A parody "must convey two simultaneous—and contradictory—messages: that it is the original, but *also that it is not the original* and is instead a parody." *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 260 (4th Cir. 2007) (quoting *People for the Ethical Treatment of Animals v. Doughney* ("PETA") 263 F.3d 359, 366 (4th Cir. 2001)) (emphasis supplied). To pretend VIP's creation of a parody is an admission of similarity (or "copying") ignores at least half of the message—that it is **not** the original. A parody *references* the original. It is not a copy of the original. Like the difference between a picture of an object and the object, a parody may call to mind the original, but it is not the same as the original. The fact that VIP created a parody does not meet JDPI's burden of proof regarding similarity for purposes of dilution—or for any other purpose.

Similarly, VIP's position that it created a parody is not an admission of copying or of wrongdoing. Parodies are explicitly permitted under the TDRA. 15 U.S.C. § 1125(c)(3). They are also protected by the First Amendment. *Walking Mount. Prods*. 353 F.3d 792. Creation of a parody does not give rise to an adverse inference or create liability.

Analysis of trade dress "*as a whole*." JDPI relies on this refrain as a basis for ignoring the differences VIP identified between the VIP Toy and the Jack Daniel's Trade Dress. The argument is not persuasive. It is difficult to describe differences via text without listing "discrete differences." The fact that the differences are discretely listed does not mean that they do not have any impact on the "trade dresses *as a whole*." [Opp. at 12:18-20 (emphasis in original).]

### 3. The VIP Toy will not harm JDPI's reputation.

JDPI contends that the testimony of Dr. Itmar Simonson, its expert, meets its burden to establish harm to JDPI's reputation. [Mot. at 17:1-3.] As discussed in VIP's *Daubert* motion regarding Simonson, Simonson's testimony is unreliable and should not be

13

considered. [*See* VIP Motion to Exclude (Dkt #62).] Even if considered, Simonson's testimony has so little probative value that it is not sufficient to meet JDPI's burden on this issue.

JDPI's argument that testimony from VIP's expert Bruce Silverman does not "disprove Dr. Simonson's view" is likewise misplaced. [*See* Mot. at p. 17:14.] VIP does not have the burden of disproving this element, JDPI must prove it. As set forth in VIP's Motion, JDPI has not and cannot do so.

### IV. JDPI CANNOT MEET ITS BURDEN TO SHOW THAT THE JACK DANIEL'S TRADE DRESS IS PROTECTABLE.

VIP's Motion and VIP's Response to JDPI's Motion for Partial Summary Judgment (Dkt #147) detail the law and facts demonstrating that JDPI cannot establish that the Jack Daniel's Trade Dress is protectable (*i.e.*, that it is non-functional, and that it is distinctive). [Mot. at pp. 14-27; VIP Resp. at pp. 3-30.] As discussed below, JDPI's Opposition on these points relies on incorrect statements of the law.

#### A. JDPI Bears The Burden Of Showing That The Jack Daniel's Trade Dress Is Protectable.

JDPI's assertion is wrong that VIP has the burden of showing that JDPI's trade dress is not protectable. [Opp. at p. 18:8-9.] JDPI has the burden of showing that its trade dress is protectable. "[O]ne who seeks to establish trade dress protection must carry the heavy burden of showing that [its trade dress] is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device." *Secalt S.A. v. Wuxi Shenxi Construction Machinery Co., Ltd.*, 668 F.3d 677, 683 (9th Cir. 2012) (quoting *TrafFix Devices, Inc. v. Mrktg. Displays, Inc.*, 532 U.S. 23, 30 (2001)).

#### B. JDPI's Trade Dress is Functional, Generic and Not Distinctive.

JDPI contends that its Jack Daniel's Trade Dress is not generic because it contains its JACK DANIEL'S and OLD NO. 7 Marks and because VIP's witnesses Mr. Sacra and Mr. Wolinsky "both testified that the Jack Daniel's packaging is not generic." [Opp. 21:7-14.] JDPI's contention is wrong because (1) Mr. Sacra and Mr. Wolinsky are not legal

14

experts offering legal opinions on these issues, so their testimony is neither relevant nor admissible on this legal issue; and, (2) the presence of registered marks on packaging does not transform the entire package from something generic into something distinctive. Again, if it did, any mark owner could claim exclusive rights to packaging as generic as a cardboard box merely by putting its mark on it.

JDPI's claim that "no other whiskey company uses all of the elements of the Jack Daniel's Trade Dress" is similarly misleading. Other whiskey companies use all the elements except for the JACK DANIEL'S and OLD No. 7 slogan. [Opp. at p. 23:14-17; VIP Response to JDPI's Motion for Partial Summary Judgment (Dkt#147) at pp. 29-30.] Again, if the mere addition of a register mark was sufficient to make the entire package protectable trade dress, a mark owner could claim exclusive rights in any packaging merely by putting its mark on it. This is clearly not the law. *Mattel, Inc.*, 782 F. Supp. 2d at 1005.

JDPI's assertion that evidence regarding use in the distant past proves distinctiveness is likewise unpersuasive. [Opp. at p. 23:5-13.] The relevant question is whether consumers today consider the alleged trade dress to identify goods from a particular source. JDPI simply does not have any evidence to prove this point.

**V.    CONCLUSION.**

For the forgoing reasons, VIP's Motion should be granted in its entirety.

**RESPECTFULLY SUBMITTED** this 8th day of January, 2016.

**DICKINSON WRIGHT, PLLC**

By: s/ David G. Bray
David G. Bray
Frank G. Long
Jonathan S. Batchelor
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85012-2705
*Attorneys for VIP Products, L.L.C.*

15

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

                                          s/ Kylie M. Boie

PHOENIX 53913-11 272675v2