QUARLES & BRADY LLP
Gregory P. Sitrick
Isaac S. Crum
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004-2391
Telephone: (602) 229-5317
Facsimile: (602) 420-5198
E-mail: Gregory.Sitrick@quarles.com
            Isaac.Crum@quarles.com

SEYFARTH SHAW LLP
Christopher C. Larkin (admitted pro hac vice)
2029 Century Park East
Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 201-5289
Facsimile: (310) 201-5219
E-mail: clarkin@seyfarth.com

*Attorneys for Defendant and Counterclaimant*
*JACK DANIEL'S PROPERTIES, INC.*

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| VIP Products, LLC, | No. CV-14-2057-PHX-SMM |
| Plaintiff, | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| Jack Daniel's Properties, Inc., | |
| Defendant. | |
| | **ORAL ARGUMENT REQUESTED** |
| And Related Counterclaims. | |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

ARGUMENT ......................................................................................................... 2

I.    THE JACK DANIEL'S TRADE DRESS IS NON-FUNCTIONAL AND DISTINCTIVE AS A MATTER OF LAW. ......................................... 2

    A.    The Jack Daniel's Trade Dress Is Not Functional as a Matter of Utility. ................................................................................. 2

    B.    The Jack Daniel's Trade Dress Is Not Aesthetically Functional. ................................................................................. 5

    C.    The Jack Daniel's Trade Dress Has Acquired Distinctiveness. ........... 6

        1.    VIP's Copying Establishes Acquired Distinctiveness. ............. 6

        2.    JDPI's Circumstantial Evidence Proves Acquired Distinctiveness. .................................................................. 7

            a.    Sales Evidence ................................................... 7

            b.    Advertising and Media Coverage ................................. 8

            c.    Lack of Direct Evidence of Acquired Distinctiveness ................................................... 9

            d.    Alleged Non-Exclusive Use and Third-Party Copying ................................................................. 10

        3.    The Jack Daniel's Trade Dress is Not Generic ...................... 11

II.    REGISTRATION NO. 4,106,178 IS VALID AS A MATTER OF LAW. .......................................................................................... 12

III.    RESPONSES TO CERTAIN EVIDENTIARY OBJECTIONS AND EXPERT DECLARATIONS ......................................................... 13

CONCLUSION ................................................................................................... 15

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

QB\37985827.5

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Apple, Inc. v. Samsung Elec. Co.*,
 786 F.3d 983 (Fed. Cir. 2015) ................................................. 2, 3, 4, 13

*Arizona Bd. of Regents v. Seattle Genetics, Inc.*,
 CV-14-00653-PHX-NVW, 2015 WL 4638231 (D. Ariz. Aug. 4, 2015) ............. 13

*Art Attacks Ink, LLC v. MGA Entm't, Inc.*,
 581 F.3d 1138 (9th Cir. 2009) ................................................................. 9

*Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*,
 457 F.3d 1062 (9th Cir. 2006) ................................................................. 5

*Big Island Candies v. Cookie Corner*,
 269 F. Supp. 2d 1236 (D. Haw. 2003) ................................................... 11

*Clicks Billiards v. Sixshooters Inc.*,
 251 F.3d 1252 (9th Cir. 2001) ............................................................ 1, 4

*Continental Lab. Prods., Inc. v. Medax Int'l, Inc.*,
 114 F. Supp. 2d 992 (S.D. Cal. 2000) ................................................... 7, 8

*E & J Gallo v. Proximo Spirits, Inc.*,
 2012 WL 273076 (E.D. Cal. January 30, 2012) ......................................... 9

*Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*,
 741 F. Supp. 2d 1165 (C.D. Cal. 2012) ............................................. passim

*Filipino Yellow Pages, Inc. v. Asian J. Publ'ns, Inc.*,
 198 F.3d 1143 (9th Cir. 1999) ................................................................. 4

*First Brands Corp. v. Fred Meyer, Inc.*,
 809 F.2d 1378 (9th Cir. 1987) ............................................................. 8, 9

*Fuddruckers, Inc. v. Doc's B. R. Others, Inc.*,
 826 F.2d 837 (9th Cir. 1987) .............................................................. 6, 7

*Georgia-Pacific Consumer Prods. LP v. Kimberly-Clark Corp.*,
 647 F.3d 723 (7th Cir. 2011) ................................................................. 13

*Herman Miller, Inc. v. Palazetti Imports & Exports, Inc.*,
 270 F.3d 298 (6th Cir. 2001) ................................................................. 10

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

*In re Dietrich*,
    91 USPQ2d 1622 (TTAB 2009) ............................................................................ 13

*Indonesian Imports, Inc. v. Smith*,
    1999 WL 183629 (N.D. Cal. March 30, 1999) .................................................... 11

*Kendall-Jackson Winery, Ltd. v. E & J Gallo Winery*,
    150 F.3d 1042 (9th Cir. 1998) ...................................................................... 11, 12

*Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*,
    199 F.3d 1009 (9th Cir. 1999) ........................................................................... 2, 4

*Lisa Frank, Inc. v. Impact Int'l, Inc.*,
    799 F. Supp. 980 (D. Ariz. 1992) ..................................................................... 8, 9

*Lopez v. Gap, Inc.*,
    883 F. Supp. 2d 400 (S.D.N.Y. 2012) .................................................................. 11

*Mattel, Inc. v. MGA Entertainment, Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2010) .................................................................. 11

