```
 1                   UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF ARIZONA

 3

 4   VIP Products, L.L.C., an Arizona      )
     limited liability company,            )
 5                                         )
                         Plaintiff,        ) No. CV 14-2057-PHX-SMM
 6                                         )
              vs.                          ) Phoenix, Arizona
 7                                         ) October 26, 2016
     Jack Daniel's Properties,             ) 1:58 p.m.
 8   Incorporated, a Delaware              )
     corporation,                          )
 9                                         )
                         Defendant.        )
10   _____)
                                           )
11   And Related Counterclaim.             )
                                           )
12   _____)

13

14

15

16

17               REPORTER'S TRANSCRIPT OF PROCEEDINGS

18            BEFORE THE HONORABLE STEPHEN M. McNAMEE

19                      (Status Conference)

20

21

22   Court Reporter:            Gary Moll
                                401 W. Washington Street, SPC #38
23                              Phoenix, Arizona  85003
                                (602) 322-7263
24
     Proceedings taken by stenographic court reporter
25   Transcript prepared by computer-aided transcription
```

```
 1                      A P P E A R A N C E S

 2

 3   For the Plaintiff and Counterdefendant:

 4                              David G. Bray, Esq.
                                DICKINSON WRIGHT, P.L.L.C.
 5                              Attorneys at Law
                                1850 N. Central Avenue
 6                              Suite 1400
                                Phoenix, Arizona  85004
 7                              (602) 285-5000

 8   For the Defendant and Counterclaimant:

 9                              Douglas P. Harvey, Esq.
                                HARVEY SISKIND, L.L.P.
10                              4 Embarcadero Center
                                39th Floor
11                              San Francisco, California  94111
                                (415) 354-0100
12
                                Gregory P. Sitrick, Esq.
13                              Isaac S. Crum, Esq.
                                QUARLES & BRADY, L.L.P.
14                              One Renaissance Square
                                Two North Central Avenue
15                              Phoenix, Arizona  85004-2391
                                (602) 229-5200
16
     Also present:             David Gooder, Esq.
17                              JACK DANIEL'S PROPERTIES, INC.

18

19

20

21

22

23

24

25
```

CV14-2057-PHX-SMM, VIP Products v. Jack Daniel's, 10/26/16 Status Conference

1            P R O C E E D I N G S

2

3            THE CLERK:  Thank you.  Civil case 14-2057, VIP

4    Products, LLC, versus Jack Daniel's Properties, Incorporated.

5    This is the time set for status conference.  Please announce          13:58:01

6    your presence for the record.

7            MR. BRAY:  David Bray, Dickinson Wright, for plaintiff

8    VIP Products, L.L.C.

9            THE COURT:  Thank you, Mr. Bray.

10           MR. HARVEY:  Peter Harvey, San Francisco, along with          13:58:13

11   my colleague here as well, Isaac Crum, and my colleague --

12           MR. SITRICK:  Greg Sitrick.

13           MR. HARVEY:  -- Greg Sitrick from Quarles & Brady.

14           THE COURT:  Thank you.

15           MR. HARVEY:  And I have my client as well, Dave          13:58:29

16   Gooder, with Jack Daniel's Properties, Incorporated.

17           THE COURT:  Mr. Gooder, you are entitled to sit up

18   here at counsel table if you wish, since you're the client.

19           Okay.  Well, I thought we would get together after the

20   ruling that we made here, find out what we're going to do, and          13:58:57

21   so I'll obviously have some questions, find out what your

22   thoughts are, because the claim 1 of the plaintiff's complaint

23   is still pending and you've asked for declaratory relief, and

24   that's all you've asked for in that case, and you've asked for

25   it under two theories.          13:59:29

1      But your theories are not particularly articulated by

2  statutory citation so it's just these general amorphous things.

3  I'm not sure they're adequate, but we'll get by that, such as

4  the dilution claim.  It's not grounded in the statute, as I

5  understand Count 1.  And please correct me if I'm incorrect.                13:59:48

6      Next thing is -- go ahead.

7      MR. BRAY:  Pardon me?

8      THE COURT:  Go ahead.

9      MR. BRAY:  Oh.  Honestly, as I sit here today, I've

10  not looked at the original complaint --                                    13:59:59

11      THE COURT:  The amended complaint.

12      MR. BRAY:  Or the amended complaint in some time.  I

13  think it's a standard short form declaratory judgment complaint

14  that there's been an allegation or a demand from JDPI that we

15  infringe and dilute their trademarks, and our contention is              14:00:14

16  there's a justiciable controversy over that issue and we don't.

17      THE COURT:  Well, their claim is that -- at least they

18  cited the statute.  And the question then becomes then we have

19  all the counterclaims which are still left.  And part of this

20  is for declaratory relief, which traditionally is a non-jury            14:00:31

21  trial.

22      Plaintiff has asked for a jury trial.  Defendants seem

23  to suggest that there are questions of fact on some of these

24  issues.  But if you look at the straight dilution and

25  tarnishment claim, which is equitable relief, are those just            14:00:51

 1   matters for a non-jury trial in front of the bench?  So I'd

 2   like to get your thoughts on that.

 3           MR. BRAY:  Sure.  From our perspective, plaintiff's

 4   perspective, we'd like the opportunity to brief the issue.

 5   There's not been a motion to strike the jury demand pursuant to      14:01:11

 6   Rule 39 filed by JDPI.

 7           We think, as you indicated, there are fact issues that

 8   would be uniquely in the province of the jury.  I mean, the

 9   key -- one of the key issues in this case is whether there is

10   an average American consumer that's likely to be confused as to      14:01:30

11   the source or affiliation of the Bad Spaniels parody dog toy.

12           THE COURT:  Right.  Let me hear from the defense.

13           MR. HARVEY:  Yes.  Two points, Your Honor.

14           First, the Court is absolutely correct, these are

15   equitable claims.  Now, there's no damage claim in the case and      14:01:58

16   we believe that a bench trial's appropriate.  And indeed, in an

17   order back in October of last year, the Court makes reference

18   to the fact that it is a bench trial, so that's been our

19   anticipation.

20           THE COURT:  Well, that may be, but the trouble is, in      14:02:15

21   doing a little bit of research we find some language in cases

22   talking about some of these issues do suggest that they are

23   fact-intensive questions that should be answered by a jury.  I

24   don't know whether that's the holding in the cases or whether

25   those are dicta.  And there's a series of cases out there that      14:02:31

1    talk in that term, but under traditional equitable relief, it

2    should be a bench trial, even though you've asked for it.

3         Now, there are some things that you've asked for which

4    are fact-intensive issues, so the question I have is:  If there

5    are issues for a bench trial of equitable relief, such as the          14:02:51

6    one on dilution and dilution by tarnishment, if that's an

7    equitable relief, I could carve those out and try those before

8    we actually try the factual questions, because I don't think

9    they're impacted by it.  That's a different issue.

10        So I'd like to know what your thoughts are on that,          14:03:17

11   and I'll give you, each one of you, a chance to brief that,

12   because they did make a demand for a jury trial and at first

13   blush last year we talked about it, and I think the judge that

14   had it before I did talked about it also.  But the questions

15   is:  Is it as a matter of law entitlement to a jury trial if          14:03:38

16   we're seeking basically equitable principles?  Because the

17   court can decide a case as well as a jury can.  Even though

18   there's factual questions, you can present all the evidence and

19   we can decide those facts on an equitable basis.

