QUARLES & BRADY LLP
Gregory P. Sitrick
Isaac S. Crum
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004-2391
Telephone: (602) 229-5317
Facsimile: (602) 420-5198
E-mail: Gregory.Sitrick@quarles.com
         Isaac.Crum@quarles.com

HARVEY & COMPANY
D. Peter Harvey (admitted *pro hac vice*)
Four Embarcadero Center, 14th Floor
San Francisco, CA  94111
Telephone:   (415) 926-7776
Facsimile:    (415) 402-0058
E-mail:  pharvey@harvey.law

Attorneys for Defendant and Counterclaimant
Jack Daniel's Properties, Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| VIP Products, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Jack Daniel's Properties, Inc., a Delaware corporation,<br><br>Defendant.<br><br>And Related Counterclaims | Case No. CV-14-2057-PHX-SMM<br><br>**DEFENDANT'S MOTION *IN LIMINE* NO. 5 TO LIMIT TESTIMONY OF BRUCE G. SILVERMAN** |

1  Defendant and Counterclaimant Jack Daniel's Properties, Inc. ("Jack Daniel's")
2  hereby moves under Federal Rule of Evidence 703 to preclude rebuttal expert Bruce G.
3  Silverman from testifying about consumer research he supervised on May 21, 2015.

### FACTUAL BACKGROUND

On May 21, 2015, Mr. Silverman supervised four "focus groups" in Los Angeles. *See* Declaration of D. Peter Harvey in Support of Defendant's Motions *in Limine* ("Harvey Decl.") Exh. M [Silverman Report] ¶ 26. The nineteen participants—four to five per group—were relatively young, affluent, articulate, and educated. Harvey Decl. Exh. N [Silverman Dep. Tr.] at 116:10-16, 118:27-11, 122:17-123:5, 126:21-127:2. Most were white. *Id.* at 116:2-9. Many drank Jack Daniel's. Silverman Report ¶ 34-37. Many owned dogs. *Id.* at ¶ 34-37. All lived around Los Angeles. Silverman Dep. Tr. at 104:19-105:13. Each focus group had a moderator who was paid by VIP. Silverman Report ¶ 33, Silverman Dep. Tr. at 64:7-11, 92:7-18. He "set the stage" by introducing the idea of "spoof products," including Bad Spaniels. Silverman Report ¶¶ 38-39, Silverman Dep. Tr. at 136:2-138:3, 156:22-157:11. Based on the ensuing discussions— which were concededly not quantitative (Silverman Dep. Tr. at 84:6-12, 89:23-90:6)— Mr. Silverman opines that Bad Spaniels does not cause consumers to associate Jack Daniel's with defecation, and Jack Daniel's will not be harmed by any such association. Silverman Report ¶¶ 20-21.

### ARGUMENT

Consumer research is only admissible if the research was "conducted in accordance with generally accepted survey principles" and the results are "used in a statistically correct way." Shari Seidman Diamond, "Reference Guide on Survey Research" *in* Reference Manual on Scientific Evidence, Third Ed. at 364 (FJC 2011), *available at* https://www.fjc.gov/sites/default/files/2015/SciMan3D01.pdf (hereinafter "*FJC Manual*"); *accord M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1087 (9th Cir. 2005) (affirming exclusion). Mr. Silverman's research falls far short of these standards. Indeed, it is fatally flawed, as discussed below. Characterizing it as a series of

-1-

"focus groups" makes no difference, since the same standards apply. *See* Fed. R. Evid. 703*; Scotts Co. v. United Industries Corp*, 315 F.3d 264, 277-78 (4th Cir. 2002) (excluding focus groups as flawed survey research on motion for preliminary injunction).

***The population was not identified, the sample was not representative, and the results are not projectable.*** Properly conducted consumer research allows the researcher to draw inferences about many individuals (a "population" or "universe") by gathering information from relatively few (a "sample"). *See FJC Manual* at 223-25, 292, 296, 364; J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:159 (2017) (hereinafter "*McCarthy*"). This purpose may only be served if the proponent (1) identifies a population that is relevant to the case, and (2) surveys a representative sample of that population. *FJC Manual* at 366-67, 377-78. Mr. Silverman did neither. *See* Silverman Dep. Tr. at 105:12-14, 111:15-112:14, 128:10-15. Whatever his results may reveal about primarily young, white, affluent yuppies around Los Angeles, they have no bearing on this case. *See FJC Manual* at 377 ("A survey . . . about a wholly irrelevant population is itself irrelevant."); *accord* Silverman Dep. Tr. at 96:8-9, 105:8-12 ("If the group doesn't represent the target market, it's a useless group."). Tellingly, as Mr. Silverman himself admits, his results are "not projectable." Silverman Dep. Tr. at 91:1-4, 104:13-15.

