**DECLARATION OF D. PETER HARVEY IN SUPPORT
OF DEFENDANT'S MOTIONS IN LIMINE
NOS. 1 THROUGH 6**

**EXHIBIT L**

1                UNITED STATES DISTRICT COURT
2                    DISTRICT OF ARIZONA
3
4    VIP PRODUCTS, LLC, an        )
     Arizona limited liability   )
5    company,                     )
                                  )
6         Plaintiff and          )
             Counterdefendant,   )
7                                 )
     vs.                          )No. 14-CV-02057-PHX-SMM
8                                 )
     JACK DANIEL'S PROPERTIES,   )
9    INC., a Delaware             )
     corporation,                 )
10                                )
             Defendant and       )
11           Counterclaimant.    )
12
13
14
15
16
17            DEPOSITION OF STEPHEN NOWLIS
18        TAKEN ON BEHALF OF THE DEFENDANT AND
19    COUNTERCLAIMANT JACK DANIEL'S PROPERTIES, INC.
20                 AUGUST 25, 2015
21
22
23
24    PAGES: 1-235
25

                                          Page 1

1                          Do you see that?

2          A      Yes.

3          Q      Do you recall that one of your

4    critiques of Dr. McDonald's was using an

5    inappropriate control stimulus?

6          A      I don't recall that but sitting here

7    now I see that I wrote this sentence, and I, I

8    wrote it and I stand by it.

9          Q      Okay.  In the next sentence of

10   paragraph 3 you wrote, "I also asked widely

11   accepted questions for testing confusion, which

12   were derived from the Ever-Ready" -- that's spelled

13   E-v-e-r hyphen R-e-a-d-y -- "survey, and used a

14   proper control."

15                         Do you see that?

16         A      Yes.

17         Q      What is the Ever-Ready survey

18   protocol?

19         A      It's a protocol where a respondent

20   sees one particular product and is asked a series

21   of questions about source, affiliation and

22   sponsorship, similar to what Dr. Ford did in his

23   survey.

24         Q      So in your opinion, Dr. Ford used the

25   Ever-Ready protocol in his survey; correct?

                                        Page 42

```
1            A     Yes.
2            Q     And in your rebuttal survey in the
3     Apple case, you used what you described in
4     paragraph 3 as a "proper control."  Correct?
5            A     Yes.
6            Q     And by that you meant a control that
7     you believe more accurately controlled for
8     mismeasurement error than what Dr. McDonald had
9     done?
10           A     I can't quite remember sitting here
11    today what exactly the issue I had with her control
12    at this point.
13           Q     Do you now recall that you had some
14    issue with her control?
15           A     Yes.
16           Q     Paragraph 4 of Exhibit 108 you wrote,
17    "The resulting confusion rate for my survey was
18    1.49 percent."
19                 Do you see that?
20           A     Yes.
21           Q     How did you determine that?
22           A     Well, in general, the way that this
23    would be determined would be to take the results
24    from the test group and then subtract out the
25    results from the control group to get a net rate.
```

Page 43

1    associates carbides product with a single anonymous

2    source"?

3          A    I don't recall that exact sentence

4    but I believe you that it's in there.

5          Q    Do you agree that the results of a

6    likelihood of confusion survey can support a

7    finding of secondary meaning?

8                 MR. LONG:  Objection, form.

9          A    My understanding is that they're

10   different.

11         Q    (BY MR. ARKIN)  Let me read you a

12   statement from a decision of the United States

13   Court of Appeals for the Third Circuit in a case

14   called Charles Jacquin versus Distileria Serralles,

15   921 F.2d 467 3rd Circuit, 1990, and ask you a

16   series of statements and ask you if you agree with

17   these.

18                 "Likelihood of confusion and

19   secondary meaning are two closely related concepts

20   that collapse into one another in trade dress

21   cases."

22                 Do you agree with that statement?

23                 MR. LONG:  Objection to form, calls

24   for a legal conclusion.

25         A    My understanding from, as I mentioned

1    to you before, is that they are separate issues and

2    should be tested separately.

3            Q     (BY MR. LARKIN)  So you don't agree

4    or disagree, one way or the other, with that

5    statement?

6            A     I think you -- is that from a judge's

7    opinion?

8            Q     Yes.

9            A     I just, I mean, I think we're getting

10   into legal issues that I'm not sure how to answer

11   that question without being a lawyer.

12                 MR. LONG:  Just what was the --

13   what's the citation?

14                 MR. LARKIN:  921 F.2d 467.

15                 MR. LONG:  What year was it?

16                 MR. LARKIN:  1990.

17                 MR. LONG:  Third Circuit you said?

18                 MR. LARKIN:  Yes.

19           Q     (BY MR. LARKIN)  Let me read another

20   statement from that case.  "Necessarily a package

21   or mark must have acquired secondary meaning before

22   likelihood of confusion can result."

23                 Do you agree with that statement?

24                 MR. LONG:  Objection, form; object to

25   this entire line of questioning because it calls

Page 89

1    for opinions on quotes from a judge's legal

2    decision.

3              MR. LARKIN:  Your partner asked Dr.

4    Ford about an hour's worth of those questions and I

5    let him answer every one of them, so.

6        A    I'm sorry, now I forgot the question.

7        Q    (BY MR. LARKIN)  And I'm sorry for

8    extemporaning like that.  Do you agree with the

9    following statement from the Third Circuit's

10   decision in the Charles Jacquin case:  "Necessarily

11   a package or mark must have acquired secondary

12   meaning before likelihood of confusion can result"?

13             MR. LONG:  Objection.

14       A    It's, again, it's going to be hard

15   for me to say whether I agree or disagree with a

16   judge's opinion because that seems to me to be

17   getting into legal issues.  As I said, as a general

18   statement and I'll just kinda keep going back to

19   this, my understanding is that they are separate

20   issues and they're tested separately with different

21   surveys.  That's my understanding.

22       Q    (BY MR. LARKIN)  Are you familiar

23   with Professor McCarthy's treatise, McCarthy on

24   Trademarks and Unfair Competition?

25       A    I'm familiar with it in general.  I

Veritext Legal Solutions
866 299-5127