Firm E-Mail: courtdocs@dickinsonwright.com

David G. Bray (#014346)
dbray@dickinsonwright.com
David N. Ferrucci (#027423)
dferrucci@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
Phone: (602) 285-5000
Fax: (602) 285-5100

*Attorneys for Plaintiff/Counterdefendant VIP Products, L.L.C*

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| VIP Products L.L.C., an Arizona limited liability company,<br><br>                   Plaintiff,<br><br>v.<br><br>Jack Daniel's Properties, Inc., a Delaware corporation,<br><br>                Defendant. | Case No. 2:14-cv-02057-SMM<br><br>**PLAINTIFF/COUNTERDEFENDANT VIP PRODUCTS LLC'S OBJECTIONS TO PROPOSED PERMANENT INJUNCTION AND FINAL JUDGMENT**<br><br>**(Oral Argument Requested)** |
| And Related Counter-Claims | |

Pursuant to the Court's Order dated February 23, 2018, (Dkt. 250), Plaintiff/Counter-defendant VIP Products LLC hereby responds to Defendant/Counterclaimant Jack Daniel's Properties Inc.'s proposed Permanent Injunction and Final Judgment, filed February 23, 2018. (Dkt. 249) and submits the following objections.

**1.    VIP Objects to Paragraph 1 Because It Is Overly Broad in Scope and Goes Well Beyond the Product At Issue In This Litigation.**

The evidence presented at trial, and the Court's findings of fact and conclusions of law do not support a grant of the broad and overreaching injunction JDPI requests. In particular, JDPI seeks an injunction that goes beyond the Bad Spaniels dog toy that is the subject of this litigation, and improperly attempts to enjoin VIP from the use of even a single design *element employed by JDPI.*

As proposed, Paragraph 1 states:

> VIP and its agents, servants, officers, directors, owners, representatives, employees, successors, attorneys, assigns and all other persons in active concert or participation with them, or any of them, who receive actual notice of this injunction by personal service or otherwise, are hereby PERMANENTLY ENJOINED, effective as of the date of this Permanent Injunction and Final Judgment, from:

> (a)    Sourcing, manufacturing, advertising, promoting displaying, shipping, importing, offering for sale, selling or distributing the Bad Spaniels dog toy as depicted below:

> [image omitted]

> (b)    Sourcing, manufacturing, advertising, promoting displaying, shipping, importing, offering for sale, selling or distributing **any other product that reproduces, copies, colorably imitates**, or is confusingly similar to, any of the JDPI Trademarks or **any elements of the Jack Daniel's Trade Dress** [footnote omitted], as those are depicted below:

> [image omitted]

> (c)    Sourcing, manufacturing, advertising, promoting displaying, shipping, importing, offering for sale, selling or distributing any other product that is likely to dilute the distinctiveness of any of the JDPI Trademarks and/or any elements of the Jack Daniel's Trade Dress;

> (d) **Doing any other act** that is likely to cause any person to believe that VIP's goods or commercial activities originate

1

with, or are licensed, sponsored, or authorized by, Jack Daniel's;

(e) **Otherwise infringing any of the JDPI Trademarks and/or Jack Daniel's Trade Dress**, falsely designating the origin of VIP's goods and services, or unfairly competing with Jack Daniel's in any manner whatsoever; and/or

(f) **Engaging in any other act or acts** that dilute any of the JDPI Trademarks or Jack Daniel's Trade Dress, whether by tarnishment or otherwise.

(Emphasis added).

Thus instead of simply enjoining the production and sale of the product this Court found to be infringing, JDPI is asking this Court to use that determination as a springboard to restrict VIP from a host of lawful activity. For example, Paragraph 1(b) would prospectively prohibit VIP from ever using a black neck wrap on a dog toy shaped liked a bottle, regardless of whether the bottle infringes on JDPI's marks. The proposed injunction also ignores the fact that it is the *particular combination of elements* that has protection as trade dress, not any one, isolated element. The evidence at trial established that *numerous* whiskey manufacturers use black labels, white borders, square bottles and other elements employed by JDPI.

