Firm E-Mail: courtdocs@dickinsonwright.com

David G. Bray (#014346)
dbray@dickinsonwright.com
David N. Ferrucci (#027423)
dferrucci@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
Phone: (602) 285-5000
Fax: (602) 285-5100

*Attorneys for Plaintiff/Counterdefendant VIP Products, L.L.C*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| VIP Products L.L.C., an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Jack Daniel's Properties, Inc., a Delaware corporation,<br><br>Defendant.<br><br>And Related Counterclaims. | Case No. 2:14-cv-02057-SMM<br><br>**PLAINTIFF/COUNTERDEFENDANT VIP PRODUCTS LLC'S MOTION TO STAY INJUNCTION PENDING APPEAL**<br><br>(Oral Argument Requested) |

Pursuant to Rule 62(c), Federal Rules of Civil Procedure, Plaintiff/Counter-defendant VIP Products LLC hereby moves to stay enforcement of the permanent injunction requested by Defendant/Counter-claimant Jack Daniel's Properties Inc., pending an appeal of the Court's judgment.

This motion is supported by the following memorandum of points and authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     Relevant Background**

While the court is certainly deeply familiar with the facts of this trademark infringement matter, a few points bear reiterating for the purposes of this motion.

This litigation began in September 2014, when VIP Products LLC ("VIP") sought a declaration that its Bad Spaniels dog toy did not infringe on Jack Daniel's Properties, Inc.'s ("JDPI") trademarks. (Dkt. 1). JDPI counterclaimed with a set of claims essentially alleging the opposite—that VIP was in fact infringing. (Dkt. 12). Notably, JDPI did *not* at any time seek a preliminary injunction OR monetary damages.

In September 2016, this court denied VIP's motion for summary judgment thus clearing the way for trial. (Dkt. 171). The trial was originally scheduled for June 2017, roughly two and a half years after the initial complaint was filed. However, counsel for Jack Daniels' wanted to teach a program and attend a conference in Europe and requested both VIP and the court agree to reset the trial date to either August or October 2017. (Dkt. 187).

Trial was ultimately held in October 2017, following which the court issued its order stating its findings of fact and conclusions of law and directing JDPI to file a proposed form of injunction. (Dkt. 245). JDPI filed its proposed on February 23, 2018. In addition to enjoining acts of infringement, JDPI's proposed injunction also compels VIP to inventory and destroy all Bad Spaniels' products in existence, and destroy molds and computer aided design files used in the production of the Bad Spaniels' products. (Dkt. 249). The court ordered VIP to respond by March 9, 2018. (Dkt. 250). The court has not yet issued its permanent injunction and final judgment.

Through this motion, VIP requests that the court stay enforcement of the injunction pending the outcome of an appeal to the Ninth Circuit.

## II. Argument

The court has authority to stay a permanent injunction pending an appeal of the injunction and final judgment. Rule 62(c), Federal Rules of Civil Procedure; *Nken v. Holder*, 556 U.S. 418, 434, 129 S. Ct. 1749, 1761, (2009). Exercising that authority here is necessary because VIP faces irreparable injury in the absence of a stay while neither JDPI nor the public interest will be harmed by the stay.

### A. Standard for Granting a Stay

Granting a stay is an exercise of judicial discretion dependent on the facts and circumstances of a particular case. *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012). There are four factors[1] to be considered in determining whether to stay an injunction pending appeal: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 434, 129 S. Ct. 1749, 1761 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also Golden Gate Restaurant Ass'n v. City and County of San Francisco*, 512 F.3d 1112, 1115 (9th Cir. 2008); *Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1100 (9th Cir. 2006) ("[T]he moving party [must] demonstrate 'either a combination of probable success on the merits and the possibility

---

[1] There appears to be some confusion within the Ninth Circuit as to which four factors apply in evaluating whether to stay an injunction, with some courts applying the standard for a preliminary injunction. *See e.g., Humane Soc. of U.S. v. Gutierrez*, 558 F.3d 896 (9th Cir. 2009). The United State Supreme Court's *Nken* decision eliminates such confusion: "There is substantial overlap between [the factors governing stays of injunctions] and the factors governing preliminary injunctions, [citation omitted]; *not because the two are one and the same*, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." *Nken v. Holder*, 556 U.S. 418, 434, 129 S. Ct. 1749, 1761 (2009) (emphasis added).

