RUSING LOPEZ & LIZARDI PLLC
Isaac S. Crum
6363 N. Swan Road, Suite 151
Tucson, Arizona 85718
Telephone:    (520) 529-4274
Facsimile:    (520) 529-4274
Email: icrum@rllaz.com

HARVEY & COMPANY
D. Peter Harvey (admitted *pro hac vice*)
Four Embarcadero Center, 14th Floor
San Francisco, CA 94111
Telephone:    (415) 926-7776
Facsimile:    (415) 402-0058
E-mail: pharvey@harvey.law

*Attorneys for Defendant and Counterclaimant*
*Jack Daniel's Properties, Inc.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| VIP Products, LLC, an Arizona limited liability company,<br><br>        Plaintiff,<br><br>v.<br><br>Jack Daniel's Properties, Inc., a Delaware corporation,<br><br>        Defendant.<br>――――――――――――――――<br>And Related Counterclaims | Case No. CV-14-2057-PHX-SMM<br><br><br>**JACK DANIEL'S PROPERTIES INC.'S OPPOSITION TO VIP PRODUCTS LLC'S MOTION TO STAY INJUNCTION PENDING APPEAL** |

Jack Daniel's Properties, Inc. ("Jack Daniel's") respectfully submits this opposition to VIP Products, LLC's ("VIP's") Motion to Stay the Entry of a Permanent Injunction Pending Appeal (Doc. 252; hereafter "Motion").[1]

## INTRODUCTION

A stay is not warranted because this Court's Findings of Fact, Conclusions of Law, and Order of January 30, 2018 (Doc. 245; hereafter "Order") is sound. The Order is squarely based on the evidence offered at trial and the applicable case law. Absent a stay, VIP will not suffer any irreparable harm pending appeal. Conversely, if the injunction were stayed, Jack Daniel's would continue to be irreparably harmed, and the public would continue to suffer confusion. The Court should deny VIP's motion.

## LEGAL STANDARD

"The authority to grant stays has historically been justified by the perceived need to prevent irreparable injury to the parties or to the public pending review." *Nken v. Holder*, 556 U.S. 418, 432 (2009) (internal quotation omitted). "A stay is not a matter of right, even if irreparable injury might otherwise result." *Id.* (internal quotation omitted). "It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Id.* (internal quotations omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id*.

Judicial discretion to grant a stay is guided by four factors: (1) "whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits"; (2) "whether the applicant will be irreparably injured absent a stay"; (3) "whether issuance

---

[1] Jack Daniel's does not oppose a stay of paragraphs 4 and 5 of the proposed injunction, requiring destruction of certain products and materials, provided the assets subject to destruction are held in the custody of VIP's attorneys pending the outcome of the appeal.

of the stay will substantially injure the other parties interested in the proceeding"; and (4) "where the public interest lies." *Id.* at 426 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776). In its Motion, VIP refers to these factors as the "*Hilton* factors." (*See e.g.,* Mot. 3:2–4.) For the Court's convenience, Jack Daniel's will likewise refer to these four factors as the "*Hilton* factors." "The first two factors . . . are the most critical." *Id.* "It is not enough that the chance of success on the merits be better than negligible." *Id.* (internal quotation omitted). By the same token, "simply showing some possibility of irreparable injury . . . fails to satisfy the second factor." *Id.* at 434–35 (internal quotation omitted).

## **ARGUMENT**

On appeal, this Court's findings on likelihood of confusion and dilution will be reviewed for "clear error." *See Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 505 (9th Cir. 2011). Although VIP may argue that this Court clearly erred, nothing could be further from the truth. This Court properly applied binding precedent to proven facts. The same precedent will govern on appeal, and the same record will exist. The Court's sound judgment and thorough analysis will be affirmed. Under these circumstances, a stay pending appeal would be inappropriate.

## I.        **THE REQUESTED STAY IS NOT WARRANTED.**

The Ninth Circuit case law (as properly applied by this Court) is unequivocal:

> "[T]he cry of 'parody!' does not magically fend off otherwise legitimate claims of trademark infringement."

(Order, ¶ 74 (quoting *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1405 (9th Cir. 1997).) That is, "[t]here are confusing parodies and non-confusing parodies. All they have in common is an attempt at humor through the use of someone else's trademark." *Dr. Seuss*, 109 F.3d at 1405 (internal quotation omitted).

Parodies are infringing when they are likely to confuse. Parodies are not infringing when they are not likely to confuse. Calling an alleged infringement a "parody" doesn't matter. It only matters if that claimed parody is likely to confuse.

