Firm E-Mail: courtdocs@dickinsonwright.com
David G. Bray (#014346)
dbray@dickinsonwright.com
David N. Ferrucci (#027423)
dferrucci@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
Phone: (602) 285-5000
Fax: (844) 670-6009
*Attorneys for Plaintiff/Counterdefendant VIP Products, L.L.C*

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| VIP Products L.L.C., an Arizona limited liability company, | Case No. 2:14-cv-02057-SMM |
| Plaintiff, | **VIP PRODUCTS LLC'S REPLY IN SUPPORT OF ITS MOTION TO STAY INJUNCTION PENDING APPEAL** |
| v. | |
| Jack Daniel's Properties, Inc., a Delaware corporation, | (Oral Argument Requested) |
| Defendant. | |

JDPI's *Response*, although laden with righteous indignation and pearl-clutching, fails to grapple with the actual issues raised in VIP's Motion, instead repeatedly conflating VIP's arguments and wrestling with strawmen. As set forth in the Motion and this Reply, the law applicable here clearly warrants a stay.

**I.    VIP has presented arguments that satisfy the *Hilton* factor concerning likelihood of success on the merits.**

**A.    VIP need only show a "fair prospect" for relief on appeal.**

JDPI's argument regarding the likelihood of success on the merits demonstrates only that JDPI fundamentally misunderstands what it takes to satisfy the first *Hilton* factor. The first *Hilton* factor does not require VIP to show that it is more likely than not that it will succeed on appeal. *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012).

Instead, the Ninth Circuit has explained that the "exact degree of likely success" can be described using a variety of "largely interchangeable" formulations, including "reasonable probability, fair prospect, substantial case on the merits, and serious legal questions raised." *Id.* (internal quotations and alterations omitted).

VIP's Motion undoubtedly presents legal questions for appellate review that satisfy the Ninth Circuit's standards under *Hilton*. Broadly speaking, VIP's appellate arguments focus on "whether the court erred in its consideration of the Bad Spaniels product as a parody when it evaluated whether VIP's mark infringed on JDPI's marks." Mot. at 4:8-10. VIP's Motion further identifies two *specific legal questions* for appellate consideration that VIP has a "reasonable probability" or "fair prospect" of success and therefore satisfy the first *Hilton* factor.

**B.      VIP has a "fair prospect" of succeeding on its argument that the Court erred in its application of fair use.**

The first question is whether the Court err when it rejected VIP's argument that because the Bad Spaniels product is a parody, it is entitled to First Amendment fair use protection. Mot. at 4:20-22. The court determined, as a matter of law, that the Bad Spaniels product is not an expressive work and therefore the First Amendment fair use defense is inapplicable. Mot. at 4:22-5:2; Dkt. 171 at pp. 9-10. Whether the *Rogers* test applies to the Bad Spaniels product, and whether the Bad Spaniels product is entitled to the fair use defense, are questions of law that the Ninth Circuit will review *de novo*. *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 431 (9th Cir. 2017) ("Although we review the district court's findings of fact and determination of no likelihood of confusion for clear error, we address legal error de novo."). Given that other circuits have held that commercial parody products are entitled to fair use protection (a position with which numerous trademark scholars also agree), see *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.,* 674 Fed. Appx. 16, 17 (2d Cir. 2016),

2

*cert. denied*, 138 S. Ct. 221 (2017), there is at least a "fair prospect" that the Ninth Circuit would reach the same conclusion.[1]

> **C.** **VIP has a "fair prospect" of succeeding on its argument that the Court erred in completely disregarding parody in its analysis of the *Sleekcraft* Factors.**

Second, *even in the absence of a First Amendment fair use defense,* there is a "fair prospect" that VIP will succeed on its argument that the court erred in its consideration of how parody alters the *Sleekcraft* analysis. Mot. at 5:20-6:2. Implicit throughout JDPI's response is JDPI's belief that parody is merely a First Amendment defense (which this court rejected at the summary judgment stage) and therefore has no bearing on the *Sleekcraft* analysis for testing likelihood of confusion. See Resp. at 3-4. In other words, JDPI appears to believe that once the court rejected the fair use defense, there is no reason to further consider how a parody affects the likelihood of confusion

---

[1]    In this regard, it is significant that at one point in its Memorandum Decision, this Court characterizes the Bad Spaniels product as "somewhat non-expressive" (Dkt. 171 at 10:23) which of course indicates a counterpoint that the product *is at least somewhat expressive* and, therefore, subject to the *Rogers* test:

> [T]he Court finds persuasive the strong and clear language of the Ninth Circuit in *Brown* that the only relevant framework for trademark claims involving expressive works is the *Rogers* test. Additionally, the Court finds it significant that the Ninth Circuit did not qualify its assertions regarding the applicability of the *Rogers* test and did not give any indication whatsoever that certain exceptions to the *Rogers* test applicability to expressive works existed. Therefore, the best reading of Ninth Circuit precedent is that in evaluating the extent to which the First Amendment protects expressive works' usage of unauthorized trademarks, courts must use the *Rogers t*est.

