RUSING LOPEZ & LIZARDI PLLC
Isaac S. Crum
6363 N. Swan Road, Suite 151
Tucson, Arizona 85718
Telephone: (520) 529-4274
Facsimile: (520) 529-4274
Email: icrum@rllaz.com

HARVEY & COMPANY
D. Peter Harvey (admitted *pro hac vice*)
Four Embarcadero Center, 14th Floor
San Francisco, CA 94111
Telephone: (415) 926-7776
Facsimile: (415) 402-0058
E-mail: pharvey@harvey.law

*Attorneys for Defendant and Counterclaimant Jack Daniel's Properties, Inc.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| VIP Products, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Jack Daniel's Properties, Inc., a Delaware corporation,<br><br>Defendant.<br><br>And Related Counterclaims | Case No. CV-14-2057-PHX-SMM<br><br>**JACK DANIEL'S PROPERTIES INC.'S RESPONSE TO VIP PRODUCTS LLC'S OBJECTIONS TO PROPOSED INJUNCTION** |

This Court's Findings of Fact, Conclusions of Law, and Order of January 30, 2018 (Doc. 245; hereafter "Order") instructed Jack Daniel's Properties, Inc. ("Jack Daniel's") to file a proposed injunction. (*Id.,* 24.) When Jack Daniel's complied (*see* Doc. 249; hereafter "Proposed Injunction"), Plaintiff and Counterclaim Defendant VIP Products, LLC ("VIP") objected. (Doc. 251; hereafter "Objections" or "Obj.") On March 12, 2018, the Court ordered Jack Daniel's to respond to VIP's Objections. (Doc. 253.) Jack Daniel's therefore respectfully submits this response.

## INTRODUCTION

The Lanham Act gives courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right" protected under the Act. 15 U.S.C. § 1116(a). As explained below, all of the relief requested in Jack Daniel's Proposed Injunction is well-grounded in established law and mirrors relief granted in similar cases both around the country and in the Ninth Circuit. VIP tacitly acknowledges this by not challenging the legality of Jack Daniel's requested relief. Instead, VIP "objects" not because the Court *cannot* issue the proposed injunction, but rather that the court *should not* issue the proposed injunction. Yet, for a filing which is addressed to the equities and to the Court's discretion, VIP's Objections noticeably fail to explain *why* the court should not enjoin an adjudicated infringer to the fullest extent of the law.

From Jack Daniel's perspective, the equities in this case are absolutely clear: A permanent injunction should issue immediately, and the Court should require VIP to immediately cease its infringing behavior; a remedy which, at this point, is almost four years in the making. As explained in Jack Daniel's recently filed Opposition to VIP's Motion to Stay the Injunction (Doc. 255), *all of the equities favor the issuance of a strong injunction*. (*Id.*, 9–11.) Absent a strong injunction, both Jack Daniel's and the public will suffer. (*Id.* at 10–11.) And, as this Court has already held, absent a strong injunction, Jack Daniel's will continue to suffer significant reputational harm through association of its consumable whiskey products with defecation and dog feces (Order, ¶¶ 37–54; 58–60;

62); association of its whiskey products with toys, contrary to Jack Daniel's policy of assiduously avoiding the marketing of alcoholic beverages to children (*id.*, ¶ 61); and injury to Jack Daniel's and the public by reason of ongoing consumer confusion regarding Jack Daniel's association with, or as the sponsor or source of, the Bad Spaniels toy. (*Id.*, ¶¶ 68–124.)

With this strong reputational and public policy context favoring a robust injunction, many of VIP's complaints—bemoaning the purportedly "onerous" scope and timing of the requested relief—ring exceptionally hollow. With the equities squarely against them—and having infringed for an additional four years during the pendency of this case—VIP's grousing is unpersuasive. Jack Daniel's respectfully requests that the injunction be entered as proposed.[1]

## ARGUMENT

VIP's objections are organized by paragraph of the proposed injunction and, for the Court's convenience, Jack Daniel's will likewise respond in a paragraph-by-paragraph manner.

