Firm E-Mail: courtdocs@dickinsonwright.com

David G. Bray (#014346)
dbray@dickinsonwright.com
David N. Ferrucci (#027423)
dferrucci@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
Phone: (602) 285-5000
Fax: (844) 670-6009

*Attorneys for Plaintiff/Counterdefendant VIP Products, L.L.C*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| VIP Products L.L.C., an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Jack Daniel's Properties, Inc., a Delaware corporation,<br><br>Defendant. | Case No. 2:14-cv-02057-SMM<br><br>**VIP PRODUCTS LLC'S LIMITED REPLY IN SUPPORT OF GLOBAL OBJECTION** |

VIP Products LLC ("VIP") hereby files its *Limited Reply in Support of Global Objection*. Jack Daniel's Properties, Inc.'s ("JDPI") *Response* to VIP's global objection incorrectly intimates that this Court may ignore the Ninth Circuit's holding that a Court may enjoin extraterritorial conduct only after conducting a *Timberlane* analysis, so long as the alleged infringer is an American citizen.

JDPI cites no case for the proposition that the Court may ignore, solely because of the citizenship of an alleged infringer, clear and binding case law that the *Timberlane* analysis is the sole and exclusive manner in which the Court must determine whether the Lanham Act will reach extraterritorial conduct. JDPI cites no case because it cannot as that is clearly not the law. Regardless of the alleged infringer's citizenship, a court must apply the same *Timberlane* analysis in determining whether it has the power to enjoin extraterritorial conduct. This is consistent with *Timberlane* itself which contemplates the relevance of the parties' citizenship by including an analysis of the "nationality or allegiance of the parties and the locations or principal places of business of corporations" as part of the third factor. *Timberlane Lumber Co. v. Bank of Am., N.T. & S.A.*, 549 F.2d 597, 614 (9th Cir. 1976).

As VIP set forth in its Objection, the requirement that the Court consider its power to enjoin extraterritorial conduct comes straight from the language of the Lanham Act. The Act applies to confusion that occurs in "commerce." The Act defines commerce as "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127. The Ninth Circuit has explained that "[w]hether this provision sweeps foreign activities into the Act's proscriptive reach depends on a three-part test we originally applied to the Sherman Act in *Timberlane Lumber Co. v. Bank of America National Trust & Savings Ass'n*, 549 F.2d 597 (9th Cir. 1976)." *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 969 (9th Cir. 2016).

Rather than grapple with *Timberlane*, or concede that this Court lacks a factual or legal basis to undertake a *Timberlane* analysis, JDPI instead asserts that the cases VIP cites are distinguishable because "[a]ll involve the activities of foreign defendants

2

outside the U.S."[1] Resp. at 14:20-21. JDPI's clever twist[2] ignores the fact that nearly all of these cases also involved an American alleged infringer whose foreign conduct the plaintiff sought to enjoin. For example, the very first sentence of the very first case JDPI points to, *Steele v. Bulova Watch Co., Inc.*, declares the case to involve an American company suing "a citizen and resident of the United States" for conduct occurring in a foreign country. *Steele v. Bulova Watch Co.*, 344 U.S. 280, 281, 73 S. Ct. 252, 253 (1952) (emphasis added).

And regardless of the defendants' citizenship in the cases cited, each court either applied *Timberlane* or undertook a similar analysis to determine whether it had the power to enjoin the alleged infringer's extraterritorial conduct. For example, in *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, the court undertook the *Timberlane* analysis without first stopping to note the citizenship of the alleged infringers. 556 F.2d 406 (9th Cir. 1977). The same is true in *Love v. Associated Newspapers*, 611 F.3d 601 (9th Cir. 2010). In other words, the court saw no need to pause and ascertain whether the alleged infringers were citizens of the United States in order to decide whether to apply *Timberlane*. Instead, each court simply proceeded to "analyze the Lanham Act's coverage of foreign activities under a three-part [*Timberlane*] test originally developed

---

[1] JDPI appears to also imply that the issue of extraterritorial application is jurisdictional and that because the Court has personal jurisdiction over VIP, it is therefore free to enjoin whatever conduct it wants wherever it occurs in the world. *See* Resp. 15:5-8. JDPI ignores, however, that the Ninth Circuit expressly rejected the notion that this is a jurisdictional issue. "Trader Joe's argues on appeal that *the extraterritorial reach of the Lanham Act is a non-jurisdictional merits question,* and that the Supreme Court's decision in *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 126 S.Ct. 1235 (2006), abrogated circuit case law suggesting otherwise. . . . *We agree*." *Trader Joe's Co.*, 835 F.3d at 966 (emphasis added).

[2] JDPI's representation implies that each of the cited cases only involves *foreign* defendants. As noted, this is not true. The Ninth Circuit has repeatedly applied *Timberlane* to determine whether it can enjoin American alleged infringers' conduct internationally.

3

in the antitrust context." *Love*, 611 F.3d at 612. The clear import from these cases is that one test exists for determining whether the court can enjoin conduct extraterritorially, and it is the same test regardless of the citizenship of the alleged infringer.

JDPI's argument is further undercut by the existence of a number of cases between American litigants. In *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, the trademark dispute arose between two California corporations over international conduct. *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393, 1394 (9th Cir. 1985). Rather than assert citizenship as a basis for extraterritorial application (because this is not the law), the parties litigated the *Timberlane* factors and the court's conclusions were based upon that analysis. Likewise, in *Ocean Garden, Inc. v. Marktrade Co., Inc.*, the trademark dispute once again arose between two California corporations over international conduct. Once again, the Court did not determine it could enjoin conduct based on citizenship alone. And once again the court assessed the *Timberlane* factors in reaching its conclusion. 953 F.2d 500, 502-503 (9th Cir. 1991).

### Conclusion

Extraterritorial application of an injunction is a merits-based inquiry that requires the application and consideration of the factors set forth in *Timberlane*. Here, there is simply insufficient evidence on the record for this Court to undertake that inquiry. JDPI does not argue otherwise. As a result, the Court lacks information sufficient to conclude it can enjoin conduct extraterritorially, and therefore the injunction must be limited in geographic scope to conduct within the United States.

**DATED** this 6th day of April, 2018.

                          **DICKINSON WRIGHT PLLC**

                          By: *s/David Bray*
                              David G. Bray
                              *Attorneys for VIP Products, L.L.C.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 6, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

                                                                        /s/ Janet Hawkins

PHOENIX 53913-11 449666v1