Firm E-Mail: courtdocs@dickinsonwright.com
David G. Bray (#014346)
dbray@dickinsonwright.com
David N. Ferrucci (#027423)
dferrucci@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
Phone: (602) 285-5000
Fax: (844) 670-6009
*Attorneys for Plaintiff/Counterdefendant VIP Products, L.L.C*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| VIP Products L.L.C., an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Jack Daniel's Properties, Inc., a Delaware corporation,<br><br>Defendant. | Case No. 2:14-cv-02057-SMM<br><br>**VIP PRODUCTS LLC'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE LIMITED REPLY IN SUPPORT OF GLOBAL OBJECTION** |

In its *Opposition to VIP's Motion for Leave*, (Dkt. 259), JDPI ignores the 9th Circuit's directive that an injunction be narrowly tailored, binding precedent that requires a *Timberlane* analysis, and erroneously tells this Court, once again, that the sky is the limit on its authority to enter an injunction. For all of the blustering, however, JDPI's *Opposition* fails to articulate a reason as to why this Court should deny VIP's request for leave to file a reply. Instead, JDPI appears to have seized upon the opportunity to treat its opposition as a surreply, using it to respond to points raised in

VIP's *Proposed Reply*.¹ Given this posture, the Court should grant VIP's Motion for Leave to File a Limited Reply, and deny JDPI's request for leave to file a surreply. *See Opposition,* Dkt. 259 at 2:15-3:2.

The basis for VIP's request for leave is that VIP should be afforded a full opportunity to respond to JDPI's arguments that the Court has authority to enjoin conduct anywhere in the world—arguments that were raised for the first time in JDPI's Response to VIP's Objection to Proposed Injunction. *Motion for Leave,* Dkt. 258 at 1:25-2:2. It is patently unfair to enjoin VIP *worldwide* without allowing VIP to respond to JDPI's asserted legal basis for such a broad injunction. Rather than explain to this Court why VIP should not be afforded such an opportunity, JDPI takes the view that VIP's *Proposed Reply* is simply wrong on the law, and therefore the court need not consider the *Proposed Reply*. *See Opposition*, Dkt. 259 at 1:12-2:15.

VIP's *Proposed Reply* is not wrong on the law. On the contrary, it is JDPI that is laboring under an incorrect understanding of the permissible scope of an injunction under the Lanham Act. The crux of the issue raised in VIP's Global Objection is that "[i]njunctive relief under the Lanham Act must be narrowly tailored to the scope of the issues tried in the case." *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1116 (9th Cir. 2012); *see also* Dkt. 251 at 3:3-9. The body of case law VIP relies on in its *Objection* and *Proposed Reply* stand collectively for the proposition that, in order to obtain extraterritorial relief, the issue must be presented to and analyzed by the trial court. In other words, an injunction cannot be "narrowly tailored to the scope of the

---

¹ Consider, for example, JDPI's efforts to "clarify Jack Daniel's original response" in footnote 1 in light of the arguments set forth by VIP in its *Proposed Reply*. That is plainly the stuff of a surreply.

2

issues tried in the case" if it enjoins international conduct without first undertaking a *Timberlane* analysis.[2]

That the Court must consider its authority to issue an extraterritorial injunction, in accordance with *Timberlane*, based upon evidence before it is confirmed by the Second Circuit's holding in *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 745 (2d Cir. 1994). In *Bayer*, a trademark dispute arose over conduct wholly contained in the United States. Despite the domestic nature of the allegedly infringing activity, and without undertaking an analysis akin to *Timberlane*, the district court nevertheless issued an injunction enjoining the defendant internationally as well as domestically. The Second Circuit flatly rejected the injunction to the extent it applied extraterritorially explaining:

> In the instant case, the District Court granted an injunction with extensive extraterritorial effects **without adequately considering its power to do so under the Lanham Act**. The Court did not examine the *Vanity Fair* factors to see whether they supported an extraterritorial injunction, nor did it explicitly eschew the *Vanity Fair* analysis as inadequate for the instant facts. **Because the District Court failed to make the necessary findings to support the extraterritorial reach of its injunction, we vacate the injunction's extraterritorial provisions** and remand for further analysis as to the scope of such extraterritorial relief as may be warranted.

