IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| VIP Products, LLC, | No. CV-14-2057-PHX-SMM |
| Plaintiff, | |
| vs. | **PERMANENT INJUNCTION AND FINAL JUDGMENT** |
| Jack Daniel's Properties, Inc., | **&** |
| Defendant. | **ORDER** |
| And Related Counterclaims. | |

The Court held a four-day bench trial in this matter from October 2, 2017 through October 5, 2017. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court, having heard the evidence and determined the credibility of witnesses, entered its Findings of Fact, Conclusions of Law, and Order ("Order") on January 30, 2018. (Doc. 245.) The Court found in favor of Defendant Jack Daniel's Properties, Inc. ("Jack Daniel's") and against Plaintiff VIP Products, LLC ("VIP") on all remaining claims, namely, Jack Daniel's claims of trademark and trade dress infringement and dilution by tarnishment. (Id.) Based on VIP's violations, the Court further determined that Jack Daniel's was entitled to permanent injunctive relief. (Id.) Consequently, the Court ordered Jack Daniel's to submit a proposed permanent injunction, to which VIP responded, and Jack Daniel's replied in support. (Docs. 249, 251, 257.) Also pending before the Court is VIP's motion to stay permanent injunction pending appeal. (Doc. 252.) The briefing is complete. (Docs. 255,

256.)

## I. Scope of Permanent Injunction

Injunctive relief "is historically designed to deter, not punish[.]" Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 62 (1975) (further citation omitted). "[A] district court should only include injunctive terms that have a common sense relationship to the needs of the specific case, and the conduct for which a defendant has been held liable." MGM Studios, Inc. v. Grokster, Ltd., 518 F. Supp.2d 1197, 1226 (C.D. Cal. 2007) (citing NLRB v. Express Publ'g Co., 312 U.S. 426, 435 (1941)).

The Court will enjoin VIP from engaging in acts "which are the same type and class as [the] unlawful acts which the [C]ourt has found to have been committed" by VIP. Express Publ'g, 312 U.S. at 435; see Rondeau, 422 U.S. at 62 (stating that injunctive relief was designed "to permit the court to mould each decree to the necessities of the particular case") (further citation omitted). The permanent injunction entered against VIP is set forth in full at the end of this Order. In summary,

## II. Stay of Injunction Pending Appeal

Pursuant to Fed. R. Civ. P. 62(c) and Fed. R. App. P. 8(a)(C), the Court has discretion to grant a stay pending appeal of the permanent injunction. Rule 62(c) provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Courts have cautioned that under these rules, a stay of a permanent injunction pending appeal is a remedy granted sparingly. See Adams v. Walter, 488 F.2d 1064, 1065 (7th Cir.1973); United States v. Texas, 523 F. Supp. 703, 729 (E.D. Tex. 1981) (stating that since such an action interrupts the ordinary process of judicial review and postpones relief for the prevailing party at trial, the stay of an equitable order is a remedy granted sparingly).

The Supreme Court has identified four factors that must be considered: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the

1  stay will substantially injure the other parties interested in the proceeding; and (4) where the
2  public interest lies." Hilton v. Braunskill, 481 U.S. 770, 776 (1987). In its evaluation of the
3  factors required for issuance of a stay, the Ninth Circuit requires the moving party to show
4  "*both* a probability of success on the merits and the possibility of irreparable injury." Golden
5  Gate Restaurant Ass'n v. City and County of San Francisco, 512 F.3d 1112, 1116 (9th Cir.
6  2008) (emphasis added). The Ninth Circuit further requires that the moving party
7  demonstrate both that serious legal questions are raised and that the balance of hardships tips
8  sharply in its favor. Id.

9  Regarding the probability of success on the merits and that serious legal questions are
10 raised, the Court has judged the credibility of the witnesses at trial, found the facts, and has
11 applied binding Ninth Circuit law to the issues of dilution by tarnishment, as well as
12 trademark and trade dress infringement, and found against VIP. See 15 U.S.C. §§ 1114,
13 1125. "[T]he cry of 'parody!' does not magically fend off otherwise legitimate claims of
14 trademark infringement or dilution." Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,
15 109 F.3d 1394, 1405 (9th Cir. 1997) (further citation omitted). On appeal, the Court
16 recognizes that the Ninth Circuit has the authority to reconsider its position on some or all
17 issues.

18 Regarding the possibility of irreparable injury, the Court finds that VIP cannot make
19 the required showing, and thus is not entitled to a stay of the permanent injunction. Although
20 VIP alleges that the Court's permanent injunction will cause it irreparable injury because the
21 Order will cause the destruction of all the Bad Spaniel's dog toys, all computer-aided design
22 and other electronic files, and any molds from which the Bad Spaniel's product has been
23 made, the Court's permanent injunction does not so order. The permanent injunction only
24 requires VIP to gather up and control these items, pending appeal, not destroy them.

