RUSING, LOPEZ & LIZARDI, P.L.L.C
Isaac S. Crum
icrum@rllaz.com
6363 North Swan Road, Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4274
Facsimile: (520) 792-4274

HARVEY & COMPANY
D. Peter Harvey (admitted *pro hac vice*)
pharvey@harvey.law
Four Embarcadero Center, 14th Floor
San Francisco, CA 94111
Phone: (415) 926-7776
Fax: (415) 402-0058

Attorneys for Defendant and Counterclaimant,
JACK DANIEL'S PROPERTIES, INC.

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| VIP PRODUCTS, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JACK DANIEL'S PROPERTIES, INC.,<br><br>　　　　　Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. CV-14-2057-PHX-SMM<br><br>**JACK DANIEL'S MOTION FOR ATTORNEYS' FEES** |

Defendant and Counterclaim Plaintiff Jack Daniel's Properties, Inc ("Jack Daniel's") submits this Motion for Attorneys' Fees from Plaintiff and Counterclaim Defendant VIP Products, LLC ("VIP"). In support of this motion, Jack Daniel's is lodging the Declarations of Mr. Isaac S. Crum ("Crum Decl."), Mr. D. Peter Harvey ("Harvey Decl."), and Ms. Laurie Ochs ("Ochs Decl."). Jack Daniel's is concurrently moving to seal these declarations.

## FACTUAL AND PROCEDURAL BACKGROUND

VIP has infringed a famous alcohol brand through a scatological dog toy. It devised a filthy message. It commissioned a knockoff label. It enlisted a foreign manufacturer. It sold the resulting product under its "Silly Squeakers" line. Litigation ensued. Although the famous alcohol brand did not seek monetary damages, it successfully defended a cherished reputation that dates to the 1870s. It commissioned an *Ever-Ready* survey from a noted expert. It proved that roughly three in ten consumers were confused. VIP responded that its dog toy was just a "parody." The court held otherwise, observing: "[T]he cry of 'parody!' does not magically fend off otherwise legitimate claims of trademark infringement or dilution." An injunction issued.

That was ten years ago. The dog toy was "Buttwiper" and the famous brand was, of course, Budweiser. *See Anheuser-Busch Inc. v. VIP Products, LLC*, 666 F. Supp. 2d 974, 977-86 (E.D. Mo. 2008).

During the ensuing decade, VIP became a repeat offender, serial litigant, and lucrative enterprise. It filed multiple actions in federal court, commonly requesting a judicial declaration that it did not infringe a well-known brand. (*See* Harvey Decl. ¶ 16, Ex. C.) For example, VIP requested a judicial declaration that its "HeinieSniff'n" product did not infringe the Heineken trademark and trade dress (*VIP Products, LLC v. Heineken USA, Incorporated*, Case 2:09-cv-843-FJM (D. Ariz.) (Doc. 1 ¶¶ 13, 18) (April 21, 2009)), that its "Kennel Relax'n" product did not infringe the Kendall-Jackson trademark and trade dress (*VIP Products, LLC v. Jackson Family Wines, Inc.*, Case 2:09-cv-281-JAT (D. Ariz.) (Doc. 1 ¶¶ 13, 17) (Feb. 12, 2009)), that its "Bark's" product did not

infringe the "Barq's" trademark and trade dress (*VIP Products, LLC v. Coca-Cola Company*, Case 2:09-cv-1985-NVW (D. Ariz.) (Doc. 1 ¶¶ 12, 17) (Sept. 22, 2009)), that its "Blue Cats Trippin'" product did infringe the "Pabst Blue Ribbon" trademark and trade dress (*VIP Products, LLC v. Pabst Brewing Company*, Case 2:14-cv-2084-JJT (Doc. 12, 16) (Sept. 19, 2014)), and that its "Crispaw" product did not infringe the "Cristal" trademark and trade dress (*VIP Products, LLC v. Champagne Louis Roederer*, Case 2:13-cv-823-NVW (D. Ariz.) (Doc. 1 ¶¶ 12, 16) (April 23, 2013)). Although VIP never received the requested judicial declarations, it was rarely countersued according to the dockets in these cases, and its annual revenues now approach $15 million. (Doc. 243 at 178:24-179:5.) Apparently, its targets acquiesced because the promise of an injunction did not justify the expense of securing it. This case shows why.

