HARVEY & COMPANY
D. Peter Harvey (admitted *pro hac vice*)
Four Embarcadero Center, 14th Floor
San Francisco, CA 94111
Telephone:   (415) 926-7776
Facsimile:   (415) 402-0058
E-mail:  pharvey@harvey.law

RUSING LOPEZ & LIZARDI PLLC
Isaac S. Crum (AZ Bar #026510)
6363 N. Swan Road, Suite 151
Tucson, Arizona 85718
Telephone: (520) 529-4274
Facsimile:  (520) 529-4274
Email:   icrum@rllaz.com

*Attorneys for Defendant and Counterclaimant,
Jack Daniel's Properties, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| VIP Products, LLC, an Arizona limited liability company,<br><br>  Plaintiff,<br><br>  v.<br><br>Jack Daniel's Properties, Inc., a Delaware corporation,<br><br>  Defendant.<br><hr>AND RELATED COUNTERCLAIMS | Case No. CV-14-2057-PHX-SMM<br><br>**REPLY IN SUPPORT OF JACK DANIEL'S MOTION FOR ATTORNEYS' FEES** |

Defendant and Counterclaim Plaintiff Jack Daniel's Properties, Inc ("Jack Daniel's") submits this Reply in Support of its Motion for Attorneys' Fees from Plaintiff and Counterclaim Defendant VIP Products, LLC ("VIP").

## ARGUMENT

## I. ATTORNEYS' FEES ARE WARRANTED IN THIS CASE

### A. Judicial Estoppel Does Not Apply

VIP opens its Response to Jack Daniel's Motion for Attorney's Fees (Doc. 278) (hereafter "Response" or "Opp.") by arguing that Jack Daniel's is judicially estopped from seeking fees because, when it opposed VIP's motion for an advisory jury, it argued that this was a "straightforward" case which presented no "peculiar or unique circumstances." (*Id*. at 1:23–2:2, n.1.) VIP mixes apples and oranges. That this case could be decided by the court sitting without an advisory jury, because the underlying facts were plain and the legal theories straightforward, does not mean that it fails to meet the "exceptional case" standard for an award of fees under the Lanham Act. The factors a court is to assess when deciding to empanel an advisory jury are entirely distinct from those applicable to determining when a case is "exceptional," justifying an award of fees. *Compare* advisory jury factors enumerated in 8-39 *Moore's Federal Practice* §39.41 (including cases involving both jury and non-jury issues; cases involving "peculiar or unique" circumstances making jury trial particularly appropriate; and cases which do not merit the judicial time and resources which a jury requires) *with* the "'nonexclusive' list of 'factors' [applicable in assessing exceptionality] including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.,* 839 F.3d 1179, 1181 (9th Cir. 2016) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 134 S. Ct. 1749, 1756 (2014)).

Thus, there is nothing at all inconsistent, much less "clearly inconsistent," in the position Jack Daniel's took with respect to the lack of need to empanel an advisory jury,

on the one hand, and its position on the propriety of an award of attorneys' fees under the Lanham Act, on the other.  *See New Hampshire v. Maine,* 532 U.S. 742, 750–751 (2001).  Judicial estoppel is therefore unavailing here.

### B. Deterrence Is Needed

VIP tries to narrowly define the circumstances under which fee-shifting applies, arguing that an "exceptional case" is "defined by one of two features." (Opp. 2:7–8.)  To the contrary, the Supreme Court has held that "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances," including the need "to advance considerations of compensation and deterrence."  *Octane Fitness*, 134 S. Ct. at 1756; *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994); *SunEarth,* 839 F.3d at 1181 (citing *Octane Fitness* and *Fogerty*).  VIP's efforts to construe applicable precedent to "defin[e] as narrow and rigid a standard as possible" (*Leapers, Inc. v. SMTS, LLC*, No. 14-12290, 2017 WL 3084370, at *6 (E.D. Mich. July 20, 2017)) fly in the face of this instruction and attempt, like pre-*Octane* case law, to improperly "superimpose[] an inflexible framework onto statutory text that is inherently flexible."  *Octane Fitness*, 134 S. Ct. at 1756.

