**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| VIP PRODUCTS LLC, an Arizona limited liability company, *Plaintiff-Counter-Defendant-Appellant*, v. JACK DANIEL'S PROPERTIES, INC., a Delaware corporation, *Defendant-Counter-Plaintiff-Appellee.* | No. 18-16012 D.C. No. 2:14-cv-02057-SMM OPINION |

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, District Judge, Presiding

Argued and Submitted February 7, 2020
Arizona State University, Phoenix

Filed March 31, 2020

Before: A. Wallace Tashima, Andrew D. Hurwitz,
and Eric D. Miller, Circuit Judges.

Opinion by Judge Hurwitz

# SUMMARY[*]

**Trademark**

The panel affirmed in part, vacated in part, and reversed in part the district court's judgment after a bench trial and permanent injunction in favor of Jack Daniel's Properties, Inc., in a trademark suit brought by VIP Products, LLC, concerning VIP's "Bad Spaniels Silly Squeaker" dog toy, which resembled a bottle of Jack Daniel's Old No. 7 Black Label Tennessee Whiskey but had light-hearted, dog-related alterations.

The panel affirmed the district court's summary judgment in favor of Jack Daniel's on the issues of aesthetic functionality and distinctiveness. The panel held that the district court correctly found that Jack Daniel's trade dress and bottle design were distinctive and aesthetically nonfunctional, and thus entitled to trademark protection. Accordingly, the district court correctly rejected VIP's request for cancellation of Jack Daniel's registered trademark. The district court also correctly rejected VIP's nominative fair use defense because, although the Bad Spaniels toy resembled Jack Daniel's trade dress and bottle design, there were significant differences between them, most notably the image of a spaniel and the phrases on the Bad Spaniels label.

Vacating the district court's judgment on trademark infringement, the panel concluded that the Bad Spaniels dog toy was an expressive work entitled to First Amendment

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

protection.  Accordingly, the district court erred in finding trademark infringement without first requiring Jack Daniel's to satisfy at least one of the two prongs of the *Rogers* test, which requires a plaintiff to show that the defendant's use of a mark is either (1) not artistically relevant to the underlying work or (2) explicitly misleads consumers as to the source or content of the work.

The panel reversed the district court's judgment on claims of trademark dilution by tarnishment.  Although VIP used Jack Daniel's trade dress and bottle design to sell Bad Spaniels, they were also used to convey a humorous message, which was protected by the First Amendment.  VIP therefore was entitled to judgment in its favor on the federal and state law dilution claims.

In summary, the panel affirmed the district court's summary judgment in favor of Jack Daniel's on the issues of aesthetic functionality and distinctiveness, affirmed the judgment as to the validity of Jack Daniel's registered mark, reversed the  judgment on the issue of dilution, vacated the judgment after trial on the issue of infringement, and remanded for further proceedings.  The panel also vacated the   permanent   injunction   prohibiting   VIP   from manufacturing and selling the Bad Spaniels dog toy.

**COUNSEL**

David G. Bray (argued), David N. Ferrucci, and Holly M. Zoe, Dickinson Wright PLLC, Phoenix, Arizona, for Plaintiff-Counter-Defendant-Appellant.

D. Peter Harvey (argued), Harvey & Company, San Francisco, California; Isaac S. Crum, Rusing Lopez &

Lizardi PLLC, Tucson, Arizona; for Defendant-Counter-Plaintiff-Appellee.

## OPINION

HURWITZ, Circuit Judge:

VIP Products sells the "Bad Spaniels Silly Squeaker" dog toy, which resembles a bottle of Jack Daniel's Old No. 7 Black Label Tennessee Whiskey, but has light-hearted, dog-related alterations. For example, the name "Jack Daniel's" is replaced with "Bad Spaniels," "Old No. 7" with "Old No. 2," and alcohol content descriptions with "43% POO BY VOL." and "100% SMELLY." After Jack Daniel's Properties, Inc. ("JDPI") demanded that VIP cease selling the toy, VIP filed this action, seeking a declaration that the toy did not infringe JDPI's trademark rights or, in the alternative, that Jack Daniel's trade dress and bottle design were not entitled to trademark protection. JDPI counterclaimed, asserting trademark infringement and dilution. After ruling on cross-motions for summary judgment and conducting a four-day bench trial, the district court found in favor of JDPI and issued a permanent injunction enjoining VIP from manufacturing and selling the Bad Spaniels toy.

