Firm E-Mail: courtdocs@dickinsonwright.com
David G. Bray (#014346)
dbray@dickinsonwright.com
David N. Ferrucci (#027423)
dferrucci@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
Phone: (602) 285-5000
Fax: (844) 670-6009
*Attorneys for Plaintiff/Counterdefendant VIP Products, L.L.C*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| VIP Products L.L.C., an Arizona limited liability company,<br><br>        Plaintiff,<br><br>v.<br><br>Jack Daniel's Properties, Inc., a Delaware corporation,<br><br>        Defendant. | Case No. 2:14-cv-02057-SMM<br><br>**VIP PRODUCTS LLC'S BRIEF ON REMAND FROM THE NINTH CIRCUIT COURT OF APPEALS**<br><br>**(oral argument requested)** |

Pursuant to this Court's Order, Doc. 297, VIP Products L.L.C. ("VIP") respectfully submits its brief on the sole issue that remains after the Ninth Circuit's remand order (Doc. 287): whether Jack Daniel's Properties, Inc. ("JDPI") can demonstrate infringement under the Ninth Circuit's *Rogers* test—the test derived from the Second Circuit's seminal decision in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) ("*Rogers*").   Because JDPI cannot do so as a matter of law, VIP respectfully requests the Court enter judgment in its favor on JDPI's remaining infringement claim.

I.    **Introduction.**

This case involves Lanham Act trademark dilution and infringement claims brought by JDPI that target a dog toy parody of the famous Jack Daniel's black label whiskey bottle—VIP's Bad Spaniels Silly Squeaker®.

In 2016, VIP moved for summary judgment on JDPI's claims contending that because the Bad Spaniels parody was protected First Amendment expression it was a noncommercial use such that it did not dilute JPDI's marks as a matter of law and was not infringing as a matter of law under the Ninth Circuit's *Rogers* test.  *See generally*, Doc. 110. The District Court denied VIP's motion for summary judgment, rejecting VIP's First Amendment defenses, including its statutory non-commercial use defense, and held that *Rogers* did not apply. Doc. 171 at 9-10. At trial, the Court found in favor of JDPI on the dilution claim, applied the traditional likelihood-of-confusion test for trademark infringement under *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) ("*Sleekcraft*") and, disregarding the context of parody, found infringement.

On appeal, the Ninth Circuit, in a unanimous decision authored by Justice Hurwitz, reversed the District Court's judgment and remanded holding "the Bad Spaniels dog toy is an expressive work entitled to First Amendment protection." Doc. 287-1 at 4.  The Ninth Circuit vacated the permanent injunction; held that Bad Spaniels constituted a noncommercial use such that it did not dilute JDPI's mark by tarnishment as a matter of law; held that the parody dog toy was an expressive work to which the *Rogers* test applied; and remanded for application of that test in the first instance. *Id.*

The legal significance of the Ninth Circuit's rulings is that VIP's motion for summary judgment should have been granted in favor of VIP. That is because, as JDPI has conceded, applying *Rogers* defeats JDPI's infringement claim as a matter of law.

On appeal JDPI sought rehearing *en banc*, Doc. 63-1,[1] which the Ninth Circuit denied with not a single judge requesting a vote, Doc. 72, and then unsuccessfully petitioned the United States Supreme Court for review. 141 S. Ct. 1054 (2021).[2]  In doing so, JDPI conceded that the Ninth Circuit's holding that *Rogers* applied was "outcome determinative[,]" "disposes of the case[,]" *see* JDPI's Petition For A Writ Of

---

[1] Docket numbers 63-1 and 72 refer to the Ninth Circuit's docket at No. 18-16012.
[2] For the Court's convenience, the parties' briefing before the United States Supreme Court is attached hereto as Exhibit A.

Certiorari ("Cert. Pet.") at 30, and "case-dispositive." JDPI's Reply Brief For Petitioner ("Reply Cert. Pet.") at 8.  JDPI's concessions on Appeal are consistent with the position it took in the trial court. *See e.g.*, Doc. 142 at 10 (arguing in response to VIP's motion for summary judgment that a "'parody' ... dog toy[,] whether confusing or non-confusing[,] would effectively receive immunity from infringement claims under the very strict *Rogers* standard for liability"). JDPI has never argued, let alone demonstrated, that it could overcome *Rogers*; to the contrary, it has argued it cannot. *Id.*

As JDPI concedes, "*Rogers's* [is] highly restrictive test[,]" 63-1 at 19, that "places a heavy thumb on the scale in favor" of the parodist. Reply Cert. Pet. 9. Indeed, the *Rogers* test "is very protective of speech[,]" *Novalogic, Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885, 900 (C.D. Cal. 2013), and not "easy to meet." *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020) ("*Dr. Seuss*").  Under the test, "the trademark owner does not have an actionable Lanham Act claim unless the use of the trademark is 'either (1) not artistically relevant to the underlying work or (2) explicitly misleads consumers as to the source or content of the work.'" *Id.* (*quoting VIP Prods. LLC v. Jack Daniel's Props., Inc.*, 953 F.3d 1170, 1174 (9th Cir. 2020)).

