MESSNER REEVES LLC
Isaac S. Crum
1440 E. Missouri Avenue, Suite C100
Phoenix, Arizona  85014
(602) 641-6705
icrum@messner.com

KILPATRICK TOWNSEND & STOCKTON LLP
Dennis Wilson
9720 Wilshire Boulevard
Beverly Hills, California  90212-2018
(310) 777-3740
dwilson@kilpatricktownsend.com

Theodore H. Davis Jr.
Sara K. Stadler
1114 Avenue of the Americas
New York, New York  10036-7703
(212) 775-8700
tdavis@kilpatricktownsend.com
sstadler@kilpatricktownsend.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| VIP Products, LLC, an Arizona limited liability company, | ) ) ) | No. CV-14-2057-PHX-SMM |
| Plaintiff, | ) ) | **JACK DANIEL'S PROPERTIES, INC.'S BRIEF ON REMAND** |
| v. | ) ) ) | **FROM THE NINTH CIRCUIT COURT OF APPEALS** |
| Jack Daniel's Properties, Inc., a Delaware corporation, | ) ) ) | **Oral Argument Requested** |
| Defendant. | ) ) ) | |

# TABLE OF CONTENTS

I.  Introduction.................................................................................................. 1

II.  JDPI Is Entitled to a Trial of Whether It Can Satisfy a Prong of
the *Rogers* Test............................................................................................ 1

   A.  The Ninth Circuit Decided the Threshold Issue in *Rogers*, then
Remanded to This Court for Application of the *Rogers* Test
Itself................................................................................................. 1

   B.  VIP Has Not Demonstrated its Entitlement to Judgment as a
Matter of Law Under Either of the *Rogers* Prongs. ........................... 4

     1.  VIP's Use of JDPI's Trade Dress Has Zero Artistic
Relevance to Any "Expressive" Content of Its Dog Toy
Because that Use Is Unrelated to the Meaning Associated
with JDPI's Marks.................................................................. 4

     2.  A Developed Trial Record Will Demonstrate that VIP's Use
Is Explicitly Misleading in Light of Intervening Ninth
Circuit Authority. ................................................................. 13

   C.  VIP Cannot Challenge This Court's Prior Finding of Likely
Confusion Under the *Sleekcraft* Factors........................................... 18

   D.  VIP's Claim of Judicial Estoppel Is Meritless.................................. 19

III.  Conclusion ................................................................................................ 20

i

# TABLE OF AUTHORITIES

*Am. Dairy Queen Corp. v. New Line Prods., Inc.*, 35 F. Supp. 2d 727 (D. Minn. 1998) ...................................................................................... 3

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) ........................ 18, 19

*Brown v. Electronic Arts, Inc.*, 724 F.3d 1235 (9th Cir. 2013)........................... 16

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ..................................... 9

*Chrysler Corp. v. Newfield Publ'ns, Inc.*, 880 F. Supp. 504 (E.D. Mich. 1995) ........................................................................................................ 3

*Dr. Seuss Enters. v. ComicMix LLC*, 983 F.3d 443 (9th Cir. 2020), *cert. denied*, No. 20-1616, 2021 WL 2519166 (U.S. June 21, 2021) ........ 7, 8, 17

*Dr. Seuss Enters. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997)............................................................................................... 4

*E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095 (9th Cir. 2008)........................................................................................... 7, 8, 16

*Gordon v. Drape Creative, Inc.*, 909 F.3d 257 (9th Cir. 2018) ................... passim

*Harley Davidson, Inc. v. Grottanelli*, 164 F.3d 806 (2d Cir. 1999)........... 9, 12, 13

*Hush Hush Sound, Inc. v. H & M Hennes & Mauritz LP*, No. 2:17-cv-07668-RGK-SS, 2018 WL 4962086 (C.D. Cal. Jan. 26, 2018) ....................... 13

*IOW, LLC v. Breus*, 425 F. Supp. 3d 1175 (D. Ariz. 2019) ................................... 8

*L.L. Bean, Inc. v. Drake Pubs., Inc.*, 811 F.2d 26 (1st Cir. 1987) ........................ 5

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252 (4th Cir. 2007)......................................................................................... 5

*Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894 (9th Cir. 2002) ................. 4, 7, 8, 9

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ................................................. 19

*Parks v. LaFace Recs.*, 329 F.3d 437 (6th Cir. 2003) ..................................... 3, 11

*Rebelution, LLC v. Perez*, 732 F. Supp. 2d 883 (N.D. Cal. 2010) ................... 3, 9

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) ....................................... passim

