Firm E-Mail: courtdocs@dickinsonwright.com
David G. Bray (#014346)
dbray@dickinsonwright.com
David N. Ferrucci (#027423)
dferrucci@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
Phone: (602) 285-5000
Fax: (844) 670-6009
*Attorneys for Plaintiff/Counterdefendant VIP Products, L.L.C*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| VIP Products L.L.C., an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Jack Daniel's Properties, Inc., a Delaware corporation,<br><br>Defendant. | Case No. 2:14-cv-02057-SMM<br><br>**VIP PRODUCTS LLC'S REPLY IN SUPPORT OF BRIEF ON REMAND FROM THE NINTH CIRCUIT COURT OF APPEALS**<br><br>**(oral argument requested)** |

Jack Daniel's Properties, Inc.'s ("JPDI") response brief (Doc. 302) demonstrates what JPDI has long since conceded, that it has no evidence to satisfy either prong of the Ninth Circuit's *Rogers* analysis. *See e.g.*, Doc. 142 at 10 (conceding that a "'parody' ... dog toy[,] whether confusing or non-confusing[,] would effectively receive immunity from infringement claims under the very strict *Rogers* standard for liability"). Undeterred by its previous concessions in both this Court, *id.*, and the Courts of Appeal, Doc. 300 at 2-3, JDPI suggests that it is automatically entitled to a new trial under *Rogers* based on the Ninth Circuit's remand decision.[1] But another costly trial is only

---

[1] To be clear, the Ninth Circuit remanded for application of the *Rogers* test in the first instance because this Court had previously rejected its threshold application. VIP never represented that the Ninth Circuit intended to decide *Rogers*, as JDPI suggests. VIP's argument is that applying the Ninth Circuit's findings and holdings that are the law of this case means JDPI cannot satisfy the *Rogers* analysis as a matter of law.

appropriate if JDPI can demonstrate there are material issues of fact for the trier of fact to resolve. *See Gov't Emps. Ins. Co. v. Nadkarni*, 477 F. Supp. 3d 1091, 1096 (N.D. Cal. 2020), *aff'd*, 842 F. App'x 172 (9th Cir. 2021) ("If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment.") (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). For a third time now,[2] JDPI has failed to do so. As demonstrated below, the facts the JDPI contends are in dispute are either immaterial, undisputed, and/or have already been resolved by either this Court's undisturbed conclusions and findings, or by the Ninth Circuit's holdings and findings, which are the law of this case. *See* Doc. 300 at 6-8.

In all reality, JDPI knows it has no evidence to pass either prong of *Rogers*; it knows, as it represented to the United States Supreme Court, that application of *Rogers* is "outcome determinative[,]" "disposes of the case[,]" *see* JDPI's Petition For A Writ Of Certiorari at 30, and is "case-dispositive." JDPI's Reply Brief For Petitioner at 8.[3] JDPI's representations to the United States Supreme Court were correct; as demonstrated in VIP's Remand Brief (Doc. 300) and below, application of the Ninth Circuit's *Rogers* analysis to the undisputed material facts of this case compels a finding of non-infringement as a matter of law. Therefore, VIP respectfully requests this Court to enter judgment in favor of VIP on JDPI's remaining infringement claim.

---

[2] In its response to VIP's summary judgment motion (Doc. 110), JDPI did not address or respond to VIP's argument that it could not satisfy either prong of *Rogers* and pointed to no material fact issues that would preclude summary judgment in favor of VIP under *Rogers*. *See* Doc. 142. Instead, JDPI urged the Court not to apply *Rogers* because doing so would immunize VIP from liability for infringement. *Id*. at 10. JDPI took the same approach on appeal. *See* Doc. 25 at 50 at the Ninth Circuit's docket at No. 18-16012.

