1
2
3
4
5
6

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| VIP Products LLC, | No. CV-14-02057-PHX-SMM |
| Plaintiff/Counter-Defendant, | **MEMORANDUM OF DECISION AND ORDER** |
| v. | |
| Jack Daniel's Properties Incorporated, | |
| Defendant/Counter-Plaintiff. | |

This matter is before the Court on remand from the Ninth Circuit Court of Appeals. (See Doc. 287.) The Court held a status conference on March 17, 2021, and directed the parties to brief the issues remaining on remand. (Docs. 296-97.) In response, Plaintiff/Counter-Defendant VIP Products LLC ("VIP") filed a brief requesting that the Court enter summary judgment in its favor on Defendant/Counter-Plaintiff Jack Daniel's Properties Inc.'s ("JDPI") remaining claim for trademark infringement. (Doc. 300.) The motion has been fully briefed and is now before the Court. (Docs. 302-04.)

## I.   BACKGROUND

VIP designs, manufactures, markets, and sells chew toys for dogs. In approximately 2007, VIP launched its Silly Squeakers line of dog toys, which includes a variety of toys in the shapes of beer, wine, soda, and liquor bottles. (Doc. 236 at 31-38.) VIP's President, Steven Sacra, intended the Silly Squeakers line of toys to be a creative parody on existing products. (Id. at 45-47, 56.) In July of 2013, VIP introduced its latest novelty dog toy, the "Bad Spaniels" durable rubber squeaky novelty dog toy (the "Bad Spaniels Toy"). (Doc.

158.) The Bad Spaniels Toy is in the shape of a liquor bottle and features a wide-eyed spaniel over the words "Bad Spaniels, the Old No. 2, on your Tennessee Carpet." (Id.) At the bottom of the Bad Spaniels Toy, it reads: "43% POO BY VOL." and "100% SMELLY." (Id.) On the back of the Silly Squeakers label for the Bad Spaniels Toy, it states: "This product is not affiliated with Jack Daniel Distillery." (Id.)

VIP's intent behind designing the Bad Spaniels Toy was to match the bottle design for Jack Daniel's Tennessee Sour Mash Whiskey ("Old No. 7 Brand"). (Doc. 157.) These design elements include the size and shape of the product, the use of white lettering over a black background, and font styles. Mr. Sacra originally coined the name "Bad Spaniels," and then requested Designer Elle Phillips to work on a proposed design. (Doc. 236 at 55-56.) Ms. Phillips understood that "Bad Spaniels" was a reference to "Jack Daniel's." (Doc. 233-1 at 47, 49-50.) Ms. Phillips was familiar with that brand and had consumed Jack Daniel's Tennessee Whiskey in bars and in her home. (Id. at 52-53.) She referenced the Jack Daniel's bottle "every now and then throughout the [design] process." (Id. at 66-67.) Ms. Phillips wanted her sketch to be close to the same as the Jack Daniel's bottle. (Id. at 67.) When finished, the "Bad Spaniels" product featured all the elements of the Jack Daniel's trade dress, including the bottle shape, color scheme, and trademark stylization, as well as the word "Tennessee," and the font and other graphic elements. (Doc. 158.)

JDPI promptly demanded that VIP stop selling the Bad Spaniels Toy. (Doc. 47 at 2.) VIP responded by filing this suit seeking a declaratory judgment that its use of the Bad Spaniels name and trademark does not infringe or dilute any claimed trademark rights that JDPI may claim in its Jack Daniel's trademark for its Tennessee sour mash whiskey and/or any other product. (Doc. 49 at 9.) VIP also alleged that neither the Jack Daniel's trade dress nor the Jack Daniel's bottle design are entitled to trademark protection. (Id. at 9-11.) JDPI filed several counterclaims for trademark and trade dress infringement as well as trademark dilution. (Doc. 50.)

