MESSNER REEVES LLC
Isaac S. Crum
1440 E. Missouri Avenue, Suite C100
Phoenix, Arizona 85014
(602) 641-6705
icrum@messner.com

WILLIAMS & CONNOLLY LLP
Lisa S. Blatt (*pro hac vice*)
Amy Mason Saharia (*pro hac vice*)
Matthew B. Nicholson (*pro hac vice forthcoming*)
680 Maine Avenue, SW
Washington, DC 20024
(202) 434-5000
lblatt@wc.com
asaharia@wc.com
mnicholson@wc.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| VIP Products LLC, an Arizona limited liability company, | ) ) ) No. CV-14-2057-PHX-SMM |
| Plaintiff, | ) ) **JACK DANIEL'S PROPERTIES,** |
| | ) **INC.'S MOTION TO REINSTATE** |
| v. | ) **PRIOR JUDGMENT IN LIGHT OF** |
| | ) **THE SUPREME COURT'S DECISION** |
| Jack Daniel's Properties, Inc., a Delaware corporation, | ) ) ) |
| Defendant. | ) ) |

## **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

BACKGROUND ......................................................................................................... 2

    A.    Factual Background ................................................................................ 2

    B.    Procedural History ................................................................................ 3

ARGUMENT .............................................................................................................. 8

I.    The Court Should Re-enter Judgment for Jack Daniel's on Dilution. ..... 8

II.    The Court Should Re-enter Judgment for Jack Daniel's on Infringement. ........... 10

    A.    The Supreme Court's Decision Confirms This Court's Prior Likelihood-of-Confusion Finding. .......................................... 10

    B.    Other Case Law Supports This Court's Finding of Likely Confusion. ............ 18

III.    VIP's Facial Constitutional Challenge to the Dilution Statute Is Waived and Meritless. ............................................................................. 21

    A.    VIP Waived Its Facial Constitutional Challenge to the Dilution Statute. ........ 22

    B.    VIP's Facial Constitutional Challenge Fails.................................... 25

IV.    Jack Daniel's Is Entitled to Injunctive Relief.......................................... 30

CONCLUSION ......................................................................................................... 30

# TABLE OF AUTHORITIES

Page

## CASES

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) .......................................... 5, 10

*Anheuser-Busch, Inc. v. VIP Prods., LLC*, 666 F. Supp. 2d 974 (E.D. Mo. 2008) ........... 19

*Apple Inc. v. Samsung Elecs. Co.*, 2017 WL 3232424 (N.D. Cal. July 28, 2017) ............ 22

*AWGI, LLC v. Atlas Trucking Co.*,
 2020 WL 3546100 (E.D. Mich. June 30, 2020),
 *aff'd*, 998 F.3d 258 (6th Cir. 2021) ................................................................................. 14

*CFPB v. CashCall, Inc.*, 35 F.4th 734 (9th Cir. 2022) ..................................................... 23

*Chem. Corp. of Am. v. Anheuser-Busch, Inc.*, 306 F.2d 433 (5th Cir. 1962) .................... 26

*Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483 (9th Cir. 2010) ........ 22

*Coca-Cola Co. v. Gemini Rising, Inc.*, 346 F. Supp. 1183 (E.D.N.Y. 1972) ..................... 26

*Cruz v. Int'l Collection Corp.*, 673 F.3d 991 (9th Cir. 2012) ............................................ 23

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*,
 604 F.2d 200 (2d Cir. 1979) ........................................................................................... 26

*DocRx, Inc. v. DocRx Dispense, Inc.*, 2015 WL 1778360 (D. Ariz. Apr. 20, 2015) ........ 30

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997) ....... 18

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) ................................................. 30

*Eldred v. Ashcroft*, 537 U.S. 186 (2003) ........................................................................ 28

*Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456 (7th Cir. 2000) ................................ 12

*Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188 (5th Cir. 1998) ............................... 17

*Estee Lauder Cosms., Inc. v. Get Your Mac On, LLC*,
 2015 WL 274133 (D. Ariz. Jan. 22, 2015) .................................................................... 30

*Facebook, Inc. v. Power Ventures, Inc.*,
 252 F. Supp. 3d 765 (N.D. Cal. 2017), *aff'd*, 749 F. App'x 557 (9th Cir. 2019) ........ 22

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
 618 F.3d 1025 (9th Cir. 2010) ....................................................................................... 11

*Grey v. Campbell Soup Co.*,
 650 F. Supp. 1166 (C.D. Cal. 1986), *aff'd*, 830 F.2d 197 (9th Cir. 1987) ...... 13, 16, 19

*Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806 (2d Cir. 1999) ............................. 13, 19

*Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539 (1985) .......................... 29

*Iancu v. Brunetti*, 139 S. Ct. 2294 (2019) .......................................................... 23, 24, 25, 27

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140 (2023) .......................... *passim*

*Johnson & Johnson v. Pissterine, LLC*, 2022 WL 190986 (T.T.A.B. Jan. 18, 2022) ....... 17

*L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26 (1st Cir. 1987) ....................... 26, 27

*Lloyd Corp. v. Tanner*, 407 U.S. 551 (1972) ................................................................. 28

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*,
 507 F.3d 252 (4th Cir. 2007) ................................................................................... *passim*

*M2 Software Inc. v. Viacom Inc.*, 223 F. App'x 653 (9th Cir. 2007) ................................ 22

*Magnesystems, Inc. v. Nikken, Inc.*, 933 F. Supp. 944 (C.D. Cal. 1996) ........................ 22

*Matal v. Tam*, 582 U.S. 218 (2017) ..................................................................... 23, 24, 27, 28

*Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003) ............................................. 26

ii

Page

Cases—continued:

*Original Appalachian Artworks, Inc. v. Topps Chewing Gum, Inc.*,
   642 F. Supp. 1031 (N.D. Ga. 1986) ...................................................................26
*Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118 (9th Cir. 2014) ....................11, 14, 17
*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992)......................................24, 27, 28
*Raich v. Gonzales*, 500 F.3d 850 (9th Cir. 2007)........................................22, 25
*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) ..........................................4, 6
*Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995) .........................24
*Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144 (4th Cir. 2012) ..............................14, 15
*RXD Media, LLC v. IP Application Dev. LLC*, 986 F.3d 361 (4th Cir. 2021) ..................14
*S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921 (9th Cir. 2014)............................................10
*San. Fran. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522 (1987)..27, 28, 29
*Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 850 F. Supp. 232 (S.D.N.Y. 1994)........12, 19
*Sec. Inv. Prot. Corp. v. Vigman*, 74 F.3d 932 (9th Cir. 1996)....................................22, 23
*TE-TA-MA Truth Found.—Fam. of URI, Inc. v. World Church of the Creator*,
   297 F.3d 662 (7th Cir. 2002) ...................................................................29
*Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894 (9th Cir. 2002),
   *superseded by statute on other grounds, as recognized in*
   *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859 (9th Cir. 2020) ........14
*Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*,
   221 F. Supp. 2d 410 (S.D.N.Y. 2002)...................................................21
*United States v. Olano*, 507 U.S. 725 (1993) ..................................................21
*Vans, Inc. v. MSCHF Prod. Studio, Inc.*,
   88 F.4th 125 (2d Cir. 2023) (per curiam) ....................................1, 11, 12, 18
*VIP Prods., LLC v. Jack Daniel's Props., Inc.*,
   2016 WL 5408313 (D. Ariz. Sept. 27, 2016)...................................................4
*VIP Prods. LLC v. Jack Daniel's Props., Inc.*,
   2021 WL 5710730 (D. Ariz. Oct. 8, 2021)...................................................6
*VIP Prods., LLC v. Jack Daniel's Props., Inc.*,
   291 F. Supp. 3d 891 (D. Ariz. 2018) ....................................................*passim*
*VIP Prods. LLC v. Jack Daniel's Props., Inc.*, 953 F.3d 1170 (9th Cir. 2020) .............5, 6
*Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562 (1977) ...............................29
*Zixiang Li v. Kerry*, 710 F.3d 995 (9th Cir. 2013) ..............................................23

**CONSTITUTION, STATUTES, AND RULES**

U.S. Const. amend. I.....................................................................*passim*
15 U.S.C.
   § 1052 ...........................................................................................27
   § 1114 ...........................................................................................10
   § 1116 ...........................................................................................30
   § 1125(a) ........................................................................................10
   § 1125(a)(1)(A) ................................................................................15
   § 1125(c)(1)..............................................................................26, 29, 30

Page

Constitution, Statutes, and Rules—continued:

15 U.S.C.
    § 1125(c)(2)(C) ................................................................................. 26
    § 1125(c)(3)(A) ........................................................................... *passim*
    § 1125(c)(3)(B) ................................................................................. 29
    § 1125(c)(3)(C) ........................................................................ 5, 9, 29
28 U.S.C. § 2403 ................................................................................. 25
Fed. R. Civ. P.
    5.1 ....................................................................................................... 25
    28 ........................................................................................................ 25

**OTHER AUTHORITY**

J. McCarthy, Trademarks and Unfair Competition (5th ed. 2023)
    § 24:9 ................................................................................................. 15
    § 30:1 ................................................................................................. 30
    § 30:2 ................................................................................................. 30
    § 32:174 ....................................................................................... 14, 15
    § 32:188 ....................................................................................... 14, 16

## **INTRODUCTION**

This Court already held that VIP Products LLC ("VIP") infringes and dilutes Jack Daniel's Properties, Inc.'s ("Jack Daniel's") trademarks and trade dress.  The Supreme Court's decision confirms the correctness of this Court's prior decisions.  With respect to the dilution claims, the Supreme Court agreed with this Court that no statutory exclusion from liability applies because VIP uses Jack Daniel's marks as a designation of source.

