Ross Slaughter (NC Bar No. 58086)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 616-8185
Email: ross.m.slaughter@usdoj.gov

*Counsel for the United States*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| VIP Products LLC, an Arizona limited liability company, | No. 2:14-cv-02057-SMM |
| Plaintiff, | **United States of America's Memorandum in Support of the Constitutionality of Lanham Act's Cause of Action for Dilution by Tarnishment** |
| v. | |
| Jack Daniel's Properties, Inc., a Delaware corporation, | |
| Defendant. | |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................2

I.    Legal Background ....................................................................................2

II.   Proceedings in this Case ..........................................................................4

ARGUMENT ......................................................................................................5

I.    The Court should first address the parties' non-constitutional arguments. .....5

II.   The tarnishment provision is viewpoint neutral. ............................................6

III.  The tarnishment provision satisfies intermediate scrutiny. ............................9

      A.   The government has a substantial interest in protecting the
           value of famous marks. ...........................................................11

      B.   The tarnishment provision directly advances the
           government's interest. ............................................................12

      C.   Any incidental restrictions on speech are not greater than
           necessary. ...........................................................................13

IV.   VIP has not shown the tarnishment provision is facially unconstitutional....14

CONCLUSION...................................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Am. Fam. Life Ins. Co. v. Hagan*,
266 F. Supp. 2d 682 (N.D. Ohio 2002)....................................................................13

*Bd. of Trs. of State Univ. of N.Y. v. Fox*,
492 U.S. 469 (1989)...............................................................................................14

*Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*,
447 U.S. 557 (1980).........................................................................................10, 11

*Chem. Corp. of Am. v. Anheuser-Busch, Inc.*,
306 F.2d 433 (5th Cir. 1962) ...................................................................................7

*First Resort, Inc. v. Herrera*,
860 F.3d 1263 (9th Cir. 2017) ...............................................................................14

*Fla. Bar v. Went For It, Inc.*,
515 U.S. 618 (1995)...............................................................................................13

*Foti v. City of Menlo Park*,
146 F.3d 629 (9th Cir. 1998) .................................................................................14

*Gulf Oil Co. v. Bernard*,
452 U.S. 89 (1981)...................................................................................................5

*Hanover Star Milling Co. v. Metcalf*,
240 U.S. 403 (1916).................................................................................................9

*Headley v. Church of Scientology Int'l*,
687 F.3d 1173 (9th Cir. 2012) .................................................................................5

*Hormel Foods Corp. v. Jim Henson Prods., Inc.*,
73 F.3d 497 (2d Cir. 1996).......................................................................................7

*Iancu v. Brunetti*,
588 U.S. 388 (2019)...............................................................................................6, 7

*In re Trade-Mark Cases*,
100 U.S. 82 (1879).................................................................................................12

*Int'l News Serv. v. Associated Press*,
248 U.S. 215 (1918)...............................................................................................11

*Jack Daniel's Properties, Inc. v. VIP Prods. LLC*,
599 U.S. 140 (2023) ............................................................................................ *passim*

*L.L. Bean, Inc. v. Drake Publishers, Inc.*,
811 F.2d 26 (1st Cir. 1987) .................................................................................. *passim*

*Matal v. Tam*,
582 U.S. 218 (2017) ......................................................................................... 2, 5, 7, 9

*Mattel, Inc. v. MCA Records, Inc.*,
296 F.3d 894 (9th Cir. 2002) .......................................................................................... 3

*Moseley v. V Secret Catalogue, Inc.*,
537 U.S. 418 (2003) ................................................................................. 2, 3, 10, 13

*Retail Digit Network, LLC v. Prieto*,
861 F.3d 839 (9th Cir. 2017) ......................................................................................... 11

*Radiance Found., Inc. v. N.A.A.C.P.*,
786 F.3d 316 (4th Cir. 2015) ................................................................................... 3, 13

*Rogers v. Grimaldi*,
875 F.2d 994 (2d Cir. 1989) .......................................................................................... 4

*San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*,
483 U.S. 522 (1987) ............................................................................................ *passim*

*Singh v. Mukasey*,
533 F.3d 1103 (9th Cir. 2008) ....................................................................................... 5

*Spector Motor Serv., Inc. v. McLaughlin*,
323 U.S. 101 (1944) ....................................................................................................... 5

*Sporting Times, LLC v. Orion Pictures, Corp.*,
291 F. Supp. 3d 817 (W.D. Ky. 2017) ........................................................................ 3

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
588 F.3d 97 (2d Cir. 2009) ................................................................................... 7, 9, 12

