MESSNER REEVES LLC
Isaac S. Crum
1440 E. Missouri Avenue, Suite C100
Phoenix, Arizona 85014
(602) 641-6705
icrum@messner.com

WILLIAMS & CONNOLLY LLP
Lisa S. Blatt (*pro hac vice*)
Amy Mason Saharia (*pro hac vice*)
Matthew B. Nicholson (*pro hac vice*)
680 Maine Avenue, SW
Washington, DC 20024
(202) 434-5000
lblatt@wc.com
asaharia@wc.com
mnicholson@wc.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| VIP Products LLC, an Arizona limited liability company, | ) ) ) No. CV-14-2057-PHX-SMM |
| Plaintiff, | ) ) **JACK DANIEL'S PROPERTIES,** |
| v. | ) **INC.'S REPLY BRIEF** ) ) |
| Jack Daniel's Properties, Inc., a Delaware corporation, | ) ) ) |
| Defendant. | ) ) |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................ii

INTRODUCTION ..............................................................................................1

ARGUMENT......................................................................................................1

I.     Jack Daniel's Proved Dilution by Tarnishment. .......................................1

II.    Jack Daniel's Proved Infringement. .........................................................4

III.   VIP's Facial Constitutional Challenge Is Waived and Meritless. ............8

    A.    VIP Waived Its Facial Constitutional Challenge................................8

        1.    The Remand Does Not Revive VIP's Waived Challenge. ............8

        2.    There Are No Grounds to Excuse VIP's Waiver. .....................11

    B.    VIP's Facial Constitutional Challenge Fails.....................................13

        1.    The Dilution Statute Is Viewpoint Neutral. ..............................13

        2.    The Dilution Statute Easily Satisfies Intermediate Scrutiny ......14

        3.    VIP Has Not Shown Facial Unconstitutionality. .......................15

CONCLUSION .................................................................................................15

i

# TABLE OF AUTHORITIES

Page

## CASES

*Anheuser-Busch v. Balducci Pub'ns*, 28 F.3d 769 (8th Cir. 1994) ...................................3

*Apple Inc. v. Samsung Elecs. Co.*, 2017 WL 3232424 (N.D. Cal. July 28, 2017) ...........10

*Browning-Ferris Indus. of Vt. v. Kelco Disposal*, 492 U.S. 257 (1989) ...........................9

*Cartier v. Three Sheaves*, 465 F. Supp. 123 (S.D.N.Y. 1979) ..........................................3

*Chemical Corp. of Am. v. Anheuser-Busch, Inc.*, 306 F.2d 433 (5th Cir. 1962)................3

*Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088 (10th Cir. 2015)........................................13

*E. & J. Gallo Winery v. Pasatiempos Gallo, S.A.*,
    905 F. Supp. 1403 (E.D. Cal. 1994).............................................................................6

*Edd Potter Coal Co. v. Dir., Off. of Workers' Comp. Programs*,
    39 F.4th 202 (4th Cir. 2022)........................................................................................9

*Flores v. Barr*, 934 F.3d 910 (9th Cir. 2019) ...................................................................2

*Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258 (1992) ....................................................11

*Hormel Foods Corp. v. Jim Henson Prods.*, 73 F.3d 497 (2d Cir. 1996) .........................3

*Iancu v. Brunetti*, 588 U.S. 388 (2019) ..........................................................................12

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140 (2023)............................4, 5

*Kharoufeh v. Holder*, 599 F. App'x 619 (9th Cir. 2015) ...............................................10

*Louis Vuitton Malletier v. Haute Diggity Dog*, 507 F.3d 252 (4th Cir. 2007)...........*passim*

*M2 Software v. Viacom*, 223 F. App'x 653 (9th Cir. 2007) ............................................10

*Magnesystems, Inc. v. Nikken, Inc.*, 933 F. Supp. 944 (C.D. Cal. 1996) ........................10

*Matal v. Tam*, 582 U.S. 218 (2017)..............................................................12, 14, 15

*Omni Outdoor Advert. v. Columbia Outdoor Advert.*, 974 F.2d 502 (4th Cir. 1992).........9

*Original Appalachian Artworks, Inc. v. Topps Chewing Gum, Inc.*,
    642 F. Supp. 1031 (N.D. Ga. 1986)..............................................................................3

*Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118 (9th Cir. 2014) .................................6, 7

*Raich v. Gonzales*, 500 F.3d 850 (9th Cir. 2007)......................................................10, 12

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015).................................................................15

*Rodriguez de Quijas v. Shearson/Am. Express*, 490 U.S. 477 (1989)..............................15

*San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee*,
    483 U.S. 522 (1987) ..............................................................................................14, 15

*Sec. Inv. Prot. Corp. v. Vigman*, 74 F.3d 932 (9th Cir. 1996).....................................10, 11

*Sec. Inv. Prot. Corp. v. Vigman*, 964 F.2d 924 (9th Cir. 1992)........................................11

*Stern v. Marshall*, 564 U.S. 462 (2011) ..........................................................................11

*Tiffany & Co. v. Bos. Club, Inc.*, 231 F. Supp. 836 (D. Mass. 1964).................................3

*United States v. Castellanos*, 608 F.3d 1010 (8th Cir. 2010).............................................9

*United States v. Cornelius*, 968 F.2d 703 (8th Cir. 1992)................................................10

