**DICKINSON WRIGHT PLLC**
Bennett Evan Cooper (010819)
  *bcooper@dickinsonwright.com*
David G. Bray (014346)
  *dbray@dickinsonwright.com*
Vail C. Cloar (032011)
  *vcloar@dickinsonwright.com*
Alexandra Crandall (034838)
  *acrandall@dickinsonwright.com*
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
Phone: (602) 285-5000
Fax:     (844) 670-6009

Attorneys for Plaintiff-Counterdefendant
VIP Products L.L.C.

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| VIP Products L.L.C., an Arizona limited liability company, | No. 2:14-cv-02057-SMM |
| Plaintiff, | **REPLY BRIEF OF VIP PRODUCTS LLC** |
| v. | |
| Jack Daniel's Properties, Inc., a Delaware corporation, | |
| Defendant. | |
| Jack Daniel's Properties Inc., a Delaware corporation, | |
| Counterclaimant, | |
| v. | |
| VIP Products L.L.C., an Arizona limited liability company, | |
| Counterdefendant. | |

1

**TABLE OF CONTENTS**

2                                                                                    *Page*

3    Table of Contents .................................................................................i

4    Table of Authorities...........................................................................ii

5    Introduction ......................................................................................1

6    Argument ..........................................................................................2

7    I.    JDPI cannot establish infringement under the appropriate legal
           standard. ...................................................................................2

8          1.    VIP is a successful parody. ...............................................3

9          2.    The *Sleekcraft* factors weigh in VIP's favor. ....................4

10   II.   JDPI cannot prevail on its dilution claim. ...................................6

11   A.    JDPI cannot meet the required level of fame or disgust to
           support a claim of tarnishment. ................................................6

12         1.    JDPI still can't tell the Court what mark is likely to be
13               harmed by the joke. ..........................................................6

14         2.    JDPI's "incompatible use" standard for tarnishment is
15               untenably subjective. .........................................................7

16         3.    The vast majority of JDPI's cases have either nothing to
17               do with tarnishment or find no tarnishment. .....................8

17         4.    Tarnishment should be understood as a narrow cause of
                 action covering only sex, drugs, or other illegal activity.
18               ........................................................................................10

19   B.    The tarnishment cause of action is a paradigm of an
           unconstitutional viewpoint-based restriction on speech that
20         violates the First Amendment. ................................................10

21         1.    The statute is not viewpoint-neutral and cannot survive
22               strict scrutiny. .................................................................11

23         2.    This case is even stronger than *Tam* and *Brunetti*
                 because it involves actual restraint of expression. ..........12

24         3.    Bad Spaniels is not commercial speech because it does
25               more than simply propose a transaction..........................12

25   III.  VIP has not "waived" any of its arguments. ...............................13

26   Conclusion......................................................................................15

27

28

1

# TABLE OF AUTHORITIES

2

*Page(s)*

3

**Cases**

4

*Am. Freedom Def. Initiative v. King County*,
  904 F.3d 1126 (9th Cir. 2018) ...................................................... 11

*Bantam Books, Inc. v. Sullivan*,
  372 U.S. 58 (1963) ........................................................................ 12

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
  963 F.3d 859 (9th Cir. 2020) ......................................................... 6

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) ................................................................... 2, 4

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
  447 U.S. 557 (1980) ...................................................................... 12

*Chem. Corp. of Am. v. Anheuser-Busch, Inc.*,
  306 F.2d 433 (5th Cir. 1962) ....................................................... 8, 9

*Coach Servs., Inc. v. Triumph Learning LLC*,
  668 F.3d 1356 (Fed. Cir. 2012) ..................................................... 6

*Coca-Cola Co. v. Gemini Rising, Inc.*,
  346 F. Supp. 1183 (E.D.N.Y. 1972) ............................................. 10

*Counterman v. Colorado*,
  600 U.S. 66 (2023) ........................................................................ 10

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*,
  467 F. Supp. 366 (S.D.N.Y. 1979) ................................................ 10

*Deere & Co. v. MTD Prods., Inc.*,
  41 F.3d 39 (1994) .......................................................................... 11

*Eveready Battery Co. v. Adolph Coors Co.*,
  765 F. Supp. 440 (N.D. Ill. 1991) ................................................... 7

*Great Am. Duck Races Inc. v. Kangaroo Mfg. Inc.*,
  398 F. Supp. 3d 494 (D. Ariz. 2019) ............................................... 5

*Hormel Foods Corp. v. Jim Henson Prods.*,
  73 F.3d 497 (2d Cir. 1996) ........................................................ 9, 10

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Iancu v. Brunetti*,
    139 S. Ct. 2294 (2019)......................................................................... 12, 13

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
    599 U.S. 140 (2023)........................................................ 1, 3, 4, 12, 13