*Rodan & Fields, LLC v. Estee Lauder*,
    2010 WL 3910178 (N.D. Cal. October 5, 2010) ..................................................... 3

*Secalt S.A. v. Wuxi Shenxi Construction Machine Co., Ltd.*,
    668 F.3d 677 (9th Cir. 2012) ............................................................................. 2, 3

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization*,
    59 F.3d 902 (9th Cir. 1995) ..................................................................................... 4

*Spark Indus., LLC v. Kretek Int'l, Inc.*,
    2014 WL 4365736 (C.D. Cal. Aug. 28, 2014) ............................................... passim

*Sportvision, Inc. v. Sportsmedia Technology Corp.*,
    2005 WL 1869350 (N.D. Cal. August 4, 2005) .................................................... 13

*Talking Rain Bv. Co. v. S. Beach Bev. Co.*,
    349 F.3d 601 (9th Cir. 2003) ............................................................................... 13

*Target Brands, Inc. v. Shaun N.G. Hughes*,
    85 USPQ 2d 1676 (TTAB 2007) ............................................................................ 8

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
    532 U.S. 23 (2001) ................................................................................................ 2

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
    768 F.2d 1001 (9th Cir. 1985) ............................................................................... 6

iii

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

*University of Alabama v. Pitts*,
   107 USPQ2d 2001 (TTAB 2013)................................................................... 9

*Valu Eng'g., Inc. v. Rexnord Corp.*,
   278 F.3d 1268 (Fed. Cir. 2002) ................................................................. 13

*Walker & Zanger, Inc. v. Paragon Indus. Inc.*,
   549 F. Supp. 2d 1168 (N.D. Cal. 2007) .......................................... 8, 9, 11

*Yeager v. Bowlin*,
   693 F.3d 1076 (9th Cir. 2012) ..................................................................... 1

*Zobmondo Entertainment, LLC v. Falls Media, LLC*,
   602 F.3d 1108 (9th Cir. 2010)................................................................... 12

## **<u>Statutes</u>**

15 U.S.C. § 1052 ........................................................................................ 13

## **<u>Rules</u>**

Fed. R. Evid. 602........................................................................................ 14

LRCiv. 7.2 .................................................................................................. 13

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

QB\37985827.5

## INTRODUCTION

VIP's opposition is noteworthy for several things. *First*, VIP filed a 42-page controverting statement of facts (Doc. 148) ("CSOF"), more than twice the length allowed by the Court's October 2, 2015 order (Doc. 93). Because VIP is a repeat offender, *see* December 15, 2015 order (Doc. 155), its CSOF should be stricken completely, or disregarded with respect to facts beyond the permitted 20 pages.

*Second*, VIP repeatedly attempts to walk back unhelpful deposition testimony from its fact and expert witnesses by claiming they are not qualified to testify on something, or by offering declarations "explaining" their testimony. VIP may not create issues of fact by submitting declarations that conflict with deposition testimony. *See Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). As shown at pp. 14–15 below, the objections to the qualifications or knowledge of the witnesses should be overruled, and portions of VIP's expert John Howard's declaration should be disregarded because they impermissibly expand the scope of his opinions.

*Third*, VIP continues to ignore the Ninth Circuit's mandate that in analyzing trade dress for all purposes, courts must focus "not on the individual elements, but rather the overall visual impression that the combination and arrangement of those elements create." *Clicks Billiards v. Sixshooters Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001). Mr. Sacra, VIP's Rule 30(b)(6) witness on trade dress, wrote in his so-called "Report" that "it has been made clear by the courts that you cannot consider the use of individual elements on their own and you must look at the combination of the elements in a group in their entirety." Stmt. ¶ 67.[1] But VIP persists in wearing blinders, refusing to acknowledge all of the elements of the Jack Daniel's Trade Dress, including the stylized JACK DANIEL'S and OLD NO. 7 marks, and focusing only on what it variously calls "a

---

[1] He does the opposite in his declaration (Doc. 148-2 at Ex. G, ¶¶ 11–19 and Exs. C–H). JDPI objects to the testimony and exhibits on the grounds of relevance and that the exhibits have never been produced.

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

common liquor bottle shape with generic labeling and graphics," Opp. 2:22–23, or "four fundamental features" of the Jack Daniel's Trade Dress.  Opp. 6:2–4.  JDPI does not claim the exclusive right to use the "four fundamental features" and VIP did not copy only those features or only "a common liquor bottle shape with generic labeling and graphics."  To confirm the latter point, the Court need only compare VIP's toy with the packaging for the whiskeys shown at p. 3 of VIP's opposition and the packaging for Jack Daniel's whiskey shown at p. 4.  VIP's refusal to address the Jack Daniel's Trade Dress as a whole renders its entire opposition meritless.

*Finally*, although VIP claims that JDPI is asserting a mythical trade dress, Opp. 2–3, it is actually VIP who is promoting a myth: that its alleged parody was based on trade dress that is non-existent because it is generic, functional, and non-distinctive.  No reasonable trier of fact could believe this myth, and JDPI's motion should be granted.