20        But I don't know if you're entitled to the jury trial.          14:03:54

21   You've asked for it, but I want to be sure -- we're trying to

22   get the right answer, or whether this becomes a split case

23   based on the type of claims.

24        MR. BRAY:  From plaintiff's perspective, I think kind

25   of the worst of all possible worlds would be a split trial.  I          14:04:11

```
 1    think we should have a jury trial or a bench trial.  And I
 2    believe at the initial Rule 26(f) conference with
 3    Judge Campbell, Judge Campbell basically made comments similar
 4    to what you're making now, which is:  I'm going to punt the
 5    issue of whether you're entitled to a jury trial down the        14:04:30
 6    road --
 7              THE COURT:  I wish he would have ruled, so I didn't
 8    have to take the -- catch the punt, but anyway --
 9              MR. BRAY:  And under rule -- and under Rule 39, it's
10    really the -- we've made a jury demand that was timely under     14:04:40
11    the rules.  Its really the -- JDPI's burden to move to strike
12    the jury demand, and then we can brief all the issues in that
13    context.
14              THE COURT:  We may just short-circuit and say that --
15    I'll give you a chance and say there's been an oral motion made   14:04:55
16    here today and you can take -- we'll set out a briefing
17    schedule on that issue.
18              MR. BRAY:  Okay.
19              THE COURT:  Because it is -- it is confusing under the
20    law.  We found cases going both directions, and you'd think in   14:05:06
21    today's environment it would be more consistent, or the law
22    would be more consistent in these areas.  Regretfully, it's
23    not, including some Supreme Court language on some cases that
24    we've found.  One of them's Hana bank.  And they're not exactly
25    the same issues, though.  Hana Financial at 135 Supreme Court    14:05:31
```

1    907.

2          And then there's been some other cases interpreted in

3    these along the way also.  And I wish I had that -- let me see

4    if I can find that.

5          There's a couple of other cases.  One is Ross versus          14:05:51

6    Bernhard, 396 U.S. at 531, 538, and U.S. versus -- or Toll

7    versus U.S., 41 U.S. 412, at 417.  They're not exactly the same

8    type of cases.  They do talk about equitable relief, but we

9    also found some Ninth Circuit cases that seem to suggest that,

10   and if we can -- where did I have that?          14:06:25

11         There's one in here called Fifty-Six Hope that's also

12   a case out there.  I don't have the -- oh, it's not a trademark

13   case, it's a dress infringement case, and they default back to

14   the Sleekcraft boat case, and that's at 778 F.3d 1069.  I think

15   that's what it is.          14:07:08

16         Oh, no, I'm sorry.

17         Yeah, that's the Fifty-Six Hope Road Music case, has

18   to do with Bob Marley's things.  And in that case a Judge

19   Christen has a concurring opinion, but I'm not sure it's the

20   opinion of the case.  So those are just things where they talk          14:07:25

21   about the fact-intensive nature and the jury should talk about

22   it.

23         There was a recent case.  What was that one by

24   Judge Sotomayor?

25         THE LAW CLERK:  That was Hope, the --          14:07:42

UNITED STATES DISTRICT COURT

1      THE COURT:  Okay, the Hope case.  So there's all sorts

2  of language out there.  And I don't want to see this case

3  twice, and neither do you, either one of you.

4      So the point is, let's figure out what is the law, as

5  best we know how, and we'll go from there.  That's the easiest      14:07:54

6  thing to do.

7      MR. HARVEY:  Your Honor, if I could just say --

8      THE COURT:  Absolutely.  Go right ahead.

9      MR. HARVEY:  I think the Court is certainly correct

10  that these cases tend to be fact intensive, and I don't think      14:08:05

11  this is an exception to that, but what the law, I believe,

12  says, is that these issues are left for the finder-of-fact --

13      THE COURT:  Um-hum.

14      MR. HARVEY:  -- for the trier-of-fact, and that can be

15  the Court, and we think appropriately so here.      14:08:17

16      It's been brought to my attention that in a motion to

17  exclude our expert witness, Dr. Simonson, the plaintiff itself

18  said in a bench trial such as this.  So we've been operating on

19  an assumption here, based on the papers in the case, that it is

20  to be a bench trial, but we're happy to brief it.      14:08:36

21      THE COURT:  Well, the only reason -- I tend to agree

22  with that analysis, I tend to agree that it should be.  On the

23  other hand, they did make a demand, and it seems, in doing some

24  research in this area, just some cursory research, the water's

25  a little cloudier than what I thought it would be.  And I don't      14:08:57

1    want to have a bench trial and then they -- and after years and

2    years go by they say, Well, it should have been a jury trial,

3    you crazy judge, you know, what are you doing?  So I just want

4    to be sure we're going in the right direction, that's all.

5             MR. BRAY:  I did some cursory research, too, to                    14:09:13

6    prepare for today's hearing.  That was exactly the conclusion I

7    had was that it's -- it's a little more complicated than I

8    anticipated, so I would like to have the opportunity to brief

9    the issue.

10            THE COURT:  I think both sides should have that               14:09:24

11   opportunity.

12            MR. BRAY:  Thank you.

13            THE COURT:  And I think we should frame it in that

14   we -- in doing some preliminary research with regard to today's

15   hearing, it calls into question the nature of whether the          14:09:34

16   plaintiff is entitled to a jury trial or not, and whether it's

17   the case in its entirety or just on certain claims.  And so

18   that's the way we'll decide.

19            Now, I'll say tongue in cheek here if we have a jury,

20   maybe we should get a jury trial of consumers and/or all             14:09:59

21   bartenders, or something like that, who would know something

22   about what we're speaking about.

23            MR. BRAY:  Bartenders who are pet owners.

24            THE COURT:  Yeah, pet owners.  Anyway, I did bring the

25   exhibits up here in court so you can see, and I want to get          14:10:19

 1   down to something very serious now.

 2           We noted in our opinion when we denied the motions for

 3   summary judgment, we noted the distinction, if this -- the

 4   bottle, you can say, well, it's a rectangular bottle, whatever

 5   it is, and it really gets down to the stuff on the front.  It          14:10:39

 6   really calls into a lot of the question of this case, it seems

 7   to me.  And that's the question of whether -- you know, all the

 8   other things, because there's no doubt that you're -- you have

 9   stated, the plaintiff has stated in their pleadings, that they

10   copied this bottle.  You said under certain liberties under the        14:11:01

11   statute you have the right to do that.

12           And, of course, they're saying:  Well, wait a minute.

13   The way you did it was a bit much.  You went over the top.  You

14   tarnished our name by the reference to the -- not the squeak,

15   but the Jack Daniel's, the Old No. 2, Tennessee Carpet, things        14:11:24

16   like that, referring to the excrement of the dog coming out of

17   this or affiliated with this bottle, and their claim is:

18   That's a bit much.

19           So I don't know if there's any basis for trying to

20   find a resolution to this case in some fashion or not, but I          14:11:43

21   don't know whether -- what the facts are going to show, but

22   clearly, we have more pleadings in this case than the normal

23   case we get around here.  As a matter of fact, we have shelves

24   of it.  And both sides have spent an enormous amount of money

25   on attorneys' fees because it's important to both sides.              14:12:06

1          But before we go headlong into this, because I will

2    tell you, as a senior judge, I've got time on my hands that I

3    can put a trial in here, and rather quickly, if I have to.  So

4    we ought to talk about if -- I'm going to give you your chance

5    to prove -- you know, brief the jury issue.  But if we are        14:12:24

6    looking at a trial, how long do you -- how long do you think

7    it's going to take to put on all that evidence?  Whether it's

8    to a jury or to a court?  And when are you going to be ready to

9    go to trial?