***The interviewer was biased.*** Litigation consumer research should be "double blind." In other words, both the interviewer and participants should be "blind to the sponsor of the survey and its purpose." *FJC Manual* at 411. Although Mr. Silverman agrees that it's "very important" for an interviewer or moderator to be "neutral" (Silverman Dep. Tr. at 39:12-14), his own was not. He knew exactly who was cutting his checks. *See* Harvey Decl. Exh. N at 64:7-11, 92:7-18. One participant even asked if he was working for VIP. *Id.* at 163:23-164:15. Perhaps that fact was a little too obvious.

***The participants were conditioned, and the questions were leading.*** As Mr. Silverman recognizes, context given at the start of the research can shape answers that follow. Silverman Dep. Tr. at 162:21-163:17; *FJC Manual* at 419 (defining "context effects"); *see, e.g., R.J. Reynolds Tobacco Co. v. Loew's Theatres, Inc.,* 511 F. Supp. 867,

-2-

875 (S.D.N.Y. 1980), *E. & J. Gallo Winery v. Pasatiempos Gallo, S.A.*, 905 F. Supp. 1403, 1409-10 (E.D. Cal. 1994). Such occurred here. The moderator introduced participants to "spoof" products in an apparent effort to normalize Bad Spaniels. Silverman Dep. Tr. at 136:2-138:3, 156:22-157:11. It worked. *See, e.g.*, Silverman Dep. Tr. at 159:7-160:18. He also asked many improper leading questions to similar effect. *See FJC Manual* at 394-95; *McCarthy* § 32:172; *e.g.*, Silverman Dep. Tr. at 164:1-12, 201:10-16, 205:10-17, 209:9-20, 212:14-213:11, 221:22-222:10.

*The format promoted "groupthink" and did not approximate the marketplace.* As Mr. Silverman likewise recognizes, it is inherently problematic to assess individual perceptions in a group context. *See Scotts Co. v. United Industries Corp*, 315 F.3d 264, 277 (4th Cir. 2002); Silverman Dep. Tr. at 91:5-10. For example, a participant who initially considered one response "might well change his opinion . . . after considering the views expressed by the other[s]." *Scotts Co.,* 315 F.3d at 277. In this way, the bias of a single moderator or participant may be compounded by an entire group—and was in this case. Moreover, the survey in this case did not approximate marketplace conditions, as is required. *See McCarthy* § 32:163; Silverman Dep. Tr. at 76:23-77:3.

*There was no control.* "As courts have become more sophisticated in evaluating trademark consumer research results, judges have come to expect that a proper survey will have a control." *McCarthy* § 32:187; *accord FJC Manual* at 397-98. "The use of a 'control' serves much the same purpose in surveying as use of a placebo does in drug testing." *McCarthy* § 32:187 (internal quotation omitted). "The absence of a control is . . . often recognized as a fatal weakness." *McCarthy* § 32:187 (internal quotation omitted). Mr. Silverman did not use a control.

## CONCLUSION

Accordingly, Mr. Silverman should be precluded from testifying about the consumer research he supervised on May 21, 2015 in Los Angeles.

//
//

-3-

| | | |
|---|---|---|
| 1 | Dated: July 14, 2017 | Respectfully submitted, |
| 2 | | */s/ D. Peter Harvey* |
| 3 | | Gregory P. Sitrick (AZ Bar #028756) |
| 4 | | Gregory.Sitrick@quarles.com |
| | | Isaac S. Crum (AZ Bar #026510) |
| 5 | | Isaac.Crum@quarles.com |
| | | Quarles & Brady LLP |
| 6 | | One Renaissance Square, |
| 7 | | Two North Central Avenue |
| | | Phoenix, AZ 85004 |
| 8 | | Telephone (602) 229-5200 |
| 9 | | Fax (602) 229-5690 |
| 10 | | D. Peter Harvey (admitted *pro hac vice*) |
| | | pharvey@harvey.law |
| 11 | | Harvey & Company |
| 12 | | Four Embarcadero Center, 14th Floor |
| | | San Francisco, CA  94111 |
| 13 | | Telephone:   (415) 926-7776 |
| | | Facsimile:   (415) 402-0058 |
| 14 | | |
| 15 | | *Attorneys for Defendant and Counterclaimant* |
| 16 | | *Jack Daniel's Properties, Inc.* |

-4-

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2017 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record in this case.

*/s/ Isaac S. Crum*