The case law is clear that the remedy for trademark infringement is an injunction prohibiting the production and sale of the infringing product. "It has been held that where an injunction is issued under the Lanham Act enjoining an infringer from further infringement, the rights of the plaintiff are adequately protected . . . ." *Kelley Blue Book v. Car-Smarts, Inc.*, 802 F.Supp. 278, 293 (C.D. Cal. 1992). Thus the full remedy for JDPI is an injunction enjoining the sale of the Bad Spaniels dog toy—*the only product which has been determined to infringe on JDPI's marks*. There is simply no evidence whatsoever that any greater remedy is necessary to protect JDPI's interests. There is no

2

evidence to suggest an injunction enjoining the sale of the Bad Spaniel's dog toy would somehow be ineffective or that VIP would not comply with such an injunction.

Moreover, the law is clear that "[a]n injunction 'should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'" *Meinhold v. U.S. Dept. of Def.*, 34 F.3d 1469, 1480 (9th Cir. 1994) (*quoting Califano v. Yamasaki*, 442 U.S. 682, 702, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979)); *see also* McCarthy on Trademarks and Unfair Competition § 30:3 (5th ed.) ("[A]n injunction is a purely remedial, not punitive, device: 'it is well-settled that the essence of equity jurisdiction has been the power to grant relief no broader than necessary to cure the effect of the harm caused by the violation.'").

The injunction sought by JDPI is deeply burdensome to VIP, and goes well beyond what is necessary to enjoin the sale of the Bad Spaniels dog toy. Functionally, the proposed injunction prohibits the use of any element, not just the total combination of elements, found within the Jack Daniel's Trademarks or Trade Dress regardless of whether it actually infringes upon JDPI's marks and without a determination of infringement. Given that, as established at trial, a number of JDPI's competitors use various components of the Jack Daniel's Trade Dress (such as black labels, white borders, serif-style fonts, etc.) it defies logic that it is proper to enjoin VIP's usage of those same components on any product at any time in the future.

Limiting the proposed injunction to only the production and sale of the actual Bad Spaniels dog toy is consistent with the Court's own view of the matter. As the Court noted at trial, this case concerns *only* the Bad Spaniels toy in existence when the complaint was filed in 2014. *See* Trial Transcript, 10/4/17 vol. A, at 60:4-61:17 (The Court: "We are talking about this toy [at the time of the lawsuit]. Because otherwise, we may be end up having to start all over again, because now it is a different product than that which was marketed, which gave generation to this lawsuit.").

VIP proposes that Paragraph 1 state as follows:

> VIP and its agents, servants, officers, directors, owners, representatives, employees, successors, attorneys, assigns and all other persons in active concert or participation with them, or any of them, who receive actual notice of this injunction by personal service or otherwise, are hereby PERMANENTLY ENJOINED, effective as of the date of this Permanent Injunction and Final Judgment, from sourcing, manufacturing, advertising, promoting displaying, shipping, importing, offering for sale, selling or distributing the Bad Spaniels dog toy as depicted below:

[Bad Spaniels' dog toy image omitted]

**2.    VIP Objects to Paragraph 2 Because It Sets An Unreasonable Amount of Time For VIP To Comply With The Injunction, And It Is Redundant and Unnecessary or Outside the Scope of the Harm to Be Remedied.**

As presently proposed, Paragraph 2 states:

> VIP shall immediately remove from public viewing any and all catalogues, website pages, literature, brochures, business cards, promotional materials, advertising, T-shirts, and any other goods, products and materials depicting or bearing any other reference to VIP's Bad Spaniels product.

VIP objects to JDPI's sudden interest in enforcing the Injunction "immediately." Such a demanding requirement ignores the Court's obligation to balance the equities and hardships between the parties when issuing a permanent injunction. *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 871, 879-80 (9th Cir. 2014) (remanding for reconsideration of injunction where court failed to properly consider the equities between the parties when issuing permanent injunction). Given that JDPI did not seek a preliminary injunction, or damages, *and* that *JDPI* delayed the trial for six months to accommodate their counsel's commitment to teach a seminar in Europe, JDPI's sudden sense of urgency works an unfair hardship on VIP as VIP would have to remove all catalogues from circulation, without time to even have replacements printed. This is

4

patently unreasonable given JDPI's strategic decision not to seek a preliminary injunction and VIP's continued sale of the Bad Spaniels toy for the entire pendency of these proceedings.