2

of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.'").

Here, an analysis of the *Hilton* factors reveals one conclusion: a stay should be granted. VIP will be harmed by the forced and premature destruction of the Bad Spaniels products and related production assets. VIP has a meritorious argument to present on appeal that, while not yet considered in the Ninth Circuit, has been adopted in virtually all other circuits that have considered it. And neither JDPI nor the public interest will be appreciably harmed in any way by a stay.

### B.  The Factors Favor a Stay

#### i.  VIP Is Likely To Be Successful On Appeal

> ***Simply put, true trademark parodies now almost always win in court.*** . . . In the first years after the *Campbell* decision declared the importance of parody in 1994, courts became somewhat more solicitous toward parodies but occasionally still found them liable for trademark infringement. By the time we started putting a "2" in front of the year, it became increasingly difficult to identify such losses. ***In the last decade, defeats for trademark parodies have become blue-moon rarities.***

*William Mcgeveran, The Imaginary Trademark Parody Crisis (and the Real One)*, 90 Wash. L. Rev. 713, 715 (2015) (emphasis added).

To satisfy the first *Hilton* factor, the moving party is *not* required to show that "it is more likely than not that [it] will win on the merits." *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012) (*citing Leiva–Perez v. Holder*, 640 F.3d 962, 966 (9th Cir.2011)), *Mohamed v. Uber Techs., et al*, 115 F. Supp. 3d 1024, 1028 (N.D. Cal. 2015). Instead, the Ninth Circuit has employed different formulations to describe this fact. *Id.* At a minimum a party must show that there is a substantial case for relief on the merits. *Id.* Such a showing can also be accomplished by a showing that the appeal raises "serious

3

legal questions". *Mohamed*, 115 F. Supp. 3d. at 1028; *Leiva-Perez v. Holder*, 640 F.3d 962, 967 (9th Cir. 2011). While the Ninth Circuit has not precisely defined what constitutes a "serious legal question," other courts have observed that such questions often involve issues of constitutionality and issues of first impression in the Ninth Circuit. *Id.* at 1028-29. Under either approach—evaluating whether VIP makes a "substantial case for relief" on the merits or evaluating whether VIP presents a "serious legal question"—this factor supports a stay.

The question presented by VIP's appeal is whether the court erred in its consideration of the Bad Spaniels product as a parody when it evaluated whether VIP's mark infringed on JDPI's marks.[2] In making that evaluation, the "core element" "is whether the defendant's conduct 'is likely to *confuse consumers* about the source of the products.'" *Multi Time Mach. Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 933 (9th Cir. 2015) (*citing E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992) (emphasis added). In the Ninth Circuit, the test for evaluating consumer confusion comes from *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). The "*Sleekcraft* Factors are intended as an adaptable proxy for consumer confusion, not a rote checklist." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011).

The court erred by flatly refusing to consider the fact that the Bad Spaniels product is a parody. The court first erred when it rejected VIP's argument that because the Bad Spaniels product is a parody, it is entitled to First Amendment fair use protection. The court rejected this defense to JDPI's claims of trademark infringement,

---

[2] As the final judgment has not yet been signed, a notice of appeal not yet filed, and a briefing schedule not yet set, the exact course of VIP's appeal remains uncharted. The arguments in this motion should not be construed as a waiver of any arguments VIP is entitled to make on appeal, but are instead intended only to assist this court in evaluating the merits of VIP's request for a stay of the injunction pending appeal.