The Ninth Circuit case law, and *Dr. Seuss* in particular, are very clear on this point. Indeed, the Second Circuit authority on which VIP relies <u>agrees</u> with the Ninth Circuit. *See Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 416 (S.D.N.Y. 2002) ("[P]arody is not really a separate 'defense' as such, but merely a way of phrasing the traditional response that customers are not likely to be confused . . .") (*cited* in VIP's Objections to Jack Daniel's Proposed Permanent Injunction (Doc. 251) (hereafter "Objections"), 8:9–10). Accordingly, this Court's Order properly focused on the central issue of confusion, not the collateral issue of parody. (Order, ¶ 74.) The Court ultimately concluded—and the evidence at trial strongly supported—that there was indeed confusion among the consuming public. Reliable survey evidence proved that over 29% of consumers thought Jack Daniel's made, sponsored or approved the "Bad Spaniels" toy. (Order, ¶ 85.)

VIP now asks the Court—in the context of a post-trial motion to stay injunctive relief pending appeal—to disregard its own well-reasoned opinion, ignore the controlling law, and discard the unequivocal evidence of consumer confusion and tarnishment adduced at trial. The basis for this request? A facially incorrect assertion that VIP's parody argument has "not yet [been] considered" by the Ninth Circuit, and the opinion of one commentator that "true parodies now almost always win in court." (Mot., 3.) Neither of these grounds is valid.

### A.    *The Treatment of Confusing Parodies is Not an "Open Question" Upon Which VIP Will Prevail on Appeal.*

Urging that its arguments are novel, VIP argues there is an "open question" in the Ninth Circuit as to how to treat parody in the infringement analysis. (Mot., 8:14–17.) Crucially, VIP does not even cite, much less discuss, *Dr. Seuss*, which carefully considered and explicitly rejected the parody/fair use defense. This Court is familiar with

- 4 -

that law, having previously analyzed and applied it. (*See* Court's Sept. 27, 2016 Summ. J. Order (Doc. 171) ("Summ. J. Order"), 9–11; Order, ¶ 74.) This Court is also familiar with VIP's contrary arguments, having previously considered and rejected them. (*See id.*; *see also* VIP's Mot. for Summ. J. (Doc. 110); VIP's Resp. to Jack Daniel's Partial Mot. for Summ. J. (Doc. 147); VIP's Proposed Findings of Fact and Conclusions of Law (Doc. 242).) There is nothing new in this motion, and there is nothing worthy of staying an injunction pending VIP's appeal.

Desperate to create an issue when none exists, VIP distorts the record in arguing that this Court erred in applying the law. The Court did not—as VIP argues—"flatly *refus[e] to consider* the fact that the "Bad Spaniels" product is a parody." (Mot., 4:19–20 (emphasis added).) Indeed, the record shows otherwise. In fact, VIP utterly failed to explain how the "Bad Spaniels" product is a parody, and the Court properly concluded that it is not. (*See* Summ. J. Order (Doc. 171), 9–11; Order, ¶ 74.) Also, the Court did not erroneously find—as VIP argues—"that parody is simply *never a consideration* in evaluating trademark infringement." (Mot., 5:24–25 (emphasis added).) On the contrary, the Court has carefully and repeatedly assessed the evidence VIP proffered to support its parody claim here, and rejected it.

Indeed, VIP has been arguing and rearguing the same "parody" and "fair use" defenses since it amended its complaint to raise them in May, 2015. (*See* VIP's Am. Answer to JDPI's Countercl. (Doc. 50), ¶¶ 69, 70.) It reiterated them in its Motion for Summary Judgment. (Doc. 110, 5–6.) The Court rejected these in its Memorandum of Decision and Order of September 27, 2016. (Doc. 171, 9–11.) Ignoring that rejection, VIP again extensively raised the parody/fair use defense in its Proposed Findings of Fact and Conclusions of Law, submitted on the eve of trial (Doc. 209, ¶¶ 20–26; ¶¶ 27–31; ¶¶ 43–45; ¶ 66.) Jack Daniel's protested VIP's re-visitation of this already-decided issue as trial got underway. (Trial Tr., Day. 1 (Doc. 234), 6:15–8:24.) The Court made it plain that it had decided this issue. (*Id.*, 7:14–17 ("The Court: 'Well, why would I have made a ruling a year and a half ago where I put that to rest, why is it—was there something unclear

about my ruling?' Mr. Bray: 'No, your honor, there was nothing unclear about the ruling….'".).)