*CI Games S.A. v. Destination Films*, 2016 WL 9185391, at *5 (C.D. Cal. Oct. 25, 2016). In any event, again, the question of whether this Court erred in not applying the *Rogers* test is a question of law the Ninth Circuit will review *de novo.*

and, in particular, have it effect the evaluation of the *Sleekcraft* factors. This Court appears to agree with JDPI.

Yet, every federal Circuit Court that has expressly considered this question has *rejected* JDPI's position, holding that even in the absence of a fair use defense, parody necessarily alters the likelihood of confusion analysis. See Mot. at 7:19-8:13 (collecting cases). As stated most clearly by the Fifth Circuit:

> Simply put, although the fact that conduct is a parody is not an affirmative defense to trademark infringement, a parody should be treated differently from other uses that infringe on a trademark. While it is only one factor to consider, *it is a factor that must be considered in conjunction with all of the other digits of confusion.* When, as here, a parody makes a specific, ubiquitous trademark the brunt of its joke, the use of the trademark for satirical purposes affects our analysis of the factors to consider when determining whether the use is likely to result in consumer confusion.

*Lyons P'ship v. Giannoulas*, 179 F.3d 384, 389-90 (5th Cir. 1999) (emphasis added).

The Fifth Circuit went on to hold that it would be "absurd" for a Court not to consider the nature of the product as a parody while evaluating each of the "digits of confusion" (the Fifth Circuit equivalent of the Ninth Circuit's *Sleekcraft* factors):

> [W]e find this analysis absolutely absurd. Such an approach would all but require a trial for any trademark suit where the conduct was a parody. A brief consideration of only one of the digits of confusion makes this point clear.
>
> The first digit, that is, the type of trademark allegedly infringed, questions whether the trademark is so distinctive that a consumer encountering the defendant's mark would be likely to assume that the source of a product or service is the owner of the trademark. Thus, under the traditional analysis, the stronger the trademark, the more likely that this factor would weigh in favor of the plaintiff. However, as the district court correctly noted in this case, when a consumer encounters the use of a trademark in a setting that is clearly a parody, the strength of the mark may actually make it easier for the consumer to realize that the use is a parody. Therefore, a strong mark is not as relevant a factor when the use is that of parody.

4

*Id.* at 389.

While there are simply no Ninth Circuit cases articulating *how* a product's parodic character alters the district court's application of each of the eight *Sleekcraft* factors, it has stated that at least as to the *Sleekcraft* "intent" factor, the nature of the product as a parody must be considered.  *Toho Co. v. Sears Roebuck & Co.*, 645 F.2d 788, 791 (9th Cir. 1981) (affirming dismissal of complaint brought by the owner of various Godzilla marks against Sears parody "Bagzilla" trash bags, finding that in the context of a parody product, an intent to capitalize was not an intent to confuse for purposes of evaluating the *Sleekcraft* "intent" factor).

Instead of offering this Court argument as to how or why VIP does not have a "fair prospect" of success on these two questions, JDPI instead devotes the bulk of its argument justifying this Court's factual findings on the likelihood of confusion and dilution, and arguing that because the standard of review for such factual determinations is "clear error," VIP is unlikely to succeed on appeal. *See e.g.*, Resp. at 3:11-17. JDPI obfuscates the issues by conflating the VIP's arguments about fair use and *Sleekcraft*. Resp. at 4:25-28; 5-18:25; 6:3-4. Finally, and somewhat circularly, JDPI argues that because the parody product was "confusing," this justifies disregarding the parodic nature of the product in evaluating whether there exists a likelihood of confusion. Resp. at 6:9-26. None of these arguments bear on whether VIP has a fair prospect of success on the questions of law raised by VIP's Motion.

**D.    JDPI's arguments are unavailing and its case law inapposite.**

In a last ditch effort to avoid the obvious—that VIP has satisfied the first Hilton factor by identifying questions of law that the Ninth Circuit has not yet addressed—JDPI points to a variety of cases outside the context of trademark infringement as if they are dispositive. JDPI is wrong. It is a palpably absurd proposition that because the Ninth

5

Circuit has uttered the word "parody" in other contexts—like rights of publicity cases involving pure commercial speech—that the Ninth Circuit somehow answered the question of how parody alters the likelihood of confusion analysis.