### I. Paragraph One

Paragraph one of Jack Daniel's proposed injunction reads (in pertinent part) as follows:

> VIP and its agents, servants, officers, directors, owners, representatives, employees, successors, attorneys, assigns and all other persons in active concert or participation with them, or any of them, who receive actual notice of this injunction by personal service or otherwise, are hereby PERMANENTLY ENJOINED, effective as of the date of this Permanent Injunction and Final Judgment, from:

* * *

---

[1] With one minor modification—changing "any" to "the" in paragraph one, as explained further below. Also, as stated in Jack Daniel's Opposition to VIP's Motion to Stay the Permanent Injunction, Jack Daniel's does not oppose the Court's *staying,* pending appeal, the required destruction of products and materials, provided the assets subject to destruction are held in the custody of VIP's attorneys. (*See* Doc. 255, 2 n.1.)

(b) Sourcing, manufacturing, advertising, promoting displaying, shipping, importing, offering for sale, selling or distributing **any other product that reproduces, copies, colorably imitates**, or is confusingly similar to, any of the JDPI Trademarks or **any elements of the Jack Daniel's Trade Dress** [footnote omitted], as those are depicted below

\* \* \*

(d) **Doing any other act** that is likely to cause any person to believe that VIP's goods or commercial activities originate with, or are licensed, sponsored, or authorized by, Jack Daniel's;

(e) **Otherwise infringing any of the JDPI Trademarks and/or Jack Daniel's Trade Dress**, falsely designating the origin of VIP's goods and services, or unfairly competing with Jack Daniel's in any manner whatsoever; and/or

(f) **Engaging in any other act or acts** that dilute any of the JDPI Trademarks or Jack Daniel's Trade Dress, whether by tarnishment or otherwise.

(*See* Doc. 249, 2–3; Obj. 1–2 (emphasis in VIP's Objections).)

VIP takes issue with two aspects of paragraph one of the Proposed Injunction. *First,* it argues that extending the scope of the injunction to cover anything that is "confusingly similar to . . . any [of the] elements of the Jack Daniel's Trade Dress" is overly broad. As explained below, Jack Daniel's suggests changing "any" to "the." This edit resolves VIP's concerns. *Second*, VIP objects to paragraph one based on a misunderstanding about the permissible scope of a trademark injunction and the incorrect belief that an injunction may not be broader than the product at issue. This contention is unsupported by law and should be rejected.

A.   *VIP's "Any Elements" Concern*

VIP spends the first few pages of its Objections attacking the fact that "the proposed injunction prohibits the use of any element, not just the total combination of elements" of Jack Daniel's Trade Dress. (Obj., 3 (emphasis added).) VIP argues that this language is overbroad, would prohibit VIP from using such elements as a square bottle, filigree or black label alone, and therefore would be "deeply burdensome" to VIP.

This argument, like much of VIP's brief, is hyperbole. VIP grossly overstates the risks presented by the proposed injunction. VIP has been found to have intentionally copied a combination of Jack Daniel's famous trademarks and trade dress in the form of a specific dog toy. Understandably, Jack Daniel's is suspicious that, if the Court's injunction could be read to allow it, VIP will try a slightly different combination. Accordingly, the proposed injunction would prohibit VIP from using "any" Jack Daniel's trade dress element in such a way as to cause consumer confusion. If it would assuage VIP's concerns, Jack Daniel's would not object to the Court's replacing "any" in the challenged phrase with the word "the," or adding the phrase "in such a manner as to cause confusion as to the source, sponsorship or affiliation of any VIP product with Jack Daniel's."

### B. VIP's Concern Regarding Coverage of "Colorable Imitations" and Other Diluting or Infringing Acts.

VIP's second concern is even less well grounded. It asks this Court to narrow the injunction to <u>only</u> prohibit the sale of the product as identified at trial. (Obj. 2–4.) According to VIP, an injunction enjoining VIP from producing other colorable imitations, other infringements of Jack Daniel's Trademarks or Trade Dress, other diluting or infringing acts is contrary to the law governing permanent injunctions. VIP even goes so far as to say that "the full remedy for JDPI is an injunction enjoining the sale of the Bad Spaniels dog toy—*the only product which has been determined to infringe on JDPI's marks*." (Obj., 2 (emphasis in original).) That statement, however, is *not* the law. To the contrary, the treatise VIP cites repeatedly in its Objections (*McCarthy on Trademarks and Unfair Competition*) states:

> [An] infringer, once caught, must expect some fencing in. For example, even though a certain picture on a package is not itself the subject of trade dress protection, it may be the subject of an injunction. Thus, a court can frame an injunction which will keep a proven infringer safely away from the perimeter of future infringement. For example, an infringer may be banned from certain noninfringing uses of a trademark because of the infringer's behavior in making 'generous use of the plaintiff's marks in the

past.' The court noted that: 'Otherwise unassailable activities may be proscribed where a party has transgressed the governing legal standard.'" McCarthy on Trademarks and Unfair Competition § 30:4 (5th ed.) (quoting *Pebble Beach Co. v. Tour 18 I, Ltd.*, 155 F.3d 526 (5th Cir. 1998) (affirming an injunction that prohibited defendant from making use of plaintiff's marks in certain forms of advertising), *abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc.,* 532 U.S. 23 (2001)).