---

[2] In its *Opposition*, JDPI attempts to distinguish *Timberlane*, *Trader Joe's*, and *Bulova Watch* for various reasons. *See e.g., Opposition*, Dkt. 259 at 1:8-11. JDPI's efforts fail, however, because JDPI misses the common thread binding these cases together. The cases make clear that the Court has authority to adjudicate trademark infringement disputes only to the extent so authorized by the Lanham Act. Thus, before issuing an injunction, the Court must assure itself that it has authority to do so under the Lanham Act. The cited cases model that process of assurance, which is the *Timberlane* analysis. The cases are clear that the Lanham Act does not reach all conduct everywhere in the world, and there is no carve-out in the statute—and JDPI points to no case law—that allows this Court to ignore the limits of the Lanham Act's reach under the facts here.

*Id.* (Emphasis added). The Second Circuit's rationale applies with equal force here. The Court simply lacks the necessary evidence from which it could conclude that an injunction with extraterritorial application is appropriate or justified.

As a practical point, it is obvious that the injunction must be limited in geographic scope based on the evidence presented to the Court. If JDPI is right—although it is not—a trademark holder could argue its mark is being infringed in one geographic area, and based on that evidence, argue to the court all activity anywhere should be enjoined. Such a view would obviate the need to ever conduct a *Timberlane* analysis where conduct in the United States by an American defendant is at issue, because the party could use the finding of infringement in the United States as a basis to enjoin all conduct anywhere in the world, *without regard* to principles of international comity, the respective rights between the parties in other countries, and whether the Lanham Act could even apply.

Here, VIP's *Objection* and *Proposed Reply* point out that the Court was only presented with evidence concerning U.S. consumers. *Objection,* Dkt. 251 at 12:21-13:4, *Proposed Reply* at 4:17-20. JDPI's advertising, sales, and market share in the United States, and both parties' experts surveys and focus groups tested the opinions of only U.S. consumers. No evidence was presented concerning the parties' rights in other countries, their market share for their respective products, the risk of consumer confusion, or any other evidence that bears on the *Sleekcraft* factors. Such evidence cannot simply be extrapolated out into the rest of the world. That this Court determined there is a likelihood of confusion *in the United States* warranting injunction does not bear on the risk of confusion elsewhere in the world. The same is true of the risk of tarnishment. Had JDPI wanted such a broad injunction, it should have sought such relief

4

from the outset of this litigation, and presented evidence that would have permitted the Court to engage in a *Timberlane* analysis.

At bottom, VIP seeks to file a reply in support of its Objection, not "to file yet another brief",[3] but merely to fully respond to JDPI's attempts to seek an overbroad injunction, and address JDPI's incorrect recitations of the law. Not only does JDPI remain stalwart in its refusal to recognize that the Court's authority is not unlimited simply because JDPI wants it to be, but JDPI continues to press for an ultimately unsupportable view of the law. The Court should reject these dogged efforts to distort the law, grant VIP's motion for leave, and limit the scope of the injunction to the United States.

**DATED** this 20th day of April, 2018.

**DICKINSON WRIGHT PLLC**

By: *s/David Bray*
    David G. Bray
    *Attorneys for VIP Products, L.L.C.*

---

[3] JDPI's efforts to cast aspersions aside, VIP's Global Objection and *brief* four-page *Proposed Reply* are valid efforts to protect VIP's rights and interests. JDPI apparently believes that VIP should simply roll over and let JDPI have whatever injunction it desires—this should give the Court pause. JDPI offers no support for its implicit contention that a party loses all ability to assert rights upon an adverse finding by the court.

5

Case 2:14-cv-02057-SMM   Document 260   Filed 04/20/18   Page 6 of 6

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*/s/ Janet Hawkins*

PHOENIX 53913-11 453433v1

6