25 Further, under Ninth Circuit precedent, because Jack Daniel's established a likelihood
26 of confusion between its trademarks/trade dress and VIP's Bad Spaniel's product, it is
27 presumed that Jack Daniel's will suffer irreparable harm if injunctive relief is not granted.
28 See Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 612 n.3 (9th Cir. 1989). Here, the

1  evidence at trial established that there was a strong likelihood of confusion among the
2  consuming public. Reliable survey evidence proved that over 29% of consumers thought
3  Jack Daniel's made, sponsored or approved the "Bad Spaniels" dog toy.

4  Moreover, not only did Jack Daniel's establish a likelihood of confusion between its
5  trademarks/trade dress and VIP's Bad Spaniel's product, Jack Daniel's also established that
6  VIP's Bad Spaniel's product caused dilution by tarnishment to Jack Daniel's trademarks and
7  trade dress.

8  Thus, the Court finds that VIP has not established that it will suffer irreparable harm
9  from an order enjoining VIP's sale of the "Bad Spaniels" toy, and the gather-up process that
10 must be undertaken, pending appeal.

11 Similarly, VIP has not established that the balance of hardships tips sharply in its
12 favor. In evaluating the balance of hardships the Court considers the impact the permanent
13 injunction will have on the respective enterprises. See International Jensen, Inc. v.
14 Metrosound U.S.A., Inc., 4 F.3d 819, 827 (9th Cir. 1993). VIP acknowledged at trial that the
15 Bad Spaniel's dog toy was not a big seller. In contrast, as Dr. Itamar Simonson testified and
16 this Court found, by juxtaposing dog feces and defecation against a consumable product like
17 whiskey, the Bad Spaniel's dog toy created negative mental associations in the mind of
18 consumers, thereby tarnishing the Jack Daniel's brand. The Court finds that the balance of
19 hardship does not tip sharply in favor of VIP; rather, the opposite is true. Thus, VIP has not
20 established that the Order enjoining VIP's sale of the "Bad Spaniels" toy, and the gathering-
21 up process that must be undertaken by VIP, tips the balance of hardship sharply in its favor
22 pending appeal.

23 Finally, when the Court considers the public interest, the analysis for the issuance of
24 an injunction requires consideration whether there exists some critical public interest that
25 would be injured by the grant of injunctive relief. See Independent Living Ctr. of S. Cal.,
26 Inc. v. Maxwell-Jolly, 572 F.3d 644, 659 (9th Cir. 2009), vacated and remanded on other
27 grounds, Douglas v. Independent Living Ctr. of S. Cal., Inc., 565 U.S. 606 (2012).
28 Regarding the likely public interest consequences of the injunction, "[s]uch consequences

1  must not be too remote, insubstantial, or speculative and must be supported by evidence."
2  Stormans, Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2009).
3      Here, the public interest served by the permanent injunction is in the nature of
4  preventing continued consumer confusion and deception caused by the Bad Spaniel's
5  product.
6      Therefore, based on an evaluation of all the Hilton factors, VIP has failed to establish
7  that it is entitled to a stay of the permanent injunction pending appeal. The Ninth Circuit
8  requires the moving party to show "*both* a probability of success on the merits and the
9  possibility of irreparable injury." Golden Gate Restaurant, 512 F.3d at 1116. There is no
10 possibility of irreparable injury to VIP. The Court's permanent injunction will not destroy
11 all the Bad Spaniel's dog toys, or the computer-aided design and other electronic files, or the
12 molds from which the Bad Spaniel's product has been made; the permanent injunction
13 enjoins the sale of the infringing/tarnishing product and only requires VIP to gather up and
14 control the product, pending appeal, not destroy.  Furthermore, VIP has failed to establish
15 that the balance of hardship tips sharply in its favor or that the public interest favors VIP.

### III. Injunction Bond on Appeal

17     Rule 62(c) provides authority for issuance of an injunction bond pending appeal, "on
18 terms that secure the opposing party's rights." Fed. R. Civ. P. 62(c). Federal case law
19 confirms that an injunction bond requirement has several important purposes. First, an
20 injunction bond provides a fund for the compensation of an enjoined party who may suffer
21 from an injunction not upheld on appeal. See National Kidney Patients Assoc. v. Sullivan,
22 958 F.2d 1127, 1134 (D.C. Cir. 1991). As a rule, courts presume damages against the bond
23 if the injunction is not upheld. See Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 210
24 (3rd Cir. 1990). Secondly, the bond provides the injunction holder with notice of the
25 maximum extent of its potential liability since the amount of the bond is the limit of the
26 damages a party can obtain for an injunction not upheld on appeal. See Continuum Co. v.
27 Incepts, Inc., 873 F.2d 801, 803 (5th Cir.1989) (citing Buddy Systems, Inc. v. Exer-Genie,
28 Inc., 545 F.2d 1164, 1168 (9th Cir. 1976).