  VIP is the second-largest dog toy company in the United States. (Doc. 208 at 30:19-20.) Stephen Sacra is the president of VIP. Its graphic designer is Elle Phillips. (Doc. 245 ¶¶ 1, 12.) She has designed countless products under his direction, including "Buttwiper" (which resembles Budweiser), "Smella'R Crotches" (which resembles Stella Artois) and "Pissness" (which resembles Guinness). (Doc. 245 ¶ 9; Doc. 233-1 at 36, 41-42; Doc. 237 at 96-98.) In the present case, Ms. Phillips received a "typical" call from Mr. Sacra. "Bad Spaniels," he said. "You figure it out." (Doc. 233-1 at 49.) Like many Americans, Ms. Phillips had a bottle of Jack Daniel's in her liquor cabinet. She retrieved it, examined it, and placed it on her desk while she developed a sketch. (Doc. 245 ¶ 14.) She wanted the "Bad Spaniels" product to resemble the "Jack Daniel's" bottle, but she made some changes too. (Doc. 233-1 at 66-67.) For example, she replaced "Old No. 7" with "Old No. 2," which referred to canine excrement. (Doc. 233-1 at 56.) When Ms. Phillips finished her sketch, she e-mailed it to Mr. Sacra. He responded: "Looks good." (Doc. 233-1 at 60, Exh. 9.) This was their "usual" process. (Doc. 233-1 at 47.)

  VIP launched its "Bad Spaniels" product in July 2014. (Doc. 245 ¶ 16.) When Jack Daniel's objected, VIP once again requested a judicial declaration that it had not violated any trademark or trade dress rights. (Doc. 1 ¶¶ 7-16, 47-49.) Unlike others, Jack

Daniel's counterclaimed for trademark infringement, trade dress infringement, and dilution by tarnishment under state and federal law. (Doc. 15-1 ¶¶ 20-63.) VIP denied liability and invoked various affirmative defenses, including parody. (Doc. 20 ¶¶ 21-63, 67.) On May 20, 2015, VIP requested cancellation of the Jack Daniel's bottle design registration and a judicial declaration that the Jack Daniel's trade dress and Jack Daniel's bottle design were functional, merely ornamental, decorative and generic. (Doc. 49 ¶¶ 50-62.) At that time, VIP also amended its answer to claim that its "Bad Spaniels" product was a nominative fair use, as well as an expressive fair use under the First Amendment. (Doc. 50 ¶¶ 69-70.)

That same month, Jack Daniel's disclosed the results of an *Ever-Ready* survey administered by Dr. Gerald Ford. (Doc. 230-3 at 35.) In a test cell, respondents had been shown photographs of the "Bad Spaniels" product. (Doc. 230-3 ¶¶ 6, 19.) In a control cell, respondents had been shown photographs of a fictitious dog chew toy product bearing the "Bad Spaniels" name. (Doc. 230-3 ¶¶ 6, 20.) After viewing these photographs, respondents were asked a series of open-ended and non-leading questions about who had made, sponsored, or approved the pictured product. (*See* Doc. 230-3 at 13-17.) Over twenty-nine percent of those in the test cell who had been shown the "Bad Spaniels" product—identified Jack Daniel's in response to these questions. (Doc. 230-3 ¶¶ 28-29.) By contrast, almost none of those in the control cell—who had been shown the fictitious dog toy—identified Jack Daniel's in response to these questions. (Doc. 230-3 ¶¶ 30-31.) Dr. Ford concluded: "approximately twenty-nine percent . . . of potential purchasers . . . are likely to be confused or deceived by the belief that Plaintiff's Bad Spaniels dog toy is made or put out by Jack Daniel's, or made or put out with the authorization or approval of Jack Daniel's, or that whoever makes or puts out Plaintiff's dog toy has a business affiliation or business connection with Jack Daniel's." (Doc. 230-3 ¶¶ 7, 33.)

Both parties filed dispositive motions following discovery. The Court granted Jack Daniel's motion and denied VIP's motion. As a matter of law, the Court rejected VIP's

fair use defenses, rejected VIP's request to cancel the Jack Daniel's bottle design registration, and rejected VIP's claims that the Jack Daniel's trade dress and bottle design were generic, functional, and non-distinctive. (Doc. 245 ¶ 19; Doc. 171 at 1-33.) Following a four-day bench trial, the Court found in favor of Jack Daniel's and against VIP on all remaining claims. (Doc. 245 at 1.) In doing so, the Court credited Dr. Ford's survey results, finding that they had "establishe[d] likelihood of confusion in this case." (Doc. 245 ¶ 88.) The Court also quoted a passage that should have been familiar to VIP: "[T]he cry of 'parody!' does not magically fend off otherwise legitimate claims of trademark infringement or dilution." (Doc. 245 ¶ 74.)