VIP is accordingly mistaken that its past conduct "cannot possibly" bear on this case.  (Opp. 11 n.6, 12 n.8.)  This case is one among several which VIP "brought in the same manner and asserting parallel claims, mak[ing] deterrence a particularly relevant and appropriate consideration."  *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 809 (6th Cir. 2005).  Moreover, fee-shifting is warranted to deter repeated infringements or overaggressive claims even if a given position "was reasonable in a particular case."  *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S.Ct. 1979, 1989 (2016).  Jack Daniel's need not show that all of VIP's products were knockoffs or all of VIP's cases were unreasonable.  Jack Daniel's need only show—and has already shown—that the facts of this case are "typical."  (*See* Mot. 3:14–25.)  These facts confirm the need for deterrence.

VIP baldly claims that the "Buttwiper" and "Bad Spaniels" cases arose "from totally separate and distinct factual circumstances, which require different factual proofs and analyses." (Opp. 6:5–7.) But VIP fails to specify a *single* such distinction or difference. Although VIP contends that it "learned from its experience" in that case (Opp. 10:6–7), it apparently did not learn what matters. It did not learn that "[t]he cry of 'parody!' does not magically fend off otherwise legitimate claims of trademark infringement or dilution."[1] *Anheuser-Busch, Inc. v. VIP Products, LLC*, 666 F. Supp. 2d 974, 985 (E.D. Mo. 2008) ("*Anheuser-Busch Case*"). Likewise, it did not learn not to misappropriate the goodwill of famous alcohol brands through scatological dog toys, even when roughly three in ten consumers are confused. *See id.* at 977–86. Now a different kind of lesson is required.

VIP has not disputed what this case shows: Obtaining injunctive relief against an intentional infringement designed to profit on a famous brand is an expensive undertaking. (Mot. 3:10–11.) Other brand owners, similarly targeted, elected not to pursue action. Seemingly they concluded that the cost of such enforcement could exceed its possible benefits. (*See* Mot. 2:20–3:17.) By VIP's own account, they acquiesced. (*See* Opp. 11:11–16, 12:6–17.) It is not hard to see why. VIP's cynical strategy was working. VIP gained welcome publicity for its dog toys and protected its profits through aggressive filings, its targets minimized litigation expenses through hasty retreats, and confused consumers suffered the consequences. Only fee-shifting will "deter such troubling uses of the judicial process in the future." *Leapers*, 2017 WL 3084370, at *6.

### C. Scatology Is Not Parody

VIP has not justified its "overarching" theory of this case (Opp. 3:21), apparently because it still does not understand what "parody" is and is not (*see* Opp. 9:17–26). It bears repeating that "[t]he heart of any parodist's claim to quote from existing material, is the use of some elements of a prior author's composition to create a new one that, at least

---

[1] The truth of this statement and the notice it provides do not depend on the procedural posture of the case in which it appears.

- 3 -

REPLY IN SUPPORT OF JACK DANIEL'S MOTION FOR ATTORNEYS' FEES     CV-14-2057-PHX-SMM

in part, *comments on [the original]*." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580 (1994) (emphasis added); *accord Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 813 (2d Cir. 1999) ("[W]hatever protection is to be afforded a trademark parody must be informed by . . . *Acuff-Rose*."). For example, the message "My Other Bag . . . is a Louis Vuitton" may be parodic because it comments on Louis Vuitton. *See Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425, 435 (S.D.N.Y. 2016). By contrast, VIP's claimed message, "that it is okay to have fun and not take life too seriously" (Opp. 9:25–26) is not parodic because it does not comment on Jack Daniel's. A parody "must target the original, and not just its general style, the genre . . . to which it belongs, or society as a whole." *See Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1400 (9th Cir. 1997) (citation omitted). Juxtaposing dog feces with famous brands is not enough, in *any* circuit, context, or procedural posture. *See Acuff-Rose*, 510 U.S. at 580; *Grottanelli*, 164 F.3d at 813 ("Grottanelli's mark makes no comment on Harley's mark; it simply uses it somewhat humorously to promote his own products and services, which is not a permitted trademark parody use.").