We affirm the district court's summary judgment in favor of JDPI on the issues of aesthetic functionality and distinctiveness. However, because the Bad Spaniels dog toy is an expressive work entitled to First Amendment protection, we reverse the district court's judgment on the dilution claim, vacate the judgment on trademark infringement, and remand for further proceedings.

# I

### A. Factual Background

VIP designs, markets, and sells "Silly Squeakers," rubber dog toys that resemble the bottles of various well-known beverages, but with dog-related twists. One Silly Squeaker, for example, resembles a Mountain Dew bottle, but is labeled "Mountain Drool." VIP's purported goal in creating Silly Squeakers was to "reflect" "on the humanization of the dog in our lives," and to comment on "corporations [that] take themselves very seriously." Over a million Silly Squeakers were sold from 2007 to 2017.

In July of 2013, VIP introduced the Bad Spaniels squeaker toy. The toy is roughly in the shape of a Jack Daniel's bottle and has an image of a spaniel over the words "Bad Spaniels." The Jack Daniel's label says, "Old No. 7 Brand Tennessee Sour Mash Whiskey;" the label on the Bad Spaniels toy instead has the phrase "the Old No. 2, on your Tennessee Carpet." A tag affixed to the Bad Spaniels toy states that the "product is not affiliated with Jack Daniel Distillery."

### B. Procedural History

In 2014, JDPI "demand[ed] that VIP cease all further sales of the Bad Spaniels toy." VIP responded by filing this action, seeking a declaration that the Bad Spaniels toy "does not infringe or dilute any claimed trademark rights" of JDPI and that Jack Daniel's trade dress and bottle design are not entitled to trademark protection. The complaint also sought cancellation of the Patent and Trademark Office registration for Jack Daniel's bottle design. JDPI counterclaimed, alleging state and federal claims for infringement of JDPI's trademarks and trade dress, *see* 15 U.S.C. §§ 1114(1),

1125(a)(1); A.R.S. §§ 44-1451, *et seq.*, and dilution by tarnishment of the trademarks and trade dress, *see* 15 U.S.C. § 1125(c); A.R.S. § 44-1448.01.

VIP moved for summary judgment, and JDPI cross-moved for partial summary judgment. The district court denied VIP's motion and granted JDPI's. The district court held that VIP was not entitled to the defenses of nominative and First Amendment fair use. The district court rejected the nominative fair use defense because VIP "did not use JDPI's identical marks or trade dress in its Bad Spaniels toy." The district court rejected JDPI's First Amendment defense because the trade dress and bottle design were used "to promote a somewhat non-expressive, commercial product."

The district court also found as a matter of law that Jack Daniel's trade dress and bottle design were distinctive, non-generic, and nonfunctional, and therefore entitled to trademark protection. This left for trial only JDPI's dilution by tarnishment claims and whether JDPI could establish the likelihood of confusion for trademark infringement. *See Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1046–47 (9th Cir. 1998) ("To state an infringement claim . . . a plaintiff must meet three basic elements: (1) distinctiveness, (2) nonfunctionality, and (3) likelihood of confusion.").

After a four-day bench trial, the district court found that JDPI had established dilution by tarnishment and infringement of JDPI's trademarks and trade dress. The court permanently enjoined VIP "from sourcing, manufacturing, advertising, promoting, displaying, shipping, importing, offering for sale, selling or distributing the Bad Spaniels dog toy."

## II

We have jurisdiction of VIP's appeal under 28 U.S.C. § 1291. We review the grant of summary judgment and the district court's conclusions of law following a bench trial de novo. *See Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1150 (9th Cir. 2016); *Dolman v. Agee*, 157 F.3d 708, 711 (9th Cir. 1998). The "district court's findings of fact following a bench trial are reviewed for clear error." *Id.* at 711.

### A. Aesthetic Functionality and Distinctiveness

To obtain trademark protection, a product's trade dress or design must be nonfunctional and distinctive. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000); *Talking Rain Beverage Co., Inc. v. S. Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003). "[T]he proper inquiry is not whether individual features of a product are functional or nondistinctive but whether the whole collection of features taken together are functional or nondistinctive." *Kendall-Jackson Winery*, 150 F.3d at 1050.