Given its repeated and binding[3] concessions, the only reasonable and non-disingenuous response from JDPI to the Ninth Circuit's ruling is to withdraw its remaining claim.  JDPI's only hope at this point is to somehow convince the Court to ignore its repeated concessions that application of *Rogers* is "case-dispositive," Reply Cert. Pet. at 8, ignore that in response to VIP's motion for summary judgment JDPI pointed to no material issues of fact that would preclude summary judgment in favor of VIP under *Rogers*, *see generally*, Doc. 142, and convince the Court that more expert discovery is needed so that it can continue to drive up VIP's litigation costs. This Court should reject JDPI's transparent and continuing efforts to chill protected expression,

---

[3] *See Gospel Missions of Am. v. City of L.A.*, 328 F.3d 548, 557 (9th Cir. 2003) (holding courts "have discretion to consider a statement made in briefs to be a judicial admission ... binding on ... the trial court.").

reconsider and apply the Ninth Circuit's holdings to its summary judgment ruling, enter judgment in favor of VIP, and finally put to an end JDPI's unrelenting assault on the First Amendment.

## II.     Relevant Facts and Procedural History.

### A.     VIP and JDPI File Claims Over the Bad Spaniels Parody.

VIP designs, manufactures and sells dog toys, including a parody line branded Silly Squeakers® that parodies famous beverage brands.  Doc. 287-1 at 4-5; Doc. 245 at 2-3.  One of those Silly Squeakers® is the Bad Spaniels Silly Squeaker. *Id.*

VIP designed the Bad Spaniels Silly Squeaker to be a comical parody of the Jack Daniel's black label whiskey bottle. Doc. 245 at 19. As the District Court found, VIP's "intent behind producing the Silly Squeakers line of toys was to develop a creative parody on existing products." Doc. 245 at 3. "VIP's purported goal in creating Silly Squeakers was to 'reflect' on the humanization of the dog in our lives,' and to comment on 'corporations [that] take themselves very seriously.'" Doc. 287-1 at 5.

To effectuate the parody, Bad Spaniels invokes elements of the Jack Daniel's black label whiskey bottle and artistically transforms them in order to communicate the parody. "Jack Daniel's" becomes "Bad Spaniels," "Old No. 7" becomes "Old No. 2," "Tennessee whiskey" becomes "Tennessee carpet" and references to alcohol content are transformed into "43% POO BY VOL." and "100% SMELLY." Doc. 245 at 3; Doc. 287-1 at 10.  Although a rubber dog toy, Bad Spaniels approximates the shape and size of a Jack Daniel's bottle and features the picture of a "wide-eyed spaniel." Doc. 245 at 3.

In September 2014, after JDPI "demand[ed] that VIP cease all further sales of the Bad Spaniels toy[,]" VIP filed the present action for a declaratory judgment that its parody "d[id] not infringe or dilute any claimed trademark rights" of JDPI.  Doc. 287-1 at 5.  JDPI counterclaimed asserting dilution and infringement claims. *Id*. at 5-6.

**B.     The District Court Denies VIP's Motion for Summary Judgment.**

In September 2016, this Court denied VIP's motion for summary judgment. Doc. 171. In doing so, the Court declined to apply *Rogers* based on the out-of-circuit district court opinion in *Tommy Hilfiger Licensing, Inc. v. Nature Labs*, LLC, 221 F. Supp. 2d 410, 415 (S.D.N.Y. 2002).  Doc. 171 at 10. The Court did so at JDPI's urging and based on two representations of law JDPI made in its response to VIP's motion; specifically, JDPI represented that "VIP cites no case from the Ninth Circuit or elsewhere that has applied *Rogers* to alleged parody products" and "[c]ases considering alleged parody products ... have uniformly applied the standard likelihood of confusion analysis." Doc. 142 at 7-8.  This is not even close to a fair representation of the Ninth Circuit case law.

Since the Ninth Circuit's adoption of the *Rogers* test in 2002, in every case involving alleged parody products, the Ninth Circuit applied *Rogers*. *See Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002) (applying *Rogers* to hit song "'Barbie Girl,' [which] is a parody of Barbie"); *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) (applying *Rogers* to a "work [that] may reasonably be perceived as a parody of Barbie"); *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008) (applying *Rogers* to video game using the challenged mark "to develop a cartoon-style parody of East Los Angeles").  In its motion, VIP relied upon all of these cases. Doc. 110 at 5-7. In its response, JDPI discussed these cases. Doc. 142 at 3-9. JDPI could not have simply overlooked the fact that, for example, the "Food Chain Barbie" photographs in *Walking Mountain* were parodies to which the Ninth Circuit applied the *Rogers* test. The word "parody" appears approximately forty-one (41) times in *Walking Mountain*.  *See generally*, 353 F.3d 792.

Transparently, JDPI chose this route because, as its response demonstrates, it cannot satisfy its burden under *Rogers*. In its response to VIP's motion (Doc. 110), JDPI did not address or respond to VIP's argument that it could not satisfy either prong of the *Rogers* test and pointed to no material fact issues that would preclude summary

judgment in favor of VIP under *Rogers*. *See generally*, Doc. 142.  Instead, JDPI urged the Court not to apply *Rogers* because doing so would immunize VIP from liability for infringement. *Id*. at 10.  JDPI took the same approach on appeal. Doc. 25 at 50.[4]  Never once in the six-year history of this case, not in the District Court nor in the Courts of Appeal, has JDPI ever argued, let alone demonstrated, that it could overcome *Rogers*.