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Simon & Schuster, Inc. v. Dove Audio, Inc.*, 970 F. Supp. 279
(S.D.N.Y. 1997) ................................................................................ 3

*Stevens Tech. Servs., Inc. v. S.S. Brooklyn*, 885 F.2d 584 (9th Cir.
1989) ........................................................................................... 19

*Toho Co. v. William Morrow & Co.*, 33 F. Supp. 2d 1206 (C.D. Cal.
1998) ............................................................................................. 3

*Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339 (S.D.N.Y. 1998) ................ 3

*Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d
1192 (9th Cir. 2017)................................................................... 2, 7, 9

*United States ex rel. Eitel v. Reagan*, 35 F. Supp. 2d 1151 (D. Ariz.
1998), *aff'd*, 242 F.3d 381 (9th Cir. 2000)........................................ 19

*United States v. Sanchez*, 569 F.3d 995 (9th Cir. 2009) ..................................... 18

*Warner Bros. Ent. v. Glob. Asylum, Inc.*, 107 U.S.P.Q.2d 1910 (C.D.
Cal. 2012), *aff'd*, 544 F. App'x 683 (9th Cir. 2013) .................... 3, 9, 10

*Wash. Post Co. v. U.S. Dep't of Health & Hum. Servs.*, 865 F.2d 320
(D.C. Cir. 1989) .......................................................................... 18

*Westchester Media Co. v. PRL USA Holdings, Inc.*, 103 F. Supp. 2d
935 (S.D. Tex. 1999) ...................................................................... 3

iii

## I.    Introduction

The Court asked the parties to file briefs explaining the procedural posture of this case following remand. In response to this request, VIP Products, LLC ("VIP") submitted a brief seeking entry of summary judgment in its favor, which is directly at odds with both the Ninth Circuit's mandate and the test for liability set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). If the Ninth Circuit had viewed the two prongs of the *Rogers* test as candidates for resolution as a matter of law, it would have taken that step itself. Instead, it remanded for this Court's determination, "*in the first instance*," whether Jack Daniel's Properties, Inc. ("JDPI") "can satisfy a prong of the *Rogers* test." 287-1 at 12 (emphasis added). As to that determination, the record raises genuine issues of fact, making summary judgment inappropriate. JDPI therefore asks this Court to deny VIP's request and set this case for trial.

## II.   JDPI Is Entitled to a Trial of Whether It Can Satisfy a Prong of the *Rogers* Test.

### A.    The Ninth Circuit Decided the Threshold Issue in *Rogers*, then Remanded to This Court for Application of the *Rogers* Test Itself.

As the Ninth Circuit explained in *Gordon v. Drape Creative, Inc.*, 909 F.3d 257 (9th Cir. 2018), while vacating the grant of summary judgment,

> The *Rogers* test requires the defendant to make a threshold legal showing that its allegedly infringing use is part of an expressive work protected by the First Amendment. If the defendant successfully makes that threshold

1

showing, then the plaintiff claiming trademark infringement bears a heightened burden—the plaintiff must satisfy not only the likelihood-of-confusion test but also at least one of *Rogers*'s two prongs.

*Id.* at 264. That is, once *Rogers* is held to apply, the plaintiff must show *either* that the defendant's use "has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, [that] the [use] explicitly misleads as to the source or the content of the work." *Rogers*, 875 F.2d at 999.

VIP's appeal asked the Ninth Circuit to decide the threshold issue whether VIP's dog toy is an expressive work, such that the *Rogers* test would apply. Addressing itself to this "legal question," Doc. 287-1 at 10 (citing *Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192, 1196 (9th Cir. 2017)), the Ninth Circuit held "the Bad Spaniels dog toy . . . is an expressive work" because it "communicates a 'humorous message.'" *Id.* (quoting *Gordon*, 909 F.3d at 268). VIP now asks this Court to hold as a matter of law that JDPI cannot satisfy either prong of the *Rogers* test. Yet, as the Ninth Circuit explained in *Gordon*, above, this is an entirely separate inquiry from the threshold question the Ninth Circuit decided.