[3] This Court should end JDPI's charade and hold that JDPI's admissions to the United States Supreme Court are binding. *See Gospel Missions of Am. v. City of L.A.*, 328 F.3d 548, 557 (9th Cir. 2003). Alternatively, the Court should judicially estop JDPI from contending that *Rogers* does not immunize VIP from liability because it's hard to imagine a clearer instance success in making that statement than defeating VIP's motion and causing VIP to incur six years of unnecessary litigation costs. *See* Doc. 300 at 8-9.

## I. JDPI's Motion to Reopen Expert Discovery Should Be Denied.

At the telephonic status conference held on March 17, 2021 (Doc. 296) JDPI moved the Court to re-open expert discovery.[4] Then, after this Court ordered the parties to brief the issue of additional expert discovery, and after VIP researched and devoted five pages of its remand brief to the issue, JDPI offers no response, thereby abandoning its motion for more expert discovery. JDPI's motion should therefore be denied.

## II. The Use of the Jack Daniel's Marks to Create the Bad Spaniels Parody is Artistically Relevant to VIP's Goal of Parodying Jack Daniel's.

Ignoring the Ninth Circuit's binding law of the case finding that VIP's use was an artistically transformative use that effectuated parody, Doc. 300 6-7, JDPI argues that VIP's use of JDPI's marks "has zero artistic relevance" to that parody. Doc. 302 at 4. JDPI is incorrect. Because VIP's undisputed purpose was to create an artistic dog toy parody of a Jack Daniel's whiskey bottle, and used the marks for that "artistically relevant reason[,]" *Twentieth Century Fox Television a division of Twentieth Century Fox Film Corp. v. Empire Distribution, Inc.*, 875 F.3d 1192, 1198 (9th Cir. 2017), it cannot be said that VIP's parodic use "has no artistic relevance to the underlying work whatsoever[.]" *Id.* (quotation omitted).

JDPI's contention that there is a fact issue on whether VIP's goal was to create an artistic parody, or instead merely to get attention, Doc. 302 at 8, is wrong. VIP's parodic intent is undisputed. This Court found: "It is undisputed that in designing and marketing 'Bad Spaniels,' VIP's intent was to copy the Jack Daniel's trademarks and trade dress for the purpose of parody." Doc. 245 at 19; *see also id.* at 3 (Finding VIP's "intent behind producing the Silly Squeakers line of toys was to develop a creative parody on existing products."). As the Ninth Circuit put it: "VIP's purported goal in creating Silly Squeakers was to 'reflect' on the humanization of the dog in our lives,' and to comment on 'corporations [that] take themselves very seriously.'" Doc. 287-1 at 5.[5]

---

[4] JDPI did so without conferring with VIP as required. *See* L.R.Civ. 7.2(j).

[5] JDPI once again contends that VIP's claim of parody is a *post-hoc* justification and therefore cannot be used to support its contention of artistic relevance. As demonstrated

3

It is also undisputed that VIP achieved that artistic goal; as the Ninth Circuit found, VIP artistically transformed JDPI's marks to effectuate a trademark parody:

> The toy communicates a "humorous message," *see Gordon*, 909 at 268-69, using word play to alter the serious phrase that appears on a Jack Daniel's bottle—"Old No. 7 Brand"—with a silly message—"The Old No. 2." ***The effect*** is "a simple" message conveyed by "juxtaposing the irreverent representation of the trademark with the idealized image created by the mark's owner."

*VIP Prod. LLC v. Jack Daniel's Properties, Inc.*, 953 F.3d 1170, 1175 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1054 (2021) (*quoting L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 34 (1st Cir. 1987) (emphasis added).[6] Because VIP's goal was to create a parody then the marks being parodied are artistically relevant to the parody.

To dispute this obvious conclusion, JDPI once again relies on the Ninth Circuit's pre-*Rogers* decision in *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997) ("1997 *Dr. Seuss* case") to argue that the marks are not being used in an artistically transformative way, but ***merely*** to get attention. Doc. 302 at 8. But again, the undisputed facts are otherwise and the Ninth Circuit's holding distinguishing the 1997 *Dr. Seuss* case from the facts of this case is dispositive on this point also:

> Unlike the book in *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997), which made "no effort to create a transformative work with 'new expression, meaning, or message,'" Bad Spaniels comments humorously on precisely those elements that Jack Daniels seeks to enforce here.