In October 2015, JDPI moved for partial summary judgment on VIP's claims challenging the validity of JDPI's trademarks. (Doc. 101.) VIP then moved for summary

- 2 -

judgment on its request for declaratory judgment that its Bad Spaniels Toy does not infringe or dilute JDPI's trademark or trade dress. (Doc. 110.) VIP also sought summary judgment on each of JDPI's counterclaims and VIP's affirmative defenses of nominative fair use and First Amendment fair use. (Id.) The Court ruled in favor of JDPI, granting its motion for partial summary judgment and affirming the validity of JDPI's trademarks. (Doc. 171.) The Court also rejected VIP's nominative fair use defense and First Amendment fair use defense. (Id.) In rejecting VIP's First Amendment defense, the Court found that the Bad Spaniels Toy was not an artistic or expressive work and therefore was not entitled to protection under the First Amendment. (Id. at 9-11.) The Court then held a four-day trial on JDPI's claims for infringement and dilution and issued a Findings of Fact, Conclusions of Law, and Order finding that the Bad Spaniels Toy infringed JDPI's trademark and trade dress and diluted JDPI's trademark and trade dress by tarnishment under state and federal law. (Doc. 245.) The Court entered a permanent injunction prohibiting VIP from selling the Bad Spaniels Toy. (Doc. 262.)

VIP appealed. (Doc. 276.) The Ninth Circuit Court of Appeals affirmed the Court's holding regarding the validity of JDPI's trademarks and VIP's nominative fair use defense. (Doc. 287-1 at 8.) However, it reversed the Court's finding of dilution, holding that the sale of the Bad Spaniels Toy was used to convey a humorous message and that message was protected by the First Amendment. (Id. at 12.) Therefore, VIP is entitled to judgment in its favor on JDPI's federal and state law dilution claims. The Ninth Circuit also vacated the Court's finding of trademark infringement. (Id.) The Ninth Circuit found that the Bad Spaniels Toy was an expressive work; therefore, JDPI was required to establish one of the two requirements in the test set forth in Rogers v. Grimaldi, 875 F.2d 994 (2d Cir. 1989), before the Court could consider whether Bad Spaniels infringed under the likelihood-of-confusion test set forth in AMF Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979). (Id. at 8-12.) The Ninth Circuit remanded for the Court to consider in the first instance whether JDPI can satisfy the Rogers test to defeat VIP's First Amendment argument, and reapplication of the likelihood-of-confusion test if JDPI succeeds. (Id. at 12.)

1     The Court held a status conference on March 17, 2021, to discuss the path forward
2  following remand. (Doc. 296.) Based on the discussion at the status conference, the Court
3  ordered the parties to file separate briefs addressing the issues remaining on remand. (Doc.
4  297.) VIP was directed to file the first brief, and JDPI was directed to file a response. (Id.)
5     VIP used its brief to move for summary judgment dismissing JDPI's claim for
6  trademark infringement on the grounds that JDPI cannot satisfy either prong of the Rogers
7  test.[1] (Doc. 300.) VIP did not follow the procedural requirements of Local Rule of Civil
8  Procedure 56.1 in filing its motion. Most notably, it did not submit a statement of facts.
9  JDPI filed its response, opposing summary judgment, arguing that there remain genuine
10  issues of fact regarding application of the Rogers test, and asking the Court to set this case
11  for a second trial. (Doc. 302.) VIP then filed a reply brief, which was not authorized by the
12  Court's previous order. (Doc. 303.) JDPI then filed an unauthorized sur-reply, noting that
13  VIP's reply was not authorized and asking the Court to either disregard VIP's second brief
14  or consider JDPI's sur-reply. (Doc. 304 at 4.) In the interest of preserving judicial
15  resources, the Court will consider all four briefs.
16     Having reviewed each brief, the Court finds that summary judgment should be
17  entered in favor of VIP on JDPI's claim for trademark infringement.

## II.    LEGAL STANDARD

19     "A party may move for summary judgment, identifying each claim or defense – or
20  the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ.
21  P. 56(a). A court must grant summary judgment if the pleadings and supporting documents,
22  viewed in the light most favorable to the nonmoving party, show "that there is no genuine
23  dispute as to any material fact and that the movant is entitled to judgment as a matter of

---

[1] VIP also argues that JDPI should be judicially estopped from arguing that VIP is
not protected by the First Amendment under the Rogers test because JDPI argued in its
previous motion for summary judgment that VIP would effectively be immune from
infringement claims under the Rogers test. (Doc. 300 at 8-9 (citing Doc. 142 at 10).)
"[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion." New
Hampshire v. Maine, 532 U.S. 742, 750 (2001) (citation and quotation marks omitted).
Because the Court reaches the same result through consideration of the merits as it would
through judicial estoppel, the Court declines to consider the applicability of judicial
estoppel here.

law." Id.; see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial; instead, the moving party may identify the absence of evidence in support of the opposing party's claims. See Celotex, 477 U.S. at 317, 323-24.