With respect to the infringement claims, the Supreme Court agreed with this Court that the First Amendment does not protect VIP's conduct and that the traditional likelihood-of-confusion analysis applies.  Nothing in the Supreme Court's decision calls into question this Court's prior likelihood-of-confusion analysis.  This case is worlds apart from cases like *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 263 (4th Cir. 2007), in which parody products contain enough contrasts and are sold in sufficiently different marketing channels that they are unlikely to confuse consumers. Here, as this Court already found, the two products are virtually identical; the two companies sell related products; the products are sold in identical marketing channels; and survey evidence proves actual confusion.  This is a case where, as the Second Circuit recently put it, the supposedly "parodic use of protected marks and trade dress leaves confusion as to the source of a product," meaning that "the parody has not 'succeeded' for purposes of the Lanham Act, and the infringement is unlawful."  *Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125, 142 (2d Cir. 2023) (per curiam).

Jack Daniel's need only prevail on either dilution or infringement to obtain judgment and an injunction.  Here, Jack Daniel's prevails on both.  This Court should reaffirm its prior findings (with the addition of a further similarity-related finding and with the exception of its intent-related findings, as discussed below, *see infra* pp.12, 16-18), re-enter judgment for Jack Daniel's, and re-issue an injunction.

1

**BACKGROUND**

### A.    Factual Background

As a reminder, Jack Daniel's owns and licenses the trademarks and trade dress associated with Jack Daniel's Tennessee Whiskey.  FoF ¶ 3.[1]  Jack Daniel's Tennessee Whiskey has been sold for more than a century (except during Prohibition).  FoF ¶ 4. Since 1997, Jack Daniel's has been the best-selling whiskey in the country.  FoF ¶ 29. Since 1875, Jack Daniel's Tennessee Whiskey has borne the registered trademarks JACK DANIEL'S and OLD NO. 7.  FoF ¶ 5.  Jack Daniel's also has a registered trademark for the three-dimensional configuration of its square-shaped bottle.  FoF ¶ 5.

Jack Daniel's (through its affiliates) has spent hundreds of millions of dollars promoting its whiskey.  FoF ¶ 28.  Studies consistently show that, when asked about Jack Daniel's, 98% of consumers express awareness of the brand.  FoF ¶ 109.  Jack Daniel's maintains an active brand licensing program.  FoF ¶ 6.  Of particular relevance here, Jack Daniel's licenses its trademarks and trade dress for use on various pet products, including branded leashes, collars, and dog houses.  FoF ¶ 7.

VIP designs, manufactures, markets, and sells chew toys for dogs.  FoF ¶ 1.  Without obtaining licenses, VIP created a "Silly Squeakers" product line mimicking the trademarks of famous beverages, while adding toilet humor.  *See* FoF ¶ 8.  Examples include "Smella R-Crotches" (Stella Artois), "Heini Sniff'n" (Heineken), and "Pissness" (Guinness).  FoF ¶ 9.  In 2014, VIP began selling its "Bad Spaniels" toy, which is a virtual replica of a Jack Daniel's bottle:

---

[1] "FoF" refers to the findings of fact in this Court's post-trial opinion, ECF 245, published at 291 F. Supp. 3d 891 (D. Ariz. 2018).

 

*See* ECF 241, at 4, 12; Trial Exs. 1-2.      As these images show, the Bad Spaniels toy appropriates Jack Daniel's trademarks and trade dress in every respect, while adding poop humor.  FoF ¶¶ 34, 103.  The toy is the "nearly identical size" as a Jack Daniel's bottle, is the color of whiskey, and has a similar black-and-white color scheme.  FoF ¶¶ 34, 103. Both labels include "Tennessee" in similar fonts, and the Bad Spaniels label is surrounded by white lines mimicking Jack Daniel's filigreed border.  The Bad Spaniels label also includes a slightly modified round insignia, with the words "The Old No. 2" instead of "Old No. 7."  The name "Jack Daniel's" is replaced by "Bad Spaniels," along with the image of a spaniel.  The words "Old No. 7 Tennessee Sour Mash Whiskey" became "Old No. 2 on your Tennessee Carpet."  And "40% ALC. BY VOL. (80 PROOF)" became "43% POO BY VOL." and "100% SMELLY."  The back of the product's hang tag states in tiny script, "This product is not affiliated with Jack Daniel Distillery."  FoF ¶ 10.

### B.   Procedural History

1.      After VIP introduced the Bad Spaniels toy in 2014, Jack Daniel's demanded that VIP stop selling it.  FoF ¶¶ 16-17.  VIP responded by suing Jack Daniel's in this Court, seeking a declaration that VIP did not infringe or dilute any trademark rights. Jack Daniel's counterclaimed for infringement and dilution by tarnishment of its trademarks and trade dress.  Jack Daniel's sought an injunction prohibiting the manufacture and distribution of Bad Spaniels and ordering the destruction or other disposition of the

1   toy and its molds, along with attorneys' fees and costs.  VIP moved for summary judg-

2   ment, and Jack Daniel's cross-moved for partial summary judgment.

3       This Court denied VIP's motion and granted Jack Daniel's.  ECF 171, 2016 WL

4   5408313 (D. Ariz. Sept. 27, 2016).  As to infringement, the Court held that Jack Daniel's

5   established the first two elements: i.e., that its trademarks and trade dress were distinctive

6   and nonfunctional.  *Id.* at *7-10, *17-18.  The Court further held that Jack Daniel's raised

7   triable issues as to the remaining infringement element: that VIP's use of Jack Daniel's

8   trademarks and trade dress likely caused consumer confusion.  *Id.* at *10-11.

9       This Court also rejected VIP's defense that its dog toy merited heightened First

10  Amendment protection under the Second Circuit's framework in *Rogers v. Grimaldi*, 875

11  F.2d 994 (2d Cir. 1989).  This Court explained that VIP had made "trademark use of its

12  adaptations of [Jack Daniel's] trademarks and the Jack Daniel's trade dress to sell a com-

13  mercial product."  2016 WL 5408313, at *6.  The Court reasoned that "the First Amend-

14  ment affords no protection to VIP because it is trademark law that regulates misleading

15  commercial speech where another's trademark is used for source identification in a way

16  likely to cause consumer confusion."  *Id.* at *5.

17      With respect to dilution, this Court rejected VIP's parody fair-use defense.  The

18  Court observed that 15 U.S.C. § 1125(c)(3)(A) excludes from dilution liability fair use,

19  including parodying, "other than as a designation of source for the person's own goods or

20  services."  2016 WL 5408313, at *12 (citation omitted).  Because VIP used "Bad Span-

21  iels" to designate the source of its dog toy, the Court held the fair-use exclusion did not

22  apply.  *Id.*

23      This Court further held that Jack Daniel's raised triable issues of fact concerning

24  its dilution claims.  *Id.* at *16-17.  The case proceeded to a bench trial on those claims, as

25  well as on the remaining likelihood-of-confusion element of the infringement claims.

26      Following a four-day bench trial, this Court ruled for Jack Daniel's on both the in-

27  fringement and dilution claims.  ECF 245, 291 F. Supp. 3d 891, 899-911 (D. Ariz. 2018).

28

4

As to dilution, this Court found that Jack Daniel's trademarks and trade dress were famous and that VIP's marks and trade dress were similar to Jack Daniel's because VIP had "appropriated the Jack Daniel's trade dress in every aspect." *Id.* at 900-01.  This Court further found that the Bad Spaniels toy was likely to tarnish the reputation of Jack Daniel's trademarks and trade dress by associating Jack Daniel's beverages with canine excrement and products that appeal to children.  *Id.* at 901-05.

As to infringement, the Court weighed the eight factors set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979) and found that Bad Spaniels was likely to confuse consumers.  Among other things*,* the Court found that (i) VIP's marks were highly similar to Jack Daniel's marks, (ii) Jack Daniel's trademarks and trade dress were extremely strong, (iii) VIP's dog toy was related to Jack Daniel's licensed pet products, (iv) Bad Spaniels and Jack Daniel's licensed merchandise are sold in the same marketing channels, and (v) and consumers are unlikely to exercise significant care when purchasing the Bad Spaniels toy.  291 F. Supp. 3d at 909-11.  The Court also credited Jack Daniel's survey expert, who determined that 29% of potential customers were likely to be confused about Jack Daniel's affiliation with Bad Spaniels—a finding "nearly double the threshold to show infringement" used by most courts.  *Id.* at 906-08.  This Court enjoined VIP from manufacturing, advertising, or selling Bad Spaniels.  *Id.* at 911.