*Steinway & Sons v. Robert Demars & Friends*,
No. 80-04404, 1981 WL 40530 (C.D. Cal. Jan. 28, 1981) ......................................... 8

*Tiffany & Co. v. Boston Club, Inc.*,
231 F. Supp. 836 (D. Mass. 1964) ........................................................................ 8, 15

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021) ................................................................................................13

*United States v. Hansen,*
599 U.S. 762 (2023) ................................................................................................15

*United States v. Olano,*
507 U.S. 725 (1993) ..................................................................................................5

*United States v. Raines,*
362 U.S. 17 (1960) ..................................................................................................15

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,*
455 U.S. 489 (1982) ................................................................................................14

*VIP Prods., LLC v. Jack Daniel's Properties, Inc.,*
291 F. Supp. 3d 891 (D. Ariz. 2018) ........................................................................4

*Ward v. Rock Against Racism,*
491 U.S. 781 (1989) ................................................................................................14

*Washington State Grange v. Washington State Republican Party,*
552 U.S. 442 (2008) ..........................................................................................14, 15

**Statutes**

15 U.S.C. § 1125(c) ........................................................................................ *passim*

Pub. L. No. 95-606 ..................................................................................................10

Pub. L. No. 104-98 ....................................................................................................2

Pub. L. No. 109-312 ..................................................................................................2

**Other Authorities**

*Restatement (Third) of Unfair Competitio*n § 25 cmt. c. (2024) ...............................7

**INTRODUCTION**

The Lanham Act, as amended by the Federal Trademark Dilution Act of 1995 and the Trademark Dilution Revision Act of 2006, "creates a cause of action for the dilution of famous marks." *Jack Daniel's Properties, Inc. v. VIP Prods. LLC*, 599 U.S. 140, 147 (2023). It permits the owners of famous, distinctive marks to obtain injunctive relief against those who use a mark or tradename in commerce in a manner likely to dilute the famous mark, either by impairing its distinctiveness (dilution by blurring) or by harming its reputation (dilution by tarnishment). *See* 15 U.S.C. § 1125(c)(1), (c)(2)(B)–(C).

In this long-running trademark dispute, VIP Products LLC ("VIP") now argues that the Act's cause of action for dilution by tarnishment is facially unconstitutional viewpoint discrimination. As a threshold matter, the Court should not consider VIP's constitutional challenge unless and until it has exhausted all non-constitutional grounds for decision. Thus, the Court should first address (1) whether VIP waived or forfeited its First Amendment argument by failing to raise it earlier and (2) whether Jack Daniel's Properties, Inc. ("Jack Daniel's") failed to prove the elements of dilution by tarnishment.

If the Court does reach the constitutional issue, it should first hold that the tarnishment cause of action is viewpoint neutral. The focus of tarnishment liability is not on the expressive content of the challenged use, but on the harmful effect dissonant associations may have on the value of the famous mark. The Court should further hold that the Lanham Act's cause of action for dilution by tarnishment is subject to—and satisfies—intermediate scrutiny. The government has a substantial interest in protecting the value of famous marks, the dilution statute directly furthers that interest, and the statute's likelihood-of-harm requirement and robust exclusions ensure that the statute's restrictions on speech are not greater than necessary to further that interest.

Finally, even if an unconstitutional application of the tarnishment statute is hypothetically possible, VIP has not shown that the statute is facially unconstitutional.

**BACKGROUND**

**I.    Legal Background**

Congress and the Supreme Court have long recognized that the "protection of trademarks is desirable . . . because trademarks foster competition and the maintenance of quality by securing to the producer the benefits of good reputation." *Matal v. Tam*, 582 U.S. 218, 225 (2017) (quoting *San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*, 483 U.S. 522, 531 (1987)).

To further these goals, Congress amended the Lanham Act in 1995 to create a cause of action for trademark dilution. *See Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 428–30 (2003). The new provision authorized injunctive relief against commercial uses of marks or tradenames that "cause[d] dilution of the distinctive quality of the [famous] mark." Federal Trademark Dilution Act of 1995, Pub. L. No. 104-98, § 3(a), 109 Stat. 985, 985 (1996) (codified as amended at 15 U.S.C. § 1125(c)). The purpose of the statute was to "protect famous trademarks from subsequent uses that blur the distinctiveness of the mark or tarnish or disparage it, even in the absence of a likelihood of confusion." *Moseley*, 537 U.S. at 431 (citing H. R. Rep. No. 104–374 at 2 (1995)).

The Supreme Court first considered the Lanham Act's dilution provision in *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003). In that case, the Court held that the federal dilution statute, unlike its state analogues, "require[d] a showing of actual dilution, rather than a likelihood of dilution," and questioned whether the text of the federal dilution statute actually prohibited dilution by tarnishment. *Moseley*, 537 U.S. at 432–33.