*United States v. Tat*, 97 F.4th 1155 (9th Cir. 2024) .........................................................10

*Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125 (2d Cir. 2023) (per curiam) ......1, 4

Page

**STATUTE**

15 U.S.C.
  § 1125(a)(1)(A) ................................................................................ 4
  § 1125(c)(1) ................................................................................ 2, 15
  § 1125(c)(2)(C) ............................................................................ 13
  § 1125(c)(3)(A) ............................................................................ 15

**OTHER AUTHORITIES**

Andrew Michaels, *Confusion in Trademarked NFTs*,
  Stan. J. Blockchain L. & Pol'y 1 (2024) ...................................... 8

18B C. Wright, A. Miller & E. Cooper,
  Fed. Prac. & Proc. § 4478.3 (3d ed. 2024) ............................. 8, 10

iii

**INTRODUCTION**

Through two rounds of briefing, VIP continues to ignore this Court's prior findings, to raise long-waived arguments, and to disregard the Supreme Court's core directives. VIP spends much of its brief trying to avoid its waiver. But waiver principles apply to all stages of proceedings, including when cases are returned to district courts on general remands. VIP's contrary view lacks any authority and would transform a remand into a free-for-all.

Regardless of VIP's waiver, its arguments are meritless. Nothing in the Supreme Court's decision affects this Court's prior dilution findings, which were supported by substantial evidence at trial. This Court should readopt those findings in full.

As to infringement, VIP contends that the purportedly parodic nature of Bad Spaniels requires the Court to resolve most of the *Sleekcraft* factors in its favor with no need for further analysis. But legions of cases, both before and after the Supreme Court's ruling in this case, have found that purported parodies are likely to confuse when they copy too much of the original without adding enough distinguishing features. *E.g.*, *Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125, 142 (2d Cir. 2023) (per curiam). This Court correctly found that Bad Spaniels failed to create enough contrasts to dispel confusion.

Finally, in addition to being waived, VIP's late-breaking constitutional challenge to the dilution statute fails. As the U.S. Department of Justice confirms in its brief, the dilution statute is viewpoint neutral and easily satisfies intermediate scrutiny.

**ARGUMENT**

**I.    Jack Daniel's Proved Dilution by Tarnishment.**

VIP's arguments about dilution merely seek to relitigate this Court's prior findings. VIP does not argue that anything in the Supreme Court's decision calls into question those prior findings. The Court should therefore re-issue its original dilution findings, which alone entitle Jack Daniel's to an injunction. Jack Daniel's already has addressed VIP's dilution arguments in prior briefing and briefly addresses the key points again below.

*First*, VIP (at 25-27) claims (without citation) the dilution statute "requires a mark-to-famous-mark comparison," that "Old No. 7" is the only Jack Daniel's mark that VIP

1

1   dilutes, and that "Old No. 7" is not sufficiently famous.  As Jack Daniel's explained, that

2   argument is both waived and incorrect.  *See* Jack Daniel's Resp. 17-18.

3         As to waiver, VIP claims (at 26 n.2) it preserved its argument by asserting in its

4   proposed findings that Jack Daniel's marks were not famous.  Not so.  VIP never argued

5   that the dilution statute required a "mark-to-mark matchup" or that the "Old No. 7" mark

6   was the only mark relevant to dilution.  Indeed, the dilution section of VIP's proposed

7   findings did not mention "Old No. 7" at all.  ECF 242, at 29-35.  And regardless of VIP's

8   arguments before *this Court*, VIP waived any challenge to this Court's findings on the

9   fame element by failing to challenge them *on appeal*.  Jack Daniel's Opening Br. 9 n.3.

10  VIP responds (at 26 n.2) that "appellees" are not required to "raise every possible alterna-

11  tive ground."  But VIP was the *appellant*, and appellants must appeal all issues they wish

12  to preserve.  *See, e.g.*, *Flores v. Barr*, 934 F.3d 910, 917-18 (9th Cir. 2019).

13        Regardless, VIP's attack on the fame of "Old No. 7" gets it nowhere.  As Jack Dan-

14  iel's explained, this Court found that Jack Daniel's proved dilution as to both its trademarks

15  *and trade dress*; VIP nowhere disputes the fame of the latter.  Jack Daniel's Resp. 17-18.[1]

16        *Second*, VIP argues (at 27-30) there is no evidence its dog toy "actually tarnishes"

17  Jack Daniel's marks.  The legal standard, however, is "likely" tarnishment.  15 U.S.C.

18  § 1125(c)(1).  VIP (at 28) also repeats its prior criticism of the opinion of Jack Daniel's

19  expert, Dr. Simonson, and touts the "focus groups conducted by VIP's expert, Bruce Sil-

20  verman."   But this Court already rejected Dr. Silverman's focus-group findings as

21  "tainted," and credited Dr. Simonson's opinions, which VIP just ignores. FoF ¶¶ 43-60.

22        VIP relatedly argues (at 28-29) that Dr. Simonson did not account for the fact that

23  dog poop is entertaining to young children and thus not disgusting, and asks the Court to

24  judicially notice children's songs involving poop.  If anything, however, that argument just

25  reaffirms this Court's prior finding that one reason Bad Spaniels is tarnishing is because it

---

27  [1] VIP (at 25) urges the Court to ignore the "Old No. 2" element of Jack Daniel's trade
28  dress.  But Jack Daniel's trade dress is a "combination" of "bottle and label elements" that
    "includes the Jack Daniel's and Old No. 7 word trademarks."  ECF 171, at 12; FoF ¶ 15.

associates Jack Daniel's marks with "the kinds of toys that might appeal to children." FoF ¶ 61. VIP does not even try to rebut that finding. In any event, none of VIP's cited songs associate poop with food or beverage, and thus do not undercut this Court's other finding that disgust is created "when you associate any food or beverage with defecation" because "human consumption and canine excrement do not mix." FoF ¶¶ 51-54, 60.