*Jacobellis v. Ohio*,
    378 U.S. 184 (1964)................................................................................. 7

*L.L. Bean, Inc. v. Drake Publishers, Inc.*,
    811 F.2d 26 (1st Cir. 1987)..................................................................... 9

*Liberty Mut. Ins. Co. v. E.E.O.C.*,
    691 F.2d 438 (9th Cir. 1982) ............................................................... 14

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*,
    507 F.3d 252 (4th Cir. 2007) ....................................................... 1, 3, 4, 5

*Mason v. Texaco, Inc.*,
    948 F.2d 1546 (10th Cir. 1991) ........................................................... 14

*Matal v. Tam*,
    582 U.S. 218 (2017)................................................................ 11, 12, 13

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
    584 U.S. 453 (2018)................................................................................. 6

*N.Y. Times Co. v. United States*,
    403 U.S. 713 (1971) (per curiam)......................................................... 12

*Pittsburg Cnty. Rural Water Dist. No. 7 v. City of McAlester*,
    358 F.3d 694 (10th Cir. 2004) ............................................................. 14

*Pom Wonderful LLC v. Hubbard*,
    775 F.3d 1118 (9th Cir. 2014) ............................................................... 4

*S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*,
    483 U.S. 522 (1987)............................................................................... 13

*. Steinway & Sons v. Robert Demars & Friends*,
    1981 WL 40530 (C.D. Cal. 1981) ......................................................... 9

*Tiffany & Co. v. Bos. Club, Inc.*,
    231 F. Supp. 836 (D. Mass. 1964) ......................................................... 9

*United States v. Castellanos*,
    608 F.3d 1010 (8th Cir. 2010) ............................................................. 14

*United States v. Olano*,
   507 U.S. 725 (1993) ............................................................ 13

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
   425 U.S. 748 (1976) ............................................................ 12

*Vans, Inc. v. MSCHF Prod. Studio, Inc.*,
   88 F.4th 125 (2d Cir. 2023) (per curiam) ............................ 4

*VIP Prods., LLC v. Jack Daniel's Props., Inc.*,
   291 F. Supp. 3d 891 (D. Ariz. 2018) .................................... 3

*VIP Prods. LLC v. Jack Daniel's Props., Inc.*,
   953 F.3d 1170 (9th Cir. 2020) ......................................... 1, 3

**Statutes and Rules**

15 U.S.C. § 1125(c) ................................................................ 13

15 U.S.C. § 1125(c)(1) ........................................................... 11

15 U.S.C. § 1125(c)(2)(C) ........................................................ 7

15 U.S.C. § 1125(c)(3)(C) ....................................................... 12

1

## INTRODUCTION

2    JDPI makes two basic arguments, but both are bereft of merit. First, JDPI argues

3    that the Court should rubber-stamp its 2018 findings and conclusion because the "Bad

4    Spaniels" dog toy differs from the "Chewy Vuiton" dog toy in *Louis Vuitton Malletier*

5    *S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252 (4th Cir. 2007), on the theory that Bad

6    Spaniels borrows "too much" and therefore is not a successful parody. (*See, e.g.*, Doc.

7    358 at 11.) But the Ninth Circuit compared VIP's "light-hearted, dog-related alterations"

8    favorably with Chewy Vuiton, and it concluded that, just as the Chewy Vuiton toys were

9    "successful parodies" as well "[n]o different conclusion is possible here." *VIP Prods. LLC*

10   *v. Jack Daniel's Props., Inc.*, 953 F.3d 1170, 1175 (9th Cir. 2020). VIP could not have

11   borrowed "too much," given that JDP admitted that the toy's name and dominant

12   feature—"Bad Spaniels"—did *not* infringe "Jack Daniel's" (Doc. 235 at 68–69), and

13   JDPI used the "Bad Spaniels" name in its confusion-survey control (Doc. 210 at 16, ¶ 76;

14   Doc. 235 at 68-69.) And the notion that nothing has changed since 2017 as to the

15   controlling standard is inconsistent with the Supreme Court's acknowledgement that "a

16   trademark's expressive message—particularly a parodic one, as VIP asserts—may

17   properly figure in assessing the likelihood of confusion" and "may make a difference in

18   the standard trademark analysis." *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S.

19   140, 161 (2023).

20   Second, JDPI argues that VIP has "waived" virtually every argument it makes if it

21   did not make the precisely the same argument (or cite precisely the same authority) in

22   2017. Yet JDPI has failed to cite even a single case cabining a party's arguments or a

23   district court's consideration on a general remand absent a specific conflict with the

24   mandate. There is no such conflict here, principally because VIP has merely offered

25   updates, variants, or new spins on issues it previously raised. If the Ninth Circuit had

26   wanted reentry of the 2018 findings and conclusions, it would have said so in its opinion

27   or not issued a general remand (or any remand) order in the first place. And if the parties

28

1

were allowed only to repeat arguments exactly as they were made in 2017, one wonders why anyone contemplated 150 pages of new briefing in 2023.