## ARGUMENT

## I.    THE JACK DANIEL'S TRADE DRESS IS NON-FUNCTIONAL AND DISTINCTIVE AS A MATTER OF LAW.

### A.    The Jack Daniel's Trade Dress Is Not Functional as a Matter of Utility.

On the issue of utilitarian functionality, VIP relies primarily on product configuration cases, *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001) (highway signs), *Secalt S.A. v. Wuxi Shenxi Construction Machine Co., Ltd.*, 668 F.3d 677 (9th Cir. 2012) (traction hoist), *Apple, Inc. v. Samsung Elec. Co.*, 786 F.3d 983 (Fed. Cir. 2015) (mobile phones), and *Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009 (9th Cir. 1999) (multifunction pocket tool).  Opp. 9–11.  "Given the functionality doctrine's underlying purpose, the Ninth Circuit has suggested that it may apply with somewhat less force in most product packaging cases, as opposed to cases involving product configuration."  *Spark Indus., LLC v. Kretek Int'l, Inc.*, 2014 WL 4365736, *4 (C.D. Cal. Aug. 28, 2014); *see also Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1174 (C.D. Cal. 2012).  The combination of features comprising the Jack Daniel's Trade Dress is very similar in nature to the

1  combination of packaging features found to be non-functional under the *Disc Golf* factors

2  in *Spark* and *Fiji Water*, but VIP never discusses either case on the issue of functionality.

3        With respect to utilitarian advantages, as shown at pp. 14–17 of JDPI's opening

4  brief (Doc. 101), "there is no function being served by the [Jack Daniel's] trade dress's

5  particular arrangement or several particular elements," *Spark*, 2014 WL 4365736 at *6,

6  and "the font, font size, and font color serve no utilitarian function nor does the strategic

7  placement of certain items of text." *Id.*; *see also Fiji Water*, 741 F. Supp. 2d at 1174

8  ("the font and size of the lettering on the label, the strategic placement of certain design

9  elements or the use of a particular phrase are not utilitarian advantages"). VIP does not

10  seriously dispute this, but claims that "design choices made to enhance a product's

11  appearance can yield utilitarian advantages," and that "JDPI fails to prove that other

12  structural elements included in the combination of features that comprise the alleged

13  Trade Dress do not yield utilitarian advantages." Opp. at 9:20–12; 10:3–5.

14        The cases on which VIP relies are inapposite. In *Secalt* and *Apple*, courts found

15  that trade dress was functional because features that gave the products their appearance

16  *provided utilitarian benefits*, *Secalt*, 668 F.3d at 686; *Apple*, 786 F.3d at 993, and in

17  *Rodan & Fields, LLC v. Estee Lauder*, 2010 WL 3910178, *5 (N.D. Cal. October 5,

18  2010), the court found that the appearance of a rectangular bag with a flat bottom, a

19  handle at the top, and a two-toned color scheme was functional because each of those

20  features *provided a utilitarian advantag*e. None of the aesthetic features of the Jack

21  Daniel's Trade Dress provides any utilitarian benefit. And "even if this Court assumes

22  that [VIP] can establish with admissible evidence that the square bottle shape of the [Jack

23  Daniel's] bottle is primarily functional because it wastes less space in packaging so more

24  cases of [whiskey] can fit into a shipping container, [VIP's] claim does not defeat

25  [JDPI's] showing of non-functionality because it focuses on a single element, rather than

26  'the overall visual impression' of the trade dress as a whole. 'The fact that individual

27  elements of the trade dress may be functional does not necessarily mean that the trade

28

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

1    dress *as a whole* is functional'." *Fiji Water*, 741 F. Supp. 2d at 1173 (*quoting Clicks*, 251

2    F.3d at 1259 (emphasis supplied by court)); *see also Spark*, WL 4365736 at *4–5.

3        With respect to alternative designs, VIP cites *Apple* and *Leatherman Tool* and Mr.

4    Howard's report, Opp. at 10, but the analysis of the availability of alternative designs

5    differs in product packaging cases.  In finding that the packaging in *Spark* was not

6    functional, the court cited *Clicks*, 251 F.3d at 1261, for the proposition "that the ultimate

7    issue of functionality in packaging-type cases 'is whether [the] particular integration of

8    elements leaves a multitude of alternatives to [competitors in the] industry that would not

9    prove confusingly similar." *Spark*, WL 4365736 at *6; *see also Fiji Water*, 741 F. Supp.

10   2d at 1174.  There are a multitude of alternative packages for whiskey in use.  Stmt. ¶ 96.

11   "Since competitors routinely use alternative designs in packaging their [whiskey]

12   products, protecting the particular combination of elements in the [Jack Daniel's]

13   packaging will not hinder competition in the [whiskey] industry." *Id.*

14       With respect to whether advertising for Jack Daniel's whiskey touts any utilitarian

15   advantages of the packaging, the record is replete with such advertising in various media.

16   Stmt. ¶¶ 53–66.  As Mr. Howard acknowledged with respect to JDPI's registered mark, a

17   review of this advertising shows that none of it touts any utilitarian advantages of the

18   Jack Daniel's Trade Dress, and VIP points to none.  Opp. 10:24–27.

19       VIP mischaracterizes the remaning *Disc Golf* factor in claiming that JDPI must

20   show that the Jack Daniel's Trade Dress is "less economically efficient than other design

21   options."  Opp. 11:1–2.  This factor actually asks whether the Jack Daniel's Trade Dress

22   "is the result of a simple or inexpensive method of manufacturing." *Fiji Water*, 741 F.