10          MR. BRAY:  I can only speak from VIP Products'             14:12:43

11    perspective, obviously, and I would assume that when we try the

12    case we would try it with JDPI going first as the plaintiff.  I

13    think that probably would make more sense, but we could talk

14    about that, too.

15          THE COURT:  That was one of the issues in the burden       14:12:59

16    of proof, because you're the one that's -- you've asked in

17    large measure Count 1 your injunctive relief.  And you can say,

18    well, the jury's just an advisory on that issue.  I don't know.

19          MR. BRAY:  Okay.

20          THE COURT:  But the question is they are alleging that     14:13:14

21    you've done all these things, and you would have to respond,

22    because it's their counterclaim, they have the burden of proof

23    on a counterclaim, so --

24          MR. BRAY:  Yes.  I was thinking two weeks, six to

25    eight trial days.                                                14:13:31

1          THE COURT:  Okay.

2          MR. BRAY:  I think whether it's a bench trial or jury

3   trial could impact things in terms of how we treat deposition

4   testimony, that sort of thing, obviously.

5          THE COURT:  Okay.                                    14:13:38

6          MR. BRAY:  But, you know, from my client's

7   perspective, we've got one client representative that would

8   testify and two experts.

9          THE COURT:  Okay.  Now, that's another question.

10  Excuse me.  I don't mean to interrupt here.  And you might want  14:13:56

11  to address this.  We've talked about these experts.  But if

12  some of these matters, what happens if I respond to an issue

13  that the experts would not be helpful?  Anybody in the world

14  would be able to decide these questions.  Do I need an expert

15  to tell me all these things, or an expert to tell the jury all  14:14:14

16  these things?

17          I just throw that out in the "what it's worth"

18  category.  I know all cases these days seem to have experts.

19  Is that even necessary?  I don't know that.  But both sides

20  have experts, so, you know, one side's not going to get away   14:14:26

21  with having the other side's stricken.  They'll all be out the

22  door, so -- but I thought I'd raise that, anyway.

23          Yes, sir, Mr. Bray.

24          MR. HARVEY:  So, Your Honor, in terms of --

25          THE COURT:  I'm mean, I'm sorry, Mr. --             14:14:37

1           MR. HARVEY:  Harvey, yes.

2           THE COURT:  -- Harvey.

3           MR. HARVEY:  In terms of time, we've done some mapping

4    what we think the trial could look like properly streamlined,

5    in light of the Court's ruling on the cross-motions for summary          14:14:51

6    judgment.  We really think there -- to answer that question, I

7    think we could do it in five trial days, depending upon how --

8    how long the Court goes during those days and what that looks

9    like.

10          But as far as the issues remaining, we see basically          14:15:09

11   on the trademark infringement claims, of which there are five,

12   only one issue, which is likelihood of confusion.  We think all

13   the other defenses, the judge -- the Court has dealt with at

14   this point, and distinctiveness has been established;

15   nonfunctionality has been established.  So what's left is          14:15:22

16   likelihood of confusion under the eight category or

17   eight-factor Sleekcraft test.

18          On dilution, of which there are four claims, it seems

19   to us there are essentially three issues: fame of the mark.  Is

20   the mark famous?  Two, is the mark -- or the infringing mark          14:15:41

21   close enough to be diluting as well?  And then the third issue

22   is whether there's a likelihood of dilution.  Those are the

23   issues.  It's a pretty straightforward --

24          THE COURT:  What about the tarnishment issue?

25          MR. HARVEY:  Tarnishment fits into the likelihood of          14:15:57

1   dilution, because it's dilution by tarnishment that we are

2   alleging.

3          THE COURT:  Right, that's what I'm saying, if that's a

4   different one where you -- I just phrase it differently.  I'm

5   sorry.  I apologize for that.                                    14:16:08

6          MR. HARVEY:  No, it's fine.  So I think it's pretty

7   straightforward at this point.  As far as the Court's

8   observation regarding experts, it is true that in these cases,

9   trademark cases in particular, experts are -- are typical,

10  especially on the issue of likelihood of confusion.  And we     14:16:23

11  have an expert here -- sadly, deceased -- that has a report

12  that we've stipulated will be submitted that addresses this and

13  finds some 30 percent of the people shown the dog toy believe

14  it's made, or put out by, or sponsored, or associated with Jack

15  Daniel's.  So we have that issue which I think an expert really  14:16:44

16  is essential.

17         On the dilution or slash tarnishment issue, there are

18  two experts, I believe, that -- one for them and one for us --

19  that would need to come in, as the Court notes in its order.  I

20  think beyond that, I don't think there's a lot in terms of      14:17:02

21  experts.

22         THE COURT:  The --

23         MR. BRAY:  And we -- just to clarify, we do have a

24  rebuttal expert, Steve Nowlis, to the likelihood of confusion

25  expert, Dr. Ford, who's passed away.                            14:17:13

CV14-2057-PHX-SMM, VIP Products v. Jack Daniel's, 10/26/16 Status Conference

1      MR. HARVEY:  Now, Your Honor, if it is a jury trial,

2  then I think we're talking probably more days, simply because

3  of the way those go, as the Court knows.

4      THE COURT:  Right.  Okay.

5      MR. BRAY:  I think five days might be a little                    14:17:34

6  optimistic, but we're not that far off if we can -- I think we

7  probably could get it done in six.

8      THE COURT:  Well, I think at least at first blush I

9  would give you eight trial days.  That's my -- that way it's

10  two weeks.  And if it looks like it's going to be a jury trial,  14:17:53

11  it could go into three weeks.  In any event, one of the things

12  if we come back and we decide we are entitled to a jury trial

13  in this case, then we ought to think about whether we're going

14  to prescreen the jury for time.

15      On the other hand -- we do this in a lot of cases if       14:18:09

16  it goes more than three or four days, because when our jury

17  notices go out they're told:  Your trial day will be about

18  approximately three to four days long at most.  That's just one

19  week.  Most people can give that.

20      When it starts going into a second week or a third       14:18:25

21  week, that's when a lot of people say:  Well, I can't do that.

22  And alls they do is prescreen for time, not anything else in

23  the case.  It's a note, send them out and say:  Are you

24  available for a three-week trial?  Yes or no, and that sort of

25  thing.  Or a two-week trial, whatever it is.                       14:18:40

1      And I would ask you to think about that as we move

2  forward in the case.  We've found out that saves a lot of time

3  in voir dire, because then we don't have everybody's hand

4  starting to go up, Well, tomorrow's my mother's birthday and

5  whatever, all the other things.  And I was on a jury not too          14:18:56

6  long ago and I thought it was fascinating, so --

7      MR. BRAY:  I think that's a good idea.  I just had a

8  jury trial in superior court a couple weeks ago and we did

9  spend an hour of jury selection dealing with the time issue.

10      THE COURT:  Right.                                               14:19:06

11      MR. BRAY:  It was a two-week trial.

12      THE COURT:  In today's environment it is very

13  complicated.  Just think of your own schedules.  Say, you know,

14  I'm going to be on a jury for two or three weeks.  You know,

15  good luck.  But there are a lot of people out there if they          14:19:21

16  arrange their time far enough ahead, we can do that.  So that's

17  another thought.

18      So anything from you, Mr. Harvey, on that issue?  He

19  sort of thinks it's a pretty good idea.