Second, the substantive relief sought by JDPI is either redundant and therefore or unnecessary, or beyond the scope of the harm to be remedied, and therefore improper. If JDPI believes that the activities described in Paragraph 2 comprise infringement of its marks (*i.e.*, the printing of or reference to the Bad Spaniels product in catalogues, website pages, etc.), then Paragraph 2 is redundant and unnecessary because Paragraph 1 (d) and (e) already prohibit such conduct. If JDPI believes that the activities described in Paragraph 2 do not reflect infringement, and therefore not covered by Paragraph 1, then it improper request for relief beyond this Court's scope. JDPI has no right to an injunction broader than minimally necessary to remedy the harm—that is, infringement of its marks. *See Meinhold* 34 F.3d at 1480 ("An injunction 'should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'").

Finally, JDPI's requested relief includes overbroad language that seeks to curb activities that are simply not trademark infringement. For example, and somewhat inconsistently with JDPI's other requested relief, Paragraph 2 as proposed would prohibit VIP from posting a notice on its website that the Bad Spaniels product has been discontinued. It would bar VIP from sending communications to its distributors and retailers about this Court's order. And it would impair VIP's right to publicly discuss the very existence of this lawsuit and potential appeal, in contravention of its First Amendment rights.

VIP proposes that Paragraph 2 is improper and unnecessary and should be stricken entirely. In the alternative, VIP suggests the following:

> Within 45 days, VIP shall remove from public viewing any and all catalogues, website pages, literature, brochures, business cards, promotional materials, advertising, T-shirts, and any other goods, products and materials advertising, promoting, displaying, offering for sale, or selling the VIP's Bad Spaniels product.

**3.    VIP Objects to Paragraph 3 Because the Proposed Time Frame for Compliance is Unreasonable and VIP Cannot Compel its Distributors and Retailers to Provide Such an Accounting.**

JDPI's proposed Paragraph 3 states:

> Within fifteen (15) days of the date hereof, VIP shall account to the Court and to Jack Daniel's as to the number of units and the location of all remaining inventory of the Bad Spaniel's toy, whether within VIP's own possession or in the possession of any of VIP's distributors and retailers.

VIP objects to JDPI's unreasonably short time frame for compliance with the injunction. As discussed above, this case has been pending for more than three years and even suffered a six-month delay prior to trial to accommodate JDPI's counsel's scheduling conflict. To now insist that VIP comply within 15 days is unreasonable and unwarranted.

VIP also objects to JDPI's demand that VIP account for inventory "in the possession of any of VIP's distributors and retailers." First, as noted above, doing so within 15 days is impracticable and unreasonable. Second, and in any event, VIP lacks authority to compel VIP's distributors to provide such information. This obvious problem is even implicitly recognized in the Lanham Act (and Arizona's statute concerning remedies for infringement)—neither order an infringer to offer up for destruction goods outside the possession or control of the infringing party. *See* 15 U.S.C. § 1118, A.R.S. § 44-1451(B)(5). Thus, while VIP could conceivably inquire about

inventory held by distributors and retailers, VIP cannot compel them to provide such information.

Finally, VIP objects to the necessity of the Paragraph 3. The Lanham Act permissively allows for the destruction of the infringing product, *see* 15 U.S.C. § 1118, but there is no statutorily-imposed requirement that an infringing party account for the "number of units and the location of all remaining inventory." Moreover, production of such an inventory lacks any practical purpose because JDPI also seeks destruction of the infringing toys, and Paragraph 4 of the proposed injunction sets forth a requirement for a report, under oath, stating the details of the destruction including the number of Bad Spaniels products destroyed.