4

finding that the Bad Spaniels toy was not an "expressive work" and therefore the *Rogers* test for First Amendment protection is in applicable. (Dkt 171 at pp 9-10). There are strong arguments to the contrary as articulated by the Fourth Circuit, the Second Circuit, and relayed by numerous commentators:

> [T]here's a strong argument that, at least in the trademark context, incorporating a parody into a brand serves expressive goals that could not be realized through ordinary, non-branding speech. Many--perhaps most-- branding parodies have a doubly subversive message. They are using a brand not only to lampoon the targeted brand, but also to call attention to the pervasiveness of branding in our society. Parodies, in general, replicate the central features of a particular work to "reference and ridicule" the work. Brand parodies do more: they not only borrow from the trademark itself, but they also appropriate the device of branding and employ it to make us think critically about the role of brands in our culture. The dog chew toy in Louis Vuitton, for example, "pokes fun at the elegance and expensiveness of a LOUIS VUITTON handbag" but also "irreverently presents haute couture as an object for casual canine destruction." Or so thought the Fourth Circuit . . .

Stacey L. Dogan & Mark A. Lemley, *Parody As Brand*, 105 Trademark Rep. 1177, 1193-94 (2015) (*quoting Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 261 (4th Cir. 2007)).

    The court instead held that the standard *Sleekcraft* likelihood of confusion analysis is the proper tool for evaluating whether the Bad Spaniels product infringed on JDPI's marks. Yet, in applying the *Sleekcraft* factors, the court refused to consider how the Bad Spaniels' character as a parody altered the analysis under each factor. Even though it found that "Mr. Sacra's intent behind producing Silly Squeakers line of toys was to develop a creative parody on existing products" (Doc. 245, at ¶ 9), the Court's other findings essentially stand for the proposition that parody is simply never a consideration in evaluating trademark infringement. *See, e.g.,* Doc. 245 at ¶¶ 99-100

("VIP's … claim of parody is disregarded.").[3]  *This proposition has been rejected by nearly all other courts that have considered the issue.*

As for VIP's fair use defense, recent case law supports VIP's argument that the court erred in rejecting the defense. Shortly after this court rejected VIP's fair use defense, the Second Circuit in September of 2016 found that the fair use defense applied to commercial parody product thereby rejecting a claim of trademark infringement. *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 674 Fed. Appx. 16, 17 (2d Cir. 2016), *cert. denied*, 138 S. Ct. 221, 199 L. Ed. 2d 120 (2017). Louis Vuitton argued that a company manufacturing tote bags featuring slogans that mimicked Louis Vuitton's marks infringed and diluted those marks. The Second Circuit affirmed the district court's rejection of Louis Vuitton's claims:

> LV argues that the district court erred in finding as a matter of law that the use of its marks on MOB's tote bags was parodic, bringing it within the "fair use" exclusion from dilution liability. . . . [T]he district court correctly awarded judgment to MOB.

---

[3] In doing so, the District Court cited to *Grey v. Campbell Soup Co.*, 650 F. Supp. 1166, 1173 (C.D. Cal. 1986), aff'd, 830 F.2d 197 (9th Cir. 1987) for the proposition that "[a] defendant's claim of parody will be disregarded where the purpose of the similarity is to capitalize on a famous mark's popularity for the defendant's own commercial use." Doc. 245 at ¶ 99. However, *Grey* says nothing about parody; in fact, the word "parody" appears nowhere in the opinion. Importantly, the Ninth Circuit reached the exact opposite conclusion as the Court when it affirmed the dismissal of the Lanham Act claims brought by the owner of various "Godzilla" trademarks who claimed that Sears' parody "Bagzilla" product infringed its Godzilla marks. *Toho Co. v. Sears, Roebuck & Co*, 645 F.2d 788, 791 (9th Cir. 1981). In *Toho,* the Ninth Circuit specifically held that, in the context of a parody product, "intent to confuse" was the relevant *Sleekcraft* standard and *not* the intent to capitalize and found that there was no such intent on the part of Sears when it created its Bagzilla parody product: "[T]he contention that [by using Bagzilla] with a depiction of a 'comic, helpful, personified reptilian creature' Sears intends to confuse consumers is implausible: Sears means only to make a pun." *Id.*