VIP persisted in pressing these defenses, however, and devoted much of its closing argument to the subject of parody/fair use. (Trial Tr., Day 4 vol. B (Doc. 240), 136:6–146:19.) Now that the Court has issued its Order following trial, rejecting the arguments yet again, VIP again revisits them in urging a stay. Jack Daniel's is tempted to respond, as President Ronald Reagan famously said to Jimmy Carter during the October 28, 1980 Presidential debate, "There you go again."

The "Bad Spaniels" product, which confuses consumers and dilutes the famous JACK DANIEL'S mark, is actionable even if it is a parody. *See Dr. Seuss,* 109 F.3d at 1405; *accord Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 415 (S.D.N.Y. 2002) ("[I]t is clear that when another's mark is used for source identification in a way likely to cause consumer confusion, it is actionable."). For example, in *Schieffelen & Co. v. Jack Co. of Boca, Inc.*, 850 F. Supp. 232 (S.D.N.Y. 1994), the claimed parody "Dom Popignon—Champop" for popcorn sold in a Champagne-like bottle was held to infringe CUVEE DOM PERIGNON after a survey and other factors showed a likelihood of consumer confusion. *Id.* at 245–48. Likewise, in this case, the Court determined that the "Bad Spaniels" product infringed the Jack Daniel's trademarks and trade dress after a survey and other evidence demonstrated a likelihood of confusion. (*See* Order, ¶¶ 64-88.) VIP's own authority endorses this result. *See Mutual of Omaha Insurance Co. v. Novak*, 648 F. Supp. 905, 911 (D. Neb. 1986), *aff'd* 836 F.2d 397 (8th Cir. 1987) (claimed parody found likely to confuse) (*cited in* VIP's Proposed Findings of Fact and Conclusions of Law (Doc. 209), 18; *Anheuser-Busch, Inc. v. Balducci Publications*, 28 F.3d 769, 776 (8th Cir. 1994) (claimed parody found likely to confuse) (*cited in* VIP's Proposed Findings of Fact and Conclusions of Law (Doc. 209), 18).

Similarly, as this Court has properly observed, "a defendant's claim of parody will be disregarded where the purpose of the similarity is to capitalize on a famous mark's

popularity for the defendant's own commercial use." (Order,¶ 99 (citing *Grey v. Campbell Soup Co.*, 650 F. Supp. 1166, 1175 (C.D. Cal 1986));[2] *Hard Rock Café Licensing Corp. v. Pacific Graphics, Inc.*, 776 F. Supp. 1454, 1462 (W.D. Wash. 1991) (same). Such is the case here. "Bad Spaniels" evokes Jack Daniel's for VIP's commercial gain, not for critical effect. (Order, ¶ 100.) It tarnishes the JACK DANIEL'S brand while misleading consumers "to get attention," "to avoid the drudgery in working up something fresh," and, above all, to profit. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580 (1994). Such blatant efforts to use another's intellectual property to promote one's own products are not condoned.

VIP's never-ceasing attempt to rely on a "parody defense" deserves the same treatment as the Ninth Circuit accorded the defendant in *Vanna White v. Samsung Electronics America, Inc.*, 971 F.2d 1395 (9th Cir. 1992). While arising in the context of a right of publicity claim, the principle is identical. The Ninth Circuit held that Samsung's print advertisement campaign, featuring a blonde-wigged robot in a red dress turning letters on a letter board in a game show, misappropriated White's identity for commercial purposes without her consent and thereby violated her right of publicity. Like VIP, Samsung argued that its ad was just a joke, a parody protected by the First Amendment. The Ninth Circuit rejected this argument:

---

[2] VIP argues that "*Grey* says nothing about parody; *in fact, the word 'parody' appears nowhere in the opinion*." (Mot., 6 at n.3 (emphasis added).) In *Grey,* Judge Kelleher of the Central District of California, applying the traditional *Sleekcraft* analysis, permanently enjoined defendant Grey from selling DOGIVA dog biscuits and CATIVA cat biscuits in trade dress mimicking GODIVA chocolates. The court didn't use the word "parody." Instead, he concluded that: "….she (Grey) decided to use DOGIVA because it was a *clever play* on GODIVA. *Implicit in that belief is the assumption that the public would associate DOGIVA dog biscuits with GODIVA chocolates, thereby enhancing the marketability of her product*." *Grey,* 650 F. Supp. at 1175 (emphasis added). This is exactly what VIP did in the present case. *Grey* is thus directly on point. Whether one calls it a "parody" or a "clever play" matters not. As Juliet said to Romeo, "What's in a name? That which we call a rose/By any other name would smell as sweet." William Shakespeare, *Romeo and Juliet*, Act II, Scene II.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> The ad's spoof of Vanna White and Wheel of Fortune is subservient and only tangentially related to the ad's primary message: 'buy Samsung VCRs.' Defendants' parody arguments are better addressed to non-commercial parodies. The difference between a 'parody' and a 'knock-off' is the difference between fun and profit.