To illustrate, consider JDPI's reliance on *Vanna White v. Samsung Electronics America, Inc*. The crucial distinction between *White* and this case is that the *White* court addressed the effect of parody in the *context of pure commercial speech*. *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1401 (9th Cir. 1992). Pure commercial speech does "no more than propose a commercial transaction." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 906 (9th Cir. 2002). The *White* court recognized that Samsung's advertisement was pure commercial speech proposing a commercial transaction which guided its ultimate decision.

*Dr. Seuss* is likewise inapposite. In *Dr. Seuss*, the subject of the litigation was not a parody product. Instead, the product was a book about O.J. Simpson that incorporated elements from the Dr. Seuss' marks.  In evaluating plaintiff's copyright claims, the Ninth Circuit found that the book was a satire and not a parody.  The Ninth Circuit's rejection of the parody defense in that case implicitly contained a holding that the O.J. Simpson book was not a parody at all. *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997) (observing that defendants' "post-hoc characterization" of the book as a parody was "completely unconvincing"). Thus, it logically follows that the court in *Dr. Seuss* did not consider the parodic nature of the work in the *Sleekcraft* analysis—there was no parodic nature to consider.

Here, there is no evidence on the record that the Bad Spaniels product is not a parody, and the Court did not make such a finding. If anything, the Court appears to suggest that the Bad Spaniels product is in fact a parody. *See* Dkt. 245 at ¶ 9 ("Mr. Sacra's intent behind producing the Silly Squeakers line of toys was to develop a

creative parody on existing products."); s*ee also Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 801 (9th Cir. 2003) ("A parody is a 'literary or artistic work that imitates the characteristic style of an author or a work for comic effect or ridicule."). Thus, the parodic nature of the Bad Spaniels' product had to be incorporated into the *Sleekcraft* analysis, not outright "disregarded." *See* Dkt. 245 at ¶¶ 99-100; *Toho*, 645 at 791.

Even JDPI could not bring itself to declaring that the Bad Spaniels product "not a parody," *see* Resp. *passim.*, probably because it knows that courts have repeatedly found similar commercial products to be parodies: The "My Other Bag" court found that a tote bag "with the text "My Other Bag. . ." on one side and drawings meant to evoke iconic handbags by luxury designers, such as Louis Vuitton, Chanel, and Fendi, on the other" to be a joke, much like a bumper sticker saying "my other car is a . . ." both of which are "a riff, if you will, on wealth, luxury brands." *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425, 430 (S.D.N.Y.), aff'd, 674 Fed. Appx. 16 (2d Cir. 2016).



Likewise, in *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 412 (S.D.N.Y. 2002), the district court found a line of pet perfumes to be parodies where the "names parody elegant brands sold for human consumption" including "Timmy Holedigger (Tommy

7

Hilfiger), CK–9 (Calvin Klein's cK–1), Pucci (Gucci), Bono Sports (Ralph Lauren's Polo Sports), Miss Claybone (Liz Claiborne), and White Dalmations (Elizabeth Taylor's White Diamonds).



Finally, the Fourth Circuit explained that "[f]or trademark purposes, "[a] 'parody' is defined as a simple form of entertainment conveyed by juxtaposing the irreverent representation of the trademark with the idealized image created by the mark's owner." *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 260 (4th Cir. 2007). In *Haute Diggity Dog*, the court easily determined that dog toys in the form of handbags resembling luxury brands with the name "Chewy Vuiton" are parodies because in part the "dog toy undoubtedly and deliberately conjures up the famous [Louis Vuitton] marks and trade dress, but at the same time, it communicates that it is not" a Louis Vuitton handbag. In any event, this too, is a question of law to be reviewed *de novo*.[2]

JDPI's response distorts the legal questions raised by VIP, in turn creating strawmen arguments it can much more confidently attack. The fact that JDPI resorts to such chicanery belies the notion that there is any merit to JDPI's argument concerning

---

[2]    Each of these parody products pictured above was found to be non-infringing. On appeal, VIP will argue that, in the context of an obvious parody product, the Ford survey merely tested survey participants' belief as to whether or not all parody products require the permission of the trademark holder. *See* Steven M. Perez, *Confronting Biased Treatment of Trademark Parody Under the Lanham* Act, 44 Emory L.J. 1451, 1494 (1995) (trademark surveys of parody products risk "test[ing] the consumers' knowledge of the law more than the risk of confusion posed by the parody"). In this case, numerous survey respondents expressed the belief that if they could identify the butt of the joke—here Jack Daniels—then Jack Daniels' permission must have been legally required. This of course is not the law.

staying the injunction. VIP has identified to discrete questions of law that the Ninth Circuit has not squarely resolved. Other circuits have, however, and have reached conclusions that vary from that of this Court. Against this backdrop, it is clear that VIP has satisfied the first *Hilton* factor.