Indeed, almost every permanent injunction issued in a federal trademark litigation matter is broader than the specific product or language at issue in that particular case. This is necessary, so as to prevent an injunction from being "so narrow as to invite easy evasion." *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1116 (9th Cir. 2012) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949)). For example, earlier this year the Central District of California issued an injunction in *Tapatio Foods, LLC v. Granados*, No. 17-cv-7532-MWF (MRWx), 2018 WL 851314, at *3 (C.D. Cal. Feb. 12, 2018). In *Tapatio*, the defendant sold a hot sauce using the word "Trapatio" instead of "Tapatio." *Id.*, *1. The only difference between the Tapatio marks and defendant's hot sauce name was the addition of the letter "R"—and that defendant's hot sauce was also infused with cannabis and contained THC. *Id.* Unsurprisingly, defendant failed to appear. The Court entered a permanent injunction, finding that defendant's use of similar names and labels, and inclusion of a Schedule 1 drug, all supported plaintiff's trademark infringement and dilution claims. The Court then granted an injunction prohibiting using "any trademarks containing the words Tapatio, Trapatio, *or any marks confusingly similar to Tapatio.*" *Id.*, *3 (emphasis added). Notably, the court did *not* limit the injunction to the cannabis-infused hot sauce at issue in the case, nor even to hot sauces generally; but, instead, issued a broader injunction protecting plaintiff's trademarks from any future infringements by the defendant.

To the same effect is *C & L Int'l Trading Inc. v. Am. Tibetan Health Inst., Inc.*, 77 F. Supp. 3d 322, 326 (S.D.N.Y. 2014), *aff'd sub nom. C & L Int'l Trading Inc. v. Am.*

*Tibet Health Inst., Inc.*, 634 F. App'x 57 (2d Cir. 2016). In *C & L*, the parties both sold Chinese herbal medicinal tea called "Tibetan Baicao Tea," packaged in substantially similar boxes. *Id.*, 324. After a jury trial, defendant was found to be the senior user of the trademark. *Id.* As a remedy, the district granted an injunction prohibiting plaintiff, *inter alia*, from "[u]sing TIBETAN BAICAO TEA, or any reproduction, counterfeit, copy, or colorable imitation of the TIBETAN BAICAO TEA mark." *Id.*, 326. Again, the remedy awarded by the Court was not simply an injunction prohibiting the exact product in dispute, but an injunction which protected the asserted trademark and trade dress from potential future infringements by the losing party.

In accord are *Stark Carpet Corp. v. Stark Carpet & Flooring Installations Corp.*, 954 F. Supp. 2d 145, 164 (E.D.N.Y. 2013) (injunction entered prohibiting, *inter alia*, the use of "'Stark' or 'Stark Carpet' or confusingly similar words in connection with interior design products); and *ITEX Corp. v. Glob. Links Corp.*, 90 F. Supp. 3d 1158, 1174 (D. Nev. 2015) (citing the District of Arizona, the Court recognized that while "[i]njunctive relief . . . should be tailored to eliminate only the specific harm alleged, but *it should not be so narrow as to invite easy evasion*." *Id.* (citing *Skydive Ariz., Inc.*, 673 F.3d at 1116 (internal quotations and citations omitted) (emphasis added)).