The Court's permanent injunction enjoins the sale of the infringing/tarnishing product and requires that VIP gather up all remaining Bad Spaniel's dog toys, all computer-aided design and other electronic files, and any molds from which the Bad Spaniel's product has been made. Therefore, pursuant to Rule 62(c), the Court will require that the injunction holder, Jack Daniel's, establish an injunction bond in the amount of $50,000.

## IV. Conclusion

**IT IS HEREBY ORDERED** granting Defendant Jack Daniel's Properties Inc. a Permanent Injunction and Final Judgment against Plaintiff VIP Products LLC.

Pursuant to Fed. R. Civ. P. 52(a), the Court heard the evidence, determined the credibility of witnesses, and entered its Findings of Fact, Conclusions of Law, and Order. The Court found in favor of Defendant Jack Daniel's Properties, Inc. and against Plaintiff VIP Products, LLC on all remaining claims, namely, Jack Daniel's claims of trademark and trade dress infringement and dilution by tarnishment regarding VIP's Bad Spaniels dog toy. Pursuant to Fed. R. Civ. P. 65(d), based on VIP's violations, the Court finds that Jack Daniel's is entitled to permanent injunctive relief, as follows:

**1.** VIP and its agents, servants, officers, directors, owners, representatives, employees, successors, attorneys, assigns and all other persons in active concert or participation with them, or any of them, who receive actual notice of this injunction by personal service or otherwise, are hereby PERMANENTLY ENJOINED, effective as of the date of this Permanent Injunction and Final Judgment, from sourcing, manufacturing, advertising, promoting, displaying, shipping, importing, offering for sale, selling or distributing the Bad Spaniels dog toy, as depicted below:



**2.** By **Friday, June 22, 2018**, VIP shall remove from public viewing any and all catalogues, website pages, literature, brochures, business cards, promotional materials, advertising, T-shirts, and any other goods, products and materials depicting or bearing any other reference to VIP's Bad Spaniels product.

**3.** By **Friday, June 22, 2018**, VIP shall account to the Court and to Jack Daniel's as to the number of units and the location of all remaining inventory of the Bad Spaniel's toy.

**4.** By **Friday, July 6, 2018**, VIP shall, pursuant to 15 U.S.C. § 1118 and A.R.S. § 44-1451(B)(5), gather up and control all of the remaining inventory of the Bad Spaniels toys, together with all labels, signs, prints, packages, wrappers, receptacles and advertisements bearing the trade dress of the Bad Spaniels toy, and all plates, molds, matrices and other means of making the same.

**5.** By **Friday, July 6, 2018**, VIP shall also gather up and control from its supplier of the Bad Spaniels product all computer-aided design and other electronic files and any molds from which such products are made.

**6.** By **Friday, July 20, 2018**, VIP shall file with the Court and serve on counsel for Jack Daniel's a report, in writing, under oath, setting forth in detail the manner and form in which it has complied with this injunction pursuant to 15 U.S.C. § 1116. Said report shall attest to the Court and to Jack Daniel's as to the details of the gathering up and control process of the products and materials ordered under paragraphs 4 and 5 hereof.

**7.** With the exception of any motion Jack Daniel's may elect to file for attorneys' fees pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, and to any Bill of Costs to be settled by the Clerk of Court, this Permanent Injunction and Final Judgment shall finally conclude and dispose of all claims and counterclaims in this action with prejudice, and the Clerk of Court shall terminate this case.

**8.** The Court shall retain jurisdiction over this matter to ensure that the terms and conditions of this Permanent Injunction and Final Judgment are honored and enforced.

**IT IS FURTHER ORDERED** denying VIP Products LLC's motion to stay permanent injunction pending appeal. (Doc. 252.)

**IT IS FURTHER ORDERED** setting a Fed. R. Civ. P. 62(c) Injunction Bond pending appeal in the amount of $50,000. By **Friday, May 18, 2018**, Jack Daniel's shall post the Injunction Bond with the Clerk of Court pending disposition of VIP's proposed appeal of this matter with the Ninth Circuit Court of Appeals.

**IT IS FURTHER ORDERED** denying as moot VIP Products LLC's motion for leave to reply in support of Global Objection. (Doc. 258.)

DATED this 2nd day of May, 2018.

*[signature]*

Stephen M. McNamee
Senior United States District Judge