By this motion, Jack Daniel's seeks to recover the legal fees it incurred from September 28, 2016, after it prevailed on summary judgment (Doc. 171), through January 30, 2018, when it prevailed after trial (Doc. 245). The total is substantial. (*See* Ochs Decl. ¶ 7.) It is no wonder that others have acquiesced to VIP, rather than bear such expense to protect their reputations and prevent consumer confusion.

## ARGUMENT

### I. ATTORNEYS' FEES ARE WARRANTED IN THIS CASE

Under the Lanham Act, a court may award reasonable attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). "An 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances," including the need "to advance considerations of compensation and deterrence." *Octane Fitness*, 134 S.Ct. at 1756; *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, n.19 (1994); *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (citing *Octane* and *Fogerty*). "There is no precise rule or formula for making these determinations." *Fogerty v.*

*Fantasy, Inc.*, 510 U.S. 517, 534 (1994). "Any time a court embarks on a 'totality of the circumstances' test, it is left to assess the particular circumstances of the case before it, many times without the guidance of a completely analogous case." *Sazerac Company, Inc. v. Fetzer Vineyards, Inc.*, 2017 WL 6059271, *4 (N.D. Cal. 2017).

The fee-shifting provisions in the Lanham Act and Patent Act are "parallel and identical." *SunEarth*, 839 F.3d at 1180. Under both, the burden of proof is "preponderance of the evidence." *Id.* at 1181. The standard of review is "abuse of discretion." *Highmark, Inc. v. Allcare Health Mgmt. Sys. Inc.*, 134 S.Ct. 1744, 1748 (2014); *SunEarth*, 839 F.3d at 1181.

Jack Daniel's respectfully requests its legal fees incurred from September 28, 2016, after Jack Daniel's prevailed on summary judgment, though January 30, 2018, when Jack Daniel's prevailed after trial. Fee-shifting is appropriate in this amount because VIP chose to advance an exceptionally weak case through trial and to belabor a legally discredited and factually unsupported theory that had already been rejected at summary judgment, together with other meritless defenses. VIP should be deterred from repeating its misconduct. As the prevailing party, Jack Daniel's should be reimbursed for enduring it.

**A.     VIP Unreasonably Advanced a Weak Case**

Fee-shifting is warranted because VIP unreasonably advanced a weak case through trial. In *Sazerac Company, Inc. v. Fetzer Vineyards, Inc.*, 2017 WL 6059271 (N.D. Cal. 2017), the court ordered the losing party to pay attorneys' fees for unreasonably advancing a weak case through trial, even though it had acted in good faith and survived summary judgment. *Id.* at 4-8. In that case, the court expressed concern that the losing party had "failed to offer any evidence of harm, thereby dooming the only relief available to it." *Id.* at 7. The fact that the prevailing party did not move for summary judgment on the issue of harm "did not absolve [the losing party] of the burden of proving its case." *Id.* at n.10; *accord Leapers, Inc. v. SMTS LLC*, 2017 WL 3084370, *3 (E.D. Mich. July 20, 2017) (arguments that "could barely survive summary judgment"

warranted fee-shifting). Likewise, in this case, VIP completely failed to rebut persuasive evidence of infringement, including Dr. Ford's survey results, thereby dooming any defense available to it. (*See* Doc. 245 ¶¶ 86-87, 90-93.) VIP knew or should have known that Dr. Ford's survey results were fatal to its case, since equivalent results had been fatal to its analogous case years earlier. *See Anheuser-Busch*, 666 F. Supp. 2d at 983-84 (E.D. Mo. 2008). VIP was on notice.