VIP cannot claim ignorance of the law as a defense, although it tries. (*See* Opp. 10:4–6, 11–16 ("VIP believed the Toy was entitled to protection" [and] "VIP sincerely believes its products to be parody products which are protected by law….").) VIP was told by a Federal court ten years ago that "[t]he cry of 'parody!' does not magically fend off otherwise legitimate claims of trademark infringement or dilution." *Anheuser-Busch Case*, 666 F. Supp. at 985. Accordingly, it should have known that "inten[t] to be humorous, harmless, cute, and fun" is not a panacea. (Opp. 9:21.) Any belief to the contrary was not reasonable and does not warrant lenience. *See Takecare Corp. v. Takecare of Oklahoma, Inc.*, 889 F.2d 955, 958 (10th Cir. 1989) (shifting fees where defeated party had unreasonably relied on a mistake of law).

### D. Surveys Matter

VIP erroneously asserts that Dr. Ford's survey results were not "dispositive on the question of likelihood of confusion." (Opp. 8:4–5.) To the contrary, Dr. Ford's survey

- 4 -

"establishe[d] likelihood of confusion in this case." (*See* Jan. 30, 2018 Findings of Fact and Conclusions of Law (Doc. 245) ("Order"), ¶ 87.)  Moreover, persuasive survey results are usually dispositive when other factors are indeterminate and parody is claimed.  *See e.g.*, *Anheuser-Busch, Inc. v. Balducci Publications*, 28 F.3d 769, 775 (8th Cir. 1994) ("The survey evidence . . . tilts the analysis in favor of Anheuser–Busch."); *Mutual of Omaha Insurance Co. v. Novak*, 648 F. Supp. 905, 911 (D. Neb. 1986), *aff'd* 836 F.2d 397 (8th Cir. 1987) ("The results of the survey indicate that potential consumers of insurance products are likely to be confused."); *Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 850 F. Supp. 232, 247, 251 (S.D.N.Y. 1994) ("The court bases its conclusion in particular upon the close similarity of the marks and . . . proof that actual confusion does exist" as shown by survey results.).

VIP has not cited any authority to the contrary.  As VIP knows, in the cases concerning "Timmy Holedigger" and "Chewy Vuiton," the plaintiffs did not proffer persuasive survey results—nor, indeed, any survey results.  *See Anheuser-Busch Case*, 666 F. Supp. at 985–86 (distinguishing these cases).  These plaintiffs might have prevailed had they been able to do so.  *See* Shari Seidman Diamond, "Reference Guide on Survey Research" in Reference Guide on Scientific Evidence 372 (Federal Judicial Center 2011) ("*FJC Reference Guide on Survey Research*") ("[S]everal courts have drawn negative inferences from the absence of a survey, taking the position that failure to undertake a survey may strongly suggest that a properly done survey would not support the plaintiff's position.").[2]

VIP's quibbles with the Ford survey were no substitute for a survey of its own. (Order, ¶¶ 90, 93.)  "The pivotal legal question in [Lanham Act] cases virtually demands survey research because it centers on consumer perception and memory."  *FJC Reference Guide on Survey Research* at 366.  That seems especially true if the infringement factors are otherwise "awkward" to apply.  (Opp. 5:3.)  In any event, the Court properly

---

[2] *Available at* https://www.fjc.gov/sites/default/files/2015/SciMan3D01.pdf

- 5 -

dismissed Dr. Nowlis's "generalized objections" to Dr. Ford's survey results (Order, ¶ 91) and "reject[ed] VIP's assertion that Jack Daniel's was somehow obligated to establish actual confusion" otherwise (Order, ¶ 92). As VIP should have anticipated, the Ford survey carried the case on likelihood of confusion.