The district court correctly found Jack Daniel's trade dress and bottle design are distinctive and aesthetically nonfunctional. Although whiskey companies use many of the individual elements employed by JDPI on their bottles, the Jack Daniel's trade dress "is a combination [of] bottle and label elements," including "the Jack Daniel's and Old No. 7 word marks," and the district court correctly found that these elements *taken together* are both nonfunctional and distinctive. *See Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 785 (9th Cir. 2002) (stating that "'an assurance that a particular entity made, sponsored, or endorsed a product,' . . . if incorporated into the product's design by virtue of arbitrary embellishment" is not functional (quoting *Vuitton*

8    VIP PRODUCTS V. JACK DANIEL'S PROPERTIES

*et Fils S.A. v. J. Young Enters., Inc.*, 644 F.2d 769, 774 (9th Cir. 1981))).

VIP also failed to rebut the presumption of nonfunctionality and distinctiveness of the Jack Daniel's bottle design, which is covered by Trademark Registration No. 4,106,178. *See Tie Tech*, 296 F.3d at 783 ("[T]he plaintiff in an infringement action with a registered mark is given the prima facie or presumptive advantage on the issue of validity, thus shifting the burden of production to the defendant to prove otherwise."). None of the evidence cited by VIP demonstrates that, "taken together," the elements of the bottle design registration—including "an embossed signature design comprised of the word 'JACK DANIEL'"—are functional or nondistinctive. The district court therefore correctly rejected VIP's request for cancellation of the registered mark.

### B. Nominative Fair Use Defense

The district court also correctly rejected VIP's nominative fair use defense. Although the Bad Spaniels toy resembles JDPI's trade dress and bottle design, there are significant differences between them, most notably the image of a spaniel and the phrases on the Bad Spaniels label. These differences preclude a finding of nominative fair use. *See Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002); *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008) (finding nominative fair use defense did not apply where mark was "not identical to the plaintiff's" mark).

### C. First Amendment Defense

"In general, claims of trademark infringement under the Lanham Act are governed by a likelihood-of-confusion test,"

*Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192, 1196 (9th Cir. 2017), which seeks to strike the appropriate balance between the First Amendment and trademark rights, *see Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264 (9th Cir. 2018). The likelihood-of-confusion test requires that the plaintiff have "a valid, protectable trademark" and defendant's "use of the mark is likely to cause confusion." *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014) (quoting *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007)).

When "artistic expression is at issue," however, the general likelihood-of-confusion test "fails to account for the full weight of the public's interest in free expression." *Gordon*, 909 F.3d at 264 (quoting *Mattel, Inc. v. MCA Records*, 296 F.3d 894, 900 (9th Cir. 2002)). Accordingly, we have held that the Lanham Act only applies to expressive works if the plaintiff establishes one of the two requirements in the test set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). *See MCA Records*, 296 F.3d at 902 (adopting *Rogers* test for use of a trademark in the title of an expressive work); *see also Gordon*, 909 F.3d at 267 (noting that after *MCA Records*, this Court "extended the *Rogers* test beyond a title"). *Rogers* requires the plaintiff to show that the defendant's use of the mark is either (1) "not artistically relevant to the underlying work" or (2) "explicitly misleads consumers as to the source or content of the work." *Gordon*, 909 F.3d at 265.

In determining whether a work is expressive, we analyze whether the work is "communicating ideas or expressing points of view." *MCA Records*, 296 F.3d at 900 (quoting *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 29 (1st Cir. 1987)). A work need not be the "expressive equal of *Anna Karenina* or *Citizen Kane*" to satisfy this

requirement, *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1241 (9th Cir. 2013), and is not rendered non-expressive simply because it is sold commercially, *see MCA Records*, 296 F.3d at 906–07.

We recently had "little difficulty" concluding that greeting cards, which combined the trademarked phrases "Honey Badger Don't Care" and "Honey Badger Don't Give a S - - -" alongside announcements of events such as Halloween and a birthday, were "expressive works" entitled to First Amendment protection. *Gordon*, 909 F.3d at 261–63, 268. Even if the cards did not show great "creative artistry," they were protected under the First Amendment because the cards "convey[ed] a humorous message through the juxtaposition of an event of some significance—a birthday, Halloween, an election—with the honey badger's aggressive assertion of apathy." *Id.* at 268–69.

Like the greeting cards in *Gordon*, the Bad Spaniels dog toy, although surely not the equivalent of the *Mona Lisa*, is an expressive work. *See Empire Distribution*, 875 F.3d at 1196 ("We decide this legal question de novo."). The toy communicates a "humorous message," *see Gordon*, 909 at 268–69, using word play to alter the serious phrase that appears on a Jack Daniel's bottle—"Old No. 7 Brand"—with a silly message—"The Old No. 2." The effect is "a simple" message conveyed by "juxtaposing the irreverent representation of the trademark with the idealized image created by the mark's owner." *L.L. Bean, Inc.*, 811 F.2d at 34 (affording First Amendment protection to a message "that business and product images need not always be taken too seriously"). Unlike the book in *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997), which made "no effort to create a transformative work with 'new expression, meaning, or message,'" Bad Spaniels

comments humorously on precisely those elements that Jack Daniels seeks to enforce here. *Id.* at 1401 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578, 580 (1994)). The fact that VIP chose to convey this humorous message through a dog toy is irrelevant. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995) ("[T]he Constitution looks beyond written or spoken words as mediums of expression.").