## C. The District Court Finds Infringement under *Sleekcraft*.

Disregarding Bad Spaniels is parody, at trial JDPI argued that "only a handful of [the *Sleekcraft*] factors can be determinative" and focused the Court's attention on the four factors that generally favor the parodist:[5] strength of the mark, similarity of use, intent, and evidence of actual confusion. *See., e.g.,* Doc. 210 at 19-20. Based on that presentation, the Court found infringement and permanently enjoined VIP "from sourcing, manufacturing, advertising, promoting, displaying, shipping, importing, offering for sale, selling or distributing the Bad Spaniels dog toy." Doc. 262 at 6.

## D. The Ninth Circuit Promulgates Rulings that are Law of the Case.

The Ninth Circuit decided several issues, either "explicitly or by necessary implication," that are now "law of the case" and therefore "precluded from reconsider[ation.]" *Sec. Inv. Prot. Corp. v. Vigman*, 74 F.3d 932, 937 (9th Cir. 1996) (explaining the "law of the case" doctrine). The Ninth Circuit's findings and conclusions that are law of the case and control resolution of the remanded issue are as follows.

### 1. VIP's transformative use effectuates a trademark parody.

"The issue of whether a work is a parody is a question of law[.]" 353 F.3d at 801 (citations omitted). Trademark caselaw defines "trademark parodies" as follows:

---

[4] The docket number here refers to the Ninth Circuit's docket at No. 18-16012.

[5] "[P]arody alters the likelihood-of-confusion analysis[.]" *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 261 (4th Cir. 2007); *see also Nature Labs, LLC*, 221 F. Supp. 2d at 421 (taking the parodic nature of the use into account and finding no likelihood-of-confusion on that basis); Doc. 287-1 at 12, n.2 (same).

> Trademark parodies[6]... convey a message[,] [which] may be simply that business and product images need not always be taken too seriously [and] that we are free to laugh at the images and associations linked with the mark[,] by juxtaposing the irreverent representation of the trademark with the idealized image created by the mark's owner.

*L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 34 (1st Cir. 1987).   Following that established definition, the Ninth Circuit held that the "effect" of VIP's transformative use of the Jack Daniel's marks into Bad Spaniels was trademark parody:

> The toy communicates a "humorous message," using word play to alter the serious phrase that appears on a Jack Daniel's bottle—"Old No. 7 Brand"—with a silly message—"The Old No. 2." **The effect is** "a simple" message conveyed by "juxtaposing the irreverent representation of the trademark with the idealized image created by the mark's owner."

Doc. 287-1 at 10 (citations omitted) (emphasis added). It is thus law of the case that Bad Spaniels is a parody and an artistically transformative work. *Id.*

### 2. "No different conclusion" other than a finding of non-infringement "is possible here."

Although JDPI has suggested that the Court's infringement finding under *Sleekcraft* was not disturbed on appeal, JDPI is incorrect. In vacating the District Court's judgment on infringement, the Ninth Circuit held that when properly considered in the context of parody, as did the Fourth Circuit in considering the Chewy Vuitton parody dog toy in *Haute Diggity Dog*, 507 F.3d 252, "[n]o different conclusion" other than a finding of non-infringement "is possible here." Doc. 287-1 at 10. The practical effect of this law of the case ruling is that even if JDPI can pass the *Rogers* test (it has already conceded that it cannot), "it still must prove that its trademark has been infringed by showing that the defendant's use of the mark is likely to cause confusion." Doc. 287-1 at

---

[6] The analysis of whether a work constitutes a trademark parody is not the same as to whether its a "parody" for purposes a copyright fair use defense. *See* 983 F.3d at 451.

7

13 n.2 (quotation omitted).  JDPI cannot do so because once the parodic nature of the use is taken into consideration, which it must be, *id.*, there can be no finding of infringement as a matter of law, *i.e.*, "[n]o different conclusion [other than that reached by the Fourth Circuit in *Haute Diggity Dog*] is possible here."  Doc. 287-1 at 10.

## III.   The Court Should Enter Judgment for VIP on JDPI's Remaining Claim.

Applied to the litigation in the District Court, the legal significance of the Ninth Circuit's rulings is that VIP's motion for summary judgment should have been granted in favor of VIP. VIP respectfully requests the Court to reconsider its summary judgment ruling, apply the Ninth Circuit's holdings, and enter judgment in favor of VIP.

The most efficient, and just, route to this manifestly correct result is for the Court to preclude JDPI from taking a litigation position inconsistent with the one it took in response to VIP's motion for summary judgment where JDPI pointed to no material fact issues that would preclude summary judgment in favor of VIP under *Rogers* and instead urged the Court not to apply *Rogers* because, as it successfully argued, doing so would immunize VIP from liability for infringement.  *See generally*, Doc. 142.

Second, even if the Court allows JDPI to change positions and get another bite at the apple, it will only prolong the inevitable because JDPI was correct in its initial assessment; application of *Rogers* easily defeats JDPI's infringement claim as a matter of law (it's not even close) and does indeed immunize VIP from liability.

### A.   JDPI Should Be Judicially Estopped from Changing its Summary Judgment Position.

There is no justification to allow JDPI a second chance to respond to VIP's motion for summary judgment and assert a position contrary to the one it took originally. Having successfully defeated VIP's motion by urging this Court not to apply *Rogers*, arguing VIP "would effectively receive immunity from infringement claims under the

very strict *Rogers* standard for liability," Doc. 142 at 10, JDPI should be judicially estopped from asserting VIP would not be immune for infringement under *Rogers*.