Nothing in the Ninth Circuit's opinion suggests it intended to decide whether JDPI can "satisfy . . . one of *Rogers*'s two prongs." *See Gordon*, 909 F.3d at 264. To the contrary, the Ninth Circuit stated, with crystal clarity, "[w]e therefore vacate the district court's finding of infringement and remand for a determination *by that court in the first instance* of whether JDPI can satisfy a

2

prong of the *Rogers* test." Doc. 287-1 at 12 (emphasis added). This delegation of authority makes sense because factual disputes can and do preclude summary judgment in *Rogers* cases. *See Parks v. LaFace Recs.*, 329 F.3d 437 (6th Cir. 2003) (vacating grant of defense motion); *Rebelution, LLC v. Perez*, 732 F. Supp. 2d 883 (N.D. Cal. 2010) (denying defense motion); *Chrysler Corp. v. Newfield Publ'ns, Inc.*, 880 F. Supp. 504 (E.D. Mich. 1995) (same).

Indeed, plaintiffs can and do prevail on the merits at trial even when defendants invoke *Rogers*. *See Westchester Media Co. v. PRL USA Holdings, Inc.*, 103 F. Supp. 2d 935, 966 (S.D. Tex. 1999) (finding of liability after bench trial), *vacated in part on other grounds*, 214 F.3d 658 (5th Cir. 2000); *Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 356 n.16 (S.D.N.Y. 1998) (same); *Simon & Schuster, Inc. v. Dove Audio, Inc.*, 970 F. Supp. 279, 298 (S.D.N.Y. 1997) (same).[1] JDPI is entitled to demonstrate at trial why it also should prevail on the merits, despite VIP's opportunistic invocation of *Rogers* and the First Amendment.

---

[1] Plaintiffs can and do prevail at other stages of *Rogers* cases as well. *See Warner Bros. Ent. v. Glob. Asylum, Inc.*, 107 U.S.P.Q.2d 1910, 1918 (C.D. Cal. 2012) (issuing temporary restraining order against movie title), *aff'd*, 544 F. App'x 683 (9th Cir. 2013); *Toho Co. v. William Morrow & Co.*, 33 F. Supp. 2d 1206 (C.D. Cal. 1998) (issuing preliminary injunction against book title); *Am. Dairy Queen Corp. v. New Line Prods., Inc.*, 35 F. Supp. 2d 727 (D. Minn. 1998) (issuing preliminary injunction against movie title).

**B.      VIP Has Not Demonstrated its Entitlement to Judgment as a Matter of Law Under Either of the *Rogers* Prongs.**

**1.      VIP's Use of JDPI's Trade Dress Has Zero Artistic Relevance to Any "Expressive" Content of Its Dog Toy Because that Use Is Unrelated to the Meaning Associated with JDPI's Marks.**

*Rogers*'s first prong inquires whether the defendant's use has any "artistic relevance to the underlying work," *Rogers*, 875 F.2d at 999, or is merely arbitrary and "attention-getting" like the use in *Dr. Seuss Enters. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997). In that case, the Ninth Circuit found that "the book *The Cat NOT in the Hat!* borrowed Dr. Seuss's trademarks and lyrics to get attention rather than to mock *The Cat in the Hat!* . . . and therefore could not claim First Amendment protection." *Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894, 901 (9th Cir. 2002) (citing *Dr. Seuss v. Penguin*, 109 F.3d at 1401).

Here, as shown below, the record contains ample evidence that VIP's use of the iconic Jack Daniel's trade dress is nothing more than a marketing ploy for a competing product and was "absolutely not" intended to comment on Jack Daniel's, its business, or its Tennessee Whiskey. *See* ER 2380. At a minimum, this evidence creates genuine issues of fact as to the first *Rogers* prong, making summary judgment inappropriate.

### a.     To Be Artistically Relevant Under the First *Rogers* Prong, a Defendant's Use Must Relate to the Meaning of the Plaintiff's Mark.

VIP borrows its parody rationale from *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26 (1st Cir. 1987), *see* Doc. 300 at 7, claiming its use of the Jack Daniel's trade dress is parody because it "juxtapose[s] the irreverent representation of the trademark with the idealized image created by [JDPI]."[2] *L.L. Bean*, 811 F.2d at 34; *see also* Doc. 287-1 at 5 (noting VIP's stated purpose of commenting on "corporations [that] take themselves very seriously"). VIP omits to mention that *L.L. Bean* is not a *Rogers* case, or that Drake's parody magazine article in *L.L. Bean* was completely unlike VIP's use here. In contrast to VIP, for example, Drake did "not use[] Bean's mark to identify or market goods or services; it . . . used the mark solely to identify Bean as the object of its parody." *See L.L. Bean*, 811 F.2d at 33. Indeed, the First Circuit took pains to "note that a parody which engenders consumer confusion"—as VIP's use does here[3]—"would be entitled to less protection than is granted by our decision today." *Id.* at 32 n.3.