*VIP Prod.*, 953 F.3d at 1175. In other words, the Ninth Circuit has already held that the purpose of the Bad Spaniels parody was not merely to get attention, but to "to create a

---

above, this fact issue has already been resolved. As both this Court and the Ninth Circuit has found, creating parody is not VIP's *post-hoc* rationalization; it's the artistic goal behind all of VIP's Silly Squeakers®, including Bad Spaniels.

[6] JDPI devotes a good portion of its brief attempting to distinguish *L.L. Bean*. But that case simply supplies the established definition for "trademark parodies" the Ninth Circuit followed to find that VIP's artistic use effectuated a trademark parody. Doc. 300 at 6-7.

4

transformative work with new expression, [new] meaning, [and a new] message." *Id.* (quotation marks omitted).

In *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 269 (9th Cir. 2018), the Ninth Circuit held that even Drape's non-transformative use of the Honey Badger marks was artistically relevant to the defendant's greeting cards: "Gordon's mark is certainly relevant to defendants' greeting cards; the phrase is the punchline on which the cards' humor turns." 909 F.3d 257, 269 (9th Cir. 2018). Similarly here, and as the Ninth Circuit's holding demonstrates, the alteration of Jack Daniel's into Bad Spaniels "is the punchline on which the [toys'] humor turns." *Id.*

It takes no extension analysis (and the artistic relevance prong requires no extensive analysis) to reach the conclusion that the Jack Daniel's marks are artistically relevant to VIP's purpose of parodying Jack Daniel's. The Ninth Circuit has explained:

> We have said that "the level of artistic relevance of the trademark or other identifying material to the work merely must be above zero." *Id.* at 1243 (internal alterations omitted) (*quoting E.S.S.*, 547 F.3d at 1100). Indeed, "even the slightest artistic relevance" will suffice; courts and juries should not have to engage in extensive "artistic analysis." *Id.* at 1243, 1245; *see Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 251, 23 S.Ct. 298, 47 L.Ed. 460 (1903) ("It would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of pictorial illustrations, outside of the narrowest and most obvious limits.").

*Gordon*, 909 F.3d at 269. As the Ninth Circuit stated in its most recent *Rogers* decision:

> "even the slightest artistic relevance" is enough... *Boldly* easily surpasses this low bar: as a mash-up of *Go!* and *Star Trek*, the allegedly valid trademarks in the title, the typeface, and the style of *Go!* are relevant to achieving *Boldly's* artistic purpose.

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020).[7]

---

[7] The facts of the 2020 *Dr. Seuss* case are virtually indistinguishable from the 1997 *Dr. Seuss* case (which predates the Ninth Circuit's adoption of *Rogers*); both involved minimally transformative "mash-ups." But whereas the use in the 1997 case was found

5

JDPI also contends that because Bad Spaniels contains no specific message about Jack Daniel's, but instead comments on companies, like Jack Daniel's, that take themselves too seriously, the use of the mark is not artistically relevant. JDPI is wrong.

First, JDPI is factually wrong; the message is particular; as the Ninth Circuit found, it's a particular "comment on 'corporations [that] take themselves very seriously.'" Doc. 287-1 at 5. JDPI is one of those corporations and this specific Silly Squeaker is about it.[8] Second, it is not the law, and JDPI cites none, that to be artistically relevant the message must be a particular comment on a specific brand, and can contain no comments on any other brands, or brand culture generally. Ninth Circuit law is to the contrary. For example, there was no specific or particularized message about the Play Pen strip club in *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095 (9th Cir. 2008). In fact, "Rockstar's Lead Map Artist 'testified the goal in designing the Pig Pen was ... not to comment on Play Pen *per se*.'" *Id*. at 1099. Instead, "Rockstar's artistic goal [was] to develop a cartoon-style parody of East Los Angeles." *Id*. at 1100. Even without a particularized message about the Play Pen, the Ninth Circuit easily concluded that the use of the Play Pen marks was "relevant to Rockstar's artistic goal[.]" *Id*. at 1100. Even JDPI concedes that, at best, "the Play Pen strip club was characteristic of seedy East Los Angeles." Doc. 302 at 8. The same can be said of Jack Daniel's; that Jack Daniel's is characteristic of companies that take their brands too seriously.