## III.   ANALYSIS

Generally, courts in the Ninth Circuit apply the likelihood-of-confusion test as outlined in Sleekcraft, to analyze claims of trademark infringement under the Lanham Act. Gordon v. Drape Creative, Inc., 909 F.3d 257, 264 (9th Cir. 2018) (citing Twentieth Century Fox Television v. Empire Distrib., Inc., 875 F.3d 1192, 1196 (9th Cir. 2017); Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 806-07 (9th Cir. 2003)). However, where the allegedly infringing use is part of an expressive work, courts apply the Rogers test to determine if the expressive work is protected by the First Amendment. Id. Only if the work is not protected by the First Amendment does the Court proceed to the likelihood-of-confusion test. Id. "Under the Rogers test, the trademark owner does not have an actionable Lanham Act claim unless the use of the trademark is 'either (1) not artistically relevant to the underlying work or (2) explicitly misleads consumers as to the source or

content of the work.'" <u>Dr. Seuss Enters., L.P. v. ComicMix LLC</u>, 983 F.3d 443, 462 (9th Cir. 2020) (quoting <u>VIP Prods. LLC v. Jack Daniel's Props., Inc.</u>, 953 F.3d 1170, 1174 (9th Cir. 2020)). The defendant – here, VIP as Counter-Defendant – bears the burden of showing that the allegedly infringing use is an expressive work. <u>Gordon</u>, 909 F.3d at 264. Once that burden is met, the burden shifts to the plaintiff claiming trademark infringement – JDPI – to satisfy at least one of the two prongs of the <u>Rogers</u> test. <u>Id.</u>

  The Ninth Circuit unequivocally held that the Bad Spaniels Toy was an expressive work and remanded to this Court for application of the <u>Rogers</u> test. (Doc. 287-1 at 11-12.) The Court now applies the <u>Rogers</u> test to determine if JDPI can satisfy one of the two prongs. While most of the Court's legal conclusions were reversed by the Ninth Circuit, the Court's previous findings of fact made at trial and in ruling on the previous motions for summary judgment remain untouched and the Court will rely on those findings here. (<u>See</u> Docs. 171, 245.)

  **A. Artistic Relevance**

  Under the <u>Rogers</u> test, "only the use of a trademark with *no* artistic relevance to the underlying work *whatsoever* does not merit First Amendment protection." <u>E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.</u>, 547 F.3d 1095, 1100 (9th Cir. 2008) (emphasis in original) (quotation marks omitted) (quoting <u>Mattel, Inc. v. MCA Recs., Inc.</u>, 296 F.3d 894, 902 (9th Cir. 2002)). "[T]he level of relevance merely must be above zero." <u>Id.</u> This means a scant or de minimis amount of evidence is sufficient to show relevance.

  Here, the Bad Spaniels Toy imitates, yet alters, JDPI's trade dress to make a joke about a dog defecating on the carpet. The Ninth Circuit found on appeal that the Bad Spaniels Toy "communicates a 'humorous message,' . . . by 'juxtaposing the irreverent representation of the trademark with the idealized image created by the mark's owner.'" (Doc. 287-1 at 10 (quoting <u>Gordon</u>, 909 F.3d at 268-69; <u>L.L. Bean, Inc. v. Drake Publishers, Inc.</u>, 811 F.2d 26, 34 (1st Cir. 1987)).) JDPI's trade dress "is the punchline on which the [Bad Spaniels Toy's] humor turns." <u>Gordon</u>, 909 F.3d at 269. Therefore, JDPI's trade dress is relevant, if not central, to VIP's message.