2.      The Ninth Circuit affirmed in part, reversed in part, vacated in part, and remanded.  953 F.3d 1170, 1176 (9th Cir. 2020).  As to dilution, the Ninth Circuit did not question this Court's factual findings.  Nor did the Ninth Circuit question this Court's holding that the fair-use exclusion in section 1125(c)(3)(A) did not apply because VIP used Bad Spaniels to designate the source of its product.  Instead, the Ninth Circuit reversed based on the separate exclusion in section 1125(c)(3)(C) for "noncommercial use of a mark." *Id*. at 1176 (citation omitted).  The Ninth Circuit concluded that VIP was entitled to judgment in its favor on the dilution claims.  *Id.*

5

As to infringement, the Ninth Circuit affirmed this Court's rulings that Jack Daniel's trademarks and trade dress were nonfunctional and distinctive.  *Id.* at 1173-74.  And the Ninth Circuit did not disturb this Court's factual finding that Bad Spaniels was likely to confuse consumers.  The Ninth Circuit nevertheless vacated the infringement judgment because it concluded that Bad Spaniels was an "expressive work" entitled to heightened First Amendment protection under *Rogers.  Id.* at 1175-76.  The Ninth Circuit then remanded for this Court to consider whether Jack Daniel's could satisfy the *Rogers* test by showing that VIP's use of the mark either (1) was not "artistically relevant" or (2) "explicitly misle[d]" consumers about the toy's source.  *Id.* at 1174-75 (citation omitted).

On remand, this Court granted summary judgment to VIP on infringement, finding that Jack Daniel's could not satisfy the *Rogers* test.  ECF 305, 2021 WL 5710730 (D. Ariz. Oct. 8, 2021).  The Court observed that "it appears nearly impossible for any trademark holder to prevail under the *Rogers* test."  *Id.* at *6.  The Court explained that, because relevance need merely be "above zero," "it is difficult to imagine what creative junior use would not pass the *Rogers* test."  *Id.*  The Court added that the "explicitly misleading" standard "essentially displaces the likelihood-of-confusion test with a standard that excuses nearly any use less than slapping another's trademark on your own work and calling it your own."  *Id.* at *6.  The Court recognized that because it was "bound by Ninth Circuit precedent," Jack Daniel's would have to "seek relief before the United States Supreme Court or the United States Congress."  *Id.*

Jack Daniel's appealed, and the Ninth Circuit summarily affirmed.

3.      The Supreme Court granted certiorari, vacated the judgment, and remanded for further proceedings.  599 U.S. 140 (2023).  In so doing, the Supreme Court rejected the Ninth Circuit's holdings concerning both infringement and dilution.  As to infringement, the Supreme Court held that, regardless of whether *Rogers* has merit in other contexts, it does not apply "when an alleged infringer uses a trademark in the way the Lanham Act most cares about: as a designation of source for the infringer's own goods."  *Id.*

at 153.  The Supreme Court further concluded that this Court "correctly held that 'VIP uses its Bad Spaniels trademark and trade dress as source identifiers of its dog toy.'"  *Id.* at 159-60 (citation omitted).  Accordingly, the "only question" was "whether the Bad Spaniels marks are likely to cause confusion."  *Id.* at 161.

As to that question, the Supreme Court explained that "a trademark's expressive message—particularly a parodic one, as VIP asserts—may properly figure in assessing the likelihood of confusion."  *Id.*  The Supreme Court made clear, however, that a purported parody may result in confusion.  A parody must "conjure up enough of [the] original to make the object of its critical wit recognizable."  *Id.* (cleaned up).  "Yet to succeed, the parody must also *create contrasts*, so that its message of ridicule or pointed humor comes clear."  *Id.* (emphasis added).  The Supreme Court stressed that "*if* that is done," a "parody is not often likely to create confusion."  *Id.*  The Supreme Court then remanded the likelihood-of-confusion issue to the lower courts.  *Id.*

As to dilution, the Supreme Court rejected the Ninth Circuit's holding that VIP qualified for the "noncommercial use" exclusion because its dog toy conveyed a "humorous message."  *Id.* at 161-62.  The Supreme Court held that, "[h]owever wide the scope of the 'noncommercial use' exclusion, it cannot include, as the Ninth Circuit thought, every parody or humorous commentary."  *Id.* at 162.  That "expansive view" would "effectively nullif[y]" the limits that Congress placed on the separate exclusion for fair uses, including parody, criticism, and commentary.  *Id.*  That fair-use exclusion "does not apply when the use is 'as a designation of source for the person's own goods or services.'"  *Id.* (quoting 15 U.S.C. § 1125(c)(3)(A)).  Here, the Supreme Court continued, "[t]he District Court … rightly concluded that because VIP used the challenged marks as source identifiers, it could not benefit from the fair-use exclusion for parody."  *Id.*  By applying the noncommercial use exclusion, the Ninth Circuit "negated Congress's judgment about when—and when not—parody (and criticism and commentary) is excluded from dilution liability."  *Id.*

7

The Supreme Court vacated the judgment and remanded for further proceedings consistent with its opinion.  The Ninth Circuit, in turn, remanded the case to this Court.

## **ARGUMENT**

The Court should reinstate its original judgment for Jack Daniel's on both dilution and infringement, each of which independently suffices to support an injunction.[2]

As to dilution, the Court already has made all relevant factual findings in Jack Daniel's favor, and the Ninth Circuit did not disturb any of this Court's factual findings. Moreover, the Supreme Court has held that VIP cannot avail itself of the statutory exclusions.  No issues remain for this Court to decide regarding dilution.

The Court also should reinstate its judgment for Jack Daniel's on infringement. The Supreme Court vindicated this Court's earlier holding that the likelihood-of-confusion test applies to Jack Daniel's infringement claim.  And this Court already has found that VIP's Bad Spaniels toy is likely to cause consumer confusion under that standard. Nothing in the Supreme Court's opinion changes that finding.  The Court should re-issue its prior findings and revise its intent-related findings to avoid VIP's misplaced criticism of those findings in the Ninth Circuit on remand from the Supreme Court.

To the extent VIP attempts to raise a new facial constitutional challenge to the dilution statute at this late juncture, this Court should apply the well-established rule that parties may not raise unpreserved issued for the first time on remand.  Even if the Court were to consider VIP's untimely challenge, it is meritless.

## I.     The Court Should Re-enter Judgment for Jack Daniel's on Dilution.

This Court already found that Jack Daniel's proved each element of its dilution claims, and the Supreme Court definitively rejected VIP's defenses.  Accordingly, nothing remains to be done on dilution, other than to re-enter judgment for Jack Daniel's.

---

[2] This Court already held that the elements of trademark infringement and dilution are the same under state and federal law.  FoF ¶¶ 25, 66.

As to the elements, this Court previously found that Jack Daniel's proved all three essential elements of its dilution claims. *First*, the Court found that Jack Daniel's trademarks and trade dress were famous before VIP introduced Bad Spaniels. FoF ¶¶ 26-31. *Second*, the Court found the Bad Spaniels trademarks and trade dress were similar to Jack Daniel's trademarks and trade dress. FoF ¶¶ 32-36. *Third*, the Court found that the Bad Spaniels toy was likely to tarnish the reputation of Jack Daniel's trademarks and trade dress by associating them with canine excrement and toys that might appeal to children. FoF ¶¶ 37-62. In so doing, the Court credited the testimony of Jack Daniel's tarnishment expert, Dr. Itamar Simonson, and found that VIP's expert, Bruce Silverman, offered a "flawed" analysis and lacked relevant experience or specialized knowledge. FoF ¶¶ 43-60. None of these findings were disturbed or questioned on appeal, and this Court should reaffirm them.[3]

With respect to defenses, VIP previously argued that it qualifies for the "noncommercial use" exclusion in section 1125(c)(3)(C) and the "fair use" parody exclusion in section 1125(c)(3)(A). But the Supreme Court rejected both defenses. First, the Supreme Court held that (contrary to the Ninth Circuit's view) the noncommercial use exclusion does not include "every parody or humorous commentary." 599 U.S. at 161-62. Second, the Supreme Court confirmed this Court's prior holding that VIP also does not qualify for the fair-use exclusion, ruling that "[t]he District Court had rightly concluded that because VIP used the challenged marks as source identifiers, it could not benefit from the fair-use exclusion for parody." *Id.* at 162. Neither exclusion applies.

There are no remaining issues regarding dilution, and Jack Daniel's requests that the Court reaffirm paragraphs 22-63 of its Findings of Fact and Conclusions of Law, re-enter judgment for Jack Daniel's on the dilution claims; and reissue an injunction.

---

[3] In its prior appeal to the Ninth Circuit, VIP did not challenge this Court's findings respecting fame or similarity. Indeed, in this Court, VIP "[did] not contest similarity" and "conced[ed] that it used Jack Daniel's trademarks and trade dress as a model for its 'Bad Spaniels' dog toy." FoF ¶ 35.

**II.    The Court Should Re-enter Judgment for Jack Daniel's on Infringement.**

Independently, the Supreme Court's holding also confirms that this Court correctly entered judgment in favor of Jack Daniel's on its infringement claims.

The Lanham Act provides causes of action for infringement of both registered and unregistered trademarks and trade dress. *See* 15 U.S.C. §§ 1114(1), 1125(a). To prevail on infringement, a plaintiff must prove "(1) it has a valid, protectable trademark, and (2) the defendant's use of the mark is likely to cause confusion." *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014) (cleaned up).