Congress responded to *Moseley* by amending the Lanham Act again. *See* Trademark Dilution Revision Act of 2006 ("TDRA"), Pub. L. No. 109-312, 120 Stat. 1730. Among other changes, the TDRA amendments permitted liability based on a showing of "likely" dilution—thus abrogating *Moseley*—and expressly authorized injunctive relief for "dilution by tarnishment." *Id.* § 2(1), 120 Stat. 1730 (codified at

15 U.S.C. § 1125(c)).  The TDRA defined "dilution by tarnishment" as "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." *Id.* (codified at 15 U.S.C. § 1125(c)(2)(C)).

The federal dilution statute contains three "exclusions" "designed to avoid" First Amendment issues that might arise from a more sweeping application of the statute.  *See Moseley*, 537 U.S. at 431.  The first excludes "[a]ny fair use . . . of a famous mark by another person other than as a designation of source for the person's own goods or services."[1]  15 U.S.C. § 1125(c)(3)(A).  The second excludes "[a]ll forms of news reporting and news commentary."  *Id.* § 1125(c)(3)(B).  The third excludes "[a]ny noncommercial use of a mark."  *Id.* § 1125(c)(3)(C).

Lower courts have long interpreted these exclusions broadly.  *See e.g.*, *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 331 (4th Cir. 2015) (explaining that the term "noncommercial" incorporates "the First Amendment commercial speech doctrine"); *Sporting Times, LLC v. Orion Pictures, Corp.*, 291 F. Supp. 3d 817, 827 (W.D. Ky. 2017) (concluding that the dilution statute "only applies to 'purely commercial' speech") (citing *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002)).  While the Supreme Court's decision in this case makes clear that these exclusions do not protect "parody or other commentary when its use of a mark is similarly source-identifying," the Court left lower courts' broad reading of these exclusions otherwise undisturbed.  *Jack Daniel's*, 599 U.S. at 162–63.

---

[1]  The full text of the first exclusion reads as follows:

Any fair use, including a nominative or descriptive fair use, or facilitation of such fair use, of a famous mark by another person other than as a designation of source for the person's own goods or services, including use in connection with--

(i) advertising or promotion that permits consumers to compare goods or services; or

(ii) identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner.

15 U.S.C. § 1125(c)(3)(A).

1    **II.    Proceedings in this Case**

2        Jack Daniel's contends that VIP's "Bad Spaniels" dog toy infringes on and

3    dilutes its trademarks. *See id.* at 144.  In 2018, this Court agreed with Jack Daniel's,

4    finding that Bad Spaniels both infringed on and tarnished Jack Daniel's trademarks.

5    *See VIP Prods., LLC v. Jack Daniel's Properties, Inc.*, 291 F. Supp. 3d 891, 911 (D.

6    Ariz. 2018) (subsequent history omitted).  After two appeals to the Ninth Circuit, the

7    Supreme Court granted certiorari to determine (1) whether Jack Daniel's was required

8    to satisfy the test announced in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), before

9    it could proceed on its infringement claim, and (2) whether VIP's challenged uses fell

10   within the dilution statute's exclusion for noncommercial uses. *See Jack Daniel's*, 599

11   U.S. at 152–53, 161–62.  The Supreme Court answered both questions in the negative,

12   vacated the Ninth Circuit's judgment, and remanded for further proceedings. *See id.*

13   At 163.  The Ninth Circuit, in turn, remanded the case to this Court.  *See* Ord., ECF

14   No. 326-1.

15       On February 16, 2024, the parties each filed motions for judgment in their favor.

16   *See* Jack Daniel's Properties, Inc. Mot. to Reinstate Prior J., ECF No. 338 ("Jack

17   Daniel's Mot."); Opening Br. of VIP Products LLC, ECF No. 339 ("VIP Opening

18   Br.").  With respect to Jack Daniel's dilution claim, VIP argued that Jack Daniel's had

19   failed to prove tarnishment, and that, in any event, the Lanham Act's prohibition on

20   dilution by tarnishment is facially unconstitutional. *See* VIP Opening Br. at 20–30.

21       Following the Parties' opening briefs, VIP filed a notice of constitutional

22   question under Federal Rule of Civil Procedure 5.1. *See* Rule 5.1 Notice of Const.