VIP (at 27-28) cites *Louis Vuitton Malletier v. Haute Diggity Dog*, 507 F.3d 252 (4th Cir. 2007), but that case is readily distinguishable. There, the plaintiff failed to prove tarnishment because it "provided no record support" for its speculation that dogs would choke on the at-issue dog toy. *Id.* at 268-69. Here, Jack Daniel's is not arguing that dogs will choke on Bad Spaniels. Instead, Jack Daniel's introduced, and this Court credited, expert evidence that Bad Spaniels creates tarnishing associations. FoF ¶¶ 41-63.

*Third*, VIP argues in connection with its (waived) constitutional challenge (at 20-21) that "virtually all" tarnishment cases involve sex and drugs. To the extent VIP is proposing the Court limit the dilution statute to "sex and drugs," VIP long ago waived any such argument; that limitation appears nowhere in the Lanham Act; and no court has recognized such a rule. To the contrary, courts recognize tarnishment can occur "through a variety of uses" and is "not limited to seamy conduct." *Hormel Foods Corp. v. Jim Henson Prods.*, 73 F.3d 497, 507 (2d Cir. 1996); *see, e.g.*, *Anheuser-Busch v. Balducci Pub'ns*, 28 F.3d 769, 777 (8th Cir. 1994); *Cartier v. Three Sheaves*, 465 F. Supp. 123, 129 (S.D.N.Y. 1979); *Tiffany & Co. v. Bos. Club, Inc.*, 231 F. Supp. 836, 844 (D. Mass. 1964).

VIP complains (at 20-21) that cases cited by Jack Daniel's on this point, *Chemical Corp. of America v. Anheuser-Busch, Inc.*, 306 F.2d 433 (5th Cir. 1962) and *Original Appalachian Artworks, Inc. v. Topps Chewing Gum, Inc.*, 642 F. Supp. 1031 (N.D. Ga. 1986), pre-date the federal dilution statute. That is of no moment. Both apply analogous state dilution-related law. If Congress disapproved of cases like these and wished to limit the federal statute to sex and drugs, one would expect to see that limitation in the statutory text.

3

1    **II.    Jack Daniel's Proved Infringement.**

2        The Supreme Court clearly explained the role of parody in infringement cases.  To

3    dispel confusion, and thus "succeed" for purposes of the Lanham Act, a parody must "*cre-*

4    *ate contrasts*, so that its message of ridicule or pointed humor comes clear." *Jack Daniel's*

5    *Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 161 (2023) (emphasis added).  Tellingly,

6    VIP does not acknowledge this critical language in its response.  Equally tellingly, it rele-

7    gates its response to the only appellate decision analyzing a purported parody after *Jack*

8    *Daniel's*— *Vans*, 88 F.4th 125—to a footnote (at 19 n.1).

9        As the Second Circuit explained in *Vans*, "if a parodic use of protected marks and

10   trade dress leaves confusion as to the source of a product, the parody has not 'succeeded'

11   for purposes of the Lanham Act, and the infringement is unlawful."  88 F.4th at 142.  In

12   response, VIP asserts (at 11) that it is "undisputed" that its dog toy is a "successful parody."

13   But that question is very much in dispute.  As Jack Daniel's has argued, the Bad Spaniels

14   dog toy, like the purported parody in *Vans*, does not create sufficient contrasts to dispel

15   confusion and thus does not "succeed."  *See* Jack Daniel's Opening Br. 11-18.

16       VIP attempts (at 19 n.1) to distinguish *Vans* on the ground that the plaintiffs there

17   introduced "evidence of *actual* consumer confusion."  But the statute requires only "likely"

18   confusion.  15 U.S.C. § 1125(a)(1)(A).  Plus, Jack Daniel's presented persuasive survey

19   evidence, which is a reliable proxy for actual confusion.  VIP also claims (at 19 n.1) *Vans*

20   is distinguishable because the products there were "advertised to the same market" and

21   "were both wearable shoes."  But as this Court found, Jack Daniel's also licenses dog

22   products, and VIP sold Bad Spaniels through many of the same marketing channels

23   through which licensed Jack Daniel's products are sold.  FoF ¶¶ 111-117.

24       Left with nothing else, VIP asserts (at 19 n.1) that *Vans* was "simply incorrect."

25   But this Court should not indulge that invitation to depart from the only circuit decision

26   applying *Jack Daniel's*.