JDPI fails to acknowledge the conflict between its infringement and tarnishment arguments. On the one hand, it claims that the parody and its object are so similar that people will believe JDPI produced the Bad Spaniels toy. On the other hand, JDPI contends that the toy's poo jokes are disgusting on a primal level. This would require a reasonable consumer to believe that somehow JDPI had intentionally sabotaged itself by issuing not a playful self-parody, but an inherently self-destructive one. Such contradictory assumptions run smack into the Supreme Court's recognition that of the "unlikelihood" that JDPI or similarly iconic brands would "license … lampoons of their own productions." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 592 (1994). The same is perforce true of "disgusting" self-lampoons.

In the end, the Court should reject the infringement and tarnishment claims. Applying the multifactor test in a manner appropriate for parody cases, the Bad Spaniels dog toy is not likely to cause confusion with Jack Daniel's whiskey—indeed, there is no evidence of actual confusion since the toy was introduced ten years ago. Applying the developed dilution law requiring that the "famous" mark be a "household name," there is no evidence—or even a claim by JDPI's expert witness, Itamar Simonson—that Bad Spaniels was a poo joke that tarnished "Jack Daniels'," or that any poo references in Bad Spaniels correlated to any other "famous" mark, as neither "Old No. 7" nor any other JDPI marks were shown to be "household names." Rejecting the tarnishment claim on the merits will allow the Court to avoid deciding whether the tarnishment statute survives First Amendment scrutiny as unconstitutional viewpoint discrimination.

## ARGUMENT

**I.    JDPI cannot establish infringement under the appropriate legal standard.**

JDPI appears to be in denial. It argues that the Court should simply reenter its 2018 findings and conclusions, despite what the Ninth Circuit said about the Bad Spaniels toy, what the Supreme Court and its concurrence said about the appropriate legal standards,

and how precedent has developed since 2018 on several of the *Sleekcraft* factors. While the parties declined an invitation to return to what the Court called "square one" (Doc. 337 at 4:21–23) by reopening the evidentiary record, the *Sleekcraft* factors each weigh in favor of VIP when the correct legal standards are applied to that evidentiary record.

### 1.    VIP is a successful parody.

JDPI's insistence that Bad Spaniels product "copied too much and distinguished too little" ignores reality. (Doc. 358 at 4.) Bad Spaniels is a successful parody because it "juxtapose[s] the irreverent representation of the trademark with the idealized imaged created by the mark's owner." *Louis Vuitton*, 507 F.3d at 260 (cleaned up). As noted above, the Ninth Circuit recognized the significance of VIP's "light-hearted, dog-related alterations" in achieving a successful parody like Chewy Vuiton, *VIP Prods.*, 953 F.3d at 1175, and the Supreme Court noted the key differences between the toy and the whiskey bottle it lampooned, concluding that "[m]ost of the toys in the [Silly Squeakers] line are designed to look like—and to parody—popular beverage brands." *Jack Daniel's*, 599 U.S. at 148–49. This Court as well, while perhaps disagreeing as to the legal significance of parody, agreed that Stephen Sacra's "intent behind producing the Silly Squeakers line of toys was to develop a creative parody on existing products." *VIP Prods., LLC v. Jack Daniel's Props., Inc.*, 291 F. Supp. 3d 891, 898 (D. Ariz. 2018).

Every major element of the "lighthearted" Bad Spaniels product was modified to further the parodic message while ensuring that the target of ridicule—Jack Daniel's and its overly serious branding—was clear. *VIP Prods.*, 953 F.3d at 1172. And VIP added the dominating cartoon of what this Court called a "wide-eyed spaniel." *VIP Prods.*, 291 F. Supp. 3d at 898. The only major elements that carried over to the parody are the general size and shape of the product (although one is a glass bottle and the other is a squeezable vinyl toy), and the word "Tennessee" in cursive lettering. JDPI has cited no case where a court found infringement despite so many changes being made to further a parodic message.

### 2. The *Sleekcraft* factors weigh in VIP's favor.

Because Bad Spaniels is a parody, this Court must conduct a new analysis that applies many *Sleekcraft* factors differently. JDPI argues that "a claim of parody [does not] magically transform the *Sleekcraft* factors" (Doc. 358 at 4), but the Supreme Court recognized that parody "may make a difference in the standard trademark analysis," *Jack Daniel's*, 599 U.S. at 161. Echoing *Campbell*, the Supreme Court made clear in this case that parody "*matters in assessing confusion* because consumers are not so likely to think that the maker of a mocked product is itself doing the mocking." *Id.* at 153 (citation omitted) (emphasis added). The Supreme Court's paradigm for trademark parodies, *Louis Vuitton*, not only involved a parodic dog toy, but also indicated how the factors apply differently or invert. VIP has already detailed how each factor, when "properly figured," weighs in its favor. (*See* Doc. 339 at 16–29; Doc. 357 at 20–28.)