23   Supp. 2d at 1175.  JDPI has provided undisputed evidence that the Jack Daniel's Trade

24   Dress is not the result of such a method.  Stmt. ¶¶ 95, 117–119, 160.  VIP only argues

25   that this evidence "lacks any underlying data and is based solely on the uncorroborated

26   testimony of self-interested JDPI employees," Opp. 11:18–19, citing *Filipino Yellow*

27   *Pages, Inc. v. Asian J. Publ'ns, Inc.*, 198 F.3d 1143 (9th Cir. 1999) and *Self-Realization*

28   *Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902 (9th Cir. 1995),

4

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

but those cases are inapposite because they involved employee testimony about consumer

perception regarding acquired distinctiveness.  Mr. Hungerford and Mr. Taylor are

competent to testify on the non-functionality of the Jack Daniel's Trade Dress, and did so

in detail.  Taken together, the *Disc Golf* factors compel a finding that the Jack Daniel's

Trade Dress as a whole is not functional as a matter of utility.

**B.    The Jack Daniel's Trade Dress Is Not Aesthetically Functional.**

In *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc*., 457 F.3d 1062, 1073

(9th Cir. 2006), the Ninth Circuit's most recent significant decision on aesthetic

functionality, which is mentioned by VIP only in passing, Opp. 8:13–15, the court held

that "aesthetic functionality has been limited to product features that serve an aesthetic

purpose wholly-independent of any source-identifying function."  VIP has failed to rebut

JDPI's showing that the Jack Daniel's Trade Dress as a whole "serve[s] an aesthetic

purpose wholly-independent of any source-identifying function."  VIP again refuses to

acknowledge that the Jack Daniel's Trade Dress is more than "a square bottle with a

fluted neck, a black cap, and a black neck-wrap closure," Opp. 13, but the actual Jack

Daniel's Trade Dress, which includes what consumer research cited by VIP called "'the

key visual equities of the JDTW package (*i.e.*, Old No. 7 icon, filigree border/frame,

arched brand name, Tennessee whiskey, etc.)'," Opp. 14:6–7,[2] does not "identif[y] a

product category."  Opp. 12:19–20.  Granting JDPI exclusive rights in the Jack Daniel's

Trade Dress as a whole will have no impact on the ability of competitors to use or

continue to use individual elements, or on VIP's ability to "make a squeaky dog toy that

was recognizable as a parody of any American whiskey bottle."  Opp. 13:12–13.  JDPI's

claim against VIP's toy requires, and any future claim by JDPI against a competitor

would require, that JDPI prove a likelihood of confusion as to the source or sponsorship

---

[2]VIP argues that this research shows that some elements of the Jack Daniel's package
have functions, Opp. 13:19-14:14, but as shown above with respect to utilitarian
functionality, the fact that individual elements of trade dress may have functions or be
functional does make the trade dress as a whole functional.  *Spark*, WL 4365736 at *6.

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

1  of the challenged product based on its similarity to the Jack Daniel's Trade Dress as a

2  whole, including the stylized the stylized JACK DANIEL'S and OLD NO. 7 marks.  The

3  Jack Daniel's Trade Dress, and JDPI's registered bottle mark, which includes the Jack

4  Daniel signature, Opp. 27, are not aesthetically functional as a matter of law.

5          **C.**     **The Jack Daniel's Trade Dress Has Acquired Distinctiveness.**

6                     *1.*     *VIP's Copying Establishes Acquired Distinctiveness.*

7          VIP claims that its copying does not give rise to an inference of acquired

8  distinctiveness because "only an '*unexplained* proof of intentional copying' is probative

9  of secondary meaning."  Opp. 15:3–4 (quoting *Spark,* 2014 WL 4365736, at *11

10  (emphasis added by VIP)).  But the cases cited by VIP involved competitors, whose

11  explanations for copying trade dress, such as the desire to use functional elements to

12  compete, may negate an inference of secondary meaning.  *Id.*; *see also Fuddruckers, Inc.*

13  *v. Doc's B. R. Others, Inc.*, 826 F.2d 837, 844–45 (9th Cir. 1987).  VIP did not copy the

14  Jack Daniel's packaging to sell a competitive whiskey, but rather to associate its dog toy

15  with Jack Daniel's whiskey.  This explanation for copying is not one that negates an

16  inference of acquired distinctiveness.  To the contrary, "[t]o successfully execute its

17  parody," Opp. 15:15, VIP had to imitate "identifiable parts of the trade dress that people

18  have visual recognition with . . ."  VIP Summary Judgment Motion Ex. TT (Doc. 118)

19  218:10–12.  That is why VIP mimicked the arched JACK DANIEL'S mark, the OLD

20  NO. 7 mark in an oval, the label's filigree, and the script depiction of "Tennessee" in the

21  Jack Daniel's Trade Dress, not "only its generic and non-exclusive features . . ."  Opp.

22  15:14.  As shown at pp. 24–25 of JDPI's opposition to VIP's summary judgment motion

23  (Doc. 142) (the "JDPI Opposition"), VIP copied the Jack Daniel's Trade Dress precisely

24  to take advantage of "[an existing] secondary meaning."  *Id*. (*quoting Transgo, Inc. v.*

25  *Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1016 (9th Cir. 1985)).  No reasonable

26  trier of fact could find otherwise.