20      MR. HARVEY:  No, I wouldn't have anything further on          14:19:35

21  that issue, Your Honor.

22      THE COURT:  Okay.  Just out of curiosity, even though

23  this is equitable relief at this point and these things are

24  being sold worldwide, is this the biggest seller in your line?

25      MR. BRAY:  Oh.  No.  My client is the second largest          14:20:02

CV14-2057-PHX-SMM, VIP Products v. Jack Daniel's, 10/26/16 Status Conference

1   pet toy company in the country.  The largest sellers are

2   Tuffys.  I don't know if you have a pet, but they're --

3           THE COURT:  I do have a pet.

4           MR. BRAY:  Yeah, they're -- they're strong woven nylon

5   toys.                                                         14:20:17

6           THE COURT:  Yeah.  I should come see you because my

7   dog can tear those apart in nothing flat, despite the fact that

8   they're supposed to -- I'm just teasing you, of course.

9           MR. BRAY:  There's about two dozen Silly Squeaker

10  parody products like that, and they are not big sellers as      14:20:28

11  compared to the Tuffys line, but as you'll see --

12          THE COURT:  You know why, don't you?

13          MR. BRAY:  As you'll see in the trial when you meet my

14  client, my client cultivates a reputation of fun and

15  irreverence.  That's the -- kind of the personality for his     14:20:44

16  company at trade shows and in the market that's been very

17  successful for him, so that's why these fun parody products are

18  important.  It's for the image of his company rather than they

19  make a huge amount of money.

20          THE COURT:  Well, the issue is, to be quite candid, by   14:20:59

21  a lot of people I speak to who also suffer from this, the

22  squeaky noise, it's great, and the pets like them.  The owners

23  don't like them so well.

24          So anyway, now, with that --

25          MR. BRAY:  No comment, Your Honor.                       14:21:17

1    THE COURT:  Now, with that being said, in all

2    seriousness, if it's not the biggest product in the line, he

3    likes to be irreverent and everything, isn't there some other

4    way that even though he makes a disclaimer at the Jack Daniel's

5    people over here that, it may be irreverent and things like        14:21:33

6    that, to try and avoid some of their concerns with regard to

7    the -- because I know what's coming in by way of testimony and

8    the things with regard to the label.  And that's -- is there

9    any other way you could be -- reach some sort of an

10   accommodation or agreement to stop -- I don't mean to cut off     14:21:57

11   your fees, everyone, but at some point, you know, is there --

12   and judges ask this all the time:  Is there any way to stop all

13   this building up of expenses?

14       Because, and I'll say why, at some point somebody may

15   want to take this to the court of appeals, and you'll be          14:22:16

16   bouncing around, and I mean no disrespect to the Ninth Circuit,

17   but given their docket of 15,000 cases a year, you can be

18   bouncing around up there for several years, and if there has to

19   be a bond in the case, which we may not have if it's only

20   equitable, but there could be a bond, somebody's gotta pay that   14:22:34

21   and pay the interest and all that for years and years and

22   years.  So I'm trying to suggest some rationality to this case,

23   that's all.

24       MR. BRAY:  I've met David Gooder a couple times.  We

25   had good faith in-person settlement talks towards the beginning   14:22:51

CV14-2057-PHX-SMM, VIP Products v. Jack Daniel's, 10/26/16 Status Conference

1   of the case.  We're always open to discussions.

2        But it's been difficult because, for instance, you

3   know, I think Jack Daniel's has never been clear in terms of

4   whether Bad Spaniels, in and of itself, is infringing of Jack

5   Daniel's.  Just there's just so many different elements to the      14:23:15

6   product that, you know, typically the response I got is, We're

7   litigating this case, and we're not going to talk about

8   hypothetical products going forward.

9        So if there are some small changes we could do to the

10  product, you know, without waiving any argument I have that, of     14:23:31

11  course, we don't think that legally we're required to, sure,

12  we're always open to that.

13       THE COURT:  Well, people admit things -- settle things

14  all the time without admitting liability and whatever, but the

15  point is one of the issues that comes up in these cases, with      14:23:43

16  all due respect to Congress and the statute -- have a seat.

17  Make yourself comfortable there -- they keep changing the

18  landscape on all this, and there's some very strong

19  pronouncements, particularly by former Chief Judge Kozinski,

20  about people who develop these things spend millions and          14:24:04

21  millions and millions of dollars to perfect these things

22  worldwide, and then people, through parody or just outright

23  expropriating them, they take it over to themself, and that's

24  another problem.

25       And my question is:  Is there any way to let your            14:24:19

1    client make whatever it is they're going to make without

2    dragging them into the middle of it?

3           I'm just suggesting that.  I take no position on what

4    the evidence is going to show.  I'm just talking about the

5    possibility of a reasonable resolution.                        14:24:37

6           MR. BRAY:  Sure, I'm always open to talks with --

7           THE COURT:  I found a good way to do that.

8           Why don't you all go down early May this year, go to

9    Churchill Downs and spend a little time down there in a booth

10   and settle this case?  That would be the best way to do it.    14:24:56

11          MR. BRAY:  Well, we were in Louisville for the case,

12   but, unfortunately, we weren't there during the derby time.  So

13   sure, I'd be up for that, too, Your Honor.

14          THE COURT:  And Louisville's a nice place, you know --

15          MR. BRAY:  Yeah.                                         14:25:11

16          THE COURT:  -- just like San Francisco or Phoenix,

17   Arizona, they're all nice places, but...

18          MR. BRAY:  And you know, it's interest- --

19          THE COURT:  Or get yourself a cabin on the Delta Queen

20   and go down the Mississippi and you could discuss the whole     14:25:22

21   thing all the way down there.

22          Anyway, go ahead.

23          MR. BRAY:  Oh, I think McCarthy, in terms of trying to

24   summarize the parody cases --

25          THE COURT:  Yeah.                                        14:25:30

1          MR. BRAY:  -- which are all over the board --

2          THE COURT:  That's right.

3          MR. BRAY:  -- McCarthy says --

4          THE COURT:  Um-hum.

5          MR. BRAY:  -- he can't find a greater principle other          14:25:35

6    than if the court finds the product to be harmless and amusing

7    versus not.

8          THE COURT:  Yeah.  So, I mean -- and that's where you

9    start getting to people parsing out standards, like when

10   Justice Potter Stewart said:  I don't know what the definition          14:25:49

11   of pornography is, but I know it when I see it, and it's been

12   downhill ever since, but the point is:  That's the nature of

13   the law.  And I'm just trying to find a way, if possible --

14         MR. BRAY:  Sure.

15         THE COURT:  -- to open the dialogue, because a          14:26:06

16   two-week trial, everybody can do that.  But the cost of it is

17   quite expensive, and what's going to go on in the aftermath of

18   that at some level will go on for quite a while.

19         So the point is now how much time do you want to

20   explore the -- you want to file simultaneous motions, or did          14:26:24

21   somebody want to go first and the other go one second and have

22   a reply or no reply?  I want to get your best thinking.  I

23   mean, I need some -- some good briefing on this.

24         MR. BRAY:  Do you have a preference, Your Honor?

25         THE COURT:  Makes no difference to me, because it's --          14:26:37

1    if we're going to start out with -- you're the one that asked

2    for a jury trial.  They did not.  They're proceeding on:  We're

3    going to have a bench trial.

4         So I think that since you're the one who's trying to

5    do that and they're the ones that are saying, I don't think we          14:26:51

6    should have it, do you want to go first?