VIP proposes that Paragraph 3 is improper and unnecessary and should be stricken entirely. In the alternative, VIP proposes the following:

> Within 45 days of the date hereof, VIP shall account to the Court and to Jack Daniel's as to the number of units and the location of all remaining inventory of the Bad Spaniel's toy, within VIP's possession or under VIP's control.

**4.    VIP Objects to Paragraph 4 Because It is Unnecessary, Unwarranted, and the Timeframe for Compliance Is Unreasonable.**

As presently proposed, Paragraph 4 states:

> Within forty-five (45) days of the date hereof, VIP shall, pursuant to 15 U.S.C. § 1118 and A.R.S. § 44-1451(B)(5), deliver up to the Court for destruction or other disposition, or shall cause to be destroyed, all Bad Spaniels toys within its possession, custody, or control, together with all labels, signs, prints, packages, wrappers, receptacles and advertisements bearing the trade dress of the Bad Spaniels toy, and all plates, molds, matrices and other means of making the same.

VIP objects to JDPI's request that the Bad Spaniels products be delivered up and destroyed pursuant to 15 U.S.C. 1118. This remedy is permissive only ("the court may

7

order. . . ."), and JDPI has not established any reason why destruction is necessary. "It has been held that where an injunction is issued under the Lanham Act enjoining an infringer from further infringement, the rights of the plaintiff are adequately protected and an order requiring destruction of infringing articles, though permitted, may be unnecessary." *Kelley Blue Book v. Car-Smarts, Inc.*, 802 F.Supp. 278, 293 (C.D. Cal. 1992) (citing *Neva, Inc. v. Christian Duplications International, Inc*., 743 F.Supp. 1533, 1549 (M.D.Fla.1990)); *see also Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F.Supp.2d 368, 392 (S.D.N.Y.2010) ("Because, as noted, the Court is entering a permanent injunction against any further infringement by Filene's, Plaintiffs' application for an order pursuant to 15 U.S.C. § 1118 is denied.") (Internal citation omitted) (*citing Breaking the Chain Found., Inc. v. Capitol Educ. Support, Inc.,* 589 F.Supp.2d 25, 33 (D.D.C.2008) ("[W]here an injunction is issued under the Lanham Act enjoining an infringer from further infringement, the rights of the plaintiff are adequately protected and an order requiring destruction of infringing articles ... may be unnecessary.")). The injunction in Paragraph 1 prohibiting acts of infringement is sufficient to protect JDPI's rights, and JDPI offered no evidence suggesting that the injunction itself is insufficient to prevent further injury. Therefore, the proposed destruction order is unnecessary.

In addition, VIP also objects to JDPI's proposed timeframe for the destruction of the infringing goods. VIP has simultaneously filed a motion to stay the injunction pending appeal to the Ninth Circuit, which if granted would have the effect of delaying the time for compliance with this paragraph of the injunction. Separate and apart from that, however, VIP proposes that it is appropriate to hold this paragraph of the injunction in abeyance pending the resolution of the appeal to the Ninth Circuit because of the finality of the act. Unlike virtually all other paragraphs of the injunction, requiring compliance before the appeal process is complete will cause irreparable harm to VIP. Once the Bad Spaniels toys are destroyed, they cannot be retrieved. In the event that VIP is successful on appeal, it will have been harmed by the forced premature

destruction of its goods. On the other hand, it is difficult to conceive of any harm to JDPI if the Bad Spaniels products are held in storage (not sold, distributed, or otherwise used in a way that violates Paragraph 1 of the proposed injunction) pending the appeal. On balance, the equities favor a stay of the injunction pending the appeal.

VIP proposes that Paragraph 4 is improper and unnecessary and should be stricken entirely. In the alternative, VIP proposes the following:

> Within forty-five (45) days of the date hereof, VIP shall, pursuant to 15 U.S.C. § 1118 and A.R.S. § 44-1451(B)(5), deliver up to the Court for destruction or other disposition, or shall cause to be destroyed, all Bad Spaniels toys within its possession, custody, or control, together with all labels, signs, prints, packages, wrappers, receptacles and advertisements bearing the trade dress of the Bad Spaniels toy, and all plates, molds, matrices and other means of making the same. The requirements of this Paragraph shall be stayed pending the outcome of an appeal by VIP.