6

> "A parody must convey two simultaneous—and contradictory—messages: that it is the original, but also that it is not the original and is instead a parody." *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 503 (2d Cir. 1996) (quoting *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp., Inc.*, 886 F.2d 490, 495 (2d Cir. 1989)). MOB's bags do precisely that. At the same time that they mimic LV's designs and handbags in a way that is recognizable, they do so as a drawing on a product that is such a conscious departure from LV's image of luxury—in combination with the slogan "My other bag"—as to convey that MOB's tote bags are not LV handbags. The fact that the joke on LV's luxury image is gentle, and possibly even complimentary to LV, does not preclude it from being a parody. *See Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F.Supp.3d at 435–38*; see also L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 34 (1st Cir. 1987) ("[A] trademark parody reminds us that we are free to laugh at the images and associations linked with the mark ... [or provides] entertainment conveyed by juxtaposing the irreverent representation of the trademark with the idealized image created by the mark's owner."). Indeed, a parody of LV's luxury image is the very point of MOB's plebian product.

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 674 Fed. Appx. 16, 18 (2d Cir. 2016), *cert. denied*, 138 S. Ct. 221, 199 L. Ed. 2d 120 (2017).

Setting aside the First Amendment issues for a moment, in any event, virtually all courts to consider the question have concluded that the court *must nevertheless account for parody* in considering the likelihood of consumer confusion factors, such as those in *Sleekcraft. See e.g.*, *Hormel Foods Corp. v. Jim Henson Productions, Inc.*, 73 F.3d 497, 503 (2d Cir. 1996) (evaluating *Polaroid* [the Second Circuit's *Sleekcraft* equivalent] factors in light of product's status as a parody); *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 261 (4th Cir. 2007) (observing that a finding of parody "influences the way in which the *Pizzeria Uno* [the Fourth Circuit's *Sleekcraft* equivalent] factors are applied"); *Anheuser-Busch, Inc. v. L. & L. Wings, Inc.*, 962 F.2d 316, 321 (4th Cir. 1992) ("The district court unfortunately ignored the issue of parody in

evaluating the sufficiency of the evidence to support the jury's verdict. In so doing, the judge failed to recognize that the multi-factored inquiry under *Pizzeria Uno* 'is at best awkward in the context of parody.'"); *Lyons Partnership v. Giannoulas*, 179 F.3d 384, 389-90 (5th Cir. 1999) (observing that parody is "an additional factor that should be considered" in the likelihood of confusion analysis and rejecting as "absurd" argument that the *Elvis* [the Fifth Circuit's *Sleekcraft* equivalent] factors should be considered without regard to parody); *Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1486 (10th Cir. 1987) (considering the effect of an intentional parody on *Beer Nuts II* [the Tenth Circuit's *Sleekcraft* equivalent] factors); *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 416 (S.D.N.Y. 2002) ("[E]ven without recourse to the First Amendment, Nature Labs' comical adaptation is still relevant to the extent that the joke is clear enough to result in no confusion under the statutory likelihood of confusion analysis.").

Against this legal backdrop, the validity and strength of VIP's legal argument is clear: there remains an open question in the Ninth Circuit as to the proper way to incorporate the concept of parody into the likelihood of confusion analysis under *Sleekcraft*. VIP's position throughout this litigation has been that the concept of parody must necessarily be considered in evaluating the *Sleekcraft* factors.[4] On appeal, VIP will argue that evaluating the *Sleekcraft* factors without considering parody distorts the likelihood of consumer confusion analysis and disregards Ninth Circuit direction that the *Sleekcraft* Factors are not exhaustive.