*Id.* at 1401.

> **B.    *Academic Commentary Cannot Overcome Controlling Contrary Ninth Circuit Case Law***

VIP's reliance on academic literature and out-of-circuit precedent is also misplaced. The law to be applied in this case is not the cherry-picked writings of academics advocating for reduced trademark protection. Rather, the law to be applied is the Lanham Act, and the body of federal cases decided thereunder. On this score, VIP's motion fails spectacularly. Indeed, VIP has not cited a single case, much less one within the Ninth Circuit, where a confusing use was deemed to be a protected parody. In *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 674 Fed. App'x. 16, 18 (2d Cir. 2016) (summary opinion), the court found plaintiff's evidence of confusion "unconvincing." In *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 261 (4th Cir. 2007) ("Haute Diggity Dog"), the court reasoned that "an effective parody will actually diminish the likelihood of confusion, while *an ineffective parody does not*." *Id*. (emphasis added). In *Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1486 (10th Cir. 1987), the court agreed, reasoning: "A parody of an existing trademark can cause a likelihood of confusion" and "a likelihood of confusion can exist despite the intent to create a parody." These cases help explain the present one. VIP may profess that it intended to create a parody—but VIP failed. VIP sowed confusion instead.[3] As this Court

---

[3] Similarly, with respect to JDPI's dilution claims, VIP may have thought the plastic dog toy they intentionally made to look like a Jack Daniel's bottle full of "Old No. 2" was simply "good, clean fun," as VIP testified at trial (Trial Tr., Day 3 (Doc. 243), 99:10–12.) In fact, however, as Dr. Itamar Simonson testified and this Court found, by juxtaposing dog feces and defecation against a consumable product like whiskey, VIP's efforts created negative mental associations in the mind of consumers and unquestionably tarnished the famous JACK DANIEL'S brand. (Order, ¶¶ 60–63.)

properly found following trial, Dr. Gerald Ford's survey "establishe[d] likelihood of confusion in this case," VIP's intent notwithstanding. (Order, ¶¶ 87, 94–98.)

VIP is also less than candid when summarizing the law. For example, purporting to quote from one of the *Vuitton* cases, VIP somehow overlooks the words "successful" and "only" in this sentence: "The finding of a *successful* parody *only* influences the way in which the [likelihood of confusion] factors are applied." *Haute Diggity Dog*, 507 F.3d at 261 (emphasis added) (selectively quoted at Mot. 7: 21–23). In any event, as this Court has properly observed, "a small number of the factors [may] carry great weight in assessing the likelihood of confusion." (Order, ¶ 70.) "The factors should not be rigidly weighed." *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1997) (quoted at Order, ¶ 70). "Rather, the factors are intended to guide the court in assessing the basic question of likelihood of confusion." *Id.* (internal citation omitted).

VIP also conveniently omits the following sentence from its block quote of a law review article: "When parody-based defenses do fail, *those decisions might be justified*." William McGeveran, *The Imaginary Trademark Parody Crisis (and the Real One)*, 90 Wash L. Rev. 713, 714 (2015) (omitted from quote at Mot., 3:11–16) (emphasis added). Viewed as a whole, the excerpt VIP quotes merely begs the question: What is a "true" trademark parody? Whatever it is, *Dr. Seuss* is clear: it is not something which is intended to capitalize on other's labors, and it is not likely to confuse. *Dr. Seuss*, 109 F.3d at 1405–06. Since the "Bad Spaniels" product *is* intended to capitalize on the fame and recognition of Jack Daniel's and *is* likely to confuse, it is not a "true" trademark parody. It is merely an infringement, as this court has properly held. *Id.*

## II.   THE OTHER *HILTON* FACTORS ALSO FAVOR JACK DANIEL'S

VIP has also failed to meet its burden for a stay because, as in the case of likelihood of success, none of the other *Hilton* factors favors a stay in this case. As explained below, VIP will not suffer any irreparable harm if its sales are enjoined. VIP does not even argue otherwise. By contrast, Jack Daniel's will continue to suffer injury if a stay is granted,

- 9 -

and the public will continue to suffer confusion. Thus, the purpose of a stay—to prevent irreparable harm pending appeal—will not be served if a stay is entered.