## II.    JDPI Concedes that VIP will suffer irreparable injury absent a stay.

JDPI concedes that its proposed injunction will cause VIP irreparable injury absent a stay. Resp. at 2, fn.1, 10:4-6. JDPI cites no legal authority for the proposition that because it concedes the issue of irreparable injury, this *Hilton* factor therefore weighs against a stay. This Court should not countenance such an Orwellian approach. VIP has satisfied this factor because, and JDPI concedes, that if the injunction as proposed is entered, VIP will be irreparably injured.

Moreover, there is no basis or legal precedent for JDPI's attempt to make its concession contingent upon VIP's counsel taking "custody of the materials and products to be destroyed." Resp. at 10:4-6. As VIP points out in its Objections to the Proposed Permanent Injunction, the remedy for trademark infringement is a limited injunction that is only as broad as necessary to address the infringing activity. Dkt. 251 at 2:18-21. This is because "[t]he essence of trademark infringement is the likelihood of confusion, and an injunction should be fashioned to prevent just that." *Internet Specialties W., Inc. v. Milon-DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 993 (9th Cir. 2009); *see also Quiksilver, Inc. v. Kymsta Corp.*, 360 Fed. Appx. 886, 889 (9th Cir. 2009) (finding injunction overbroad where its relief went beyond what was sufficient to avoid confusion in the marketplace). In other words, a proper injunction is no broader than necessary *to avoid consumer confusion*, not to satisfy the whims of JDPI or to punish VIP. *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1182 (9th Cir. 2010) ("a

trademark injunction should be tailored to prevent ongoing violations, not punish past conduct").

Here, there is no evidence in the record that an injunction ordering the cessation of the infringing activity would somehow be insufficient to protect JDPI's interests and avoid consumer confusion. It follows that there is no evidence that a destruction order is necessary to protect JDPI's interests or avoid consumer confusion, and that there is no evidence that VIP's counsel must take custody of the requested materials in order to protect JDPI's interests or avoid consumer confusion. There is simply no basis in fact or in law for JDPI's request that VIP's counsel "take custody of the materials and products to be destroyed."

### III. JDPI's response offers no evidence or description of injury resulting from a stay of the injunction.

Rather than identify actual and tangible harm that JDPI would experience if the stay were granted, JDPI relies instead upon what are essentially purely legal harms, based upon inferences drawn from surveys evaluating only the likelihood of confusion, to justify its insistence that the injunction be enforced now! Resp. at 10:16-11:11 (JDPI also boldly asserts that it "has waited long enough for a permanent injunction. There is no reason it should wait any longer."). JDPI forgets, however, that it conceded prior to trial that it has not received any reports of actual consumer confusion, and that the products have shared the market for years. Combined, these facts show *no actual harm*.

In addition to the absolute dearth of evidence supporting actual, tangible harm, instead of mere legal conclusions, JDPI is the party that chose *not* to seek either a temporary restraining order or a preliminary injunction four and a half years ago. JDPI is the party that asked for trial to be delayed for months to accommodate counsel's European travel schedule. JDPI is the party that chose to wait this long for a permanent injunction. There is no reason JDPI cannot wait a bit longer.

**IV.    There is no harm to the public if the injunction is stayed pending appeal.**

Rather than articulate any actual harm to the public, JDPI relies on this Court's legal conclusion that there is exists a "likelihood" of consumer confusion. The public interest however lies in avoiding *actual* consumer confusion. Avoiding *actual* consumer confusion is the *raison d'être* underpinning the Lanham Act. Recognizing that finding actual instances of consumer confusion can be difficult under certain circumstances, however, the courts have instead turned to a proxy analysis—the likelihood of confusion analysis. But establishing a likelihood of confusion for the purpose of fixing legal liability is not the same as establishing an injury to the public in the event that the injunction is stayed. The lack of any actual confusion over the course of four and one-half (4 ½) years of litigation is sufficient evidence to conclude that the public interest lies in favor of a stay, or at least should give way to the remaining factors.

**V.    Conclusion**

This Court does not need to believe that VIP is right or that the Court erred in deciding this case. The question instead is whether VIP has presented this Court with a "fair prospect" that the Ninth Circuit could agree with VIP. Giving the trends in trademark law with respect to parodies, VIP has made that showing. Moreover, in the absence of a stay JDPI has conceded that VIP will experience irreparable injury. In contrast, JDPI which chose to wait more than four and one-half years for this injunction will not be injured by waiting a bit longer. Finally, in the absence of a single instance of real world confusion, the public interest favors a stay. For these reasons, the court should stay the permanent injunction pending appeal.

**DATED** this 30th day of March, 2018.

DICKINSON WRIGHT PLLC

By: *s/David Bray*
        David G. Bray
        *Attorneys for VIP Products, L.L.C.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*/s/ Janet Hawkins*

PHOENIX 53913-11 445986v2