VIP's proposal—"[l]imiting the proposed injunction to only the production and sale of the actual Bad Spaniels dog toy"—violates these principles. Following VIP's suggestion and narrowing the injunction to the pictured Bad Spaniels product will result in an order which VIP can easily evade through minor changes to the text on the bottle or changes to the type of toy—undermining this entire litigation. To ensure this proceeding has meaning, the injunction must be broad enough to prohibit VIP from merely tweaking the design to facilitate continuing confusion with Jack Daniel's. In *Tapatio, Stark, C & L, ITEX,* and *Skydive Arizona* the courts entered injunctions which extended beyond the four corners of the trademarks at issue and included *any* "confusingly similar" or "colorable imitations" thereof. This is exactly what Jack Daniel's proposed injunction aims to do. It asks the Court to prohibit VIP from:

> (b) **Sourcing, manufacturing, advertising, promoting displaying, shipping, importing, offering for sale, selling or distributing any other product that reproduces, copies, colorably imitates, or is confusingly similar to, any of the JDPI Trademarks or any elements of the Jack Daniel's Trade Dress** [footnote omitted], as those are depicted below:
>
> * * *
>
> (d) **Doing any other act** that is likely to cause any person to believe that VIP's goods or commercial activities originate with, or are licensed, sponsored, or authorized by, Jack Daniel's;
>
> (e) **Otherwise infringing any of the JDPI Trademarks and/or Trade Dress**, falsely designating the origin of VIP's goods and services, or unfairly competing with Jack Daniel's in any manner whatsoever; and/or
>
> (f) **Engaging in any other act or acts** that dilute any of the JDPI Trademarks or Jack Daniel's Trade Dress, whether by tarnishment or otherwise.

(Obj. 1–2 (emphasis in original), citing Proposed Injunction, ¶ 1.)

VIP does not cite a single case where *any* court held that a permanent injunction must be limited to the specific product at issue and could not cover other acts of trademark infringement or dilution. Because, that simply is not the law. *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 220 (2d Cir. 2003) ("[W]e have also recognized that 'a party who has once infringed a trademark may be required to suffer a position less advantageous than that of an innocent party,'. . . and '*a court can frame an injunction which will keep a proven infringer safely away from the perimeter of future infringement.*'") (emphasis added).

## II.   Paragraph Two

Paragraph two of Jack Daniel's proposed injunction reads (in pertinent part) as follows:

> VIP shall immediately remove from public viewing any and all catalogues, website pages, literature, brochures, business cards, promotional materials, advertising, T-shirts, and any other goods, products and materials depicting or bearing any other reference to VIP's Bad Spaniels product.

(*See* Doc. 249, 4; Obj. 4.) VIP takes issue with three aspects of this paragraph. *First,* VIP argues that the requested "immediate" removal of marketing materials is onerous. VIP provides no evidence to support this assertion, nor has VIP explained why this order should be different from any other order which requires parties to act with alacrity. With neither evidence supporting its attorney's argument nor proof as to how long this removal will take, VIP's objection must be overruled. *Second*, VIP objects to paragraph two as "redundant" and "unnecessary." As explained below, paragraph two is neither. *Finally*, VIP argues that the removal of such marketing materials is outside the scope of harm to be remedied—a completely incorrect contention, since the existence of such marketing materials has the potential of continuing to dilute and infringe the trademarks and trade dress at issue in this case.

### A. VIP's Objections Regarding the Amount of Time to Comply with the Injunction Should Be Overruled.

VIP has known that an injunction would issue in this case since the Court's January 30, 2018 Order (Doc. 245), wherein the Court instructed Jack Daniel's to file a proposed injunction. (*Id.*, 24.) That is, VIP has already had *fifty-nine* days to prepare for the injunction it knew would issue. Likewise, VIP has been aware of Jack Daniel's proposed injunction for *thirty-five* days. By the time this Court rules on these objections, it is likely that VIP will have had more than the forty-five days it now requests to prepare for the issuance of the injunction. VIP's concerns about the "unreasonably short time frame" here are thus moot.

Further, an order demanding "immediate" action inherently understands that the action itself will take some time to accomplish. If it takes forty-five days to remove the infringing material described in this paragraph, that is encompassed within the meaning of the proposed language—provided that VIP does not choose to intentionally delay taking the requested steps. VIP, however, seeks an *additional* forty-five days of permitted *carte blanche* license to continue infringing Jack Daniel's Trademarks and Trade Dress, without explaining why this is necessary. In the absence of any evidence of the need for

additional time, and because VIP has already had sufficient time to remove the requested materials, VIP's request should be rejected.