Fee-shifting is also warranted because VIP belabored a legally discredited and factually unsupported theory of parody through trial. As a legal matter, that theory had been rejected earlier in this case (Doc. 171 at 9-11), rejected in a prior analogous case against VIP (*Anheuser-Busch*, 666 F. Supp. 2d at 985), and rejected in general whenever confusion is likely (*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1405 (9th Cir. 1997)). VIP's continued reliance on a legally discredited theory warrants fee-shifting. *See Donut Joe's v. Interveston Food Services*, 116 F. Supp.3d 1290, 1294 (N.D. Ala. 2015) (losing party's reliance on discredited theory about evidentiary impact of trademark registration warranted fee-shifting). Moreover, VIP repeatedly failed to adequately explain *why* that theory should apply to the facts of this case. VIP could not sustain its burden by blindly repeating the word "parody" and insisting that its product was humorous. *See Leapers*, 2017 WL 3084370 at 4 ("conclusory statements unadorned with supporting facts" warranted fee-shifting). "[T]he heart of any parodist's claim to quote from existing material, is the use of some elements of a prior author's composition to create a new one that, at least in part, *comments on the [original]*." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580 (1994). VIP's "Bad Spaniels" product was not protected, among other reasons, because it did not comment on Jack Daniel's. It was just potty humor on masquerade.

Fee-shifting is also warranted because VIP advanced exceptionally weak arguments on summary judgment. In *Amusement Art v. Life is Beautiful*, 2017 WL 2259672 (C.D. Cal. 2017), the court ordered a losing party to pay attorneys' fees after it advanced "exceptionally weak" arguments at this stage. *Id.* at 4. The court expressed

concern that the losing party had offered "almost no evidence," and its own testimony supported the other side. *Id.* at 4; *see also Leapers*, 2017 WL 3084370 at 4 (awarding attorneys' fees after losing party made "objectively weak" arguments on summary judgment). VIP made similarly weak arguments in this case. For example, VIP argued that it was using "Jack Daniel's" to identify Jack Daniel's, although its own product proved otherwise ("Bad Spaniels"). (Doc. 171 at 8.) VIP argued that the Jack Daniel's trade dress was generic, although its own expert conceded otherwise. (Doc. 171 at 12.) VIP argued that the Jack Daniel's bottle design was functional, although it never applied the relevant law to that design. (Doc. 171 at 16:16-19.) VIP argued that Jack Daniel's aesthetic features were necessary to compete, although competitors used countless alternatives. (Doc. 171 at 18:13-15.) Finally, VIP argued that the Jack Daniel's trade dress had not acquired secondary meaning, although that trade dress was famous. (Doc. 171 at 13-15; Doc. 245 ¶ 27.); *see* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:104 ("Achieving a secondary meaning is far short of proving 'fame'"). As in *Amusement Art*, VIP's own testimony supported its adversary on the issue of validity. (Doc. 171 at 14) (quoting Stephen Sacra: "I think that Jack Daniel's is more recognizable than other brands . . . [T]hey've spent a lot of money to make that recognition.")

**B.   VIP Should Be Deterred, and Jack Daniel's Should Be Reimbursed**

Fee-shifting is also warranted "to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534, n.19. VIP has filed many lawsuits for dubious purposes, not just this one. *See supra* at 2-3. It has tarnished many brands for its own commercial gain, not just Jack Daniel's. *See Anheuser-Busch*, 666 F. Supp. 2d at 983-84; (Doc. 233-1 at 36-37, 41-42; Doc. 245 ¶¶ 9, 96, 99.) It has confused many consumers for the same reason, not just survey respondents. (Doc. 245 ¶¶ 86-88.) It has generated annual revenues approaching $15 million. (Doc. 243 at 178:24-179:5.) In doing so, it has repeatedly ignored a legal imperative: "[T]he cry of 'parody!' does not magically fend off otherwise legitimate claims of trademark infringement or dilution." *See Anheuser-Busch*,

666 F. Supp. 2d at 985. It has apparently internalized an unfortunate lesson: Brands do not endure trials to protect consumers absent damages. *See supra* at 2-3. In other words, VIP has learned to break the law with impunity, to abuse the legal process without remorse, and to never back down. Fee-shifting is appropriate to deter such misconduct and compensate a litigant that endures it. *See Leapers*, 2017 WL 3084370, *3 (shifting fees to deter "campaign of asymmetrical warfare" and "troubling uses of the judicial process"); *LumenView Technology, LLC v. Findthebest.com, Inc.*, 63 F. Supp. 3d 321, 326 (S.D.N.Y. 2014) (shifting fees to deter "a predatory strategy aimed at reaping financial advantage from the inability or unwillingness of defendants to engage in litigation").

## II.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

Jack Daniel's requests an award of the attorneys' fees that it incurred on this case from September 28, 2016, after it prevailed on summary judgment (Doc. 171), through January 30, 2018, when it prevailed after trial (Doc. 245). Upon reviewing the Court's order on summary judgment (Doc. 171), VIP knew or should have known that its case was not worth pursuing. By then, it had failed to rebut Dr. Ford's survey results. It had failed to preserve its affirmative defenses or its challenges to the asserted trade dress. (Doc. 171 at 7-18.) Notably, it had failed to persuade the Court that its parody theory had any merit. (Doc. 171 at 9-11.) VIP should have relented, and its refusal warrants fee-shifting.