### E.  Summary Judgment Cannot Be Ignored

VIP has failed to defend its exceptionally weak arguments at summary judgment. (*See* Opp. 7:1–21.) It cannot distinguish *Sazerac* on the basis that "the losing party . . . was the party alleging infringement, and therefore bearing the burden of proof." (Opp. 9:5–9.) As the Supreme Court has admonished, "[p]revailing plaintiffs and prevailing defendants are to be treated alike."[3] *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). Also, VIP cannot distinguish *Amusement Art* on the basis that the defeated party in that case furnished "no evidence" with respect to an asserted mark. (Opp. 7:14–21.) On the contrary, in *Amusement Art* the defeated party furnished no evidence that the asserted mark had been used *as a source-identifier*, or that consumers would perceive it as such. *See Amusement Art, LLC v. Life Is Beautiful, LLC*, No. 2–14–cv–08290–DDP–JPR, 2017 WL 2259672, at *4 (C.D. Cal. May 23, 2017). This was a failure of proof on two key issues. Similarly, the Court in this case found on summary judgment that VIP had failed to prove several key defenses—including genericness, functionality, lack of secondary meaning, nominative fair use and First Amendment/parody. Calling these "a handful of minute sub-issues where the Court ruled in favor of JDPI" (Opp. 7:11–12) and a "cherry-picked smattering of the Court's findings," (Opp. 7:2–3) VIP would have us ignore the significant gaps in its proffered evidence which made these key defenses meritless, the obvious implications of the Court's summary judgment ruling for future proceedings in the case, and the utter futility of VIP's relentless revisitation of the parody defense. VIP wishes that its failures on these "minute sub-issues" would not implicate fee-shifting.

---

[3] In any event, VIP bore the burden of proof on various counterclaims and affirmative defenses that were summarily denied in this case. (*See* Summary Judgment Order (Doc. 171) at 7–18.)

- 6 -

REPLY IN SUPPORT OF JACK DANIEL'S MOTION FOR ATTORNEYS' FEES        CV-14-2057-PHX-SMM

(*Compare* Mot. 7:25–8:18 *with* Opp. 7:14–21.)  Precedent says otherwise.  *See Amusement Art*, 2017 WL 2259672, at *4; *Sazerac Company, Inc. v. Fetzer Vineyards, Inc.*, No. 3:15-cv-04618-WHO, 2017 WL 6059271, at *8 (N.D. Cal. Dec. 7, 2017).

### F.  VIP Unreasonably Pursued Exceptionally Weak Defenses Through Trial

Nothing else changes Jack Daniel's entitlement to fees in this case, especially not VIP's "tainted" expert report from Bruce Silverman or its purportedly "gentle and humorous reference to dog feces." (*Compare* Opp. 5:4–13 *with* Order, ¶¶ 57-61.)  VIP lacked crucial support for numerous arguments (*see* Mot. 6:19–8:18), especially including its "overarching" theory of parody (Opp. 3:21).  These failures "effectively render[ed] its entire manner of litigation wholly unreasonable." *Sazerac*, 2017 WL 6059271, at *8.  Like the losing plaintiff in *Sazerac,* VIP lacked a "subjectively legitimate reason for bringing this lawsuit," and what followed greatly compounded VIP's mistake and the unnecessary expense to Jack Daniel's. *Id.*  VIP should be deterred from repeating its misconduct, and Jack Daniel's should be reimbursed for enduring it. *See Lumen View Technology, LLC v. Findthebest.com, Inc.*, 63 F. Supp. 3d 321, 327 (S.D.N.Y. 2014) ("[B]ut for [the prevailing party's] financial resources and resolve, [the defeated party's] predatory behavior would likely have proceeded unchecked.").

## II.  VIP HAS NOT SHOWN THAT THE REQUEST IS UNREASONABLE

VIP has not disputed that the hourly rates of Jack Daniel's attorneys are reasonable considering their skill, experience, and reputation. (*See* Mot. 10:3–15.)  VIP has not disputed that the requested total is reasonable considering the total in comparable cases, the results obtained in this case, and the incalculable value of the Jack Daniel's brand and reputation. (*See* Mot. 10:16–27.)  VIP also has not disputed the weighty "presumption of reasonableness" which attaches to fees that have been paid by a commercial client. *Sazerac,* 2017 WL 6059271, at *11.  When attempting to overcome

that presumption, VIP misreads the law, misstates the facts, and misses the forest for the trees.[4]  (*See* Opp. 13:9–17:19.)