The Fourth Circuit's decision in *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252 (4th Cir. 2007), supports our conclusion. That opinion held that dog toys which "loosely resemble[d]" small Louis Vuitton handbags were "successful parodies of LVM handbags and the LVM marks and trade dress" and therefore did not infringe the LVM trademark.[1] *Id.* at 258, 260, 263. The Fourth Circuit reasoned that although "[t]he dog toy is shaped roughly like a handbag; its name 'Chewy Vuiton' sounds like and rhymes with LOUIS VUITTON; its monogram CV mimics LVM's LV mark; the repetitious design clearly imitates the design on the LVM handbag; and the coloring is similar," "no one can doubt . . . that the 'Chewy Vuiton' dog toy is not the 'idealized image' of the mark created by LVM." *Id.* at 260. No different conclusion is possible here.

Because Bad Spaniels is an expressive work, the district court erred in finding trademark infringement without first requiring JDPI to satisfy at least one of the two *Rogers* prongs. *See Gordon*, 909 F.3d at 265; *see also E.S.S. Entm't*

---

[1] The Fourth Circuit decision was based on likelihood of confusion, not the First Amendment, *see id.* at 259–60, as it had not yet adopted the *Rogers* test, *see Radiance Found., Inc. v. NAACP*, 786 F.3d 316, 329 (4th Cir. 2015) (later applying it).

12   VIP PRODUCTS V. JACK DANIEL'S PROPERTIES

*2000*, 547 F.3d at 1101 (stating that "the First Amendment defense applies equally to . . . state law claims as to [a] Lanham Act claim"). We therefore vacate the district court's finding of infringement and remand for a determination by that court in the first instance of whether JDPI can satisfy a prong of the *Rogers* test.[2]

### D. Trademark Dilution by Tarnishment

When the use of a mark is "noncommercial," there can be no dilution by tarnishment. 15 U.S.C. § 1125(c)(3)(C); *see* A.R.S. § 44-1448.01(C)(2). Speech is noncommercial "if it does more than propose a commercial transaction," *Nissan Motor Co. v. Nissan Comput. Corp.*, 378 F.3d 1002, 1017 (9th Cir. 2004) (quoting *MCA Records*, 296 F.3d at 906), and contains some "protected expression," *MCA Records*, 296 F.3d at 906. Thus, use of a mark may be "noncommercial" even if used to "sell" a product. *See Nissan Motor Co.*, 378 F.3d at 1017; *MCA Records*, 296 F.3d at 906.

Although VIP used JDPI's trade dress and bottle design to sell Bad Spaniels, they were also used to convey a humorous message. That message, as set forth in Part II.C above, is protected by the First Amendment. VIP therefore was entitled to judgment in its favor on the federal and state law dilution claims. *See Nissan Motor Co.*, 378 F.3d at 1017; *MCA Records*, 296 F.3d at 906.

---

[2] If the plaintiff satisfies one of the *Rogers* elements, "it still must prove that its trademark has been infringed by showing that the defendant's use of the mark is likely to cause confusion." *See Gordon*, 909 F.3d at 265; *see also Louis Vuitton Malletier*, 507 F.3d at 260 (noting that the application of likelihood-of-confusion factors "depend[s] to a great extent on whether its products and marks are successful parodies").

## III

We affirm the district court's summary judgment in favor of JDPI on the issues of aesthetic functionality and distinctiveness, affirm the judgment as to the validity of JDPI's registered mark, reverse the judgment on the issue of dilution, vacate the judgment after trial on the issue of infringement, and remand for further proceedings. The permanent injunction is vacated.[3]

**AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED. Each party to bear its own costs.**

---

[3] Because we hold that VIP was entitled to judgment in its favor on the trademark dilution claims and that the judgment in favor of VIP on the infringement claims must be vacated, we do not address VIP's alternative challenges to these claims. And, because we vacate the permanent injunction, we do not address VIP's argument that the district court erred in not limiting the scope of the permanent injunction.