"[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (citation and quotation marks omitted). "[I]ts purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id*. at 749-50 (citation and quotation marks omitted). Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id*. at 749 (citation and quotation marks omitted). "The doctrine applies ... to a party's stated position whether it is an expression of intention, a statement of fact, or a legal assertion." *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 935 (9th Cir. 2011).

Even if the Court declines to invoke judicial estoppel to preclude JDPI from now taking inconsistent positions, as fully demonstrated *infra*, JDPI's position up until now is absolutely correct—application of the *Rogers* test to its remaining claim is "case-dispositive." *See e.g.*, Cert. Pet. at 30.

**B.    The Ninth Circuit Cases Applying the *Rogers* Test Demonstrate that Application of *Rogers* to this Case is Indeed Case-Dispositive.**

Since its adoption of the *Rogers* test in *MCA Records* in 2002, the Ninth Circuit has reviewed eight decisions under *Rogers* involving trademark infringement or right to publicity claims.  In six of those eight cases, including its most recent decision in *Dr. Seuss*, 983 F.3d 443, the Ninth Circuit affirmed early dismissal or summary judgment in favor of the defendant and against the trademark owner.  This case is the only one where the Ninth Circuit reversed a district court's decision not to apply *Rogers* to an expressive use and remanded for consideration of *Rogers* in the first instance. The only other case

that did not result in affirmance of summary judgment or dismissal in favor of the defendant was *Gordon v. Drape Creative, Inc.*, 909 F.3d 257 (9th Cir. 2018).

*Gordon* is an anomaly; it "demonstrates *Rogers's* outer limits" *id*., at 268, and creates a limited exception to *Rogers* in cases involving a "minimally expressive work that [merely] copies someone else's mark" onto a directly competing product. *Id*. at 261; *see also* Section II(C)(3), *infra*. Although JDPI will attempt to convince the Court that Bad Spaniels falls within the *Gordon* exception, the parody clearly falls into that category occupied by the vast majority of Ninth Circuit cases finding that *Rogers* precluded the infringement claim as a matter of law.

The Ninth Circuit's *Rogers* test is derived from the Second Circuit's decision in *Rogers*, 875 F.2d 994. There, Ginger Rogers claimed that a movie title, "Ginger and Fred," about two "cabaret performers [who] imitated" Rogers and Fred Astaire, violated the Lanham Act "by creating the false impression that the film was about her or that she sponsored, endorsed, or was otherwise involved in the film." *Id.* at 996-997.  Concerned that a claim targeting an expressive use "might intrude on First Amendment values," the Second Circuit "construe[d] the Act narrowly to avoid such a conflict," created what has become known as the *Rogers* test, and held that despite survey evidence showing likely confusion and evidence of actual confusion, *id*. at 1001, the challenged use did not infringe because the use was (1) artistically relevant to the work, and (1) the work did not "explicitly mislead[] as to the source or content of the work." *Id*. at 998-999.

The Ninth Circuit adopted the *Rogers* approach to infringement claims involving expressive uses in *MCA Records*, noting that "when a trademark owner asserts a right to control how we express ourselves[,] applying the traditional test fails to account for the full weight of the public's interest in free expression." 296 F.3d at 900.  *MCA Records* dealt with trademark dilution and infringement claims based on the hit parody song

10

"Barbie Girl." Applying *Rogers* to the "Barbie Girl" song, the Ninth Circuit concluded "that MCA's use of Barbie is not an infringement of Mattel's trademark." *Id.* at 902.

The Ninth Circuit applied the *Rogers* test to another parodic use of Barbie in *Walking Mountain* and affirmed summary judgment for the parodist because his use was artistically relevant to his "parodic message" and because the photographs did "not explicitly mislead as to Mattel's sponsorship of the works[.]" 353 F.3d 792, 807.

In *E.S.S. Entm't*, the Ninth Circuit applied *Rogers* to a video game that used the marks and trade dress of a Los Angeles gentlemen's club to create "a cartoon-style parody of East Los Angeles." 547 F.3d at 1100. In applying the first prong of the *Rogers* test, the Ninth Circuit explained that "[t]he level of relevance merely must be above zero" and held the defendant met this threshold because its use was relevant to its artistic goal. The Court also concluded the game did not explicitly mislead because "the mere use of a trademark alone cannot suffice to make such use explicitly misleading." *Id.*

The Ninth Circuit applied the *Rogers* test to another video game in *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235 (9th Cir. 2013). In that case, NFL football player Jim Brown alleged that EA violated the Lanham Act by using his likeness in *Madden NFL*. *Id.* at 1238-39. In affirming the district court's granting of EA's motion to dismiss under *Rogers*, the Court reaffirmed that the level of artistic relevance under *Rogers* need only exceed zero, finding it "obvious that Brown's likeness ha[d] at least some artistic relevance to EA's work." *Id.* at 1243. The Court also found Brown had not alleged facts sufficient to satisfy the "explicitly misleading" prong. *Id.* at 1244. In doing so, the Court elaborated on what type of evidence is relevant for finding a use "explicitly misleading."