In addition, Drake's magazine article took direct aim at L.L. Bean and the

---

[2] VIP also claims the Ninth Circuit held VIP's use to be a parody. *See* Doc. 300 at 15 ("VIP artistically transformed every element of the marks and trade dress it used to create *what the Ninth Circuit found to be a 'successful parody.'*" (emphasis added)). This is false. The only two mentions of "parody" in the opinion appear in references to *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 258, 260, 263 (4th Cir. 2007), which held the defendant's use a "*successful parod*[y]." Doc. 287-1 at 11 n.1, 12 n.2 (emphasis added). As the Ninth Circuit acknowledged, *Louis Vuitton* was not a *Rogers* case, but "was based on likelihood

wholesome image its "Back to School" catalog sought to project. Here, by contrast, VIP concedes that the "message" its Bad Spaniels toy conveys is identical to the messages conveyed by the other beverage knockoffs in VIP's Silly Squeaker line, *see* Doc. 300 at 4, making it perfectly clear that the Jack Daniel's trade dress has no meaning in the context of VIP's dog toy except as a convenient (and interchangeable) vehicle for a marketing gimmick.

This lack of meaning distinguishes VIP's use from the usual *Rogers* case, in which the artistic relevance of the defendant's use is obvious. In *Rogers* itself, for example, "[t]he central characters in the film are nicknamed 'Ginger' and 'Fred,'" and thus the names in the title were not "arbitrarily chosen just to exploit the publicity value of their real life counterparts but instead have genuine relevance to the film's story." *Rogers*, 875 F.2d at 1001. The leading *Rogers* cases in this Circuit feature similarly obvious artistic choices:

- The song title in *Mattel* was "clearly . . . relevant to the underlying . . .

---

of confusion, not the First Amendment"—thus explaining the Fourth Circuit's focus on whether the defendant's parody claim was "successful" in terms of its likely impact on consumers. *See* Doc. 287-1 at 11.

[3] JDPI's survey expert concluded that over 29% of qualified consumers believed VIP's Bad Spaniels toy to be "made or put out by Jack Daniel's, or made or put out with the authorization or approval of Jack Daniel's, or that whoever makes or puts out ['Bad Spaniels'] has a business affiliation or business connection with Jack Daniel's," and further concluded that "such confusion is due in particular to [VIP's] use of Jack Daniel's indicia or trade dress on the Bad Spaniels dog toy." ER 25; *see also* SER 21-47 (expert report of Dr. Ford).

6

song" because "the song is about Barbie" and her "[l]ife in plastic." 296 F.3d at 901, 902.

- In *E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095 (9th Cir. 2008), the defendant's depiction of the plaintiff's Play Pen strip club in its video game was "relevant to Rockstar's artistic goal, which is to develop a cartoon-style parody of East Los Angeles" by "recreat[ing] a critical mass of the businesses and buildings that constitute it." *Id.* at 1100.

- The title of the defendant's television series in *Empire Distribution* was used "for artistically relevant reasons" because "the show's setting is New York, the Empire State, and its subject matter is a music and entertainment conglomerate, 'Empire Enterprises,' which is itself a figurative empire." 875 F.3d at 1198.

- The defendant's use of the plaintiff's catch phrase in *Gordon* was "certainly relevant to defendants' greeting cards" because the phrase "sets up an expectation that an event will be treated as important," only to "dispel[] that expectation" to humorous effect. 909 F.3d at 269.

- The defendant's book in *Dr. Seuss Enters. v. ComicMix LLC*, 983 F.3d 443 (9th Cir. 2020), *cert. denied*, No. 20-1616, 2021 WL 2519166 (U.S. June 21, 2021), "easily surpasses" the artistic relevance requirement "as a mash-up of ['Oh The Places You'll Go!'] and Star Trek." *Id.* at 462.

7

1    Against this backdrop of obvious artistic relevance, courts in this Circuit

2    have repeatedly observed that the first *Rogers* prong requires "any artistic rel-

3    evance 'above zero.'" *See, e.g.*, *id.* The expressive works in these cases easily sur-

4

5    passed this hurdle, either because they used trademarks as cultural references

6    to express their messages (*e.g.*, Barbie, the Play Pen strip club, *The Crazy Nas-*

7    *tyass Honey Badger*, and *Oh The Places You'll Go!*), or used trademarks that

8

9    happen to be ordinary English words (*e.g.*, *Empire*).[4] In each case, however, the

10   defendant was able to show that the plaintiff's mark had a particular meaning

11   in the context of the defendant's message—*e.g.*, Barbie was a vapid party girl

12

13   and hence no role model, *Mattel*, 296 F.3d at 901, the Play Pen strip club was

14   characteristic of seedy East Los Angeles. *E.S.S. Ent. 2000*, 547 F.3d at 1097, etc.