Similarly, in *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235 (9th Cir. 2013), the *Madden NFL* video game does not contain any commentary or message about NFL football player Jim Brown; Brown was just one of the many NFL player likenesses used in the

---

to be infringing under the pre-*Rogers* caselaw, in the 2020 case, the Ninth Circuit held that under *Rogers* the use was not infringing as a matter of law. *See* Doc. 300 at 15-16.

[8] JDPI's contention that VIP was not commenting specifically on JDPI is not supported by the record. Contrary to JDPI's contention, Mr. Sacra testified that the parodic message was indeed aimed at JDPI's business practices. [*See* ER 283-84] The portions of Mr. Sacra's deposition testimony that JDPI cherry-picks to contend otherwise simply demonstrates that Mr. Sacra's intent was to parody, not to harm or disparage Jack Daniel's. [*See* ER 282-84; ER 314-15].

game. *Madden NFL* was not commenting at all, let alone particularly, on the players whose likenesses they used. The artistic goal there was simply to create a realistic game. The Ninth Circuit held that using Brown's likeness was relevant to that artistic goal:

> Given the acknowledged centrality of realism to EA's expressive goal, and the importance of including Brown's likeness to realistically recreate one of the teams in the game, it is obvious that Brown's likeness has at least some artistic relevance to EA's work. The fact that any given version of Madden NFL includes likenesses of thousands of different current and former NFL players does not impact this analysis. In *E.S.S.*, the virtual strip club in question was just one of many virtual structures included by the designers of *Grand Theft Auto: San Andreas* in an attempt to simulate the feel of East Los Angeles, but we nonetheless concluded that the strip club was artistically relevant to the work. 547 F.3d at 1100. There is no significant distinction to be made here.

724 F.3d at 1243. The Jack Daniel's marks are artistically relevant to VIP's goal in creating the Bad Spaniels Silly Squeaker: "to develop a creative parody[,]" Doc. 245 at 19, in order to "comment on 'corporations [that] take themselves very seriously.'" Doc. 287-1 at 5. *E.S.S.* and *Brown* are directly on point and controlling; as in those cases, "it is obvious [that the Jack Daniel's marks] ha[ve] at least some artistic relevance to [VIP's] work." 724 F.3d at 1243.

**III.   Bad Spaniels is Not Explicitly Misleading As A Matter of Law.**

Although required by Ninth Circuit caselaw, JDPI points to no "overt claim," "explicit misstatement" or "any explicit indication on the face of the work" to satisfy the *Rogers* test's explicitly misleading requirement. *Brown*, 724 F.3d at 1246. Instead, JDPI relies on the *Gordon* "outer limits" exception, which is reserved for works that use the marks "unadorned with any artistic contribution by the junior user[,]" 909 F.3d at 271, to argue that fact issues preclude entering judgment in favor of VIP on *Rogers* second prong. Specifically, JDPI argues that the alleged use of Bad Spaniels as a source identifier creates an issue of fact under *Rogers* second prong. JDPI is incorrect.

7

In *Gordon*, the junior user simply copied the trademarked phrase "HONEY BADGER DON'T CARE" and pasted it, "unadorned with any artistic contribution by the junior user" onto its own directly competing product, 909 F.3d at 261, and did so after a licensing deal between the plaintiff and the defendants to use the Honey Badger marks on its greeting cards failed to materialize. *Id.* at 262. In that context, the Ninth Circuit opined that where the junior user simply copies the senior user's mark (without any artistic contribution of its own) and uses the unadorned mark to indicate the source of its own artwork, then the use may be explicitly misleading:

> If an artist pastes ***Disney's trademark*** at the bottom corner of a painting that depicts Mickey Mouse, ***the use of Disney's mark***, while arguably relevant to the subject of the painting, could explicitly mislead consumers that Disney created or authorized the painting, even if those words do not appear alongside the mark itself.