1   JDPI nonetheless opposes summary judgment, arguing there remain material issues
2   of fact as to whether VIP's use of JDPI's trade dress was intended to comment on JDPI, its
3   business, or its whiskey, or whether "it is nothing more than a marketing ploy for a
4   competing product."[2] (Doc. 302 at 8.) JDPI asserts that the junior use of a mark must relate
5   to and comment on the meaning associated with the senior use in order to satisfy the
6   relevance inquiry of the <u>Rogers</u> test. (<u>Id.</u> at 13 (citing <u>Rebelution, LLC v. Perez</u>, 732 F.
7   Supp. 2d 883, 888-89 (N.D. Cal. 2010); <u>Warner Bros. Ent. v. Glob. Asylum, Inc.</u>, No. CV
8   12-9547 PSG (CWX), 2012 WL 6951315, at *16 (C.D. Cal. Dec. 10, 2012)).) "Uses that
9   'merely borrow another's property to get attention' lack artistic relevance." (<u>Id.</u> (citing
10  <u>Warner Bros. Ent.</u> 2012 WL 6951315, at *16).) This, however, is not the legal standard for
11  relevance. The Ninth Circuit has clearly held that reference to the senior user of a mark is
12  not a prerequisite for relevance under the <u>Rogers</u> test. <u>Empire Distribution</u>, 875 F.3d at
13  1199. Therefore, VIP need not be commenting on JDPI or its business in any manner in
14  order for the mark to be artistically relevant.

15      In fact, the Ninth Circuit recently held in <u>Dr. Seuss Enterprises, L.P. v. ComicMix</u>
16  <u>LLC</u> that where a junior user modifies and plays upon a senior user's mark to communicate
17  a message – as VIP has done here – then the artistic relevance requirement is met, even if
18  the message is wholly unrelated to the senior user's mark. 983 F.3d at 448. In <u>ComicMix</u>,
19  the Ninth Circuit was considering whether an illustrated book that copied the title, typeface,
20  and style of illustration of Dr. Seuss's <u>Oh, the Places You'll Go!</u> ("<u>Go!</u>") infringed the

21
---
22  [2] JDPI does not identify any new evidence it would produce at trial that it has not
    already presented on the previous motions for summary judgment and at the previous trial.
23  At the status conference following remand, counsel for JDPI did suggest that it might seek
    to reopen discovery for expert testimony regarding the explicitly misleading standard.
24  (Doc. 296.) JDPI has not renewed its request for additional expert testimony in its briefing
    and the Court considers the request abandoned.
25      In its sur-reply, JDPI does argue that it is entitled to take supplemental discovery
    regarding VIP's representations to the United States Patent and Trademark Office that the
26  names of other products in its Silly Squeakers line are source identifiers for VIP's products.
    (Doc. 304 at 4-5.) JPDI contends such discovery is relevant to VIP's claim that the Bad
27  Spaniels Toy is a commentary on "companies . . . that take their brands too seriously," and
    whether VIP's use of JDPI's mark has any artistic relevance under <u>Rogers</u>. (Doc. 304 at
28  5.) However, the Court finds there is no need to reopen discovery for this purpose because
    it would not alter the outcome. As outlined below, whether VIP is commenting on other
    brands with the Bad Spaniels Toy has no bearing on the relevance inquiry.

trade dress of <u>Go!</u>. The book was a "mash-up," which utilized the stylistic elements of <u>Go!</u> to tell a story about Star Trek characters and communicate the message that "life is an adventure but it will be tough." <u>Id.</u> at 448-49. In determining relevance under the <u>Rogers</u> test, the Ninth Circuit made no inquiry into whether the junior user was commenting on the business practices or quality of Dr. Seuss's work or whether the junior user was borrowing another's property to get attention. <u>Id.</u> at 462. The Court simply concluded that because the book was a mash-up of <u>Go!</u> and Star Trek, Dr. Seuss's trademarks in the title, the typeface, and the style of <u>Go!</u> were relevant to achieving the junior user's artistic expression. <u>Id.</u>

A parody functions just like a mash-up. It modifies and plays with the elements of an original work to express something new and different. Accordingly, <u>ComicMix</u> governs the outcome here. As JDPI recognizes elsewhere in its brief, VIP's imitations of JDPI's trademark and trade dress are the "centerpiece" of the Bad Spaniels Toy. (Doc. 302 at 20.) VIP is making a joke, and the joke turns on mimicking JDPI's trade dress. This is more than adequate to satisfy the "above zero" relevance required by the Ninth Circuit's interpretation of the <u>Rogers</u> test.