VIP has no arguments remaining on the first element. As to the second element, this Court already held that Bad Spaniels is likely to cause confusion. FoF ¶ 124. In response to the Ninth Circuit's request for briefing following the Supreme Court's remand, VIP suggested that the Supreme Court's decision should change the outcome of the likelihood-of-confusion analysis. Case No. 21-16969, ECF 38, at 12-16 (9th Cir.) ("VIP Remand Br."). That suggestion is incorrect. The Supreme Court's decision has no impact on the Court's finding of likely confusion or the vast majority of this Court's subsidiary confusion findings—all of which support a finding of confusion and distinguish this case from the Fourth Circuit's decision in *Louis Vuitton*. The Court should re-adopt its infringement-related findings ¶¶ 64-94, 101-124 with an additional similarity finding. And while the Court should revise and clarify its intent-related findings (FoF ¶¶ 95-100) to avoid VIP's misplaced criticism of those findings, that factor too weighs in favor of Jack Daniel's or is, at a minimum, neutral. This Court should reinstate its prior judgment.

**A.    The Supreme Court's Decision Confirms This Court's Prior Likelihood-of-Confusion Finding.**

As this Court already held, the likelihood-of-confusion analysis is guided by the Ninth Circuit's *Sleekcraft* factors:

> (1) the similarity of the marks; (2) the strength of the plaintiff's mark; (3) the proximity or relatedness of the goods or services; (4) the defendant's intent in selecting the mark; (5) evidence of actual confusion; (6) the marketing channels used; (7) the likelihood of expansion into other markets; and (8) the

degree of care likely to be exercised by purchasers of the defendant's product.

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010).  The eight factors provide an "illustrative rather than exhaustive" list.  *Id.*  No one factor is dispositive, and a plaintiff need not establish every factor.  *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir. 2014).

In *Jack Daniel's*, the Supreme Court recognized that "a trademark's expressive message," including a parodic message, "may properly figure in assessing the likelihood of confusion."  599 U.S. at 161.  In any given case, parody "*may* make a difference in the standard trademark analysis," *id.* (emphasis added), but this fact-specific inquiry ultimately turns on the likelihood of confusion.  Parodies by their nature must borrow from the original, but they cannot borrow too much.  As the Court explained, on the one hand, a parody must "conjure up" "enough of [an] original to make the object of its critical wit recognizable."  *Id.* (alteration in original) (citation omitted).  On the other hand, "to succeed, the parody must also create contrasts, so that its message of ridicule or pointed humor comes clear."  *Id.*  "[O]nce that is done (*if* that is done), a parody is not often likely to create confusion."  *Id.*; *see also id.* ("Self-deprecation is one thing; self-mockery far less ordinary.").  As the Second Circuit recently succinctly stated, applying *Jack Daniel's*, "if a parodic use of protected marks and trade dress leaves confusion as to the source of a product, the parody has not 'succeeded' for purposes of the Lanham Act, and the infringement is unlawful."  *Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125, 142 (2d Cir. 2023) (per curiam).

This is that case.  For the many reasons this Court provided in its original findings, VIP's supposed parody created substantial confusion as to the source of VIP's product and thus did not "succeed."  Jack Daniel's highlights those reasons here:

**Similarity of the marks.**  As the Court already found, the similarity of the marks creates a likelihood of confusion.  FoF ¶¶ 101-106.  To be sure, as just discussed, and as this Court acknowledged in its findings (*see* FoF ¶ 102), some similarity is to be expected

1   of purported parodies.  But, as the Supreme Court noted, the parodist must create suffi-

2   cient "contrasts" to make "clear" its "message of ridicule or pointed humor" and thus dis-

3   pel confusion to avoid trademark liability.  599 U.S. at 161.

4        VIP did not create sufficient contrasts.  This Court already found that VIP "appro-

5   priated the Jack Daniel's Trade Dress in every aspect" and that many features of that

6   trade dress—including "the square bottle size and shape, ribbed neck, arched lettering,

7   filigreed border, black-and-white color scheme, fonts, shapes, and styles"—"remain vir-

8   tually unchanged."  FoF ¶ 103.  And the Court remarked in its dilution-related findings

9   that the two products are of "nearly identical size," and that "[w]ith a single glance …

10  one is immediately struck by their similarity."  FoF ¶ 34.

11       Given these overwhelming similarities, the minor differences between the prod-

12  ucts do not dispel confusion.  Even the differences are similar, as this Court found: "'Jack

13  Daniel's' became 'Bad Spaniels,' 'Old No. 7' became 'Old No. 2,' 'Tennessee whiskey'

14  became 'Tennessee carpet.'"  FoF ¶ 103.  And because the toys do not "ridicule" Jack

15  Daniel's or otherwise comment on Jack Daniel's (*see infra* pp.16-18), consumers are

16  likely to believe the toys are a "[s]elf-deprecat[ing]" joke by Jack Daniel's itself.  *Jack*

17  *Daniel's*, 599 U.S. at 161.  Confusion remains likely.  The Court should readopt para-

18  graphs 101-106 of its Findings of Fact and add the following finding: "VIP did not create

19  sufficient 'contrasts' to make clear its supposed 'message of ridicule or pointed humor'

20  and thus confusion remains likely.  *Jack Daniel's*, 599 U.S. at 161."

21       **Strength of the marks.**  As the Court already found, the strength of Jack Daniel's

22  marks and trade dress "strongly favors Jack Daniel's."  FoF ¶¶ 107-110.  VIP will likely

23  claim it needed to choose strong marks to effectuate its supposed parody.  But, as just ex-

24  plained, VIP's purported parody is not the type that reduces consumer confusion.  In this

25  context, courts have recognized that the strength of the mark favors the markholder, not-

26  withstanding the defendants' purported parodies.  *See Vans*, 88 F.4th at 139; *Eli Lilly &*

27  *Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 464 (7th Cir. 2000); *Schieffelin & Co. v. Jack*

28

*Co. of Boca, Inc.*, 850 F. Supp. 232, 242-44 (S.D.N.Y. 1994); *Grey v. Campbell Soup Co.*, 650 F. Supp. 1166, 1172 (C.D. Cal. 1986), *aff'd*, 830 F.2d 197 (9th Cir. 1987).

**Proximity of the goods.**  As the Court already held, the "relatedness" or "proximity" of the goods favors Jack Daniel's.  FoF ¶¶ 111-114.  The relatedness of the goods weighs especially heavily in favor of confusion in cases of purported parody: courts "have not hesitated to prevent a manufacturer from using an alleged parody of a competitor's mark to sell a competing product."  *Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 812 (2d Cir. 1999).  In that context, "parodic use is sharply limited."  *Id.* at 813.

Unlike in many cases involving purported parodies (including the *Louis Vuitton* case discussed below, *see infra* pp.19-21), Jack Daniel's sponsors products related to VIP's through its licensing program.  In addition to whiskey, Jack Daniel's licenses a wide variety of merchandise bearing its trademarks and trade dress, including prepared meats and barbeque sauces, cigarette lighters, belt buckles, cufflinks, charcoal, clothing, and apparel.  FoF ¶ 113.  Jack Daniel's licensed products include dog products such as dog leashes, dog collars, and dog houses.  *See* FoF ¶ 112.  Consumers, accustomed to seeing a wide variety of officially licensed non-beverage products bearing the Jack Daniel's trademarks, reasonably could think that dog toys bearing Jack Daniel's trademarks come from the same source as Jack Daniel's whiskey and other licensed goods.

**Marketing channels.**  As the Court already found, the overlap in marketing channels weighs heavily in favor of likelihood of confusion.  FoF ¶¶ 115-117.  As the Court found, VIP sells the Bad Spaniels toy to the same class of purchasers as Jack Daniel's, and sells its products through the same stores (including Walmart, Amazon.com, and Boozingear.com).  FoF ¶ 116.  Moreover, VIP itself has "promoted an association by featuring Jack Daniel's Tennessee whiskey in its marketing materials for the 'Bad Spaniels' dog toy."  FoF ¶ 116.  These facts are unlike many other purported parodies.

**Degree of consumer care.**  Relatedly, the degree of consumer care favors Jack Daniel's, as this Court found.  FoF ¶¶ 118-121.  "Unlike purchasers of expensive

goods—whom [courts] expect to be more discerning and less easily confused—purchasers of inexpensive goods are likely to exercise less care, thus making confusion more likely." *Pom Wonderful*, 775 F.3d at 1127 (citation omitted).  This Court already found that consumers would not be expected to exercise a high degree of care when purchasing a $15 dog toy.  FoF ¶ 120.

**Actual confusion.**  As the Court found, "the actual confusion factor strongly favors Jack Daniel's."  FoF ¶¶ 72-94.  Jack Daniel's introduced persuasive survey evidence by Dr. Gerald Ford corroborating the likelihood of confusion established by the other factors.  FoF ¶¶ 72-94.  Dr. Ford's consumer survey used the *Ever-Ready* format, widely recognized as the "gold standard" for cases involving strong marks like Jack Daniel's.  *See* 6 J. McCarthy, Trademarks and Unfair Competition § 32:174 (5th ed. 2023); *see also* ECF 230-3, at 13-14 & n.6 (Ford survey report).