23   Question, ECF No. 340.  On April 10, 2024, the Court certified the constitutional

24   question and set a May 10, 2024, intervention deadline for the United States.  *See* Ord.,

25   ECF No. 354.   On May 8, 2024, the United States intervened to defend the

26   constitutionality of the Lanham Act's cause of action for dilution by tarnishment.  *See*

27   Notice, ECF No. 361.   The Court then ordered the United States to file its

28   memorandum in support of the statute by May 24, 2024.  *See* Ord., ECF No. 362.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARGUMENT**

**I.     The Court should first address the parties' non-constitutional arguments.**

"If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that [courts] ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." *Spector Motor Serv., Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944).  Therefore, "prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); *cf. Tam,* 582 U.S. at 230 (addressing a forfeited statutory argument because it could "resolve [the] case and leave the First Amendment question for another day").

Here, there are multiple grounds on which the Court could resolve Jack Daniel's tarnishment claims without addressing the statute's constitutionality.  Most obviously, Jack Daniel's contends that VIP waived or forfeited its constitutional argument, which VIP raised for the first time in this Court in its opening brief on remand.  *See* Jack Daniel's Mot. at 22–25.  It is well established that "[e]ven a constitutional right 'may be forfeited . . . by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'" *Singh v. Mukasey*, 533 F.3d 1103, 1109 (9th Cir. 2008) (quoting *United States v. Olano*, 507 U.S. 725, 731 (1993)).  If the Court concludes that VIP waived or forfeited its First Amendment argument, it should resolve Jack Daniel's tarnishment claim without addressing the merits of VIP's constitutional challenge.

Conversely, VIP maintains that Jack Daniel's failed to prove dilution by tarnishment.  *See* VIP Opening Br. at 26–30.  Because this argument, if successful, would render a constitutional decision unnecessary, the Court should consider it first. *See, e.g.*, *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1181 (9th Cir. 2012) (declining to reach a constitutional defense because the claim failed on the merits).

1   The United States takes no position on either argument.  But if Jack Daniel's is

2   correct about waiver or VIP is correct about the merits of Jack Daniel's tarnishment

3   claim, the Court need not, and therefore should not, decide the constitutional question.

4   **II.     The tarnishment provision is viewpoint neutral.**

5   VIP's primary argument is that "[d]ilution by tarnishment is a paradigm of

6   viewpoint-based discrimination: speech that burnishes is permissible, while speech

7   that tarnishes is subject to injunction regardless of any harm to the senior mark holder."

8   VIP Opening Br. at 21.  But the Lanham Act's tarnishment provision does not prohibit

9   speech "based on the ideas or opinions it conveys."  *Iancu v. Brunetti*, 588 U.S. 388,

10  393 (2019).  Nor does it permit liability "regardless" of harm.  To the contrary, the Act

11  defines dilution by tarnishment as "association arising from the similarity between a

12  mark or trade name and a famous mark *that harms the reputation of the famous mark*."

13  15 U.S.C. § 1125(c)(2)(C) (emphasis added).

14  Whether an "association . . . harms the reputation of the famous mark" does not

15  depend on the viewpoint (if any) expressed in connection with the tarnishing use.

16  Instead, liability for tarnishment turns on proof that harm to the famous mark is likely

17  to follow from the use of a similar mark or tradename in connection with a discordant

18  use.  *See L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 30 (1st Cir. 1987)

19  ("The threat of tarnishment arises when the goodwill and reputation of a plaintiff's

20  trademark is linked to products which are of shoddy quality or which conjure

21  associations that clash with the associations . . . generated by the owner's lawful use

22  of the mark.").  It would be surprising—and arguably beyond the scope of federal

23  courts' Article III powers—to provide a remedy for use of a mark that is not likely to

24  cause any harm to the plaintiff.  The commonplace requirement that the defendant's

25  conduct cause harm to the plaintiff does not equate to viewpoint discrimination.

26  In arguing otherwise, VIP relies heavily on the Supreme Court's decisions in

27  *Matal v. Tam* and *Iancu v. Brunetti*.  *See* VIP Opening Br. at 21; Resp. Br. of VIP

28  Products LLC , ECF No. 357 ("VIP Resp.").  But neither case is on point.  *Tam* and

*Brunetti* dealt with provisions of the Lanham Act that barred the registration of certain marks based on the viewpoints expressed by the marks themselves. *See Brunetti*, 588 U.S. at 394 (explaining that the Act's prohibition on "immoral or scandalous" marks discriminated based on viewpoint because it "permits registration of marks that champion society's sense of rectitude and morality, but not marks that denigrate those concepts"); *Tam*, 582 U.S. at 220 (plurality opinion) (concluding that the disparagement clause was viewpoint discrimination because it "denies registration to any mark that is offensive to a substantial percentage of the members of any group"); *id.* at 248 (Kennedy, J., concurring in part and concurring in the judgment) (explaining that disparagement clause allowed "an applicant [to] register a positive or benign mark but not a derogatory one")  As VIP itself explains, what "mattered" in *Tam* is that "the word itself" was offensive.  VIP Resp. at 23.