27

28

4

VIP also ignores the multiple cases Jack Daniel's cited holding that purported parodies infringed because they were too similar to the original marks. *See* Jack Daniel's Opening Br. 18-19. In the face of those cases, VIP relies (at 11-19) on the Fourth Circuit's decision in *Louis Vuitton*, the Ninth Circuit's prior ruling in this case, and a law review article by Professor Andrew Michaels. As Jack Daniel's explained, however, this case is different from *Louis Vuitton* in virtually every respect. Jack Daniel's Opening Br. 19-21; *infra* pp.5-8. As to the Ninth Circuit's prior ruling, the Supreme Court vacated that ruling and called its reasoning "mistaken." *Jack Daniel's*, 599 U.S. at 159. And the law review article does not help VIP, as Professor Michaels filed an amicus brief in the Supreme Court in support of VIP's *losing* position.[2]

The *Sleekcraft* factors further confirm that this Court's findings remain correct:

**<u>Similarity of the marks.</u>** This Court already found that VIP copied "every aspect" of Jack Daniel's trademarks and trade dress, including the size and shape of the bottle, the color and style of the labels, and the font and shape of the lettering. Jack Daniel's Opening Br. 11-12. VIP (at 14-15) ignores this Court's findings and claims that, under *Louis Vuitton*, the similarity between the marks weighs in its favor. But *Louis Vuitton* did not hold that similarity automatically weighs *against* confusion whenever a defendant claims parody; it instead held that the marks at issue there were *not* similar because the parody made the "distinction" between them "readily recogniz[able]." 507 F.3d at 262. The court observed that the "differences [were] immediate" because the dog toy was "small[]," "plush," and "virtually all of its designs differ[ed]." *Id.* at 260. That is the opposite of this case.

The Fourth Circuit also acknowledged that the marks were dissimilar because of "how the parties actually use[d] their marks in the marketplace." *Id.* at 262. Here, VIP not only marketed Bad Spaniels through the same channels as licensed Jack Daniel's products, but *used images of genuine Jack Daniel's whiskey in its marketing*. FoF ¶ 116. Finally,

---

[2] Br. of Amicus Curiae Prof. Andrew C. Michaels in Support of Respondent, *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140 (2023) (No. 22-148).

5

1    the marks in *Louis Vuitton* were dissimilar "because of the implicit message communicated

2    by the parody." 507 F.3d at 262. Here, Bad Spaniels conveys no articulable message.

3        **Strength of the mark.** Relying principally on *Louis Vuitton*, VIP claims (at 13-14)

4    the strength of Jack Daniel's marks "inverts in significance" as Bad Spaniels is a purported

5    parody. But that case did not hold that stronger marks always make confusion *less* likely.

6    Instead, the mark's strength weighed against confusion there because "consumers readily

7    recognize" that the crude, cheap dog toy was a parody of high-end Louis Vuitton products.

8    507 F.3d at 262. That is not the case here, as a survey confirmed likely confusion.

9        **Proximity of the goods.** Next, VIP argues the proximity factor should have

10   weighed against confusion because "the products are quite different—dog toys versus

11   whiskey." VIP Resp. 17-18 (cleaned up). But the question is not whether the goods are

12   the same; it is whether the goods "would be reasonably thought by the buying public to

13   come from the same source if sold under the same mark." *Pom Wonderful LLC v. Hub-*

14   *bard*, 775 F.3d 1118, 1127 (9th Cir. 2014) (citation omitted). In addition to whiskey, Jack

15   Daniel's licenses a wide range of merchandise. FoF ¶¶ 111-114. Courts have recognized

16   that "[b]everage suppliers commonly use, and license others to use, their marks on a variety

17   of consumer items," making confusion more likely. *E. & J. Gallo Winery v. Pasatiempos*

18   *Gallo, S.A.*, 905 F. Supp. 1403, 1408, 1413 (E.D. Cal. 1994). That Jack Daniel's officially

19   licenses dog products makes the analysis even easier here. VIP (at 17) claims *Louis Vuitton*

20   supports it because Louis Vuitton "sold some pet-related products." But unlike here, Louis

21   Vuitton's pet products were luxury goods ranging from "$200 to $1600." 507 F.3d at 258.

22       **Marketing channels.** VIP does not dispute that it sold Bad Spaniels through some

23   of the same channels through which licensed Jack Daniel's products are sold. VIP (at 18)

24   responds that, in *Louis Vuitton*, a single department store sold products from both parties.

25   But the evidence of overlap in this case exceeds a single store. Here, VIP sold its products

26   in specialty channels for licensed alcohol products, and search results for Jack Daniel's on

27   those websites yielded Bad Spaniels. Jack Daniel's Resp. 12-13.

28

1       **Actual confusion.**  The actual-confusion factor weighs heavily in Jack Daniel's

2   favor as persuasive survey evidence demonstrated 29% confusion.  *See* Jack Daniel's

3   Opening Br. 14-16; FoF ¶¶ 72-94.  VIP (at 15-16) argues that "lack of evidence about

4   actual confusion … can be a powerful indication that the junior trademark does not cause

5   meaningful likelihood of confusion."  But VIP's own cases recognize that the absence of

6   actual-confusion evidence "is generally unnoteworthy and is given little probative weight,"

7   and that likely confusion can be proven by surveys.  *See* Jack Daniel's Resp. 12.

8       VIP (at 16-17) again cites Justice Sotomayor's noncontrolling concurrence and sug-

9   gests certain survey responses did not reflect trademark-related confusion.  But Jack Dan-

10  iel's explained that, even crediting VIP's (baseless) argument, confusion still exceeded

11  25%. Jack Daniel's Opening Br. 16; Jack Daniel's Resp. 10 & n.3.  VIP offers no response.