While, as this Court noted, "the Supreme Court's ruling" made the *Louis Vuitton* case "the one that jumps into the driver seat" (Doc. 337 at 8:17–25), JDPI tries to shift attention to other cases that do not fit nearly as well. (Doc. 358 at 10–12 (citing *Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125 (2d Cir. 2023) (per curiam); *id.* at 13–14 (citing *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir. 2014).) *Vans* dealt with two similar products (wearable sneakers) that were sold in similar locations and advertised to a similar clientele who were actually confused. Nor is *Pom Wonderful* instructive, because the allegedly infringing product was not a parody.

**Strength of JDPI's marks.** This factor "does not help" a well-known brand establish a likelihood of confusion because "in cases of parody, a strong mark's fame and popularity is precisely the mechanism by which likelihood of confusion is avoided." *Louis Vuitton*, 507 F.3d at 261. Indeed, JDPI admits that "Bad Spaniels" itself did not infringe JDPI's primary and strongest mark, "Jack Daniel's." (Doc. 235 at 68–69.) JDPI nevertheless insists that Bad Spaniels borrowed too much (Doc. 358 at 12–13), but there are far too many contrasts between the products for this argument to carry weight.

**Similarity of JDPI's marks.** In the parody context, "imitations, but not exact ones," weigh against a finding of infringement. *Louis Vuitton*, 507 F.3d at 258. Bad

4

Spaniels is far from an identical or exact imitation, given the myriad differences that have been repeated by every court that has reviewed this case.

**VIP's intent in selecting its marks.** As a matter of law, "[a]n intent to parody is not an intent to confuse the public." *Louis Vuitton*, 507 F.3d at 263. This Court has already found that VIP intended to parody, and thus, this factor does not favor JDPI.

**Actual confusion.** Where, as here, there is "no evidence of actual confusion"—even ten years after Bad Spaniels appeared—this factor does not weigh in favor of infringement. *Louis Vuitton*, 507 F.3d at 263. While JDPI attempts to minimize the significance of the Supreme Court concurrence that calls into question JDPI's confusion survey (Doc. 338 at 20; Doc. 358 at 16–17), this Court should credit that opinion, which reflects prior circuit precedent in rejecting surveys that detect the wrong kind of confusion.

**Proximity of the goods**. Products that differ will not be considered to be proximate. *Louis Vuitton*, 507 F.3d at 261–62. As in *Louis Vuitton*, "[t]he differences [between the two products] are immediate" because the Bad Spaniels product is a dog toy and not a bottle of liquor. *Id.* at 260. The lack of proximity is highlighted by JDPI's forswearing of any intent to sell dog toys, much less ones shaped like their liquor bottles.

**Marketing channels**. "[D]e minimis overlap lends insignificant support" to a party claiming infringement. *Louis Vuitton*, 507 F.3d at 263. JDPI has never argued that any physical stores offered both parties' products. To the extent that the "Jack Daniel's" mark appeared on licensed products sold on the same universal websites as Bad Spaniels (i.e., Amazon and Walmart.com), that overlap is insignificant as a matter of law. *See Great Am. Duck Races Inc. v. Kangaroo Mfg. Inc.*, 398 F. Supp. 3d 494, 506 (D. Ariz. 2019).

**Type of goods and degree of purchaser care.** A low price point is not determinative of this factor, despite JDPI's insistence otherwise. (Doc. 358 at 20.) *Louis Vuitton*, 507 F.3d at 258. Given JDPI's confidence in the strength of its brand, one would think that its customers would ensure that "Jack" received a great deal of customer awareness and care, particularly in deciding whether to buy a parody dog toy. As a matter of law and logic, this factor, like all of the other *Sleekcraft* factors, favors VIP. This Court should hold for VIP on JDPI's infringement claim.

5

**II.    JDPI cannot prevail on its dilution claim.**

VIP agrees with the United States that, if the Court can resolve JDPI's tarnishment claim on its merits (Doc. 364 at 5–6), the Court need not weigh in on the constitutional question. As to the merits, JDPI lacks any evidence assuring this Court of the fame (i.e., the "household name" status) of its marks that correlate to poo references, or any reliable evidence that the Bad Spaniels dog toy is reasonably likely to bring any of its famous marks into disrepute. That should begin and end the Court's analysis. *See Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 470 (2018) (holding that "a statute should not be held to be unconstitutional if there is any reasonable interpretation that can save it"). If the statute is interpreted to allow JDPI's easily offended expert alone to establish tarnishment, the constitutional question moves to the forefront.