27          VIP also claims that its use of the SILLY SQUEAKER mark and a disclaimer on

28  the detachable hang tag refutes any inference of acquired distinctiveness, citing *Spark*

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

and two cases cited in *Spark*. Opp. 15:19–16:2. These cases also involved competitors, not alleged parodists. The *Spark* court inferred acquired distinctiveness from the defendant's copying because "'it would be naïve to suggest that [defendant] happened upon a design that imitates in significant ways the successful [plaintiff's] line' if [defendant] was not intending to capitalize on [plaintiff's] secondary meaning." 2014 WL 4365736, *11 (quotation omitted). No reasonable trier of fact could find that VIP "happened upon a design that imitates in significant ways the successful" Jack Daniel's whiskey or that VIP was "not intending to capitalize on [JDPI's] secondary meaning." "[I]n appropriate circumstances, deliberate copying may suffice to support an inference of secondary meaning." *Fuddruckers*, 826 F.2d at 844. Such circumstances exist here.

> **2.**    *JDPI's Circumstantial Evidence Proves Acquired Distinctiveness.*

VIP argues that JDPI's evidence of longstanding and extensive sales, advertising, and public exposure of the packaging for Jack Daniel's whiskey "shows merely that Jack Daniel's whiskey is *popular*--and popularity, without more, is irrelevant to whether product packaging has acquired distinctiveness." Opp. at 16:12–14 (emphasis in original). None of VIP's arguments or evidence creates a genuine dispute of fact.

> **a.**    Sales Evidence

VIP does not seriously dispute JDPI's evidence of extensive sales of Jack Daniel's whiskey over an extended period of time, Stmt. ¶¶ 46, 50–51, but claims that "JDPI fails to provide any context of its sales evidence and sales figures and, accordingly, this evidence does not establish secondary meaning for its product packaging." Opp. 16:25–26. VIP relies on *Continental Lab. Prods., Inc. v. Medax Int'l, Inc*., 114 F. Supp. 2d 992 (S.D. Cal. 2000), which involved claimed product configuration trade dress, a species of trade dress evaluated "with greater scrutiny than claims involving other forms of trade dress." *Id*. at 995, 997. Sales success "'will typically not be as probative of secondary meaning in a product configuration case as in a trademark case, since a product's market success may well be attributable to the desirability of the product configuration rather than the source-designating capacity of the supposedly distinguishing feature or

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

1  combination of features'." *Id.* at 1003 (quotation omitted).  The *Continental* court found

2  that the plaintiff had failed to place its "raw sales figures into a coherent evidentiary

3  context," *id.* at 1004, because it did not show the geographic scope of its sales, its market

4  share, or the relative size of its sales vis-à-vis its competitors.  *Id.*  That is not the case

5  here.  Jack Daniel's whiskey is sold nationwide in the United States and has been the

6  best-selling whiskey in the United States since 1997, Stmt. ¶¶ 49–52,[3] and VIP's expert

7  Martin Wolinsky testified that Jack Daniel's whiskey has been the most successful of the

8  whiskeys that he considered in preparing his report, and that it is the best-known

9  Tennessee whiskey.  Stmt. ¶ 45.  The sales evidence supports a finding of acquired

10 distinctiveness as a matter of law.  *Fiji Water,* 741 F. Supp. 2d at 1177.

11                                b.    Advertising and Media Coverage

12          VIP also does not dispute the extensive and longstanding advertising of Jack

13 Daniel's whiskey, Stmt. ¶¶ 44–65, but claims that it "does not focus on its alleged trade

14 dress as opposed to the 'Jack Daniel's' or 'Old No. 7' marks alone'," Opp. 17:13–15, and

15 does "not direct consumers' attention to the alleged Jack Daniel's Trade Dress," Opp.

16 17:28–18:1, citing *Spark*, *Lisa Frank, Inc. v. Impact Int'l, Inc*., 799 F. Supp. 980 (D.

17 Ariz. 1992), *First Brands Corp. v. Fred Meyer, Inc*., 809 F.2d 1378 (9th Cir. 1987),

18 *Target Brands, Inc. v. Shaun N.G. Hughes*, 85 USPQ 2d 1676 (TTAB 2007), and *Walker*

19 *& Zanger, Inc. v. Paragon Indus. Inc*., 549 F. Supp. 2d 1168 (N.D. Cal. 2007).

20          These cases are inapposite.[4]  To be probative of secondary meaning, advertising

21 must "highlight the claimed trade dress features," *Spark,* 2014 WL 4365736, at *13, but

22

23 _____

24 [3]VIP has moved to strike ¶ 5 of the Epps declaration because it contains a statement
   regarding tracking studies that VIP claims involved evidence not previously disclosed
   (Doc. 133).  Even if that motion is granted, the portion of ¶ 5 regarding sales of Jack
25 Daniel's whiskey is proper because it is not based on the challenged studies.

26 [4]*Target* involved advertising in catalogs and on the Internet for "numerous products
   under a variety of marks."  85 USPQ 2d at 1676.  The TTAB found that the evidence of
27 advertising expenditures "may simply serve to indicate the popularity of his many other
   products and recognition of his marks other than" the mark at issue.  *Id*. at n.6.

28

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

1  this does not require "textual or visual references directing consumers' attention to

2  features of the alleged Jack Daniel's Trade Dress."  Opp. 18:10–11.  As discussed at pp.