7         MR. BRAY:  Happy to do that, Your Honor.

8         THE COURT:  Okay.  How long do you need?  And there's

9    no rush about this.  We're getting into a dicey time of the

10   year where people are extraordinarily busy and we wouldn't,          14:27:02

11   probably, try this case before the spring, anyway.

12        MR. HARVEY:  I think we'd need a couple of weeks, Your

13   Honor, to get something on file.

14        THE COURT:  Okay.  Let's see here.  Somebody at one

15   point had a --          14:27:22

16        (Pause in proceedings.)

17        THE COURT:  It seems like I have everything but this

18   year.  I can just go over here a little bit.

19        What about November the 18th?  Would that give you

20   sufficient time?  Because next week is the 1st, and that gives          14:27:53

21   you about three weeks, just to take the pressure off.

22        MR. HARVEY:  Only because that week is full of other

23   commitments by --

24        THE COURT:  That's fine.

25        MR. HARVEY:  -- pretty much everybody.          14:28:08

1            THE COURT:  The week --

2            MR. HARVEY:  The following week would be better.

3            THE COURT:  The week after that is Thanksgiving week.

4            MR. HARVEY:  Right.

5            THE COURT:  And then, you know, a lot of people have                    14:28:14

6    guests in town for all sorts of things, or you're traveling,

7    you know, whatever.  I mean, I'd be willing to give you up to,

8    if you wish, December the 2nd, which is a Friday.

9            MR. HARVEY:  That would be great, Your Honor.  Thank

10   you.                                                                            14:28:32

11           THE COURT:  Okay.  And Mr. Bray, how much time would

12   you need to respond, and knowing if it's the -- the whole month

13   of December's always a bad month for everything, but how long

14   do you think you'd need?  Think you could do it by the 22nd?

15           MR. BRAY:  Yeah.                                                        14:28:49

16           THE COURT:  Okay.  Now, what about replies?

17           I'm sorry, the 22nd -- that's wrong, because I've got

18   the wrong calendar here.  The --

19           MR. BRAY:  23rd?

20           THE COURT:  23rd, yes.  And the reason I do things on                   14:29:03

21   a Friday, just so you know, is so when you're running out the

22   door to go home for the weekend or do whatever you're going to

23   do you think:  Is something due in his courtroom?  It's sort of

24   like a -- it's a backup triggering mechanism to check your

25   calendar.                                                                       14:29:24

1          Is that okay?

2          MR. BRAY:  That's fine.

3          THE COURT:  Okay.

4          MR. BRAY:  The 23rd is great.

5          THE COURT:  Now, what about a reply?  Do we need a          14:29:28

6   reply, or not?

7          MR. BRAY:  I think we'd like the opportunity.

8          THE COURT:  All right.  And how much -- you're due on

9   the 23rd.  What are you looking at into January?

10          MR. HARVEY:  We could certainly do -- why don't we say          14:29:43

11   the 4th?  That's a Friday.

12          THE COURT:  No, I think the 6th is a Friday.

13          MR. HARVEY:  All right.

14          THE COURT:  Is that --

15          MR. HARVEY:  My calendar is -- is wrong.  Well, the          14:30:03

16   Friday, then.

17          THE COURT:  Okay.  That's Friday, January 6th.

18          Now, that's right during the Christmas holidays, and

19   are you going to be staffed then or -- you know, some people,

20   again, like --          14:30:10

21          MR. HARVEY:  Another week, then?

22          THE COURT:  Okay.  Let's make it the 13th.

23          MR. HARVEY:  Okay.

24          THE COURT:  Friday the 13th.  What a better day than

25   that?          14:30:19

1          MR. HARVEY:  Right.

2          THE COURT:  The only possible better day than that is

3     the Ides of March, but anyway -- now, I will hold you to the

4     page limitations on the motion, which is the determination of

5     whether we should -- whether you're entitled -- whether the          14:30:34

6     parties are entitled to a jury trial or whether it's a straight

7     bench trial or whether it's a hybrid, somewhere in between.

8          And the reason I say that is because you can find

9     cases that go in a lot of different directions, and I wish

10    there was more clarity.  So with that in mind, let's do that.          14:30:50

11    But watch the page limitations, please.  We just got a pleading

12    that somebody thought -- they wanted an oversize brief and they

13    said a hundred pages would be nice.

14          MR. HARVEY:  Oh.

15          THE COURT:  I said, "I don't think so."  That's like          14:31:11

16    reading War and Peace.

17          Now, what other things should we take up at this

18    juncture?  And also, you might want to suggest, no matter what

19    we do, some trial dates that may be -- and maybe we should set

20    a trial date now, whether we should just pick out three weeks          14:31:36

21    now for trial.  And then if it's going to be a jury trial it's

22    going to be less, we'll scale it back to two weeks; and if it's

23    going to be less than that, we just won't use all the time.

24    But maybe we should just do that and get this show on the road.

25          MR. HARVEY:  Fine with us, Your Honor.          14:31:56

CV14-2057-PHX-SMM, VIP Products v. Jack Daniel's, 10/26/16 Status Conference

1          MR. BRAY:  I have my calendar.  I have my client's

2     calendar.  I don't have my two experts' calendars.

3          THE COURT:  Well, and I appreciate that, but what

4     I usually tell people when they come in when I do a Rule 16,

5     that is, when we set the trial date, the experts better be          14:32:12

6     available, because you paid them a lot of money to be here.

7     And I know they're busy, but they also think that they run the

8     world, and that's not the way it's going to happen.

9          You know, we're limited with our time here, too, and

10    when we set a trial, it's their job to be here, because you          14:32:28

11    paid them all that money, and you're entitled to the bargain of

12    what you paid for them.

13         MR. BRAY:  For what it's worth, take it or leave it,

14    from my perspective, I think it makes sense to pick the trial

15    date once we know what type of trial we're having, whether it's     14:32:39

16    a hybrid, a jury, or a bench, because then we can be a little

17    more solid in terms of the number of days.

18         THE COURT:  What's the difference if I do it and then

19    scale it back?  It's the same time when we start; it's just a

20    question of when we finish.                                          14:32:56

21         No, I understand your -- but I do I understand your

22    point.

23         MR. BRAY:  I gotta keep a whole nother, you know --

24         THE COURT:  Week open?

25         MR. BRAY:  -- week or two open on my calendar.                  14:33:02

1          MR. HARVEY:  I like the Court's idea of setting a date

2     and scaling it back, because that will at least allow us to

3     plan dates with folks around that general period of time.

4          THE COURT:  Well, I don't think we're going to use all

5     three weeks even if it's a jury trial.  So if we use two weeks        14:33:18

6     and maybe spill over, but I don't know, because we have to do a

7     final pretrial conference with jury in- -- if it's going to be

8     a jury trial.  I should explain that difference, too.

9          If it's going to be a jury trial, I will need proposed

10    jury instructions from you in this area and we'll have a final       14:33:35

11    pretrial conference.  And what I usually do then is we do

12    motions in limine if there are any.  Who are your witnesses?

13    What's going to be -- basically, who's appearing by deposition?

14    And what exhibits we have that you're admitted to.  If you're

15    objecting to certain exhibits, you know, what's the basis for        14:33:59

16    your objection?