**5.    VIP Objects to Paragraph 5[1] Because It Is Unnecessary and Unwarranted.**

JDPI's proposed Paragraph 5 states:

> VIP shall instruct its supplier of the Bad Spaniels product to destroy all computer aided design and other electronic files and any molds from which such products are made.

VIP objects to proposed Paragraph 5 because it goes well beyond what is necessary in order to secure JDPI's rights. There is no evidence and no factual findings that support a determination that the injunction as stated in Paragraph 1 is insufficient to protect JDPI's interests. In other words, there is no evidence to support a conclusion that relief of a broader scope is necessary to guard against trademark infringement. JDPI has no factual basis to ask this Court for an order compelling VIP to "instruct its supplier" to

---

[1] JDPI's paragraphs include two paragraphs numbered "5" and two numbered "6." VIP will refer to the second set as 5[7] and 6[8] with the bracketed number reflecting a consecutive numbering scheme.

"destroy all computer aided design and other electronic files. . . ." Because there is no basis in the record for such relief, the Court should simply reject Paragraph 5 in its entirety.

In addition, if the Court is inclined to retain Paragraph 5, enforcement should be delayed until after an appeal concludes. If enforcement is not delayed, but VIP is successful on appeal, then VIP will suffer irreparable harm in the form of electronic business records having been permanently destroyed.

VIP proposes that Paragraph 5 is improper and unnecessary and should be stricken entirely. In the alternative, VIP proposes the following:

> VIP shall instruct its supplier of the Bad Spaniels product to destroy all computer aided design and other electronic files and any molds from which such products are made. This requirements of this Paragraph shall be stayed pending the outcome of an appeal by VIP.

### 6. VIP objects to Paragraph 6 because the Timeframe is Unwarranted and the Relief Unnecessary.

JDPI's proposed Paragraph 6 states:

> Within sixty (60) days of the date hereof, VIP shall file with the Court and serve on counsel for Jack Daniel's a report, in writing, under oath, setting forth in detail the manner and form in which it has complied with this injunction pursuant to 15 U.S.C. 1116. Said report shall attest to the Court and to Jack Daniel's as to the details of the destruction of products and materials ordered under paragraphs 4 and 5 hereof, including the date, place, number of products and other materials destroyed, and the means of destruction.

VIP's objections to Paragraph 6 rise and fall with those of Paragraphs 4 and 5 because the relief sought in Paragraph 6 arises from the relief sought in 4 and 5. Therefore, VIP objects to Paragraph 6 because Paragraphs 4, 5, and 6 are all unnecessary in light of Paragraph 1, which enjoins all trademark infringement. Furthermore, VIP

objects on the basis that Paragraphs 4, 5, and by extension 6, work an irreparable harm on VIP if they are not stayed pending an appeal by VIP. VIP asserts that these paragraphs should be excluded entirely from the Permanent Injunction.

### 7. Remaining Paragraphs

VIP does not object to the form of Paragraphs 5[7] and 6[8].

### 8. Global Objection

Although not expressly requested, VIP objects to the application of the injunction, in whole or in part, outside of the United States. VIP asserts that based upon the record before the Court, the Court may only enjoin conduct inside the United States. Specifically, there is no evidence, no findings of fact, and no conclusions of law that satisfy the standards for an extraterritorial injunction pursuant to the Lanham Act. *See Steele v. Bulova Watch Co.*, 344 U.S. 280, 73 S. Ct. 252 (1952); *Timberlane Lumber Co. v. Bank of America National Trust & Savings Ass'n*, 549 F.2d 597 (9th Cir. 1976); *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 427 (9th Cir. 1977) (extending *Timberlane* test to the Lanham Act). Without such a factual and legal basis, the proper scope of the injunction must be confined to the United States.