---

[4] A position other district courts in the Circuit have agreed with. *See Lucasfilm Ltd. v. Media Mkt. Grp., Ltd.*, 182 F. Supp. 2d 897, 901 (N.D. Cal. 2002) ("Parody is . . . . relevant to show that there is little likelihood of confusion between an original mark and a parody of that mark . . . because a parody is meant to comment on or criticize an original work, it is unlikely to be confused with the original work."); *Saks & Co. v. Hill*, 843 F. Supp. 620, 624 (S.D. Cal. 1993) ("an intent to create a parody is not an intent deceive the public").

8

For example, when the intent to parody is properly considered in the "likelihood of confusion" analysis, the strength of the mark favors the parodist, not the mark holder. *See, e.g.*, *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 261 (4th Cir. 2007) ("In cases of parody, a strong mark's fame and popularity is precisely the mechanism by which likelihood of confusion is avoided.") (quotation omitted); *see also Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1145 (C.D. Cal. 1998), *aff'd*, 296 F.3d 894 (9th Cir. 2002) (Strength of the mark favors "defendants who poke fun at the mark"). Simply put, "[a]n intent to parody is not an intent to confuse the public." *Id*. (quotation omitted). Likewise, when a trademark claim is brought against a parody that uses the mark to comment on the trademark holder, similarity between the parties' two marks does not support finding a likelihood of confusion, because similarity "is the essence of a parody." *Louis Vuitton v. Haute Diggity Dog*, 507 F.3d 252, 262 (4th Cir. 2007).

For the purposes of this motion, two points must be kept in mind. First, the court need not believe that VIP is right or that the court wrongly decided the case—the issue is merely whether VIP has made a substantial case for relief on the merits. In view of the fact that numerous courts have repeatedly approved of and adopted the legal principles VIP advocated for during the course of this litigation, VIP has made such a showing. The body of case law in existence is nearly uniform on the questions raised by VIP making it difficult to imagine what stronger showing VIP could make in order to satisfy this *Hilton* factor.

Second, the issues raised by VIP are plainly "serious legal questions" in that they raise First Amendment questions and reflect issues of first impression in the Ninth Circuit. Parody has long been a feature of American humor and popular culture and the number of cases arising from parody products such as the Bad Spaniels dog toy

9

1  continues to increase. Again, numerous other courts have weighed in on how parody
2  products are treated in the trademark infringement context, and the question is ripe for
3  review in the Ninth Circuit.
4      A stay of the injunction pending appeal is appropriate because VIP has made a
5  strong showing reflecting a likelihood of success on appeal, and that its appeal will
6  present serious legal questions. This factor of the *Hilton* test is satisfied.
7                    ii.      *VIP Will Be Irreparably Injured if the Stay is Denied*
8      The second *Hilton* factor requires a showing of irreparable harm to the moving
9  party if the stay is denied. *Nken*, 556 U.S. at 434, 129 S. Ct. at 1761. Such a showing
10 requires more than some possibility of irreparable injury. *Lair*, 697 F.3d at 1214. VIP
11 will be irreparably injured if the stay is denied because the injunction proposed by JDPI
12 requires VIP in short order to destroy all Bad Spaniels products, the molds and templates
13 used to manufacture the products, and the even the computer aided design files
14 necessary for production of the products. If VIP is required to comply with the terms of
15 the injunction as proposed, and yet is successful on appeal, VIP's pyrrhic victory will
16 mean it was forced to destroy a host of valid and legitimate assets *even though it*
17 *prevailed* and without any way to recoup those costs. This is not a speculative harm or
18 only a possibility of harm if the stay is denied. Instead, it is a certain and unnecessary
19 risk of irreparable injury to VIP, which this court should avoid by staying the injunction
20 pending appeal.
21     The first and second *Hilton* factors are the "most critical" in considering whether
22 to stay an injunction. *Lair*, 697 F.3d at 1214. VIP has clearly demonstrated that both
23 favor granting a stay of the injunction because (1) VIP has a substantial case for relief on
24 the merits and (2) VIP will be irreparably injured by being forced to destroy products
25 and other assets before the appeal is even briefed if the stay is not granted.
26

### iii. JDPI Will Not Be Injured if the Stay is Granted

The third factor is concerned with evaluating the injury to JDPI if the injunction is stayed. As discussed below, there is no significant risk to JDPI and thus, this factor is outweighed by the first two "critical" factors. *Lair*, 697 F.3d at 1214.