### A.     VIP Will Not Suffer Irreparable Harm Absent a Stay.

As noted above, Jack Daniel's agrees that the destruction order it seeks may be stayed pending appeal on condition that its counsel takes custody of the materials and products to be destroyed. Given this concession, VIP has no remaining argument that it will suffer irreparable harm, and it offers none. (*See* Mot., 10:8–25.) Notably, VIP does not argue that it will suffer irreparable harm from an order enjoining VIP's sale of the "Bad Spaniels" toy pending appeal. Accordingly, this Court should merely conditionally suspend any destruction order pending appeal, while leaving the rest of the proposed permanent injunction in effect. *See* Fed. R. Civ. P. 62(c). This Court should not grant a wholesale stay that will not serve its intended purpose: to prevent irreparable harm pending appeal.

### B.     Jack Daniel's Will Suffer Injury Absent a Stay.

As this Court has properly held, "permitting continued infringement and tarnishment of the Jack Daniel's trademarks and trade dress imposes a significant hardship on Jack Daniel's, but would not impose a legitimate hardship on VIP." (Order, ¶ 127.) The Court grounded its determination of irreparable injury to Jack Daniel's on substantial findings of fact, including significant reputational harm to Jack Daniel's through association of its consumable whiskey products with defecation and dog feces (*id.*, ¶¶ 37–54; 58–60; 62); association of its whiskey products with toys, contrary to Jack Daniel's policy of assiduously avoiding the marketing of alcoholic beverages to children (*id.*, ¶ 61); and injury to Jack Daniel's and the public by reason of ongoing consumer confusion regarding Jack Daniel's association with, or as the sponsor or source of, the "Bad Spaniels" toy. (*Id.*, ¶¶ 68–124.) Indeed, VIP's own evidence from focus groups including whiskey consumers established ongoing irreparable injury to the Jack Daniel's

brand and proved the very real injury suffered by Jack Daniel's when its consumers encounter VIP's "Bad Spaniels" product:

> Moderator:    The next time you look at a bottle of Jack Daniels, are you going to think anything different than what you thought before?
>
> Male:    ***It kind of lessens the value, I think, a tiny bit.*** This thing could be awfully annoying, I could imagine, too. It might be like, you might have a brand association with this annoying product, and drinking that liquor.

(VIP's Trial Ex. 264, SIL0128 (video) at 17:44–18:17) (emphasis added) (played during trial on Day 4 (Oct. 5, 2017, Vol. A) (Doc. 244) at 83:6–8.)

Nothing further need be said. Jack Daniel's has waited long enough for a permanent injunction. There is no reason it should wait any longer.

### C.    The Public Will Be Injured Absent a Stay.

As this Court has properly held, "a permanent injunction will serve the public interest by preventing continued consumer confusion." (Order, ¶ 127.) It follows that a stay will disserve the public interest by allowing continued consumer confusion – whether it comes to light or not. (*See id.*, ¶ 73 ("Instances of actual confusion in the marketplace are often difficult to find, particularly where, as here, the sales volume of the accused product is small and the marketing is thin.").) This Court has already held that the "Bad Spaniels" product is likely to confuse, and VIP concedes that "the public certainly has an interest in not being deceived or confused." (Mot., 11:25–12:1.) Accordingly, a stay is not warranted.

/ /

/ /

/ /

/ /

/ /

1

## **CONCLUSION**

2          For the foregoing reasons, VIP's Motion for a Stay of the Permanent Injunction

3   Pending Appeal should be denied.

4

5   Respectfully submitted this 23rd day of March, 2018,

6

7                    */s/ Isaac S. Crum*

Isaac S. Crum (AZ Bar #026510)

8   RUSING LOPEZ & LIZARDI PLLC

6363 N. Swan Road, Suite 151

9   Tucson, Arizona 85718

Telephone:    (520) 529-4274

10  Facsimile:     (520) 529-4274

11  Email:   icrum@rllaz.com

12  D. Peter Harvey (admitted pro hac vice)

13  Harvey & Company

Four Embarcadero Center, 14th Floor

14  San Francisco, CA  94111

Telephone:    (415) 926-7776

15  Facsimile:     (415) 402-0058

16  Email: pharvey@harvey.law

17  *Attorneys for Defendant and Counterclaimant*

18  *Jack Daniel's Properties, Inc.*

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2

3        I hereby certify that a copy of the foregoing was served this 23rd day of March,

4   2018, via Notice of Electronic Filing, generated and transmitted by the ECF system of the

5   District of Arizona, to all attorneys of record in this case.

6

7

8                                             */s/ Isaac S. Crum*
                                     _____

9                                           Isaac S. Crum

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28