### B. VIP's Objections that Paragraph Two is Redundant and Unnecessary Should Be Overruled.

VIP next spends a paragraph arguing that requiring VIP to remove from public view its marketing materials is redundant and unnecessary. As to the redundancy argument, nothing much need be said. It is clear from the text of the cited paragraphs that paragraph two is directed towards removing marketing materials from public circulation—a remedy in addition to and not duplicative of the relief afforded in the first paragraph. With respect to the "unnecessary" nature of such relief; nothing could be further from the truth. As established at trial, these products are sold online and the channels of commerce overlap. (*See* Doc. 231-22 (Tr. Ex. 174), 1–2 (Amazon listing for Bad Spaniels product).) Thus, absent an order requiring VIP's marketing of the Bad Spaniel's product to cease, Jack Daniel's customers (and the public at large) will continue to be inundated with advertisements for a product which tarnishes the iconic JACK DANIEL'S brand—and which a large segment of consumers confuse and associate with Jack Daniel's itself. To prohibit marketing which this Court has already found causes significant reputational harm to Jack Daniel's through association of its consumable whiskey products with defecation and dog feces (Order, ¶¶ 37–54; 58–60; 62); association of its whiskey products with toys (*id.*, ¶ 61); and ongoing consumer confusion (*id.*, ¶¶ 68–124) is completely consistent with this Court's prior Order and a proper balancing of the equities.

### C. Removing Marketing Materials Is Within the Scope of the Relief Which This Court May Afford.

VIP argues that the removal of such marketing materials is outside the scope of harm to be remedied, and curbs activities which "simply are not trademark infringement." VIP wrongly asserts that such injunctions are impermissible—and cites no case in support of its contention. Instead, as explained above, in trademark cases, a permanent injunction

- 9 -

may reach beyond the specific product and encompass, non-trademark activities. *See e.g., Toy Mfrs. of America, Inc. v. Helmsley-Spear Inc.,* 960 F. Supp. 673, n.12 (S.D.N.Y. 1997) (the court can enjoin acts that, standing alone, would have been legal; while defendant ordinarily would have a right to require visitors to its Toy Center to register upon entry, it is enjoined from doing so because such registration is part of defendant's actions causing confusion with plaintiff's distinctive trade dress registration system for its toy trade show); *see also McCarthy on Trademarks and Unfair Competition* § 30:4 (5th ed.).

In fact, courts routinely grant the relief Jack Daniel's requests when entering trademark injunctions. *See e.g., Lerma v. Armijo,* No. CV 15-9953 (JEMX), 2017 WL 2233617, at *4 (C.D. Cal. May 22, 2017) (enjoining defendants from using the mark "alone or in combination with other words, or any other colorable imitations of the [] mark in their advertising, marketing, or sale of their products and services or in any other way in connection with the conduct of their business."); *Beachbody, LLC v. Power Trade Direct, et al.*, No. CV-17-2093-DMG (JEMx), 2017 WL 7806624, at *4 (C.D. Cal. Nov. 3, 2017) (ordering defendant to "cancel, withdraw and recall all his promotions, advertisements and merchandise bearing Plaintiff's registered trademarks or any confusingly similar simulation to Plaintiff's registered trademarks."); *BMW of N. Am., LLC et al v. Dalrymple*, No. CV-16-02330-AB (FFMx), 2017 WL 7833629, at *7 (C.D. Cal. Mar. 13, 2017) (ordering defendant "to cancel, withdraw and recall all promotions, advertisements and merchandise bearing Plaintiffs' marks or any confusingly similar simulation to Plaintiffs' marks, which have been published, placed or shipped by Defendant or under his authority.").

It bears repeating that the marketing materials at issue *feature the product which has already been adjudicated to be infringing and diluting Jack Daniel's trade dress*. Permitting VIP to continue distributing such marketing materials will encourage and allow ongoing dilution and infringement of Jack Daniel's trademarks and trade dress—a result squarely at odds with the outcome of this litigation.

Finally, VIP complains that paragraph two would prohibit VIP from posting a notice on its website that the Bad Spaniels product has been discontinued, and would prohibit VIP from informing its distributors and retailers about the Court's order. If these are genuine concerns, Jack Daniel's consents to an additional paragraph in the Court's injunction ordering VIP to undertake these steps.

### III.  Paragraph Three

Paragraph three of Jack Daniel's proposed injunction reads as follows:

> Within fifteen (15) days of the date hereof, VIP shall account to the Court and to Jack Daniel's as to the number of units and the location of all remaining inventory of the Bad Spaniel[s] toy, whether within VIP's own possession or in the possession of any of VIP's distributors and retailers.