A reasonable fee may be calculated by multiplying (1) "the number of hours reasonably expended on the litigation" by (2) "a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see Fischer v. SJD-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). "[I]n corporate and commercial litigation between fee-paying clients, there is no need to determine the reasonable hourly rate prevailing in the community for similar work because the rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances of the particular case." *Maricopa County v.*

*Office Depot, Inc.,* 2017 WL 1957882, *5 (D. Ariz. May 11, 2017) (quoting *Schweiger v. China Doll Restaurant, Inc.*, 673 P.2d 927, 931-32 (Ariz. Ct. App. 1983)).

The hourly rates of Jack Daniel's attorneys are reasonable, particularly considering their skill, experience, and reputation. Those rates are summarized and detailed in concurrently lodged declarations.(*See* Harvey Decl. ¶ 8, Exs. A-B; Crum Decl. ¶¶ 18-21, Ex. 1.) Such rates compare favorably to those of similarly experienced counsel in specialized cases in this judicial district. *See Maricopa County,* 2017 WL 1957882, *6-7; EZconn Corp. v. PCT Int'l,* 2018 WL 287387 (D. Ariz. Jan. 3, 2018). Such rates also compare favorably to those of similarly experienced counsel in trademark cases in other judicial districts. *See Sazerac*, 2017 WL 6059271, *4 (approving hourly rates up to $756); *see also Clairol, Inc. v. Save-Way Indus., Inc.*, 211 U.S.P.Q. 223, *2 (S.D. Fla. 1980) ("Trademark litigation is a particularly difficult field of specialization and is recognized as meriting greater than average rate of pay."). Finally, such rates are demonstrably reasonable because Jack Daniel's has actually paid them. *See Sazerac*, 2017 WL 6059271, *11; Ochs Decl. ¶¶ 3, 8, Ex. A.

The total billed by Jack Daniel's attorneys during the relevant timeframe is likewise reasonable, particularly considering the favorable result obtained and the incalculable value of Jack Daniel's brand and reputation. This total is detailed in concurrently lodged declarations. (*See* Harvey Decl. ¶¶ 5-6, Ex. A-B; Crum Decl. ¶¶ 22-25, Ex. 1; Ochs Decl. ¶¶ 4-7, Ex. A.) This total compares favorably to fee-shifting awards in other trademark cases, particularly after adjusting for inflation. *See Cairns v. Franklin Mint Co.*, 115 F. Supp. 2d 1185, 1189 (C.D. Cal. 2000), *aff'd* 292 F.3d 1139 (9th Cir. 2002) (awarding $2.3 million in fees); *Sears, Roebuck & Co. v. Menard, Inc.*, 2004 WL 2423964, *1 (N.D. Ill. 2004) (awarding $2.5 million in fees). The total is also demonstrably reasonable because Jack Daniel's has actually paid it. *See Sazerac*, 2017 WL 6059271, *11; (Ochs Decl. ¶¶ 3, 8, Ex. A). Finally, Jack Daniel's is notably exercising considerable restraint by requesting a subset of its total legal fees on this case.

# CONCLUSION

Accordingly, VIP should be ordered to pay attorneys' fees in the amount specified in Paragraph 7 of the Ochs Declaration concurrently lodged with the Court.

Dated:  May 16, 2018

Respectfully submitted,

　　　　s/ Isaac S. Crum　　　　
Isaac S. Crum (AZ Bar #026510)
Rusing Lopez & Lizardi PLLC
6363 North Swan Road, Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4274
Facsimile: (520) 792-4274
Email: icrum@rllaz.com

D. Peter Harvey (admitted *pro hac vice*)
pharvey@harvey.law
Harvey & Company
Four Embarcadero Center, 14th Floor
San Francisco, CA  94111
Telephone:   (415) 926-7776
Facsimile:   (415) 402-0058

*Attorneys for Defendant and Counterclaimant Jack Daniel's Properties, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served this 16th day of May, 2018, via Notice of Electronic Filing, generated and transmitted by the ECF system of the District of Arizona, to all attorneys of record in this case.

*s/ Isaac S. Crum*
Isaac S. Crum