VIP overstates the consequence of "block billing."  (*See* Opp. 13:12–14:8.)  Upon encountering this common practice, "[t]he trial judge should weigh the hours claimed against his or her knowledge, experience and expertise of the time required to complete similar activities."  *Arizona v. ASARCO, L.L.C.*, No. CV 08–441 TUC–MWB, 2011 WL 6951842, at *10 (D. Ariz. Sept. 29, 2011) (internal quotation omitted).  In this case, Harvey & Company has furnished invoices previously reviewed, approved, and paid by Jack Daniel's.  Upon examining these invoices, the Court will be "left with a firm and abiding conviction that . . . the hours billed [are] completely reasonable" and "no reduction for block billing is warranted."  *ASARCO*, 2011 WL 6951842, at *10. VIP offers no support for refusing to shift fees because of block billing, or reducing the requested total by half.  (Opp. 14:6–8.)  According to its own authority, any reduction should "*fairly balance* those hours that were *actually billed in block format*."  *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (reversing blanket reduction of 20%) (emphasis added); *see also ASARCO*, 2011 WL 6951842, at *10 (collecting cases that approve tailored reductions of 0-25%).  No balancing is needed in this case.

VIP misreads the furnished invoices and miscalculates the requested fees.  For example, Jack Daniel's *did provide* complete invoices for Isaac Crum. (*See* Crum Decl. (Doc. 269) Exh. 1.)  Apparently, VIP neglected to print those invoices in landscape format.  (*See* Opp. 16:15–17:7.)  Likewise, Jack Daniels *did deduct* most of Invoice No.

---

[4] VIP has one facially credible quibble with the requested total.  (*See* Opp. 16:11–14.) According to Local Rule 54.2(E)(2)(d), "[o]rdinarily air travel time should not be charged."  However, that procedural rule is invalid to the extent it modifies the substantive law on fee-shifting, as here.  *See 11333, Inc. v. Certain Underwriters at Lloyd's, London*, No. CV-14-02001-PHX-NVW, 2018 WL 2322783, at *2 (D. Ariz. May 22, 2018) ("It is customary and routine for commercial attorneys . . . to charge their clients for their time necessarily traveling on the matter, whether or not other legal work is done on the airplane. . . . That is part of the 'reasonable' fee that the Court may award in its discretion."); 15 U.S.C. § 1117(a) ("The court in exceptional cases may award *reasonable* attorney fees to the prevailing party.") (emphasis added).

1  32568 dated October 25, 2016 from its fee request.  (*Compare* Harvey Decl., Exh A at 50
2  (fees billed on Invoice No. 32568: $45,346) *with* Ochs Decl., Exh A at line 2 (fees
3  requested on Invoice No. 32568: $6202.20).  Apparently, VIP overlooked this deduction.
4  (*See* Opp. 14:17–15:2.)  In any event, Jack Daniel's would have been within its rights to
5  request the full amount.

6  VIP also undervalues teamwork.  Although VIP contends that attorney
7  conferences should not be billed in full (Opp. 14:9–14), its own authority holds
8  otherwise.  *See Gressett v. Central Arizona Water Conservation District*, No. CV-12-
9  00185-PHX-JAT, 2015 WL 5545054, at *3 (D. Ariz. Sept. 18, 2015) ("[T]he Court *will*
10 *award* Ms. Gressett fees for time spent in internal conferences and e-mails.") (emphasis
11 added).  Like the defeated party in that case, VIP has not shown that any attorney
12 conferences were unreasonable in this case.  VIP also has not shown that delegation was
13 unreasonable.  (*See* Opp. 15:3–16:10.)  As a general matter, delegation is encouraged.
14 *See Maricopa County v. Office Depot, Inc.*, No. 2:14-cv-1372-HRH, 2017 WL 1957882,
15 at *10-11 (D. Ariz. May 11, 2017) (reducing fees for *failure* to delegate).  VIP has not
16 cited any authority to the contrary.  Regardless, VIP may not "impose its own judgment
17 regarding the best way to operate a law firm, nor to determine if different staffing
18 decisions might have led to different fee requests." *Moreno v. City of Sacramento*, 534
19 F.3d 1106, 1115 (9th Cir. 2008).  Finally, VIP is mistaken that Mr. Crum "had *no* role
20 during the trial itself" (Opp. 17:10–11) (emphasis added), as the Court and Jack Daniel's
21 could plainly observe.  His role was vital, and his invoices were accordingly paid.  (*See*
22 Ochs Decl. ¶ 6.)