The Court explained that "[i]t is key here that the creator must *explicitly* mislead consumers" by making an "overt claim," "explicit misstatement" or "explicit indication on the face of the work" that the work is sponsored or endorsed by the markholder. 724

F.3d at 1245-1246 (quotation omitted) (emphasis in original).  For this reason, the Court explained, ***evidence of actual or likely confusion is irrelevant***: "Adding survey evidence changes nothing.... To be relevant, evidence must relate to the nature of the behavior of the identifying material's user, not the impact of the use."  *Id*. at 1245-46.

In *Twentieth Century Fox Television a division of Twentieth Century Fox Film Corp. v. Empire Distribution, Inc.*, 875 F.3d 1192 (9th Cir. 2017), the Ninth Circuit applied *Rogers* to the use of the mark "Empire" for the title of a television show. *Id*. at 1195. After receiving a cease-and-desist letter, Fox sued Empire Distribution for a declaratory judgment that its show did not violate Empire's trademark rights. *Id*. Applying *Rogers*, the Court concluded that Fox used "'Empire' for artistically relevant reasons," namely as the title for a show about "a figurative empire[.]" *Id*.  The Court also rejected Empire's efforts to conflate the likelihood-of-confusion test with *Rogers*' second prong; following *Brown*, it held that evidence showing the use "would confuse consumers" was irrelevant. *Id*. at 1199. Because Fox's show contained "no overt claims or explicit references to Empire Distribution," *Rogers* could not be satisfied. *Id*.

Shortly after the Ninth Circuit reversed and remanded this case, it handed down its most recent *Rogers'* decision in *Dr. Seuss*, 983 F.3d 443, which held that although a comic "mash-up" was not exempt from liability for copyright infringement as a matter of law, it was so except from liability for trademark infringement under *Rogers*.

## C.    Application of *Rogers* Defeats JDPI's Claim as a Matter of Law.

Because VIP has demonstrated, and the Ninth Circuit held, "Bad Spaniels is an expressive work[,]" the burden shifts to "JDPI to satisfy at least one of the two *Rogers* prongs." Doc. 287-1 at 11; *see also Gordon*, 909 F.3d at 265. The *Rogers* test is easy to state and "straightforward to apply[.]" 41 F. Supp. 3d at 900.

> Under the *Rogers* test, the trademark owner does not have an actionable Lanham Act claim unless the use of the trademark is "either (1) not artistically relevant to the underlying work or (2) explicitly misleads consumers as to the source or content of the work." Neither of these prongs is easy to meet.

*Dr. Seuss,* 983 F.3d at 462 (quoting *VIP Prods*, 953 F.3d at 1174).

### 1. VIP's Transformative Mimicry of the Jack Daniel's Whiskey Bottle Is Artistically Relevant to the Bad Spaniels Parody.

In the recent decision, *IOW, LLC v. Breus*, Judge Campbell succinctly summed up the requirements for the "artistic relevance" prong of the *Rogers* test:

> This is a demanding test. The first prong is met only when the mark has zero relevance to the defendant's expressive work[.] [T]he level of artistic relevance of the trademark to the work merely must be above zero. [E]ven the slightest artistic relevance' will suffice[.]

425 F. Supp. 3d 1175, 1193 (D. Ariz. 2019) (quotations and citations omitted).  VIP's invocation of the Jack Daniel's whiskey bottle is relevant to VIP's artistic purpose of parodying Jack Daniel's. The Ninth Circuit's conclusion that Bad Spaniels used the marks and trade dress to communicate its parody is dispositive. Doc. 287-1 at 10.

### 2. Bad Spaniels is not Explicitly Misleading as A Matter of Law.

"*Rogers's* second prong requires [JDPI] to prove that [VIP's] use of the mark 'explicitly misleads consumers as to the source or the content of the work.'" *IOW*, 425 F. Supp. 3d at 1194 (*quoting Gordon*, 909 F.3d at 264-65 and *citing Rogers*, 875 F.2d at 999).  As the Ninth Circuit has explained, the "explicitly misleading" requirement:

> [I]s a high bar that requires the use to be "an 'explicit indication,' 'overt claim,' or 'explicit misstatement'" about the source of the work. *Brown*, 724 F.3d at 1245. [A work] is not ***explicitly*** misleading if it only "implicitly suggest[s] endorsement or sponsorship." *Rogers*, 875 F.2d at 999-1000.

*Dr. Seuss*, 983 F.3d at 462 (emphasis in original). The requisite "overt claim," "explicit misstatement" or "explicit indication [must appear] ***on the face of the work***." *Brown*,

724 F.3d at 1245-46 (emphasis added).  That's because "[t]o be relevant, evidence must relate to the nature of the behavior of the identifying material's user, not the impact of the use." 425 F. Supp. 3d at 1194 (*quoting Brown*, 724 F.3d at 1246).  As such, and as JDPI conceded on Appeal, evidence of consumer perception is irrelevant under *Rogers*:

> Under [*Rogers*] a defendant can escape liability even if the plaintiff proves a certainty of confusion [because] [*Rogers*] makes consumer perception irrelevant to infringement claims[.]