15   The same is true of *Rogers* itself, in which legendary filmmaker Federico Fellini

16

17   juxtaposed Fred Astaire and Ginger Rogers—"glamorous" symbols of carefree

18   American cinema—with "the gaudiness and banality of contemporary televi-

19   sion." *Rogers*, 875 F.2d at 1001.

20

21   This connection between mark, meaning, and message is the *sine qua non*

22   of the first *Rogers* prong, "distinguish[ing] cases in which the use of the mark

23

24

_____

25   [4] *See also IOW, LLC v. Breus*, 425 F. Supp. 3d 1175, 1192, 1193 (D. Ariz. 2019)
     (holding the POWER OF WHEN mark is "certainly relevant" to the defendant's
26   book about "when during the day it would be best to tackle specific tasks," and
27   "Plaintiffs do not argue otherwise.").

28                                              8

has some artistic relation to the work from cases in which the use of the mark is arbitrary." *Twentieth Century Fox*, 875 F.3d at 1198. Arbitrary uses are those in which the defendant uses the plaintiff's mark merely to get attention, or for no reason at all, in which case "the First Amendment interest is diminished." *Id.* As the Second Circuit explained in *Harley Davidson, Inc. v. Grottanelli*, 164 F.3d 806 (2d Cir. 1999),

> whatever protection is to be afforded a trademark parody must be informed by the Supreme Court's recent elucidation in the copyright context of parodies allegedly protected by the defense of fair use. . . . The comment must have some "critical bearing on the substance or style of the original composition."

*Id.* at 813 (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580 (1994)).

Several district courts in this Circuit have observed that successful *Rogers* defenses involve uses "relat[ing] to the meaning associated with plaintiff's mark." *Rebelution*, 732 F. Supp. 2d at 888-89 (citing cases); *see also Warner Bros.*, 107 U.S.P.Q.2d at 1923 ("[C]ourts within the Ninth Circuit [applying this *Rogers* defense] have also required that the 'artistic work targets the original . . . .'" (citing cases)). Uses that "merely borrow another's property to get attention" lack artistic relevance. *Warner Bros.*, 107 U.S.P.Q.2d at 1923 (quoting *Mattel*, 296 F.2d at 901) VIP's use falls squarely in this category.

### b. VIP's *Post Hoc* Attempt to Assign Meaning to Its Arbitrary Use Does Not Withstand Scrutiny on this Factual Record.

Attempting to rationalize its parody claim, VIP essentially argues its dog

9

toy has artistic relevance because VIP uses JDPI's marks to brand and market an incongruous commercial product. *See* Doc. 300 at 7. Even if this incongruity sufficiently constituted "artistic relevance" under *Rogers* and its progeny (it does not), the record does not support VIP's *post hoc* parody rationalization.

First, VIP's "irreverent juxtaposition" argument is a relatively recent contrivance, apparently adopted to convince this Court and the Ninth Circuit that VIP's use is parodic, and therefore (the argument goes) that VIP's use is insulated from the *Sleekcraft* test by the *Rogers* line of cases. The record reveals the extent to which VIP's story has changed on this point. The deposition of VIP's President, Stephen Sacra, featured the following exchange:

> Q: In the Bad Spaniels toy, are you commenting in any way on Jack Daniel's business practices?
> A: No, absolutely not.
> Q: Or the quality of their whiskey?
> A: Absolutely not.
> Q: Or the way they market the product?
> A: Absolutely not.
> Q: Or anything else that has to do with their actual business?
> A: Absolutely not.

ER 2380. Only later did VIP decide that its dog toy was commentary after all, intended to "send[] the message to consumers that it is okay to make fun of well-known brands." OB 9; *cf. Warner Bros.*, 107 U.S.P.Q.2d at 1923, 1924 (holding use of "hobbit" in film title *Age of Hobbits* was "merely . . . to get attention" and

10

was not intended to target the original in light of the defendant's vehement attestations "that the film [was] . . . in no way [intended to refer to] Tolkien's . . . fantasy characters" only to argue, later, "that *Rogers* is applicable because the characters . . . were nicknamed 'hobbits' . . . in direct comparison to Tolkien's hobbits").