*Gordon*, 909 F.3d at 270.  Unlike in the example offered by the *Gordon* Court, where the unadorned and untransformed "Disney's trademark" is used as a source identifier for the artist's depiction of Mickey Mouse, the mark "Jack Daniel's" is not used as a source identifier for the Bad Spaniel's parody. The phrase "Jack Daniel" appears only on the disclaimer, which "states that the 'product is not affiliated with Jack Daniel Distillery.'" *VIP Prod.*, 953 F.3d at 1172.

Again, the unadorned "Jack Daniel's" mark is not used as a source identifier for Bad Spaniel's. To the extent "Bad Spaniels" is being used to identify a source, that is not what creates a fact-issue on *Rogers* second prong under *Gordon*. The quote from *Gordon* on p. 20 of JDPI's brief (Doc. 302) is incomplete.  The very next sentence explains what creates the fact issue on *Rogers* second prong under *Gordon*:

> But using a mark as the centerpiece of an expressive work itself, ***unadorned with any artistic contribution by the junior user***, may reflect ***nothing more*** than an effort to induce the sale of goods or services by confusion[.]

909 F.3d at 271 (quotation and citation omitted) (emphasis added).  What creates the fact issue under *Gordon* is the use of the mark "unadorned with any artistic contribution by

8

the junior user" and the fact issue it creates is that doing so "may reflect nothing more than an effort to induce the sale of goods or services by confusion[.]" *Id*. But neither of those facts are remotely present here. First, the marks do not appear "unadorned with any artistic contribution by the junior user[.]" *Id*. Second, it is undisputed that VIP's intent was to create a parody, *see* Section I, *supra*, not to induce the sale of Bad Spaniels by confusion. As a matter of law, "[a]n intent to parody is not an intent to confuse the public." *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 261 (4th Cir. 2007) (quotation omitted);[9] *Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1486 (10th Cir. 1987) ("[W]here a party chooses a mark as a parody of an existing mark, the intent is not necessarily to confuse the public but rather to amuse.").

The Ninth Circuit's law of the case finding that VIP artistically transformed the Jack Daniel's marks in order to effectuate a trademark parody of those marks means that Bad Spaniels nowhere approaches *Gordon's* outer-limits exception. Doc. 300 at 15-17. To create a fact issue on *Rogers'* second prong under *Gordon*, the junior user must do what the junior user did in *Gordon*, that is "simply use[] [the] mark with minimal artistic expression of their own[.]" 909 F.3d at 271. As the Ninth Circuit explained in *Gordon*:

> In this case, we cannot decide as a matter of law that defendants' use of Gordon's mark was not explicitly misleading. There is at least a triable issue of fact as to whether defendants simply used Gordon's mark with minimal artistic expression of their own, and used it in the same way that Gordon was using it—to identify the source of humorous greeting cards in which the bottom line is "Honey Badger don't care."

*Id*. The Ninth Circuit's law of the case finding that VIP artistically transformed JDPI's marks into the Bad Spaniels parody precludes a finding that VIP used the marks "unadorned" or with "minimal artistic expression"; to the contrary, the Ninth Circuit

---

[9] The Ninth Circuit held that when properly considered in the context of parody, as did the Fourth Circuit in considering the Chewy Vuitton parody dog toy in *Haute Diggity Dog*, 507 F.3d 252, "[n]o different conclusion" other than a finding of non-infringement "is possible here." Doc. 287-1 at 10.