Thus, because the material issues of fact identified by JDPI have no bearing on the legal question before the Court, the Court concludes VIP is entitled to summary judgment as to the relevance inquiry under the <u>Rogers</u> test.

### B. Explicitly Misleads

The second <u>Rogers</u> prong "requires that the use be *explicitly* misleading to consumers." <u>Brown</u>, 724 F.3d at 1245-46 (emphasis in original). This "is a high bar that requires the use to be an explicit indication, overt claim, or explicit misstatement about the source of the work." <u>ComicMix</u>, 983 F.3d at 462 (quotations omitted) (quoting <u>Brown</u>, 724 F.3d at 1245). "[T]he mere use of a trademark alone cannot suffice to make such use explicitly misleading." <u>Rock Star Videos</u>, 547 F.3d at 1100 (citing <u>MCA Recs.</u>, 296 F.3d at 902). The focus of this inquiry is on the nature of the behavior of the junior user; the consumer's perception or confusion is irrelevant. <u>Brown</u>, 724 F.3d at 1246. Relevant

1    considerations in determining whether a mark is explicitly misleading are: "(1) 'the degree

2    to which the junior user uses the mark in the same way as the senior user' and (2) 'the

3    extent to which the junior user has added his or her own expressive content to the work

4    beyond the mark itself.'" ComicMix, 983 F.3d at 462-63 (quoting Gordon, 909 F.3d at

5    270-71).

6         JDPI argues that the question of whether the Bad Spaniels Toy is explicitly

7    misleading cannot be decided as a matter of law. (Doc. 302 at 17-22.) Relying heavily on

8    the Ninth Circuit's opinion in Gordon v. Drape Creative, Inc., JDPI contends that because

9    JDPI also sells dog products and JDPI's trade dress is the centerpiece of the Bad Spaniels

10   Toy, the explicitly misleading question must be referred to the factfinder to decide on a

11   fully developed trial record. (Id. (citing Gordon, 909 F.3d 257, throughout).

12        In Gordon, the plaintiff was a comedian who popularized the phrases, "Honey

13   Badger Don't Care" and "Honey Badger Don't Give a S---" through YouTube videos

14   featuring footage of honey badgers overlaid with the plaintiff's narration. 909 F.3d at 261.

15   The plaintiff also registered "Honey Badger Don't Care" with the United States Patent and

16   Trademark Office. Id. at 261-62. The plaintiff then negotiated a licensing deal for a number

17   of honey-badger themed products, including greeting cards. Id. at 262. Following the

18   plaintiff's popular success, the defendants developed and marketed their own line of

19   greeting cards that featured variations of the "Honey Badger Don't Care" and "Honey

20   Badger Don't Give a S---" taglines over images of honey badgers. Id. at 262-63. The

21   plaintiff sued alleging trademark infringement. The Ninth Circuit found the greeting cards

22   to be expressive works and the honey-badger trademark to be relevant to the artistic

23   expression of the greeting cards. Id. at 268-69. However, the Ninth Circuit found that it

24   could not conclude as a matter of law that the defendants' greeting cards were not explicitly

25   misleading because the defendants used the mark with "minimal artistic expression of their

26   own, and used it in the same way that [the plaintiff] was using it." Id. at 271.

27        There are parallels with VIP's use here. The Court previously found that JDPI had

28   licensed its trademark and trade dress rights for use with dog products. (Doc. 245 at 21.)

Thus, VIP, just as the defendants in <u>Gordon</u>, uses JDPI's trade dress in the same manner as JDPI – i.e., to market dog products. Additionally, JDPI's trade dress is the centerpiece of the Bad Spaniels Toy, just as the "Honey Badger Don't Care" tagline was central to the defendants' greeting cards in <u>Gordon</u>. However, there is a critical difference between the greeting cards in <u>Gordon</u> and the Bad Spaniels Toy. The defendants in <u>Gordon</u> put the "Honey Badger Don't Care" tagline and its variations onto pictures of honey badgers with little to no alteration that would indicate the cards were created by anyone other than the trademark holder. Here, while VIP heavily imitated JDPI's trade dress, it also altered nearly every element with its own expressive content. As a result, the Bad Spaniels Toy is more similar to the mashup in <u>ComicMix</u>, than the greeting cards in <u>Gordon</u>.