Dr. Ford's survey showed that approximately 29% of respondents believed Bad Spaniels was made or put out by, was made or put out with the authorization or approval of, or that whoever made or put out Bad Spaniels had a business affiliation or connection with, Jack Daniel's.  ECF 230-3, at 31.  Those results strongly support a finding of likely confusion.  Survey results "in the range of 25% to 50% have been viewed as solid support for a finding of a likelihood of confusion."  6 McCarthy § 32:188; *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 902-03 (9th Cir. 2002) (27.7%), *superseded by statute on other grounds, as recognized in Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 870 (9th Cir. 2020); *RXD Media, LLC v. IP Application Dev. LLC*, 986 F.3d 361, 373 (4th Cir. 2021) (27%).  And where (as here) other evidence of likely confusion exists, survey results "between 10% and 20%" support a likelihood of confusion. 6 McCarthy § 32:188; *see also, e.g.*, *AWGI, LLC v. Atlas Trucking Co.*, 2020 WL 3546100, at *35 (E.D. Mich. June 30, 2020) (19%), *aff'd*, 998 F.3d 258 (6th Cir. 2021); *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 159 (4th Cir. 2012) (17%).

This Court already credited Dr. Ford's survey methodology and found that the results favor Jack Daniel's.  FoF ¶¶ 79-88.  And this Court further refused to credit VIP's expert, who offered generalized objections to Dr. Ford's survey without performing a survey of his own.  *See* FoF ¶¶ 89-94.

Nothing in the Supreme Court's decision upset this Court's findings.  On remand to the Ninth Circuit, VIP invoked Justice Sotomayor's concurring opinion, which was signed by only one other Justice and is not controlling, suggesting that courts should not give surveys "undue weigh[t]" in the context of parodies.  VIP Remand Br. 15; *see Jack Daniel's*, 599 U.S. at 164 (Sotomayor, J., concurring).  Justice Sotomayor hypothesized that "[s]urvey answers [in the context of parodies] may reflect a mistaken belief among some survey respondents that all parodies require permission from the owner of the parodied mark."  *Jack Daniel's*, 599 U.S. at 164 (Sotomayor, J., concurring).

Justice Sotomayor's noncontrolling concurrence does not call Dr. Ford's survey or results into question.  Confusion about whether Jack Daniel's gave permission to VIP to create the Bad Spaniels toy counts under the Lanham Act.  *See Rosetta Stone*, 676 F.3d at 159 (citation omitted) (crediting survey questions about whether markholder "endorsed" infringing product).  Dr. Ford's question whether respondents believed the toy was put out with "authorization or approval of any other company," ECF 230-3, at 15, appropriately tracks the Lanham Act, which prohibits uses of marks likely to cause confusion regarding "sponsorship[] or approval."  15 U.S.C. § 1125(a)(1)(A); *see* 6 McCarthy § 32:174 ("An Eveready survey format can be combined with additional questions probing whether there is a likelihood of confusion as to sponsorship, affiliation or approval.").  To the extent VIP complains that consumers may have been confused about whether VIP needed a license to produce its purported parody product, "it is consumer perception that creates a likelihood of confusion," so "if a significant number of consumers think that permission is needed, then permission is needed."  4 McCarthy § 24:9.

Even if VIP's argument had merit (it does not), it would not change the outcome. Adjusting Dr. Ford's survey results to eliminate responses referencing the need for intellectual-property permissions (and therefore potentially within the class Justice Sotomayor referenced) still demonstrates more than 25% confusion, which alone constitutes "solid support for a finding of a likelihood of confusion."  6 McCarthy § 32:188 & n.4.[4]

**Intent.**  Finally, the intent factor supports Jack Daniel's or is, at least, neutral.  On remand in the Ninth Circuit, VIP criticized this Court's prior statement that "[a] defendant's claim of parody will be disregarded where the purpose of the similarity is to capitalize on a famous mark's popularity for the defendant's own commercial use."  VIP Remand Br. 14 (quoting FoF ¶ 99).  That criticism is misplaced.  As the Court's citation to *Grey*, 650 F. Supp. at 1175, suggests, the Court apparently meant to convey that VIP's intent was not to comment on Jack Daniel's but instead merely to "enhanc[e] the marketability of [its] product."  *Id.*  To head off any such misplaced criticism in the future, the Court should replace FoF ¶¶ 95-100 with the following revised findings of facts:

- Even considering VIP's claim of parody, the intent factor does not dispel a likelihood of confusion.

- The Court finds that VIP did not intend to parody Jack Daniel's.  In deposition, VIP's owner, Stephen Sacra, testified that he intended to make fun of Jack Daniel's "culture around its product," noting that "most products try to create a culture around that … [a]nd all people who are doing that take it pretty seriously."  ECF 104-2, at 217-18.  But when asked to identify the features of Jack Daniel's upon which VIP was commenting, Sacra responded that Bad Spaniels was "absolutely not" commenting on Jack Daniel's "whiskey," the way the company "market[s] the product," Jack Daniel's "business practices" or "anything else that has to do with [Jack Daniel's] actual business."  *Id.* at 220.  At trial, Sacra changed his testimony and claimed he *was* commenting on Jack

---

[4] Only eight respondents contained such answers (1001, 1020, 1022, 1033, 1046, 1115, 1194, 1200).  ECF 230-3, at 18-29, 31.

Daniel's product.  ECF 243, at 141-43.  He testified that Bad Spaniels was intended to comment that "we shouldn't take ourselves so seriously, especially these companies who are taking themselves so seriously," which was a comment "specific to Jack Daniel's and all the parodies that we do."  *Id.* at 140. The Court finds, based on this vague and shifting testimony, that VIP did not actually intend to parody Jack Daniel's.

- Even if VIP had some parodic intent, it is of the most generic kind.  Sacra did not explain at deposition or trial how his purported "message" applied to Jack Daniel's any more (or any less) than any other brand.  VIP has never suggested that its "parody" comments on anything specific to Jack Daniel's.  As Justice Kagan put it at oral argument in the Supreme Court, under VIP's view of parody, "anytime you go out after or you use the mark of a large company, it's a parody just by definition … Because they must be—they must take themselves too seriously because they're a big company."  Oral Arg. Tr. at 67, Case No. 22-148 (S. Ct.).

- Given the generic nature of VIP's supposed parodic intent, and the absence of "mockery," "message of ridicule," or "pointed humor" directed specifically to Jack Daniel's, *Jack Daniel's*, 599 U.S. at 161, the intent factor does not weigh against confusion.  Generic scatological references do not suffice to create a successful parody.  *See, e.g.*, *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 199-200 (5th Cir. 1998) ("[A] parody of a mark needs to mimic the original mark … but this necessity wanes when the original mark is not the target of the parody."); *Johnson & Johnson v. Pissterine*, *LLC*, 2022 WL 190986, at *11 (T.T.A.B. Jan. 18, 2022).

- In any event, the "intent factor" is "minimally important," and "evidence of the defendant's intent to confuse customers … is not required for a finding of likelihood of confusion."  *Pom Wonderful*, 775 F.3d at 1131 (citation omitted).

17

- At a minimum, this factor is neutral. And it certainly does not outweigh the many other factors indicating a likelihood of confusion.

**B.    Other Case Law Supports This Court's Finding of Likely Confusion.**

Other trademark cases involving supposed parodies, both pre-dating and post-dating the Supreme Court's decision, confirm the correctness of this Court's findings.

1.    Numerous other cases have found that parodies can be likely to confuse. Particularly significant is *Vans,* 88 F.4th 125, in which the Second Circuit recently applied *Jack Daniel's* to conclude that a parody was likely to confuse. In *Vans,* the Second Circuit affirmed a district court's finding at the preliminary injunction stage that the plaintiff was likely to prove that an art collective's parody "Wavy Baby" shoes infringed the skateboard shoes on which the parody was based. *Id.* at 142. The court held that the defendant's mark, which was a "distorted" and "warped" version of the plaintiff's, was confusingly similar because the defendant "mimicked features" of the plaintiff's mark. *Id.* at 139-40. The court further based its conclusion on the unsophisticated nature of the buying public and the relative proximateness of the two products, noting that both products are sold on the same "platforms" and sometimes sell at similar price points. *Id.* at 140, 142. Citing *Jack Daniel's*, the court concluded by observing that, although the "Wavy Baby" shoe was "conceived as a parody," it nonetheless was likely to confuse; thus, "the parody ha[d] not 'succeeded' for purposes of the Lanham Act." *Id.* at 142.

Courts reached the same conclusion on similar facts before the Supreme Court's decision. As the Ninth Circuit explained, "the cry of 'parody!' does not magically fend off otherwise legitimate claims of trademark infringement or dilution," and a parody reduces confusion only when it is "so obvious that a clear distinction is preserved between the source of the target and the source of the parody." *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1405 (9th Cir. 1997) (citation omitted). "There are confusing parodies and non-confusing parodies." *Id.* Thus, for example, the Ninth Circuit found the similarity between and proximity of *The Cat in the Hat* and the parody book *The Cat NOT in the Hat!* favored preliminary injunctive relief. *Id.* at 1404-06.