Dilution by tarnishment, by contrast, focuses on the likely effect of the mark's use, not the expressive content of the mark itself.  *See* 15 U.S.C. § 1125(c)(1), (c)(2); *see also L.L. Bean*, 811 F.2d at 31 ("A trademark is tarnished when consumer capacity to associate it with the appropriate products or services has been diminished"); *accord Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 110 (2d Cir. 2009).  For example, a food producer's mark may be tarnished by another company's use of a similar mark on insecticide.  *See Restatement (Third) of Unfair Competitio*n § 25 cmt. c. (March 2024 Update) (offering this example to define tarnishment); *see also* Jack Daniel's Mot. at 26 (citing *Chem. Corp. of Am. v. Anheuser-Busch, Inc.*, 306 F.2d 433, 437–38 (5th Cir. 1962) (involving beer and insecticide)).  The tarnishing effect does not depend on the insecticide manufacturer's intent, actual or perceived, to convey a disparaging message about the food or the company that sells it.  Instead, it comes from associating the food mark with a poisonous substance.  *Cf. Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 507 (2d Cir. 1996) (rejecting a tarnishment claim by the maker of "SPAM" because there was no evidence that the challenged use was "unhygienic or . . . place[d] [SPAM] in an unsavory context").

1    The same is true when the manufacturer of shoddy or mass-market merchandise
2    uses a mark similar to a famous mark associated with luxury goods.  In *Tiffany & Co.*
3    *v. Boston Club, Inc.*, it was the poor quality of Boston Club's Tiffany's Restaurant and
4    programming—not any intended or perceived criticism of Tiffany & Co.—that
5    tarnished the more famous mark.  *See Tiffany & Co. v. Boston Club, Inc.,* 231 F. Supp.
6    836, 844 (D. Mass. 1964).  And in *Steinway & Sons v. Robert Demars & Friends*, the
7    use of "STEIN-WAY" on the defendants' clip-on beverage can handles tarnished the
8    Steinway mark not because of any viewpoint the use expressed, nor because of any
9    inherently negative property, but because it associated "plaintiff's high quality pianos
10   . . . with defendants' inexpensive, mass-produced products." *Steinway & Sons v.*
11   *Robert Demars & Friends,* No. 80-04404, 1981 WL 40530, at *6 (C.D. Cal. Jan. 28,
12   1981).  Whether a discordant use tarnishes a famous mark does not depend on the
13   viewpoint, if any, that use expresses.

14   VIP is therefore wrong that "it is logically impossible" for something to be both
15   "'positive' . . . [and] likely to cause harm" to the famous mark.  VIP Resp. at 22.
16   Consider a Cheesecake Factory branded blood-glucose monitor.  A glucose monitor is
17   a positive good that, on its own, might conjure associations with healthy living or
18   modern medicine.  But while glucose monitors are valuable lifesaving devices, the
19   Cheesecake Factory would have very strong reasons to not want to want its mark
20   associated with them.

21   VIP's other arguments are also unconvincing.  First, VIP faults Jack Daniel's
22   for failing to offer examples of a "positive" parody that could tarnish a famous mark.
23   VIP Resp. at 22.  But this misses the point: the tarnishment provision does not prohibit
24   parodies as such.  It prohibits certain commercial uses of marks likely to harm the
25   reputation of the famous mark.  That prohibition is viewpoint neutral.

26   Second, VIP argues that Jack Daniel's own argument—specifically, its expert's
27   assertion that linking a beverage brand with feces inherently creates negative
28   associations—demonstrates that the prohibition on tarnishment is not viewpoint

neutral.  *See* VIP Resp. at 22.  Whether these associations amount to actionable tarnishment, however, turns not on the intended or perceived viewpoint of the tarnisher, but on the *effect* the association has on the value of the famous mark.  The mere fact "[t]hat a consumer may associate a negative-sounding junior mark with a famous mark" is not enough to prove likelihood of dilution by tarnishment.  *Starbucks*, 588 F.3d at 110.  Instead, the "relevant question" is whether the challenged use "would affect the positive impressions" associated with the famous mark.  *Id.*

Finally, returning to *Tam*, VIP asserts that prohibiting discordant uses is viewpoint discrimination because "[g]iving offense is a viewpoint."  VIP Resp. at 23 (quoting *Tam*, 582 U.S. at 243).  But again, a use need not be offensive to be discordant, and, conversely, even offensive uses do not necessarily harm the famous mark.  The tarnishment provision is not aimed at prohibiting all disparaging uses of the mark.  It is aimed at prohibiting commercial uses of marks that "conjure associations that clash with the associations generated by the owner's lawful use of the mark."  *L.L. Bean*, 811 F.2d at 31.