12      In any event, VIP's criticisms of the survey are misplaced.  VIP (at 16) contends

13  that survey questions asking whether consumers believed Bad Spaniels was associated

14  with any other company inappropriately tested for confusion about legal requirements.  But

15  VIP ignores that those questions track the statutory language.  *See* Jack Daniel's Opening

16  Br. 16.  VIP also (at 16-17) quotes its amicus's assertion that the survey "should not be

17  enough to establish a sufficiently compelling case for confusion" because the measured

18  confusion may not "tend to affect customer purchasing decisions."  But the Lanham Act

19  prohibits many forms of confusion beyond the point of sale.  Jack Daniel's Resp. 10.

20      **Intent.**  The intent factor—which is "minimally important," *see Pom Wonderful*,

21  775 F.3d at 1131—either weighs in Jack Daniel's favor or is neutral.  VIP's asserted "par-

22  ody" is (at best) of the most generic kind and would not indicate to any consumer that VIP

23  (not Jack Daniel's) was the product's source.  VIP again (at 15) seeks refuge in *Louis*

24  *Vuitton*.  But the parody in *Louis Vuitton* is nothing like VIP's product.  There, the Fourth

25  Circuit explained that to dispel confusion, a parody must "not only differentiate the alleged

26  parody from the original but must also communicate some articulable element of satire,

27  ridicule, joking, or amusement."  507 F.3d at 260.  The parodist there communicated such

28

7

a message by satirizing "elegant high-end brands." *Id.* at 258.  Jack Daniel's is not Louis
Vuitton; it is a standard-priced whiskey enjoyed across most demographics over the legal
drinking age.  Even the law professor VIP cites concedes that Jack Daniel's is "not exactly
a luxury brand."  Andrew Michaels, *Confusion in Trademarked NFTs*, 7 Stan. J. Block-
chain L. & Pol'y 1, 38 (2024).

**III.    VIP's Facial Constitutional Challenge Is Waived and Meritless.**

In a last-ditch effort to avoid dilution liability, VIP asserts that the dilution statute
is viewpoint discriminatory on its face.  VIP, however, long ago waived that challenge.
And, as the Department of Justice confirms, the challenge is meritless in any event.

**A.    VIP Waived Its Facial Constitutional Challenge.**

*1.    The Remand Does Not Revive VIP's Waived Challenge.*

VIP contends (at 2-9) that, because this case is on a "general remand," VIP is enti-
tled to raise completely new issues—regardless of whether it previously waived them.  In
support of that novel theory, VIP invokes (at 3) the proposition that when an appellate
court generally remands a case for further proceedings consistent with its opinion, a district
court is permitted to decide anything not foreclosed by the mandate.  But that proposition
does *not* imply that a district court on remand is somehow barred from applying general
waiver principles, such that a party has free rein to raise new issues.[3]  After all, it is in no
way "inconsistent" with an appellate court's mandate for a district court to rule that a party
waived an entirely new issue by failing to raise it until *after* the remand.

The leading civil procedure treatise recognizes this very point.  "The rule that mat-
ters not decided on appeal do not become part of the mandate is *qualified by the rule that
matters not raised ordinarily are waived*."  18B C. Wright, A. Miller & E. Cooper, Fed.
Prac. & Proc. § 4478.3 n.16 (3d ed. 2024) (emphasis added).  VIP's own authority recog-
nizes the point as well:  "Although lower courts are free to decide new issues left open on
remand, *this court must also consider whether an issue not previously raised is deemed*

---

[3] As previously noted, Jack Daniel's uses the term "waiver" to refer to both waiver and the
related concept of forfeiture.  Jack Daniel's Opening Br. 21 n.6.

1    *waived, and therefore, not within the scope of remand.*"  *United States v. Castellanos*, 608

2    F.3d 1010, 1017 (8th Cir. 2010) (cited at VIP Resp. 3-4, 26 n.2) (emphasis added).  Indeed,

3    VIP does not cite a single civil case holding that "a remand turns back the clock and allows

4    a party to raise whatever new issues it would like, effectively absolving it of any earlier

5    forfeiture."  *Edd Potter Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 39 F.4th 202,

6    209 (4th Cir. 2022) (rejecting that assertion in context of agency remand).

7         To hold otherwise would lead to absurd results.  Under VIP's view, a remand would

8    become a "procedural free-for-all," as parties who lost on appeal would have carte blanche

9    to raise new issues on remand.  *Id.*  Parties could strategically hold issues in reserve to get

10   a second chance if they lose on appeal.  As a result, "cases could languish for years before

11   final resolution and already crowded court dockets would swell even more."  *Omni Out-*

12   *door Advert. v. Columbia Outdoor Advert.*, 974 F.2d 502, 505 (4th Cir. 1992).  And op-

13   posing parties would be prejudiced by having to address new issues "over and over."  *Id.*

14         None of VIP's other arguments is persuasive.  Citing *Castellanos*, VIP contends (at

15   3-4) that "[n]ot every new argument … constitutes the raising of a new issue" and that a

16   party may raise "new arguments in support of issues already litigated, but remanded to the

17   district court."  That proposition does not help VIP.  VIP's facial challenge to the dilution

18   statute is an entirely new *issue*, not an argument raised in support of a previously litigated

19   issue.  *See Browning-Ferris Indus. of Vt. v. Kelco Disposal*, 492 U.S. 257, 277 n.23 (1989)

20   (due process challenge was a new claim, not an argument).