**A.    JDPI cannot meet the required level of fame or disgust to support a claim of tarnishment.**

**1.    JDPI still can't tell the Court what mark is likely to be harmed by the joke.**

Despite years of litigation, it is still unclear what JDPI asserts has actually been tarnished. It claims that its marks are harmed because of an association between dog poo and its whiskey (Doc. 364 at 11–14)—but what famous mark is actually at risk of being called into disrepute? It cannot be "Jack Daniel's," which does not appear on the Bad Spaniels toy, and Simonson did not even identify the correlative element, "Bad Spaniels," as a tarnishing poo reference. (Doc. 234 at 171:14–15, 172:4–5.) It cannot be "Old No. 7," because that mark, even if strong in a confusion context, is not for purposes of dilution a "famous" "household name" outside of perhaps a "niche market" of whiskey drinkers or bar patrons. *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 870 (9th Cir. 2020) ("Eames" chair product design was not "famous" "household" outside of "niche market"); *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012) (COACH not famous because "[i]t is well-established that dilution fame is difficult to prove"). It cannot be the general look and feel of the Jack Daniel's label, because there also is no evidence that the label's elements are "famous" together or

individually. JDPI cannot rely on vague abstractions or holistic approaches to "tarnishment" or "fame," because it is the mark-to-famous-mark "similarity" required by 15 U.S.C. § 1125(c)(2)(C) that prevents the narrow dilution cause of action for only "famous" marks from ballooning into a confusion-free substitute for any infringement claim. *See, e.g.*, *Eveready Battery Co. v. Adolph Coors Co.*, 765 F. Supp. 440, 451–52 (N.D. Ill. 1991) (denying preliminary injunction on state dilution claim where parody advertisement did not borrow all elements of plaintiff's trademark in a deceptive manner).

### 2. JDPI's "incompatible use" standard for tarnishment is untenably subjective.

JDPI and, to some extent, the United States incorrectly urge that the mere "incompatibility" of a product or use is sufficient to state a claim for tarnishment. (*See* Doc. 358 at 35–36; Doc. 364 at 11–14.) Setting aside the problems with that formulation—it does not come from the plain language of the statute or any TDRA cases—JDPI does not identify what an "incompatible" use is. All it seems to mean is that JDPI subjectively deems the use should not exist. For example, JDPI complains that Bad Spaniels is a "toy" that "might appeal to children." (Doc. 358 at 18.) Even if one were to indulge either the notion that a dog toy shouldn't appeal to a child, or the assumption that a child young enough to play with a dog toy would know what Jack Daniel's is, "incompatibility" is a vague, manipulable standard similar to Justice Potter Stewart's famous test for obscenity. *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964). Indeed, the



Jack Daniel's Indian Motorcycle Party Shirt
$40.00

"incompatibility" test would seemingly condemn even a bottle-shaped dog toy that said "Bad Spaniels" but nothing else.

What JDPI finds "incompatible" is difficult to predict. One would assume that whiskey and motorcycles are a dangerous combination, yet JDPI sells a "Jack Daniel's Indian Motorcycle Party Shirt" for $40.00 on

7



the official Jack Daniel's online store.[1] And apparently not all child-friendly toys or games are "incompatible," as JDPI licenses "Jack Daniel's" playing cards without any warning that they are to be used for "Texas Hold'em" but not "Go Fish"—in fact, they are advertised with the "Age Range" of "Children."[2]

JDPI is free to put the Jack Daniel's logo on whatever it wants, but it cannot enjoin what vehicles parodists may use for their speech, or the substance of their parodies, based on a subjective standard that, from an objective perspective, is incapable of consistent and coherent application. The "incompatibility" standard gains no further definition from the fact that poo jokes are used to make the parody. The notion that comestibles are inherently "incompatible" with any suggestion of poo is contrary to lived experience: gourmet civet coffee is collected from the droppings of a small mammal; sausages are traditionally cased in intestines; cheese has been made and stored for centuries in animal bladders. JDPI's squeamishness is not legally significant.

###### 3.    The vast majority of JDPI's cases have either nothing to do with tarnishment or find no tarnishment.

JDPI's citations frequently conflate different types of dilution under state and federal law. For example, JDPI relies heavily on *Chemical Corp. of America v. Anheuser-*

---

[1]    https://store.jackdaniels.com/products/jack-daniels-indian-motorcycle-dixxon-party-shirt (last visited June 7, 2024).