3  28–30 of the JDPI Opposition, such references might be required if the claimed trade

4  dress here was something like the yellow color and shape of the antifreeze jug in *First*

5  *Brand*s or the design of the decorative tiles in *Walker & Zanger,* but overall "product

6  packaging is the quintessential form of trade dress--as it "normally is taken by the

7  consumer to indicate origin'."  *Spark,* 2014 WL 4365736, at *6 (*quoting Wal-Mart*, 529

8  U.S. at 215).  *Lisa Frank* held that "ads should display the trade dress itself," 799 F.

9  Supp. at 992, and found sufficient ads that "prominently display[ed] LFI's products and

10  clearly depict[ed] its trade dress."  *Id.* at 993; *see also Fiji Water,* 741 F. Supp. 2d at

11  1175.  As discussed at pp. 28–30 of the JDPI Opposition, the Jack Daniel's advertising

12  and promotion in all media highlight the trade dress and call attention to it, and together

13  with the other public exposure of the packaging, support a finding of acquired

14  distinctiveness as a matter of law.  *Id.* at 1177, 1179.

c.    <u>Lack of Direct Evidence of Acquired Distinctiveness</u>

16        Direct evidence of acquired distinctiveness in the form of a survey or consumer

17  testimony is not required in the Ninth Circuit, *Art Attacks Ink, LLC v. MGA Entm't, Inc*.,

18  581 F.3d 1138, 1145–46 (9th Cir. 2009), and the cases cited by VIP do not say otherwise.

19  *Art Attacks* affirmed a finding of no acquired distinctiveness because the indirect

20  evidence consisted of miniscule sales at county fairs and a few stores, and advertising at

21  fairs and on-line.  *University of Alabama v. Pitts*, 107 USPQ2d 2001 (TTAB 2013), does

22  not state or imply, as VIP boldly claims, that "most trade dress claimants are unlikely to

23  meet their burden of proof without survey evidence."  Opp. 19:10–11.  It simply held that

24  "considering the ornamental nature of the Houndstooth pattern, the lack of a survey *in the*

25  *absence of other probative evidence of acquired distinctiveness*" left no basis to find

26  trademark rights in the pattern.  *University of Alabama*, 107 USPQ2d at 2018 (emphasis

27  added).  VIP's citation of *E & J Gallo v. Proximo Spirits, Inc*., 2012 WL 273076, at 13

28  (E.D. Cal. January 30, 2012), is especially disingenuous.  VIP claims that the court

9

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

granted summary judgment because "defendants asserted that plaintiff's bottle shape alone did not indicate source, and plaintiff 'chose not to do a consumer survey'," Opp. 20:3–6, but the problem was not that the plaintiffs "chose not to do a survey," but rather that they "failed to submit *either* direct or indirect evidence to raise a genuine issue of fact" on acquired distinctiveness. *Id*. at *13 (emphasis added). As shown at pp. 25–26 in the JDPI Opposition, JDPI's likelihood of confusion survey is probative of acquired distinctiveness, *Fiji Water*, 741 F. Supp. 2d at 1176, 1179–80, and, in any event, JDPI's indirect evidence, including VIP's copying and the extensive sales and advertising information, is sufficient to establish acquired distinctiveness as a matter of law.

### d.    Alleged Non-Exclusive Use and Third-Party Copying

VIP claims that JDPI cannot show "that it is the sole user of a significant number of elements of the elements claimed in the alleged Jack Daniel's Trade Dress," Opp. 20:9–10, but that is not required. Exclusivity of use goes to the use of trade dress as a whole, not the exclusive use of each individual feature. In *Spark,* the court found that the plaintiff's trade dress was not inherently distinctive because "other industry competitors also appear to be using many of the same composite elements," 2014 WL 4365736, at *7, n.6, but also found that it had been exclusively used for two years and that such use "may somewhat favor a finding of secondary meaning." *Id*. at *12. The Jack Daniel's Trade Dress has been exclusively used for decades. Stmt. ¶¶ 46–50.

VIP submits photographs of garments that it claims are available online and "imitate the alleged Jack Daniel's Trade Dress," Opp. 21:16–17, and cites *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc*., 270 F.3d 298 (6th Cir. 2001), for the proposition that "evidence that a plaintiff has failed to police imitators weighs against a finding of acquired distinctiveness." Opp. 22:5–7. This is yet another misleading citation. The cited portion of the opinion did not discuss acquired distinctiveness, but rather the defendant's claim that the plaintiff had *abandoned* its claimed trade dress. *Id*. at 317. On the issue of acquired distinctiveness, the court actually reversed a summary judgment against the plaintiff, finding that it had adduced sufficient evidence to show

10

1   acquired distinctive even without a survey.  *Id.* at 311–315.  Third-party copying is

2   "persuasive evidence of secondary meaning because it demonstrates that the mark has

3   become a 'strong source identifier in the eyes of the purchasing public.'"  *Lopez v. Gap,*

4   *Inc.*, 883 F. Supp. 2d 400, 428 (S.D.N.Y. 2012).

5                  *3.    The Jack Daniel's Trade Dress is Not Generic*

6         In support of its claim that the Jack Daniel's Trade Dress is generic, VIP relies on

7   *Kendall-Jackson Winery, Ltd. v. E & J Gallo Winer*y, 150 F.3d 1042 (9th Cir. 1998),

8   *Indonesian Imports, Inc. v. Smith*, 1999 WL 183629 (N.D. Cal. March 30, 1999), *Walker*

9   *& Zanger*, *Big Island Candies v. Cookie Corner*, 269 F. Supp. 2d 1236 (D. Haw. 2003),

10  and *Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911 (C.D. Cal. 2010).  Opp.