17         But I think I don't want to try the case on paper one

18    way for a pretrial conference and then we come back and do the

19    same thing over again at trial.  On the other hand, if it turns

20    out to be a non-jury trial, what I ask for is, before we even        14:34:10

21    start trial, is proposed findings of fact and conclusions of

22    law.  And that way it allows me to get the order out a lot

23    faster than if we wait for 30 days, 60 days afterwards.  We get

24    transcripts and we go through it.  You'll know pretty much what

25    the evidence is going to be and I can listen to it.                  14:34:33

1          And I've got the cort reporter right here, and I can

2    go through those in a more expeditious fashion of what the

3    facts are and why I found those particular facts.  Whether the

4    witnesses were credible, non-credible; whether there was

5    support for their testimony; whether they were in conflict with          14:34:51

6    any other testimony; and how to weigh those sort of things, you

7    know.  All those, you know, sort of follow the normal jury

8    instructions that you would have in any case.

9          So but now the question becomes:  When do you think we

10   might -- I'm inclined now, at least, to set a trial date now to          14:35:08

11   get this thing in motion.

12          MR. HARVEY:  Your Honor, from our standpoint, any time

13   after the middle part -- you were mentioning the Ides of March.

14   Any time after the Ides of March and through into April is

15   fine.  April's wide open right now for pretty much everybody          14:35:31

16   here.

17          MR. BRAY:  I don't have three weeks in

18   January-February-March.  April 10th I turn 50.  I don't have a

19   specific trip planned yet but I've got two weeks blocked off on

20   my calendar, so I'd ask for May, just to avoid my 50th          14:35:44

21   birthday.

22          THE COURT:  You don't want to celebrate it in here

23   with the rest of us?

24          MR. BRAY:  No, I do not want to celebrate it --

25          THE COURT:  I think that's very --          14:35:51

CV14-2057-PHX-SMM, VIP Products v. Jack Daniel's, 10/26/16 Status Conference

1    MR. BRAY:  -- with Bad Spaniels and Jack Daniel's.

2    THE COURT:  Okay.  What is your suggestion?  If he's

3  busy --

4    MR. BRAY:  He indicated April.  I would say May.

5  Second half of May, preferably.                    14:36:10

6    MR. HARVEY:  And our only concern on May is that's

7  when the International Trademark Association annual meetings

8  are, and that's going to be --

9    THE COURT:  And that's important to your client.  I

10  understand.  It's like vacations and birthdays and other    14:36:20

11  things, you know, we can't accommodate everything.  I mean, I

12  could probably try this in December if I wanted to but I'm sure

13  your calendars wouldn't allow for that.  But the point is, what

14  is --

15    Give me a date, Ms. Richter, if you would, in May of   14:36:37

16  those approximate times, if possible.

17    Maybe we can start on Cinco de Mayo.

18    That fell on deaf ears, too.

19    MR. HARVEY:  Your Honor, we're just checking on when

20  the INTA meeting is.                               14:37:06

21    THE COURT:  Oh, okay.  That's all right.

22    MR. HARVEY:  It doesn't start until May 20th.  So if

23  we had a trial in very late April-early May, that would be

24  fine.

25    THE COURT:  And when are you blocked out for your    14:37:17

 1    50th?

 2              MR. BRAY:  The 10th through the 24th.

 3              THE COURT:  What do we have down there, folks?

 4              (Off-the-record discussion between the Court and the

 5    clerk.)                                                          14:37:44

 6              THE COURT:  Okay.  All right.  Here's what we're going

 7    to do.  I think it would just take the better part of a morning

 8    to pick a jury.  I'm inclined, and I've done this before, where

 9    we pick the jury on the Friday before we start.  Then that way,

10    we can start bright and early Monday morning with testimony and  14:38:12

11    opening statements.  And that way, if something happens over

12    the weekend, I'm not in favor of settling on the courthouse

13    steps, but if it does, that's fine.  But if it's a non-jury

14    trial, it won't make any difference.

15              So I'm inclined to set in the alternative.  If it      14:38:29

16    turns out it's going to be a jury trial -- and we'll know that

17    ahead of time -- we'll pick the jury on April the 28th and

18    we'll start the testimony and opening statements on May 1st.

19    If it is a bench trial, we'll just start it Monday, May 1st.

20              MR. HARVEY:  Thank you, Your Honor.                    14:38:55

21              THE COURT:  And that will help everyone out.

22              Now, what other things do you want to talk about?

23              Oh.  If you have exhibits to display either to myself

24    or to the jury, we have all this smart stuff up here in the

25    front.  And if you ask me what it is, I couldn't tell you, but   14:39:09

1    talk to our MIS staff through Ms. Richter and she will make it

2    available to you.  We have people come in and talk to you about

3    how our system operates in conjunction with your systems, and

4    things like that.

5            The other thing is if we -- as you know, we use          14:39:27

6    realtime reporters in trial.  We have one here today who

7    happens to be just one of the best in the country, but he's not

8    always with us.  We have other people who are very good also.

9    Sometimes people want daily transcripts.  We need to know that

10   way in advance, because having court reporters do any kind of   14:39:45

11   daily transcript is extraordinarily difficult, because we have

12   to keep changing court reporters every so often, and then they

13   have to work at night to get their transcripts out and get

14   started again.  And the next day they're transcribing, I mean,

15   they're recording.  So please let us know that if that's going  14:40:11

16   to happen.

17           MR. HARVEY:  May we ask Your Honor how you like to run

18   your days, your court?

19           THE COURT:  With an iron fist.  No, I'm just teasing

20   you.                                                            14:40:23

21           MR. HARVEY:  We assumed that.

22           THE COURT:  No, we don't do that.  We usually start

23   about 9:00 in the morning and we go till about 4:30 in the

24   afternoon, with a break in the morning and a break in the

25   afternoon so everybody can relax themselves, and then we take   14:40:32

CV14-2057-PHX-SMM, VIP Products v. Jack Daniel's, 10/26/16 Status Conference

1    about an hour for lunch.  There just aren't that many places to

2    go in close proximity to the courthouse.

3          And I usually try and go sometime around the 12:30

4    time frame for that, because that allows the early crowd and

5    the 12 o'clock crowd to get in and out of those that are close      14:40:49

6    to us.

7          I don't take a lot of interruptions during the course

8    of the trial, whether it's a bench trial or a jury trial, so we

9    should know a lot of these things and have a lot of these

10   things resolved so we can keep pace and keep things moving          14:41:03

11   along.

12         Things come up during the trial.  I understand that.

13   You know, I usually like it that if one witness gets on,

14   another -- gets off the witness stand, another one gets on

15   right away.                                                         14:41:16

16         Now, with that in mind, I know that sometimes we end

17   at 3:30 in the afternoon and somebody says, Well, you know, my

18   witness is going to be kind of a long one.  Can we have some

19   continuity here?  I just -- I relax and give people some

20   courtesy during those times.  But by and large, I like to keep      14:41:28

21   things moving and keep the pace of the trial going.

22         MR. HARVEY:  Excuse me.  Is it a five-day week?

23         THE COURT:  Yes, we'll do a -- yes, we'll do five-day

24   weeks because we want to keep the trial going to make sure we

25   utilize it.  Normally, we take Mondays off for law and motion      14:41:47

 1   day.  But if we pick the jury ahead of time, we can then get

 2   started and just keep it moving.  And so if for some reason

 3   somebody has an upset stomach or they don't feel well or

 4   they -- or something else happens to them or whatever, we need

 5   to keep going.                                                    14:42:10

 6        Now, here's another thing you should keep in mind.

 7   There are no alternates in a civil trial.  By rule, it's one

 8   jury.  In criminal trials we have alternates, but we cannot get

 9   down to less jurors than six if it's a jury trial.  So the

10   question is:  How many do you want?  And there are no           14:42:28

11   alternates.  They all deliberate, and it's between six and 12.