The extraterritorial application of the Lanham Act is not automatic. Instead, the Court must evaluate whether the standards for extraterritorial application have been satisfied. The Lanham Act applies to "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127. "Whether this provision sweeps foreign activities into the Act's proscriptive reach depends on a three-part test [the Ninth Circuit] originally applied to the Sherman Act." *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 969 (9th Cir. 2016). Under that three part test, the Lanham Act will reach extraterritorially if:

> (1) the alleged violations . . . create some effect on American foreign commerce; (2) the effect [is] sufficiently great to present a cognizable injury to the plaintiffs under the Lanham

11

Act; and (3) the interests of and links to American foreign commerce [are] sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority.

*Id.* (citing *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 613 (9th Cir. 2010)). "[T]he first two factors may be met even where all of the challenged actions occurred abroad and where likely confusion of consumer occurs abroad as long as there is monetary injury in the United States to an American plaintiff." McCarthy on Trademarks and Unfair Competition § 29:58 (5th ed.) (citing *Love*, 611 F.3d at 613).

As for the third factor, the court will balance seven subfactors to determine if American interests are sufficiently strong so as to justify the extraterritorial application of the Lanham Act:

[T]he degree of conflict with foreign law or policy, the nationality or allegiance of the parties and the locations or principal places of business of corporations, the extent to which enforcement by either state can be expected to achieve compliance, the relative significance of effects on the United States as compared with those elsewhere, the extent to which there is explicit purpose to harm or affect American commerce, the foreseeability of such effect, and the relative importance to the violations charged of conduct within the United States as compared with conduct abroad.

*Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 555 (9th Cir. 1992) (citing *Timberlane Lumber Co. v. Bank of America National Trust & Savings Ass'n,* 549 F.2d 597 (9th Cir.1976)).

Here, there is simply no evidence in the record that would enable this Court to make the findings necessary to enjoin extraterritorial conduct under *Timberlane* because the issue of extraterritorial conduct did not arise prior to or during the trial. First, JDPI did not offer any evidence or present any arguments about conduct outside the United States that purportedly violated the Lanham Act. Instead, the evidence at trial concerned

12

only activities in the United States. On the record before the Court, there is no basis to conclude that any foreign activity occurred that could be construed as violating the Lanham Act. As a result, JDPI cannot be entitled to an injunction that would apply extraterritorially.

Even if there were evidence in the record of foreign activities to which the Lanham Act might conceivably apply, although there is not, JDPI did not present evidence of how those foreign activities caused JDPI monetary harm. The law is clear that a party must show how foreign activities caused the American plaintiff monetary injury in the United States. *Love*, 611 F.3d at 613. JDPI, however, did not seek monetary damages, and it certainly did not offer evidence proving that VIP's foreign activities caused JDPI monetary damage in the United States. In the absence of any such evidence, JDPI cannot satisfy either of the first two *Timberlane* prongs.

Finally, with respect to the third factor, which is concerned with principles of "international comity" and the desire to "avoid unreasonable interference with other nations' sovereign authority," the record lacks any evidence or argument from the parties to meaningfully evaluate this factor and its seven subparts. *See Trader Joe's Co.*, 835 F.3d at 972. There is simply no factual or legal basis for this Court to draw any conclusions concerning this factor.

Because there is no legal or factual basis for a broader injunction, VIP objects to the Injunction in its entirety to the extent that it is not limited in application to conduct and activity within the United States.   VIP therefore requests the following final additional paragraph be included in the Court's judgment for permanent injunction to clarify this point:

> The provisions of this Judgment for Permanent Injunction shall have no extraterritorial effect enjoining any sales or marketing of the Bad Spaniels product outside the United States and its territories.

13

**DATED** this 9th day of Mach, 2018.

**DICKINSON WRIGHT PLLC**

By: <u>*s/David G. Bray*</u>
    David G. Bray
    David N. Ferrucci
    1850 North Central Avenue, Suite 1400
    Phoenix, Arizona 85012-2705
    *Attorneys for VIP Products, L.L.C.*

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on March 9th, 2018, I electronically transmitted the attached

3 document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4 Notice of Electronic Filing to all CM/ECF registrants.

5

6                                                                    */s/ Janet Hawkins*

7

8 PHOENIX 53913-11 438215v3

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26