This lawsuit was first filed in September 2014. The bench trial occurred in October 2017. Throughout the *entire duration* of this litigation JDPI has never sought a preliminary injunction or money damages likely a strategic decision to avoid a jury trial, or any other form of immediate relief.  In other words, JDPI has had *no objection* to the on-going and continued sale of the Bad Spaniels product during the entire four and a half (4 ½) years this case has been pending.

In addition to having no objection to the products' sale during the pendency of the litigation, *JDPI* actually prolonged these proceedings (and thus the sale of the Bad Spaniels' product) when it sought a six-month delay in the trial date to accommodate its counsel's travel schedule. It is somewhat difficult to understand how it was (1) acceptable for VIP to manufacture, store, and sell the Bad Spaniels' product during the pendency of the proceedings (and thus no preliminary injunction was sought), and (2) acceptable for *JDPI* to prolong these proceedings and the sale of the Bad Spaniels' product, but now, there is some sort of urgency that requires not just an injunction on infringement but also *an order for destruction*, prior to an appeal.

Given JDPI's apparent comfort with the products coexisting for the entire duration of the litigation, it is difficult to see what injury JDPI would be exposed to in the event that the injunction is stayed pending appeal.

### iv. The Public Interest Will Not Be Harmed by a Stay

The final factor considers where the public interest lies. *Golden Gate*, 512 F.3d at 1116.  While the public certainly has an interest in not being deceived or confused by

11

products in the marketplace, when there has been ample opportunity for confusion, lack of evidence of actual confusion "'can be a powerful indication that the junior trademark does not cause a meaningful likelihood of confusion.'" *Cohn v. PetSmart, Inc.*, 281 F.3d 837, 843 (9th Cir. 2002) (quoting *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 228 (2d Cir. 1999)); *Brookfield Communications, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1050 (9th Cir. 1999) ("We cannot think of more persuasive evidence that there is no likelihood of confusion between these two marks than the fact that they have been simultaneously used for five years without causing any consumers to be confused as to who makes what.").

Because the public interest is concerning with avoiding actual confusion in the marketplace, this factor favors a stay or least yields to the concerns raised by the first two factors. JDPI stipulated and conceded that it never received any consumer communication reflecting actual consumer confusion even though both the Bad Spaniels product and JDPI's products have coexisted in the marketplace for years. This is particularly notable under Ninth Circuit case law because that means the products have coexisted for almost four and a half (4½) years without confusing consumers. *See Brookfield*, 174 F.3d at 1050. Moreover, the public interest is unaffected entirely by the injunction's destruction order. The public interest is concerned with not being confused by infringing products. This interest is simply not implicated by an injunction ordering the destruction of products, molds, and computer files. In light of the totality of circumstances, staying the injunction that would irreparably harm VIP, has minimal, if any, effect on actual consumers.

### III.   Conclusion

For the foregoing reasons, any injunction the court issues should be stayed pending appeal.

12

**DATED** this 9th day of March, 2018.

                **DICKINSON WRIGHT PLLC**

                By: *s/David Bray*
                    David G. Bray
                    David N. Ferrucci
                    1850 North Central Avenue, Suite 1400
                    Phoenix, Arizona 85012-2705
                    *Attorneys for VIP Products, L.L.C.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9th, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*/s/ Janet Hawkins*

PHOENIX 53913-11 439390v2