(*See* Doc. 249, 4; Obj. 4.) VIP criticizes two aspects of paragraph three of the Proposed Injunction. *First,* VIP argues that the requested fifteen-day reporting requirement is onerous. As was the case with VIP's objection to paragraph two's seeking "immediate" action, VIP has provided no evidence and has not even attempted to explain how it cannot account for the number and location of Bad Spaniels toys in its inventory within the required fifteen-day timeframe. Lacking evidence supporting its attorney argument and proof as to how long this exercise should take, VIP's objection must be overruled.

*Next,* VIP objects that it does not have the authority to "compel VIP's distributors to provide such information." (Obj., 6.) This objection ignores the realities of commerce where distributors and suppliers, virtually without exception, share inventory levels so as to keep a steady stream of products in the pipeline for sale to consumers. It would be the odd case indeed where a distributor would not share with his supplier what the distributor's inventory levels were. (Perhaps this is why VIP does not say it cannot obtain this information, but rather asserts that it cannot "compel" such information.) In any event, the proposed injunction does not require VIP to compel anything—a simple request for information from its distributors will suffice.

Finally, such information is necessary for Jack Daniel's to understand how many Bad Spaniels toys are in the supply chain, so it can monitor the sales of such products and protect its trademarks and trade dress from further dilution and infringement.

## IV. Paragraph Four

Paragraph four of Jack Daniel's proposed injunction reads as follows:

> Within forty-five (45) days of the date hereof, VIP shall, pursuant to 15 U.S.C. § 1118 and A.R.S. § 44-1451(B)(5), deliver up to the Court for destruction or other disposition, or shall cause to be destroyed, all Bad Spaniels toys within its possession, custody, or control, together with all labels, signs, prints, packages, wrappers, receptacles and advertisements bearing the trade dress of the Bad Spaniels toy, and all plates, molds, matrices and other means of making the same.

(*See* Doc. 249, 4; Obj. 4.) VIP objects to three aspects of this paragraph. *First,* VIP again argues that the timeframe (forty-five days) for destruction is "onerous." VIP again fails to provide any evidence supporting this assertion. In addition, as stated above in footnote 1 and in Jack Daniel's Opposition to VIP's Request to Stay the Injunction, Jack Daniel's agrees to stay the destruction described in paragraph four pending appeal, provided the materials to be destroyed are held by VIP's counsel.

*In addition,* VIP objects that destruction is merely "permissive" and that Jack Daniel's has some affirmative duty to prove entitlement to the relief permitted under 15 U.S.C. § 1118. That is not the case. Section 1118 of the Lanham Act, like section 1117, is subject to the principles of equity, and does not place the burden on Jack Daniel's to prove that destruction is necessary. Here, the equities weigh in favor of prohibiting the future dissemination of the infringing and diluting products. (*See* Order, ¶ 127.) VIP has failed to explain what it intends to do with a warehouse of infringing and diluting toys which it cannot sell. Permitting VIP to serve as the bailee for such products will only tempt VIP to violate this Court's order. Finally, it is this Court's practice to order the destruction of infringing products which have no non-infringing uses—as opposing counsel well knows. *See BMW of N. Am., LLC v. Mini Works, LLC*, No. CV-07-1936-

PHX-SMM, 2010 WL 11484171, at *19 (D. Ariz. Sept. 27, 2010), *aff'd sub nom. BMW of N. Am. v. Mini Works, LLC*, 463 F. App'x 689 (9th Cir. 2011).

## V. Paragraph Five

Paragraph five of Jack Daniel's proposed injunction reads as follows:

> VIP shall instruct its supplier of the Bad Spaniels product to destroy all computer aided design and other electronic files and any molds from which such products are made.

(*See* Doc. 249, 4; Obj. 9.) VIP takes issue with two aspects of paragraph five of the Proposed Injunction. *First,* VIP argues that there is no basis for the paragraph and that it goes beyond what is necessary in order to secure Jack Daniel's rights. Nothing could be further from the truth—the record at trial has established that the electronic files and molds were deliberately created to copy the famous square Jack Daniel's bottle, one of the trademarks asserted in this case. (*See* Order, ¶¶ 10–15.) To allow VIP to continue to make bottles using these same molds would allow VIP to sidestep this entire litigation and undermine this Court's findings. There is no use for these molds or related manufacturing assets other than to create infringing products contrary to this Court's order. The fact that VIP is contesting this paragraph strongly suggests that VIP has plans to continue to manufacture a Bad Spaniels-type product in the teeth of this Court's contrary ruling.