23 VIP may not complain about any inefficiency it caused.  *See Fiolek v. Tucson*
24 *Unified Sch. Dist.*, No. CV 01–36 TUC DCB, 2004 WL 3366149, at * 6 (D. Ariz. Sept.
25 10 2004) ("Defendant's counsel drove the number of hours Plaintiff's counsel had to
26 devote to this case . . .").  For example, Jack Daniel's was not at fault for the amount of
27 time spent briefing whether a jury was warranted.  At a late pre-trial conference, VIP
28 belatedly demanded a jury trial after having acknowledged more than once that it

expected the case to be tried to the Court.  When Jack Daniel's moved to strike VIP's belated demand, VIP equivocated further.  (*See* Doc. 176 at 5:22–6:5; Doc. 178 at 1 ("*Upon further consideration*, VIP consents to a bench trial" and requests "an advisory jury.") (emphasis added).)

Jack Daniel's was dealing with a moving target.  It also disagrees that the issues presented by VIP's belated jury demands were "ordinary" or that its "six page" (and seemingly persuasive) briefs should have been written in haste.  (*See* Opp. 15:8–21.) Throughout this case, Jack Daniel's has invested the necessary effort to distill complex issues into short briefs.  It should not be docked for effective advocacy.  *See* Letter from Benjamin Franklin to Peter Collinson dated July 29, 1750 at 82 ("I have already made this paper too long, for which I must crave pardon, not having now time to make it shorter.").[5]

"The court in exceptional cases may award *reasonable* attorney fees to the prevailing party." 15 U.S.C. § 1117(a) (emphasis added).  VIP has not shown any reason why the requested amount is unreasonable, particularly since it is a subset of the total fees incurred in this case by Jack Daniel's.  *See Sazerac*, 2017 WL 6059271, at *11.

## **CONCLUSION**

Accordingly, the Court should award Jack Daniel's its attorneys' fees in the amount originally requested.

Dated:  June 29, 2018                        Respectfully submitted,

  /s/ Isaac S. Crum
Isaac S. Crum (AZ Bar #026510)
Rusing Lopez & Lizardi PLLC
6363 N. Swan Road, Suite 151
Tucson, Arizona 85718
Telephone:   (520) 529-4274
Email:   icrum@rllaz.com

---

[5] *Available at* https://books.google.com/books?id=yAdPAAAAcAAJ&q=%22it+shorter%22&hl=en#v=snippet&q=%22it%20shorter%22&f=false

- 10 -

1
2
3
4
5
6
                D. Peter Harvey (admitted *pro hac vice*)
                Harvey & Company
                Four Embarcadero Center, 14th Floor
                San Francisco, CA  94111
                Telephone:   (415) 926-7776
                Facsimile:    (415) 402-0058
                Email:  pharvey@harvey.law

                *Attorneys for Defendant and Counterclaimant,*
                *Jack Daniel's Properties, Inc.*

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REPLY IN SUPPORT OF JACK DANIEL'S MOTION FOR ATTORNEYS' FEES    CV-14-2057-PHX-SMM

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served this 29th day of June, 2018, via Notice of Electronic Filing, generated and transmitted by the ECF system of the District of Arizona, to all attorneys of record in this case.

*/s/ Isaac S. Crum*
Isaac S. Crum