Cert. Pet at 31-33; *see also* Reply Cert. Pet. at 10 ("a trademark holder who cannot satisfy either prong [of the *Rogers* test] 'does not have an actionable Lanham Act claim,' and 'evidence of consumer confusion . . . does not change the result.'") (*quoting Dr. Seuss*, 983 F.3d at 462). As Judge Campbell explained in rejecting as irrelevant under *Rogers* second prong "evidence show[ing] that [a consumer] was confused as to whether Plaintiffs sponsored, or were affiliated with, [the challenged work]":

> "[I]t is not enough to show that 'the defendant's use of the mark would confuse consumers as to the source, sponsorship or content of the work'; rather, the plaintiff must show that the defendant's use 'explicitly misled consumers.'" *Gordon*, 909 F.3d at 267 (*quoting Twentieth Century Fox*, 875 F.3d at 1199)[.] Because Plaintiffs present no evidence that Defendants made "an 'explicit indication,' 'overt claim,' or 'explicit misstatement'" that [the challenged work] is affiliated with Plaintiffs or their business, Plaintiffs have failed to demonstrate a triable issue on the second *Rogers* prong.

425 F. Supp. 3d at 1194.  The exact same analysis applies here. Rather than making an explicit or overt claim that Bad Spaniels "is affiliated with Plaintiffs or their business[,]" *Twentieth Century Fox*, 875 F.3d at 1199, as the prong requires, Bad Spaniels expressly designates its source as VIP Products and Silly Squeakers® and expressly disclaims any affiliation with Jack Daniel's. Doc. 111, ¶ 5. The absence of any overt indication on its face that Jack Daniel's sponsors or is affiliated with the work, coupled with its express disclaimer, are dispositive of the issue.  *See Dr. Seuss*, 983 F.3d at 462.

In *Dr. Seuss*, the Court held that although the defendant "used the marks in an illustrated book, just as Seuss did," the work (the "*Boldly* mash-up") did not explicitly mislead as a matter of law because it indicated a different source and expressly disclaimed that it was "associated with or endorsed by" Dr. Seuss. *Id.* at 463. "Seuss's evidence of consumer confusion in its expert survey d[id] not change the result." *Id.*

*Dr. Seuss* is controlling and dispositive.  First, as in that case, here there is no "overt claim," "explicit misstatement" or "any explicit indication on the face of the work." *Brown*, 724 F.3d at 1246. Second, like the *Boldly* mash-up listing its own sources and expressly disclaiming any affiliation with Dr. Seuss, 983 F.3d at 463, Bad Spaniels lists its sources as VIP Products and Silly Squeakers®, and contains an express disclaimer stating that the "product and its design belong to VIP Products," and is not "affiliated with Jack Daniels Distillery[.]" Doc. 111, ¶ 5.

Moreover, unlike in *Dr. Seuss*, where the defendant used the marks on the same type of product, *id.* at 463, Bad Spaniels is a completely different product than the one it parodies. Doc. 171 at 10. Bad Spaniels also has a far greater claim to transformative use than did the *Boldly* mash-up, where the artistic transformation consisted of the addition of "just one word." 983 F.3d at 462. Here, by contrast, VIP artistically transformed every element of the marks and trade dress it used to create what the Ninth Circuit found to be a "successful parody." Doc. 287-1 at 10; *see also* Section II(D)(2), *supra*. If the *Boldly* mash-up is protected as a matter of law under *Rogers*, then so is Bad Spaniels.

### 3.   The Ninth Circuit's decision in *Dr. Seuss* forecloses any claim Bad Spaniels falls within the *Gordon* "outer limits" exception.

Bad Spaniels does not fall within the *Rogers'* "outer limits" exception occupied by *Gordon*, 909 F.3d 257. Unlike this case, *Gordon* "demonstrates *Rogers's* outer limits" because it is a case where the junior user simply copied the trademarked phrase

"HONEY BADGER DON'T CARE" and pasted it onto its own directly competing product and did so after a licensing deal between the plaintiff and the defendants to use the Honey Badger marks failed to materialize. *Id.* at 262.  Stated differently, *Gordon* "demonstrates *Roger's* outer limits" because the alleged infringing use was "identical" to that of the senior user; the defendant produced the same type of product as the plaintiff (greeting cards), used the Honey Badger mark precisely as the plaintiff did, "to convey a humorous message through ... the honey badger's aggressive assertion of apathy[,]" 909 F.3d at 268-69, and essentially copied the mark without "add[ing] his or her own expressive content to the work beyond the mark itself." *Id.* at 270.

In *Dr. Seuss*, the Ninth Circuit further expounded on the *Gordon* "outer limits" exception and rejected its application there. Construing *Gordon*, the Ninth Circuit stated that in situations involving a "minimally expressive work that [merely] copies someone else's mark[,]" 909 F.3d at 261, "two more relevant considerations weigh in evaluating whether the mark is explicitly misleading: (1) 'the degree to which the junior user uses the mark in the same way as the senior user' and (2) 'the extent to which the junior user has added his or her own expressive content to the work beyond the mark itself.'" 983 F.3d at 462-63.  If the junior user uses the mark in the same way and fails to add his or her own expressive content, then there is a triable issue of fact under *Rogers*' second prong. *Id.* Applying that standard there, the Ninth Circuit held that even though the use was exactly same as in *Dr. Seuss*, "*Boldly* does not test the 'outer limits' of *Rogers*" because "unlike with the greeting cards in *Gordon*, ComicMix has 'added ... expressive content to the work beyond the mark itself.'" *Id.* (*quoting Gordon*, 909 F.3d at 207).