VIP cannot reasonably dispute that Mr. Sacra's earlier statement creates, at a minimum, a genuine issue of material fact as to whether VIP's use of JDPI's trade dress has artistic relevance. In fact, a reasonable factfinder could refuse to credit VIP's *post hoc* rationalization and instead choose to credit Mr. Sacra's earlier insistence that VIP's dog toy was "absolutely not" commenting on Jack Daniel's or its Tennessee Whiskey—thus establishing that VIP's use of Jack Daniel's trade dress has zero artistic relevance to any "expressive" content its dog toy may possess. *Cf. Parks*, 329 F.3d at 452-53 (finding in light of defendant's admission that OutKast "never intended for the song [*Rosa Parks*] to be about Rosa Parks or the civil rights movement," denying summary judgment because "reasonable persons could conclude that there is no relationship of any kind between Rosa Parks' name and the content of the song"). On this basis alone, VIP is not entitled to summary judgment on the first *Rogers* prong.

In addition, this Court properly found after trial that JDPI licenses its marks for use on dog products, Doc. 245 at 21 (¶ 112), making VIP's dog toy a

11

competing product, not a parody. In *Harley Davidson*, the Second Circuit observed that courts have "accorded considerable leeway to parodists whose expressive works aim their parodic commentary at a trademark or a trademarked product, but have not hesitated to prevent a manufacturer from using an *alleged parody of a competitor's mark to sell a competing product*." *Harley Davidson*, 164 F.3d at 812 (emphasis added) (citations omitted).

In that case, the defendant used the alleged parody logo "on the signage of his business, in his newsletter, and on T-shirts . . . [to] promote[] his repair and parts business." *Id.* at 812-13. Here, VIP uses JDPI's trade dress in the design of its dog toy *and* on the accompanying hang tag, *see* OB11, where branding typically appears—making its use, "in effect, [a] trademark use for a competing [product]." *See Harley Davidson*, 164 F.3d at 812-13. Like the defendant in *Harley Davidson*, VIP "makes no comment on [Jack Daniel's or its Tennessee Whiskey]; it simply uses [JDPI's trade dress] somewhat humorously to promote [its] own products and services, which is not a permitted trademark parody use." *See id.* at 813.

Ultimately, there is no record evidence of any *relevant* connection between the "irreverence" of VIP's dog toy and the meaning associated with *JDPI's trade dress* (as opposed to other brands potentially used as vehicles for VIP's scatolog-

12

ical humor). Indeed, VIP's President has expressly disclaimed any such connection, ER 2380, suggesting that VIP selected JDPI's trade dress simply "to capitalize on [its] publicity value" and encourage fans of Jack Daniel's to buy the Bad Spaniels toy. *See Hush Hush Sound, Inc. v. H & M Hennes & Mauritz LP*, No. 2:17-cv-07668-RGK-SS, 2018 WL 4962086, at *3 (C.D. Cal. Jan. 26, 2018) ("H&M makes no showing that the musical group 'Classixx' had genuine relevance to the message expressed by the sweater. It is more likely that 'classixx' was chosen to capitalize on the publicity value of Plaintiffs' mark, so that fans of the musical group would buy H&M's sweater and other 'classixx' apparel.").

VIP therefore is not entitled to summary judgment on the first *Rogers* prong. It is for the factfinder to decide whether VIP's dog toy has any "artistic relevance to the underlying work," *Rogers*, 875 F.2d at 999, or is simply a humorous—but confusing—"trademark use for a competing [product]." *See Harley Davidson*, 164 F.3d at 813.

### 2. A Developed Trial Record Will Demonstrate that VIP's Use Is Explicitly Misleading in Light of Intervening Ninth Circuit Authority.

In October 2017, when the Court held the first bench trial in this case, the district court in *Gordon* had granted the defendant's motion for summary judgment, relying on much the same authority as VIP does here. On appeal, however, the Ninth Circuit "reject[ed] the district court's rigid requirement" on the

second *Rogers* prong "that, to be explicitly misleading, the defendant must make an 'affirmative statement of the plaintiff's sponsorship or endorsement.'" *Gordon*, 909 F.3d at 269. The Ninth Circuit then issued an opinion containing its most expansive discussion of the second *Rogers* prong to date, which—despite VIP's persistent suggestions to the contrary—is not inconsistent with the Ninth Circuit's previous authority on the issue.