9

found VIP artistically transformed the marks in order to communicate a very different message, for example, by "using word play to alter the serious phrase that appears on a Jack Daniel's bottle—'Old No. 7 Brand'—with a silly message—'The Old No. 2.'" Doc. 287-1 at 10. The Ninth Circuit's finding that JDPI's original, unadorned, and unaltered use is "serious" whereas VIP's transformative artistic use is "humorous" and "silly," and effectuates parody, Doc. 287-1 at 10, is dispositive; unlike the pirated greeting cards in *Gordon*, VIP has "added ... expressive content to the work beyond the mark itself" 983 F.3d at 462-63, and therefore does not fall within *Gordon*'s "outer limits" exception. *Id*.

Moreover, what JDPI fails to address (and therefore concedes) is that even if Bad Spaniels falls within *Gordon's* "outer limits" exception, all that means is that "two more relevant considerations weigh in evaluating whether the mark is explicitly misleading: (1) 'the degree to which the junior user uses the mark in the same way as the senior user' and (2) 'the extent to which the junior user has added his or her own expressive content to the work beyond the mark itself.'" *Dr. Seuss*, 983 F.3d at 462-63 (quoting *Gordon*, 909 F.3d at 270-71). Only if the junior user uses the mark in the same way **and** fails to add his or her own expressive content, then there is a triable issue of fact under the second *Rogers* prong. *Id*. Applying that standard to the *Boldly* mash-up in *Dr. Seuss*, the Ninth Circuit held that even though ComicMix used the mark in exactly the same way as Dr. Seuss, "*Boldly* does not test the 'outer limits' of *Rogers*":

> ComicMix has used the marks in an illustrated book just as Seuss did, but unlike with the greeting cards in *Gordon*, ComicMix has "added ... expressive content to the work beyond the mark itself." [909 F.3d] at 270.

*Id*. Although JDPI wants to pretend that all VIP did was paste the unadorned "Jack Daniel's" mark onto a competing product that is just not reality. VIP "added ... expressive content to the work beyond the mark itself[,]" *id*. and did so on "a non-competing product[.]" Doc. 171 at 10. Bad Spaniels "does not test the 'outer limits' of *Rogers*" as a matter of law. *Dr. Seuss*, 983 F.3d at 462-63.

There are no fact issues for trial (and JDPI identifies none). This Court can clearly see, simply by looking at the work, that Bad Spaniels contains no "overt claim," "explicit misstatement" or "any explicit indication on the face of the work" to satisfy the *Rogers* test's explicitly misleading requirement. *Brown*, 724 F.3d at 1246.

### IV. VIP Did Not Waive Its Challenge to This Court's Finding of A Likelihood-of-Confusion Under *Sleekcraft*.

JDPI represents that VIP did not appeal this Court's finding of likely confusion under *Sleekcraft*. Doc. 302 at 22. This representation is false. VIP challenged that finding. *See* VIP's Opening Brief, Ninth Circuit Docket No.16 at pp. 37-41 in Case No. 18-16012 ("The District Court Committed Legal Error By Failing to Properly Consider the *Sleekcraft* Factors in the Context of Parody."). The Ninth Circuit agreed with VIP. Doc. 287-1 at 12, n.2; *see also id*. at 10 (stating that when Bad Spaniels is properly considered in the context of parody, as did the Fourth Circuit in considering the Chewy Vuitton parody dog toy in *Haute Diggity Dog*, "[n]o different conclusion" other than a finding of non-infringement "is possible here."). As such, even if JDPI can pass the *Rogers* test (it decidedly cannot), once the parodic nature of the use is taken into consideration, which it must be, *id*., there can be no finding of infringement as a matter of law. Doc. 287-1 at 10.

### Conclusion

For the foregoing reasons, VIP respectfully requests judgment on JDPI's infringement claim be entered in favor of VIP.

**DATED** this 30th day of July, 2021.

**DICKINSON WRIGHT PLLC**

By: *s/ David G. Bray*
    David G. Bray
    David N. Ferrucci
    *Attorneys for VIP Products, L.L.C.*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

/s/Christine Klepacki

4840-3731-8132 v1 [53913-11]