In <u>ComicMix</u>, the Ninth Circuit distinguished <u>Gordon</u>, by stating that <u>Gordon</u> demonstrated the "outer limits" of <u>Rogers</u>, "where the defendant's expressive work consisted of the mark and not much else." 983 F.3d at 462. The language suggests that any use of another's mark with a minimal degree of expressive content cannot be explicitly misleading under the <u>Rogers</u> test. The Ninth Circuit in <u>ComicMix</u> went on to find as a matter of law that the defendant's Dr. Seuss/Star Trek mashup was not explicitly misleading, even though it was an illustrated book like <u>Go!</u> and looked nearly identical to <u>Go!,</u> because the defendant added its own "expressive content to the work beyond the mark itself," conspicuously listed authors other than Dr. Seuss, and included a disclaimer stating that it was not associated with or endorsed by Dr. Seuss. <u>Id.</u> at 463 (quoting <u>Gordon</u>, 909 F.3d at 270).  Here, the Bad Spaniels Toy similarly alters JDPI's trade dress in a way that creates new expressive content. It also identifies itself as a Silly Squeaker toy on the label, and it disclaims any association with Jack Daniel's. While the "Silly Squeakers" label is partially obscured and the miniscule disclaimer on the back of the label is difficult to see, the combination of these elements with the new expressive content is enough to remove the Bad Spaniels Toy from the "outer limits" of the <u>Rogers</u> test identified in <u>Gordon</u> and force the court to conclude as a matter of law that the Bad Spaniels toy is not explicitly misleading.

Because JDPI cannot carry its burden to create a material issue of fact as to either of the <u>Rogers</u> prongs under Ninth Circuit precedent, the Court must conclude that the Bad Spaniels Toy is entitled to First Amendment protection and JDPI's claim for trademark infringement must fail. However, it appears nearly impossible for any trademark holder to prevail under the <u>Rogers</u> test. Where relevance need be merely "above zero" – which is to say, relevance can be scant or de minimis – it is difficult to imagine what creative junior use would not pass the <u>Rogers</u> test. In fact, in the seven cases in which the Ninth Circuit has applied the <u>Rogers</u> test, it has never once found a mark irrelevant to a junior use. <u>See MCA Records</u>, 296 F.3d at 902; <u>Walking Mountain Prods.</u>, 353 F.3d at 807; <u>Rock Star Videos</u>, 547 F.3d at 1100; <u>Brown v. Elec. Arts, Inc.</u>, 724 F.3d 1235, 1243 (9th Cir. 2013); <u>Empire Distribution</u>, 875 F.3d at 1199; <u>Gordon</u>, 909 F.3d at 269; <u>ComicMix</u>, 983 F.3d at 462. Similarly, the "explicitly misleading" standard essentially displaces the likelihood-of-confusion test with a standard that excuses nearly any use less than slapping another's trademark on your own work and calling it your own. The likelihood-of-confusion test provided a multi-factor consideration of the effects of a junior use on a senior user's mark; the explicitly misleading test is unconcerned with the real-world effects on a senior user's mark. Thus, while JDPI finds the depiction of a dog relishing a bowel movement on a carpet distasteful and an abuse of its mark, in the final analysis, JDPI has no means to protect the viability of its trademark. Yet, the Court is bound by Ninth Circuit precedent. For JDPI or similarly situated trademark holders to obtain a different outcome, they must seek relief before the United States Supreme Court or the United States Congress.

Accordingly, the Court will enter judgment for VIP on JDPI's trademark infringement claim.

## IV.   CONCLUSION

Based on the foregoing,

**IT IS HEREBY ORDERED granting** Plaintiff/Counter-Defendant VIP Products LLC's motion for summary judgment. (Doc. 300.)

**IT IS FURTHER ORDERED dismissing with prejudice** Defendant/Counter-

Plaintiff Jack Daniel's Properties Inc.'s claim for trademark infringement.

**IT IS FURTHER ORDERED** that Plaintiff/Counter-Defendant VIP Products LLC shall file with the Court <u>on or before October 22, 2021</u>, a proposed final judgment, including any declaratory relief to which Plaintiff/Counter-Defendant is entitled.

Dated this 8th day of October, 2021.

Honorable Stephen M. McNamee
Senior United States District Judge