18

1          The alleged parody here also resembles *Schieffelin*, 850 F. Supp. at 235.  There,

2    the defendant sold popcorn called "Dom Popignon" in faux champagne bottles mimick-

3    ing Dom Pérignon champagne.  *See id.*  The court found infringement, relying in part on

4    the marks' similarities.  The court recognized the label was of a slightly different size and

5    "contain[ed] certain variations in terms of the location of corresponding items," but

6    found that "such differences d[id] not meaningfully detract from what [was] otherwise an

7    extremely high degree of similarity."  *Id.* at 244; *see also, e.g.*, *Harley-Davidson*, 164

8    F.3d at 813 (cited by the Supreme Court in *Jack Daniel's*) (defendant's purportedly pa-

9    rodic use of Harley Davidson's mark infringed where it did not "comment on Harley's

10   mark" but instead used the mark "somewhat humorously to promote his own products

11   and services"); *Grey*, 650 F. Supp. at 1175 (DOGIVA infringed GODIVA).

12         And the only other court to have ruled on a VIP Silly Squeakers rip-off dog toy

13   found the plaintiff likely to prevail on its infringement claim and enjoined VIP.  *See An-*

14   *heuser-Busch, Inc. v. VIP Prods.*, *LLC*, 666 F. Supp. 2d 974, 985-86 (E.D. Mo. 2008).

15         2.        By contrast, this case is unlike *Louis Vuitton Malletier S.A. v. Haute Dig-*

16   *gity Dog, LLC*, 507 F.3d 252 (4th Cir. 2007), which VIP invoked on remand in the Ninth

17   Circuit.  VIP Remand Br. 15.  There, the similarity, proximity, marketing channels, ac-

18   tual confusion, and intent factors all weighed *against* confusion in that case, unlike here.

19         The defendant there sold small plush dog toys that "loosely imitate[d]" designer

20   products, including purses.  507 F.3d at 258.  The Fourth Circuit recognized that, to elim-

21   inate confusion, a parody must "convey two simultaneous—and contradictory—mes-

22   sages: that it is the original, but also that it is *not* the original and is instead a parody."  *Id.*

23   at 260 (citation omitted).  Addressing similarity, the court explained that the defendant

24   successfully conveyed the latter message because, when comparing the small plush dog

25   toy to the luxury purse upon which it was based, "the differences [were] immediate."  *Id.*

26   The dog toy was "plush" and "smaller" in size, and "virtually all of its designs differ[ed]"

27   from the plaintiff's product.  *Id.*  The defendant had copied certain design elements, but

28

1    "stop[ped] well short of appropriating the entire marks that [the plaintiff] claim[ed]." *Id.*

2    at 261.  The Fourth Circuit found that "[t]he differences [were] sufficiently obvious and

3    the parody sufficiently blatant that a consumer encountering [the dog toy] would not mis-

4    take its source or sponsorship on the basis of mark similarity." *Id.* at 262.

5         This case presents the opposite facts on similarity.  Unlike in *Louis Vuitton*, the

6    Bad Spaniels toy is virtually the same size and color as Jack Daniel's trade dress, and its

7    design features virtually identical. *See supra* pp.3, 11-12.  While the differences between

8    the marks in *Louis Vuitton* were "immediate," 507 F.3d at 260, this Court found that

9    "[w]ith one single glance" at the Jack Daniel's and Bad Spaniels marks, "one is immedi-

10   ately struck by their similarity," FoF ¶ 34 (citation omitted).

11        The significant overlap in marketing channels here, including sale from the same

12   stores, further distinguishes *Louis Vuitton*.  The Fourth Circuit found confusion unlikely

13   in part because Louis Vuitton's products were "top-end luxury item[s] to be purchased

14   only in its own stores or in its own boutiques within department stores," unlike the de-

15   fendant's products sold at pet stores.  507 F.3d at 262.  Jack Daniel's licensed products

16   are related to VIP's, and VIP sold its copycat product in the same marketing channels

17   and to the same class of purchasers who buy Jack Daniel's products.  *See supra* p.13.

18        Unlike here, no survey evidence existed in *Louis Vuitton*, so the actual confusion

19   factor favored the alleged infringer.  *See* 507 F.3d at 263.

20        Finally, the absence of any articulable message of ridicule or commentary directed

21   at Jack Daniel's further distinguishes this case from *Louis Vuitton*.  There, the court ob-

22   served that "[t]he satire [was] unmistakable" because the "dog toy irreverently pre-

23   sent[ed] haute couture as an object for casual canine destruction." *Id.* at 261.  The satire

24   was achieved because "[t]he [plaintiff's] handbag [was] provided for the most elegant

25   and well-to-do celebrity, to proudly display to the public and the press, whereas the imi-

26   tation 'Chewy Vuiton' 'handbag' [was] designed to mock the celebrity and be used by a

27   dog." *Id.*  In contrast, VIP's dog toy does not "mock" Jack Daniel's any more than it

28

1   mocks any other brand.  Jack Daniel's whiskey sells for a tiny fraction of the price of the

2   designer purses in *Louis Vuitton*.  And Jack Daniel's routinely sells licensed goods of all

3   kinds, including dog products, at prices similar to the prices of VIP's dog toys.  VIP's

4   dog toys do not strike consumers with satire; as the Court found, they are likely to con-

5   fuse consumers into believing that Jack Daniel's sponsored, approved, or produced the

6   toys.[5]

7                                        *       *       *

8        The Court should re-issue its original judgment for Jack Daniel's on infringement

9   under state and federal law, and issue an injunction in Jack Daniel's favor.

10  **III.   VIP's Facial Constitutional Challenge to the Dilution Statute Is Waived and**

11  **Meritless.**

12       In its supplemental brief on remand before the Ninth Circuit, VIP indicated for the

13  first time in this litigation that it intends to raise a facial constitutional challenge to the di-

14  lution statute.  VIP Remand Br. 19.  In particular, VIP now contends that the statute's

15  prohibition on dilution by tarnishment violates the First Amendment by discriminating on

16  the basis of viewpoint.  *Id.*  This new challenge pertains only to the dilution statute and is

17  entirely distinct from VIP's argument (which the Supreme Court rejected) that it should

18  receive heightened First Amendment protection from infringement liability.

19       This Court need not and should not consider VIP's new challenge.  VIP waived or,

20  at a minimum, forfeited[6] that challenge multiple times over by failing to raise it at *any*

21  prior point during this nearly decade-long litigation.  Under basic waiver principles, VIP

22  _____

23  [5] For many of the same reasons, this case also is unlike another dog product case cited
    by the Supreme Court, *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F.

24  Supp. 2d 410 (S.D.N.Y. 2002).  There, the product markets did not overlap, as the alleg-
    edly infringing product, a pet perfume, was a "novelty item … for which there is no

25  market independent of the parody."  *Id.* at 418.  And there was no survey evidence ei-
    ther.  In contrast, Bad Spaniels is a real dog toy sold in pet stores for use by real dogs.

26  [6] Technically, waiver is the intentional relinquishment of a known right, whereas forfei-
    ture is the failure to timely assert a right.  *United States v. Olano*, 507 U.S. 725, 733

27  (1993).  Courts, however, often use these terms interchangeably, and Jack Daniel's will

28  employ the term waiver to refer to both waiver and forfeiture.

                                        21

1   may not use this remand as a do-over to assert a challenge that it could have raised long

2   ago.  Further, even if the Court were to consider VIP's late-breaking challenge, the chal-

3   lenge lacks merit.  As discussed below, the dilution statute does not discriminate based

4   on viewpoint and leaves open ample alternative avenues for free expression.

   **A.      VIP Waived Its Facial Constitutional Challenge to the Dilution Statute.**

5

6        1.      It is well established that "an issue or factual argument waived at the trial

7   level before a particular order is appealed, or subsequently waived on appeal, cannot be

8   revived on remand."  *Magnesystems, Inc. v. Nikken, Inc.*, 933 F. Supp. 944, 949-50 (C.D.

9   Cal. 1996).  This rule reflects that the purpose of a remand is to resolve only those out-

10  standing issues that were properly preserved.  *See Christian Legal Soc. Chapter of Univ.*

11  *of Cal. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) (declining to consider unpreserved issue

12  on remand).  A remand does not give the party that lost on appeal "another bite at the ap-

13  ple" to raise issues it could have raised earlier in the case.  *Sec. Inv. Prot. Corp. v. Vig-*

14  *man*, 74 F.3d 932, 938 (9th Cir. 1996).

15       Thus, where a party waives an issue at the trial level or on appeal, courts in this

16  circuit routinely decline to consider the issue for the first time on remand.  *See, e.g.*,

17  *Raich v. Gonzales*, 500 F.3d 850, 868-69 (9th Cir. 2007) (declining to address issue

18  raised for first time in Ninth Circuit on remand from the Supreme Court); *M2 Software*

19  *Inc. v. Viacom Inc.*, 223 F. App'x 653, 656 (9th Cir. 2007) (affirming district court's de-

20  cision not to consider issue on remand that was raised in the district court but subse-

21  quently waived in prior appeal); *Vigman*, 74 F.3d at 937-38 (affirming district court's de-

22  cision not to consider issue raised for first time on remand from Supreme Court and

23  Ninth Circuit); *Apple Inc. v. Samsung Elecs. Co.*, 2017 WL 3232424, at *13-15 (N.D.

24  Cal. July 28, 2017) (declining to address issue raised for first time on remand from Su-

25  preme Court and Federal Circuit); *Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp.

26  3d 765, 776-77 (N.D. Cal. 2017), *aff'd*, 749 F. App'x 557 (9th Cir. 2019).

27       Here, VIP waived any challenge to the dilution statute by failing to raise it during

28  any prior phase of this case and thus may not assert such a challenge on remand.