### III.    The tarnishment provision satisfies intermediate scrutiny.

VIP briefly argues that the tarnishment provision also fails to satisfy intermediate scrutiny.  *See* VIP Opening Br. at 25.  This argument is unavailing.  The Supreme Court's decision in *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522 (1987) ("*SFAA*"), demonstrates that the tarnishment provision survives such scrutiny.

As an initial matter, the anti-dilution statute applies only to commercial speech.  *See* 15 U.S.C. § 1125(c)(3)(C) (excluding "any noncommercial use of a mark").  Indeed, as relevant here, VIP claims a First Amendment right to use a mark as a source identifier for goods sold in commerce — a paradigmatic commercial use.  *See Jack Daniel's*, 599 U.S. at 146 (explaining that "every trademark's 'primary' function" is 'to identify the origin or ownership of the article to which it is affixed'") (quoting *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 412 (1916)); *see also SFAA*, 483

U.S. at 535 (explaining that "[t]o the extent" the statute at issue prohibited the use of a word "'for the purpose of trade [or] to induce the sale of any goods or services' . . . its application [was] to commercial speech") (citation omitted).  The dilution statute is therefore subject to intermediate scrutiny under *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980).  *See also SFAA*, 483 U.S. at 535, 537 n.16.

The application of intermediate scrutiny follows *a fortiori* from *SFAA*, which applied intermediate scrutiny even to a provision that incidentally may have affected noncommercial speech.  In *SFAA*, the Supreme Court rejected a First Amendment challenge to Section 110 of the Amateur Sports Act of 1978, which prohibited any person from using the word "Olympic" "for the purpose of trade, to induce the sale of any goods or services, or to promote any theatrical exhibition, athletic performance, or competition" without the consent of the U.S. Olympic Committee.  Act of Nov. 8, 1978, Pub. L. No. 95-606, § 110(a), 92 Stat. 3045, 3048; *see also SFAA*, 483 U.S. at 528–30.  The Court explained that even if Section 110 reached more than purely commercial speech, any "restrictions on expressive speech [were] . . .  incidental to the primary congressional purpose of encouraging and rewarding the [Olympic Committee's] activities."  *SFAA,* 483 U.S. at 536.  The "appropriate inquiry," therefore, was "whether the incidental restrictions on First Amendment freedoms [were] greater than necessary to further a substantial governmental interest."  *Id.* at 536–37.

Here, Congress narrowly limited the dilution statute to commercial and trademark uses.  Any burden on expressive speech would therefore be incidental to Congress's goal of protecting the "identity and integrity" of famous marks from being "undermined [by their] inappropriate and unauthorized use by other market actors."  *L.L. Bean*, 811 F.2d at 31; *see also Moseley*, 537 U.S. at 431 (2003) (citing H. R. Rep. No. 104–374 at 2–3 (1995)).  And, as in *SFAA*, the tarnishment provision does not prohibit anyone from "conveying [their] message."  *SFAA*, 483 U.S. at 536.

1    Indeed, this case is illustrative of the *de minimis* burden the dilution statute
2    imposes on free expression.  VIP was unable to invoke the exclusion for "parody" only
3    because it avowedly used the "Bad Spaniels" mark and associated trade dress to
4    identify the source of its goods.  *Jack Daniel's*, 599 U.S. at 160–62.  VIP could have
5    marketed its "Bad Spaniels" toy without incurring dilution liability if it had simply not
6    used Bad Spaniels as a trademark and the associated product design as trade dress. The
7    statute does not prevent VIP, or anyone else, from parodying or criticizing famous
8    marks.  *SFAA* thus establishes that the tarnishment provision is subject to—and
9    survives—intermediate scrutiny.

10    An analysis of the *Central Hudson* factors confirms this conclusion.  Under
11    *Central Hudson,* the relevant inquiry for regulations on non-misleading speech
12    concerning lawful activity is (1) "whether the asserted governmental interest is
13    substantial"; (2) "whether the regulation directly advances the governmental interest
14    asserted"; and (3) "whether it is not more extensive than necessary to serve that
15    interest." *Retail Digit. Network, LLC v. Prieto*, 861 F.3d 839, 844 (9th Cir. 2017) (en
16    banc) (quoting *Cent. Hudson*, 447 U.S. at 566).  With respect to the Lanham Act's
17    cause of action for tarnishment, the answer to all three questions is yes.