21         Again citing *Castellanos*, VIP contends (at 4) that "issues that arise anew on remand

22   are generally within the scope of the remand."  But that proposition similarly does not aid

23   VIP.  VIP is asserting a *facial* challenge to the dilution statute.  That challenge did not

24   somehow "arise anew" on remand.  Rather, as Jack Daniel's explained, VIP could have

25   raised its facial challenge in this Court before the original judgment in 2018.  *See* Jack

26   Daniel's Opening Br. 23-25.  Because VIP failed to raise its challenge back then (or, for

27   that matter, at any prior point in this litigation), its challenge is waived.

28

1    Next, VIP contends (at 5) that "[c]ourts that refuse to consider issues left open by

2    the appellate court on general remand may commit legal error." But VIP's main case in-

3    volved an agency that declined to consider an apparently preserved issue based on a mis-

4    reading of the scope of the mandate. *Kharoufeh v. Holder*, 599 F. App'x 619, 620 (9th

5    Cir. 2015). That case in no way suggests that a district court errs if it holds on remand that

6    a civil litigant waived an *unpreserved* issue. To the contrary, the Ninth Circuit consistently

7    has affirmed such rulings by district courts. *Sec. Inv. Prot. Corp. v. Vigman*, 74 F.3d 932,

8    938 (9th Cir. 1996); *M2 Software v. Viacom*, 223 F. App'x 653, 656 (9th Cir. 2007).

9    VIP's other cases (at 4-5) involve remands for criminal resentencing. *E.g.*, *United*

10   *States v. Cornelius*, 968 F.2d 703, 705 (8th Cir. 1992). But criminal sentencing appeals

11   are unique and present a "specialized set of mandate issues." Wright & Miller, *supra*,

12   § 4478.3. Because a criminal sentence "often represents a 'package' of considerations that

13   properly are reconsidered when a new package is made," courts may give defendants

14   greater leeway to raise new issues at resentencing. *Id.* Those concerns do not apply, how-

15   ever, to this *civil* case. Indeed, even when criminal cases are remanded, a defendant may

16   not raise "new challenges" to non-sentencing issues that the defendant "could have raised

17   all along." *United States v. Tat*, 97 F.4th 1155, 1161 (9th Cir. 2024).

18   VIP's attempts to distinguish Jack Daniel's cases fail. *First*, VIP contends (at 7-8)

19   that some of the cited cases involve the question whether the Ninth Circuit may consider a

20   waived issue on remand, as opposed to whether a district court may do so. That distinction

21   makes no difference, as the waiver rule applies on remands to *both* trial and appellate

22   courts. *See, e.g.*, *Raich v. Gonzales*, 500 F.3d 850, 868-69 (9th Cir. 2007); *Apple Inc. v.*

23   *Samsung Elecs. Co.*, 2017 WL 3232424, at *13-15 (N.D. Cal. July 28, 2017); *Magnesys-*

24   *tems, Inc. v. Nikken*, *Inc.*, 933 F. Supp. 944, 949-50 (C.D. Cal. 1996). And for good reason:

25   at either level, allowing a party to resurrect waived issues would create perverse incentives,

26   needlessly prolong litigation, and prejudice the opposing party, as discussed above.

27

28

10

1      *Second*, VIP contends (at 8) that *Vigman* involved a "limited remand." Not so. In

2  that case, both the Supreme Court and the Ninth Circuit generally remanded for further

3  proceedings "consistent" with the Supreme Court's opinion. *Holmes v. Sec. Inv. Prot.*

4  *Corp.*, 503 U.S. 258, 276 (1992); *Sec. Inv. Prot. Corp. v. Vigman*, 964 F.2d 924, 924 (9th

5  Cir. 1992). VIP further notes (at 8) that the Ninth Circuit prevented a party from raising a

6  new argument on an issue where the Supreme Court had left the district court's initial

7  ruling "intact." *Vigman*, 74 F.3d at 938. But the Ninth Circuit went on to explain that, to

8  the extent the party was raising an entirely new issue, that issue was "waived." *Id.* The

9  latter is the case here: Because VIP is seeking to raise a new issue, the issue is waived.

10     *Third*, VIP seeks (at 8) to distinguish Jack Daniel's remaining cases on the grounds

11 that "they deal with arguments that were available to the parties prior to the initial appeal

12 but that were never articulated until after the case had traveled through the appellate pro-

13 cess." But that is precisely what happened here. As discussed, VIP could have raised its

14 facial challenge before this Court's original judgment in 2018. Yet, VIP waited until *after*

15 the Supreme Court rejected its other dilution arguments and then belatedly raised its chal-

16 lenge for the "first" time on remand to this Court. *See* ECF 347, at 2-3 (VIP's Rule 5.1

17 Reply). Basic principles of waiver forbid VIP from "sandbagging" the Court and Jack

18 Daniel's in this manner. *See Stern v. Marshall*, 564 U.S. 462, 482 (2011).

19     Finally, VIP stresses (at 5-6) that the Supreme Court and the Ninth Circuit remanded

20 for proceedings "consistent" with the Supreme Court's opinion, without otherwise limiting

21 the "issues" this Court may "consider." But that point only supports Jack Daniel's. Among

22 the "issues" this Court may consider is *whether VIP waived its challenge to the dilution*

23 *statute*. It is VIP (not Jack Daniel's) that is seeking to read into the remand orders a limi-

24 tation—namely, a bar on considering waiver—that does not exist.