[2]    https://www.amazon.com/Jack-Daniels-Playing-Cards-Pictures-dp/B000H581VI/ref=sr_1_4?dib=eyJ2IjoiMSJ9.ys2EWXkwGtzPJg5j5dGWRwsfEnjxZ8HmvVjRCnLt-8jP4H2O15NcCetZD_zux0Cg3on_Ka3dbnipLYaNew9QUkDIRm-1E9M3fEjA8jPsWagWyfnJWIHIRy0_AJjmGH2levnRBzExUj-8Xm3klyWIJCZHudTQ2ZX2HiRQl4dzSRk4kqe1VsTTdt_LXZ2TNt96PtxRM9LAxrljI_ACNV2IstH9OFn6m_cOA1RHQOnWCg4NwnFbmHVaBo_DbBU7CFqa4Xt3WcC1QGh8rmoYn5neI8hLP6aKnkrflVxwRV178FQ.Gi6N_9NMuO8N7BwYvD7ZKjv-o0wK19Jk3jqNnmdzfBk&dib_tag=se&keywords=Jack+Daniel%27s+playing+cards&qid=1717817956&sr=8-4 (last visited June 7, 2024).

*Busch, Inc.*, 306 F.2d 433 (5th Cir. 1962), for the proposition that "incompatible associations" alone can give rise to tarnishment. (Doc. 358 at 23, 35.) But that case has nothing to do with tarnishment—it does not even use the word. Instead, that case is best understood as something approaching ordinary infringement, given the "deceptively similar slogan[s]," at issue and "confusing the source of the defendant's product." *Id.* at 438. *Steinway & Sons v. Robert Demars & Friends*, 1981 WL 40530 (C.D. Cal. 1981), concern dilution by blurring, not tarnishment, and it rested on a concern that a deceptively similar name for an unrelated product would erode the mark's distinctiveness. JDPI never brought a claim for blurring.

Both JDPI and the United States rely heavily on *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26 (1st Cir. 1987), for the proposition that tarnishment is threatened when a senior mark is linked to products of a "shoddy quality or which conjure associations that clash" with the senior holder's use. *Id.* at 30. (Doc. 358 at 35; Doc. 364 at 11.) *L.L. Bean* relies for that proposition on *Tiffany & Co. v. Boston Club, Inc.*, 231 F. Supp. 836 (D. Mass. 1964), but, again, that case was about blurring: the use of "Tiffany's" on an unrelated product was "diminishing its distinctiveness, uniqueness, effectiveness, and prestigious connotations," and the mark is "subjected to the vagaries of a stranger's business." *Id.* at 844. Those older cases have nothing to say about tarnishment under the 2006 TDRA.

The conflation of blurring and tarnishment produces an untenable statement of the rule. As cited by JDPI, the Second Circuit in *Hormel Foods Corp. v. Jim Henson Productions*, 73 F.3d 497 (2d Cir. 1996), relied on both *Chemical Corp.* and *Steinway & Sons* to support its dicta that tarnishment expands beyond "sexual activity, obscenity, or illegal activity." *Id.* at 507. (Doc. 358 at 23.) Those cases do not support that proposition. The *Hormel* court still arrived at the correct conclusion: Jim Henson's character "Spa'am," even though a "humorously wild beast" or "grotesque boar," *id.* at 501, did not tarnish the "SPAM" mark and would not generate any negative association.

The same is true here. Itamar Simonson did not talk to real people, because, as Bruce Silverman's focus groups showed, real people would have laughed once they understood his humorless insinuation that a dog having an accident tarnished Jack Daniel's. Just as in *Hormel*, Bad Spaniels is not using Jack Daniel's reputation to sell a competing product; instead, "the parody is part of the product itself," and, without those elements, the joke is lost. *Id.* at 508.

> 4.    **Tarnishment should be understood as a narrow cause of action covering only sex, drugs, or other illegal activity.**

The only cases JDPI can present to the Court that take its ham-handed approach to tarnishment involved sex, drugs, or illegal conduct. *See, e.g.*, *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 467 F. Supp. 366 (S.D.N.Y. 1979) (pornography with Dallas Cowboy cheerleader uniforms); *Coca-Cola Co. v. Gemini Rising, Inc.*, 346 F. Supp. 1183 (E.D.N.Y. 1972) ("Enjoy Cocaine"). (*See* Doc. 358 at 23.) This makes sense, because those categories are simply *different* both from a legal and common-sense perspective. Neither obscenity nor invitations to lawlessness enjoy First Amendment protection. *Counterman v. Colorado*, 600 U.S. 66, 73–74 (2023). Society understands and expects everyday mark holders to not want to be associated with prurient or illegal activity. "Light-hearted" poo jokes about household pets are a different matter that does not approach any bounds of decency or First Amendment protection.

> B.    **The tarnishment cause of action is a paradigm of an unconstitutional viewpoint-based restriction on speech that violates the First Amendment.**

In defending the tarnishment statute, the United States largely echoes what JDPI has argued: the statute remains "viewpoint neutral" because some harmful speech will purportedly not harm a mark's reputation, while some apparently positive speech will. (Doc. 364 at 11–14; *see* Doc. 358 at 35–37.) The United States also contends that the cause of action should be subject to intermediate scrutiny as a restriction on commercial speech. (Doc. 364 at 14–19.) Neither position passes muster.