11  at 22–24.  These cases are inapposite.  JDPI showed at pp. 21–23 of the JDPI Opposition

12  that *Kendall-Jackson* does not support VIP's genericness claim, and *Walker & Zanger*,

13  *Indonesian Imports*, and *Big Island Candies* all involved product design, which "almost

14  invariably serves purposes other than source identification."  *Wal-Mart*, 529 U.S. at 213.

15        At p. 21 (footnote 5) of the JDPI Opposition, JDPI addressed VIP's claim here that

16  JDPI has made "numerous inconsistent statements regarding the elements of its claimed

17  Jack Daniel's Trade Dress."  Opp. 23:11–13.  VIP's reliance on *Indonesian Imports* on

18  this point is misplaced because there the plaintiff had not articulated "any coherent set of

19  elements that make up the claimed trade dress," 1999 WL 183629 at *6, as its complaint

20  referenced an entire line of handbags and on summary judgment it defined its trade dress

21  as "the individual trade dress features of the six bags, 'together with many other styles of

22  handbags manufactured by [plaintiff]'."  *Id.* at *4.  The Jack Daniel's Trade Dress is

23  described with the required specificity.  *Spar*k, 2014 WL 4365736, at *3–4.

24        VIP also argues that the Jack Daniel's Trade Dress is generic because it

25  "represents a basic form of packaging for American whiskey . . .," Opp. 23:17–18, and

26  that the "combination of features of the alleged Trade Dress is generic because it is

27  commonly used to package distilled spirits."  Opp. 23:25–26.  VIP again focuses

28  myopically on four discrete features, rather than on "the whole collection of features

11

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

taken together," as *Kendall-Jackson* requires.  150 F.3d at 1050.  VIP cites *Mattel* for the proposition that "packaging that is customary or commonplace in a particular industry is generic . . .," Opp. 24:7–8, but the cited portion of the case did not hold that the plaintiff's packaging was generic, but rather that it was unprotectable because it had not acquired distinctiveness.  782 F. Supp. 2d at 1005.  The actual "combination of features of the alleged Trade Dress" includes the stylized JACK DANIEL'S and OLD NO. 7 marks, and is used only by JDPI,[5] and VIP imitated "the whole collection of features taken together" to associate its product specifically with Jack Daniel's whiskey.  Stmt. ¶¶ 14–21, 26, 36–38.  No reasonable trier of fact could find that the Jack Daniel's Trade Dress only serves to identify the whiskey as an American whiskey, not as a Jack Daniel's product.

## II.    REGISTRATION NO. 4,106,178 IS VALID AS A MATTER OF LAW.

VIP has not overcome the presumption afforded by Registration No. 4,106,178 (the "'178 Registration"), *Zobmondo Entertainment, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113–1114 (9th Cir. 2010), that the registered mark is inherently distinctive and non-functional.[6]  VIP argues that it has overcome the presumption of inherent distinctiveness because what it calls the "Bottle Design" is comprised of a square shape, a fluted neck, and an embossed signature, and "the combined features of the Bottle Design, excluding only the 'Jack Daniel' name itself, conveys (sic) to consumers only that the bottle contains liquor, not the source thereof."  Opp. 26:3–5.  But Mr. Howard opined that the bottle shape in the '178 Registration was "very distinctive" and a "classic design" for whiskey, Stmt. ¶¶ 99–104, and it is obviously improper for VIP to "exclude" from the

---

[5]Taken to its illogical conclusion, VIP's position would make it impossible for any of the sellers of American whiskey referenced in VIP's opposition to claim trade dress in its particular packaging adorned with its particular mark and designs because, according to VIP, *all* such packaging is generic, as well as functional.  Stmt. ¶¶ 80–85, 91.

[6]VIP's claim that the mark "has been vulnerable to challenges of functionality and distinctiveness from the start" because the PTO issued an advisory that the application "could be refused on both functionality and non-distinctiveness grounds," Opp. 24, n.3, is a red herring because after examining JDPI's specimen of use, the PTO issued the '178 Registration without raising any such objections.

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

mark the "'Jack Daniel' name itself", which Mr. Howard testified was "branding" consisting of a well-known brand name, Stmt. ¶ 107, because the registered mark specifically includes it.  The registered mark as a whole is "capable of generating a 'mental recognition in buyers' and potential buyers' minds that products connected with" the mark "are associated with Jack Daniel's whiskey alone."  Opp. 26:1–3.

VIP claims that it has proven that the mark shown in the '178 Registration is "as a whole, functional."  15 U.S.C. § 1052(e)(5).  The statutory language "as a whole" "refers to the entirety of the mark itself . . ."  *Valu Eng'g., Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1278 (Fed. Cir. 2002).  VIP relies on Mr. Howard's report, but as shown at pp. 21–30 in JDPI's opening brief, his opinions do not create a genuine dispute of fact regarding the functionality of the "the entirety of the mark itself," including the "Jack Daniel" signature.  Stmt. ¶¶ 106–108.  None of the cases relied on by VIP, Opp. 26–27, support its claim of functionality because none involved a registered composite mark with a word mark element.  *See In re Dietrich*, 91 USPQ2d 1622 (TTAB 2009) (spoke pattern of bicycle wheel); *Georgia-Pacific Consumer Prods. LP v. Kimberly-Clark Corp.*, 647 F.3d 723 (7th Cir. 2011) (lattice designs on toilet paper); *Sportvision, Inc. v. Sportsmedia Technology Corp.*, 2005 WL 1869350 (N.D. Cal. August 4, 2005) (virtual yellow first-down line used in football game broadcasts); *Apple* (design of icons on cell phone); *Valu Eng'g* (conveyor guide rail configurations); *Talking Rain Bev. Co. v. S. Beach Bev. Co.*, 349 F.3d 601 (9th Cir. 2003) (unadorned bottle).  JDPI's registered mark as a whole is non-functional as a matter of law.