12        And you ought to think about that, because every now

13   and then we do draw jurors from some of our rural areas that

14   are part of our Phoenix jury pool.  Like some of the people may

15   come from Pinal County or Yuma County or something like that.    14:42:45

16   So if we have a problem and they can't get back and they have

17   to excuse them, we still have enough jurors to go by through

18   the end of the trial time with six -- at least six jurors.

19   Usually, we end up with eight or nine.  That's what we normally

20   get.  That's what most people want.  So you can talk to          14:43:02

21   yourselves about that and figure it out.

22        MR. BRAY:  Your Honor, I apologize.  I said that I had

23   my client's calendar with me but I didn't check it before going

24   on about May dates.  He's actually out of the country from May

25   7th to May 17th.                                                 14:43:18

 1          THE COURT:  And who is he, an expert?

 2          MR. BRAY:  No, no.  This is my client, Steve Sacra, of

 3   VIP Products, who will be our only non-expert witness.  He's

 4   the owner-president-founder of --

 5          THE COURT:  Where's he going to be?                    14:43:31

 6          MR. BRAY:  What's that?

 7          THE COURT:  Where's he going to be?

 8          MR. BRAY:  I believe he's in -- it doesn't say on

 9   here, but knowing his schedule, I think it's a European trade

10   show.                                                         14:43:39

11          THE COURT:  Well, it may be, and I've given the other

12   side consideration for the trade show, but on the other hand,

13   your client's the one that brought this lawsuit.  He may be

14   inconvenienced over some of these things.

15          MR. BRAY:  Well, if we can't move it to -- back a few  14:43:51

16   weeks to June, I'll give up my vacation, because this was -- my

17   client gave me his schedule.  I said I would make sure the

18   Court works around it.  You know, there's only one week a

19   month, pretty much, that he's unavailable, and June is

20   completely open, so --                                        14:44:08

21          THE COURT:  What is your schedule if I need to do it

22   in June?  Do I have any time in June?

23          (Off-the-record discussion between the clerk and the

24   Court.)

25          THE COURT:  Okay.  I can do this in June.  I can do    14:44:40

CV14-2057-PHX-SMM, VIP Products v. Jack Daniel's, 10/26/16 Status Conference

```
 1   this in June.  So if that would be the case, then we would pick

 2   the jury on June the 2nd if it's a jury trial.  If it's not, we

 3   would start trial on the 5th if it's a non-jury case and we

 4   would allow up to the 23rd, depending.

 5           But clearly, I anticipate it's going to take less time      14:45:06

 6   than that if it's a non-jury trial.  And we'll know that more

 7   as we approach the case.  I'm not -- you know, you'll know more

 8   about how to schedule some of these things.

 9           MR. BRAY:  Okay.  I appreciate it, Your Honor.

10           THE COURT:  Yeah.  Does that meet with your calendar,       14:45:20

11   too?  Or is that a problem?

12           MR. HARVEY:  Your Honor, I started to say it's my 46th

13   anniversary on June 5th, but I'm not going to say that.  I'm

14   just going to go with it.

15           I guess I would like to reexamine --                       14:45:34

16           THE COURT:  Bring your wife over here and we'll

17   celebrate with you.

18           MR. HARVEY:  Is she talking to you?

19           THE COURT:  Let me get my earpiece here and see...

20           MR. HARVEY:  Can I just ask if we could go back and         14:45:45

21   reexamine April and what was wrong with April?  I'm just trying

22   to realize --

23           THE COURT:  Okay.  I think part of it was your

24   problems, wasn't it?

25           MR. BRAY:  Sure.  I'm planning to be on a cruise in         14:45:54
```

CV14-2057-PHX-SMM, VIP Products v. Jack Daniel's, 10/26/16 Status Conference

1    Polynesia from April 10th to --

2            THE COURT:  Usually, those are pre-bought tickets,

3    right?

4            MR. BRAY:  Pardon me?

5            THE COURT:  Those are usually pre-bought tickets.        14:46:02

6            MR. BRAY:  Yes.  We're in the process of finalizing

7    dates and making plans.

8            THE COURT:  Well, I mean, I understand that.  You

9    don't want to get caught in typhoon season down there,

10   especially on a ship.  I still think May in Kentucky's the   14:46:13

11   best, but anyway, go ahead.

12           (Off-the-record discussion between defense counsel.)

13           MR. HARVEY:  So June 2nd, pick the jury if we have

14   one, and June 5th start.

15           THE COURT:  Right.  And then maybe in -- in the       14:46:38

16   meantime, maybe there can be a resolution.  And I'm not wed to

17   how you do that; that's up to you.  If you can have a civil

18   conversation, fine.  If you can't, if you want a mediator, go

19   hire one.  That's your business.  Or if you want to use a

20   magistrate judge, that's fine, we'll give you one of those for  14:46:55

21   free.  But we won't grant any more continuances.  Let's get

22   this case on, get it over with.

23           And if it's a non-jury trial, you know, we could do --

24   and you'll find this somewhat amusing -- we could go down to

25   Yuma and try it in our new courthouse down there.  It's a      14:47:18

1    beautiful facility.  It's actually cooler in Yuma than it is up

2    here with all of our asphalt.  But we won't do that.  We'll

3    stay up here.  Just wanted to see the expression on your face

4    when I said that.

5            MR. BRAY:  Can I vote for Flagstaff?                    14:47:36

6            MR. HARVEY:  I'm open to Yuma, Your Honor.

7            I do have one suggestion, though, that occurs to me.

8    We've been planning this long three-week period.  If we find

9    that it is a non-jury trial and it can be done in a week or a

10   week and a half --                                             14:47:52

11           THE COURT:  Then we'll cut it back.

12           MR. HARVEY:  -- can we maybe reexamine the start date,

13   since --

14           THE COURT:  Yes.

15           MR. HARVEY:  -- there will be more windows at that      14:47:59

16   point?

17           THE COURT:  Yes, we could.  I anticipated that we

18   would have to have another either final pretrial conference

19   and/or status conference before the trial to resolve some of

20   these other maybe outstanding issues, and we'll look at it by   14:48:11

21   then, because by then I will have made my ruling as to whether

22   you're entitled to it or not.

23           Now, here's another thing.  If it looks like the

24   landscape is really cloudy and I make a ruling one way or the

25   other, which I have to do, then one of you says:  Wait a        14:48:34

1    minute.  I don't want to really go to all this expense and try

2    it this way, and if the judge is wrong, you know, we should not

3    have had a jury, or we should have had a jury, and you want to

4    try and take an interlocutory appeal, that could gum up the

5    works, too.  That's why I want to get it right, because I don't     14:48:55

6    want to keep pushing this off and off and off and off.

7            But those are some of the unknowns that are out there

8    that create problems in cases that just come up.  And I don't

9    know if even -- even if I grant the 54(b) language, whether the

10   Ninth Circuit would accept that or not, I don't know.              14:49:18

11           I'm not trying to make matters worse, by the way, but

12   stranger things have -- I mean, we've been here in the morning

13   almost picking a jury when somebody walks in and said:  My

14   client just filed bankruptcy, by the way.  It's all gone, and

15   it just -- you know, it just happens.  That's the way the law      14:49:38

16   is.