VIP's second objection—seeking a delay of the destruction of these items until after appeal, has already been agreed to by Jack Daniel's provided the materials to be destroyed are held by VIP's counsel.

## VI. Paragraph Six

Paragraph six of Jack Daniel's proposed injunction reads as follows:

> Within sixty (60) days of the date hereof, VIP shall file with the Court and serve on counsel for Jack Daniel's a report, in writing, under oath, setting forth in detail the manner and form in which it has complied with this injunction pursuant to 15 U.S.C. 1116. Said report shall attest to the Court and to Jack Daniel's as to the details of the destruction of products and

- 13 -

materials ordered under paragraphs 4 and 5 hereof, including the date, place, number of products and other materials destroyed, and the means of destruction.

(*See* Doc. 249, 4–5; Obj., 10.) VIP states that paragraph six rises and falls with paragraphs four and five. Thus, for the reasons stated above with respect to paragraphs four and five, paragraph six should be entered as part of this Court's permanent injunction.

## VII. Paragraphs Seven and Eight

VIP does not object to paragraphs seven and eight.

## VIII. VIP's Global Objection

VIP's final "objection" is of exceptional concern. It suggests that VIP, a Phoenix, Arizona company, intends to sidestep this Court's order and to continue to sell the infringing and diluting Bad Spaniels product internationally. That is, being enjoined from selling the product in the United States, VIP plans to seek extraterritorial venues in which to unload a product found to infringe and tarnish Jack Daniel's global brand. The injunction as proposed, however, would prohibit this behavior, and is consistent with case law cautioning against "invit[ing] easy evasion." *Skydive Arizona*, 673 F.3d at 1116.

VIP argues that the Court may not enjoin foreign activity without going through a complicated, multi-factor analysis such as that done in *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 969 (9th Cir. 2016). That is simply not the case. In *Trader Joe's*, the Court dealt with a *foreign defendant* using Trader Joe's trademarks *in a foreign country*. *Id.* The same is true of each of VIP's cited cases. All involve the activities of foreign defendants outside the U.S. In *Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952), defendant was alleged to have stamped the name 'Bulova' on watches assembled and sold in Mexico. In *Timberlane Lumber Co. v. Bank of America National Trust & Savings Ass'n*, 549 F.2d 597 (9th Cir. 1976), the claim was that individuals in the United States and Honduras conspired to prevent Timberlane, through its Honduras subsidiaries, from milling lumber in Honduras and exporting it to the United States. In *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 427 (9th Cir. 1977), plaintiff alleged that Wells Fargo Express

Company, A.G. ("A.G."), a Liechtenstein corporation, infringed U.S. trademarks. In *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 612 (9th Cir. 2010), the defendants resided, and the allegedly infringing activities occurred, in Great Britain.

VIP thus presents a false argument with respect to alleged considerations of "international comity" and the three-part *Timberlane* test. Where a U.S. defendant is properly subject to personal jurisdiction here, and has designed and sold an infringing product in the United States, there is no right to move those infringing sales overseas to side-step United States law. None of the cases cited by VIP so holds.

## CONCLUSION

For the foregoing reasons, VIP's Objections should be overruled and the Court should issue the form of injunction proposed by Jack Daniel's.

Respectfully submitted this 30th day of March, 2018,

        */s/ Isaac S. Crum*
        Isaac S. Crum (AZ Bar #026510)
        RUSING LOPEZ & LIZARDI PLLC
        6363 N. Swan Road, Suite 151
        Tucson, Arizona 85718
        Telephone:   (520) 529-4274
        Facsimile:    (520) 529-4274
        Email: icrum@rllaz.com

        D. Peter Harvey (admitted pro hac vice)
        Harvey & Company
        Four Embarcadero Center, 14th Floor
        San Francisco, CA 94111
        Telephone:   (415) 926-7776
        Facsimile:    (415) 402-0058
        Email: pharvey@harvey.law

        *Attorneys for Defendant and Counterclaimant Jack Daniel's Properties, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served this 30th day of March, 2018, via Notice of Electronic Filing, generated and transmitted by the ECF system of the District of Arizona, to all attorneys of record in this case.

/s/ *Isaac S. Crum*

Isaac S. Crum