Bad Spaniels is not like the greeting cards in *Gordon*; it is not a "minimally expressive work that [merely] copies someone else's mark[,]" 909 F.3d at 261. Unlike in *Gordon*, where the junior user copied the mark onto a competing product, and used it in

16

the same way, 909 F.3d at 268-69, VIP uses the mark on "a non-competing product[.]" Doc. 171 at 10, and uses the mark to communicate a parody. The Ninth Circuit's finding that JDPI's original use is "serious" whereas VIP's transformative use is "humorous," "silly," and effectuates parody, Doc. 287-1 at 10, is dispositive. Simply put, unlike the pirated greeting cards in *Gordon*, but like the *Boldly* mash-up, VIP has "added ... expressive content to the work beyond the mark itself" 983 F.3d at 462-63, and therefore does not fall within *Gordon*'s "outer limits" exception. *Id*.

In sum, as it has long since conceded, JDPI cannot satisfy either prong the *Rogers* test as a matter of law. VIP's transformative use is artistically relevant to the Bad Spaniels parody. VIP makes no explicit or overt claim that Bad Spaniels is affiliated with Jack Daniel's, and in fact expressly disclaims any such affiliation. Doc. 111, ¶ 5. Bad Spaniels comes nowhere close to "the 'outer limits' of *Rogers*" and therefore, as a matter of law, "the Lanham Act does not apply here." *Dr. Seuss*, 983 F.3d at 462-63.

## IV.    JDPI is Not Entitled to Further Expert Discovery.

### A.    Expert Testimony on Consumer Perception is Irrelevant.

During the telephonic status conference held on March 17, 2021 (Doc. 296) JDPI requested the Court to re-open expert discovery. The expert discovery deadline in this case was previously extended from July 10, 2015, *see* Doc. 25 (noting the Court's "intent to enforce the deadlines set forth in this Order" and admonishing the parties to "plan their litigation activities accordingly"), to August 28, 2015. Doc. 78. Although JDPI struggled to articulate a justification for reopening expert discovery five and half years after the August 28, 2015 deadline, JDPI suggested expert testimony be used to aid the Court's determination of the explicitly misleading prong of the *Rogers* test by opining on how consumers perceive Bad Spaniels in the marketplace.

It is hard to image a more disingenuous request given that just a few months ago JDPI was representing to the United States Supreme Court that *Rogers* "makes consumer perception irrelevant to infringement claims." Cert. Pet. at 31-33; *see also* Reply Cert. Pet. at 10 (arguing "a trademark holder who cannot satisfy either prong [of the *Rogers* test] 'does not have an actionable Lanham Act claim,' and 'evidence of consumer confusion . . . does not change the result.'") (*quoting Dr. Seuss*, 983 F.3d at 462). This Court has the "discretion to consider a statement made in briefs to be a judicial admission," 328 F.3d at 557, and VIP requests that the Court do so here and deny JDPI's request for additional expert discovery on this basis alone.

At any rate, JDPI is correct on this point; consumer perception is irrelevant under *Rogers*. *See* Section III(C)(2), *supra*. Thus, even if JDPI could produce expert testimony that "consumers of the [Bad spaniels Parody] believed that [JDPI] endorsed the [toy], that would not support the claim that the use was explicitly misleading to consumers." *Brown*, 724 F.3d at 1246 (holding that "the use of Brown's likeness together with the cited survey do not provide a valid argument to allow Brown's case to go forward based on this prong of the *Rogers* test."); *see also Dr. Seuss*, 983 F.3d at 463 ("Seuss's evidence of consumer confusion in its expert survey does not change the result.").

Because the focus under *Rogers'* second prong is on the nature, not the impact, of the use, and requires "an 'explicit indication,' 'overt claim,' or 'explicit misstatement'" *Dr. Seuss*, 983 F.3d at 462, that appears "on the face of the work," *Brown*, 724 F.3d at 1246, courts determine whether the second prong is satisfied simply by looking at the challenged work without the aid of extrinsic evidence. *Dr. Seuss*, 983 F.3d at 462. "A court could determine whether a work contains such an 'overt claim' or 'explicit misstatement' simply by looking at the work itself[.]" *Stewart Surfboards, Inc v. Disney*

*Book Grp., LLC*, No. CV 10-2982 GAF (SSX), 2011 WL 12877019, at *6 (C.D. Cal. May 11, 2011) (granting motion to dismiss under *Rogers*).

Simply put, expert testimony on consumer perception is irrelevant under *Rogers* and JDPI's request should be denied for this reason alone.

**B.  There is No Good Cause to Re-Open Discovery.**

As demonstrated earlier, JDPI should be judicially estopped from taking a position contrary to the one it took in response to VIP's motion for summary judgment. *See* Section III(A), *supra*. At that time, JDPI had the opportunity to address VIP's argument that JDPI could not carry its burden under *Rogers*. Doc. 110 at 5-8.  JDPI did not do so and therefore waived any opposition to it.  *See e.g.*, *Wise v. MAXIMUS Fed. Servs., Inc.*, 445 F. Supp. 3d 170, 199 (N.D. Cal. 2020) ("failure to address an argument in response to motion for summary judgment waives opposition to it"); *see also Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 775 (N.D. Cal. 2017), *aff'd*, 749 F. App'x 557 (9th Cir. 2019) ("an issue or factual argument waived at the trial level ... cannot be revived on remand") (quotation omitted).