The *Gordon* court recognized several circumstances that can create a factual issue as to whether a defendant's appropriation of a plaintiff's mark is explicitly misleading. For one thing, it held that "the use of a mark alone may explicitly mislead consumers about a product's source if consumers would ordinarily identify the source by the mark itself." *Id.* at 270. In doing so, it distinguished past Ninth Circuit opinions by noting they had not involved uses of the plaintiffs' marks as trademarks for the defendants' own goods. *Id.* ("[W]e have repeatedly observed that the mere use of a trademark alone cannot suffice to make such use explicitly misleading. But each time we have made this observation, it was clear that consumers would not view the mark alone as identifying the source of the artistic work." (citation omitted)).

Thus, a defendant's use of the plaintiff's mark *as a brand for its own product* is relevant not only to the issue of artistic relevance under the first *Rogers* prong, as discussed above, but also to whether a use is explicitly misleading

14

under the second *Rogers* prong. As the Ninth Circuit put it, *Rogers* "does not extend to instances in which consumers *would* expect the use of a mark alone to identify the source," as occurs when the defendant makes a trademark use. *See id.* Here, of course, this Court previously found as a matter of law that VIP's imitations of JDPI's marks and trade dress are trademark uses, and neither VIP nor the Ninth Circuit has questioned that finding.

Beyond that, as *Gordon* properly recognized,

> A more relevant consideration is the degree to which the junior user uses the mark in the same way as the senior user. In the cases in which we have applied the *Rogers* test, the junior user has employed the mark in a different context—often in an entirely different market—than the senior user.
>
> . . . This disparate use of the mark [by the junior user] was at most "only suggestive" of the product's source and therefore did not outweigh the junior user's First Amendment interests.

*Id.* at 270. Here, JDPI licenses its marks for use on dog products, Doc. 245 at 21 (¶ 112), and VIP is using JDPI's marks in *exactly the same way*. Predictably as a result, consumers can encounter both parties' products in the same commercial context; for example, WearYourBeer.com has featured both JDPI's licensed products and VIP's Bad Spaniels dog toy on a webpage containing a banner reading, "Jack Daniel's Official Gear"—complete with JDPI's signature typeface. Tr. Ex. 171. On this evidence, a reasonable factfinder might well find VIP's use to be explicitly misleading, just as a similar overlap raised the same possibility in *Gordon*.

15

*Gordon* is relevant for another reason that also precludes summary judgment on JDPI's infringement claims—namely, *Gordon*'s confirmation that "in the cases extending *Rogers* to instances in which a mark was incorporated into the body of an expressive work, [the Ninth Circuit] made clear that the mark served as only one component of the larger expressive work." *Gordon*, 909 F.3d at 271.

> As *Rogers* explains, the concern that consumers will not be "misled as to the source of [a] product" is generally allayed when the mark is used as only one component of a junior user's larger expressive creation, such that the use of the mark at most "implicitly suggest[s]" that the product is associated with the mark's owner.

*Id.* at 270-71 (quoting *Rogers*, 875 F.2d at 998-99).

Here, VIP's infringing uses of JDPI's verbal marks and its nonverbal trade dress comprise more than an incidental component of the appearance of its chew toys. For example, JDPI's marks are not among "thousands" of misappropriated marks incorporated into a single product, as in *Brown v. Electronic Arts, Inc.*, 724 F.3d 1235, 1241 (9th Cir. 2013). They likewise are not, as in *E.S.S. Entertainment 2000*, "quite incidental to the overall" accused product such that they are not its "main selling point." 547 F.3d at 1100, 1101. Instead, just the opposite is true: VIP's imitations are the "centerpiece" of its putative expressive work, *Gordon*, 909 F.3d at 271, and therefore evidence that those imitations are explicitly misleading.

VIP's efforts to marginalize *Gordon* in favor of the Ninth Circuit's opinion

16

in *Dr. Seuss v. ComicMix* must be rejected on this record. *See* Doc. 300 at 15-17. Leaving aside the fact that the mashup in *Dr. Seuss v. ComicMix* was a true expressive product, and not a pedestrian household good masquerading as one, the outcome in that case turned in significant part on the "conspicuous[]" depiction of the authors' names on the defendant's book cover. *See Dr. Seuss v. ComicMix*, 983 F.3d at 463. Here, in contrast, VIP's packaging obscures its own SILLY SQUEAKERS mark, bringing to front and center its imitations of JDPI's marks and trade dress:



The outcome in *Dr. Seuss v. ComicMix* also turned in part on the defendants' use of a disclaimer, *see id.*, but as this Court properly found after trial, VIP's disclaimer appears "in tiny font on the reverse of its product packaging." Doc. 245 at 20 (¶ 105).

In light of these facts, VIP is not entitled to summary judgment on the second *Rogers* prong. It is for the factfinder to determine on a fully-developed

17

1
2
3

trial record whether VIP's use of JDPI's "mark[s] alone may explicitly mislead consumers about a product's source." *See Gordon*, 909 F.3d at 270.