                                           22

*First,* VIP waived its challenge by failing to raise it in this Court during the trial-level proceedings from 2014 to 2018.  "A party waives an argument by failing to make it before the district court."  *Zixiang Li v. Kerry*, 710 F.3d 995, 1000 n.4 (9th Cir. 2013) (cleaned up).  VIP admits its challenge "was not presented to the district court before the 2018 judgment."  VIP Remand Br. 20.  For this reason alone, the challenge is waived.

*Second*, VIP further waived its challenge by failing to raise it during the first appeal to the Ninth Circuit in 2018.  A party waives an argument on appeal if it fails to raise the argument in its opening brief.  *Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 998 (9th Cir. 2012).  In the Ninth Circuit, VIP failed to raise a challenge to the dilution statute in its opening brief (or, for that matter, its reply).  VIP thus waived any constitutional challenge "twice over."  *See CFPB v. CashCall, Inc.*, 35 F.4th 734, 743 (9th Cir. 2022).

*Third*, VIP's waiver is further confirmed by its failure to mention any constitutional challenge to the dilution statute in later phases of the case.  For example, VIP did not reference any such challenge in its briefs in opposition to certiorari in the Supreme Court in 2020 and 2022.  Nor did VIP assert such a challenge in its merits brief before the Supreme Court in 2023.  Instead, VIP merely urged the Supreme Court to adopt its preferred construction of the dilution statute to "*avoid*" any constitutional issue.  VIP Br. 12, 599 U.S. 140 (2023) (No. 22-148) (emphasis added).

Not until the Supreme Court rejected VIP's other dilution arguments, vacated the judgment, and remanded the case did VIP belatedly (and desperately) challenge the constitutionality of the dilution statute.  *See* VIP Remand Br. 9.  It is far too late for VIP to inject such a challenge into this case.  VIP may not use this remand as "another bite at the apple" to assert a challenge it could have raised years ago.  *See Vigman*, 74 F.3d at 938.

2.     Although VIP may seek to excuse its waiver, its arguments are meritless. VIP first argued that *Matal v. Tam*, 582 U.S. 218 (2017) and *Iancu v. Brunetti*, 139 S. Ct. 2294 (2019), changed the "legal landscape" by making viewpoint-discrimination challenges to the Lanham Act "viable."  VIP Remand Br. 22-23.  But that argument rests on a

23

faulty premise, as neither *Tam* nor *Brunetti* purported to change the law.  To the contrary, in *Tam*, the plurality relied on a "bedrock First Amendment principle: Speech may not be banned on the ground that it expresses ideas that offend."  582 U.S. at 223.  The *Tam* concurrence invoked the same "fundamental principle."  *Id.* at 248 (Kennedy, J., concurring).  And in *Brunetti*, the Court recognized that all eight justices in *Tam* "found common ground in [this] core postulate of free speech law."  139 S. Ct. at 2299.  In *Brunetti* itself, the Court simply followed *Tam* by applying that "core postulate" to another Lanham Act provision.  *Id.* at 2299-2300.  Thus, far from altering the law, *Tam* and *Brunetti* rested on longstanding First Amendment doctrine.  *See, e.g.*, *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829-30 (1995); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 391 (1992).  VIP could have invoked that well-established doctrine before the decisions in *Tam* and *Brunetti*, just as the parties in those very cases did.

Moreover, even if *Tam* and *Brunetti* changed the law (they did not), VIP's argument fails in light of the timeline.  The Supreme Court issued *Tam* in June 2017—months *before* the trial in this case began in October 2017.  *See* ECF 213.  If VIP believed that *Tam* altered the legal landscape, it had ample time to raise a viewpoint-discrimination challenge before this Court entered final judgment in May 2018.[7]  Yet VIP did not raise any such challenge in this Court or in its subsequent appeal to the Ninth Circuit.

Further, it makes no difference that "*Brunetti* was not handed down until after the completion of briefing before [the Ninth Circuit] in the first appeal."  VIP Remand Br. 23.  As noted, *Brunetti* simply followed in *Tam*'s footsteps by applying a well-established First Amendment principle.  *Brunetti* did not change the legal landscape.  And

---

[7] In an effort to blame this Court for its waiver, VIP contends that "on the first day of trial, the district court indicated that it did not wish to hear any further First Amendment arguments because 'I … made a ruling a year and a half ago where I put that to rest.'"  *See* VIP Remand Br. 23 (quoting ECF 234, at 6-8).  But this Court was referring to its ruling that VIP's toy did not merit heightened First Amendment protection from *infringement*.  In no way did the Court foreclose VIP from raising arguments regarding *dilution*.

1    even if *Brunetti* had done so, VIP could have cited the case in a Rule 28(j) letter or in its

2    brief opposing rehearing before the Ninth Circuit.  Again, VIP failed to do so.

3        VIP also contends that its waiver should be excused because its challenge presents

4    a "pure question of law" and Jack Daniel's will suffer no "prejudice."  VIP Remand Br.

5    21.  VIP's delay in asserting this new argument will prejudice Jack Daniel's, because res-

6    olution of this argument on the merits could further delay issuance of the injunction to

7    which Jack Daniel's is entitled.  Further, even when a question is purely legal, a court

8    "must still decide whether the particular circumstances of the case overcome [the] pre-

9    sumption against hearing new arguments."  *Raich*, 500 F.3d at 868 (cleaned up).

10       Even more than in *Raich*, these circumstances weigh overwhelmingly against con-

11   sidering VIP's eleventh-hour challenge.  This case has been pending for a nearly a dec-

12   ade.  It has proceeded through a bench trial, a first appeal to the Ninth Circuit, a first re-

13   mand to this Court, a second appeal to the Ninth Circuit, and an appeal to the Supreme

14   Court.  VIP never once raised a constitutional challenge to the dilution statute.  Now, af-

15   ter having lost in the Supreme Court, VIP seeks to assert a new constitutional challenge

16   in a last-ditch effort to avoid liability.  Enough is enough.  VIP has not come close to

17   overcoming the "presumption against hearing new arguments."  *Id.* (citation omitted).

18       Finally, allowing VIP to raise a new constitutional challenge would create other

19   complications.  A party challenging a federal statute's constitutionality must give notice

20   to the Attorney General, and the court must certify to the Attorney General that the stat-

21   ute has been questioned.  *See* Fed. R. Civ. P. 5.1(a), (b); 28 U.S.C. § 2403.  The Attorney

22   General then has sixty days to intervene (unless the court rejects the challenge before that

23   time intervene expires).  Fed. R. Civ. P. 5.1(c).  Allowing VIP to assert its challenge thus

24   has the potential to further delay these proceedings and increase the number of litigants.

25   **B.    VIP's Facial Constitutional Challenge Fails.**

26       Even if VIP had preserved its facial challenge, that challenge still would fail.

27   Contrary to VIP's arguments, the dilution statute is not viewpoint discriminatory, and the

28   statute leaves open more than adequate alternative avenues for free expression.

1       1.     Congress enacted the dilution statute to protect the economic value or "sell-

2 ing power" of famous marks. *See Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418,

3 428-29 & n.9 (2003). To that end, the statute creates a cause of action for the "owner of

4 a famous mark" against a person who uses a mark or trade name that is "likely to cause

5 dilution by blurring or dilution by tarnishment of the famous mark." 15 U.S.C.

6 § 1125(c)(1). As relevant here, the statute defines "dilution by tarnishment" as an "asso-

7 ciation arising from the similarity between a mark or trade name and a famous mark that

8 harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C).

9        The statute thus prohibits using a mark in a way that conjures up an "association"

10 that clashes with the associations generated by the famous mark. *See id.* Such incompat-

11 ible associations include associating beer with insecticide, *Chem. Corp. of Am. v. An-*

12 *heuser-Busch, Inc.*, 306 F.2d 433, 437-38 (5th Cir. 1962), soft drinks with illicit drugs,

13 *Coca-Cola Co. v. Gemini Rising, Inc.*, 346 F. Supp. 1183, 1190-92 (E.D.N.Y. 1972),

14 children's toys with garbage, *Original Appalachian Artworks, Inc. v. Topps Chewing*

15 *Gum, Inc.*, 642 F. Supp. 1031, 1039-40 (N.D. Ga. 1986), cheerleaders with pornography,

16 *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 202 (2d Cir.

17 1979), or (as here) whiskey with poop-themed toys. In all these cases, "the dilution in-

18 jury stems from an unauthorized effort to market *incompatible* products or services by

19 trading on another's trademark." *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26,

20 31 (1st Cir. 1987) (emphasis added).

21        The statute targets incompatible associations without regard to the viewpoints of

22 either the famous mark owner or the diluter. A poop-themed dog toy praising Jack Dan-

23 iel's would be just as diluting as a poop-themed dog toy bashing Jack Daniel's, as any

24 viewpoint would create incompatible associations between whiskey, poop, and toys that

25 appeal to children. Similarly, a sex toy appropriating the famous mark of a children's toy

26 would tarnish, regardless of whether the diluter conveys a positive or negative opinion

27 about the children's toy or sex. What matters is that the diluter's use of the mark creates

28

an association between incompatible products; the statute is indifferent to the diluter's opinion, message, or beliefs and therefore does not discriminate based on viewpoint.