18    **A.    The government has a substantial interest in protecting the value of famous**
19    **marks.**

20    As the Supreme Court explained in *SFAA*, "when a word acquires value 'as the
21    result of organization and the expenditure of labor, skill, and money' by an entity, that
22    entity constitutionally may obtain a limited property right in the word."  *SFAA*, 483
23    U.S. at 532 (quoting *Int'l News Serv. v. Associated Press*, 248 U.S. 215, 239 (1918)).
24    Congress has a substantial interest in ensuring that mark holders "receive[] the benefit
25    of [their] own efforts so that [they] will have an incentive to continue to produce a
26    'quality product,' that, in turn, benefits the public."  *SFAA*, 483 U.S. at 537; *see also*
27    *id.* at 531; *L.L. Bean*, 811 F.2d at 30.  The dilution statute, like traditional infringement
28    law, serves to protect the "long recognized" right of a person "to adopt and use" a mark

1    "to the exclusion of use by all other persons."  *In re Trade-Mark Cases*, 100 U.S. 82,
2    92 (1879).

3    VIP's attempts to distinguish *SFAA* fail.  First, VIP claims that "the Court [in
4    *SFAA*] specifically *did not* address the question of private trademarks because there
5    was 'no need' to decide whether Congress could grant exclusive use of a word or
6    phrase to a private entity."  VIP Resp. at 24 (quoting *SFAA*, 483 U.S. at 532–533).  But
7    that is not what the Court said.  It said there was "no need . . .  to decide whether
8    Congress ever could grant a private entity exclusive use *of a generic word*."  *SFAA*,
9    438 U.S. at 532 (emphasis added).  That was so, it explained, because Congress could
10   have concluded that the Olympic Committee—a private entity—was responsible for
11   the "commercial and promotional value of the word 'Olympic.'"  *Id.*  It then reaffirmed
12   that Congress *could* grant an individual the exclusive right to use a distinctive mark.
13   *See id.* at 534.  The dilution statute tracks that distinction: it protects only marks that
14   are both "distinctive" and "famous."  15 U.S.C. § 1125(c)(1).

15   **B.    The tarnishment provision directly advances the government's interest.**

16   Like the statute at issue in *SFAA*, the Lanham Act's cause of action for
17   tarnishment helps ensure that the owners of famous, distinctive marks "will receive
18   the benefits of [their] efforts."  *SFAA*, 483 U.S. at 539.  Indeed, the very nature of the
19   tarnishment cause of action guarantees that every proven case of tarnishment furthers
20   the government's interest in protecting the value of famous marks.  This is because the
21   Lanham Act requires the owner of the famous mark to prove that the challenged use
22   is likely to harm the reputation of the famous mark.  *See* 15 U.S.C. § 1125(c)(1),
23   (c)(2)(C); *see also Starbucks*, 588 F.3d at 110 ("We will not assume that a purportedly
24   negative-sounding junior mark will likely harm the reputation of the famous mark by
25   mere association . . . .").  The likelihood of harm requirement not only narrows the
26   statute's reach, it directs every application of the statute at the harm Congress sought
27   to address—the degradation of the selling power of famous marks.

28

12

**C.      Any incidental restrictions on speech are not greater than necessary.**

The dilution statute contains two important safeguards that limit its impact on free expression.  First, as discussed above, the owner of the famous mark must prove that the challenged use is likely to harm the reputation of the famous mark.  *See* 15 U.S.C. § 1125(c)(1), (c)(2)(C); *see also Moseley*, 537 U.S. at 433 ("[T]he mere fact that consumers mentally associate the junior user's mark with a famous mark is not sufficient to establish actionable dilution.").  Even without this explicit statutory requirement, Article III of the Constitution would require tarnishment plaintiffs to prove that the defendant's use creates an "imminent and substantial" risk of concrete harm.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021); *see also id*. at 427 ("Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court.").

Second, Congress took pains to eliminate any conflicts between the dilution statute and the First Amendment by excluding broad swaths of protected speech.  *See* 15 U.S.C. § 1125(c)(3).  And lower courts have consistently interpreted these exclusions expansively.  *See, e.g., Radiance.*, 786 F.3d at 331; *Am. Fam. Life Ins. Co. v. Hagan*, 266 F. Supp. 2d 682, 696 (N.D. Ohio 2002).

This is more than enough to pass constitutional muster.  In *SFAA*, the Court upheld a law granting the Olympic Committee *exclusive* use of the word Olympic without any of the dilution provision's statutory safeguards.  *See SFAA* 483 at 539.  It follows that the dilution provision, which contains more free speech protections, is also "not broader than Congress reasonably could have determined to be necessary" to protect "the distinctiveness and thus the commercial value" of famous marks.  *Id.* at 539.