25           2.     There Are No Grounds to Excuse VIP's Waiver.

26     VIP fares no better in arguing (at 9-10) its waiver should be excused and merely

27 rehashes arguments that Jack Daniel's already refuted. Jack Daniel's Opening Br. 23-25.

28

11

1    *First*, VIP (at 9-10) repeats its argument that the Supreme Court's decisions in

2    *Matal v. Tam*, 582 U.S. 218 (2017) and *Iancu v. Brunetti*, 588 U.S. 388 (2019) somehow

3    changed the "legal landscape." As Jack Daniel's explained, that assertion is baseless. Jack

4    Daniel's Opening Br. 23-25. To start, both *Tam* and *Brunetti* were based on long-standing

5    First Amendment principles. *Id.* VIP could have invoked those principles to bring a con-

6    stitutional challenge, just as the parties in those cases did. Indeed, VIP previously con-

7    ceded that its challenge is "by no means a new thought." VIP Opening Br. 21.

8    Even if *Tam* and *Brunetti* changed the law (they did not), VIP's argument still fails

9    in light of the timeline. The Supreme Court decided *Tam* in June 2017—months before

10   the trial in this case began in October 2017. Yet VIP failed to raise its challenge before

11   this Court. Trying to shift blame to the Court, VIP asserts (at 10) that the Court "indicated

12   it did not wish to hear any further First Amendment arguments because of its summary-

13   judgment ruling." As Jack Daniel's explained, however, the Court was referring to its

14   ruling that Bad Spaniels did not merit First Amendment protection from *infringement*; the

15   Court in no way prohibited VIP from raising a constitutional challenge to the *dilution* stat-

16   ute. Jack Daniel's Opening Br. 24 n.7. Nor does it matter that *Brunetti* "was not handed

17   down until after the completion of briefing before the Ninth Circuit." VIP Resp. 10. *Bru-*

18   *netti* simply followed in *Tam*'s footsteps and did not represent any change in the law.

19   *Second*, VIP argues (at 10) its waiver should be excused because its challenge pre-

20   sents a purely legal question and will not prejudice Jack Daniel's. As an initial matter,

21   VIP's delay in raising its challenge *does* prejudice Jack Daniel's, as resolving the challenge

22   on the merits may further delay issuing an injunction in Jack Daniel's favor. Moreover,

23   even when a question is purely legal, a court must "still decide whether the particular cir-

24   cumstances of the case overcome [the] presumption against hearing new arguments."

25   *Raich*, 500 F.3d at 868. As Jack Daniel's explained, the circumstances here overwhelm-

26   ingly weigh against entertaining VIP's waived challenge as this case has been pending for

27   nearly a decade. Jack Daniel's Opening Br. 25. As the Tenth Circuit has put it, "at some

28

1    point it becomes too late to try out promising new theories, gangly litigation must be

2    shaped and defined, and finality has to become more than a faint hope." *Cook v. Rockwell*

3    *Int'l Corp.*, 790 F.3d 1088, 1093 (10th Cir. 2015). This case is long past that point.

**B.    VIP's Facial Constitutional Challenge Fails.**

4

5        Even if this Court were to consider VIP's challenge, the Court should reject it for

6    the reasons explained by the Department of Justice. U.S. Br. 6-15.

7        *1.    The Dilution Statute Is Viewpoint Neutral.*

8        As the DOJ explains, the dilution statute's tarnishment provision is viewpoint neu-

9    tral. *Id.* at 6. The statute defines tarnishment as an "*association* arising from the similarity

10   between a mark or trade name and a famous mark *that harms the reputation of the famous*

11   *mark*." 15 U.S.C § 1125(c)(2)(C) (emphases added). Whether an association harms the

12   reputation of a famous mark "does not depend on the viewpoint (if any) expressed in con-

13   nection with the tarnishing use." U.S. Br. 6. Instead, the DOJ observes, tarnishment lia-

14   bility turns on "the harmful effect dissonant associations may have on the value of the

15   famous mark." *Id.* at 1. For example, a food producer's mark may be tarnished if an

16   insecticide company uses the mark—regardless of whether the insecticide company has a

17   positive, negative, or neutral view of the food product. *Id.* at 7. The tarnishing effect

18   comes from "associating the food mark with a poisonous substance." *Id.* Similarly, here,

19   the tarnishing effect comes *not* from VIP's message (whatever it may be), but from asso-

20   ciating Jack Daniel's whiskey with dog poop and with toys that appeal to children.

21       VIP offers no valid response to this analysis. VIP (at 20) accuses Jack Daniel's

22   (and by extension the DOJ) of mischaracterizing tarnishment as "an association … that

23   harms the reputation of the famous mark." That, however, is the *statutory definition*.

24       VIP further contends (at 22) that it is "logically impossible" for something both to

25   have a "positive" message and to be "likely to cause harm" to a famous mark's reputation.

26   As the DOJ explains (at 8), VIP is incorrect. For example, the producer of a shoddy prod-

27   uct might use a mark similar to that of a famous luxury brand. In so doing, the producer

28

13

1    might well intend to convey a positive message about both its product and the luxury brand.

2    Yet the *discordant association* itself may harm the luxury brand's reputation.

3         VIP next contends (at 22) that parody, by its nature, "negatively" comments on the

4    original, and VIP faults Jack Daniel's for not providing examples of "positive" parodies.