1

**1.    The statute is not viewpoint-neutral and cannot survive strict scrutiny.**

To avoid the fatal effect of strict scrutiny here, JDPI and the government avoid admitting the obvious: degrading reputation is itself a viewpoint. "Giving offense is a viewpoint." *Matal v. Tam*, 582 U.S. 218, 243 (2017) (op. of Alito, J.); *see also Am. Freedom Def. Initiative v. King County*, 904 F.3d 1126, 1131 (9th Cir. 2018) ("[O]ffensive speech is, itself, a viewpoint and that the government engages in viewpoint discrimination when it suppresses speech on the grounds that the speech offends."). The government cannot claim the right to enjoin speech that is mean, or derogatory, or offensive to a particular mark holder. Any use that mocks a trademark mark to make a point risks some element of reputational harm to the mark, "but that risk is generally tolerated in the interest of maintaining broad opportunities for expression." *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 44 (1994).

Unlike JDPI, the United States at least takes a stab at coming up with something that could be both tarnishing and burnishing: a "Cheesecake Factory" glucose meter. (Doc. 364 at 13.) While humorous, this illustration still misses the mark for at least three reasons. First, slapping the Cheesecake Factory mark on a blood glucose meter would almost certainly constitute both infringement *and* dilution, making tarnishment entirely unnecessary. Second, there is nothing inherently "burnishing" about a glucose meter. While it is fortunate for many that such a tool exists, the government's hypothetical does not explain how the monitor would improve the Cheesecake Factory's image; indeed, the restaurant would hardly welcome any suggestion that eating there could cause diabetes. Third, the hypothetical glucose monitor is not a parody, and it has nothing to do with expressive speech where the parody *is* the product.

Finally, the government's argument that tarnishment requires harm is baseless. (Doc. 364 at 13.) The 2006 TDRA does not require proof of actual harm; a plaintiff need only convince a court that reputational harm is "likely" to occur. 15 U.S.C. § 1125(c)(1). Under the TDRA's plain language, and as this case attests, it is entirely possible for an injunction to issue without any reputational harm.

11

**2.** **This case is even stronger than *Tam* and *Brunetti* because it involves actual restraint of expression.**

The argument that *Tam* and *Iancu v. Brunetti*, 139 S. Ct. 2294 (2019), do not directly inform the Court's analysis on this point is misguided. (*See* Doc. 358 at 36; Doc. 364 at 11–12.) Both *Tam* and *Brunetti* dealt with registration of a mark, not a private party's ability to use the court system to enjoin speech, but that is the point—nothing stopped the applicants in *Tam* and *Brunetti* from continuing to use "The Slants" or "FUKT," and they simply would not be entitled to the greater protection afforded by registration. *Enjoining speech is a far more momentous act*: it is one of the most significant acts the judiciary can undertake. "Any system of prior restraints comes to this Court bearing a heavy presumption against its constitutional validity." *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam) (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)).

**3.** **Bad Spaniels is not commercial speech because it does more than simply propose a transaction.**

The government urges that the Court need apply only intermediate scrutiny because trademarks subject to the tarnishment cause of action are inherently commercial speech. (Doc. 364 at 14.) The government reaches that conclusion because of the noncommercial-use exclusion (Doc. 364 at 15), which was intended to incorporate the Supreme Court's commercial speech doctrine. 15 U.S.C. § 1125(c)(3)(C). But that is not the case. It is well-settled that commercial speech applies only to speech that merely proposes a commercial transaction. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562 (1980); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976).

A trademark, particularly a parodic one, does not fit this bill. Trademarks often convey more than a mere proposal for a transaction and also contain an "expressive message." *Jack Daniel's*, 599 U.S. at 161; *see Tam*, 582 U.S. at 239 (op. of Alito, J.) (recognizing that "trademarks often have an expressive content"). It is incongruous that a

12

trademark could have a parodic message that must be taken into account in the infringement analysis, but it is somehow relegated to the category of commercial speech.

The government misplaces reliance on *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee*, 483 U.S. 522 (1987). (*See* Doc. 364 at 14–15.) The statute at issue in *SFAA* prohibited *only* use of the Olympic mark "for the purpose of trade, to induce the sale of any good or services, or to promote any theatrical exhibition, athletic performance, or competition." *Id.* at 528. Such a restriction is, of course, limited to commercial speech by its terms. The same is not true of 15 U.S.C. § 1125(c). While the tarnishment statute does not apply to "noncommercial" uses, the Supreme Court made clear in this case that the noncommercial-use exclusion is not coextensive with the Court's commercial-speech doctrine because it is unavailable whenever even parodic or otherwise-expressive content is used as a source identifier. *Jack Daniel's*, 599 U.S. at 161–62. Both "Jack Daniel's" and "Bad Spaniels" are expressive, the latter parodically. Neither is merely commercial speech.