## III.   RESPONSES TO CERTAIN EVIDENTIARY OBJECTIONS AND EXPERT DECLARATIONS

JDPI addresses below certain specific evidentiary objections asserted by VIP as required under LRCiv. 7.2(m)(2).  *See Arizona Bd. of Regents v. Seattle Genetics, Inc.*, CV-14-00653-PHX-NVW, 2015 WL 4638231, at *1 (D. Ariz. Aug. 4, 2015).

VIP's objection that VIP's Rule 30(b)(6) testimony should not be considered because Mr. Sacra "is not a legal expert, and lacks foundation to opine on legal

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

1   standards," CSOF ¶ 67, should be overruled.  All of his testimony is a party admission

2   that may be used "for any purpose."  *See* FRE 801(d)(2) and FRCP 32(a)(3).

3       VIP's objection that Mr. Epps lacks personal knowledge of matters before May 1,

4   2015, when he assumed his current position with JDPI's licensee Brown-Forman

5   Corporation (CSOF ¶¶ 46, 50–51, 53, 55, 58–59, 66), should be overruled.  Mr. Epps' 10-

6   year employment by Brown-Forman, his work in other positions related to Jack Daniel's

7   whiskey, and his testimony that, based on his employment and his review of Brown-

8   Forman's business files and records, he has in-depth knowledge of all aspects of the Jack

9   Daniel's business, including the product's history (Epps. Decl. ¶¶ 1–3), establish personal

10  knowledge of earlier matters.  *See* Fed. R. Evid. 602.  VIP's similar objection that Mr.

11  Hungerford lacks personal knowledge of historical matters (CSOF ¶ 47) should be

12  overruled because he too established such personal knowledge.  Hungerford Decl. ¶ 2.

13      VIP's objection that Mr. Wolinsky is not qualified to testify about Jack Daniel's

14  sales (CSOF ¶ 45) and that he is not qualified to offer opinions on legal topics such as

15  trade dress (CSOF ¶ 70), distinctiveness (CSOF ¶¶ 77–78, 81, 85–87), and aesthetic

16  functionality (CSOF ¶¶ 89–90), should be overruled.  As to sales, VIP touts him as "an

17  expert in *the spirits and whiskey industr*y," Opp. 7:3 (emphasis in original), and he claims

18  "specialized knowledge in marketing, sales, organization behavior and profit

19  maximization for distilled spirits in the United States."  VIP Ex. M (Wolinsky Decl. ¶ 5).

20  VIP hired him precisely to give opinions on the distinctiveness and aesthetic functionality

21  of the Jack Daniel's Trade Dress.  Either his entire expert opinion on these subjects

22  should be excluded or JDPI should be permitted to use his deposition testimony on these

23  subjects.

24      VIP's objection that Mr. Howard is not a "legal expert" with respect to a *Disc Golf*

25  factor (CSOF ¶¶ 110–113) and that he is not qualified to opine on the distinctiveness of

26  the registered mark (CSOF ¶¶ 101–104, 107), should be overruled.  VIP hired him to give

27  opinions on those subjects, and he never states that he is not qualified to do so, but

28  instead boasts that he has "almost 30 years of professional experience in designing,

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

testing, and evaluating product packaging, including bottles and other containers," has "been honored with numerous design awards, and [has] served as an expert witness in product and packaging design matters for the last five years." VIP Ex. W (Howard Decl. ¶ 4). Either his entire expert opinion in his report (including "Does the Jack Daniel's Advertising Tout the Utilitarian Advantages of the Design") should be excluded or JDPI should be permitted to use his deposition testimony on those topics.

Mr. Howard improperly supplements his expert report and deposition testimony in his declaration (VIP Ex. W) by introducing a new concept of "per unit costs" (Howard Decl. ¶¶ 6–7, 16) that he never previously mentioned. (CSOF ¶¶ 114, 116, 154,157.) This testimony should be disregarded under the Case Management Order (Doc. 25).

## CONCLUSION

For all of the foregoing reasons, the Court should grant JDPI's motion for partial summary judgment in its entirety.

Dated: January 8, 2016

Respectfully submitted,

 */s/ Isaac S. Crum*

Gregory P. Sitrick (AZ Bar #028756)
Gregory.Sitrick@quarles.com
Isaac S. Crum (AZ Bar #026510)
Isaac.Crum@quarles.com
Quarles & Brady LLP
One Renaissance Square,
Two North Central Avenue
Phoenix, AZ 85004
Telephone (602) 229-5200
Fax (602) 229-5690

SEYFARTH SHAW LLP
Christopher C. Larkin (admitted pro hac vice)
clarkin@seyfarth.com
2029 Century Park East
Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 201-5289
Facsimile: (310) 201-5219
*Attorneys for Jack Daniel's Properties, Inc.*

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

1

## **<u>CERTIFICATE OF SERVICE</u>**

2  I hereby certify that on January 8, 2016, I electronically filed the foregoing with

3 the Clerk of Court using the CM/ECF system, which will send a notification of such

4 filing (NEF) to all counsel of record in this case.

5

6            */s/ Isaac S. Crum*

7             Isaac S. Crum

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

QB\37985827.5