17           MR. HARVEY:  May I ask if --

18           THE COURT:  I'm not anticipating either one of your

19   clients saying that, by the way.

20           MR. HARVEY:  May I ask --                                   14:49:48

21           THE COURT:  Yes.

22           MR. HARVEY:  -- Your Honor, have we revolved the

23   question of precedence that we would go first, having the

24   burden of proof?

25           THE COURT:  I don't know if we have, but I think          14:49:56

1    that's probably more likely, because you're really -- they did

2    not prevail on summary judgment, but clearly they're saying

3    that their product does not do any of these things in violation

4    of federal law.  And clearly the burden is you've got to

5    establish that you've got the marks and all the other things          14:50:15

6    under federal law.

7          And by the way, the product that they have up here

8    does in fact do all these things to diminish our product,

9    tarnish it, diminish it, dilute it, whatever you want to say.

10   And they're going to say, Well, it's really an affirmative         14:50:34

11   defense.  Well, we don't.  How dare you.  And I think it makes

12   more sense to me.

13         Do you agree with that, Mr. Bray?

14         MR. BRAY:  Yes, that's -- I tend to agree with that.

15         THE COURT:  Well, if you tend not to, will you let me         14:50:47

16   know?

17         MR. BRAY:  I will.  I think it -- if there's a jury,

18   it just might be confusing to --

19         THE COURT:  Right.

20         MR. BRAY:  -- to litigate it the other way.                   14:50:57

21         THE COURT:  You know, that -- in all jury trials where

22   you have claims and counterclaims, it is confusing for the jury

23   to kind of grasp the concept of who's doing what, because the

24   instructions are sort of neutral.  The party having the burden

25   of proof on any claim or counterclaim must go forward with the      14:51:16

1    evidence and must prove it by a preponderance of the evidence,

2    which means blah, blah, blah, and it does get confusing

3    sometimes to them.

4          And we've actually sometimes moved people in the

5    courtroom based on claims and counterclaims, because it's not        14:51:32

6    the traditional theme that we would have.  But this is your

7    case, and we want it to be the best that you all can put out

8    there.

9          MR. BRAY:  That's something we can make a final

10   decision on at the next status conference.                          14:51:49

11         THE COURT:  Absolutely.

12         I'm getting a note here.

13         THE CLERK:  (Handing).

14         (Pause in proceedings.)

15         THE COURT:  Why don't we wait till the -- I'd like to         14:51:56

16   get the briefing first before we set a final pretrial

17   conference.  And if I set the final pretrial conference and I

18   forget, or my clerk forgets -- but she never does -- to find

19   out when it is you're all on vacations or something like that

20   and it has to be moved, please let us know.  We're happy to do      14:52:15

21   that.

22         MR. BRAY:  Thank you.

23         THE COURT:  There's always a Saturday or Sunday or

24   late night that we can do these things.

25         MR. BRAY:  In Yuma.                                            14:52:24

CV14-2057-PHX-SMM, VIP Products v. Jack Daniel's, 10/26/16 Status Conference

1    THE COURT:  In Yuma.  Actually, it is a beautiful --

2    if you've never been there, it's a beautiful courthouse.  It's

3    a small one for a magistrate judge but it is gorgeous.  And you

4    can see the -- there's actually a well-known bird sanctuary

5    right along the river down there that's world famous, if you          14:52:38

6    like -- if anyone's into bird watching.

7    And we also have Yuma Territorial Prison which

8    absolutely is fascinating to go over there and take the docent

9    tour through -- it only takes about an hour, an hour and a

10   half, but they have a lot of pictures and information and all          14:52:52

11   sorts of things, but it's, you know, living history, so to

12   speak.

13   Which reminds me, if you're into history and you're

14   here and you don't know what to do with yourself some

15   afternoon, go over to the police museum over there and look at          14:53:07

16   the 50th anniversary displays with regard to the Miranda

17   decision.

18   And actually, if you're lucky, you can catch the

19   actual officer who arrested Mr. Miranda and made the case and

20   put the whole thing together based on good what I call gumshoe          14:53:19

21   techniques.  His name's Carroll Cooley.  He's well into his

22   eighties now.  I heard him make a presentation not long ago.

23   He remembers every detail of an enormously long investigation,

24   and the advice that they gave him, which was legal at the time.

25   It was then changed after the conviction.  Then they came back          14:53:39

CV14-2057-PHX-SMM, VIP Products v. Jack Daniel's, 10/26/16 Status Conference

1    and it was another -- it was a conviction, and then the

2    aftermath of Mr. Miranda's life and things like that.  But it's

3    fascinating.

4         They also have an audiotape over there that you can

5    use.  And it's just about two blocks down the street.  But, you      14:53:55

6    know, if you get late for a plane some day and you don't know

7    what to do or you're here trying the case, you're looking for

8    something to do, it's a fun thing to go to here.  And it is

9    living history, and that's -- we're all here.  We're all

10   familiar with those things in this area.                            14:54:07

11        MR. BRAY:  I've been living here for 25 years; I did

12   not know that was there.

13        THE COURT:  Really.  Well, they just moved it.  It was

14   bay -- the museum was way down the street on Washington.  It

15   was in a terrible location.  Then they moved it into the old       14:54:18

16   courthouse, the original Maricopa County Courthouse, on the

17   bottom floor down there.  And it's -- it's well worth the, you

18   know, 15 or 20 minutes to go see it.

19        Okay.  Then I think we're set.  We've got dates in

20   place.  Unless there's anything else, we'll recess for the         14:54:38

21   afternoon.  If there's anything I can do to help you out,

22   please let me know, but I think it's -- the time has come to

23   try the case if we can't find a solution to it.

24        MR. BRAY:  Thank you, Your Honor.

25        MR. HARVEY:  Thank you, Your Honor.                           14:54:51

UNITED STATES DISTRICT COURT

1          THE COURT:  Thank you all very much.  I appreciate
2   your time and effort.
3          Now, Mr. Gooder, where are you residing?  Are you here
4   or are you somewhere else?
5          MR. GOODER:  No, I'm in Centerfield, California.          14:55:01
6          THE COURT:  Oh, really.
7          MR. GOODER:  Yeah.
8          THE COURT:  You're not in the Bluegrass State, is
9   that --
10         MR. GOODER:  No, I did my tour of duty there and --     14:55:09
11  no, I grew up in Tucson, but --
12         THE COURT:  Did you really?  Interesting.  Okay.
13         MR. GOODER:  Yep.
14         THE COURT:  Well, we can go down there and try the
15  case, just so you can, you know, get a hometown feel, if you   14:55:18
16  want.
17         All right.  Well, I appreciate it.  Thank you all very
18  much.  Travel safely to wherever your journeys take you.  We'll
19  stand at recess.  Thank you so much.
20         (Proceedings concluded at 2:55 p.m.)
21
22
23
24
25

1

2                          C E R T I F I C A T E

3

4

5

6

7        I, GARY MOLL, do hereby certify that I am duly appointed

8   and qualified to act as Official Court Reporter for the United

9   States District Court for the District of Arizona.

10       I FURTHER CERTIFY that the foregoing pages constitute a

11  full, true, and accurate transcript of all of that portion of

12  the proceedings contained herein, had in the above-entitled

13  cause on the date specified therein, and that said transcript

14  was prepared under my direction and control.

15

16

17       DATED at Phoenix, Arizona, this 2nd day of November, 2016.

18

19

20                              s/Gary Moll
                          _____

21

22

23

24

25