Moreover, if JDPI believed it needed more discovery, expert or otherwise, to address the argument, its remedy was to move for relief under Fed. R. Civ. P. 56(d).  *See Weinberg v. Whatcom Cty.*, 241 F.3d 746, 751 (9th Cir. 2001) (explaining that "failure to comply with the requirements of Rule 56[(d)] is a proper ground for denying discovery and proceeding to summary judgment" and holding that requests for additional discovery properly denied where plaintiff "never moved the court under Rule 56[(d)] for additional time to obtain the expert testimony necessary to substantiate his allegations").

As such, JDPI simply cannot demonstrate the requisite "good cause" for reopening expert discovery. "Rule 16 … govern[s] [a] motion to reopen discovery after remand[,]" which requires a showing "good cause." *Schagene v. Spencer*, No. 13CV333-

WQH(RBB), 2018 WL 1210682, at *3 (S.D. Cal. Mar. 8, 2018) (citing Fed. R. Civ. P. 16(b)4). Courts consider the following factors to determine "good cause":

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (citation omitted). Not one of these factors favor re-opening discovery:

(1) The trial has passed.

(2) The request is opposed.

(3) VIP would be prejudiced. *See e.g.*, *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 767 (9th Cir. 2015) ("granting ... motion would result in prejudice when [doing so] would necessitate reopening discovery"); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) ("Putting the defendants through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial.") (quotation omitted).

(4) From inception, JDPI could certainly foresee that the *Rogers* test was an issue in this case; JDPI knew VIP was claiming Bad Spaniels was a parody, such that "existing case law gave [JDPI] ample notice [that the Ninth Circuit applies *Rogers* to alleged parody] and what may constitute relevant evidence." *Hamidi v. Serv. Emps. Int'l Union Loc. 1000*, 386 F. Supp. 3d 1289, 1299-300 (E.D. Cal. 2019).

(5) JDPI was not diligent, which is the primary focus of the good cause standard. *See Noyes v. Kelly Servs.*, 488 F.3d 1163, 1174 n.6 (9th Cir. 2007); *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294-95 (9th Cir. 2000) (stating "good cause" is based primarily on the diligence of moving party). JDPI had "ample opportunity to conduct

discovery[.]" *Panatronic USA v. AT & T Corp.*, 287 F.3d 840, 846 (9th Cir. 2002).  "The burden was upon [JDPI] to prosecute [its] case properly." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992).  By its own admission, JDPI failed to diligently do so and for that reason alone its request should be denied. *Id.* at 609 ("If that party was not diligent, the inquiry should end.").

(6)   Finally, further discovery will not lead to relevant evidence. *See* Section IV(A) *supra*.

### C.   Allowing Further Expert Discovery Would Frustrate the First Amendment Purpose of the *Rogers* Test—to Expeditiously End Speech-Chilling Litigation.

As Mr. Sacra testified at trial, he has spent more than a million dollars defending the First Amendment right to parody.  Doc. 237 at 10 (92:19). Mr. Sacra testified that despite the relatively minimal profit VIP earns from the sale of Bad Spaniels, Doc. 237 at 97 (179:3-21), this case was about protecting the First Amendment rights of parodist generally. Doc. 237 at 9-10 (91:25-92:16). VIP was not always in a financial position to do so and earlier in its history was forced to settle a case against another billion-dollar beverage company, Anheuser-Busch.  Doc. 237 at 40 (122:7-10). As a First Amendment standard, the *Rogers* test is designed for precisely this type of situation.

The *Rogers* test is a First Amendment standard: "Effectively, *Rogers* employs the First Amendment as a rule of construction to avoid conflict between the Constitution and the Lanham Act." *Gordon*, 909 F.3d at 264.  As such, the *Rogers* test was designed to protect First Amendment speakers who do not have the resources to go toe-to-toe with billion-dollar companies. It is designed to expeditiously end speech-chilling litigation and is based on the longstanding principle that "the threat of burdensome litigation" has a chilling effect on speech. *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 469 (2007).

First Amendment standards "must eschew [tests that] invite[] complex argument in a trial court and a virtually inevitable appeal. In short, it must give the benefit of any doubt to protecting rather than stifling speech." 551 U.S. at 469 (citations and quotations omitted). The *Rogers* test operates in precisely this way; it eschews costly litigation that occurs under the fact-intensive likelihood-of-confusion test and replaces it with a test that is "straightforward to apply and is very protective of speech." 41 F. Supp. 3d at 900.

Setting precedent that allows the mark-holder to engage in expensive expert discovery to aid determination of the explicitly misleading prong will destroy the straightforward and speech protective nature of the test, will preclude expeditious resolution, and thereby create the very chilling effects First Amendment standards are designed to curtail.  JDPI's continuing six-year assault on First Amendment rights, exemplified by its latest request that it be permitted to conduct even more costly expert discovery, must finally be put to an end.  VIP urges this Court to do so.

## Conclusion

For the foregoing reasons, JDPI's request for additional expert discovery should be denied and judgment on JDPI's infringement claim entered in favor of VIP.

**DATED** this 14th day of May, 2021.

DICKINSON WRIGHT PLLC

By: *s/David G. Bray*
  David G. Bray
  David N. Ferrucci
  *Attorneys for VIP Products, L.L.C.*

22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 14, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

<u>*/s/ Janet Hawkins*</u>