### C. VIP Cannot Challenge This Court's Prior Finding of Likely Confusion Under the *Sleekcraft* Factors.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

After the first bench trial, this Court properly found confusion likely under *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), *see* Doc. 245 at 23 (¶ 124), and the Ninth Circuit's opinion does not disturb that finding. This is not surprising, as VIP neither appealed that finding nor otherwise challenged it before the Ninth Circuit. VIP therefore has waived its ability to challenge it now: "[A] party cannot raise anew on remand an issue that it failed to pursue in the appeal." *Wash. Post Co. v. U.S. Dep't of Health & Hum. Servs.*, 865 F.2d 320, 327 (D.C. Cir. 1989); *see also United States v. Sanchez*, 569 F.3d 995, 1000 (9th Cir. 2009) ("A district court is without authority to consider new challenges raised for the first time by a defendant on a limited . . . remand."). Thus, JDPI already has satisfied the second prerequisite for liability under the *Rogers* analysis. *See Gordon*, 909 F.3d at 264 (where the "allegedly infringing use is part of an expressive work protected by the First Amendment[.] . . . the plaintiff must satisfy not only the likelihood-of-confusion test but also at least one of *Rogers*'s two prongs").

25
26
27

Failing to address the consequences of its waiver, VIP argues that the Court's finding of likely confusion under *Sleekcraft* is not law of the case because

28

18

the Ninth Circuit found its product a parody. To reiterate, however, the Ninth Circuit's actual holding was that VIP's product is an expressive work under *Rogers*, not a parody; and nothing in the Ninth Circuit's opinion had any impact on the *Sleekcraft* test or its application here. VIP has not offered any new evidence that the Court's finding of likely confusion was clearly erroneous, nor has it made any new arguments that the Court's finding worked a manifest injustice. Under these circumstances, the Court's finding of liability under *Sleekcraft* constitutes law of the case, and the Court should not reconsider that prior decision. *See generally United States ex rel. Eitel v. Reagan*, 35 F. Supp. 2d 1151, 1154 (D. Ariz. 1998), *aff'd*, 242 F.3d 381 (9th Cir. 2000).

### D.    VIP's Claim of Judicial Estoppel Is Meritless.

Page 9 of VIP's brief correctly states the test for judicial estoppel, which "'generally prevents a party *from prevailing in one phase of a case* on an argument and then relying on a contradictory argument to prevail in another phase." Doc. 300 at 9 (emphasis added) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). As the italicized language indicates, "[m]ost circuits have refused to apply the doctrine . . . unless the inconsistent assertion in the subsequent litigation was adopted in some manner by the court in the prior litigation." *Stevens Tech. Servs., Inc. v. S.S. Brooklyn*, 885 F.2d 584, 588 (9th Cir. 1989). VIP

cannot reasonably dispute that neither this Court nor the Ninth Circuit has accepted its argument that VIP is "immune [from] infringement under *Rogers*." *See* Doc. 300 at 9. Judicial estoppel therefore cannot apply.

## III.   Conclusion

For the reasons set forth above, the Court should deny VIP's request for summary judgment and set this case for trial on JDPI's ability to satisfy a prong of the *Rogers* test.

Dated:   July 16, 2021

Respectfully submitted,

*/s/*

Isaac S. Crum (AZ Bar #028756)
MESSNER REEVES LLC
1440 E. Missouri Avenue, Suite
   C100
Phoenix, Arizona  85014
(602) 641-6705
icrum@messner.com

Dennis Wilson (admitted *pro hac vice*)
KILPATRICK TOWNSEND &
   STOCKTON LLP
9720 Wilshire Boulevard
Beverly Hills, California  90212-2018
(310) 777-3740
dwilson@kilpatricktownsend.com

Theodore H. Davis Jr. (admitted *pro
   hac vice*)
Sara K. Stadler (admitted *pro hac vice*)
KILPATRICK TOWNSEND &
   STOCKTON LLP
1114 Avenue of the Americas
New York, New York  10036-7703
(212) 775-8700
tdavis@kilpatricktownsend.com
sstadler@kilpatricktownsend.com

Attorneys for Defendant-
Counter-Plaintiff
Jack Daniel's Properties, Inc.

20

1

## <u>CERTIFICATE OF SERVICE</u>

2

3

4

5

I hereby certify that on July 16, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

6

7                                                           <u>/s/Kris Teilhaber</u>

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28