Contrary to VIP's contention, the dilution statute is readily distinguishable from the provisions at issue in *Tam* and *Brunetti*. *See* VIP Remand Br. 20. Those provisions were unconstitutional because they barred registration of trademarks expressing viewpoints that were "disparag[ing]," "immoral," or "scandalous." *See* 15 U.S.C. § 1052(a). The dilution statute, in contrast, protects all famous trademarks (regardless of the owner's viewpoint) against uses that create incompatible associations (regardless of the diluter's viewpoint). Far from being a one-sided "happy-talk clause," *Tam*, 582 U.S. at 246, the dilution statute evenhandedly prohibits incompatible uses of trademarks. Because "the dilution injury stems from an unauthorized effort to market incompatible products or services by trading on another's trademark," the "Constitution is not offended" by dilution statutes, even though "redressing such harm entail[s] some residual impact on the rights of expression of commercial actors." *L.L. Bean*, 811 F.2d at 31.

2. Further, when an entire class of speech is proscribable, the government may discriminate within that class if the basis for discrimination "consists entirely of the very reason the entire class of speech at issue is proscribable." *R.A.V.*, 505 U.S. at 388. For example, because the entire class of obscenity is proscribable, a state may prohibit only the most prurient obscenity within that class. *Id.* In such cases, "no significant danger of idea or viewpoint discrimination exists." *Id.*

That principle applies here because Congress could have broadly prohibited any trademark use (i.e., use as a designation of source) of a famous mark. For example, in *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522 (1987) ("*SFAA*"), the Supreme Court upheld a statute that granted the U.S. Olympic Committee ("USOC") a limited property right in the word "Olympic" and prohibited others from making commercial or promotional use of that mark, irrespective of any likelihood of confusion. *Id.* at 530. The Court reasoned that the statute did not prohibit others from

27

1    conveying their messages, but merely restricted "the manner" in which they could do so.

2    *Id.* at 536.  The Court further reasoned that, "as with other trademarks," Congress could

3    "grant the USOC exclusive control of the word 'Olympic'" in order "to ensure that the

4    USOC receives the benefit of its own efforts" investing in the mark.  *Id.* at 537.  Con-

5    gress also "could determine that unauthorized uses, even if not confusing, nevertheless

6    may harm the USOC by lessening the distinctiveness and thus the commercial value of

7    the marks"—in other words, by diluting the marks.  *Id.* at 539.

8        *SFAA* thus establishes that Congress may categorically prohibit others from mak-

9    ing trademark use of a famous mark in order to protect the owner's investment in the

10   mark.  Given that Congress could proscribe that entire class of uses, nothing prevents

11   Congress from more narrowly prohibiting the subclass of uses particularly likely to harm

12   the value of a famous mark—those uses that create a likelihood of dilution by blurring or

13   (as here) tarnishment.  The reason for drawing that distinction "consists entirely of the

14   very reason" that the "entire class" of trademark uses is "proscribable."  *R.A.V.*, 505 U.S.

15   at 388.  Accordingly, there is "no significant danger" of viewpoint discrimination.  *Id.*

16       3.    Even if there were such a danger, it is a basic principle of constitutional law

17   that property rights do not "yield to the exercise of First Amendment rights" where "ade-

18   quate alternative avenues of communication exist."  *Lloyd Corp. v. Tanner*, 407 U.S.

19   551, 567 (1972).  That principle applies with full force to intellectual property rights.

20   *See, e.g.*, *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003) (reasoning that copyright law con-

21   tains "built-in First Amendment accommodations").  Trademark protection, like other in-

22   tellectual property rights, has "ancient origins."  *Tam*, 582 U.S. at 224.  Like other intel-

23   lectual property rights, trademarks by definition restrict speech.  But since the Founding,

24   trademarks have never been thought to infringe the First Amendment.

25       Moreover, VIP's argument ignores the countervailing First Amendment rights of

26   trademark owners.  Trademarks themselves "are often expressive, in any number of

27

28

1  ways." *Jack Daniel's*, 599 U.S. at 158.  Intellectual property rights are subject to re-

2  duced First Amendment scrutiny because they create "economic incentive to create and

3  disseminate ideas" and thus advance countervailing First Amendment interests.  *Harper*

4  *& Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 558 (1985); *accord Zacchini v.*

5  *Scripps-Howard Broad. Co.*, 433 U.S. 562, 576 (1977) (right to publicity).  As the Sev-

6  enth Circuit put it, trademark law "promote[s] the aims of the first amendment by ena-

7  bling producers … to differentiate themselves." *TE-TA-MA Truth Found.—Fam. of URI,*

8  *Inc. v. World Church of the Creator*, 297 F.3d 662, 667 (7th Cir. 2002).  The dilution

9  statute in particular protects against dilution of mark owners' own free expression.

10      Here, the dilution statute grants famous mark owners a limited property right in

11  their marks, while still leaving open adequate alternative channels of communication.

12  Like the statute in *SFAA*, the dilution statute does not prohibit others from conveying any

13  message.  Instead, it merely restricts the manner in which they may do so by prohibiting

14  using "a mark or trade name" that is "likely to cause dilution by blurring or dilution by

15  tarnishment of the famous mark." 15 U.S.C. § 1125(c)(1).  Nothing in the statute pre-

16  vents VIP from making dog-poop jokes or selling poop-themed toys; it just cannot make

17  unauthorized use of Jack Daniel's marks as its own marks and dilute Jack Daniel's brand.

18      Further, the dilution statute contains a number of exclusions protecting First

19  Amendment values.  For instance, the statute excludes from liability "[a]ny noncommer-

20  cial use of a mark" and "[a]ll forms of news reporting and news commentary." 15 U.S.C.

21  § 1125(c)(3)(B), (C).  The statute also excludes "[a]ny fair use," including "parodying,

22  criticizing, or commenting" on a famous mark, as long as a person does not use the fa-

23  mous mark "as a designation of source for the person's own goods or services." *Id.*

24  § 1125(c)(3)(A).  Thus, the statute does not prevent VIP from parodying, criticizing, or

25  commenting on Jack Daniel's; VIP simply cannot use Jack Daniel's marks as the desig-

26  nation of source for its own products.  These express exclusions (which were not present

27  in the statute upheld in *SFAA*) underscore that the dilution statute is constitutional.

28

**IV.     Jack Daniel's Is Entitled to Injunctive Relief.**

Under the Lanham Act, a party that proves infringement or dilution is entitled to an injunction "subject to the principles of equity."  15 U.S.C. §§ 1125(c)(1), 1116(a). According to the principles of equity, a claimant must demonstrate that (1) it has suffered an irreparable injury; (2) remedies available at law are inadequate to compensate for that injury; (3) the balance of hardships tips in its favor; and (4) the public interest would not be disserved by a permanent injunction.  *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  A party seeking relief under the Lanham Act is "entitled to a rebuttable presumption of irreparable harm" upon a finding of a violation.  15 U.S.C. § 1116(a). "Injunctive relief is the preferred remedy in trademark infringement … cases because there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."  *DocRx, Inc. v. DocRx Dispense, Inc.*, 2015 WL 1778360, at *4 (D. Ariz. Apr. 20, 2015) (citation omitted); *accord* 5 McCarthy § 30:1.

Jack Daniel's is entitled to a permanent injunction.  This Court already weighed the preliminary injunction factors and found that an injunction would prevent significant hardships on Jack Daniel's imposed by VIP's ongoing infringing and diluting conduct, while imposing no legitimate hardship on VIP.  ECF 245, at 23; *see Estee Lauder Cosms., Inc. v. Get Your Mac On, LLC*, 2015 WL 274133, at *5 (D. Ariz. Jan. 22, 2015); 5 McCarthy § 30:2 & n.4 (collecting cases).  The equities are the same now as they were when this Court balanced them the first time.  If anything, VIP's continued production and sale of Bad Spaniels during the pendency of this litigation only demonstrates that Jack Daniel's will continue to incur further harm absent injunctive relief.

## CONCLUSION

For these reasons, Jack Daniel's requests that the Court re-issue Findings of Fact and Conclusions of Law 1-94, 101-127, enter the additional findings above at pp.12, 16-18, and re-enter judgment in Jack Daniel's favor on its infringement and dilution claims. Jack Daniel's will propose an injunction following a favorable ruling from this Court.

Dated:      February 16, 2024              Respectfully submitted,

_/s / Lisa S. Blatt_____

MESSNER REEVES LLC                          WILLIAMS & CONNOLLY LLP
Isaac S. Crum (AZ Bar #028756)              Lisa S. Blatt (*pro hac vice*)
1440 E. Missouri Avenue, Suite C100         Amy Mason Saharia (*pro hac vice*)
Phoenix, Arizona 85014                      Matthew B. Nicholson (*pro hac vice*
(602) 641-6705                              *forthcoming*)
icrum@messner.com                           680 Maine Avenue, SW
                                            Washington, DC 20024
                                            (202) 434-5000
                                            lblatt@wc.com
                                            asaharia@wc.com
                                            mnicholson@wc.com

*Attorneys for Defendant and Counter-Plaintiff*
*Jack Daniel's Properties, Inc.*

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on February 16, 2024, the foregoing document was transmit-

3 ted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice

4 of Electronic Filing to all CM/ECF registrants.

5

6                                                  */s/ Lisa S. Blatt*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28