VIP asserts that the tarnishment cause of action cannot survive intermediate security because the pre-TDRA version of the dilution statute proves "that a narrower, less restrictive, means was available to Congress."  VIP Opening Br. at 25.  But "the 'least restrictive means' test has no role in the commercial speech context."  *Fla. Bar*

*v. Went For It, Inc.*, 515 U.S. 618, 632 (1995).  So long as the fit is "reasonable," courts "leave it to governmental decisionmakers to judge what manner of regulation may best be employed." *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989); *see also Ward v. Rock Against Racism*, 491 U.S. 781, 800 (1989).  By requiring the plaintiff to prove that the alleged tarnishment is likely to harm the famous mark and carving out all noncommercial speech, Congress ensured a reasonable fit between the goals of the anti-dilution provision and its means of achieving those goals.

**IV.   VIP has not shown the tarnishment provision is facially unconstitutional.**

Facial challenges like the one VIP raises are "disfavored." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008).  In general, a law may facially violate the First Amendment if it is either "unconstitutional in every conceivable application, or . . . seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad." *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1271 (9th Cir. 2017) (quoting *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998)).  But the "the overbreadth doctrine does not apply to commercial speech." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 497 (1982).  Thus, for VIP's facial challenge to succeed, the tarnishment provision would need to be unconstitutional "in every conceivable application." *First Resort*, 860 F.3d at 1271.

It is not.  To begin, as discussed above, the tarnishment statute is constitutional as applied in this case.  Indeed, it is telling that VIP has not attempted to raise an as-applied challenge to the tarnishment statute.  VIP is using the "Bad Spaniels" mark to identify the source of its own product.  Congress can permissibly regulate such uses to prevent them from "lessening . . .  the commercial value of the [famous] mark[]." *SFAA*, 483 U.S. at 539.  The statute's hypothetical application to others thus cannot aid VIP's argument.

In addition, the statute unquestionably constitutional as applied to uses that are also actionable as infringement.  Tarnishing uses and infringing uses often overlap.

14

See, e.g., *Tiffany*, 231 F. Supp. 836, 842 (finding "actual confusion" about the relationship between the two Tiffany's).  In those cases, the First Amendment is not implicated because "the Constitution affords no protection to false or misleading commercial speech."  *First Resort*, 860 F.3d at 1271; *see also Jack Daniel's*, 599 U.S. at 159 (explaining that "'trademark law generally prevails over the First Amendment' when 'another's trademark (or a confusingly similar mark) is used without permission' as a means of 'source identification.'") (citation omitted).  That alone dooms VIP's facial challenge.

Moreover, even if the tarnishment provision could hypothetically reach some noncommercial speech, VIP has not shown that it "will be interpreted or applied to infringe significantly" on that speech.  *SFAA*, 483 U.S. at 536 n.15.  Even where the overbreadth doctrine applies, a litigant bringing a facial challenge must show that the unconstitutional applications of the challenged law are "realistic, not fanciful" and that number of those applications is "substantially disproportionate to the statute's lawful sweep."  *United States v. Hansen*, 599 U.S. 762, 770 (2023).  The breadth of the dilution statute's exclusions forecloses that showing.

Finally, any uncertainty about the scope of the dilution statute's exclusions counsels *against* facial invalidation.  *See United States v. Raines*, 362 U.S. 17, 22 (1960) (explaining that facial challenges invite "premature interpretations of statutes in areas where their constitutional application might be cloudy").  "In determining whether a law is facially invalid, [the court] must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases."  *Washington State Grange*, 552 U.S. at 449–50.

## CONCLUSION

For the foregoing reasons, if the Court reaches the issue, the Court should reject VIP's facial challenge to the Lanham Act's cause of action for dilution by tarnishment.

1    Dated: May 24, 2024                                  Respectfully submitted,

2                                                         BRIAN M. BOYNTON
3                                                         Principal Deputy Assistant
                                                          Attorney General
4                                                         Civil Division

5                                                         LESLEY FARBY
6                                                         Assistant Director
                                                          Federal Programs Branch
7

8                                                         */s/ Ross Slaughter*
                                                          Ross Slaughter
9                                                         Trial Attorney
                                                          United States Department of Justice
10                                                        Civil Division, Federal Programs Branch
                                                          1100 L Street, NW
11                                                        Washington, DC 20005
                                                          Telephone: (202) 616-8185
12                                                        Email: ross.m.slaughter@usdoj.gov
13                                                        *Counsel for the United States*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28