5    As the DOJ observes (at 8), however, VIP misses the point.  The dilution statute does not

6    prohibit "parodies" as such.  Instead, it prohibits uses of marks that create associations

7    likely to harm the reputation of famous marks.  That prohibition is viewpoint neutral.

8         VIP next points (at 22) to the testimony of Jack Daniel's expert that linking a bev-

9    erage brand with feces inherently creates a negative association.  Again, VIP misses the

10   point.  The tarnishment arises from the negative association between beverages and feces;

11   it does not depend on the viewpoint of the defendant making the association.

12        Finally, VIP (at 23) cites *Tam* for the proposition that "giving offense is a view-

13   point."  However, unlike the registration bar in *Tam*, the tarnishment provision does not

14   depend on whether a use is disparaging or otherwise offensive.  Instead, it applies to any

15   use of a mark that creates an "association" that "harms the reputation of the famous mark."

16   As discussed, such a use need not convey a negative view, much less an offensive one.

17                    2.    *The Dilution Statute Easily Satisfies Intermediate Scrutiny.*

18        As the DOJ explains (at 9-14), the dilution statute satisfies intermediate scrutiny

19   under the Supreme Court's governing decision in *San Francisco Arts & Athletics, Inc. v.*

20   *U.S. Olympic Committee*, 483 U.S. 522 (1987) ("*SFAA*").  Like the statute in *SFAA,* the

21   dilution statute furthers a substantial interest in ensuring famous mark owners "receive[]

22   the benefit of [their] own efforts so that [they] will have an incentive to continue to produce

23   a 'quality product,' that, in turn, benefits the public." 483 U.S. at 537.  And the dilution

24   statute's restrictions are no broader than necessary.  As the DOJ explains (at 13), the dilu-

25   tion statute contains "more free speech protections" than the statute upheld in *SFAA*.

26        VIP's efforts to distinguish *SFAA* fail.  VIP contends (at 24) *SFAA* "did not address

27   the question of private trademarks because there was 'no need' to decide whether Congress

28

                                        14

could grant exclusive use of a word or phrase to a private entity." But VIP badly mischar-acterizes the decision. To start, the Court made clear that, despite being federally char-tered, the U.S. Olympic Committee was a "private" entity. *SFAA*, 483 U.S. at 544. Thus, the case *did* involve a "private trademark." Furthermore, the Court said only that there was no need to decide "whether Congress ever could grant a private entity exclusive use of a *generic word*" because the term "Olympic" had gained commercial value due to the USOC's efforts. *Id.* at 532-33 (emphasis added). VIP omits that sentence's reference to "generic word[s]." Here, the dilution statute applies not to generic words, but to "famous" marks in which owners have invested. 15 U.S.C. § 1125(c)(1). *SFAA* is on all fours.[4]

VIP complains (at 24-25) it has "no alternative means" of commenting on Jack Daniel's marks without triggering tarnishment liability. That is nonsense. The statute expressly excludes "parodying, criticizing, or commenting" on famous marks, as long as a person does not use the famous mark "as a designation of source for the person's own goods or services." 15 U.S.C. § 1125(c)(3)(A). Under the statute, VIP is free to parody, criticize, or comment on Jack Daniel's, including by making poop jokes. It just may not use Jack Daniel's famous marks as its own in ways likely to harm Jack Daniel's reputation.

### 3. *VIP Has Not Shown Facial Unconstitutionality.*

Finally, as the DOJ explains (at 14-15), VIP's facial challenge fails because VIP has not shown the statute is unconstitutional in every application. Indeed, VIP has not even shown that the statute is unconstitutional as applied to VIP *in this case*. U.S. Br. 14.

## CONCLUSION

The Court should reenter judgment in Jack Daniel's favor on both infringement and dilution and deny VIP's motion for judgment.

---

[4] In their proposed amicus brief, the law professors (at 8 n.5) assert that the Supreme Court "plainly rejected the reasoning" of *SFAA* in *Reed v. Town of Gilbert*, 576 U.S. 155 (2015). *Reed*, however, nowhere purported to overrule *SFAA*, and the Supreme Court has contin-ued to cite *SFAA*. *Tam*, 582 U.S. at 225. In all events, even if there were tension between *SFAA* and *Reed*, lower courts must "follow the case which directly controls [here, *SFAA*], leaving to [the Supreme Court] the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express*, 490 U.S. 477, 484 (1989).

15

Dated:     June 7, 2024                              Respectfully submitted,

                                                     /s/    *Lisa S. Blatt*
                                                     _____

MESSNER REEVES LLC                          WILLIAMS & CONNOLLY LLP
Isaac S. Crum (AZ Bar #028756)              Lisa S. Blatt (*pro hac vice*)
1440 E. Missouri Avenue, Suite C100         Amy Mason Saharia (*pro hac vice*)
Phoenix, Arizona 85014                      Matthew B. Nicholson (*pro hac vice*)
(602) 641-6705                              680 Maine Avenue, SW
icrum@messner.com                           Washington, DC 20024
                                            (202) 434-5000
                                            lblatt@wc.com
                                            asaharia@wc.com
                                            mnicholson@wc.com

*Attorneys for Defendant and Counter-Plaintiff*
*Jack Daniel's Properties, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 7, 2024, the foregoing document was transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

<u>/s/ Lisa S. Blatt</u>