The government proves the point when it argues that VIP could have avoided tarnishment liability had it simply not used "Bad Spaniels" as a trademark and the associated product design as trade dress. (Doc. 364 at 16.) Essentially, the government's argument is that there is no *real* burden on parodists, so long as they make their jokes without using trademarks. The same could be said of the band in *Tam* or the clothing company in *Brunetti*: they could have communicated their messages in concert handouts or packaging inserts. But the Supreme Court struck down the registration bars because the trademarks themselves were protected expression.

## III.    VIP has not "waived" any of its arguments.

Throughout its response brief, JDPI claims that VIP has waived several points raised in its opening brief. (*See, e.g.*, Doc. 358 at 15, 19, 22, 24, 26.) But JDPI is both factually and legally incorrect: there has been no waiver of arguments for purposes of arguments before this Court. "[W]aiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (cleaned up). JDPI

has not cited a single case challenging the principle that when a case is remanded to the district court, the only constraints on the parties and the judge are those imposed by the appellate courts. *See Liberty Mut. Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir. 1982) (district courts "are free to decide issues on remand so long as they were not decided on a prior appeal"); *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1553 (10th Cir. 1991) (district court is free to "decide anything not foreclosed by the mandate"). Nor has JDPI provided this Court with precedent rejecting the established rules that parties may make new arguments on general remand, and district courts may make findings that contradict their previous findings, so long as those findings were not foreclosed by an appellate court. *See United States v. Castellanos*, 608 F.3d 1010, 1017 (8th Cir. 2010); *Pittsburg Cnty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 711 (10th Cir. 2004).

While any of VIP's new arguments would be squarely within the scope of the remand, the vast majority were indeed raised during the initial proceedings or at trial. For example, JDPI erroneously asserts that VIP has newly fabricated the idea of an "anthropomorphic Jack" (Doc. 358 at 15), when that entire concept was actually introduced into the record by trial exhibits and JDPI's own witness. (*E.g.*, Doc. 229-6 at 27 (Def.'s Trial Ex. 106) (Jack Daniel's ad stating, "In any bar in America, you know someone by name…."); Doc. 234 at 60 ("And the idea being here that there's a real familiarity about Jack, and people ask for a Jack. There's almost a personal relationship with some of our drinkers.").) VIP argued at length that this marketing bravado is exactly what the Bad Spaniels product mocks. (Doc. 234 at 28; Doc. 209 at 4 ¶ 24.) Similarly, JDPI's claims of waiver regarding the level of fame required for tarnishment are belied by the arguments that VIP presented to the Court weeks before trial in its proposed findings of fact and conclusions of law. (Doc. 209 at 12–13 ¶¶ 75–84 & 29–31 ¶¶ 77–90.)

JDPI also contends before argued that "certain kinds of poop are 'wholesome'" or that JDPI's experts failed to consider that Bad Spaniels is a parody. (Doc. 358 at 22.) But in closing argument, VIP's counsel argued that "there's no evidence to support that the Bad Spaniels dog toy elicits disgust," and that instead, "[t]he feedback is positive.

14

Hilarious. I love it." (Doc. 239 at 47–48.) VIP's counsel further argued that "in the context of a dog toy, this is likely to elicit joy and not disgust," and "if there's an association being made between the Bad Spaniels product and Jack Daniel's, it's joy and love for pets." (Doc. 239 at 49; *see also* Doc. 209 at 20 ¶ 26.) VIP's proposed findings and conclusions also clearly challenged JDPI's expert methodology and Simonson's failure to account for the parodic nature of the product. (*See, e.g.*, Doc. 209 at 11, 14, 19–20.) Thus, there is simply no legal or factual basis for this Court to determine that VIP has waived any of its arguments on remand.

## CONCLUSION

For the foregoing reasons, the Court should enter judgment for VIP on JDPI's claims for trademark infringement and dilution by tarnishment.

DATED this 7th day of June, 2024.

DICKINSON WRIGHT PLLC

s/ Bennett Evan Cooper
Bennett Evan Cooper
David G. Bray
Vail C. Cloar
Alexandra Crandall
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004

Attorneys for Plaintiff-Counterdefendant
VIP Products, L.L.C.

COPY of the foregoing served by CM/ECF system
this 7th day of June, 2024, on the following:

Isaac S. Crum
MESSNER REEVES LLP
7250 North 16th Street, Suite 410
Phoenix, Arizona 85020

15

Lisa Blatt
Amy M. Saharia
Matthew B. Nicholson
WILLIAMS & CONNOLLY LLP
680 Maine Ave., SW
Washington, D.C. 20024


s/ Bennett Evan Cooper